IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CONTOUR IP HOLDING, LLC, and<br>ION WORLDWIDE, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | C.A. No. _____ |
| | ) | |
| GOPRO, INC. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiffs Contour IP Holding, LLC and iON Worldwide, Inc. (collectively, "Plaintiffs"), by their undersigned attorneys, demand a trial by jury on all issues so triable and bring this action against Defendant GoPro, Inc. ("GoPro" or "Defendant") as follows:

## THE PARTIES

1.      Plaintiff Contour IP Holding, LLC is a limited liability company organized and existing under the laws of the State of Utah, having a principal place of business at 5152 N Edgewood Drive, Suite 375, Provo, Utah 84604.

2.      Plaintiff iON Worldwide, Inc. ("iON") is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 513 S Lenola Road, Moorestown, New Jersey 08057.

3.      On information and belief, GoPro is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 3000 Clearview Way, San Mateo, California 94402.

## NATURE OF THE ACTION

4.      This is a civil action for infringement of U.S. Patent Nos. 8,890,954 ("the '954 Patent") and 8,896,694 ("the '694 Patent") under the patent laws of the United States, 35 U.S.C. §§ 101 *et seq.*  True and correct copies of the '954 and '694 Patents (collectively, the "Asserted Patents") are attached hereto as Exhibits 1 and 2, respectively.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

6.      Venue is proper in this judicial district under 28 U.S.C. §§ 1391 and 1400(b), because GoPro is subject to personal jurisdiction in this judicial district, has committed acts of patent infringement complained of herein in this judicial district, and transacts and does substantial business in this judicial district.

7.      This Court has personal jurisdiction over GoPro because of its incorporation, presence, and regular business activities in Delaware.  GoPro has designated and maintains an agent for service of process in Delaware.

8.      This Court also has personal jurisdiction over GoPro because GoPro has purposefully availed itself of the privilege of conducting activities within this forum.  These activities far exceed the requisite minimum contacts.  GoPro's activities in this forum are continuous and systematic, and give rise to the liabilities sued upon herein.

9.      GoPro's activities in this forum include, *inter alia*, selling and offering to sell infringing products in this forum, and marketing and advertising infringing products in this forum.  GoPro has personally availed itself of this forum by committing acts of patent infringement in Delaware including, *inter alia*, offering to sell and selling infringing products in Delaware and inducing Delaware retailers to commit such acts of infringement in Delaware.

10.     On information and belief, GoPro does extensive business within the State of Delaware.  On information and belief, GoPro earns substantial amounts of revenue through their contacts with this forum.

11.     On information and belief, GoPro has also purposefully availed itself of this forum by entering into agreements with numerous entities in Delaware prescribing the conditions under which the entities may qualify and remain an "Authorized Reseller" of GoPro's infringing products.  According to GoPro's website, GoPro has several authorized resellers of its infringing products in Delaware, including but not limited to Delaware Paddlesports, East of Maui, Breakers Surf Shop, Bike Line, Artemis Outfitters, and Guitar Center.

## BACKGROUND

**Pioneers Come Together: Contour and iON**

12.     Contour, LLC ("Contour") is a pioneer and innovator in the point-of-view (POV) camera industry.  Contour's intellectual property, which is assigned to Contour IP Holding, LLC, is used in innovative wearable and gear-mountable camera products sold under the Contour brand, such as the Contour+2, and in mobile applications such as the Contour Connect app for iOS, Android, and Windows Phone.

13.     iON is a maker and seller of wearable and gear-mountable camera products, including the iON Air Pro, Speed-Pro, CamoCam, and SnapCam series of video cameras.  iON is also the developer and publisher of the iON Camera app for iOS and Android.

14.     In 2015, iON merged with Contour.  Together, iON and Contour offer a full range of connected and wearable cameras.

15.     The '954 Patent, entitled "Portable Digital Video Camera Configured for Remote Image Acquisition Control and Viewing," was duly and legally issued on November 18, 2014.

Contour IP Holding, LLC is currently the owner and possessor of all rights pertaining to the '954 Patent, and iON is the exclusive licensee of the '954 Patent.

16.     The '694 Patent, entitled "Portable Digital Video Camera Configured for Remote Image Acquisition Control and Viewing," was duly and legally issued on November 25, 2014. Contour IP Holding, LLC is currently the owner and possessor of all rights pertaining to the '694 Patent, and iON is the exclusive licensee of the '694 Patent.

17.     Wireless features of the Contour+2 and the iON Air Pro, Speed-Pro, CamoCam, and SnapCam series of video cameras allowing each camera's video images and settings to be remotely captured, previewed and controlled are described in the '954 and/or '694 Patents and set forth in one or more claims of the '954 Patent and in one or more claims of the '694 Patent.

**Related Proceedings**

18.     On November 25, 2014, prior to its merger with iON, Contour filed a suit ("the Utah Action") in the United States District Court for the District of Utah against Camp Saver, LLC, a Utah-based outdoor retailer, and Doe Defendants.  In the Utah Action, Contour initially alleged that Camp Saver, LLC and one or more of the Doe Defendants infringed the '954 and '694 Patents and violated the Utah Unfair Competition Act, Utah Code Ann. § 13-5a-102 *et seq*.

19.     On January 5, 2015, prior to its merger with iON, Contour filed and served on GoPro a First Amended Complaint adding GoPro as a defendant in the Utah Action.  *See* First Amended Complaint, *Contour, LLC v. GoPro, Inc., et al.*, Civil No 2:14-cv-00864 (D. Utah Jan. 5, 2015), ECF No. 4.  The First Amended Complaint alleged, *inter alia*, direct patent infringement by GoPro of both the '954 Patent and the '694 Patent.

20.     On March 27, 2015, prior to its merger with iON, Contour filed a Second Amended Complaint in the Utah Action.  GoPro and Camp Saver, LLC moved to dismiss certain

allegations in the Second Amended Complaint on April 27, 2015.  The motion to dismiss is pending.  Neither GoPro nor Camp Saver, LLC has filed an answer or a motion for summary judgment in the Utah Action.

21.     On April 20, 2015, GoPro filed petitions for *inter partes* review of certain challenged claims of the '954 Patent (IPR 2015-01080) and the '694 Patent (IPR 2015-01078) with the Patent Trial and Appeal Board ("PTAB").  On October 28, 2015, the PTAB instituted an *inter partes* review as to claims 1, 2, and 11–30 of the '954 Patent on certain grounds of unpatentability, but denied institution on claims 3–10, finding that GoPro had not shown a reasonable likelihood of prevailing on its assertion that claims 3–10 were unpatentable.  The PTAB also instituted an *inter partes* review as to claims 1–20 of the '694 Patent on October 28, 2015.

22.     The instant action was filed following the merger between iON and Contour and the assignment of the Asserted Patents to Contour IP Holding, LLC.  Plaintiffs have filed this action in order to realign parties after the merger and to advance the dispute in a forum more convenient to iON than the Utah Action.

**GoPro's Directly Infringing Acts**

23.     GoPro sells and/or offers for sale (or directs or induces others to sell and/or offer for sale) camera products (the "Infringing Products") in the United States, that infringe, either literally or under the doctrine of equivalents, at least one claim of the '954 Patent and at least one claim of the '694 Patent.

24.     The Infringing Products include at least the HERO3, HERO3+ and HERO4 cameras ("cameras with wireless capability").

25.     GoPro makes, uses, sells, and/or offers for sale (or directs or induces others to make, use, sell, and/or offer for sale) software (the "GoPro App") and/or camera mounts, in the

United States, that when used in combination with the GoPro cameras with wireless capability

infringe, either literally or under the doctrine of equivalents, at least one claim of the '954 Patent

and at least one claim of the '694 Patent.

26.    GoPro advertises the Infringing Products as on sale through its website,

GoPro.com.  For example, Exhibit 3 is a screenshot of GoPro.com taken on November 19th,

2015, displaying the infringing HERO4 camera and encouraging the visitor to "Shop Now" and

"Find the best GoPro for you."  (*See* Ex. 3.)

**GoPro's Knowledge of Infringement**

27.    On January 5, 2015, GoPro was properly served with a Summons and a copy of

the First Amended Complaint in the Utah Action.  The First Amended Complaint alleged, *inter*

*alia*, direct patent infringement by GoPro of both the '954 Patent and the '694 Patent.

28.    Since at least January 5, 2015, GoPro has had actual notice of the '954 and '694

Patents and actual notice that its cameras with wireless capability infringe one or more claims of

each of the '954 and '694 Patents.

**GoPro's Inducement of Infringement**

29.    Others, including end users, endorsers, suppliers, distributors and resellers of the

Infringing Products, have engaged and continue to engage in direct infringement of the '954

and '694 Patents.

30.    GoPro, with knowledge that the Infringing Products infringe the '954 and '694

Patents, has induced and continues to induce others to infringe the '954 and '694 Patents by

requiring others to manufacture, use, sale and/or offer for sale the Infringing Products.  GoPro

induces others to infringe the '954 and '694 Patents by entering into, performing, and requiring

performance under manufacturing, endorsement, supply, distribution, and/or reseller agreements

with others.

31.     GoPro advertises, demonstrates, and/or recommends infringing uses and/or provides instructions on how to engage in infringing uses of the Infringing Products through various forms and by various means, including but not limited to advertisements, websites, videos, product brochures, and product manuals.

32.     GoPro actively induces infringement of at least one claim of the '954 Patent and at least one claim of the '694 Patent by inducing infringing use of the cameras with wireless capability with the GoPro App by, *inter alia*, instructing others how to engage in infringing uses (*e.g.*, on websites, Facebook pages, product manuals and other media) and by entering into, performing and requiring performance under manufacturing, endorsement, supply, distribution, and/or reseller agreements with others that require use of the GoPro App in combination with the cameras with wireless capability.

33.     GoPro provides instructions on how to wirelessly view image data and control its cameras in the product manuals available for download on GoPro.com.  Specifically, each manual attached hereto provides instructions on how to connect a GoPro device to a smartphone or tablet via the GoPro App.  The user manuals also detail resolution and frames per second ("fps") as capture settings.  (*See* Ex. 4, User Manual HERO3 Silver at p. 22, 28, 46-47; Ex. 5, User Manual HERO3+ Black at p. 21, 27, 50-53; Ex. 6, User Manual HERO4 Black at p. 26, 56, 65.)

34.     Exhibit 7 is a screenshot of the GoPro web page for the GoPro App taken November 18th, 2015, wherein GoPro recommends using the GoPro App to "Get full remote control of all camera functions.  See what your camera sees with live preview for easy shot-framing."  (*See* Ex. 7 and http://shop.gopro.com/softwareandapp/gopro-app/GoPro-App.html.)

35.      Exhibit 8 is a screenshot of the GoPro web page with the programming schedule for "Jon Gruden's Field Guide," in which the third episode on the GoPro App is "going to illustrate how a coach can use the GoPro app to control the camera."  (*See* Ex. 8, screenshot taken 11/18/15 and https://gopro.com/news/gopro-presents-jon-grudens-field-guide.)

36.      GoPro has an account on the social media website Twitter.com ("Twitter") using the handle @GoPro.  GoPro has approximately 1.46 million followers on Twitter.  (*See* Ex. 9, screenshot taken 11/18/15 and https://twitter.com/GoPro.)  GoPro uses Twitter to promote the remote control and viewing features of the infringing GoPro cameras and GoPro App.

37.      For example, Exhibit 10 is a tweet from GoPro advertising the GoPro App and encouraging users to "Download our free mobile app for full camera control + live preview!" (*See* Ex. 10, screenshot taken 11/18/2015 of GoPro's tweet, and https://twitter.com/gopro/status/257126859865735168.)  Although this and some other social media posts in which GoPro teaches or recommends use of cameras with wireless capability pre-date the Asserted Patents, the posts remain searchable and active on the various social media websites.

38.      More recently, on November 3, 2015, GoPro posted a tweet with an embedded video of Episode 3 of Gruden's Field Guide on the GoPro App, which "illustrate[s] how a coach can use the GoPro App to control the camera [and] how to review footage immediately."  (*See* Ex. 11, screenshot taken 11/18/2015, and https://twitter.com/gopro/status/661619399174914048.)

39.      GoPro has an account on the social media website Facebook.com ("Facebook"). (See Ex. 12, screenshots taken 11/19/15 & https://www.facebook.com/gopro.)  GoPro uses

Facebook to promote the remote control and viewing features of the infringing GoPro cameras and App.

40.     For example, Exhibit 13 is a Facebook post from GoPro encouraging users to "Download our new free mobile app and enable full camera control and live preview for shot framing on your smartphone and tablet."  (*See* Ex. 13, screenshot taken 11/19/2015, and https://www.facebook.com/gopro/posts/165558483583124.)

41.     On August 31, 2015, GoPro posted a video to Facebook encouraging users who do not have the App to "download it from the App Store or Google Play."  (*See* Ex. 14, screenshot taken 11/19/2015, and https://www.facebook.com/gopro/videos/10153300182386919.)

42.     On September 5, 2015, GoPro posted to Facebook a photo taken by Coach Jimbo Smoak of the Charleston Trojans Baseball team, who "used the GoPro App to frame the shot." (*See* Ex. 15, screenshot taken 11/19/2015, and https://www.facebook.com/gopro/photos/a.383457956918.165320.50043151918/10153310541756919.)

43.     GoPro has a YouTube.com ("YouTube") channel with approximately 3,464,723 subscribers. (*See* Ex. 16, screenshot taken 11/19/15, and https://www.youtube.com/user/GoProCamera.)

44.     GoPro also has a YouTube channel specifically for tutorials and instruction where GoPro provides detailed use tutorials of the infringing wireless functionality of the cameras. (*See* Ex. 17, screenshot taken 11/19/15, and https://www.youtube.com/channel/UClwg08ECyHnm_RzY1wnZC1A.)

45.     Posted on the GoPro Tutorial Channel are links to step-by-step videos instructing users how to wirelessly connect to a GoPro camera for remote control and viewing. Currently available is a video entitled "The NEW GoPro App: Control. View. Share." instructing users how to use the wireless viewing and control features of a GoPro HERO3+. (See Ex. 18, screenshot taken 11/19/2015, and https://www.youtube.com/watch?v=vOxnKpZ4Uag.)

**GoPro's Contributory Infringement**

46.     GoPro makes, uses, sells and/or offers to sell components, including but not limited to cameras, camera accessories and/or the GoPro App that are a part of at least one claim of the '954 Patent and at least one claim of the '694 Patent and which have no substantial non-infringing use, knowing that the components are especially made or especially adapted for use in a direct infringement of the '954 and '694 Patents.

47.     GoPro actively contributes to direct infringement of at least one claim of the '954 Patent and at least one claim of the '694 Patent by others, either literally or under the doctrine of equivalents, by selling cameras and/or camera accessories and providing and/or making available for download the GoPro App for use with the Infringing Products.

48.     The GoPro cameras with wireless capability are especially made and/or especially adapted for use with the claimed invention of at least one claim of the '954 Patent and at least one claim of the '694 Patent and are not a staple article or commodity of commerce suitable for substantial non-infringing use.

49.     The GoPro App is especially made and/or especially adapted for use with the claimed invention of at least one claim of the '954 Patent and at least one claim of the '694 Patent and is not a staple article or commodity of commerce suitable for substantial non-infringing use.

50.     On information and belief, any non-infringing use of the GoPro cameras with wireless capability in combination with the GoPro App would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

**Harm to Plaintiffs Caused by GoPro's Infringement**

51.     GoPro is a direct competitor of Plaintiffs in the action camera market.

52.     On information and belief, at the end of 2012, GoPro introduced the HERO3 line of cameras that included wireless capability.

53.     On information and belief, prior to 2012, GoPro did not offer for sale any cameras with wireless capability.

54.     On information and belief, at about the same time, GoPro introduced the GoPro App for use with its cameras with wireless capability.

55.     GoPro causes the GoPro App to be made available for download from at least Google Play, the iTunes App Store, and the Windows Phone Store.

56.     Each of GoPro's cameras with wireless capability directly infringes one or more claims of each of the '954 and '694 Patents.

57.     On information and belief, GoPro's gross sales revenue increased from approximately $526 million in 2012 to approximately $986 million in 2013 (an 87% increase).

58.     On information and belief, GoPro's net profit nearly doubled from approximately $32 million in 2012 to over $60 million in 2013.

59.     On information and belief, GoPro's significant gains in sales revenue since 2012 and significant gains in net profit are attributable to its sales of cameras with wireless capability that infringe one or more claims of each of the '954 and '694 Patents.

60.     On information and belief, GoPro cameras with wireless capability that infringe one or more claims of each of the '954 and '694 Patents sell for approximately $70 more per camera than their non-infringing counterparts.

61.     On information and belief, GoPro holds the largest share of the action camera market.

62.     On information and belief, GoPro's share of the action camera market continues to grow due to sales of its cameras with wireless capability that infringe one or more claims of each of the '954 and '694 Patents.

63.     On information and belief, GoPro's success in capturing significant market share is attributable to its sales of cameras with wireless capability that infringe one or more claims of each of the '954 and '694 Patents.

64.     On information and belief, Plaintiffs' ability to expand their share of the action camera market based on the patented technologies set forth in the '954 and '694 Patents has been impaired as a direct result of GoPro's significant market share that has been generated as a result of its infringement of the '954 and '694 Patents.

65.     In addition to damages suffered by Plaintiffs, Plaintiffs have been and continue to be irreparably harmed due to loss of market share in the action camera market as a result of GoPro's infringement of the '954 and '694 Patents.  On information and belief, despite GoPro's knowledge of the '954 and '694 Patents since at least January 5, 2015, GoPro has not altered, modified or changed the Infringing Products to be outside the scope of the claims of the '954 Patent or '694 Patent, stopped selling or offering to sell the Infringing Products, or required any of its end users, endorsers, suppliers, distributors, or resellers to stop making, using, selling or

offering to sell the Infringing Products to avoid patent infringement of either the '954 Patent or '694 Patent.

66.    Since at least January 5, 2015, GoPro, with knowledge of the '954 and '694 Patents and its infringement, has willfully infringed and continues to willfully infringe the '954 and '694 Patents.

67.    Since at least January 5, 2015, GoPro, with knowledge of the '954 and '694 Patents and its infringement, has contributorily infringed and continues to contributorily infringe the '954 and '694 Patents.

68.    Since at least January 5, 2015, GoPro, with knowledge of the '954 and '694 Patents and its infringement, has actively induced others to infringe and continues to actively induce others to infringe the '954 and '694 Patents.

## CLAIM I
## DIRECT INFRINGEMENT OF THE '954 PATENT UNDER 35 U.S.C. § 271(a)

69.    Plaintiffs incorporate by reference the allegations set forth in paragraphs 1–68 as if fully set forth herein.

70.    The '954 Patent has at all times subsequent to its issue date been fully enforceable and is now fully enforceable.

71.    GoPro has been, and continues to be, making, using, selling and/or offering to sell, or directing others to sell and/or offer to sell, Infringing Products, which alone or in combination with other products offered by GoPro or third parties, come within the scope of one or more claims of the '954 Patent.  GoPro has thereby infringed the '954 Patent in violation of 35 U.S.C. § 271(a).

72.    GoPro has been, and continues to be, making, using, selling and/or offering to sell, or directing others to make, use, sell and/or offer to sell, Infringing Products, which alone or

in combination with other products offered by GoPro or third parties, come within a range of equivalents of one or more claims of the '954 Patent.  GoPro has thereby infringed the '954 Patent in violation of 35 U.S.C. § 271(a).

73.    The making, using, selling and/or offering to sell Infringing Products by GoPro has been without authority or license from Plaintiffs and in violation of Plaintiffs' exclusive rights under the '954 Patent.

74.    Plaintiffs have been injured and damaged monetarily and otherwise by GoPro's infringement of the '954 Patent.  GoPro is therefore liable to Plaintiffs for the damages suffered by Plaintiffs, in an amount not less than a reasonable royalty.

75.    GoPro's continuing acts of infringement are willful, entitling Plaintiffs to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

76.    By this action, Plaintiffs seek recovery of their damages pursuant to 35 U.S.C. § 284 including, without limitation, lost profits and a reasonable royalty.  However, such monetary damages will not adequately compensate Plaintiffs for the infringement of the '954 Patent.  As demonstrated by GoPro's meteoric increase in sales of Infringing Products, the patented technology has displaced, and will continue to displace, from the market cameras not equipped with wireless capabilities.  As the owner and exclusive licensee of the '954 Patent, Plaintiffs are entitled to the exclusive use and exploitation of the '954 Patent to capture market share in the area of personal cameras.  Because Plaintiffs will be unable to acquire the share of the market to which their exclusive use of the '954 Patent would otherwise cause, Plaintiffs will be irreparably injured during the pendency of this action unless GoPro, their direct competitor, is

enjoined from infringing the '954 Patent.  Thus, Plaintiffs are entitled to preliminary and permanent injunctions against GoPro.

## CLAIM II
## INDUCED INFRINGEMENT OF THE '954 PATENT UNDER 35 U.S.C. § 271(b)

77.     Plaintiffs incorporate by reference the allegations set forth in paragraphs 1–76 as if fully set forth herein.

78.     GoPro has indirectly infringed and is still indirectly infringing the '954 Patent in violation of 35 U.S.C. § 271(b), by actively inducing infringement of the '954 Patent.

79.     GoPro, with knowledge that the Infringing Products infringe the '954 Patent, has induced and continues to induce others to directly infringe the '954 Patent by requiring one or more its endorsers, suppliers, distributors and resellers to manufacture, use, sale and/or offer for sale the Infringing Products.  At the latest, GoPro became aware of the '954 Patent and its infringement when it was served with the First Amended Complaint in the Utah Action, yet GoPro continues to actively and knowingly induce others to directly infringe the '954 Patent.

80.     Despite knowledge that the Infringing Products infringe the '954 Patent, GoPro continues to take numerous active steps to encourage and aid and abet others' direct infringement of the '954 Patent.  These active steps include, *inter alia*, encouraging others to manufacture, use, sell or resell Infringing Products, advertising the availability of Infringing Products for purchase, advertising infringing uses and/or instructing how to engage in infringing uses of the Infringing Products (*e.g.*, on websites, Facebook pages, product manuals and other media), demonstrating and recommending infringing configurations and uses, and providing instructions and answering questions on infringing uses.

81.     Plaintiffs have been injured and damaged monetarily and otherwise by GoPro's indirect infringement of the '954 Patent in violation of 35 U.S.C. § 271(b).  GoPro is therefore liable to Plaintiffs for the damages suffered by Plaintiffs.

82.     GoPro's continuing acts of indirect infringement with knowledge that the Infringing Products infringe the '954 Patent are willful, entitling Plaintiffs to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

83.     By this action, Plaintiffs seek recovery of their damages pursuant to 35 U.S.C. § 284 including, without limitation, lost profits and a reasonable royalty.  However, such monetary damages will not adequately compensate Plaintiffs for the infringement of the '954 Patent.  As demonstrated by GoPro's meteoric increase in sales of Infringing Products, the patented technology has displaced, and will continue to displace, from the market cameras not equipped with wireless capabilities.  As the owner and exclusive licensee of the '954 Patent, Plaintiffs are entitled to the exclusive use and exploitation of the '954 Patent to capture market share in the area of personal cameras.  Because Plaintiffs will be unable to acquire the share of the market to which their exclusive use of the '954 Patent would otherwise cause, Plaintiffs will be irreparably injured during the pendency of this action unless GoPro, their direct competitor, is enjoined from infringing the '954 Patent.  Thus, Plaintiffs are entitled to preliminary and permanent injunctions against GoPro.

**CLAIM III**
**CONTRIBUTORY INFRINGEMENT OF THE '954 PATENT UNDER 35 U.S.C. § 271(c)**

84.     Plaintiffs incorporate by reference the allegations set forth in paragraphs 1–83 as if fully set forth herein.

-16-

85.     GoPro has committed and continues to commit acts of contributory infringement of the '954 Patent in violation of 35 U.S.C. § 271(c), by, *inter alia*, offering to sell and selling components that are a material part of the claimed invention and which have no substantial non-infringing uses, knowing that the components are especially made or especially adapted for use in a direct infringement of the '954 Patent.

86.     These acts of contributory infringement of the '954 Patent include, *inter alia*, making, using, selling and/or offering for sale cameras, camera accessories and/or the GoPro App, that are especially made and adapted for use in directly infringing the '954 Patent.

87.     At the latest, GoPro became aware of the '954 Patent and its infringement when it was served with the First Amended Complaint in the Utah Action, yet GoPro continues to engage in contributory infringement of the '954 Patent.

88.     Plaintiffs have been injured and damaged monetarily and otherwise by GoPro's contributory infringement of the '954 Patent in violation of 35 U.S.C. § 271(c).  GoPro is therefore liable to Plaintiffs for the damages suffered by Plaintiffs.

89.     GoPro's continuing acts of contributory infringement with knowledge that the Infringing Products infringe the '954 Patent are willful, entitling Plaintiffs to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

90.     By this action, Plaintiffs seek recovery of their damages pursuant to 35 U.S.C. § 284 including, without limitation, lost profits and a reasonable royalty.  However, such monetary damages will not adequately compensate Plaintiffs for the infringement of the '954 Patent.  As demonstrated by GoPro's meteoric increase in sales of Infringing Products, the patented technology has displaced, and will continue to displace, from the market cameras not

equipped with wireless capabilities.  As the owner and exclusive licensee of the '954 Patent,

Plaintiffs are entitled to the exclusive use and exploitation of the '954 Patent to capture market

share in the area of personal cameras.  Because Plaintiffs will be unable to acquire the share of

the market to which their exclusive use of the '954 Patent would otherwise cause, Plaintiffs will

be irreparably injured during the pendency of this action unless GoPro, their direct competitor, is

enjoined from infringing the '954 Patent.  Thus, Plaintiffs are entitled to preliminary and

permanent injunctions against GoPro.

**CLAIM IV**
**<u>DIRECT INFRINGEMENT OF THE '694 PATENT UNDER 35 U.S.C. § 271(a)</u>**

91.     Plaintiffs incorporate by reference the allegations set forth in paragraphs 1–90 as

if fully set forth herein.

92.     The '694 Patent has at all times subsequent to its issue date been fully enforceable

and is now fully enforceable.

93.     GoPro has been, and continues to be, making, using, selling and/or offering to

sell, or directing others to sell and/or offer to sell, Infringing Products, which alone or in

combination with other products offered by GoPro or third parties, come within the scope of one

or more claims of the '694 Patent.  GoPro has thereby infringed the '694 Patent in violation of

35 U.S.C. § 271(a).

94.     GoPro has been, and continues to be, making, using, selling and/or offering to

sell, or directing others to make, use, sell and/or offer to sell, Infringing Products, which alone or

in combination with other products offered by GoPro or third parties, come within a range of

equivalents of one or more claims of the '694 Patent.  GoPro has thereby infringed the '694

Patent in violation of 35 U.S.C. § 271(a).

95.     The making, using, selling and/or offering to sell Infringing Products by GoPro has been without authority or license from Plaintiffs and in violation of Plaintiffs' exclusive rights under the '694 Patent.

96.     Plaintiffs have been injured and damaged monetarily and otherwise by GoPro's infringement of the '694 Patent.  GoPro is therefore liable to Plaintiffs for the damages suffered by Plaintiffs, in an amount not less than a reasonable royalty.

97.     GoPro's continuing acts of infringement are willful, entitling Plaintiffs to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

98.     By this action, Plaintiffs seek recovery of their damages pursuant to 35 U.S.C. § 284 including, without limitation, lost profits and a reasonable royalty.  However, such monetary damages will not adequately compensate Plaintiffs for the infringement of the '694 Patent.  As demonstrated by GoPro's meteoric increase in sales of Infringing Products, the patented technology has displaced, and will continue to displace, from the market cameras not equipped with wireless capabilities.  As the owner and exclusive licensee of the '694 Patent, Plaintiffs are entitled to the exclusive use and exploitation of the '694 Patent to capture market share in the area of personal cameras.  Because Plaintiffs will be unable to acquire the share of the market to which their exclusive use of the '694 Patent would otherwise cause, Plaintiffs will be irreparably injured during the pendency of this action unless GoPro, their direct competitor, is enjoined from infringing the '694 Patent.  Thus, Plaintiffs are entitled to preliminary and permanent injunctions against GoPro.

## CLAIM V
## INDUCED INFRINGEMENT OF THE '694 PATENT UNDER 35 U.S.C. § 271(b)

99.     Plaintiffs incorporate by reference the allegations set forth in paragraphs 1–98 as if fully set forth herein.

100.     GoPro has indirectly infringed and is still indirectly infringing the '694 Patent in violation of 35 U.S.C. § 271(b), by actively inducing infringement of the '694 Patent.

101.     GoPro, with knowledge that the Infringing Products infringe the '694 Patent, has induced and continues to induce others to directly infringe the '694 Patent by requiring one or more its endorsers, suppliers, distributors and resellers to manufacture, use, sale and/or offer for sale the Infringing Products.  At the latest, GoPro became aware of the '694 Patent and its infringement when it was served with the First Amended Complaint in the Utah Action, yet GoPro continues to actively and knowingly induce others to directly infringe the '694 Patent.

102.     Despite knowledge that the Infringing Products infringe the '694 Patent, GoPro continues to take numerous active steps to encourage and aid and abet others' direct infringement of the '694 Patent.  These active steps include, *inter alia*, encouraging others to manufacture, use, sell or resell Infringing Products, advertising the availability of Infringing Products for purchase, advertising infringing uses and/or instructing how to engage in infringing uses of the Infringing Products (*e.g.*, on websites, Facebook pages, product manuals and other media), demonstrating and recommending infringing configurations and uses, and providing instructions and answering questions on infringing uses.

103.     Plaintiffs have been injured and damaged monetarily and otherwise by GoPro's indirect infringement of the '694 Patent in violation of 35 U.S.C. § 271(b).  GoPro is therefore liable to Plaintiffs for the damages suffered by Plaintiffs.

104.     GoPro's continuing acts of indirect infringement with knowledge that the
Infringing Products infringe the '694 Patent are willful, entitling Plaintiffs to increased damages
under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under
35 U.S.C. § 285.

105.     By this action, Plaintiffs seek recovery of their damages pursuant to 35 U.S.C.
§ 284 including, without limitation, lost profits and a reasonable royalty.  However, such
monetary damages will not adequately compensate Plaintiffs for the infringement of the '954
Patent.  As demonstrated by GoPro's meteoric increase in sales of infringing products, the
patented technology has displaced, and will continue to displace, from the market cameras not
equipped with wireless capabilities.  As the owner and exclusive licensee of the '694 Patent,
Plaintiffs are entitled to the exclusive use and exploitation of the '694 Patent to capture market
share in the area of personal cameras.  Because Plaintiffs will be unable to acquire the share of
the market to which their exclusive use of the '694 Patent would otherwise cause, Plaintiffs will
be irreparably injured during the pendency of this action unless GoPro, their direct competitor, is
enjoined from infringing the '694 Patent.  Thus, Plaintiffs are entitled to preliminary and
permanent injunctions against GoPro.

## COUNT VI
## CONTRIBUTORY INFRINGEMENT OF THE '694 PATENT UNDER 35 U.S.C. § 271(c)

106.     Plaintiffs incorporate by reference the allegations set forth in paragraphs 1–105 as
if fully set forth herein.

107.     GoPro has committed and continues to commit acts of contributory infringement
of the '694 Patent in violation of 35 U.S.C. § 271(c), by, *inter alia*, offering to sell and selling
components that are a material part of the claimed invention and which have no substantial non-

infringing uses, knowing that the components are especially made or especially adapted for use in a direct infringement of the '694 Patent.

108.    These acts of contributory infringement of the '694 Patent include, *inter alia*, making, using, selling and/or offering for sale cameras, camera accessories and/or the GoPro App, that are especially made and adapted for use in directly infringing the '694 Patent.

109.    At the latest, GoPro became aware of the '694 Patent and its infringement when it was served with the First Amended Complaint in the Utah Action, yet GoPro continues to engage in contributory infringement of the '694 Patent.

110.    Plaintiffs have been injured and damaged monetarily and otherwise by GoPro's contributory infringement of the '694 Patent in violation of 35 U.S.C. § 271(c).  GoPro is therefore liable to Plaintiffs for the damages suffered by Plaintiffs.

111.    GoPro's continuing acts of contributory infringement with knowledge that the Infringing Products infringe the '694 Patent are willful, entitling Plaintiffs to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

112.    By this action, Plaintiffs seek recovery of their damages pursuant to 35 U.S.C. § 284 including, without limitation, lost profits and a reasonable royalty.  However, such monetary damages will not adequately compensate Plaintiffs for the infringement of the '694 Patent.  As demonstrated by GoPro's meteoric increase in sales of Infringing Products, the patented technology has displaced, and will continue to displace, from the market cameras not equipped with wireless capabilities.  As the owner and exclusive licensee of the '694 Patent, Plaintiffs are entitled to the exclusive use and exploitation of the '694 Patent to capture market share in the area of personal cameras.  Because Plaintiffs will be unable to acquire the share of

the market to which their exclusive use of the '694 Patent would otherwise cause, Plaintiffs will be irreparably injured during the pendency of this action unless GoPro, their direct competitor, is enjoined from infringing the '694 Patent.  Thus, Plaintiffs are entitled to preliminary and permanent injunctions against GoPro.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the following relief:

a)      That this Court enter a judgment that GoPro has directly and indirectly infringed and is directly and indirectly infringing one or more claims of the '954 and '694 Patents and that such direct and indirect infringement by GoPro has been willful;

b)      That this Court enter a judgment that GoPro has induced others to infringe one or more claims of the '954 Patent and one or more claims of the '694 Patent and that such induced infringement by GoPro has been willful;

c)      That this Court enter a judgment that GoPro has contributorily infringed one or more claims of the '954 Patent and one or more claims of the '694 Patent and that such contributory infringement by GoPro has been willful;

d)      That this Court enter a judgment and order preliminarily and permanently enjoining GoPro, its employees and agents, and any person in active concert or participation with GoPro, from directly or indirectly infringing the '954 Patent and '694 Patents;

e)      That this Court enter a judgment against GoPro awarding damages adequate to compensate Plaintiffs for the direct and indirect infringement by GoPro of the '954 Patent and '694 Patents, including enhanced damages up to three times the amount of compensatory damages for GoPro's willful infringement and any supplemental damages for any continuing post-verdict infringement until entry of a final judgment and cessation of such infringement;

f)      That this Court assess pre-judgment and post-judgment interest and costs against

GoPro, together with an award of such interest and costs, in accordance with 35 U.S.C. § 284;

g)      That this Court render a finding that this case is exceptional and award to

Plaintiffs their costs and reasonable attorneys' fees, as provided by 35 U.S.C. § 285; and

h)      That this Court grant Plaintiffs such other and further relief as the Court may

deem just, proper, and equitable.

## **JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand a jury trial

as to all matters so triable.

*/s/ John W. Shaw*
John W. Shaw (No. 3362)
Andrew E. Russell (No. 5382)
SHAW KELLER LLP
300 Delaware Avenue
Suite 1120
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
arussell@shawkeller.com
*Attorneys for Plaintiffs*
*Contour IP Holding, LLC and*
*Ion Worldwide, Inc.*

OF COUNSEL:
Paul M. Schoenhard
Nicole M. Jantzi
ROPES & GRAY LLP
2099 Pennsylvania Avenue NW
Washington, DC 20006-6807
(202) 508-4600


Dated:  November 30, 2015