UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CONTOUR IP HOLDING, LLC,

          Plaintiff,

     v.

GOPRO, INC.,

          Defendant.

Case No. 17-cv-04738-WHO

**ORDER REGARDING CLAIM CONSTRUCTION; GRANTING IN PART ADMINISTRATIVE MOTION TO FILE UNDER SEAL**

Re: Dkt. No. 232

**INTRODUCTION**

Contour IP Holding, LLC ("CIPH") brings suit against GoPro, Inc. ("GoPro") for infringing two patents, United States Patent No. 8,890,954 ("the '954 patent") and No. 8,896,694 ("the '694 patent"). Both patents relate to mountable and viewfinderless point of view video cameras with capabilities to wirelessly connect to a personal portable device. Once connected, the user can adjust camera settings and preview the image prior to recording.

The parties have asked me to construe twelve terms in dispute, and CIPH filed their opening brief along with an administrative motion to file materials under seal. I address the administrative motion in this order. Based on the briefing, the tutorial, and the arguments presented at the hearing, I construe the terms as set forth below.

**BACKGROUND**

The '694 patent, issued on November 25, 2014, is a continuation of the '954 patent, issued on November 18, 2014. Both patents are titled, "Portable Digital Video Camera Configured for Remote Image Acquisition Control and Viewing." They have the same abstract and specification language, but different claims. The '954 patent and '694 patents relate to wireless preview and control of the video streams produced by the camera, while only the '694 patent relates to mounts.

United States District Court
Northern District of California

The inventions described in the patents allow users to capture point of view video in a hands-free manner that is streamed to a separate portable device in real time. The portable digital video cameras are preferably used with GPS and Bluetooth technology to provide control and viewing capability from a personal portable device.

### AGREED UPON TERMS

The parties agree on the construction of the following terms in the '694 patent:

| Term | Agreed Upon Construction |
|---|---|
| **(1)** <br> **"simultaneously"** <br><br> '694: 20 (depends from claim 1 containing term) | At the same time |
| **(2)** <br> **"user"** <br><br> '694: 11 | A human being or a person |
| **(3)** <br> **"scene relates to an activity in which the user of the video camera is about to engage"** <br><br> '694: 20 (depends from claim 1 containing term) | Scene relates to an activity in which the person using the video camera is about to engage |
| **(4)** <br> **"user of the personal portable computing device"** <br><br> '694: 4 (depends from claim 3 containing term), 20 (depends from claim 1 containing term) | Plain and ordinary meaning |
| **(5)** <br> **"hands-free compact portable video camera"** | Plain and ordinary meaning |

**LEGAL STANDARD**

Claim construction is a matter of law. *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). Terms contained in claims are "generally given their ordinary and customary meaning." *Vitronics*, 90 F.3d at 1582. When determining the proper construction of a claim, a court begins with the intrinsic evidence of record, consisting of the claim language, the patent specification, and, if in evidence, the prosecution history. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005); *see also Vitronics*, 90 F.3d at 1582. "A claim term used in multiple claims should be construed consistently . . . ." *Inverness Med. Switzerland GmbH v. Princeton Biomeditech Corp.*, 309 F.3d 1365, 1371 (Fed. Cir. 2002).

"The appropriate starting point [ ] is always with the language of the asserted claim itself." *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1186 (Fed. Cir. 1998). "[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Phillips*, 415 F.3d at 1312. "There are only two exceptions to this general rule: 1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution." *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012).

"Importantly, the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Phillips*, 415 F.3d at 1313. "Claims speak to those skilled in the art," but "[w]hen the meaning of words in a claim is in dispute, the specification and prosecution history can provide relevant information about the scope and meaning of the claim." *Electro Med. Sys., S.A. v. Cooper Life Scis., Inc.*, 34 F.3d 1048, 1054 (Fed. Cir. 1994) (citations omitted). "[T]he specification is always highly relevant to the claim construction analysis.

1    Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Vitronics*,

2    90 F.3d at 1582. "However, claims are not to be interpreted by adding limitations appearing only

3    in the specification." *Id.* "Thus, although the specifications may well indicate that certain

4    embodiments are preferred, particular embodiments appearing in a specification will not be read

5    into the claims when the claim language is broader than such embodiments." *Id.* Conversely,

6    "where [ ] the claim language is unambiguous, [the Federal Circuit has] construed the claims to

7    exclude all disclosed embodiments." *Lucent Techs., Inc. v. Gateway, Inc.*, 525 F.3d 1200, 1215-

8    16 (Fed. Cir. 2008). "[T]he description may act as a sort of dictionary, which explains the

9    invention and may define terms used in the claims," and the "patentee is free to be his own

10   lexicographer," but "any special definition given to a word must be clearly defined in the

11   specification." *Markman*, 517 U.S. at 989-90.

12        On the other hand, it is a fundamental rule that "claims must be construed so as to be

13   consistent with the specification." *Phillips*, 415 F.3d at 1316. "The construction that stays true to

14   the claim language and most naturally aligns with the patent's description of the invention will be,

15   in the end, the correct construction." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d

16   1243, 1250 (Fed. Cir. 1998).

17        Finally, the court may consider the prosecution history of the patent, if in evidence.

18   *Markman*, 52 F.3d at 980. The prosecution history may "inform the meaning of the claim

19   language by demonstrating how the inventor understood the invention and whether the inventor

20   limited the invention in the course of prosecution, making the claim scope narrower than it would

21   otherwise be." *Phillips*, 415 F.3d at 1317 (citing *Vitronics*, 90 F.3d at 1582-83); *see also Chimie

22   v. PPG Indus., Inc.*, 402 F.3d 1371, 1384 (Fed. Cir. 2005) ("The purpose of consulting the

23   prosecution history in construing a claim is to exclude any interpretation that was disclaimed

24   during prosecution.") (internal quotations omitted).

25        In most situations, analysis of this intrinsic evidence alone will resolve claim construction

26   disputes. *Vitronics*, 90 F.3d at 1583. However, "it is entirely appropriate . . . for a court to consult

27   trustworthy extrinsic evidence to ensure that the claim construction it is tending to from the patent

28   file is not inconsistent with clearly expressed, plainly apposite, and widely held understandings in

4

the pertinent technical field." *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1309

(Fed. Cir. 1999).  Extrinsic evidence "consists of all evidence external to the patent and

prosecution history, including expert and inventor testimony, dictionaries, and learned treatises."

*Markman*, 52 F.3d at 980.  All extrinsic evidence should be evaluated in light of the intrinsic

evidence. *Phillips*, 415 F.3d at 1319.  Courts should not rely on extrinsic evidence in claim

construction to contradict the meaning of claims discernible from examination of the claims, the

written description, and the prosecution history. *Pitney Bowes*, 182 F.3d at 1308 (citing *Vitronics*,

90 F.3d at 1583).  While extrinsic evidence may guide the meaning of a claim term, such evidence

is less reliable than intrinsic evidence. *Phillips*, 415 F.3d at 1318-19.

**DISCUSSION**

**I.    DISPUTED CLAIM TERMS**

**A.    Real Time**

The claim term "real time" is used in both the '954 patent claim 27, and the '694 patent

claims 1 and 3.  For example, as used in claim 27 of the '954 patent:

> an image sensor configured to capture light propagating through the
> lens and representing a scene, and produce **real time** video image
> data of the scene,

| Term | CIPH's Proposal | GoPro's Proposal | Claim Construction |
|---|---|---|---|
| **(1)**<br>**"real time"**<br><br>'954: 11, 30 (depends from claim 27 containing term)<br><br>'694: 4 (depends from claim 3 containing term), 11, 20 (depends from claim 1 containing term) | Without perceived delay | The actual time when an event takes place | without perceived delay |

GoPro equates real time to actual time, while CIPH proposes a construction based on the

user's perception.  CIPH argues that since it is physically impossible to process and transmit data without any delay, the term "real time" cannot be construed as the actual time when an event takes place.  I agree.

The claims state that the invention is a camera including an image sensor "configured to capture light propagating through the lens and representing the scene, and produce real time video image data of the scene . . ."  '694 patent at 31:26-28.  It is unambiguous in the claims that "real time" is not "actual time" given that the technology first has to capture light and produce the image data through a wireless stream.

The specification also explains that the invention uses Bluetooth to transmit data between the camera and a user's personal portable device.  According to the '954 patent, Bluetooth technology synchronizes video data, in part by storing on-screen display frames and audio in advance of the memory of the camera, to limit errors and delays.  '954 patent at 23:34-46.  Persons of ordinary skill in the art ("POSITA") would understand that it is impossible to display data instantaneously.  Real time would not mean actual time, but instead refers to the time after any unperceived transmission delays.

Nevertheless, GoPro argues that because the specification uses the terms "real time" and "near real time," the term real time cannot mean without perceived delay.  I do not agree that the "near real time" word choice in the specification is dispositive for at least two reasons.  First, adding the modifier "near" before "real time," does not change the meaning of the underlying term.  For example, both parties cite Laura O'Donnell, the first-named inventor of the disputed patents.  She testified that "in near real time" means "close to real time so perhaps not precisely real time, but with limited to no delay."  Resp. Br., Ex. I at 3:10-12 (Dkt. No. 235-12).  O'Donnell's attempt to distinguish the two terms acknowledges that real time (without perceived delay) inherently relates to a perceived delay to the user (near real time) after any processing or transmission delays.  A POSITA would not be confused by the presence of "near real time" and "real time" in the specification.  The claims discuss broadly that the camera produces "real time video image data."  '954 patent at 33:14; '694 patent at 31:28.  In contrast, the specifications only discuss "near real time" in the context of the narrower embodiment of adjusting the position of the

camera by wirelessly transmitting photographs in rapid succession. '954 patent at 19:56-20:6; Fig. 33.

GoPro also proposes, for the first time at the hearing, that there is a distinction in the specification between real time at the receiving end and at the producing end. According to GoPro, references to real time appear on the producing side of the patent while near real time appears on the receiving end. I find this observation unpersuasive. Nothing in the specification distinguishes the meaning of real time at the receiving or producing side of the patent, and there is no indication that the meaning of the claim term changes in certain limited embodiments. As discussed above, adding the modifier "near" before "real time," does not change the meaning of the underlying term.

Finally, GoPro contends that the term "real time" is indefinite if CIPH's proposal is adopted. It is not indefinite; the claim and specification language is clear. As explained by the Supreme Court, "a patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2124 (2014). The claim language must be "precise enough to afford clear notice of what is claimed, thereby apprising the public of what is still open to them." *Id.* (internal quotations omitted). While there is a difference between "near real time" and "real time," the claims and specifications do not fail to inform a POSITA about the scope of the invention.

GoPro's construction that real time equals actual time is physically impossible, and not indicated by the claims or specifications. Both "real time" and "near real time" are concepts understood relative to the user's perception after delays. Therefore, **real time** is defined as: **without perceived delay**.

## B.    Point of View Digital Video Camera

The term point of view digital video camera appears in the preamble of independent claims 1, 3, 11 and 27 of the '954 patent. For example, in claim 27 of the '954 patent:

> A portable, **point of view digital video camera**, comprising: a lens;
> an image sensor configured to capture light propagating through the
> lens and representing a scene, wherein the video camera does not

include a screen for viewing the scene; a wireless connection protocol device configured to send real time image content by wireless transmission directly to and receive control signals or data signals by wireless transmission directly from a personal portable computing device; and a camera processor. . .

| Term | CIPH's Proposal | GoPro's Proposal | Claim Construction |
|------|-----------------|------------------|--------------------|
| **(2)** **"point of view digital video camera"** '954: 11, 30 (depends from claim 27 containing term) | The preamble is not limiting. To the extent the preamble is limiting, plain and ordinary meaning. To the extent the claim requires construction: A digital video camera that captures the camera's view | A digital video camera designed to capture the scene in a person's view | Plain and ordinary meaning |

A preamble may be construed as limiting if it is "necessary to give life, meaning, and vitality to the claim." *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1305 (Fed. Cir. 1999). Where other terms in the body of the claim derive "antecedent basis" from the preamble, then the preamble is commonly found to be limiting. *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002). If prosecution history reveals that a preamble was added to overcome a prior art rejection, then it could be construed as a separate limitation as well. *See Am. Med. Sys., Inc. v. Biolitec, Inc.*, 618 F.3d 1354, 1359 (Fed. Cir. 2010) ("there is no suggestion in the prosecution history of the '764 patent that the inventors added the phrase 'photoselective vaporization' in order to distinguish their invention from the prior art."). But if the preamble merely gives a thing a name or describes a use, it is not limiting. *Catalina Mktg. Int'l, Inc.*, 289 F.3d at 809 ("preambles describing the use of an invention generally do not limit claims because the patentability of apparatus or composition claims depends on the claimed structure, not on the use or purpose of that structure.").

GoPro argues that the preamble term "point of view digital camera" limits the claims because without the term they would not know what types of point of view cameras are covered in

the patents. CIPH argues that the preamble is not limiting because it describes a structurally complete invention that is not affected by the preamble term. Considering both arguments, I find the preamble is limiting.

Without the preamble term, seemingly anything can be a camera under the disputed patents. The '954 patent independent claims 11 and 27 describe an invention that is structurally understandable, but a "point of view" camera is not merely a name, and it is not exactly a use for the invention either. *Catalina Mktg. Int'l, Inc.*, 289 F.3d at 809. When asked what makes a camera "point of view," O'Donnell, the first-named inventor, highlighted how the invention is person-relative. Resp. Br., Ex. I at 4:15-18 (Dkt. No. 235-12) ("My understanding of the term 'point of view' with regards to point of view video cameras or camcorders is that it was not taken by a third party."). As such, the preamble term gives some "life, meaning, and vitality to the claim." *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1305 (Fed. Cir. 1999). But at the same time, point of view is a readily understood term and should be given its plain and ordinary meaning. No claim construction is necessary here.

## C. The "Generate" and "Generating" Terms

The "generate" and "generating" terms are used in both the '954 and the '694 patents in various claims. For example in claim 11 of the '694 patent:

> **generating** video image content corresponding to the scene to be recorded at a first quality and at a second quality, wherein the first quality is lower than the second quality . . .

Another example is in claim 27 of the '954 patent:

> **generate** from the video image data a first image data stream and a second image data stream, wherein the second image data stream comprises a higher resolution image than the first image data stream . . .

| Term | CIPH's Proposal | GoPro's Proposal | Claim Construction |
|------|-----------------|------------------|--------------------|
| **(3)** **"generate from the video image data a first image data stream and a second image data stream, wherein** | Plain and ordinary meaning | record image data streams form the video image data in two formats, high quality and low quality, at the same time or in parallel, where the | record in parallel from the video image data a first image data stream and a second image data stream, wherein the second image data stream is a higher |

| Term | | | |
|---|---|---|---|
| **the second image data stream is a higher quality than the first image data stream"**<br><br>'954: 11 | | lower quality image data stream is streamed after the recorded action has taken place | quality than the first image data stream |
| **(4)**<br>**"generate from the video image data a first image data stream and a second image data stream, wherein the second image data stream comprises a higher resolution image than the first image data stream"**<br><br>'954:30 (depends from claim 27 containing term) | Plain and ordinary meaning | record image data streams from the video image data in two formats, high resolution and low resolution, at the same time or in parallel, where the lower resolution image data stream is streamed after the recorded action has taken place | record in parallel from the video image data a first image data stream and a second image data stream, wherein the second image data stream comprises a higher resolution image than the first image data stream |
| **(5)**<br>**"generate the video image content simultaneously at a first resolution and at a second resolution, the video image content at the first resolution and the second resolution corresponding to the video image data representing the scene to be recorded, wherein the first resolution is lower than the second resolution"** | Plain and ordinary meaning | record the video image content in two formats, high resolution and low resolution, at the same time, where the lower quality image data stream is streamed after the recorded action has taken place | record in parallel the video image content simultaneously at a first resolution and at a second resolution, the video image content at the first resolution and the second resolution corresponding to the video image data representing the scene to be recorded, wherein the first resolution is lower than the second resolution |

| | | | |
|---|---|---|---|
| '694: 20 (depends from claim 1 containing term) | | | |
| **(6)** **"generate first video image content and second video image content corresponding to the video image data representing the scene, wherein the second video image content is a higher quality than the first video image content"** '694: 4 (depends from claim 3 containing term) | Plain and ordinary meaning | record video image content from the video image data in two formats, high quality and low quality, at the same time or in parallel, where the lower quality video image content is streamed after the recorded action has taken place | record in parallel first video image content and second video image content corresponding to the video image data representing the scene, wherein the second video image content is a higher quality than the first video image content |
| **(7)** **"generating video image content corresponding to the scene to be recorded at a first quality and at a second quality, wherein the first quality is lower than the second quality"** '694: 11 | Plain and ordinary meaning | recording video image content corresponding to the scene in two formats, high quality and low quality, at the same time or in parallel, where the lower quality video image content is streamed after the recorded action has taken place | recording video image content corresponding to the scene to be recorded at a first quality and at a second quality, in parallel, wherein the first quality is lower than the second quality |

CIPH argues that these "generating" terms do not need construction other than their plain and ordinary meaning. GoPro is attempting to replace "generate" with "record," as well as incorporate the concept of timing. Specifically, GoPro proposes adding "at the same time or in parallel" and "after the recorded action has taken place" to the claim.

### 1. "generating" or "recording"

Reading the claim language with the specification lends itself to GoPro's interpretation

11

that "generating" is synonymous with "recording" video image content. *Renishaw PLC,* 158 F.3d at 1250 ("The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction.").

CIPH asserts that two of the five "generating" claim terms contain language that strongly suggests generating and recording are not interchangeable. For example, the claims discuss "generating" video content corresponding to a "scene to be recorded." '694 patent at 29:14-19; 31:36-38. But it does not provide evidence in the specification for this construction. On the contrary, when read in light of the specification, the "generating" terms take on different meaning.

The specification only discusses the high and low resolution formats once, in the context of recording rather than generating video image content. As GoPro cites, this embodiment entails "recording video in two formats," that are "streamed or played back after the recorded action has taken place." '954 patent at 20:7-16; '694 patent at 20:9-18. CIPH argues that, as a matter of law, the broader claim term should not be limited by a single embodiment. *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1117 (Fed. Cir. 2004) ("even where a patent describes only a single embodiment, claims will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using words or expressions of manifest exclusion or restriction") (internal quotations omitted). But the use of "recording" to reference the two video formats before streaming or play back clarifies the claims according to the specification, it does not limit them. *Phillips*, 415 F.3d at 1316. ("claims must be construed so as to be consistent with the specification.").

The term "generate" should be defined as "record" to make the claims consistent with the specification language. Adding "after the recorded action has taken place" to the end of the construction is unnecessary and potentially confusing.

### 2. "in parallel" and "at the same time"

In addition to the specification language above, GoPro cites prosecution history to support adding "at the same time or in parallel" to the construction. Resp. Br., Ex. J at 78. GoPro asserts that CIPH inserted the "in parallel" language to overcome prior art, and that a POSITA would consider "in parallel" as "at the same time," if it is distinct from recording two resolutions "in

sequence." However, the prosecution history also discussed that the camera does not require recording high and low resolution video "at the same time," even if they are created in parallel. *Id.*

CIPH also maintains that claim differentiation applies. As an initial matter, only one of the generating terms contains the word "simultaneously," but the parties agreed to construe this separately as "at the same time." '694 patent at 29:14-19. Inputting "at the same time" into the term is not necessary given the separate construction of the word simultaneously. For the other "generating" terms, the prosecution history discussed above reveals that other embodiments included recording the two formats in parallel, but not necessarily at the same time. Considering that the claims were written distinctly, with embodiments that could create the two formats of video image content in parallel but either at the same time or different times, all the claims should not be limited to match a single narrower "at the same time" limitation. *See SRI Int'l*, 775 F.2d at 1122 (discussing the "settled law that when a patent claim does not contain a certain limitation and another claim does, that limitation cannot be read into the former claim in determining either validity or infringement"). But the "in parallel" language applies to all the claim terms and was a distinguishing trait when overcoming prior art.

Finally, GoPro contends that interpreting the claims without adding "in parallel" or "at the same time" makes the terms indefinite under 35 U.S.C. § 112. Prior art could either record or stream video image content but not both, and it could only wirelessly transmit a single video stream but not parallel streams. Resp. Br., Ex. K (Dkt. No. 235-14). A POSITA reading the patent specifications and prosecution history would know that the scope of the invention includes recording video image content in parallel either at the same time or different times. In this context, the scope of the invention offering parallel streams is not indefinite.

To summarize, I do not find it appropriate to add GoPro's "at the same time" or "after the recorded action has taken place" language to the terms. Instead I adopt a separate construction, changing "generate" and "generating" to record or recording as GoPro proposes, and adding "in parallel" to each claim term.

**D.    The "Recording" Terms**

GoPro and CIPH dispute the claim terms "prior to recording the scene" and "scene to be recorded." The '694 patent contains both terms, for example, in claim 1:

> the camera processor is configured to: generate the video image content simultaneously at a first resolution and at a second resolution, the video image content at the first resolution and the second resolution corresponding to the video image data representing the **scene to be recorded**, wherein the first resolution is lower than the second resolution, stream the real time video image content at the first resolution using the wireless connection protocol device to the wireless connection-enabled controller without displaying the video image content at the video camera, receive the control signals for adjusting image capture settings of the video camera, adjust the image capture settings of the video camera **prior to recording the scene**, and in response to a record command, cause the video image content at the second resolution to be stored at the video camera;

| Term | CIPH's Proposal | GoPro's Proposal | Claim Construction |
|---|---|---|---|
| **(8)** **"prior to recording the scene"** '954: 30 (depends from claim 27 containing term) '694: 4 (depends from claim 3 containing term), 11, 20 (depends from claim 1 containing term) | before storing the video image data representing the scene | before storing the video storage data representing the scene in response to a record command | before storing the video image data representing the scene |
| **(9)** **"scene to be recorded"** '694: 11, 20 (depends from claim 1 containing term) | Scene viewed by the camera prior to recording | Scene viewed by the camera that has no yet been stored in response to a record command | Scene viewed by the camera prior to recording |

The construction of these terms depends on the scope of "record." CIPH argues that recording is equal to storing video image data. GoPro argues that defining "record" as "store" is

overly broad since recording only occurs "in response to a record command." The claim language, specification, and prosecution history suggest that CIPH's construction is the correct one.

The claim terms "prior to recording the scene" and "scene to be recorded" appear before the limiting language about what occurs in response to a record command. Specifically, the '694 patent discusses what happens "in response to a record command" in claims 1, 3, 11, 15, and 18; and the '954 patent has similar language in claims 1, 3, 5, 13, 22, 23, and 28. Reading "in response to a record command" into the disputed "record" terms that appear earlier would be redundant and potentially confusing. *Cf. Power Mosfet Techs., L.L.C. v. Siemens AG*, 378 F.3d 1396, 1410 (Fed. Cir. 2004) ("interpretations that render some portion of the claim language superfluous are disfavored."); *with Simpleair v. Sony Ericsson Mobile Commn'ns*, 820 F.3d 419, 429 (Fed. Cir. 2016) ("The preference for giving meaning to all terms, however, is not an inflexible rule that supersedes all other principles of claim construction.").

In the specifications, a preferred embodiment is to use Bluetooth protocol to store on-screen display frames in advance of the memory of the camera to avoid perceived delays during streaming. '954 patent at 23:26-40. Users who want to start storing data in the memory of the camera can tap the "Start Record actuator" to transmit a "Start Recording command signal" to the Bluetooth enabled cameras. '954 patent at 25:9-16; '694 patent 25:12-19. GoPro proposes that "recording" is limited to the record command signal discussed in this specification. However, this seems to contradict their earlier argument that "generating" should be construed as "recording." *Inverness Med. Switzerland GmbH v. Princeton Biomeditech Corp.*, 309 F.3d 1365, 1371 (Fed. Cir. 2002) ("A claim term used in multiple claims should be construed consistently"). For instance, GoPro argued that the camera "records" data in two formats rather than "generates" it, even though this occurs before the user transmits a record command signal. It would be inconsistent to now limit the term "recording" to storing only after the record command is actuated.

Preferred embodiments generally should not be excluded from the scope of the claim. *On-Line Techs., Inc. v. Bodenseewerk Perkin-Elmer GmbH*, 386 F.3d 1133, 1138 (Fed. Cir. 2004)

("[A] claim interpretation that excludes a preferred embodiment from the scope of the claim is rarely, if ever, correct.").  And narrow embodiments should not be used to limit broader claim language.  *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1117 (Fed. Cir. 2004) ("particular embodiments appearing in the written description will not be used to limit claim language that has broader effect.").  Here, a preferred embodiment discusses "storing" on screen display frames in advance of the camera's memory to reduce delays, not merely storing data in response to a record command. '954 patent at 23:26-40.

The prosecution history serves as additional intrinsic evidence that recording is not limited to storing only in response to a record command.  *See* Opening Br. Ex. 4 at 8; Ex. 5 at 8 (Dkt. No. 232-8, 232-9).  The Patent Trial and Appeal Board did not construe record as "in response to a record command" since the term "record" appeared without that limitation in the video preview context before the user activates a record command.  *Id.*  Even though the specification discusses "recording" as a function of the record command in at least one embodiment, the claim term has a broader scope.

Therefore, **prior to recording the scene** is defined as: **before storing the video storage data representing the scene.** The term **scene to be recorded** is defined as: **scene viewed by the camera prior to recording**.

### E.     Viewfinderless video camera

The claim term "viewfinderless video camera" is used in the '694 patent independent claim 1.  For example:

> An integrated hands-free portable **viewfinderless video camera**, the video camera including a lens and an image sensor, the image sensor capturing light propagating through the lens and representing a scene to be recorded, and the image sensor producing a real time video image data of the scene without displaying the scene to a user of the video camera,

| Term | CIPH's Proposal | GoPro's Proposal | Claim Construction |
|---|---|---|---|
| **(10) "viewfinderless video camera"** <br><br> '694: 20 (depends from claim 1 | A video camera without a viewfinder on the camera | A video camera without a viewfinder on or attached to the camera | a video camera without a viewfinder as an original part of the camera |

| containing term) | | Or alternatively: a video camera without a viewfinder as an original part of the camera | |
|---|---|---|---|

Both proposals suggest viewfinderless is a straightforward term meaning a camera "without a viewfinder," but the parties dispute the scope of the term. The term viewfinderless only appears in the claim itself. GoPro is attempting to incorporate a limitation that the viewfinder is not "on or attached to the camera," or an "original part" of the camera. CIPH responds that the modifier "integrated" in the claim term makes it clear that the camera is distinct from attached external viewfinders.

GoPro explains that it is commonly known that a viewfinder can be: integrated with the camera; attached to the camera externally; or, a remote device that functions like a viewfinder. The specification only mentions the term "viewfinder" when discussing how Bluetooth enables a personal portable device to become a wireless, or remote, viewfinder. '954 patent at 20:29-34; '694 patent at 20:31-36. Language limiting viewfinderless to objects on or attached to the camera does not solve the ambiguity of the claim term. GoPro's alternatively proposed construction, however, seems apt in this context. Without adding "as an original part of the camera," a POSITA would not be able to understand the scope of viewfinderless.

As such, **viewfinderless video camera** is defined as: **a video camera without a viewfinder as an original part of the camera**.

**F.      Mount**

The claim term "mount" is used in patent '694 claims 1, 3, and 11. For example, as used in claim 1:

> A point of view digital video camera system, comprising: . . . a **mount** configured to be mounted to the body, a garment, or a vehicle of the user of the video camera, the **mount** configured to receive the mounting interface for rotatably mounting the camera on the body, the garment, or the vehicle of the user of the video camera, the mounting interface and the **mount** further configured for manual adjustment of the video camera with respect to the user of the video camera….

| Term | CIPH's Proposal | GoPro's Proposal | Claim Construction |
|------|-----------------|------------------|--------------------|
| **(11)** **"mount"** '694: 4 (depends from claim 3 containing term), 11, 20 (depends from claim 1 containing term) | A component configured to be mounted to at least one of the body, a garment, or a vehicle | A component configured to be mounted to at least one of the body, a garment, and a vehicle of a person, wherein the garment is an item of clothing, and the vehicle is a thing used for transporting people on land | A component configured to be mounted to at least one of the body, a garment, or a vehicle |

GoPro wants to add the term "of a person" and limit the possible construction of things that a mount can attach to by defining garments and vehicles. Again, where claim language has broad effect, there is no reason suggested to limit the term according to particular narrow embodiments. *Innova/Pure Water, Inc.*, 381 F.3d at 1117.

As an initial matter, CIPH was its own lexicographer and defined mount as "configured to be mounted to the body, garment, or vehicle of the user of the video camera." '694 patent at 29:33-34. The parties agree that "user" is "a human being or a person." Therefore, it is redundant to add GoPro's suggested limiting language "of a person." GoPro further contends that "mount" was not fully defined because the terms "garment" and "vehicle" are not defined. I find that garments and vehicles are readily understandable terms.

The specification is also broader than GoPro's proposed construction suggests. The specification provides several embodiments for a "mount" that can work with the body, garments or vehicles of several kinds. '694 patent at 12:9-15:61. For example, the specification addresses that the camera can be mounted to helmets, not necessarily articles of clothing only. '694 patent at 13:57-61. Without evidence that CIPH acted as its own lexicographer or disavowed the full scope of the terms "garment" and "vehicle," I will not read the claim restrictively. *Thorner*, 669 F.3d 1365.

**Mount** is defined as: **a component configured to be mounted to at least one of the body, a garment, or a vehicle**.

18

### G. Mounting Interface

The claim term "mounting interface" is used in the '694 patent claims 1, 3, and 11. For example, as used in claim 1:

> A point of view digital video camera system, comprising: . . . a **mounting interface** coupled to the video camera; a mount configured to be mounted to the body, a garment, or a vehicle of the user of the video camera, the mount configured to receive the **mounting interface** for rotatably mounting the camera on the body, the garment, or the vehicle of the user of the video camera, the **mounting interface** and the mount further configured for manual adjustment of the video camera with respect to the user of the video camera,

| Term | CIPH's Proposal | GoPro's Proposal | Claim Construction |
|---|---|---|---|
| **(12) "mounting interface"** <br><br> '694: 4 (depends from claim 3 containing term), 11, 20 (depends from claim 1 containing term) | A place for attaching a mount | A component coupled to the video camera on one side and a mount on the other side | A place for attaching a mount |

GoPro is attempting to limit the "mounting interface" term to a separate component attached on different sides of a mount. CIPH responds that adding the "component" language is not supported by any claim language or specification, and that the mounting interface can be coupled on the same side as the mount. '694 patent at 12:64-13:2. I agree with CIPH's proposed construction.

The claim language does not limit the scope of the "mounting interface," namely it states that the interface is:

> A mounting interface **coupled** to the video camera…the mount **configured to receive** the mounting interface for rotatably mounting the camera on the body, the garment, or the vehicle of the user of the video camera.

'694 patent at 29:32-37 (emphasis added).

Adding the limiting term "component" is unnecessary where the claim is already understandable. *Lucent Techs., Inc.*, 525 F.3d at 1215-16 ("where [ ] the claim language is unambiguous, [the Federal Circuit has] construed the claims to exclude all disclosed embodiments.").

CIPH emphasized at the hearing that there is nothing in the specification requiring a separate component or limiting a mounting interface to one side or another either. The specification contains broad example embodiments where presumably the mounting interface could be coupled to the camera on the same side as the mount. For example, the interface could mount and couple with the camera on the same side of a handlebar. '694 patent at 13:1. GoPro responds that the specification still requires the mounting interface to be attached to the camera on one side and the mount on another side.

As with the mount discussion above, I will not read the claim restrictively without evidence that CIPH acted as its own lexicographer or disavowed the full scope of the term. *Thorner*, 669 F.3d 1365. I find that mounting interface flows logically from the adopted definition of a mount, and there is no reason to limit the claim term when its scope can be readily understood. Therefore, **mounting interface** is defined as: **a place for attaching a mount**.

## II.     ADMINISTRATIVE MOTION TO FILE UNDER SEAL

CIPH filed its claim construction opening brief with an administrative motion to file materials under seal. The sealed portions include Exhibits 10-12, excerpts of deposition testimony, and citations to these exhibits in the opening brief at page 9, line 23 to page 10 line 6, and page 12 line 17. The deposition excerpts were designated highly confidential by GoPro. GoPro filed a separate declaration, not seeking to seal portions already cited in the CIPH opening brief, but requesting to seal portions of Exhibits 10-12 that are not cited in CIPH's opening brief. Resp. Re Pl.'s Admin. Mot. to Seal (Dkt. No. 234). Therefore, the administrative motion to file under seal certain lines of the CIPH opening brief is DENIED.

As for Exhibits 10-12, GoPro simply asserted confidentiality and has not adequately explained why portions that were not cited in the opening brief should be sealed. If materials are attached to non-dispositive briefs, as is the case here, good cause is sufficient to preserve sealed materials. Foltz v. State Farm Mut. Auto. Ins. Co., 331 F.3d 1122, 1135 (9th Cir. 2003) ("'good cause' suffices to warrant preserving the secrecy of sealed discovery material attached to nondispositive motions."). GoPro may file a declaration justifying good cause for filing the exhibits under seal within one week from the date of this order, otherwise the documents will be

automatically unsealed.

## CONCLUSION

The claims are construed as follows:

1. Real time is defined as: **without perceived delay**.

2. Point of view digital video camera is given its **plain and ordinary meaning**.

3. The term "generate from the video image data a first image data stream and a second image data stream, wherein the second image data stream is a higher quality than the first image data stream," as used in the '954 patent claim 11, is defined as: **record in parallel from the video image data a first image data stream and a second image data stream, wherein the second image data stream is a higher quality than the first image data stream**.

4. The term "generate from the video image data a first image data stream and a second image data stream, wherein the second image data stream comprises a higher resolution image than the first image data stream," as used in the '954 patent claim 30, is defined as: **record in parallel from the video image data a first image data stream and a second image data stream, wherein the second image data stream comprises a higher resolution image than the first image data stream**.

5. The term "generate the video image content simultaneously at a first resolution and at a second resolution, the video image content at the first resolution and the second resolution corresponding to the video image data representing the scene to be recorded, wherein the first resolution is lower than the second resolution," as used in the '694 patent claim 20, is defined as: **record in parallel the video image content simultaneously at a first resolution and at a second resolution, the video image content at the first resolution and the second resolution corresponding to the video image data representing the scene to be recorded, wherein the first resolution is lower than the second resolution**.

6. The term "generate first video image content and second video image content corresponding to the video image data representing the scene, wherein the second video image content is a higher quality than the first video image content," as used in the '694

patent claim 4, is defined as: **record in parallel first video image content and second video image content corresponding to the video image data representing the scene, wherein the second video image content is a higher quality than the first video image content**.

7. The term "generating video image content corresponding to the scene to be recorded at a first quality and at a second quality, wherein the first quality is lower than the second quality," as used in the '694 patent claim 11, is defined as: **recording video image content corresponding to the scene to be recorded at a first quality and at a second quality, in parallel, wherein the first quality is lower than the second quality**.

8. Prior to recording the scene is defined as: **before storing the video image data representing the scene**.

9. Scene to be recorded is defined as: **scene viewed by the camera prior to recording**.

10. Viewfinderless video camera is defined as: **a video camera without a viewfinder as an original part of the camera**.

11. Mount is defined as: **a component configured to be mounted to at least one of the body, a garment, or a vehicle**.

12. Mounting interface is defined as: **a place for attaching a mount**.


**IT IS SO ORDERED.**

Dated: July 16, 2018

William H. Orrick
United States District Judge