UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONTOUR IP HOLDING, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>GOPRO, INC.,<br><br>    Defendant. | Case No. 17-cv-04738-WHO<br><br>**ORDER GRANTING MOTION TO STAY PENDING INTER PARTES REVIEW**<br><br>Re: Dkt. No. 262 |

## INTRODUCTION

GoPro Inc. ("GoPro") seeks to stay this patent infringement litigation until its inter partes review ("IPR") petitions are resolved before the Patent Trial and Appeal Board ("PTAB"). According to GoPro, a stay is appropriate because the IPR process might moot all of Contour IP Holdings, LLC's ("CIPH") claims, without undue prejudice to CIPH or disruption at this stage of the case. CIPH opposes any stay, asserting that the PTAB is unaware of recently discovered misrepresentations and fraud allegedly perpetrated by GoPro.[1] There is little doubt that a ruling from the PTAB will simplify the issues here, and there is scant prejudice to CIPH in a brief stay while the PTAB considers the claims (again). This case is at an early enough stage to warrant the stay. For the reasons discussed below, GoPro's motion is GRANTED.

---

[1] CIPH filed its opposition under seal, including portions referring to Exhibits 6 and 15 which are documents designated highly confidential by GoPro. GoPro filed a separate declaration not seeking to seal portions already cited in CIPH's opposition, but instead requesting the remaining portions of Exhibits 6 and 15 be redacted. GoPro simply asserts these portions are "not insignificant" and "irrelevant," but has not explained why portions not cited should be sealed. As GoPro has been apprised already in this litigation, it must provide good cause to preserve sealed materials attached to non-dispositive briefs. *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003) ("'good cause' suffices to warrant preserving the secrecy of sealed discovery material attached to nondispositive motions."). Accordingly, the motion to file materials under seal is DENIED. *See* Dkt. No. 270.

## BACKGROUND

In November 2014, the Patent Office issued U.S. Patent Nos. 8,890,954 ("the '954 Patent") and 8,896,694 ("the '694 Patent") to non-party Contour LLC. The patents claimed a priority date of September 13, 2010, making the one-year period for prior art September 13, 2009. Contour LLC, as the then-assignee of the patents, sued GoPro in the United States District Court for the District of Utah in January 2015 alleging infringement of the '694 and '954 patents. *See Contour, LLC v. GoPro, Inc., et al.*, Case No. 2:14–cv–864 (D. Utah 2015).

In response, GoPro filed IPR petitions challenging the validity of the patents in April 2015. *See* Oppo. Ex. 1, GoPro Appeal Brief at 7 (Dkt. No. 270-4). It relied on a 2009 GoPro catalog (the "Catalog") as prior art to challenge the validity on obviousness grounds. *See id.* at 7. It also introduced the declaration of a GoPro employee, Damon Jones, who attested that the Catalog was made available to the public at a Tucker Rocky Dealer Show before September 13, 2009. *See* Oppo. Ex. 3, Jones Decl. ¶ 9 (Dkt. No. 270-7).

In October 2015, the PTAB granted GoPro's IPR petitions, finding that it was reasonably likely that claims 1, 2, and 11-30 of the '954 Patent and claims 1-20 of the '694 Patent were not patentable. When GoPro moved for a stay, Contour LLC voluntarily dismissed the case on November 30, 2015. *See* Utah Dkt. No. 57. That same day, however, CIPH filed a similar action against GoPro in the United States District Court for the District of Delaware. *See Contour IP Holding, LLC v. GoPro, Inc.*, Case No. 1:15–cv–1108 (D. Del. 2015). GoPro moved for a stay pending IPR proceedings once again, and the court granted the motion in July 2016. *See* Del. Dkt. No. 70.

In October 2016, the PTAB issued a final decision against GoPro's allegations that the claims were unpatentable, finding that GoPro did not prove that the Catalog was a prior art printed publication. IPR2015-01080, Paper 55, at 27–28. However, the PTAB stopped short of reaching the merits of GoPro's unpatentability claims. *See id*. GoPro appealed the decision to the Federal Circuit. *See GoPro, Inc., v. Contour IP Holding LLC*, No. 2017–1894 (Fed. Cir.) (Dkt. No. 1).

Meanwhile, the Delaware court lifted the stay after the PTAB's decision, and in November 2016, GoPro filed a motion to transfer venue to the United States District Court for the Northern

1   District of California.  *See* Del. Dkt. No. 83.  In July 2017, the motion to transfer was granted and
2   the case was assigned to me.  *See* Del. Dkt. No. 174.  GoPro moved to dismiss, which I denied.
3   *See* Dkt. No. 213.  The parties then prepared for claim construction.  A technology tutorial and
4   *Markman* hearing were held in June.  On July 16, 2018 I issued an Order Regarding Claim
5   Construction.  *See* Dkt. No. 251.

6   On July 27, 2018, the Federal Circuit vacated and remanded the PTAB's final decision
7   pursuant to GoPro's appeal.  *See GoPro, Inc. v. Contour IP Holding LLC*, 898 F.3d 1170 (Fed.
8   Cir. 2018).  The month before the remand, however, CIPH submitted a Federal Rule of Appellate
9   Procedure 28(j) letter regarding supplemental authority to the Clerk of the Court, attempting to
10  alert it to a reversal in the testimony of Mr. Jones on the prior art publication—and potential false
11  representations by GoPro.  *See* Oppo. Ex. 26, McDermott Letter.  This letter was not referenced in
12  the Federal Circuit opinion.  *See* Oppo. Ex. 28 at 6 ("The parties do not dispute any of the facts or
13  evidence presented by GoPro regarding the distribution of its catalog.").

14  Shortly thereafter, in August 2018, CIPH filed a combined petition for rehearing and
15  rehearing en banc of the Federal Circuit's decision to vacate.  *GoPro, Inc., v. Contour IP Holding*
16  *LLC*, No. 2017–1894 (Fed. Cir.) (Dkt. No. 41).  The parties briefed the petition for rehearing, and
17  the Federal Circuit took the matter under submission.  The court ultimately denied the petition for
18  rehearing on November 1, 2018.  *Gopro, Inc. v. Contour IP Holding LLC*, 898 F.3d 1170, 1177
19  (Fed. Cir. 2018), opinion modified and superseded, No. 2017-1894, 2018 WL 5660650 (Fed. Cir.
20  Nov. 1, 2018), and opinion withdrawn on denial of reh'g sub nom. *GOPRO, INC., v. CONTOUR*
21  *IP HOLDING LLC*, No. 2017–1894, 2018 WL 5777326 (Fed. Cir. Nov. 1, 2018) ("On remand, the
22  [PTAB] shall consider the GoPro Catalog as prior art and evaluate the merits of GoPro's
23  unpatentability claims.").

**DISCUSSION**

25  Three factors are relevant in deciding whether a civil action should be stayed pending IPR
26  proceedings: "(1) whether discovery is complete and whether a trial date has been set; (2) whether
27  a stay would simplify the issues in question and trial of the case; and (3) whether a stay would
28  unduly prejudice or present a clear tactical disadvantage to the non-moving party."  *PersonalWeb*

*Techs., LLC v. Apple Inc.*, 69 F. Supp. 3d 1022, 1025 (N.D. Cal. 2014) ("*PersonalWeb II*"). These factors are "general considerations that are helpful in determining whether to order a stay," but "ultimately the Court must decide stay requests on a case-by-case basis." *Asetek Holdings, Inc v. Cooler Master Co.*, Case No. 13–cv–00457–JST, 2014 WL 1350813, at *1 (N.D. Cal. Apr. 3, 2014).

## I. STAGE OF THE CASE

The earlier the stage of litigation, the more favored the stay. *See Telemac Corp. v. Teledigital, Inc.*, 450 F. Supp. 2d 1107, 1111 (N.D. Cal. 2006). Courts often weigh a stay for IPR proceedings considering whether: (i) "parties have engaged in costly expert discovery and dispositive motion practice;" (ii) "the court has issued its claim construction order;" and (iii) "the court has set a trial date." *PersonalWeb II*. This patent infringement litigation is almost three years old; it is not in its most early stages, but it also has yet to reach the more significant and costly work that lies ahead.

The parties give dissimilar accounts of the scope of discovery completed so far, as well as which party bears the blame for any purported tactical delay. CIPH contends that in the past year, five depositions have been taken, sixteen third party subpoenas served, and thousands of documents produced. *See* Oppo. at 18–19. It claims that expert discovery has begun; its technical expert is reviewing records and the parties exchanged damages contentions from damages experts. *Id*. at 19. On the other hand, GoPro emphasizes that no expert discovery has begun, no party depositions have been taken, and expert reports have not been served. *See* Mot. to Stay at 6 (Dkt. No. 262). It also asserts that no third-party depositions have occurred so far in this case. *See* Reply at 14 (Dkt. No. 278).

Even accepting CIPH's perspective regarding discovery, the stage of this case favors a stay. I have not yet set discovery or dispositive motion deadlines, or a trial date. *See Personal Web Technologies, LLC v. Facebook, Inc.*, Case No. 13–cv–01356–EJD, 2014 WL 116340, at *4 (N.D. Cal. Jan. 13, 2014) ("*PersonalWeb I*") (granting a stay in part because the "parties have yet to engage in the significant and costly work of conducting expert discovery and preparing summary judgment motions."); *Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*, Case No. 12–cv–

4

05501–SI, 2014 WL 121640, at *2 (N.D.Cal. Jan. 13, 2014) (denying stay in part because "a trial date has been set for February 23, 2015…and discovery is well underway."). Although claim construction is complete and some substantial discovery has already occurred, several costlier stages of pretrial preparation remain, not to mention the trial itself. As in *PersonalWeb I and II*, even with a lengthy procedural history in other courts like Utah, Delaware, the PTAB, and the Federal Circuit, the most significant aspects of the litigation are still ahead. This case is not too advanced to make a stay improper or untenable.

## II. SIMPLIFYING THE ISSUES

A stay is favored under the second factor when "the outcome of the reexamination would be likely to assist the court in determining patent validity and, if the claims were canceled in the reexamination, would eliminate the need to try the infringement issue." *Evolutionary Intelligence LLC v. Apple, Inc.*, Case No. 13–cv–04201–WHA, 2014 WL 93954, at *2 (N.D. Cal. Jan. 9, 2014) (internal quotations and citations omitted). CIPH recognizes that in almost every motion to stay pending IPR, courts find the PTAB's decision is likely to simplify the issues because "if the PTAB invalidates any of the claims at issue in the IPR petition, those claims will be mooted in the litigation." *DSS Tech. Mgmt., Inc. v. Apple, Inc.*, No. 14–cv–05330–HSG, 2015 WL 1967878, at *4 (N.D. Cal. May 1, 2015).

Here, GoPro's IPR petition met the "reasonable likelihood" standard for claims 1, 2, and 11-30 of the '954 Patent and claims 1-20 of the '694 Patent, after the PTAB granted the petitions in October 2015. After the PTAB found that GoPro did not establish that the Catalog was a prior art printed publication, the Federal Circuit disagreed and vacated and remanded the case to the PTAB for a merits determination. After the parties briefed the motion to stay in this case, CIPH's pending petitions for rehearing were denied by the Federal Circuit and the case is again proceeding in the PTAB. *See* Statement of Recent Decisions, Exs. A–D (Dkt. No. 283). Therefore, "[e]ither the claims, already found reasonably likely to be invalid, will become moot, or the Court will have the benefit of the PTAB's findings." *PersonalWeb I*.

CIPH contends that because there is a false record before the PTAB, there is no benefit to its findings and there will not be a simplification of the issues. It insists that in the IPR

5

1 proceedings, GoPro falsely asserted unpatentability in reliance on the GoPro Catalog as a prior art
2 publication based on a declaration from GoPro employee Damon Jones. *See* Oppo. at 5–6. GoPro
3 claims that the Catalog referenced a wireless remote control. *Id*. In his declaration, Jones stated
4 that GoPro made the Catalog available to customers through its website, direct mail, and other
5 distributions before the date of September 13, 2009 at the Tucker Rocky Dealer Show. *See id*. at
6 Ex. 3 Jones Decl. ¶ 11.

7 For whatever reason, CIPH did not take Jones's deposition during the IPR process. It did
8 during this litigation. Jones testified that he could not remember if the Catalog he distributed at
9 the trade show was on the GoPro website at the time, and he could not remember if GoPro
10 competitors were at the Tucker Rocky Dealer Show. *See id*. at Ex. 6, Jones Dep. Tran., at 33:2–
11 35:2, 101:2–102:13, 197:10–17.

12 CIPH contends that it apprised the Federal Circuit of these new facts regarding Jones's
13 testimony in a letter to supplement the record. *See id*. at Ex. 26 ("Mr. Jones recently testified,
14 however, he has no such personal knowledge" that the GoPro Catalog distributed at the trade show
15 was on the website after the trade show.). However, the Federal Circuit's opinion did not
16 reference it. Instead, the court stated, "the parties do not dispute any of the facts or evidence
17 presented by GoPro regarding the distribution of its catalog," despite CIPH's statements to the
18 contrary. *See id*. at Ex. 28 at 6. CIPH raised this issue again in its petition for rehearing, and the
19 court again denied the petition. *See* Statement of Recent Decisions, Exs. A–D (Dkt. No. 283).

20 In addition to the letter to the Federal Circuit regarding Jones's deposition, CIPH engaged
21 in other investigations about which it did not and allegedly could not make a part of the record at
22 the PTAB or Federal Circuit. For instance, CIPH examined the GoPro Catalog and found that the
23 Internet Archive had no record of the Catalog during an image capture in June 2009 or August
24 2009. *See id*. at Ex. 9, Decl. of C. Butler, at Ex. A at 73–74 (June 26, 2009 capture); 70–72 (June
25 29, 2009 capture); 67–69 (August 3, 2009 capture). A nearly identical catalog to the one at issue
26 was identified in October 2009, and its metadata showed the page was created on September 22,
27 2009. *See id*. at Ex. 10.

28 When CIPH requested an original electronic version of the Catalog, GoPro objected. *See*

*id.* at Ex. 12, GoPro's Responses at 6 (Response to RFP No. 87). CIPH then had a private investigator attempt to locate the wireless remote control image on the internet by applying proprietary techniques, without success. *See id*. at Ex. 13, May 24, 2018 Pipkins Decl. ¶¶ 4–5. The investigator concluded that "there was no wireless remote control available in 2009-2011 as it was shown in the GoPro July 2009 Sales Catalog." *Id*.

CIPH also investigated the printed paper Catalog to determine if it was authentically printed during the period that GoPro claims it was. CIPH hired a forensic chemist to microscopically examine the document; he concluded that it was unlikely the Catalog was printed in 2009 as GoPro asserted. *See id.* at Ex. 19, Speckin Decl. ¶ 16. Specifically, the forensic chemist explained that before 2000, certain printers embedded a code identifying the machine and the date as a counterfeit protection, which was absent on the inspection of the Catalog. *See id*. ¶ 12. He also concluded that it was unlikely that a FedEx/Kinkos, where the Catalog was allegedly printed, would have printers without the counterfeit protection. *Id*. ¶ 14.

As I have just summarized, CIPH extensively described the fraud and misrepresentations that GoPro allegedly committed during the IPR process. GoPro vigorously opposes the entire exercise as an excuse to relitigate the authenticity of the Catalog. The Federal Circuit had the opportunity to review CIPH's characterization of Jones's "recanted" testimony and did not change its view of the case. Similarly, I do not find the argument compelling at this stage. Nor do I agree with the significance CIPH gives to its expert declarations.

Jones's testimony does not demonstrate that he recanted his prior statements or was intentionally misrepresenting his understanding of the Catalog during the IPR process. He testified that he could not remember if there were competitors at the trade show or exactly when in 2009 GoPro put the Catalog on the website. *See* Oppo. at Ex. 6, Jones Dep. Tran., at 101:2–102:13, 197:10–17; *see also* Reply Ex. E at 33:1–24. But he repeatedly stated that he distributed the Catalog at issue during the Trucker Rocky Dealer Show and explained why he was certain of that fact. *See* Reply, Ex. E. at 121:15–122:7 (stating he recognized Ronnie Renner on the cover and "The contents of [the Catalog] as well."); 229:2–9 (stating he recognized the picture of Ronnie Renner); 232:12–233:10 (confirming he had a specific memory of talking with customers); 247:6–

1   8 ("I recognize the contents of this catalog...as being what we had at the show, what we passed
2   out."); 340:18–341:7 (confirming he handed out the Catalog to customers).

3   As for the expert opinions, CIPH draws much broader conclusions than I would. First, Pipkin's declaration describes using "specialized proprietary technologies" to try and locate web artifacts related to the GoPro wireless remote control. *See* Oppo. at Ex. 13, Pipkin Decl. ¶ 4. That this search using undisclosed "proprietary technologies" was not successful for finding the remote control while other product part numbers used in the Catalog were located (without more explanation) does not mean that the Catalog was not posted on the internet. CIPH ignores that Jones was sure he distributed the Catalog to trade show attendees. Second, Speckin's declaration identified a lack of an embedded code on the Catalog that is used with certain printers and copiers and presumed that a FedEx/Kinkos would have that type of printer; he did not explain why. *See id*. at Ex. 19 Speckin Decl. ¶ 12. Even accepting this presumption, Speckin only concludes that it was "unlikely" that the Catalog was printed where GoPro claims it was. *See id*. ¶¶ 14–15. This provides little evidentiary basis to assert an intentional misrepresentation to the PTAB and says nothing about whether the Catalog was distributed at the trade show.

The more difficult question that neither party addressed directly during the hearing is whether CIPH's new evidence will ever be introduced in the PTAB proceedings. CIPH exercised its own strategic judgment not to conduct Jones's deposition until after the record was closed in that case. After denying CIPH's rehearing petitions, and having been informed of CIPH's new evidence, the Federal Circuit modified its opinion but reached the same outcome. The court still stated, "based upon Mr. Jones' testimony [that the dealer show was attended by dealers, retailers, and customers of POV video cameras], the evidence provided by GoPro regarding the Trucker Rocky Dealer Show, and the evidence of the Tucker Rocky Distributing website, we conclude that GoPro met its burden to show that its catalog is a printed publication under § 102(b)." Statement of Recent Decisions, Ex. B at 10. CIPH's new evidence goes to Jones's credibility, but mainly addresses the Catalog's web presence. The Federal Circuit's conclusion considered more than whether the Catalog on the internet.

CIPH's arguments suggest caution in accepting the ruling of the PTAB on a record that is

8

1 not the same here. However, none of CIPH's arguments undermine my conclusion that a PTAB decision would still be at least somewhat helpful. Accordingly, this factor weighs in favor of granting a stay.

### III. UNDUE PREJUDICE OR TACTICAL ADVANTAGE

The third factor is whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party. This district applies a four sub-factor analysis considering: (i) "the timing of the reexamination request;" (ii) "the timing of the request for stay;" (iii) "the status of reexamination proceedings;" and (iv) "the relationship of the parties." *Asetek Holdings, Inc*, 2014 WL 1350813, at *4. CIPH does not argue directly within the context of these factors. Instead it asserts prejudice stemming from both the lack of documents that GoPro has produced in this litigation and evidence that allegedly was purposefully wiped from Jones's computer by GoPro. *See* Oppo. at 21. CIPH also claims that Contour LLC is a direct competitor to GoPro and will be harmed by a stay.

I am not convinced that undue prejudice will result from a stay. First, there is almost always a risk of prejudice from delay because evidence can be lost or witnesses' memories can be forgotten. *See Software Rights Archive, LLC v. Facebook, Inc.*, No. 12–cv–3970–RMW, 2013 WL 5225522, at *5 (N.D. Cal. Sept. 17, 2013) (stating there is "no question that a delay of a year or longer…*could* result in prejudice.") (emphasis in original). Apart from Jones's computer data that was already lost, however, CIPH does not argue that other evidence will be lost, or is at risk of loss, and cannot be accessed elsewhere. Even if this was the case, CIPH has not demonstrated that "the risk of evidence loss is greater here than in any other case and that it amounts to more than the delay inherent to the reexamination process." *Evolutionary Intelligence LLC v. Yelp Inc*, No. 13–cv–03587–DMR, 2013 WL 6672451, at *7 (N.D. Cal. Dec. 18, 2013).

Second, CIPH is not a direct competitor to GoPro. CIPH is a non-practicing entity that does not compete in any market with GoPro and therefore it "cannot be prejudiced by a stay because monetary damages provide adequate redress for infringement." *Pragmatus AV, LLC v. Facebook, Inc.*, No. 11–cv–02168–EJD, 2011 WL 4802958, at *4 (N.D. Cal. Oct. 11, 2011). CIPH briefly remarks that because Contour LLC is a direct competitor with GoPro, this

9

consideration disfavors a stay. It is not clear that the undue prejudice factor considers the status of non-parties, but assuming Contour LLC was a direct competitor with GoPro, this district still "require[s] evidence to substantiate an argument that direct competition will result in prejudice to the non-moving party." *Finjan, Inc. v. FireEye, Inc.*, No. 13–cv–03133–SBA, 2017 WL 1150283, at \*3 (N.D. Cal. Mar. 28, 2017) (internal quotations and citations omitted). CIPH does not provide evidence that Contour LLC is in direct competition with GoPro besides making the claim in its opposition, and it fails to show that CIPH's competitive position would be prejudiced. *Id*.

## CONCLUSION

For the foregoing reasons, GoPro's motion to stay the case is GRANTED.

**IT IS SO ORDERED.**

Dated: December 12, 2018



William H. Orrick
United States District Judge