1    John R. Keville (*Pro Hac Vice*)
     jkeville@winston.com
2    Dustin Edwards (*Pro Hac Vice*)
     dedwards@winston.com
3    William M. Logan (*Pro Hac Vice*)
     wlogan@winston.com
4    WINSTON & STRAWN LLP
     800 Capitol St., Suite 2400
5    Houston, TX 77002-2925
     Telephone: (713) 651-2600
6    Facsimile: (713) 651-2700

7    David P. Enzminger (SBN 137065)
     denzminger@winston.com
8    Matthew R. McCullough (SBN 301330)
     mrmccullough@winston.com
9    WINSTON & STRAWN LLP
     275 Middlefield Road, Suite 205
10   Menlo Park, CA 94025-1203
     Telephone:    (650) 858-6500
11   Facsimile:    (650) 858-6550

12   Attorneys for Plaintiff
     CONTOUR IP HOLDING, LLC

13

14

15                        UNITED STATES DISTRICT COURT

16                       NORTHERN DISTRICT OF CALIFORNIA

17                          SAN FRANCISCO DIVISION

18   Contour IP Holding, LLC               **Case No. 17-cv-04738-WHO**

19                    Plaintiff,           **PLAINTIFF CONTOUR IP HOLDING, LLC'S
                                           MOTION FOR PARTIAL SUMMARY
20         v.                              JUDGMENT OF INFRINGEMENT AND
                                           WILLFUL INFRINGEMENT;
21   GoPro, Inc.                           MEMORANDUM OF POINTS AND
                                           AUTHORITIES
22                    Defendant.
                                           **REDACTED VERSION OF DOCUMENT(S)
23                                         SOUGHT TO BE SEALED**

24                                         DATE:  August 12, 2020
                                           TIME:  2:00 p.m.
25                                         LOCATION:  Courtroom 2, 17th Floor

26                                         JUDGE WILLIAM H. ORRICK

27

28

# **TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION ......................................................................... 1

STATEMENT OF RELIEF SOUGHT ......................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................ 2

I.      INTRODUCTION ............................................................................................... 2

II.     ISSUES TO BE DECIDED IN THIS MOTION ............................................... 2

III.    STATEMENT OF FACTS RELATED TO INFRINGEMENT ......................... 3

      A.     The Disputed Claim limitation ............................................................. 3

      B.     The History Regarding the Generate Term ......................................... 4

      C.     GoPro's Admissions relevant to this Motion ...................................... 7

      D.     GoPro's Expert Disputed Only the Generate Limitation ................... 8

IV.    ARGUMENT REGARDING INFRINGEMENT ............................................... 8

      A.     Legal Standards ..................................................................................... 8

      B.     Infringement ......................................................................................... 8

      C.     Dr. Almeroth's Claim Interpretation is Wrong as a Matter of Law ................. 9

      D.     Alternatively, Dr. Almeroth's Opinions Should Be Excluded, As They Are Too Deeply Rooted In Claim Construction And The Intrinsic Evidence .......................................... 13

      E.     No Material Dispute Regarding Serial and Parallel Processing ..................... 15

V.      STATEMENT OF FACTS RELATED TO WILLFULNESS ................................ 17

VI.    ARGUMENT REGARDING WILLFULNESS ................................................... 21

      A.     Legal Standard for Willfulness ........................................................... 21

      B.     There is no material fact dispute that GoPro has known about the patents-in-suit and Contour's infringement allegations since prior to this lawsuit. ..................................... 21

      C.     There is no material fact dispute that GoPro became aware of Contour's products embodying the patents-in-suit prior to and during the lawsuit. ...................................... 22

      D.     There is no material fact dispute that GoPro has continued to infringe despite knowledge of the patents-in-suit and knowledge of infringement ...................................... 22

      E.     GoPro's defenses in this case do not avoid willfulness ..................... 23

1    F.    There is no material fact dispute that GoPro contends it had a cheap non-infringing

2          alternative that it could have quickly adopted, but chose not to do so. ........................... 24

3    G.    Summary ............................................................................................................... 24

4    VII.  CONCLUSION ................................................................................................................ 25

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)..................................................................................................8

*Apple Inc. v. Samsung Electronics Co., Ltd.*,
258 F.Supp.3d 1013 (N.D. Cal. Jun. 23, 2017)...................................................23

*Athletic Alternatives v. Prince Mfg.*,
73 F.3d 1573 (Fed. Cir. 1996).................................................................................9

*Bai v. L & L Wings*,
160 F.3d 1350 (Fed. Cir. 1998)...............................................................................9

*Cordis Corp. v. Boston Sci. Corp.*,
561 F.3d 1319 (Fed. Cir. 2009).............................................................................14

*CytoLogix Corp. v. Ventana Med. Sys., Inc.*,
424 F.3d 1168 (Fed. Cir. 2005).............................................................................15

*Eli Lilly & Co. v. Hospira, Inc.*,
933 F.3d 1320 (Fed. Cir. 2019)...........................................................................8, 9

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
136 S. Ct. 1923 (2016).......................................................................................21, 23

*Huawei Techs., Co, Ltd v. Samsung Elecs. Co, Ltd.*,
340 F. Supp. 3d 934 (N.D. Cal. 2018) ................................................................9, 14

*MediaTek Inc. v. Freescale Semiconductor, Inc.*,
No. 11–cv–5341–YGR, 2014 WL 971765 (N.D. Cal. Mar. 5, 2014)...........................14

*Merck & Co., Inc. v. Teva Pharm. USA, Inc.*,
395 F.3d 1364 (Fed. Cir. 2005).............................................................................12

*PersonalWeb Techs. LLC v. Int'l Bus. Machines Corp.*,
2017 WL 2180980 (N.D. Cal. May 18, 2017) .........................................................21

*Strattec Sec. Corp. v. Gen. Auto. Specialty Co.*,
126 F.3d 1411 (Fed. Cir. 1997)...............................................................................8

*SWC Inc. v. Elite Promo Inc.*,
234 F. Supp. 3d 1018 (N.D. Cal. 2017) ...............................................................22

*The Medicines Co. v. Mylan Inc.*,
No. 11-CV-1285, 2014 WL 1979261 (N.D. Ill. May 15, 2014)...........................14, 15

*Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*,
    520 U.S. 17 (1997) ............................................................................................................... 12

*WBIP, LLC v. Kohler Co.*,
    829 F.3d 1317 (Fed. Cir. 2016) ......................................................................................... 21

**Statutes**

35 U.S.C. §102(g) ............................................................................................................. 7, 8, 24

**Other Authorities**

Fed. R. Civ. P. 56 ..................................................................................................................... 1

Fed. R. Civ. P. 56(a) ................................................................................................................. 8

Fed. R. Civ. P. 41 ............................................................................................................. 20, 22

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, on August 12, 2020, at 2:00 p.m., or as soon thereafter as the matter may be heard, before Judge William H. Orrick in Courtroom 2 of the United States District Court, Northern District of California, located on the 17th Floor in the San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiff Contour IP Holding LLC ("Contour") will move the Court for an order entering partial summary judgment against Defendant GoPro, Inc. ("GoPro") pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## STATEMENT OF RELIEF SOUGHT

As set forth in more detail in the following Memorandum of Points and Authorities, Contour brings this motion for partial summary judgment ("Motion") on two grounds. First, there is no genuine issue as to any material fact with respect to Contour's claim that GoPro has infringed claim 11 of U.S. Patent No. 8,890,954 (the "'954 patent") and, therefore, Contour is entitled to partial summary judgment with respect to that claim.

Specifically, as to the claim 11 limitations, GoPro disputes only whether its cameras satisfy the "generating" limitation, which reads "generate from the video image data a first image data stream and a second image data stream, wherein the second image data stream is a higher quality than the first image data stream," and which the Court construed as "record in parallel from the video image data a first image data stream and a second image data stream, wherein the second image data stream is a higher quality than the first image data stream." Dkt. 251 at 9–10.

GoPro's CEO and alleged prior inventor Nick Woodman admits ███████████████████ █████████████████████████, and GoPro's only dispute as to this limitation is based solely on their technical expert's interpretation of the Court's claim construction, which is wrong as a matter of law because he has re-construed the claim construction—allegedly in light of the PTAB proceeding—to completely read out a limitation. Accordingly, summary judgment is appropriate. Even if the expert's interpretation were not wrong as a matter of law, he argues claim construction positions that further interpret this Court's ruling and rely on his reading of the PTAB record, and delves into claim construction of terms never raised by GoPro, all of which is improper and would be confusing to the jury. If the Court

1

finds the expert is opining on claim construction, the expert's opinions are properly excluded, and summary judgment is again appropriate.

Second, Contour brings this Motion because there is no genuine issue as to any material fact with respect to Contour's claim that GoPro's infringement has been willful. GoPro's CEO Nick Woodman ███████████████████████████████n, then, when the patents issued, divested more than $800M in shares of GoPro stock, but did not change the infringing design. GoPro had knowledge of the patents for a year before this suit, yet GoPro continued commercializing the same design through two adverse PTAB rulings and denial of its motion to dismiss, and did not disclose this lawsuit to its shareholders until February 14, 2020—all the while alleging in this lawsuit that it could easily switch to a non-infringing design.

On both of these bases, Contour requests that the Court grant partial summary judgment.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

There is only one dispute regarding whether the GoPro cameras at issue in this suit meet all the limitations of claim 11 of the '954 patent, and it turns solely on the "generate" term which this Court construed. GoPro's expert has applied that term not simply as the Court construed it, but through his own interpretation of the Court's meaning, and his own application of the PTAB proceedings to allegedly narrow the claims. This is not a case of competing views of the plain and ordinary meaning of some unconstrued term. Here, the expert's construction-of-the-construction is wrong as a matter of law *and* his opinions are improper because claim construction is the sole province of the district court. As such, summary judgment of infringement of claim 11 of the '954 patent is readily granted. That infringement is also willful because GoPro copied the Contour embodiment, buried its head in the sand when confronted with the patents (except to sell off hundreds of millions in stock), and never changed its design, despite allegedly having low-cost design around options, in the year between notice of the '954 patent and this suit or at any time thereafter.

### II. ISSUES TO BE DECIDED IN THIS MOTION

Whether, based on the undisputed structure of GoPro's cameras, GoPro infringes independent claim 11 of the '954 patent, when GoPro's only noninfringement arguments rely on its expert's improper

rewrite of the Court's claim construction of the generate limitation, which reads out a separate claim limitation never identified for construction.

Whether GoPro's expert opinions should be stricken, when those opinions are directed to claim construction and apply the intrinsic record and the record from the PTAB proceedings to argue claims were narrowed, all of which is solely the province of the Court and would confuse the jury if the expert was allowed to testify to these claim construction opinions.

Whether GoPro's infringement of claim 11 of the '954 patent has been willful, where GoPro copied the Contour products during the prosecution, was either aware of the patent applications or was willfully blind to them until it had actual notice of the '954 patent a year before this lawsuit, and then never changed its design to avoid infringement, as it alleges it could do at minimal cost, despite losing two IPR proceedings and a motion to dismiss.

## III.    STATEMENT OF FACTS RELATED TO INFRINGEMENT

### A.    The Disputed Claim limitation

The '954 patent issued November 18, 2014. Ex. A, U.S. Pat. No. 8,890,954.  At issue is claim 11, which reads:

A portable, point of view digital video camera, comprising:

a lens;

an image sensor configured to capture light propagating through the lens and representing a scene, and produce real time video image data of the scene;

a wireless connection protocol device configured to send real time image content by wireless transmission directly to and receive control signals or data signals by wireless transmission directly from a personal portable computing device executing an application; and

a camera processor configured to:

receive the video image data directly or indirectly from the image sensor,

**generate from the video image data a first image data stream and a second image data stream, wherein the second image data stream is a higher quality than the first image data stream,**

cause the wireless connection protocol device to send the first image data stream directly to the personal portable computing device for display on a display of the personal portable computing device, wherein the personal portable computing device generates the control signals for the video camera, and wherein the control signals comprise at least one of a frame alignment, multi-camera synchronization, remote file access, and a resolution setting, and at least one of a lighting setting, a color setting, and an audio setting,

receive the control signals from the personal portable computing device, and

adjust one or more settings of the video camera based at least in part on at least a portion of the control signals received from the personal portable computing device.

Ex. A, claim 11 (emphasis added). Only the bolded term is disputed for purposes of infringement of this claim, as shown in the claim chart attached as Ex. B which contains evidence and GoPro admissions for all other limitations. This was confirmed by GoPro's expert Dr. Almeroth, whose report ██████

██████████████████████████████████████████████

██████████████████████████████

██ ████████████████████████████

██████████████████████████

██ ███████████████████████████████

████████████████████████████████

██████████████████████

██████████████████████████████████

██████████████████ As explained below, Dr. Almeroth reached his non-infringement position by admittedly re-interpreting the Court's claim construction regarding this term.

**B.  The History Regarding the Generate Term**

On April 20, 2015, GoPro filed Petitions for *Inter Partes* Review ("IPR") of both patents-in-suit. Dkt. 15 at 4. GoPro alleged the patents were obvious in view of Boland (U.S. Patent App. Pub. No. 2010/011815) and a GoPro catalog. Dkt. 16-1 at 6. The IPRs were instituted on October 28, 2015 as to 22 claims, and denied as to 8 claims. *Id.* at 27–28.

---

[1] ████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████

In response to GoPro's IPR Petitions, Contour explained that "Boland's preview embodiment and streaming embodiment fail to teach generating *two* video contents, ***both*** generated ***from*** the real-time video image data. . . . Boland's preview is created in serial with the encoded video data from the processor—not in parallel. Boland thus teaches, at most, generating video image ***content*** at one resolution from previously stored video image ***content*** at another resolution." Ex. E, Case No. IPR2015-01080, Patent Owner's Response Under 37 C.F.R. § 42.120 at 33 (emphasis in original). Contour used the graphic shown at left



to explain the difference—and versions of this slide have been subsequently used by both parties at the PTAB and in this Court multiple times. *See, e.g.*, Dkt. 235-14, Dkt. 289–2 at 31.

During oral argument in the IPR, GoPro argued that the generating of both streams had to happen at the same time, and argued that "Contour is trying to read data limitations in here that do not exist in the claim itself. . . . there is no parallel word in the claim. There is nothing that says it has to be direct or solely or parallel." Ex. F, Case No. IPR2015-01080, Record of Oral Hearing (Paper 54) at 15:4–10; 24:17–19. During the same argument, in response to PTAB questioning, Contour explained that the two streams "don't have to be created at the same time. They need to be created in parallel from the same source." *Id.* at 78:11–19. PTAB Judge Arbes then clarified "Okay. From the same source, but not necessarily at the same time?" and Contour affirmed. *Id.* at 78:17–18.

On October 26, 2016, the IPRs were rejected because the PTAB found the GoPro catalog was not prior art. Dkt. 78-1 to -4. Based on that conclusion, the PTAB did not reach the issue as to whether Boland disclosed generating two video streams of different quality from the video image data. Dkt. 78-2 at 28–30, 78-4 at 28–29. GoPro appealed that determination.

In the pending district court litigation, on July 31, 2017, the case was transferred from the District

of Delaware (Dkt. 174), and on August 22, 2017 the case was assigned to this Court. Dkt. 180. Prior to transfer, the claim terms in dispute were identified, but no claim construction briefing had been done. In this Court, the parties briefed and argued several terms, including the "generate" term from the '954 patent's claim 11. Dkt. 232. Contour argued the term should be given the plain and ordinary meaning; GoPro proposed a construction. *Id.* at 13. GoPro's construction would have required the two streams be "recorded at the same time or in parallel" and only after the recorded action had taken place. *Id.*

On July 16, 2018, the Court issued its claim construction order. Dkt. 251. The Court rejected both parties' proposals, and construed the term as "record in parallel from the video image data a first image data stream and a second image data stream, wherein the second image data stream is a higher quality than the first image data stream." *Id.* at 9–13. The Court ruled that it was not a requirement of the claims that the streams generated "in parallel" must also be also generated at the same time. *Id.* at 13. The Court rejected GoPro's argument that unless the streams were generated in parallel *and* at the same time, the claims would be indefinite. *Id.* at 12–13.

On appeal from the IPR decision, the Federal Circuit held the GoPro catalog was prior art and remanded for consideration on the merits, which led to a February 4, 2019 conference call with the PTAB regarding the remanded IPR in which "the parties agreed that no additional briefing on the merits of Petitioner's arguments in either proceeding is necessary." Ex. G, Case No. IPR2015-01080, February 14, 2019 Order (Paper 74) at 3–4. Contour informed the PTAB that this Court had construed certain claim terms, and requested a 350-word supplemental submission to explain the relevance. *Id.* at 4. The PTAB allowed each party to file a supplement "directed solely to the issue of claim interpretation." *Id.* at 6.

On February 22, 2019, GoPro's supplement clarified and reaffirmed its previous position "that the claims do not require parallel *processors*, nor do the claims require parallel processing *solely or directly from the image sensor*. . . . While the district court construed the claims to require generation of two video streams in parallel, consistent with GoPro's arguments to the Board, no requirement for the high resolution and low resolution video streams to be generated solely or directly from the image sensor using parallel processors was added." Ex. H, Case No. IPR2015-01080, Petitioner's Supplemental Paper on Relevance of District Court Claim Construction at 1–2 (emphasis in original).

On July 31, 2019, the PTAB held GoPro failed to prove invalidity in view of Boland and the GoPro

catalog. Dkt. 289–2. The PTAB explained:

> We have reviewed the district court decision and the parties' corresponding briefing. The parties appear to now agree that generation of the recited first and second image data streams must be "in parallel," but disagree as to the scope of what that means. The plain language of the claims, however, is clear. The first and second image data streams must be generated "from" the same source, i.e., "the video image data." Thus, if one stream is generated from one source and the other stream is generated from a different source, the claim language is not satisfied. For example, if the "second image data stream"/"second video image content" is generated from "the video image data," but the "first image data stream"/"first video image content" is generated from the "second image data stream"/"second video image content" instead of from "the video image data," the claim language is not satisfied.

*Id.* at 18. At no point, in the two years since this Court's claim construction Order, or in the year since the PTAB's ruling, did GoPro seek reconsideration of the Court's construction or seek supplemental construction.

### C. GoPro's Admissions relevant to this Motion

Nicholas Gilmour, GoPro's corporate witness on the structure, function, operation and design of each accused product, testified ██████████

████████████████████████████████████████████████████████████████████████

████████ Ex. I, Gilmour Dep. Tr. at 33:24–34:12.

Nick Woodman, GoPro's CEO and alleged prior inventor, testified ███████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████ Ex. J, Woodman Dep. Tr. at 111:13–113:6.

GoPro has asserted a 35 U.S.C. §102(g) defense alleging that "GoPro (Nicholas Woodman) conceived of the claimed invention(s) before the named inventors of the Asserted Patents and thereafter diligently reduced the invention(s) to practice in prototypes and products including YHDC5170."[2] Ex. K, GoPro's Third Supplemental Response to Contour's Interrogatory No. 3 at 7; Dkt. 313-2 at 17–21. GoPro's expert testified ████████████████████████████████████████████. Ex. D at

---

[2] There are a multitude of factual disputes regarding Mr. Woodman's claims regarding conception, reduction to practice, and the capabilities of the alleged prototype, and thus that defense will be left for trial. Relevant for this Motion is GoPro's admissions that every accused device meets the claim limitations in the same way as Mr. Woodman's alleged prior invention.

26:2–10. Both of these assertions are hotly contested. However, Mr. Woodman testified that █████████ ████████████████████████████████████████████████████████████████████████ Ex. J at 144:2–24. He confirmed ████████████████████████████████████████. *Id.* at 146:20–147:25.[3]

GoPro's engineer Naveen Krishnamurthy testified ████████████████████████ ████████████████████████████████████████████████████████████████████████████ ██████████████████████████. Ex. L, Krishnamurthy Dep. Tr. at 26:25–28:22, 111:10–112:1.

### D. GoPro's Expert Disputed Only the Generate Limitation

Contour's expert, Dr. Hu, explained in her expert report that all claim 11 limitations are met by each accused product. Ex. M, Expert Report of Dr. Jing Hu Regarding Issues of Infringement, ¶¶ 308–463. In rebuttal, as to claim 11, GoPro's expert Dr. Almeroth argued ███████████████████ ██████████ Ex. C, ¶ 220. He agreed in his deposition █████████████████████████ ████████████████ Ex. D at 269:19–272:5.

## IV. ARGUMENT REGARDING INFRINGEMENT

### A. Legal Standards

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if it could reasonably be resolved in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A fact is material where it could affect the outcome of the case. *Id.*

### B. Infringement

In order to literally infringe a claim, each of the claim limitations must be found in the accused product; *i.e.,* "the properly construed claim [must] read[ ] on the accused device exactly." *Strattec Sec. Corp. v. Gen. Auto. Specialty Co.*, 126 F.3d 1411, 1418 (Fed. Cir. 1997); *Eli Lilly & Co. v. Hospira, Inc.,*

---

[3] GoPro's position is that if the accused products infringe, then the patents are invalid in view of GoPro's prototype/prior invention under section 102(g) on the basis of prior invention of the accused products. This position is relevant to narrowing the issues and as further evidence that only the generating term is in dispute because Mr. Woodman admitted ███████████████████████████████████ ████████████████████████████████ Ex. J at 136:10–142:6, 143:14–146:18. Whether GoPro and Mr. Woodman actually conceived of the invention before Contour's inventors, diligently reduced it to practice, or ever had a working prototype are all fiercely disputed fact issues that require a jury's determination.

8

933 F.3d 1320, 1328 (Fed. Cir. 2019). "[I]nfringement is a question of fact." *Eli Lilly*, 933 F.3d at 1328. However, the question of infringement becomes a question of law where the parties do not dispute any relevant facts regarding the structure or operation of the accused device. *Athletic Alternatives v. Prince Mfg.*, 73 F.3d 1573, 1578 (Fed. Cir. 1996). "Thus, a literal infringement issue is properly decided upon summary judgment when no genuine issue of material fact exists, in particular, when no reasonable jury could find that every limitation recited in the properly construed claim either is or is not found in the accused device." *Bai v. L & L Wings*, 160 F.3d 1350, 1353 (Fed. Cir. 1998).

When claim construction issues arise during summary judgment or *Daubert* motions, this Court has said it "must determine whether an expert's opinion 'delve[s] too deeply into claim construction to be presented to the jury[,]' or, whether a party contends that the opinion (or argument) is wrong as a matter of law. If it is the former, the opinions may properly be stricken or excluded, but if it is the latter, the issues should have been presented in a motion for summary judgment or addressed during the claim construction phase." *Huawei Techs., Co, Ltd v. Samsung Elecs. Co, Ltd*., 340 F. Supp. 3d 934, 947–49 (N.D. Cal. 2018). Contour does not allege any claim term needs construction for purposes of this Motion. All that needs to be determined is whether GoPro's expert, Dr. Almeroth, has rewritten claim 11 to read out certain limitations using a claim construction argument never advanced by GoPro, or at minimum is relying so heavily on his interpretation of the PTAB proceeding to explain the meaning of the generate term that he has gone much too far into the territory of claim construction for his opinions to be presented to the jury.

**C.    Dr. Almeroth's Claim Interpretation is Wrong as a Matter of Law**

Claim 11 has two requirements for the pipeline of video image data that the camera processor is configured to receive and process: (1) it must "receive the video image data directly or indirectly from the image sensor," and (2) it must "generate from the video image data a first image data stream and a second image data stream, wherein the second image data stream is a higher quality than the first image data stream." Ex. A, '954 patent, claim 11. Dr. Almeroth reinterprets the claim incorrectly as a matter of law by reading out "directly *or indirectly* from the image sensor" and requiring the video image data not be modified after the image sensor. He then compounds that error by saying it is this same unmodified data at the image sensor that must be used to generate two streams "in parallel," *i.e.*, it must be the same data from the image sensor that cannot have been modified.

GoPro did not raise any dispute regarding the meaning of "receive the video image data directly or indirectly from the image sensor," or "from the video image data" in this Court, nor in Delaware. *See* Dkt. 149-1 (GoPro's proposed construction of the generate terms using "from the video image data" for the same phrase in the term to be construed, and relying on the IPR as intrinsic evidence).

Dr. Almeroth has put forth opinions that, based on the PTAB proceedings, Contour "narrowed the claims of the '954 patent during the IPR proceedings in order to distinguish prior art [Boland] that disclosed known implementations of providing a preview video" and the exact same statement substituting "the '694 patent" in that sentence for "the '954 patent." Ex. N, Expert Report of Kevin Almeroth, Ph.D. Regarding Invalidity at ¶¶ 211–213 (211), 256–259. Dr. Almeroth also opines that "[i]n effect, the PTAB's interpretation of '*corresponding* to the video image data' appears to require '*generating directly* from the video image data' or some other direct relationship to the video image data."[4] *Id*. at ¶ 257. Applying this to his infringement analysis, Dr. Almeroth ██████████████████████████████████
██████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████
██████████████████          ████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████

---

[4] The word "corresponding" appears only in claim 11 of the '694 patent which requires "generating video image content corresponding to the scene to be recorded" while claim 11 of the '954 requires "generate, from the video image data." Ex. A, '954 patent, claim 11; Ex. O, U.S. Pat. No. 8,896,694 (the "'694 patent"), claim 11. As shown through his opinions and testimony, Dr. Almeroth repeatedly opined that ████████████████████████████████████████████████
████████████████████████████████████████████████
██████

Dr. Almeroth is wrong as a matter of law because the term *indirectly* is expressly stated in the claim limitation that the video image data is received "directly *or indirectly* from the image sensor." Ex. A, '954 patent, claim 11. It can be argued that the video image data with serial pre-processing steps is still *directly* received by the processor, but as shown below





The Court did not, and was not asked to construe the claim term "receive the video image data directly or indirectly from the image sensor" and "indirectly" cannot be read out of the claim as Dr. Almeroth has done. *See, e.g., Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997) (holding "[e]ach element contained in a patent claim is deemed material to defining the scope of the patented invention"). If Dr. Almeroth were correct in his "interpretation" of the construction (he is not), the construction would be legally incorrect. *Merck & Co., Inc. v. Teva Pharm. USA, Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005) (rejecting construction that would render a term superfluous). This Court faced a similar situation from the other side in *Fujifilm Corporation v. Motorola Mobility LLC*, when Motorola moved (belatedly) to strike the plaintiff's expert's opinions regarding the plain meaning of the unconstrued term "at least one of," and the Court denied the motion because Motorola's competing construction effectively read limitations out of the claim. No. 12-CV-03587-WHO, 2015 WL 1265009, at *9 (N.D. Cal. Mar. 19, 2015). Dr. Almeroth has interpreted the Court's construction of the "generate" terms to read out the limitations of "indirectly" and "corresponding to."

Not only is this wrong as a matter of law, as noted above, but GoPro represented the polar opposite of Almeroth's position to the PTAB, stating that "the claims do not require . . . parallel processing *solely or directly from the image sensor*. While the district court construed the claims to require generation of two video streams in parallel . . . no requirement for the high resolution and low resolution video streams to be generated solely or directly from the image sensor using parallel processors was added." Ex. H at 1–2 (emphasis in original). GoPro was correct then. Its expert is wrong now.

Dr. Almeroth agrees ████████████████████████████████████████

████████████████████████████████████████████████████. Ex. D at 311:10–

312:24.  GoPro also never argued for a negative limitation in claim construction.  There is no reason GoPro

could not and should not have raised this "only direct, with no pre-processing" issue during claim

construction, or in the year since the PTAB final decision—it always knew there was pre-processing in

between the image sensor and the processing of the two streams in its cameras.  It is highly improper, and

prejudicial, to wait until expert reports and then disclose that the expert has assigned a wholly new meaning

to a claim term.  Patent Local Rule 4–1(a) requires early and complete disclosure of the claim terms at

issue, and precludes new constructions at the eleventh hour.  The Court should reject Dr. Almeroth's

eleventh hour attempt at claim construction, and grant summary judgment because if the Court finds Dr.

Almeroth's opinion on the generate term is wrong as a matter of law, then GoPro's has no defense to

infringement of claim 11.

**D.      Alternatively, Dr. Almeroth's Opinions Should Be Excluded, As They Are Too**

**Deeply Rooted In Claim Construction And The Intrinsic Evidence**

In reaching his non-infringement conclusions on the generate terms, it is indisputable that Dr.

Almeroth used the prosecution history and the PTAB proceedings to re-construe the Court's claim

construction, and that he is relying on those new constructions for his opinions.  For example, Dr. Almeroth

opined that the PTAB "interpret[ed] 'from the video image data' . . . to require generation in parallel from

the same source, i.e., 'the video image data'" and "[t]hus, CIPH narrowed the claims of the '954 patent

during the IPR proceedings."  Ex. N at ¶¶ 212–213.[5]  The scope of the claims is the province solely of the

Court, yet Dr. Almeroth testified ███████████████████████████████████████

████████████████████████████ Ex. D at 34:9–11.  He opined "[i]n effect, the PTAB's

interpretation of '*corresponding* to the video image data' appears to require '*generating directly* from the

video image data' or some other direct relationship to the video image data."[6] Ex. N at ¶ 257 (emphasis in

---

[5] Despite this unequivocal statement in his report, Dr. Almeroth testified ██████████████
████████████████████████████ Ex. D at 121:19-122:3.

[6] ███████████████████████████████████████████████████████████
████████████ Ex. D at 132:3-135:22, 138:14-140:15.

original).   He testified ████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████ Ex.

D at 129:12–14, 113:23–24.

Dr. Almeroth's opinions go well beyond applying an analysis of the technology and an application to the claim limitations as construed by the Court.  His opinions regarding interpretation of the Court's construction of the generate terms, and his opinions on the never-construed term "from the video image data," take for himself the role of the Court in determining how to apply the prosecution history and make "the proper interpretation of the Court's claim construction."

The Federal Circuit has confirmed that the "risk of confusing the jury is high when experts opine on claim construction" and that it is proper in such cases to exclude the expert's opinions that would argue construction.  *Cordis Corp. v. Boston Sci. Corp.*, 561 F.3d 1319, 1337 (Fed. Cir. 2009).  This case is very similar to *MediaTek Inc. v. Freescale Semiconductor, Inc.*, No. 11–cv–5341–YGR, 2014 WL 971765 (N.D. Cal. Mar. 5, 2014).  In *MediaTek*, the court rejected an expert's attempt to use the prosecution history to put forth an interpretation of the plain and ordinary meaning of unconstrued terms, and noted "except in a rare case, use of the prosecution history raises issues solely for the court, not the jury.  Thus testimony grounded in the prosecution history to discern the meaning of a claim is properly excluded from presentation to the jury, especially where, as here, a fair reading of the expert report reveals an intention to argue claim construction."  *Id.* at *4.  As here, the *MeidaTek* court noted defendant had not identified the terms for construction, nor sought leave to amend the terms it had identified.  *Id.* at *5.  As here, the court noted the expert "relies heavily on the prosecution history . . . to explain and expound upon a specific meaning and/or requirements of the terms identified."  *Id.*  As noted above, Dr. Almeroth repeatedly expounds about the impact of the PTAB proceedings on claim construction and the meaning of the generate term and "from the video image data."  *See also* Ex. C at ¶¶ 82, 86, 91, 92, 143, 184, 218, 225, 232, 251, 256, 302, 310; Ex. N at ¶¶ 211–13, 256–59.  And as the court in *Mediatek* held, such opinions are properly excluded.  Similarly, in *Huawei* this Court excluded expert opinions that improperly narrowed the claim through expert opinion.  *Huawei*, 340 F.Supp.3d 934 at 974.  *See also, The Medicines Co. v. Mylan Inc.*, No. 11-CV-1285, 2014 WL 1979261, at *6 (N.D. Ill. May 15, 2014) (excluding expert's claim

construction opinion where expert's quotation of patent specification as basis for opinion "further evidence[d] that his opinion concern[ed] claim construction issues").

For completeness, this case is distinct from this Court's decision in *Fujifilm*, cited above, where Motorola moved after the summary judgement deadline to strike the expert's interpretation of the plain and ordinary meaning of unconstrued terms. *Fujifilm*, 2015 WL 1265009, at *6. In reviewing the interpretation, this Court found the expert's plain and ordinary meaning was not improper, and did not rely on intrinsic and extrinsic evidence, and thus the Court provided constructions for trial. *Id*. at *7–8. Here, Dr. Almeroth's methodology was to reach an opinion on how he believed Contour would interpret the claims, apply that to determine invalidity, and then reach a separate opinion of his own interpretation of the claims to opine as to non-infringement—all based around his analysis and application of the intrinsic record from the PTAB. Accordingly, this case is quite different from *Fujifilm*.

Dr. Almeroth's opinions are also akin to the ones the Federal Circuit rejected as improper in *CytoLogix Corp. v. Ventana Med. Sys., Inc.*, 424 F.3d 1168, 1172 (Fed. Cir. 2005) where the parties agreed the expert witnesses could testify regarding conflicting opinions on claim construction. Here, Dr. Almeroth testified he ██████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ and the fact that his opinions are founded on this alleged disagreement renders them improper.

For all these reasons, the opinions in paragraphs 82, 86, 91, 92, 143, 184, 218, 225, 232, 251, 256, 302, and 310 of Dr. Almeroth's rebuttal report regarding infringement and paragraphs 211–13 and 256–59 of his opening report regarding invalidity should be stricken. Without these improper opinions, summary judgment of infringement is warranted based on the evidence and the admissions of GoPro.

### E. No Material Dispute Regarding Serial and Parallel Processing

In opining on non-infringement, Dr. Almeroth testified ████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ██████████████████████ Ex. D at 287:25–288:3 (emphasis added)

15

Dr. Almeroth provided no opinions as to ████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████ *Id*. at 294:17–297:3.  Ambarella's (GoPro's chip supplier for

all products other than the HERO6 Black) corporate representative, █████████████████

██████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

███████████████████████

████████████████████

Moreover, virtually all of the testimony from GoPro regarding ████████████████

████████████████  Ex. C at ¶¶ 108, 121, 139–41, 180, 181, 183, 194, 196, 197, 215, 226, 227, 233–35,

250, 257, 263, 264, 268, 269, 273, 280, 293; Ex. Q, Decl. K. Iga of Socionext, Inc., at Answers 13, 14; Ex.

L at 68:20–73:21, 137:18–138:2, 140:16–144:19, 202:2–23.[7]  But, with respect to the H.264 streams

(which satisfy the first and second "image data stream" limitations)[8], Socionext's (GoPro's chip supplier

for the HERO6 Black) corporate representative confirmed that █████████████████████

█████████████████████████████  Ex. Q, Answer 9.  This is illustrated in the

---

[7] ██████████████████████████████████████

██████████████████████████████████████████████

██  But neither the claim nor the

Court's construction contains any specific requirement regarding whether individual frames of a video

stream must be generated "in parallel."  The Court's construction for claim 11 only requires that the two

image data ***streams*** (which may include many individual frames) are generated "in parallel."  Thus,

testimony about the relationship between individual frames is not relevant.

████████████████████  Ex. Q, Answer 19.  Dr. Almeroth discusses this as well.  Ex. C at ¶¶ 138, 239–

47.  This too is irrelevant to the claims, which do not recite (and have not been construed by the Court to

require) any particular serial or parallel relationship with respect to storing video to a memory card.

[8] Dr. Almeroth acknowledges █████████████████████████████

██████████████████████████████████████████████

████████████████

following overlay (Ex. C at ¶ 235)



prising:

a camera processor configured to:
receive the video image data directly or indirectly from the image sensor,
record in parallel from the video image data a first image data stream and a second image data stream, wherein the second image data stream is a higher quality than the first image data stream,

This is provided for a full understanding of what GoPro means by "serial." It does not have any bearing on the camera processor indirectly receiving the video image data from the image sensor and then recording in parallel from the video image data, not necessarily at the same time but always from the same source.

## V. STATEMENT OF FACTS RELATED TO WILLFULNESS

Provisional application No. 61/382,404, the priority application for both the '954 and '694 patents, was filed on Sept. 13, 2010. Ex. R, U.S. Provisional App. No. 61/382,404. The Contour GPS, an embodiment of the patent which had Bluetooth connectivity, was released the same day. Ex. S, Case No. IPR2015-01080, Decl of R. Mander, Ph.D, at ¶ 22.

[REDACTED]

[REDACTED]

[REDACTED]

On January 5, 2011, Contour announced "a built-in Bluetooth chip in the ContourGPS and a mobile app that together enable your phone to become a live viewfinder. Now, you can see what your camera sees while configuring your settings, all from the most remote locations." Ex. U, Jan. 5, 2011 Engadget Article. The functionality was publically demonstrated that same day at CES. Ex. S at ¶ 22.

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

On or around May 13, 2011, Contour released the Contour+ that "buil[t] on the popular Contour GPS model with added connectivity. . . . The Contour+ can connect to smartphones via Bluetooth, creating a wireless viewfinder for the camera. Camera settings can also be adjusted via the Bluetooth connection." Ex. W, Contour+ Press Release.

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

GoPro launched its HERO2 in October 2011. Ex. BB, GoPro's First Supp. Resp. to Contour's Interrogatory No. 8 at 19.

■ It was a full year later when GoPro first released its mobile app, in October 2012. Ex. BB at 25.

Keith Gurganus was a consultant to Contour and is one of the named inventors on the Contour patents. Exs. A and O. In March 2013, Mr. Gurganus began working as a GoPro employee in developing applications "including live streaming for mobile and embedded on camera." Ex. DD, LinkedIn page.

On June 26, 2014, GoPro went public. At the time of the IPO, Nick Woodman held about 56.5M Class A shares. Ex. EE, Jun. 25, 2014 SEC Form 3.

On September 25, 2014, a "Notice of Allowance" published for the '954 patent. Ex. FF, Mooney Decl. at Ex. 1.

On October 2, 2014 Mr. Woodman moved 5.8M shares, worth over $450M, to a brand new charity, the Jill and Nicholas Woodman foundation, sidestepping a rule that prohibits insiders from selling stock within the first 180 days after an IPO. Ex. GG, CNN Money Article.

On October 29, 2014, the Patent Office released an "Issue Notification" stating that the '954 patent would issue on November 18, 2014. Ex. FF at Ex. 3.

On November 10, 2014, Nick Woodman sent an email to GoPro employees informing them he planned to sell a portion of his GoPro holdings. Ex. HH, Business Insider Article. In connection with that, by November 20, 2014, he submitted the SEC-required paperwork to sell over 6M Class A shares. Ex. II, Nov. 19, 2014 SEC Form 4.

On November 18 and 25, 2014, the '954 and '694 patents issued. Exs. A and O. Contour contacted GoPro about its infringement of the two patents during the last week of November 2014. Ex. FF at ¶ 5.

On November 25, 2014, Contour, LLC, a Utah limited liability company and then–assignee of the '954 and '694 patents, filed a lawsuit (the "Utah Action"), in the United States District Court for the District of Utah, against a GoPro distributor, Camp Saver, LLC, alleging infringement of the '954 and '694 patents. Ex. JJ, Civil No. 2:14-cv-00864-PMW, Complaint.

On November 25, 2014, Nick Woodman sold over 4M Class A GoPro shares and received over $295M. Ex. KK, Nov. 25, 2014 SEC Form 4.

On December 3, 2014, Nick Woodman sold 837,647 Class A shares and received over $60M.  Ex. LL, Dec. 3, 2014 SEC Form 4.  For the next three years, Mr. Woodman did not sell any shares.

On January 5, 2015, Contour, LLC filed and served on GoPro a First Amended Complaint adding GoPro as a defendant in the Utah Action.  Ex. MM, Civil No. 2:14-cv-00864-PMW, First Amended Complaint.  The First Amended Complaint alleged patent infringement of both the '954 and '694 patents by GoPro through GoPro's camera products with wireless capability, including the HERO line of cameras. GoPro's corporate representative admitted ███████████████████████████████████████ ███████████████████████████████████████     ██████████████████████████████████ Contour also put GoPro on notice that the Contour+2 practiced one or more claims of the '954 and '694 patents at this time.  Ex. MM at ¶ 16.

On November 30, 2015, Contour, LLC voluntarily dismissed its operative complaint in the Utah Action, without prejudice, pursuant to Federal Rule of Civil Procedure 41.  Ex. OO, Civil No. 2:14-cv-00864-PMW Notice of Dismissal Without Prejudice.  That same day, Contour IP Holding, LLC–the new assignee of the '954 and '694 patents–filed a lawsuit (the "Delaware Action"), in the United States District Court for the District of Delaware, against GoPro alleging patent infringement of the '954 and '694 patents. Dkt. 1.  The Delaware Action continued to allege patent infringement of both the '954 and '694 patents by GoPro through GoPro's camera products with wireless capability, including the HERO line of cameras. *Id*.  The Delaware Action also alleged that GoPro was aware of the '954 and '694 patents and its infringement of those patents at least of the filing of the January 5, 2015 Utah Action, and with that knowledge, continued to sell its infringing products without designing around the patents, and has thus willfully infringed.  *Id*. at ¶¶ 65–66.

Despite having gone public in in June 2014, GoPro did not identify or mention this lawsuit to its shareholders in any public statement, earnings calls, or filings until February 14, 2020.  Ex. PP, Form 10-K for Fiscal Year Ending Dec. 31, 2019 at 38.

████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

GoPro released numerous products after the Utah Action was filed, including the HERO+, HERO+ LCD, HERO4 Session, HERO5 Black, HERO5 Session, HERO6, the Karma, and the Fusion. Ex. BB at 19. And, [REDACTED] [REDACTED], culminating in the launch of the HERO6 in September 2018. *Id.* at 11, 19; *see also* Ex. N at ¶¶ 821–823.

## VI. ARGUMENT REGARDING WILLFULNESS

### A. Legal Standard for Willfulness

Section 284 of the Patent Act is the statutory basis for willful infringement and provides that a "court may increase the damages up to three times the amount found or assessed." 35 U.S.C. § 284. "The subjective willfulness of a patent infringer, intentional or knowing, may warrant enhanced damages, without regard to whether his infringement was objectively reckless." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1933 (2016). Subjective willfulness "is generally measured against the knowledge of the actor at the time of the challenged conduct." *Id.* at 1333; *PersonalWeb Techs. LLC v. Int'l Bus. Machines Corp.*, 2017 WL 2180980, at *20 (N.D. Cal. May 18, 2017) ("[Willful infringement] turns on the subjective belief of the accused infringer, measured at the time of the challenged conduct."). Willfulness must be shown by a preponderance of the evidence. *Id.* at 1934. "Knowledge of the patent alleged to be willfully infringed continues to be a prerequisite to enhanced damages." *WBIP, LLC v. Kohler Co.,* 829 F.3d 1317, 1341 (Fed. Cir. 2016) (citing *Halo*, 136 S.Ct. at 1932–33).

### B. There is no material fact dispute that GoPro has known about the patents-in-suit and Contour's infringement allegations since prior to this lawsuit.

GoPro first learned about the '954 and '694 patents during the last week of November 2014.[9] Ex.

---

[9] [REDACTED]

[REDACTED]

[REDACTED]

FF at ¶ 5.  The Utah Action was dismissed without prejudice under Rule 41.  A voluntary dismissal without prejudice leaves the parties as if no action has been filed.  *SWC Inc. v. Elite Promo Inc.*, 234 F. Supp. 3d 1018, 1024 (N.D. Cal. 2017) ("It is well-established in the Ninth Circuit that the effect of a voluntary dismissal under Rule 41 is 'to leave the parties as though no action had been brought.'") (citation omitted).  Contour then filed the Delaware Action against GoPro alleging patent infringement of the '954 and '694 patents.  Dkt. 1.  The Delaware Action alleged that GoPro was aware of the '954 and '694 patents and its infringement of those patents at least as of the January 5, 2015 Utah Action filing, and, with that knowledge, continued to sell its infringing products without designing around the patents.  *Id.* at ¶¶ 65–66.  There is no material fact dispute that GoPro has known about the '954 patent and Contour's infringement allegations since prior to this lawsuit.  GoPro has willfully infringed.

**C.  There is no material fact dispute that GoPro became aware of Contour's products embodying the patents-in-suit prior to and during the lawsuit.**

Contour put GoPro on notice that the Contour+2 practiced one or more claims of the '954 and '694 patents at least of the filing of the First Amended Complaint in the Utah Action on January 5, 2015.  Ex. MM at ¶ 16.  Then, during the course of the litigation, GoPro became aware of other Contour products that practiced the '954 and '694 patents.  For example, Mr. Mander provided a declaration on January 19, 2016 detailing how the ContourGPS practiced certain asserted claims of the '954 and '694 patents.  Ex. S at ¶¶ 22–23.

At least by January 19, 2016, there is no material fact dispute that GoPro knew its prior copying activities related not just to Contour's products, but to Contour's patented design.  For example, GoPro knew that its ███████████████████████████████████████████████████████████████ ██████████████████████████████████████████████.  Exs. V, X, Y, and Z.  And, GoPro admits that the HERO2, which was released in October 2011, shortly after GoPro's copying activities, and every camera since then ████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ██████  Ex. J. at 111:13–113:6.  As shown above, this infringes claim 11 of the '954 patent.

**D.  There is no material fact dispute that GoPro has continued to infringe despite**

CONTOUR'S MOTION FOR SUMMARY JUDGMENT OF INFRINGEMENT AND WILLFUL INFRINGEMENT
CASE NO. 17-CV-04738-WHO

**knowledge of the patents-in-suit and knowledge of infringement.**

Despite pre-suit knowledge of the '954 and '694 patents and knowledge of Contour's allegations of infringement and willfulness, GoPro continued to make and sell products that infringed the '954 and '694 patents, including claim 11 of the '954 patent. *See supra* at Sections III-IV. *Apple Inc. v. Samsung Electronics Co., Ltd.*, 258 F.Supp.3d 1013, 1026–27 (N.D. Cal. Jun. 23, 2017) ("The continued sale of a copied product supports an inference that [] infringement was willful."). Indeed, after the Utah Action was filed, GoPro made and released the HERO+, HERO+ LCD, HERO4 Session, HERO5 Black, HERO5 Session, HERO6, and the Fusion, all of which infringe claim 11 of the '954 patent. Ex. BB at 19; *see also supra* at Sections III-IV. Thus, there is no material fact dispute that GoPro continued its knowing infringement throughout this case.

**E.    GoPro's defenses in this case do not avoid willfulness.**

GoPro's claimed defenses do not save it from willfulness. *Halo*, 136 S. Ct. at 1926 ("The *Seagate* test further errs by making dispositive the ability of the infringer to muster a reasonable defense at trial, even if he did not act on the basis of that defense or was even aware of it."). There is no evidence in this case that GoPro made the business decision to make and sell products that infringed the '954 and '694 patents, including claim 11 of the '954 patent, during this litigation because it subjectively believed it did not infringe the '954 patent or because the '954 patent was invalid.

Even assuming GoPro knew of such defenses, such knowledge does not help GoPro here. With respect to GoPro's non-infringement defense to claim 11 of the '954 patent, GoPro does not dispute the accused products meet every limitation of claim 11; its CEO and corporate witness admitted almost every limitation, including the generate term. *See supra* at Section III.C. And with respect to the "generate" limitation, GoPro's expert re-construed the Court's construction at the eleventh hour to improperly reading out "indirectly" in the claim language and improperly attempt to testify as to the file history, the PTAB proceedings, and alleged narrowing of the claims. *See supra* at Section IV.

As to invalidity, any subjective belief that the patents were invalid was rendered untenable during the course of the litigation. The PTAB rejected GoPro's IPR challenges on October 26, 2016, after which GoPro continued to sell and release infringing cameras through the time that the PTAB finally rejected GoPro's IPR challenges on July 31, 2019 after remand from the Federal Circuit. Dkt. Nos. 289, 289-1,

23

and 289-2; Ex. BB at 19. GoPro's failed IPR thus essentially relegated GoPro to arguing that it invented the subject matter of the patents-in-suit before Contour under § 102(g), a defense GoPro's attorneys did not add to this lawsuit until April 2018. *See, e.g.*, Dkt. No. 313 at 9 ("GoPro disclosed its § 102(g) defense on a timely basis in its April 2, 2018 Invalidity Contentions"). By that time, GoPro had already made and released the infringing HERO+, HERO+ LCD, HERO4 Session, HERO5 Black, HERO5 Session, HERO6, and Fusion cameras during the lawsuit. Ex. BB at 19. Accordingly, GoPro's alleged defenses do not absolve it of willfulness.

**F.      There is no material fact dispute that GoPro contends it had a cheap non-infringing alternative that it could have quickly adopted, but chose not to do so.**

GoPro contends that easy to accomplish non-infringing design options were available since it was given pre-suit notice in November 2014, through the start of this lawsuit in November 2015, and continuing through today. ███████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

Yet, GoPro never changed its design or made any attempt to avoid infringement, despite two failed IPRs and this Court's denial of GoPro's motion to dismiss. Dkt. Nos. 213, 289, 289-1, 289-2; Ex. NN at 216:14:25. Thus, there is no material fact dispute that GoPro chose to sell copied Contour products without adopting an allegedly quick and cheap non-infringing alternative.

**G.      Summary**

For the foregoing reasons, the Court should grant summary judgment of willful infringement of claim 11 of the '954 patent because there is no material fact dispute that (1) GoPro was aware of the '954 patent and Contour's allegations of infringement prior to the lawsuit; (2) GoPro knew of Contour's patent applications when it copied Contour's dual streaming feature, or at best was willfully blind to a high risk of infringement; (3) GoPro became aware during this lawsuit that its pre-suit copying activities related to Contour's patented design; (4) GoPro continued to make and sell infringing cameras throughout this lawsuit despite this knowledge; and (5) GoPro contends that it could have easily switched to a cheap non-

24

infringing alternative at the outset of this lawsuit, but chose instead to keep making and selling infringing cameras, despite losing multiple challenges to Contour's claims and patents.

## VII. CONCLUSION

GoPro's only disputed limitation in the '954 patent's claim 11 collapsed into a question of law ripe for summary judgment when it became clear the argument rests solely on GoPro's expert wrongly rewriting the Court's claim construction, and wrongly applying the intrinsic (PTAB) evidence. GoPro's accused products meet all limitations of claim 11 under the Court's construction, and partial summary judgement is appropriate. As to willfulness, the contemporaneous documents contain clear admissions that GoPro used the Contour products as a roadmap, and after gaining knowledge of the patents, continued to knowingly infringe, warranting summary judgment.

Dated: July 8, 2020

/s/ John R. Keville
John R. Keville (*Pro Hac Vice*)
jkeville@winston.com
Dustin Edwards (*Pro Hac Vice*)
dedwards@winston.com
William M. Logan (*Pro Hac Vice*)
wlogan@winston.com
WINSTON & STRAWN LLP
800 Capitol St., Suite 2400
Houston, TX 77002-2925
Telephone: (713) 651-2600
Facsimile: (713) 651-2700

David P. Enzminger (SBN 137065)
denzminger@winston.com
Matthew R. McCullough (SBN 301330)
mrmccullough@winston.com
WINSTON & STRAWN LLP
275 Middlefield Road, Suite 205
Menlo Park, CA 94025-1203
Telephone:     (650) 858-6500
Facsimile:     (650) 858-6550

Attorneys for Plaintiff
CONTOUR IP HOLDING, LLC