**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

Sean S. Pak (Bar No. 219032)
*seanpak@quinnemanuel.com*
Michelle Ann Clark (Bar No. 243777)
*michelleclark@quinnemanuel.com*
Jordan Jaffe (Bar No. 254886)
*jordanjaffe@quinnemanuel.com*
QUINN EMANUEL URQUHART & SULLIVAN, LLP
50 California St., 22nd Floor
San Francisco, California 94111
Telephone:  (415) 875-6600
Facsimile:  (415) 875-6700

Attorneys for Defendant
GOPRO, INC.,

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CONTOUR IP HOLDING, LLC, | CASE NO. 3:17-cv-04738-WHO |
| Plaintiff, | **DEFENDANT GOPRO, INC.'S OPPOSITION TO CIPH'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF INFRINGEMENT AND WILLFUL INFRINGEMENT** |
| v. | |
| GOPRO, INC., | |
| Defendant. | [Declaration of Marc Kaplan filed concurrently herewith] |
| | Judge:          William H. Orrick |
| | Date:           August 12, 2020 |
| | Time:           2:00 p.m. |
| | Location:      Courtroom 2, 17th Floor |
| | **REDACTED VERSION** |

# <u>TABLE OF CONTENTS</u>

<b><u>Page</u></b>

I.      INTRODUCTION.................................................................................................II

II.     BACKGROUND....................................................................................................2

        A.      GOPRO SOLD ACTION CAMERAS BEFORE CONTOUR...................................2

        B.      TIMELINE OF THE PARTIES' DISPUTE .............................................................3

        C.      THE DISPUTED CLAIM LIMITATIONS ................................................................4

        D.      HISTORY OF THE "GENERATE TERM".............................................................7

III.    LEGAL STANDARD ...........................................................................................9

IV.     ARGUMENT ........................................................................................................10

        A.      WHETHER THE IMAGE DATA STREAMS ARE GENERATED "FROM
                THE VIDEO IMAGE DATA" IS A DISPUTED QUESTION OF FACT..............10

        B.      WHETHER THE CAMERA PROCESSOR "RECORD[S] IN PARALLEL
                . . . A FIRST IMAGE DATA STREAM AND A SECOND IMAGE DATA
                STREAM" IS A DISPUTED QUESTION OF FACT.............................................12

        C.      DR. ALMEROTH DOES NOT OFFER ANY CLAIM CONSTRUCTION
                OPINIONS ...........................................................................................................16

        D.      GOPRO DID NOT WILLFULLY INFRINGE THE ASSERTED CLAIMS .........22

V.      CONCLUSION ....................................................................................................25

## TABLE OF AUTHORITIES

**Page**

### Cases

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.*,
    239 F.3d 1343 (Fed. Cir. 2001) .................................................................................. 13

*Apple, Inc. v. Samsung Electronics Co., Ltd.*, 12-CV-00630-LHK,
    2014 WL 660857 at *3 (N.D. Cal. Feb. 20, 2014) ..................................................... 16

*Bd. of Regents, the Univ. of Texas Sys. v. Ethicon, Inc.*,
    No. 1:17-CV-01084-LY, 2020 WL 3582793 (W.D. Tex. Apr. 17, 2020) ..................... 9

*CIPH, LLC v. GoPro, Inc.*,
    Case No.1:15-cv-1108, Dkt. 1 (D. Del. Nov. 30, 2015) ............................................. 3

*Commonwealth Sci. & Indus. Research Organisation v. Mediatek Inc.*,
    No. 6:12-CV-578, 2015 WL 12806515 (E.D. Tex. June 29, 2015) ........................... 17

*Contour, LLC v. Camp Saver, LLC*,
    Civ. No. 2:14-cv-00864, Dkt. 2 (D. Utah) ................................................................. 3

*Finjan, Inc. v. Cisco Sys. Inc.*,
    No. 17-CV-00072-BLF, 2017 WL 2462423 (N.D. Cal. June 7, 2017) ................. 23, 25

*Fujifilm Corp. v. Motorola Mobility LLC*,
    No. 12-CV-03587-WHO, 2015 WL 1265009 (N.D. Cal. Mar. 19, 2015) ............. 20, 21

*Genentech, Inc. v. Trs. of Univ. of Penn.*,
    871 F. Supp. 2d 963 (N.D. Cal. 2012) ...................................................................... 15

*Greatbatch Ltd. v. AVX Corp.*,
    No. CV 13-723-LPS, 2016 WL 7217625 (D. Del. Dec. 13, 2016)
    *aff'd*, No. 2019-2314, 2020 WL 3967853 (Fed. Cir. July 14, 2020) .................... 22, 25

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*, ⸺ U.S.,
    ⸺, 136 S. Ct. 1923 (2016) ................................................................................. 9, 22

*Huawei Techs., Co, Ltd v. Samsung Elecs. Co, Ltd.*,
    340 F. Supp. 3d 934 (N.D. Cal. 2018) ................................................................. 21, 22

*Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*,
    87 F. Supp. 3d 928 (N.D. Cal. 2015) .......................................................................... 9

*Kolcraft Enterprises, Inc. v. Chicco USA, Inc.*,
    No. 09 C 03339, 2018 WL 10772693 (N.D. Ill. July 16, 2018) ............................... 17

*Magna Elecs., Inc. v. TRW Auto. Holdings Corp.*,
    No. 1:12-CV-654, 2016 WL 4238769 (W.D. Mich. Jan. 28, 2016) .......................... 17

*MediaTek, Inc. v. Freescale Semiconductor, Inc.*,
    No. 11-CV-5341 YGR, 2014 WL 971765 (N.D. Cal. Mar. 5, 2014) ..................... 21, 22

*Merck & Co., Inc. v. Teva Pharm. USA, Inc.*,
   395 F.3d 1364 (Fed. Cir. 2005) .................................................................................. 11

*Patent Category Corp. v. Target Corp.*,
   567 F. Supp. 2d 1171 (C.D. Cal. 2008) ...................................................................... 9

*Pfaff v. Wells Elecs., Inc.*,
   5 F.3d 514 (Fed. Cir. 1993) ........................................................................................ 9

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) ................................................................................ 16

*Radware, LTD. et al v. F5 Networks, Inc.*,
   5-13-cv-02024 (CAND August 22, 2016, Order) (Whyte, USDJ) ................................. 24

*Southwall Techs., Inc. v. Cardinal IG Co.*,
   54 F.3d 1570 (Fed. Cir. 1995) .................................................................................... 9

*SRI Int'l, Inc. v. Cisco Sys., Inc.*,
   930 F.3d 1295 (Fed. Cir. 2019) .................................................................................. 9

*TechSearch, L.L.C. v. Intel Corp.*,
   286 F.3d 1360 (Fed. Cir. 2002) .................................................................................. 9

*Wake Forest Univ. Health Scis.*,
   2014 WL 1612648 (W.D. Tex. Apr. 22, 2014) ........................................................... 22

*Wisconsin Alumni Research Found. v. Apple, Inc.*,
   135 F. Supp. 3d 865 (W.D. Wis. 2015) ..................................................................... 17

*X One, Inc. v. Uber Techs., Inc.*,
   2020 WL 746127 (N.D. Cal. Feb. 12, 2020) .............................................................. 10

**Statutory Authorities**

35 U.S.C. § 101 .................................................................................................. 1, 4, 14, 22

35 U.S.C. § 314(a) ........................................................................................................... 25

**Additional Authorities**

*https://gopro.com/en/us/news/usa-today-features-gopro.* ............................................... 2

*https://www.explorebigsky.com/big-sky-community-goes-all-in-2/30414* ......................... 2

*https://www.forbes.com/sites/ryanmac/2013/03/04/gopro-evolution-from-35mm-film-to-
   americas-fastest-growing-camera-company/#33dfc2966406* ...................................... 2

*https://www.nasdaq.com/articles/gopro-dominates-do-it-yourself-action-video-industry-
   2014-11-14* ................................................................................................................ 2

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

## I. <u>INTRODUCTION</u>

CIPH's Motion for Summary Judgment only highlights the factual disputes underlying Go-Pro's non-infringement positions. To start, GoPro disputes the very premise of CIPH's Motion "that there is only one dispute regarding whether the GoPro cameras . . . meet all the limitations of Claim 11 of the '954 Patent." Dkt. 374 at 2. GoPro contends that CIPH has failed to provide sufficient evidence to prove infringement of multiple claim limitations and has never addressed certain "accused products" at all, such as systems integrated with Karma Passenger. The parties also dispute whether the "first image data stream" and "second image data stream" are generated "from the video image data." This is a quintessential expert dispute: ███████████

████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████ This determination requires assessment of the nature of ██████████████████

███████████████████████████████████ As CIPH points out, the parties' experts *also* dispute whether the first and second video data streams are generated "in parallel." It is not the parties' only dispute, but it is an important one that turns on disputed issues of fact and expert opinion. GoPro's position does not constitute a new claim construction – the parties agree that Court's construction of "generate" includes the "in parallel" limitation. The parties' experts simply offer competing views on whether the processing steps of the accused processors meet the "in parallel" limitation. GoPro's expert opines they do not; CIPH's expert opines they do. This is, again, a classic expert dispute regarding the way the technology works that must be resolved by the finder of fact and is not appropriate for summary judgment.

In addition to the genuine disputes regarding non-infringement, GoPro has several other defenses that are not addressed by CIPH's motion and preclude a finding of willfulness. GoPro contends that the Patents-in-Suit are unpatentable pursuant to 35 U.S.C. § 101. GoPro further contends that the asserted claims are invalid in view of GoPro prior art and Boland, which the PTAB found discloses all but one claim element of the independent claims. And GoPro's evidence demonstrates that its founder's, Nicholas D. Woodman's, prior invention anticipates or renders obvious the asserted claims of the Patents-in-Suit. Given the surfeit of defenses, CIPH's

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1  claim of "willfulness" is not legally tenable.  To the contrary, the theory of willfulness asserted in

2  CIPH's Motion is untimely and based on fact evidence it withheld during fact discovery.  It also

3  relies on conduct that occurred before the Patents-in-Suit issued and before CIPH claims GoPro

4  had any knowledge of the Patents.  Therefore, CIPH's willfulness claim fails as a matter of law.

5  **II.      BACKGROUND**

6       **A.      GoPro Sold Action Cameras Before Contour**

7       Defendant GoPro, Inc. is an American technology company founded by Mr. Nicholas

8  Woodman in 2002.  GoPro commercialized its first camera in 2004.[1]  In 2006, GoPro released the

9  Digital HERO, which included the capability to take short, 10-second videos.[2]  In 2009, GoPro

10  introduced the HERO HD, an action camera capable of capturing video at 1080p resolution.  *Id.*

11  Since then, GoPro has continued to develop and release new cameras, mounting accessories, and

12  content management and editing software every year.  By the end of 2014, GoPro had close to

13  50% market share in the action camera market, a submarket that GoPro is credited with creating.[3]

14       On June 26, 2014, GoPro went public.  Following the IPO, Mr. Woodman donated several

15  million shares of his stock to a charitable foundation, which went on to contribute, among other

16  donations, $2.85 million to Safe & Sound (formerly the San Francisco Child Abuse Prevention

17  Center) and $4 million to spearhead efforts to build a much needed community center in Big Sky,

18  Montana.[4]  As Mr. Woodman testified, ████████████████████████████████████

19  ████████████████████████████████████████████████████████████████

20  ████████████████████████████████████████         Ex. B at 341:15-

21  342:24.  Mr. Woodman testified that ████████████████████

22  ██████   *Id.*   Today, Mr. Woodman is still the single largest shareholder of GoPro stock and

23  continues to manage the company.

---

[1]   *https://www.forbes.com/sites/ryanmac/2013/03/04/gopro-evolution-from-35mm-film-to-americas-fastest-growing-camera-company/#33dfc2966406*

[2]   *https://gopro.com/en/us/news/usa-today-features-gopro.*

[3]   *https://www.nasdaq.com/articles/gopro-dominates-do-it-yourself-action-video-industry-2014-11-14*

[4]   *https://www.explorebigsky.com/big-sky-community-goes-all-in-2/30414;*

## B.      Timeline of the Parties' Dispute

The '954 Patent issued on November 25, 2014.  The day the patent issued, Contour LLC, then-owner of the '954 Patent, sued Camp Saver LLC for selling "competing camera products." *Contour, LLC v. Camp Saver, LLC*, Civ. No. 2:14-cv-00864, Dkt. 2 (D. Utah) ("Utah Dkt.").  The lawsuit also asserted infringement of U.S. Patent No. 8,869,694 (the "'694 Patent"), which is not at issue in this Motion.  On January 5, 2015, Contour, LLC amended its complaint to add GoPro, Inc. as a defendant to the litigation.

On April 20, 2015, GoPro filed a petition for *inter partes* review of all asserted claims of the '954 Patent.  (IPR2015-01800.)  On October 28, 2015, the PTAB entered an order "to institute an *inter partes* review as to claims 1, 2, and 11–30 of the '954 patent on certain grounds of unpatentability," including because the PTAB was "persuaded that, on this record, Petitioner ha[d] shown a reasonable likelihood of prevailing on its assertion that claims 1–13, 15, 16, and 18–20 are unpatentable over Boland[5] and the GoPro Catalog"  Ex. C at 23.  On November 30, 2015, Contour voluntarily dismissed its Complaint in Utah; but the same day, CIPH (a non-practicing entity that bought the patents from Contour) filed the present action in the District of Delaware. *CIPH, LLC v. GoPro, Inc.*, Case No.1:15-cv-1108, Dkt. 1 (D. Del. Nov. 30, 2015) ("Del. Dkt.").[6]

The *inter partes* review proceeded to hearing on June 22, 2016 and the PTAB issued its Final Written Decision on October 26, 2016.  The PTAB held that the evidence was "insufficient to demonstrate that the GoPro Catalog is a prior art printed publication."  Ex. D at 23.  GoPro appealed the PTAB's determination and, on July 27, 2018, the Federal Circuit reversed and remanded.  Ex. N at 1.

During the pendency of the IPR appeal, the Delaware Court transferred this action to the Northern District of California.  Del. Dkt. 174.  The Court conducted *Markman* proceedings and

---

[5]      U.S. Patent Application Publication No. 2010/0118158 A1, published May 13, 2010 ("Boland").

[6]      iON Worldwide, Inc. was also a party to the District of Delaware action.  It alleged that iON "merged with Contour."  Del. Dkt. at ¶ 14.  The Complaint further alleged that Contour sold CIPH "all rights pertaining to" the '954 and '694 Patents and then iON-Contour (the merged entity) became the exclusive licensee to the Patents-in-Suit.  *Id.* at ¶¶ 14-17.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1  issued its Order Regarding Claim Construction on July 16, 2018 – two weeks before the Federal

2  Circuit reversed the PTAB's IPR decision and remanded for further proceedings.  Dkt. 251.  The

3  Parties submitted supplemental briefing to the PTAB to address this Court's claim construction on

4  February 22, 2019.  On July 31, 2019, the PTAB entered an order finding that GoPro had not

5  proven the invalidity of the '954 Patent claims in those proceedings.  Ex. N at 46.  In response

6  thereto, the parties stipulated to lift the stay and resumed litigation on October 1, 2019.  On

7  November 19, 2019, GoPro moved to amend its invalidity contentions.  Dkt. 313.  The Court

8  granted in part and denied in part that Motion on January 9, 2020.  Dkt. 335.  The Court further

9  held that GoPro "is not estopped from relying on the GoPro HD Motorsports HERO video camera

10  and Boland" to demonstrate obviousness.  *Id.*

11        On February 28, 2020, GoPro served opening expert reports including the report of Dr.

12  Almeroth, which set forth its invalidity defenses including defenses based on GoPro's prior

13  invention, the obviousness combination of Boland with GoPro HD Motorsports, and

14  unpatentability pursuant to 35 U.S.C. § 101.  On June 16, 2020, GoPro served rebuttal expert

15  reports including the report of Dr. Almeroth setting forth his opinion that GoPro does not infringe

16  any of the asserted claims of the Patents-in-Suit, including Claim 11 of the '954 Patent.  No

17  decision on the merits has been made as to GoPro's defenses.

18        **C.      The Disputed Claim Limitations**

19        In her opening report, CIPH's expert, Dr. Jing Hu, asserts infringement of Claims 11, 12,

20  14, 15, 20, and 30 of the '954 Patent and Claims 4, 6, and 20 of the '694 Patent.  CIPH's Motion

21  addresses only infringement (not validity) of Claim 11 of the '954 Patent.  In its Motion, CIPH

22  includes the text of Claim 11, but improperly characterizes the disputed limitations.  For clarity,

23  GoPro provides the full text of the claim below with the disputed terms **highlighted**:[7]

24        A portable, point of view digital video camera, comprising:

25        a lens;

26

27        ───────────────
          [7]    In this Opposition, GoPro addresses particular claim elements that are not met by the
28  accused products; it does not concede that any unaddressed elements are met.

an image sensor configured to capture light propagating through the lens and representing a scene, and produce real time video image data of the scene;

a wireless connection protocol device configured **to send real time image content by wireless transmission directly to and receive control signals or data signals by wireless transmission directly from a personal portable computing device** executing an application; and

a camera processor configured to:

receive the video image data directly or indirectly from the image sensor,

**generate <u>from the video image data</u> a first image data stream and a second image data stream**, wherein the second image data stream is a higher quality than the first image data stream,

**cause the wireless connection protocol device to send the first image data stream directly to the personal portable computing device for display** on a display of the personal portable computing device, wherein the personal portable computing device generates the control signals for the video camera, and wherein the control signals comprise at least one of a frame alignment, multi-camera synchronization, remote file access, and a resolution setting, and at least one of a lighting setting, a color setting, and **an audio setting**,

**receive the control signals from the personal portable computing device**, and adjust one or more settings of the video camera based at least in part on at least a portion of the control signals received from the personal portable computing device.

CIPH quotes the portion of Dr. Almeroth's deposition wherein he explains the parties' dispute regarding systems with Karma Passenger. Ex. K at 271:18-272:5. As he explains therein and in his rebuttal expert report, at least for the accused systems paired to the Karma Passenger App,

[REDACTED] Ex. A at ¶¶ 165-166.

Instead, [REDACTED] *Id.*

With respect to all accused GoPro camera systems, there are at least two additional reasons that GoPro does not infringe. First, the "first image data stream" and "second image data stream" are not generated "from the video image data." Ex. A at ¶¶ 225, 231-232, 237. In his report, Dr. Almeroth discusses [REDACTED]

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1

2   ██████ Ex. A at § VII.B.  He reviewed source code and technical documentation that discloses

3

4   ██████████████████████████████████ *Id*.  Dr. Almeroth provided an

5

6   exemplary image of data captured by the image sensor and sent to the camera processor:



Ex. A at ¶ 151.  He depicts the transformation of that data that results in the high resolution video:



*Id*. at ¶ 159.  Dr. Almeroth also describes how the data is changed not just in appearance ██████

1  ███████████. *Id.* ¶¶ 144-50.  Dr. Almeroth concludes that the asserted claims of the Patents-in-

2  Suit are not infringed because ████████████████████████████████

3  ███████████████████████████████████████████████

4  ███████████████████████████████████████████████

5  ████████████  Ex. A at ¶ 237-238.

6       Dr. Almeroth offers as a further reason that the GoPro cameras do not infringe that GoPro

7  accused cameras do not "generate . . . a first image data stream and a second image data stream."

8  Ex. A at § X.B.  The Court construed "generate" in Claim 11 to mean "record in parallel:"

| Term | Claim Construction |
|---|---|
| "**generate** from the video image data a first image data stream and a second image data stream, wherein the second image data stream is a higher quality than the first image data stream"<br><br>'954:11 | **record in parallel** from the video image data a first image data stream and a second image data stream, wherein the second image data stream is a higher quality than the first image data stream |

14  Dkt. 251 at 9-10.  GoPro contends that the accused camera products do not "record in parallel" the

15  two data streams for multiple reasons, including that ███████████████████████████

16  ███████████████████████████████████████  Ex. A at §

17  X.B.  Additionally, the camera processors in the accused GoPro cameras all ████████████

18  ███████████████████████████████████████████████

19  ██████████████████████  *See, e.g.*, Ex. A at ¶¶ 231-232.  Thus, the video

20  streams identified as the "first image data stream" and "second image data stream" are ██

21  ███████████████████████████████████████████████

22  Neither of these positions relies on a new claim construction and CIPH does not identify the

23  allegedly new claim construction in Dr. Almeroth's report.

24      **D.**    **History Of The "Generate Term"**

25       The positions addressed by CIPH in its Motion are not based on the prosecution of Claim

26  11, and therefore GoPro (unlike CIPH) does not need to provide an extensive recitation of the IPR

27  history.  However, it is worth clarifying that CIPH's description of its positions in the IPR (Mot. at

5) is incomplete.  As set forth in the Motion, CIPH represented to the PTAB that the two streams

of Claim 11 "need to be created in parallel from the same source."  Ex. E at 78.  But that is only

one of the positions taken by the Patent Owner before the PTAB.  For example, CIPH also created

and relied on Slide 29 excerpted below.

**Boland Does Not Teach "from the video image data"
Limitations ('954 Patent)**



*Boland*: only one video from the image sensor (video image data).



*'954 Patent*: both videos from the image sensor (video image data).

Ex. F at 29.  In it, CIPH emphasizes that the '954 Patent requires that "both videos [are] from the

image sensor (video image data)."  *Id*.; *see also* Ex. E at 78-82.  Then, the Patent Owner

distinguished Boland on the basis that "you are not dealing with the same data when you are

coming out of the processor, you have made some modifications to it."  *Id*. at 80:3-5.  Thus, before

the PTAB, CIPH argued (and prevailed in its argument) that the generating term of Claim 11

requires *both*: (1) that the streams "need to be created in parallel from the same source" *and* (2)

that source has to be "the video image data that comes from the image sensor."  *Id*. at 78, 80.

Moreover, before the PTAB, CIPH argued that these requirements come from the plain meaning

of the claim language.  *See, e.g.*, *id*. at 77:9-12.[8]

---

[8]    CIPH takes issue with the fact that, after Dr. Almeroth sets forth the procedural history of
the IPR proceedings in his opening report, there is a single concluding sentence:  "CIPH narrowed
the claims of the '954 patent during the IPR proceedings in order to distinguish prior art that
disclosed known implementations of providing a preview video stream."  Ex. K at § 212-213.  Dr.
Almeroth's statement is not relevant to this Motion because it has nothing to do with his non-
infringement opinions, but it is accurate.  As the Court observed in its claim construction order,
    (footnote continued)

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1   ### III.   LEGAL STANDARD

2   "To establish literal infringement, every limitation set forth in a claim must be found in the

3   accused product, exactly."  *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed.

4   Cir. 1995).  "The patentee bears the burden of establishing infringement by the accused product by

5   a preponderance of the evidence. . . . If even one element, or limitation, is not present, the accused

6   product does not literally infringe as a matter of law.  *Patent Category Corp. v. Target Corp.*, 567

7   F. Supp. 2d 1171, 1178–79 (C.D. Cal. 2008) (internal citations omitted).

8   "Whether the accused device contains an element corresponding to each claim

9   limitation . . . is a question of fact, which, on summary judgment, is a question [] review[ed] to

10  determine whether a material factual issue remains genuinely in dispute."  *TechSearch, L.L.C. v.*

11  *Intel Corp.*, 286 F.3d 1360, 1360-71 (Fed. Cir. 2002).  At the summary judgment stage, "the

12  judge's function is not himself to weigh the evidence," but "to determine whether there is a

13  genuine issue for trial."  *Pfaff v. Wells Elecs., Inc.*, 5 F.3d 514, 519 (Fed. Cir. 1993).  "Conflicting

14  expert testimony" on a relevant issue raises "a genuine dispute of material fact" that precludes

15  summary judgment.  *Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*, 87 F. Supp. 3d 928,

16  953 (N.D. Cal. 2015).

17  A finding of "willful infringement" requires the sort of conduct that "has been variously

18  described in our cases as willful, wanton, malicious, bad-faith, deliberate, consciously wrongful,

19  flagrant, or—indeed—characteristic of a pirate."  *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, —— U.S. –

20  ——, 136 S. Ct. 1923, 1932 (2016).  While willful infringement requires knowledge of the

21  allegedly infringed patent, notice, alone, is insufficient to justify a finding of willfulness.  *Id*. at

22  1936 (willful infringement requires more than "intentional or knowing infringement") (Breyer, J.,

23  concurring); *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 930 F.3d 1295, 1308 (Fed. Cir. 2019).  "Willfulness

24  is a factually intensive issue."  *Bd. of Regents, the Univ. of Texas Sys. v. Ethicon, Inc*., No. 1:17-

25  CV-01084-LY, 2020 WL 3582793, at *4 (W.D. Tex. Apr. 17, 2020).

26  ———————————————

27  "the 'in parallel' language applies to all the claim terms and was a distinguishing trait when
    overcoming prior art."  Dkt. 251 at 13.

28

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

## IV. ARGUMENT

CIPH attempts to evade GoPro's meritorious non-infringement positions by reframing them as claim construction disputes. But CIPH's disagreement with Dr. Almeroth's technical opinions only shows that there are underlying disputes of material fact precluding summary judgment, not that CIPH should get a finding of infringement without carrying its burden of proof.

### A. Whether The Image Data Streams Are Generated "From The Video Image Data" Is A Disputed Question Of Fact

The express language of Claim 11 requires that the first and second image data streams be "generated **from the video image data**." "[T]he video image data" refers to the "real time video image data" produced by the "image sensor." Mot. at 7, 11. The plain language of Claim 11 compels this result because the antecedent basis for "the video image data" is "an image sensor configured to . . . produce real time video image data of the scene." *See X One, Inc. v. Uber Techs., Inc.*, 2020 WL 746127, at *9 (N.D. Cal. Feb. 12, 2020). As CIPH accedes, during both the IPR proceedings and claim construction before this Court, neither party disputed that the "video image data" referred to data produced by the image sensor. Dkt. 375-6 ("Mot") at 10, 12.

GoPro's expert, Dr. Kevin Almeroth, opined in his Rebuttal Report that the requirement that the first and second data streams be generated "from the video image data" is not met because ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████ *See, e.g.*, Ex. A at ¶¶ 96, 193, 237. Dr. Almeroth relies on his review of the documents reflecting the camera processor pipeline, the source code responsible for the processing, and testing conducted at his behest that demonstrates ███████████████ ████████████████████████████████ Ex. A at ¶¶ 94-162. Even Dr. Hu admits that ████████████████████████████████████████████████████████ ███████████████████████████ Ex. I at 142:1-144:25. Dr. Almeroth's report thus reflects a quintessential type of expert opinion permissible in patent cases: Would a person of ordinary skill in the art look at the data used to generate the first and second image data streams and consider it to be "the image data"? He concludes that a person of ordinary skill would not.

1   There is no dispute that Dr. Almeroth is qualified to render this opinion or that he

2   adequately disclosed his opinion in his Rebuttal Report. Nor is there any dispute that his technical

3   opinions regarding ███████████████████████████████ supported by substantial evidence.

4   CIPH makes one and only one argument as to why Dr. Almeroth is incorrect – which is that "as a

5   matter of law," Dr. Almeroth "reads out 'directly or *indirectly* from the image sensor.'" Mot. at 9

6   (emphasis original). But this argument is a red herring. The limitation specifies how the video

7   image data gets from the image sensor to the camera processor, but says nothing about what the

8   camera processor does with that data upon receipt. Since Dr. Almeroth's non-infringement

9   position has nothing to do with the path the data follows "from the image sensor" to the camera

10  processor, this element is irrelevant. What matters is not its route, but the data itself. CIPH knows

11  that this is Dr. Almeroth's position; it states as much: – "*i.e.*, it must be **the same data from the**

12  **image sensor**" that is used to generate the image data streams. Mot. at 9 (emphasis added).[9]

13   If anything, it is CIPH, not GoPro or Dr. Almeroth that is attempting to establish a new

14  claim construction that reads out the phrase "from the video image data" and would permit the use

15  of any data whatsoever from being used to generate the first image data stream and second image

16  data stream. Such a construction would, of course, be contrary to the law as it renders express

17  language of the claim meaningless. *Merck & Co., Inc. v. Teva Pharm. USA, Inc.*, 395 F.3d 1364,

18  1372 (Fed. Cir. 2005) (rejecting construction that would render a term superfluous). To

19  demonstrate, CIPH takes issue in its Motion with Dr. Almeroth's testimony that Claim 11 requires

20  that the "image data streams" be generated "from the video image data," and not simply that it be

21  "derived from" video image data. Mot. at 11. The claim language specifies that the camera

22  processor must "generate **from the video image data** a first image data stream and a second

23  image data stream;" it does not say "generate **from data derived** **from the video image data**."

24  So, quite literally, CIPH is complaining that Dr. Almeroth recites the claim language verbatim,

25

26  _____

27  [9] Other claims require that the "first data stream and a second data stream," "*correspond*[] to the video image data." *See, e.g.*, '954 Patent, Cl. 3. Dr. Almeroth addressed these claim limitations in his expert report and at his deposition, but since this claim language does not appear

28  (footnote continued)

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1   rather than ███████████████████████████████████████████████████

2   ███████████████████████████████████████.[10]  *Compare* Ex. G ¶ 19.  If there is

3   any position that is "wrong as a matter of law," it is CIPH's because ███████████████

4   ████████████████████████████████████████

5        Regardless, at a minimum, the competing expert evidence reflects a genuine dispute of

6   material fact regarding infringement that forecloses summary judgment.

7   **B.     Whether the Camera Processor "Record[s] In Parallel . . . A First Image Data
          Stream And A Second Image Data Stream" Is A Disputed Question Of Fact**

8

9        Another dispute between the parties is whether the first image data stream and second

10  image data stream are "record[ed] in parallel" as required by the Court's construction of the term

11  "generate…" in this case.[11]  Dkt. 251 at 9.  Dr. Almeroth opines based on the plain meaning of "in

12  parallel" that the camera processors in the accused GoPro products do not infringe for several

13  reasons.  Primary among them is that the ███████████████████████████████████████

14  ███████████████████████████████████████████████████████████.  *E.g.*, Ex.

15  A ¶¶ 101, 130.  That is, ██████████████████████████████████████████████████

16  ████████████████████.  The parties agree that ████████████████████████████████

17  ███████████████████████████████████████████████████████████████████████████

18  *See, e.g.*, Ex. I at 157:2-16, 158:22-159:12.  Dr. Almeroth's opinion that ████████████████

19  ███████████████████████████████████████████████████████████████████████████

20  ███████████████████████████████████████████████████████████████████████████

21  ███████████████████████████████████████████  *E.g.*, Ex. A ¶¶ 101 (████████████

22  ███████████████████████████████████████████████████████████████████████████

23  _____

24  in Claim 11 (which is the only claim at issue in CIPH's Motion), it appears immaterial to this
    Motion and it is unclear why CIPH raises it in its brief.  *See, e.g.*, Mot. at 10, 13.

25  [10]   Dr. Hu does not offer any opinions regarding infringement under the doctrine of
    equivalents.

26  [11]   This dispute is distinct from the first argument because the first relates ████████████

27  ███████████████████████████████████████████████████████████████████████████

28  ███████████████████████████████████████████████

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1    Indeed, Dr. Hu conceded at her deposition that █████████████

2   ████████████████████████████████████████████ Ex. I at 118:8-

3   119:16.  Thus, at a minimum, GoPro has presented a genuine dispute as to whether ████

4   ████████████████████████████████████████████████████████████

5   █████████████

6    Given that Dr. Hu relies extensively on the "in parallel" limitation to distinguish prior art

7   and defend the validity of the patents, it is entirely unsurprising (and legally permissible) that Dr.

8   Almeroth would also rely on this requirement to support his non-infringement opinions.[12]  CIPH

9   cannot rely on the "in parallel" language for validity, but then argue that the language is

10  meaningless for the purposes of infringement.  CIPH's attempt to eliminate the "in parallel"

11  requirement for the purposes of evaluating infringement violates the fundamental tenant of claim

12  construction law that a claim must be interpreted the same way for invalidity as for infringement.

13  "A patent may not, like a nose of wax, be twisted one way to avoid anticipation and another to

14  find infringement." *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed.

15  Cir. 2001) (citations and internal quotation marks omitted)).  Nor does Dr. Almeroth's application

16  of the "in parallel" limitation rest on his interpretation of the prosecution history – that his rebuttal

17  report points out that his conclusion is ***consistent*** with the architecture disclosed in Boland that

18  CIPH distinguished as not "in parallel" before the PTAB, does not mean that he is relying on the

19  PTAB proceedings to reach it.  Dr. Almeroth simply states that his application of "in parallel" is

20  consistent with the Court's order and the portion of the PTAB proceedings cited by the Court itself

21

22  ──────────────

23  [12]   Dr. Hu also relies extensively on the "in parallel" language and the prosecution history to
    support the validity of the asserted claims.  *See, e.g.*, Ex. H ¶¶ 108 (███████████████████

24  ██████████████████████; *see also* 62, 103, 110, 112-114; *Id.* at 136 ████████████████

25  ████████████████████████████████████████ *see also* 128, 133, 137, 159,

26  181, 193.  Dr. Hu also distinguishes ████████████████████████ *Id.* at 196,

27  229, 252, 270, 301, 306, 307, 311, 319, 338, 341, 346, 351 ████████████████

        ██████████████████████ And, finally, she argued that the requirement that

28  (footnote continued)

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1   in construing the "generating . . ." term.  Dkt. 251 at 12-13 (citing 7/13/2016 Record of Oral

2   Hearing in IPR2015-01080, IPR2015-01078 at 78).  Dr. Hu testified that she ███████████

3   ███████████████████████████████████████████████████████████████████████

4   ██████████████████████████████████  Ex. I at 155:17-21.  Making sure a

5   position is consistent with the prosecution history is not equivalent to a new claim construction

6   position.  Dr. Hu also ██████████████████████████████████████████

7   █████████████████████████████████████████████████████████  Ex. I at

8   31:7-32:2 (████████████████████████████████████████████████████████

9   ████████████████████████████████████████[13]  In fact, Dr. Hu

10  ███████████████████████████████████████████████████████████████████

11  ████████.  Ex. I at 29:25-30:7, 29:19-24, 30:8-34:4.

12       CIPH's attempt to evade GoPro's non-infringement positions by recasting them as claim

13  construction arguments fails.  At most, CIPH raises disputed issues of fact as to whether the "in

14  parallel" requirement is met.  Mot. at 15-16.  While Dr. Hu opines that the "in parallel" limitation

15  is met because, █████████████████████████████████████████████████████

16  ███████████████  Dr. Almeroth disagrees.  Dr. Almeroth contends that █████████

17  ███████████████████████████████████████████████████  *E.g.*, Ex.

18  A ¶¶ 112, 226, 230, 263.  But this, again, presents a classic battle of the experts to be resolved by

19  the trier of fact – i.e., whether a person of ordinary skill in the art would ███████████

20  ███████████████████████████████████████████████████████  It cannot be a

21  claim construction dispute because the claims do not use *any* of the terms relied upon by CIPH's

22  Motion:  pre-processing, processing, encoding, parallel encoding, etc.  Mot. at 10, 10 n.4, 11, 12,

23

24  ─────────────────────

25  ████████████████████████████  *Id.* at 402, 403, 408, 410, 414.

26  [13]  Dr. Hu improperly ██████████████████████████████████████████████
    ██████████████████████████  Ex. H at ¶ 311 ████████████████

27  ████████████████████████████████  This Court held, based on CIPH's advocacy, that "in
    parallel" does not impose a timing limitation – that is generating in parallel can occur "either at the

28  (footnote continued)

13.   Whether ███████████████████████████████ affects the manner in which the claim limitations are met – or are not met – is a question of how the accused products meet the claim limitations, not how the limitations should be construed. *Genentech, Inc. v. Trs. of Univ. of Penn.*, 871 F. Supp. 2d 963, 971 (N.D. Cal. 2012) ("[T]he infringement question collapses into one of claim construction only where the parties agree that the accused product infringes under one claim construction and that the accused product does not infringe under an alternative claim construction."). This question of fact cannot be resolved on summary judgment.

CIPH's sweeping suggestion that Dr. Almeroth provided "no opinions as to whether *after the pre-processing the two streams are generated in parallel*" is both factually wrong and irrelevant. Mot. at 15. It is factually wrong because Dr. Almeroth opines that ███████ ████████████████████████████████████████████████████████████████████ ███████████  *E.g.*, Ex. A ¶ 232. But, more importantly, the claim does not include the words "after pre-processing" at all. Nor does Dr. Almeroth agree that █████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████ Indeed, Dr. Hu testified that ██████████ ████████████████████████████████████████████████████████████████████ ████████████████████████ Ex. I at 135:12-17 (████████████████████████████ ██████████████████████████████ *id.* at 134:17-19 ████████████████████████ ████████████████████████████████████████████████████████████ █████████ ███████████████  Thus, demonstrating the arbitrary nature of the distinction CIPH seeks to draw between "pre-processing" and the elements required by Claim 11.

There is no "pre-processing" or "post-processing." There is just "processing." And that is exactly what Dr. Almeroth testified when asked at his deposition:

> **To the question**: "Ignoring, just for purposes of this question, everything to the left of the yellow and red boxes. Okay. Looking only at the yellow and red boxes you don't dispute that that shows parallel processing; correct?"

───────────────────

same time or different times." Dkt. 251 at 13. Both the context of the Court's claim construction order and the PTAB proceedings upon which it relies are relevant to refute this mistaken position.

**Answer**: "I'm having a hard time answering your hypothetical because you are asking me to assume things about the system that aren't true . . .

Ex. K at 294:17–297:3.   This is the deposition testimony that CIPH takes issue with:   Dr. Almeroth's refusal to assume that the camera processor works in a manner that it simply does not. Mot. at 16.   As Dr. Almeroth further testified, CIPH's position reflects a fundamental internal inconsistency:

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████      Dr. Almeroth's opinion is the only one that makes sense because it takes into account ████████████████████████████████████████████.[14]

Since there are a minimum of two substantial questions of material fact regarding whether *any* of the accused GoPro camera systems meet the elements of Claim 11 of the '954 Patent, summary judgment is inappropriate and must be denied.

**C.      Dr. Almeroth Does Not Offer Any Claim Construction Opinions**

CIPH's Motion for Summary judgment fails because there are genuine disputes of material fact regarding non-infringement that do not rely on claim construction or the prosecution history at all.   To be clear, Dr. Almeroth simply applies the plain language of the claims in view of the Court's claim construction and his understanding as a person of ordinary skill in the art.   *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005); *see also Apple, Inc. v. Samsung Electronics Co.*, Ltd., 12-CV-00630-LHK, 2014 WL 660857 at *3 (N.D. Cal. Feb. 20, 2014) (quoting *DNT, LLC v. Sprint Spectrum*, LP, No. 09–CV–21, 2010 WL 582164, *4 (Feb. 12, 2010 E.D. Va.)) ("At trial, parties may 'introduc[e] evidence as to the plain and ordinary meaning of terms not construed by the Court to one skilled in the art,' so long as the evidence does not amount to 'argu[ing] claim construction to the jury.").   Even if the Court were to preclude both parties from

---

[14]   The diagrams in CIPH's Motion – which are not evidence and do not appear in its own expert reports – only illustrate the fallacy of CIPH's position, that ████████████ ███████████████████████████████████ Mot. at 12.   Ultimately, CIPH and its expert ████████████████████████████████████████████████████████ because if they do not, then their infringement theory fails.   In light of the competing testimony of Dr. Almeroth, GoPro's fact witnesses and two third party suppliers that contradict CIPH's contentions, summary judgment is inappropriate.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

discussing the prosecution history, Dr. Almeroth's non-infringement opinions would be the same. Since CIPH's motion does not address the merits of those non-infringement positions, the Court need go no further to reject CIPH's request for summary judgment.  For completeness, GoPro addresses the mischaracterization of Dr. Almeroth's opinions in CIPH's Motion.

1.   Dr. Almeroth Does Not Offer Any Opinions Inconsistent with the Court's Claim Construction

CIPH does not actually identify any allegedly new claim constructions in Dr. Almeroth's opinions.  Instead, CIPH takes issue with paragraphs of Dr. Almeroth's report reciting bare, factual recitations of the prosecution history (*e.g.*, Ex. A ¶¶ 86, 92, 225; Ex. L ¶¶ 211-213, 256-259) as well as his opinions identifying inconsistencies in Dr. Hu's opinions on validity and infringement that rely on the IPR proceedings (*e.g.*, Ex. A ¶¶ 82, 92, 143, 184 , 218, 232, 251, 256).  There is no basis to strike the recitation of the IPR history.  *Kolcraft Enterprises, Inc. v. Chicco USA, Inc.*, No. 09 C 03339, 2018 WL 10772693, at *5 (N.D. Ill. July 16, 2018) (allowing expert to provide "factual reporting of what happened during the patent prosecution and inter partes reexamination").   CIPH's own expert includes an extensive recitation of the IPR proceedings in her report. *See, e.g.*, Ex. H at § XII.A, C.[15]

Dr. Almeroth is also allowed to identify inconsistencies between CIPH's positions and Dr. Hu's opinions as compared to what the Patent Owner said during the IPR proceedings.  *Magna Elecs., Inc. v. TRW Auto. Holdings Corp.*, No. 1:12-CV-654, 2016 WL 4238769, at *3 (W.D. Mich. Jan. 28, 2016) ("TRW would be unfairly prejudiced if it cannot submit evidence from the IPR proceedings where Magna, for example, makes inconsistent arguments."); *see also Commonwealth Sci. & Indus. Research Organisation v. Mediatek Inc.*, No. 6:12-CV-578, 2015 WL 12806515, at *3 (E.D. Tex. June 29, 2015) (finding that "Defendants' experts may use

---

[15]   If there is anything improper in the opinions, ███████████████████████
████ Ex. H ¶ 62; *see Kolcraft*, 2018 WL 10772693 at *5 (striking opinions that "strongly impl[y] that Artsana's invalidity arguments in this case are meritless because they were already considered" during IPR); *see also Wisconsin Alumni Research Found. v. Apple, Inc.*, 135 F. Supp. 3d 865, 875 (W.D. Wis. 2015) (excluding expert opinions proffered by plaintiff regarding completed IPR proceedings decided in its favor).

1   statements from the prosecution history" to rebut infringement opinions).   Indeed, most of the

2   paragraphs that CIPH asks the Court to disregard are *rebuttal* opinions addressing CIPH's

3   characterization of the Boland reference and its IPR history.   Paragraph 184 of Dr. Almeroth's

4   report is illustrative:

5

6

7

8

9

10

11

12

13   Here, Dr. Almeroth refutes Dr. Hu's characterization of the prosecution history.   He points out that

14   neither party                                                                 in the

15   prosecution history.   *Id*.   Instead, as Dr. Almeroth points out, the distinction over the prior art was

16   whether or not the "the preview was created from previously stored video."   *Id*.   Thus, he explains

17   that Dr. Hu's infringement allegations are inconsistent with her validity positions and those taken

18   by CIPH during the IPR proceedings.   *Id*.

19       Paragraph 256 of Dr. Almeroth's report is similar.   Ex. A ¶ 256

20

21

22                                                          However, this is contrary to the

23   Court's claim construction and CIPH's own representations to the PTAB that the Court cited in its

24   claim construction order.").   Therein, he opines that Dr. Hu's infringement theory that

25

26                                     is inconsistent with CIPH's statements to the PTAB

27   distinguishing Boland and Dr. Hu's opinions on validity that rely thereon.   So too in Paragraph 82.

28   Dr. Almeroth identifies an inconsistency in Dr. Hu's infringement opinion, in which she opines

1    that ███████████████████████████████████████████████████████████

2    ███████████████████████████████████████ Ex. J at ¶¶ 391, 395; Ex. G at ¶¶ 13, 19.  Dr.

3    Almeroth points out that in neither her opinions regarding validity nor CIPH's arguments during

4    the IPR proceedings did CIPH accede that ███████████████████████████████████

5    ███████████████████████████████████████████████████████████

6    ███████████[16]  CIPH takes the untenable position that it and its expert can characterize the claims

7    based on the IPR proceedings, but GoPro cannot cite to the IPR record to refute those

8    characterizations.

9         Indeed, in its Motion, it is CIPH that invokes stray statements from the IPR proceedings to

10   support its positions, not Dr. Almeroth or GoPro.  CIPH states: "GoPro represented the polar

11   opposite of Almeroth's position to the PTAB, stating that 'the claims do not require . . . parallel

12   processing *solely or directly from the image sensor*.'"  Mot. at 12 (emphasis original).  CIPH is

13   wrong because, as set forth above, GoPro's non-infringement positions ████████████████

14   ████████████████████████████████████████████ Instead, Dr. Almeroth's non-

15   infringement positions are based on the plain language of the claims, as construed, that require the

16   first and second image data streams be generated in parallel (from the same source) from the video

17   image data.  Ex. A at ¶¶ 225-234; *see also* Dkt. 251 at 13; Ex. D at 17-18 ("We interpret 'from the

18   video image data' recited in claims 1, 11, and 27 to require generation in parallel from the same

19   source, i.e., 'the video image data.'").  But, more fundamentally, CIPH's position is self-defeating

20   because it relies on the IPR proceedings as a basis for its position and then faults GoPro and its

21

22   ───────────────────────

23   [16]    Paragraphs 302 and 310 of Dr. Almeroth's Report, which are listed in CIPH's Motion, have nothing to do with its Motion or infringement at all.  They relate to distinctions between ███. CIPH's Motion

24   does not discuss these paragraphs at all and proffers no basis for excluding them.  Regardless, the

25   opinions expressed in these paragraphs would be exactly the same if the reference to the prosecution history were removed and Dr. Almeroth were only opining on the plain language of

26   the claims—*i.e.*, Dr. Ugone's interpretation of ███████████████████████████████

27   [17]    Also, even if the statements made by GoPro to the PTAB were inconsistent with Dr. Almeroth's opinions – which they are not – that would not be a basis for excluding them since the

28   (footnote continued)

1  expert for pointing to the IPR evidence to defend itself.  There is no inconsistency between Dr.

2  Almeroth's opinions and the prosecution history – the only inconsistency is between CIPH and its

3  expert's offensive reliance on the IPR proceedings on one hand and its effort to preclude GoPro

4  from clarifying that record on the other.

5      CIPH and its expert put the prosecution history of the Patents-in-Suit at issue – then fault

6  Dr. Almeroth for responding to their positions and demanding internal consistency between Dr.

7  Hu's infringement theories and her validity positions.  Dr. Hu asserts that the claims ████

8  ████████████████████████████████████████████████████████████████████████████████

9  ████████████████████████████████████████████████████████████████████████████████

10  ████      Fundamentally, CIPH wants to be able to use the IPR proceedings as a sword to defend

11  the validity of its patents, but be absolved of the statements it made therein about claim scope that

12  undermine its ability to demonstrate infringement.  That is unfair and inconsistent with the law.

13              2.      CIPH's Cited Case Law Is Inapposite

14      The law cited by CIPH in its motion endorses Dr. Almeroth's opinions.  Experts are, of

15  course, allowed to provide testimony regarding the manner in which the accused product functions

16  and whether it practices the claimed functionality or not.  *Fujifilm Corp. v. Motorola Mobility*

17  *LLC*, No. 12-CV-03587-WHO, 2015 WL 1265009, at *10 (N.D. Cal. Mar. 19, 2015).  To do so,

18  the expert may provide opinions regarding "how a person ordinary skill in the art would

19  understand the plain and ordinary meaning of the terms." *Id.*  The movant's disagreement with

20  those opinions does not raise an untimely claim construction dispute (as CIPH contends); rather

21  "[s]uch a dispute 'raises a factual question that must be resolved by the jury.'" *Id.*

22      This Court's opinion in *Fujifilm* is instructive.  Just as in that case, the parties agree that a

23  person of ordinary skill in the art would understand the plain meaning of the language at issue

24  ("the video image data" and "in parallel").  Ex. I at 30:17-31:5 ("What I explained is that applying

25  the court's construction of the term 'generate,' that has the term 'in parallel' in it.  The person of

26  ———————————————————

27  PTAB did not adopt GoPro's positions.  Ex. D at 19.  There is no estoppel doctrine that would

28  apply.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

ordinary skill in the art understands what it is.").  And just as in *Fujifilm*, CIPH "proffers no particular construction of the term except to argue repeatedly that [Defendant's experts] reading of it is wrong."  *Fujifilm*, 2015 WL 1265009, at *10.  Instead, CIPH argues that Dr. Almeroth's opinions are inconsistent with the prosecution history (and then, bizarrely, complains that Dr. Almeroth relies too heavily on the prosecution history).  But nothing in CIPH's Motion demonstrates that Dr. Almeroth's opinions are "beyond the scope of the plain and ordinary meaning" of the terms.  *Id*. at *1.

For the same reasons that this Court distinguished *MediaTek, Inc. v. Freescale Semiconductor, Inc.*, in *FujiFilm*, it is inapplicable here.  *Id*. at *1 (citing *MediaTek*, No. 11-CV-5341 YGR, 2014 WL 971765, at *4 (N.D. Cal. Mar. 5, 2014)).  In *MediaTek*, the expert did not apply the plain and ordinary meaning of the terms.  Instead, he relied "heavily on the prosecution history, specifications, and even provisional applications" to alter the plain meaning of the claims. *Id*.  For example, he opined that the language "at least one" usually means "one or more" but that because of references considered during the prosecution history, the claim must be limited to a single address bus or the "claim 2 would not have been issued by the USPTO."  *Id*.  The Court concluded that his "opinions go far beyond merely relying on the plain and ordinary meaning . . . instead attempt to explain why the term must be limited."  This Court identified the same flaw in certain opinions offered by Huawei's experts in *Huawei Techs., Co, Ltd v. Samsung Elecs. Co, Ltd*., 340 F. Supp. 3d 934, 948–49 (N.D. Cal. 2018).  There, the Court followed the same procedure it did in *Fujifilm*, which was to "view the parties' disputes through the lens of whether a reasonable jury, armed with the Court's claim construction as to certain terms and an instruction that the plain and ordinary meaning controls as to others, could or would necessarily conclude that the asserted claim reads on an accused device (or that a prior art reference reads on an asserted claim)."  *Id*. at 948.  An expert opinion should only thus be disregarded at this stage if he "has opined on a claim's scope beyond the plain and ordinary meaning of term."  *Id*.

But here, Dr. Almeroth does not modify the plain and ordinary meaning of any claim term as construed based on intrinsic or extrinsic evidence nor do his non-infringement opinions rely on the prosecution history.  To the contrary, Dr. Almeroth makes clear that his opinion is consistent

with the plain and ordinary meaning of the claims as construed by the Court. Ex. A at ¶ 50. He does not rely on any prosecution history disclaimer argument (as in *MediaTek*) to modify the Court's claim construction nor do his opinions thwart established claim construction principles (as in *Huawei*). Indeed, CIPH does not even raise such a dispute in its Motion. Having failed to identify any claim term for which Dr. Almeroth fails to apply the plain meaning in view of the Court's claim construction (or any meaningful disagreement about what that plain meaning is), the case law cited by CIPH offers no support for its Motion.

### D.   GOPRO DID NOT WILLFULLY INFRINGE THE ASSERTED CLAIMS

#### 1.   CIPH's Motion Is Inconsistent With The Law

Having failed to demonstrate that GoPro has infringed any valid claim of the Patents-in-Suit, CIPH cannot, as a matter of law, show willful infringement. However, even if the Court were to find Claim 11 infringed – which is the only issue raised by CIPH's motion – the surfeit of additional, meritorious still-pending defenses including prior art-based invalidity, GoPro's prior invention under § 102(g), and § 101 defenses, that GoPro continues to assert foreclose a finding of willfulness. *Greatbatch Ltd. v. AVX Corp.*, No. CV 13-723-LPS, 2016 WL 7217625, at *4 (D. Del. Dec. 13, 2016), *aff'd*, No. 2019-2314, 2020 WL 3967853 (Fed. Cir. July 14, 2020). This is far from a case where liability is so "cut and dry" that "only an incompetent attorney" would continue to raise a dispute. *Id*. (quoting *Wake Forest Univ. Health Scis.*, 2014 WL 1612648, at *8 (W.D. Tex. Apr. 22, 2014)). CIPH's Motion does not cite a single case (and GoPro is aware of none) in which this Court has granted summary judgment of willfulness post-*Halo*.[18] This should not be the first one.

#### 2.   CIPH's New Theory Of "Willfulness" Is Untimely

In its Complaint, CIPH expressly limited its theory to post-suit willfulness. Dkt. 19. Therein, CIPH alleges: "Since at least January 5, 2015, GoPro, with knowledge of the '954 and

---

[18]   Many of the *Read* factors that inform a finding a willfulness cannot be assessed based on the current record including but not limited to whether the accused infringer "formed a good faith belief that [the patent] was invalid or that it was not infringed; (2) the accused infringers "behavior
(footnote continued)

'694 Patents and its infringement, has willfully infringed and continues to willfully infringe the '954 and '694 Patents." *Id.* ¶ 63.   January 5 is the date that Contour filed its Amended Complaint to add GoPro.   No other allegations of willfulness are pleaded.   Due to the dearth of support for its willfulness claim, GoPro moved to dismiss the willfulness allegations.   Dkt. 188.   The Court denied the Motion to Dismiss, but specifically held that deficiencies in the pleading should be cured through discovery – and CIPH would be limited to their discovery responses:

> And if there's confusion about what Contour is alleging with respect to any of the things that are in the Complaint, ***ask in an interrogatory. Ask them now. Tie them down. <u>I'll hold them to it</u>***.

Ex. M (11/01/2017 Hearing Tr.) at 15.   Following the Court's directive, GoPro propounded Interrogatory No. 11, which asks CIPH to "Describe in detail the factual and legal bases for Your contention that GoPro willfully infringes the Patents-In-Suit, including but not limited to Identifying all Documents supporting Your contention, each Person with personal knowledge of facts or documents supporting Your contention, and any Communications with GoPro Concerning the Patents-in-Suit." Ex. O at 26-27.   ████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

*Id*.   No specific allegations of wanton or egregious conduct are raised.   Not a single document is cited.   CIPH waited until this motion to raise ***any*** factual allegations in support of its willfulness claim or to suggest that GoPro had notice of the Patents-in-Suit before it was added to the litigation in January.   And the two documents CIPH cites to support alleged notice in November 2015 were not produced before the fact discovery cut-off and were never identified in its

---

as a party to the litigation;" and (3) the harm done to plaintiff.   *Finjan, Inc. v. Cisco Sys. Inc.*, No. 17-CV-00072-BLF, 2017 WL 2462423, at *3–4 (N.D. Cal. June 7, 2017).

interrogatory responses. *See* Mot. at 19-20 (citing Exhs. FF, NN).[19]   CIPH should be held to its limited contentions; having failed to timely disclose any legally tenable theory of willfulness it cannot do so now.

        3.      <u>CIPH's Position Improperly Relies On Conduct Occurring Before The Patents-In-Suit Issued</u>

       CIPH's willfulness allegations fail for the additional fact that they rest on mischaracterizations of events occurring before the Patents-in-Suit ever issued. For example, CIPH makes much of Mr. Woodman's sale of GoPro stock *before the Patents-in-Suit existed*. There is no dispute that neither Mr. Woodman nor GoPro had any knowledge of the Patents at the time the stock sales were arranged – most of the stock was sold before the Patents issued and the one (much smaller) sale of stock that CIPH contend occurred after the Patents-in-Suit had been arranged months in advance. The stock sales are irrelevant to the issue of willfulness.

       CIPH's allegations of "copying" also offer no support for a finding of willfulness. The cited documents ████████████████████████████ ██████████████████ But there is no credible evidence in the record that ███████████ ████████████████████████████████████████ Dkt. 369 (GoPro's motion to exclude Dr. Hu's deficient opinions regarding Contour's products). Rather, GoPro contends that Mr. Woodman ██████████████████████████ ███████████ *See* Ex. L at § IX. GoPro ██████████████████ ███████████████████████████████████████████ ████████████████████████████████████ *Id.* While ███ ████████████████████████████████████████████ ████████████████████████████████████████████ ███ *Id.* Indeed, GoPro's accused camera products and its GoPro Mobile Application were commercially available for *more than two years* by the time the Patents-in-Suit issued. CIPH's

---

[19]   The reference to ████████████████████████████████ is insufficient as a matter of law to establish knowledge of the patents. *Radware, LTD. et al v. F5 Networks, Inc.*, 5-13-cv-02024 (CAND August 22, 2016, Order) (Whyte, USDJ).

expert acknowledged at her deposition that there is no evidence of copying, particularly post-issuance copying. Ex. I at 189:18-190:1. At most, GoPro continued to sell products offering the same accused functionality as was already available at the time of the lawsuit. As a matter of law, this is insufficient to prove willfulness. *Finjan*, 2017 WL 2462423 at *4.

### 4. GoPro's Defenses Foreclose a Finding of Willfulness

CIPH first alleged infringement by GoPro cameras in 2015, when GoPro had already become the market leader and established a customer base for its products. Immediately upon receiving notice of the Patents-in-Suit, GoPro investigated its defenses and filed an *inter partes* review application on all asserted claims within only 4 months of receiving the Complaint. The IPR petition was instituted – that is, the PTAB found that it has established a reasonable likelihood of prevailing on its asserted grounds of invalidity of the claims. *See* 35 U.S.C. § 314(a). While CIPH makes much of the fact that the IPR was eventually denied, it took three years, input from the Federal Circuit, and two "final" decisions by the PTAB to reach that result. Moreover, GoPro still has at least tenable invalidity and non-infringement defenses in this case. The litigation history demonstrates that GoPro's defenses are far from frivolous – and there has been no point in time when GoPro lacked a good faith belief that it did not infringe any valid claim of the Patents-in-Suit. *Greatbatch Ltd. v. AVX Corp.*, No. CV 13-723-LPS, 2016 WL 7217625, at *4 (D. Del. Dec. 13, 2016.)

While it is true that GoPro has had "cheap non-infringing alternatives that it could have quickly adopted" to the Patents-in-Suit, its belief that the Patents-in-Suit are invalid and not infringed have driven its litigation positions. Choosing to assert defenses rather than acquiescing to the demands of a non-practicing entity does not constitute willful infringement.

## V.   CONCLUSION

For all the foregoing reasons, CIPH's Motion for Summary Judgment should be denied.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1

2
DATED:  July 23, 2020                                                  Respectfully submitted,

3
                                                                                 */s/ Michelle A. Clark*

4
                                                                                 Sean S. Pak (Bar No. 219032)
                                                                                 Michelle Ann Clark (Bar No. 243777)
5
                                                                                 Jordan R. Jaffe (Bar No. 254886)
                                                                                 QUINN EMANUEL URQUHART &
6
                                                                                 SULLIVAN, LLP
                                                                                 50 California St., 22nd Floor
7
                                                                                 San Francisco, California 94111
                                                                                 Telephone: (415) 875-6600
8
                                                                                 Facsimile: (415) 875-6700
                                                                                 Email: seanpak@quinnemanuel.com
9
                                                                                 Email: michelleclark@quinnemanuel.com
                                                                                 Email: jordanjaffe@quinnemanuel.com
10

11                                                                            Valerie Lozano (Bar No. 260020)
                                                                                 QUINN EMANUEL URQUHART &
12                                                                            SULLIVAN, LLP
                                                                                 865 S. Figueroa Street, 10th Floor
13                                                                            Los Angeles, California 90017
                                                                                 Telephone:     (213) 443-3000
14                                                                            Facsimile:      (213) 443-3100
                                                                                 Email: valerielozano@quinnemanuel.com
15
                                                                                 Counsel for Defendant GOPRO, INC.
16

17

18

19

20

21

22

23

24

25

26

27

28

-26-                              CASE NO. 3:17-CV-04738-WHO
                                                         GOPRO'S OPPOSITION TO CIPH'S MOTION FOR PARTIAL SUMMARY JUDGMENT

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

<u>**CERTIFICATE OF SERVICE**</u>

1

2          I hereby certify that a true and correct copy of the above and foregoing document has been

3    served on July 23, 2020 to all counsel of record who are deemed to  have consented to electronic

4    service via the Court's CM/ECF system.

5          Executed on July 23, 2020, at San Francisco, California.

6
                                            _/s/ Michelle Ann Clark_____
7                                            Michelle Ann Clark

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28