| | |
|---|---|
| 1 | John R. Keville (*Pro Hac Vice*)<br>jkeville@winston.com |
| 2 | Dustin Edwards (*Pro Hac Vice*)<br>dedwards@winston.com |
| 3 | William M. Logan (*Pro Hac Vice*)<br>wlogan@winston.com |
| 4 | WINSTON & STRAWN LLP<br>800 Capitol Street, Suite 2400 |
| 5 | Houston, TX 77002-2925<br>Telephone: (713) 651-2600 |
| 6 | Facsimile: (713) 651-2700 |
| 7 | David P. Enzminger (SBN 137065)<br>denzminger@winston.com |
| 8 | Matthew R. McCullough (SBN 301330)<br>mrmccullough@winston.com |
| 9 | WINSTON & STRAWN LLP<br>275 Middlefield Road, Suite 205 |
| 10 | Menlo Park, CA 94025-1203<br>Telephone: (650) 858-6500 |
| 11 | Facsimile: (650) 858-6550 |
| 12 | Attorneys for Plaintiff<br>CONTOUR IP HOLDING, LLC |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| Contour IP Holding, LLC<br><br>        Plaintiff,<br><br>   v.<br><br>GoPro, Inc.<br><br>        Defendant. | **Case No. 17-cv-04738-WHO**<br><br>**PLAINTIFF CONTOUR IP HOLDING, LLC'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT OF INFRINGEMENT AND WILLFUL INFRINGEMENT**<br><br>**REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED**<br><br>DATE: August 12, 2020<br>TIME: 2:00 p.m.<br>LOCATION: Courtroom 2, 17th Floor<br><br>JUDGE WILLIAM H. ORRICK |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION .................................................................................................................. 1

II. ARGUMENT ........................................................................................................................ 1

    A. GoPro's non-infringement position depends on improper claim constructions that are wrong as a matter of law and should be struck. ............................................................. 1

        1. GoPro's "from the video image data" argument relies on a new improper claim construction and is not supported by its own expert. .............................. 1

        2. GoPro's "in parallel" argument likewise relies on an improper claim construction and fails as a matter of law. ........................................................... 5

        3. GoPro continues to advance claim constructions that are wrong as a matter of law and should be struck. ................................................................................ 8

        4. GoPro's discussion of the Karma Passenger smartphone app is irrelevant. ... 12

    B. GoPro willfully infringes and the Court should grant summary judgment. ............... 13

III. CONCLUSION ................................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Apple Inc. v. Samsung Electronics Co., Ltd.*,
   258 F. Supp. 3d 1013 (N.D. Cal. 2017) ...................................................................................14

*Apple, Inc. v. Samsung Elecs. Co.*,
   12-cv-00630-LHK, 2014 WL 660857 (N.D. Cal. Feb. 20, 2014) ..........................................9, 12

*Baxter Healthcare Corp. v. Spectramed, Inc.*,
   49 F.3d 1575 (Fed. Cir. 1995) ...............................................................................................7, 8

*Click-To-Call Techs., LP v. Ingenio, Inc., YellowPages.com, LLC*,
   899 F.3d 1321 (Fed. Cir. 2018), *vacated and remanded on other grounds*, 810 F.
   App'x 881 (Fed. Cir. 2020) .......................................................................................................13

*Dynetix Design Solutions, Inc. v. Synposys, Inc.*,
   No. C11-5973 PSG, 2013 WL 4537838 (N.D. Cal. Aug. 22, 2013) .....................................9, 10

*Every Penny Counts, Inc. v. Am. Express Co.*,
   563 F.3d 1378 (Fed. Cir. 2009) .................................................................................................9

*Finjan, Inc. v. Cisco Sys. Inc.*,
   No. 17-CV-00072-BLF, 2017 WL 2462423 (N.D. Cal. June 7, 2017) ....................................14

*Fujifilm Corporation v. Motorola Mobility LLC*,
   No. 12-CV-03587-WHO, 2015 WL 1265009 (N.D. Cal. Mar. 19, 2015) ................................12

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
   136 S. Ct. 1923 (2016) .............................................................................................................14

*Merck & Co., Inc. v. Teva Pharm. USA, Inc.*,
   395 F.3d 1364 (Fed. Cir. 2005) .................................................................................................4

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) .................................................................................................9

*Read Corp. v. Portec, Inc.*,
   970 F.2d 816 (Fed. Cir. 1992) .................................................................................................13

*Tate Access Floors, Inc. v. Interface Architectural Resources, Inc.*,
   279 F.3d 1357 (Fed. Cir. 2002) .................................................................................................7

## I. INTRODUCTION

GoPro's Opposition fails to identify any factual dispute that would preclude summary judgment on infringement. Instead, GoPro reiterates its expert's improper claim constructions, arguing non-infringement based on elements not recited in the claim (*e.g.*, the contention that the video data must be unprocessed). The undisputed evidence, including admissions from GoPro and its vendors, shows that all elements of claim 11 of the '954 patent, as construed by the Court, are present in GoPro's products. Separately, the evidence also shows that GoPro knew of the patents prior to the suit and copied Contour's products, confirming willful infringement. The Court should therefore grant summary judgment that GoPro has directly and willfully infringed claim 11 of the '954 patent.

## II. ARGUMENT

### A. GoPro's non-infringement position depends on improper claim constructions that are wrong as a matter of law and should be struck.

GoPro admits that its non-infringement position for the accused cameras is limited to two arguments. Opp. at 5-7. GoPro attempts to characterize its position as two distinct arguments, but both arguments are based on the "generate" term of claim 11. *See* Opp. at 5–7 (identifying arguments based on language "from the video image data" and "in parallel," both of which phrases are part of the Court's construction of the "generate" term).[1] Both of these non-infringement arguments are based on GoPro and its expert's misinterpretation of the "generate" term that is wrong as a matter of law.

#### 1. GoPro's "from the video image data" argument relies on a new improper claim construction and is not supported by its own expert.

Rather than addressing its expert's specific statements and testimony about the meaning of "from the video image data," GoPro begins by concocting a new claim construction and expert opinion that is nowhere in Dr. Almeroth's report. Specifically, GoPro alleges that Dr. Almeroth "opined . . . that the requirement . . . 'from the video image data' is not met because ███████████
████████████████

---

[1] GoPro also references the Karma Passenger smartphone app (Opp. at 4–5) in connection with certain claim limitations. But this contention is never referenced in GoPro's argument and in any event is irrelevant for the reasons discussed below in Section II.A.4.

1   ▮▮▮▮▮'" Opp. at 10 (citing Dkt. No. 398-3, ¶¶ 96, 193, 237).  This argument suffers from two fatal flaws.

First, this argument is based on a claim construction that GoPro never proposed and the Court has not adopted, *i.e.*, that "from the video image data" means that the data cannot be "materially altered." GoPro identifies no basis for this new construction. Nor would it be helpful if it had, because the Court would then have to construe or provide some bounds on what it means to "alter" the data and what types and amounts of alterations are "material."

Second, however, the Court does not need to go there because GoPro's expert does not actually offer this opinion. The three paragraphs cited by GoPro are all reproduced in their entirety below. Dr. Almeroth never uses the phrase "materially altered," nor does he reference the understanding of a person of ordinary skill in the art anywhere in these paragraphs:



2



Dkt. No. 398-3, ¶¶ 96, 193, 237.

Even if Dr. Almeroth had offered the opinion GoPro put forward (*i.e.*, that "from the video image data" means the data cannot be "materially altered"), that would be an improper claim construction that the Court should reject as a matter of law. The phrase "materially altered" is not used anywhere in the '954 patent. *See* Dkt. No. 374-3. The '954 patent does not describe any limitations on whether or how the image sensor data is processed before encoding the two video streams. *See id.* Assume, for example, the image sensor data goes through a filter to eliminate, or correct, bad pixels, before the two streams are created; nothing in the claims precludes this perfectly reasonable pre-processing, nor does patent law preclude added steps. Yet Dr. Almeroth's proposal eliminates this and all other pre-processing. GoPro never asked for, and identifies no basis for, this proposed construction. Opp. at 10. This alternative proposed construction would also read out the limitation that the processor receives the data "directly *or indirectly* from the image sensor." This new argument thus fails to raise any factual dispute precluding summary judgment.

As to Dr. Almeroth's actual opinions, he merely describes that the image data undergoes certain processing that changes the format and appearance of the data. *See id.* As GoPro correctly notes, this fact is not disputed. Dr. Hu admits that the data undergoes pre-processing ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *E.g.*, Dkt. No. 398-7 at 143:6–144:16 (▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓). As explained in Contour's motion, the mere fact that the image sensor data is processed is not inconsistent with any claim limitation. Dr. Almeroth's argument to the contrary is based on his contention that the video image data from the sensor cannot be modified at all. *See* Dkt. No. 376-6, ¶¶ 237–38; Dkt. No. 376-8 at 135:12–16 (Dr. Almeroth stating the Court's construction "▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓"), 302:2–9. GoPro does not dispute that this contention is the basis of Dr. Almeroth's opinion. *See, e.g.*, Opp. at 11 (identifying "Dr. Almeroth's position" as "it must be the same data from the image sensor").[2] But this improperly reads out the limitation that the camera processor receives data "directly ***or indirectly*** from the image sensor."

GoPro responds by arguing that the limitation "says nothing about what the camera processor does with that data upon receipt." Opp. at 11. This argument, though, misses the point. GoPro offers no explanation why ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ would not qualify as at least *indirect* receipt of the image sensor data. Dr. Almeroth never disputes that this would qualify as "indirect" receipt of the image sensor data. Nor does GoPro offer any explanation of how its expert's construction of the claims would not read out "indirectly" from claim 11. Thus, GoPro's construction is contrary to law as it renders the term "indirectly" meaningless. *Merck & Co., Inc. v. Teva Pharm. USA, Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005) (rejecting construction that would render a term superfluous).

GoPro next accuses Contour of "attempting to establish a new claim construction that reads out the phrase 'from the video image data.'" Opp. at 11–12. In support of this argument, GoPro misleadingly

---

[2] In a footnote, GoPro disputes the relevance of certain of Dr. Almeroth's opinions and testimony that included the language "correspond to," language recited in other asserted claims. Opp. at 11–12 n.9. GoPro does not actually dispute that Dr. Almeroth applies the same interpretation across both patents regardless of whether a particular claim recites the phrase "correspond to," and thus the Court can properly rely on these citations. Nevertheless, because GoPro agrees that the basis of Dr. Almeroth's opinion is that the image data cannot be modified at all, there is no factual dispute and summary judgment is warranted.

cites to Dr. Hu's description of how the GoPro products operate to suggest that Dr. Hu construes the claim to insert "derived from" the video image data. But Dr. Hu never identified this language as a proposed construction of the claim language. She clearly and unequivocally states that the accused products meet the claim "as this term has been construed by the Court." Dkt. No. 376-13, ¶ 382; *see also* ¶¶ 397 (in Hero 6, ▇▇▇), 418 (same for certain other accused Hero 4, 5, and Fusion models), 440 (same for remaining accused products). GoPro's argument confirms that it is the one seeking to modify the claim language by reading out "indirectly." In other words, GoPro is seeking to insert an additional claim limitation that would require the processor to "generate from the video image data *in the exact same format received from the image sensor*" or "generate from the video image data *which cannot have undergone any image processing*." But the claim does not include any such limitation, and it would directly contradict the term "indirectly," thus the Court should reject GoPro's attempt to re-construe the claims to support non-infringement.

Under the Court's actual construction (*i.e.*, "record in parallel from the video image data…"), the accused products infringe and the Court should grant summary judgment.

**2.   GoPro's "in parallel" argument likewise relies on an improper claim construction and fails as a matter of law.**

GoPro next focuses on the language "record in parallel" from the Court's construction of claim 11. This argument is substantially, if not entirely, identical to GoPro's first argument. GoPro attempts to explain the difference in a confusing footnote where it characterizes the "in parallel" argument as "▇▇▇." Opp. at 12 n.11. But the "from the video image data" argument was about the "source" of the two streams, *i.e.*, whether that data had to be "from" unprocessed data. Thus, despite GoPro's attempt to present this as a separate and distinct argument, it is merely another recitation of Dr. Almeroth's position that the data must be generated directly from unprocessed image sensor data, an improper interpretation of the Court's construction. GoPro's Opposition confirms this by identifying the ▇▇▇ as the basis for its argument. Opp. at 12–13 (▇▇▇).[3]

---

[3] To be clear, GoPro never alleges that the accused "first image data stream" is generated from the accused "second image data stream" (nor could it, given how its products operate). For example,

Critically, however, GoPro never disputed in discovery that after the pre-processing, the two video streams are generated in parallel. GoPro's vendor, Ambarella ▮▮▮

▮▮▮

Dkt. No. 376-16, Chien Dep. Tr. at 145:2–17 (emphasis added). Dr. Almeroth admitted ▮▮▮ Dkt. No. 376-8 at 294:17–297:3. The reason for this is obvious: without Dr. Almeroth's "add a 'no pre-processing' limitation" argument, infringement is undisputable. Thus, there is no factual dispute that the generation of video (after pre-processing) is "in parallel."

In its Opposition, GoPro alleges that "Dr. Almeroth contends that ▮▮▮" Opp. at 14 (citing Dkt. No. 398-3, ¶¶ 112, 226, 230, 263). GoPro is trying to manufacture a fact dispute where none exists. Dr. Almeroth admitted at his deposition that he did not actually offer an opinion about whether recording after pre-processing ▮▮▮ is done in parallel.

Paragraphs 112 and 263 do not even mention the word "parallel." Dkt. No. 398-3, ¶¶ 112, 263. Paragraph 263 is also limited solely to pre-processing. *Id.*, ¶ 263. Paragraph 226 similarly only discusses the pre-processing and actually supports Contour's Motion because Dr. Almeroth draws a distinction between (pre-)*processing* and *generation* of video by saying: "▮▮▮

▮▮▮" *Id.*, ¶ 226 (emphasis added). In paragraph 226, he further opines that ▮▮▮

---

GoPro states that the ▮▮▮ Opp. at 12. This carefully crafted language references an unclaimed ▮▮▮ but does not allege that this stream is the accused "second image data stream." It is not. GoPro's discussion of ▮▮▮ Dkt. No. 398-3, ¶¶ 107–12 (Dr. Almeroth discussing ▮▮▮).

███████████████████████████████████████████

██████████████████████████████████████ *Id.* (emphasis added).  This confirms his opinion is limited to pre-processing.  It further confirms that Dr. Almeroth is re-construing the Court's construction of "record in parallel" to further require ████████████████████████████ ███████████████████.  These additional limitations are neither in the claim nor the Court's claim construction order, and thus Dr. Almeroth's argument is based on a construction that is wrong as a matter of law.

In paragraph 230, Dr. Almeroth opines that █████████████████████████████ ████████████████████ *Id.*, ¶ 230.  Here again, Dr. Almeroth re-construes the claims.  However, neither the claims nor the Court's construction requires multiple separate "encoders."  This re-construction is again wrong as a matter of law.  It is also contradicted by GoPro's CEO Mr. Woodman who, █████ ████████████████████████████████████████████████████████████████████████████████ ██████████████████████████ Dkt. No. 376-20 at GOPRO_140013.

GoPro also cites to Dr. Almeroth's paragraph 232 as allegedly disclosing ███████████ ████████████████████████████████████████ Opp. at 15.  But in paragraph 232, he ██████ ████████████████████████████████████████████████████████████████████████████████ █████████████████████████████████ Dkt. No. 398-3, ¶ 232.  █████████████████████ ████████████████████████████████████████████████████████████ *Id.*[4] ███████████ █████████████████████████████████████████████ *Id.*  And his discussion of Contour's validity arguments is irrelevant as matter of law.  *See, e.g.*, *Baxter Healthcare Corp. v. Spectramed, Inc.*, 49 F.3d 1575, 1583 (Fed. Cir. 1995) (for infringement, "[t]here is no requirement that the accused device be nonobvious in light of the prior art" and obviousness arguments thus "go to validity of the

---

[4] GoPro also discusses the Boland reference from the IPR.  Opp. at 13–14.  GoPro alleges Dr. Almeroth's "conclusion is ***consistent*** with the architecture disclosed in Boland that [Contour] distinguished as not 'in parallel' before the PTAB." *Id.* at 13 (original emphasis).  But validity arguments cannot as a matter of law create a factual dispute as to infringement.  *Baxter Healthcare Corp. v. Spectramed, Inc.*, 49 F.3d 1575, 1583 (Fed. Cir. 1995).  Moreover, to the extent GoPro is arguing that its products operate the same way as the prior art, this is irrelevant as a matter of law because practicing the prior art is not a defense to infringement.  *Tate Access Floors, Inc. v. Interface Architectural Resources, Inc.*, 279 F.3d 1357, 1365 (Fed. Cir. 2002) ("This court made unequivocally clear in *Baxter* that there is no 'practicing the prior art' defense to literal infringement.").

1  claims, not to whether an accused device infringes").[5]

2  GoPro also objects to discussion of "pre-processing" as not being recited in the claims. Opp. at
3  15–16. But this is exactly the point: Contour is not arguing that any claim term specifically requires "pre-
4  processing" occur in a certain manner. Just the opposite, Contour is arguing that the claim language does
5  not preclude pre-processing of the video image data. GoPro's repeated discussion of pre-processing steps
6  in its product is therefore irrelevant to infringement. Thus, Dr. Almeroth's opinion is not "the only one
7  that makes sense because it takes into account ▮▮▮▮▮▮▮▮▮▮." Opp. at 16. To the contrary,
8  Dr. Almeroth's opinion relies on pre-processing steps that are neither recited in nor prohibited by claim 11
9  (or the Court's constructions), and as such his opinions do not present a factual dispute that would preclude
10  summary judgment.

11  Thus, although GoPro attempts to present its "in parallel" argument as a separate dispute, it is not.
12  The only dispute is the same as in the previous section, *i.e.*, whether the image sensor data must be
13  unprocessed. As explained above, GoPro's contention is based on an improper claim construction, never
14  raised during claim construction, and which is wrong as a matter of law. The Court should thus enter
15  summary judgment.

16  **3.   GoPro continues to advance claim constructions that are wrong as a**
17  **matter of law and should be struck.**

18  GoPro's opposition effectively admits on four separate occasions that GoPro and its expert are
19  improperly engaging in claim construction.

20  First, GoPro admits that "Dr. Almeroth simply applies the plain language of the claims in view
21  of the Court's claim construction and his understanding as a person of ordinary skill in the art." Opp.
22  at 16. But Dr. Almeroth is not supposed to apply the "plain language . . . in view of the Court's claim

---

[5] GoPro's discussion of Dr. Hu's references to "in parallel" in the context of validity (Opp. at 13) are likewise irrelevant to infringement under *Baxter*. 49 F.3d at 1583. GoPro uses its discussion of validity to accuse Contour of "attempt[ing] to eliminate the 'in parallel' requirement for the purposes of evaluating infringement." Opp. at 13. This contention is belied by Contour's Motion, which expressly discusses the "in parallel" requirement and explains that there is no dispute of material fact as to the parallel processing based on, *inter alia*, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See* Dkt. No. 376-3 at 15–17; *supra* at 6.

construction and his understanding as a person of ordinary skill in the art"; he is supposed to apply the Court's construction. *Dynetix Design Solutions, Inc. v. Synposys, Inc.*, No. C11-5973 PSG, 2013 WL 4537838, at *4 (N.D. Cal. Aug. 22, 2013) ("Any expert testimony must adhere to the court's claim constructions and must not apply alternative claim constructions."). GoPro never explains what it means to apply claim language "in view of" the Court's construction or the knowledge of an ordinarily skilled artisan. This sort of vague, hedging language confirms that GoPro and its expert are not simply applying the claim construction itself. GoPro cannot make its non-infringement argument under the Court's actual construction, so GoPro and its expert have been forced to reinterpret the already-construed claim language by misinterpreting the IPR record. This is improper and should be rejected.

Second, immediately following its statement that Dr. Almeroth applies the "plain language" instead of the Court's construction, GoPro cites the seminal claim construction case *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005). Opp. at 16. But, claim construction is the undisputed province of the Court, not the expert or the jury. *Every Penny Counts, Inc. v. Am. Express Co.*, 563 F.3d 1378, 13838 (Fed. Cir. 2009) ("the court's obligation is to ensure that questions of the scope of the patent claims are not left to the jury"). That GoPro would cite *Phillips* in support of its description of Dr. Almeroth's analysis confirms that Dr. Almeroth is improperly engaging in claim construction rather than applying the Court's construction.

Third, following its citation to *Phillips*, GoPro cites a case from this District stating that parties may introduce evidence of the plain meaning "of terms ***not*** construed by the Court." *Id.* (quoting *Apple, Inc. v. Samsung Elecs. Co.*, 12-cv-00630-LHK, 2014 WL 660857, at *3 (N.D. Cal. Feb. 20, 2014)) (emphasis added). But the "generate" term—the only term in dispute in this Motion—has been construed. As such, GoPro's citation to *Apple* confirms that it is actually trying to engage in improper claim construction.

Fourth, GoPro states that "Dr. Almeroth's non-infringement positions are based on the plain language of the claims, as construed, that require the first and second image data streams be generated in parallel (from the same source) from the video image data." Opp. at 19. In support of this proposition, GoPro expressly quotes the PTAB's claim construction. Opp. at 19 (quoting Dkt. No. 399-3 at 17–18). Dr. Almeroth should not be applying the PTAB's claim construction; he must apply

9

the Court's construction. *Dynetix*, 2013 WL 4537838, at *4. GoPro's admission that its expert is applying the claims "as construed," apparently by not just the Court but also as Dr. Almeroth reads the PTAB, confirms the impropriety of Dr. Almeroth's analysis and GoPro's argument.

Despite these admissions, GoPro attempts to defend its position by mischaracterizing Dr. Almeroth's analysis as merely a "recitation of the IPR history." Opp. at 17. This description is highly misleading. Dr. Almeroth's analysis focuses almost exclusively on the *construction* of claims at the PTAB (or statements by Contour allegedly describing the meaning of the claims or of this Court's constructions). For example, paragraph 86 of Dr. Almeroth's report, which he incorporates by reference throughout his invalidity analysis (including paragraph 184, quoted in Opp. at 18) discusses the PTAB's decision after appeal including its "claim construction" and its statement that the claims "require generation in parallel *from the same source, i.e. 'the video image data.*'" Dkt. No. 398-3, ¶ 86 (Dr. Almeroth's original emphasis). The PTAB's statements about its claim constructions are simply irrelevant to any issue in this case. That Dr. Almeroth, and GoPro, continue to reference these statements confirms that they are applying something other than this Court's claim construction.

GoPro also claims Dr. Almeroth is merely identifying "inconsistencies," but GoPro fails to show that these statements actually identify any inconsistency. For example, GoPro argues no one "███████████████████████████" Opp. at 18 (quoting Dkt. No. 398-3, ¶ 184). But this is not an inconsistency. The Boland prior art reference discussed at the PTAB does not state the format of its video streams (as H.264 or otherwise). The claims likewise are not limited to H.264 streams, but cover any type of video streams. The mere fact that Dr. Hu's infringement analysis mentions a detail of the specific way GoPro's product satisfies the claims (using H.264 streams) that was not mentioned in the PTAB because that same specific detail was not referenced in the prior art is not an inconsistency at all. Next, GoPro cites to paragraph 256 of Dr. Almeroth's report. Opp. at 18. But there he does not identify any actual inconsistency and appears to be addressing his own personal, hypothetical interpretation of ███████████ ████, confirmed by the fact that he does not cite or quote any instance of Dr. Hu applying that supposed formulation. Dkt. No. 398-3, ¶ 256. Finally, GoPro contends that Dr. Almeroth identifies an inconsistency in Dr. Hu's opinion that ████████████████████████████████████. Opp.

10

at 18–19.  But a review of Dr. Hu's opinion shows that she was not offering a claim construction opinion about what is required to satisfy the claims; instead, she described how the evidence showed that GoPro met this claim limitation.  Dkt. No. 398-8, ¶¶ 391, 395.  GoPro and its expert are the only ones attempting to make claim construction arguments (or identify claim construction "inconsistencies"), but claim construction is a legal matter and not a factual dispute that precludes summary judgment, nor an issue to be raised first in an expert report.

As a last attempt to save Dr. Almeroth's improper claim interpretations based on the IPR record, GoPro shifts blame to Contour and argues that Dr. Almeroth is merely "responding" to Dr. Hu's "validity positions."  Opp. at 19–20.  This is unequivocally false.  Dr. Almeroth did not have Dr. Hu's validity positions at the time he issued his reports.  Her validity report was served on June 16, 2020, months after Dr. Almeroth's validity report (served Feb. 28, 2020) and 30 minutes after his non-infringement report was served.  *Compare* Exs. SS & TT.[6]  Dr. Almeroth could not "respond" to opinions he had not yet seen.  GoPro's argument to the contrary continues an alarming pattern evinced at Dr. Almeroth's deposition where Dr. Almeroth repeatedly attributes his analysis as somehow responding to analysis from Dr. Hu that he had not yet seen at the time of his reports.  *Compare* Dkt. No. 376-8 at 119:8–10 (Dr. Almeroth testifying that ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉) *with* Ex. VV at 226:23–228:8 (Dr. Almeroth admitting that ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉).  GoPro and Dr. Almeroth continually misattribute hypothetical, strawman opinions to Dr. Hu in order to justify GoPro's wholly improper response to those strawman opinions.  The Court should reject GoPro's attempt to re-construe the claims through Dr. Almeroth.

Finally, GoPro attempts to distinguish Contour's case law.  First, GoPro suggests that Dr. Almeroth may opine on "the plain meaning" of "in parallel" because an expert "may provide opinions regarding 'how a person [sic] ordinary skill in the art would understand the plain and ordinary meaning of the terms.'"  Opp. at 20 (quoting *Fujifilm Corporation v. Motorola Mobility LLC*, No. 12-CV-03587-WHO, 2015 WL 1265009, at *9 (N.D. Cal. Mar. 19, 2015)).  But "in parallel" is not an unconstrued claim

---

[6] Her infringement report did not mention the IPR record at all except in a single footnote stating that the parties had agreed on the level of skill in the art.  Ex. UU, ¶ 33 n.1.

term—it is part of the Court's construction. Nothing in *Fujifilm* supports that Dr. Almeroth can further construe the Court's construction by opining on the plain meaning of that construction. *Id.*, at *7–11 (all disputed terms were previously unconstrued); *see also Apple*, 2014 WL 660857, at *3 (expounding on plain meaning only permissible for "terms *not* construed by the Court").

Next, GoPro argues that Dr. Almeroth's opinions are distinct from *MediaTek* and *Huawei* because Dr. Almeroth allegedly "does not modify the plain and ordinary meaning" and does not "rely on the prosecution history." Opp. at 21. The evidence shows otherwise. Dr. Almeroth's arguments are based on the prosecution history, as GoPro concedes elsewhere. Opp. at 19 (stating "Dr. Almeroth's non-infringement positions are based on the plain language of the claims, as construed" and then quoting the PTAB's construction). And his opinions on the claims are based on proposed constructions that incorporate additional requirements not present in the claim language or this Court's construction (*e.g.*, that the sensor data must be unprocessed). Thus, Dr. Almeroth's opinions are based on improper claim constructions and the Court should strike those opinions.

### 4. GoPro's discussion of the Karma Passenger smartphone app is irrelevant.

At the outset of its motion, GoPro contends that Karma Passenger (one of GoPro's three smartphone applications) fails to satisfy several claim limitations that recite either "send[ing]" or "receiv[ing]" data. Opp. at 4–5. GoPro references this contention only in its "Background" section and fails to ever clearly ask the Court to deny summary judgment based on this single smartphone app version-specific argument, and thus any such argument is waived. *Id.* Even if the Court considers it, this argument is irrelevant and does not warrant denial of summary judgment.

With respect to the Karma Passenger application, Dr. Almeroth does not identify any of claim 11's limitations in his report as disputed. *See* Dkt. No. 398-3, ¶¶ 165–66 (cited in Opp. at 5) (███████████████████████████████████████████████████████████████████████████). Nor could Dr. Almeroth identify any unsatisfied claim limitations at his deposition. Dkt. No. 376-8 at 276:9–16 (Dr. Almeroth admitting that ███████████████████████████████████). Thus, there is no factual dispute between the experts as to whether any limitations are satisfied.

Moreover, GoPro itself fails to explain how claim 11, which recites "[a] portable, point of view

digital video camera, comprising," could possibly be shown as not infringed by alleged differences between GoPro's different smartphone applications. Even if the Court accepts GoPro's self-serving (but technically inaccurate) characterization of the Karma Passenger app, the claim would still be infringed by the GoPro cameras because they "comprise" all the elements of claim 11 and are "configured to" satisfy the claim elements relating to sending or receiving data at least to GoPro's other two smartphone apps (apps which GoPro does not dispute meet the "send[ing]" and "receiv[ing]" limitations anywhere in the Opposition). Thus, the Karma Passenger application is irrelevant to this motion and does not preclude summary judgment.

### B. GoPro willfully infringes and the Court should grant summary judgment.

GoPro first argues that Contour's Motion is "Inconsistent With The Law" allegedly because Contour does not cite a case granting summary judgment post-*Halo*. Opp. at 22. But no case stands for the proposition that summary judgment of willfulness is precluded per se.[7] Here, the facts demonstrate willfulness and thus the Court should grant summary judgment.

Next, GoPro argues that Contour's willfulness theory is untimely based on an inaccurate characterization of Contour's willfulness case as "post-suit." Opp. at 22. GoPro admits it was added to the Utah Action on January 5, 2015, and that Contour alleges knowledge at least as of January 5, 2015, in both the Complaint and in response to Interrogatory No. 11. Opp. at 3, 23; *see also* Dkt. 376-15 at 203:10-15 (GoPro admits ███████████████████████████████████████). GoPro also admits that the Utah Action was voluntarily dismissed[8] and this lawsuit was not filed until November 30, 2015. Opp. at 3; Dkt. No. 1. Thus, GoPro admits pre-suit knowledge.

As to the specific date of that knowledge, GoPro served a deposition notice requesting a corporate deponent on "[Contour's] pre-suit communications with GoPro . . . ." Ex. WW, ¶ 26. Mr. Mooney was designated on that topic, as he confirmed at his deposition. Ex. XX at 24:11–14.

---

[7] GoPro's footnote reference to the *Read* factors is inapposite. Opp. at 22–23 n.18. *Read* governs enhanced damages after a determination of willfulness, not the substantive determination of willfulness itself. *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826 (Fed. Cir. 1992).

[8] The filing of a complaint, though later voluntarily dismissed, can support defendant's knowledge of a patent for willful infringement. *Click-To-Call Techs., LP v. Ingenio, Inc., YellowPages.com, LLC*, 899 F.3d 1321, 1335 (Fed. Cir. 2018), *vacated and remanded on other grounds*, 810 F. App'x 881 (Fed. Cir. 2020) (dismissing for lack of appellate jurisdiction).

1  However, GoPro never asked him whether Contour provided notice of the patents before suit.[9]
2  GoPro's choice to not question Mr. Mooney cannot be used to contend that Contour's theory is
3  untimely. Had Mr. Mooney been asked, he would have testified in accordance with his declaration.
4  Moreover, GoPro does not explain how pre-suit communications that involve GoPro could ever
5  constitute any sort of unfair surprise. GoPro was a party to those communications and thus knew,
6  even before this lawsuit, that Contour had provided notice of the patents in November 2014.

7  Next, GoPro contends that Contour improperly relied on pre-issuance conduct. GoPro cites
8  no case law suggesting this is improper per se. Under *Halo*, a flexible test considering "the particular
9  circumstances of each case" governs. *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1933
10 (2016). The conduct Contour identified is highly probative, including Mr. Woodman's stock sales
11 both pre-issuance (but post-notice in the file history that the patent would issue) and post-issuance
12 (including on Nov. 25 and Dec. 3, 2014, *see* Dkt. Nos. 374-15 & 374-16). GoPro's copying of
13 Contour's product, even though it occurred pre-issuance, also supports a finding of willfulness,
14 because after GoPro became aware of the Asserted Patents, it continued to make and sell the same
15 infringing design. *Apple Inc. v. Samsung Electronics Co., Ltd.*, 258 F. Supp. 3d 1013, 1028 (N.D. Cal.
16 2017).[10] In response, GoPro references ███████████████████████████
17 ███████████ Opp. at 24. ████████████████████████████████████████
18 It was only later that GoPro was able to successfully copy Contour's invention. Contrary to GoPro's
19 representation, Dr. Hu did not admit "there is no evidence of copying" (Opp. at 25). Instead, she stated

---

[9] GoPro's complaint that Mr. Mooney's declaration was not produced in fact discovery thus rings hollow, especially given that GoPro was a party to the pre-suit communication with Mr. Mooney, as evidenced at CONTOUR00182253–54 (Dkt. 376-9, Exhibit 7). Mr. Mooney was also asked and testified at his deposition about his involvement with the brokerage firm around the time when the patents issued in November 2014, where he discussed ████████████████████████████████
████████████████████████████████ *See* Ex. XX at 166:9–169:13. While GoPro did not ask him any follow-up questions about his pre-suit communications with GoPro at his deposition, Mr. Mooney is a fact witness with personal knowledge of the communications in question and he therefore is plainly permitted to testify to those communications at trial despite GoPro's strategic choice not to question him about those communications at his deposition.

[10] GoPro mischaracterizes *Finjan* as allegedly precluding summary judgment. In *Finjan*, there was no pre-suit knowledge (different from here), and even so, the court noted, "district courts are not bound by any rigid formula or set of factors." *Finjan, Inc. v. Cisco Sys. Inc.*, No. 17-CV-00072-BLF, 2017 WL 2462423, at *4 (N.D. Cal. June 7, 2017).

that ███████████████████████████████████████

███████ Dkt. No. 398-7 at 189:18–190:1.

Finally, GoPro contends that its defenses and IPR preclude summary judgment, but the IPR was unsuccessful on every claim and every ground. Moreover, GoPro's contention that it had a "good faith belief that it did not infringe" is undermined by its arguments here (and its experts') that rely on improper claim constructions rather than the Court's constructions. GoPro's choice to not implement an alternative that GoPro claims is trivially cheap and with no technical drawbacks confirms that GoPro's conduct has been bad faith with respect to both its mischaracterization of its proposed non-infringing alternatives and its maintenance of defenses based on improper claim constructions.

## III.   CONCLUSION

The Court should grant summary judgment that GoPro directly and willfully infringes claim 11 of the '954 patent.

Dated: July 29, 2020

*/s/ John R. Keville*

John R. Keville (*Pro Hac Vice*)
jkeville@winston.com
Dustin Edwards (*Pro Hac Vice*)
dedwards@winston.com
William M. Logan (*Pro Hac Vice*)
wlogan@winston.com
WINSTON & STRAWN LLP
800 Capitol Street, Suite 2400
Houston, TX 77002-2925
Telephone: (713) 651-2600
Facsimile: (713) 651-2700

David P. Enzminger (SBN 137065)
denzminger@winston.com
Matthew R. McCullough (SBN 301330)
mrmccullough@winston.com
WINSTON & STRAWN LLP
275 Middlefield Road, Suite 205
Menlo Park, CA 94025-1203
Telephone:    (650) 858-6500
Facsimile:    (650) 858-6550

Attorneys for Plaintiff
CONTOUR IP HOLDING, LLC