United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONTOUR IP HOLDING, LLC,<br><br>                    Plaintiff,<br><br>          v.<br><br>GOPRO, INC.,<br><br>                    Defendant. | Case No.  3:17-cv-04738-WHO<br><br>**ORDER ON MOTIONS IN LIMINE,<br>MOTION TO STRIKE AND EXCLUDE,<br>AND MOTIONS TO SEAL**<br><br>Re: Dkt. Nos. 472, 473, 474, 475, 490, 495 |

## INTRODUCTION

In this patent infringement suit, plaintiff Contour IP Holdings, LLC ("Contour"), alleges that defendant GoPro, Inc. ("GoPro"), infringes claims 11, 12, 14, 15, and 20 of U.S. Patent No. 8,890,954 and claims 4 and 6 of U.S. Patent No. 8,896,694. GoPro denies that it infringed and claims that the patents are invalid. The patents relate to mountable and viewfinderless point-of-view video cameras with capabilities to wirelessly connect to personal portable devices. A jury trial is set for later this year, depending on the state of the COVID-19 pandemic. This Order addresses the parties' motions in limine and GoPro's motion to strike the supplemental report and exclude the testimony of Contour's damages expert, Dr. Keith Ugone.

## DISCUSSION

## I.      CONTOUR'S MOTIONS IN LIMINE

### 1.    Motion in Limine No. 1: Preclude GoPro Arguing the "Generate" Limitations Related to Infringement

GRANTED. Contour seeks to preclude GoPro from arguing the "generate" limitation related to infringement. Contour's Motions in Limine ("Contour Mot.") [Dkt. No. 475] 1–2. I previously construed the term, which appears in claims 3 of the '684 Patent and claim 11 of the

'954 Patent.  I granted summary judgment on claim 11, finding that the Accused Products infringe it based on the "generate" term.  Order on Motions for Partial Summary Judgment, Motions to Exclude Expert Testimony, and Motions To Seal ("Prior Order") [Dkt. No. 444] 6–10.  Contour therefore seeks to preclude argument regarding the term because, it contends, it was effectively settled on summary judgment for all claims.

GoPro has no affirmative argument to the contrary.  Instead, it argues that both parties should be precluded from arguing the generate limitation related to infringement.  GoPro's Responses to Contour Mot. ("Contour Oppo.") [Dkt. No. 494] 1.  I agree.  Neither party may seek to relitigate what was settled at summary judgment.  The application of this principle is discussed below with respect to particular disagreements that the parties have.  As a general matter, neither party may argue for the "generate" limitation related to infringement.

GoPro also seeks certainty that its non-infringement arguments about the "generate" limitation are preserved for appeal because it cannot make them at trial.  *Id.* 1–2.  While appellate preservation is a matter for the appellate court, it is difficult to imagine Contour feasibly arguing that GoPro failed to preserve these arguments given Contour's position that the issue was settled by summary judgment.  Contour's position, for clarity in the record, is that even though summary judgment was about claim 11 in particular, the "generate" limitation dispute is the same across uses of that term in other claims.  *See* Contour Mot. 1–2.

### 2. Motion in Limine No. 2: Preclude References to Damages Causing GoPro's Business to Be Negatively Impacted

GRANTED.  Contour moves to preclude GoPro from "making any statements or arguments to the jury regarding GoPro's ability or inability to pay any judgment in this case or the impact a significant verdict could have on GoPro's business."  Contour Mot. 3.  I agree that this evidence would not be relevant, Fed. R. Evid. 401, 402, and, even if it were, any probative value would be substantially outweighed by undue prejudice to Contour, Fed. R. Evid. 403.  GoPro does not dispute that it cannot argue or insinuate that a damages award would cause it to go out of business or cause financial harm.  Contour Oppo. 4–5.  But GoPro argues that Contour's motion goes beyond this to encompass "amorphous" broader evidence.  *Id.* 5.  I disagree that the request is

United States District Court
Northern District of California

vague or overbroad.  GoPro may not make statements or arguments to the jury about its (in)ability to pay a judgment or the impact of a significant verdict on its business.[1]

### 3. Motion in Limine No. 3: Preclude "Generalized" Criticism of the Patent Office ("PTO") or Patent Trial and Appeal Board ("PTAB")

GRANTED IN PART.  Contour seeks to preclude certain statements about the PTO, PTAB, and their patent review and issuing process.  I agree that GoPro cannot "make *generalized* comments about the quality of the PTO's examination process or otherwise insinuate that, *as a general matter*, the PTO does not do its job properly."  *Fujifilm Corp. v. Motorola Mobility LLC*, No. 12-CV-03587-WHO, 2015 WL 12622055, at *2 (N.D. Cal. Mar. 19, 2015) (emphasis added).  That evidence is too far removed from any issue in the case and threatens to water down the high bar for showing invalidity Congress and the Supreme Court have set.  *Id.*  But "[t]his ruling in no way prevents [GoPro] from making *specific* attacks on the validity of the patents in suit, or from relying on evidence and/or argument that *those particular patents* were improperly issued."  *Id.* (emphasis added).  And if Contour "opens the door by, for example, implying that the PTO carefully evaluated each of the patents in suit and all relevant prior art, I will reconsider this ruling and may allow [GoPro] to respond with evidence" that would rebut it.  *Id.*  I address what the parties may say about PTAB in ruling on GoPro's Motion in Limine No. 12.

### 4. Motion in Limine 4: Preclude Reference to the Contour Entities as "Non-Practicing Entities" or Similar Terms

GRANTED IN PART.  Contour seeks to prevent GoPro from referring to it, Contour, Inc., or Contour, LLC, with "derogatory, disparaging, and/or pejorative terms" related to their non-practicing of the patents.  Contour Mot. 6.  The classic example of such a term is a "patent troll" and GoPro has agreed not to use that term.  *See id.* n.6; Contour Oppo. 8.  Contour identifies two other specific terms: "patent assertion entity" and "non-practicing entity."  "Non-practicing entity" is a neutral and factual descriptor and so is not improper.  *See, e.g.*, *HTC Corp. v. Tech. Properties Ltd.*, No. 5:08-CV-00882-PSG, 2013 WL 4782598, at *4 (N.D. Cal. Sept. 6, 2013).  Contour may not be described as a "patent assertion entity" because of its negative connotations.  *Finjan, Inc. v.*

---

[1] By the same token, Contour would not be able to make statements or argument that the failure to award it damages would negatively impact its business.

*Sophos, Inc.*, No. 14-CV-01197-WHO, 2016 WL 4560071, at \*8 (N.D. Cal. Aug. 22, 2016). Contour identifies no other "similar pejorative" terms with specificity.

Additionally, Contour moves to preclude argument that it is improper for Contour to "assert patent rights without practicing the patent." Contour Mot. 6. If the objection is to relevance, it should be made at trial depending on what evidence comes out, the purpose of it, and what it is responding to. If the objection is to the language, the phrase is a neutral, factual statement and not pejorative.

### 5. Motion in Limine No. 5: Preclude Reference to Ambarella as an Inventor

GRANTED IN PART. Contour moves to exclude any reference to third-party Ambarella as the inventor (or a similar term) of the asserted patents. It offers three reasons: (1) I previously denied GoPro the ability to amend its invalidity contentions to include certain prior art, including some Ambarella chips, *see* Dkt. No. 335 at 8; (2) the testimony Contour is concerned about is from lay witnesses yet they would be improperly testifying about technical subjects; and (3) any of this testimony would be irrelevant because the asserted claims recite a "point of view digital video camera" while Ambarella makes camera processors, not whole camera systems. Contour Mot. 9–10.

This evidence may not be used as an invalidity reference, but it may be used as background prior art. GoPro previously sought leave to amend its invalidity contentions to include, among other things, Ambarella technology as invalidity references. Dkt. No. 335 at 5, 7–8. I denied that motion, finding that GoPro was not diligent in identifying that technology. *Id.* at 7–8. GoPro cannot get around the disclosure requirements by invoking references for which it was denied leave to amend.

That said, GoPro may use the evidence as background prior art—that is, to establish the knowledge of a person of ordinary skill in the art, or other defenses not subject to the disclosure requirements just discussed. I disagree that the evidence is irrelevant at this pre-trial stage; Contour's argument to the contrary is simply a rehash of its arguments about why the claims are novel. *See* Contour Mot. 10. Additionally, the potential testimony does not appear to be improper lay witness testimony as GoPro argues. Instead, GoPro represents that it will ask witnesses to

describe when and how they worked on and developed the technology.  Lay witnesses are permitted to discuss what they personally experienced, so long as it is otherwise admissible.  *See* FED. R. EVID. 701.  Of course, any such witness must be shown to be testifying based on her perception and with personal knowledge.  *Id.* 602, 701.  If, at trial, it becomes apparent that these witnesses lack such knowledge, their testimony will be excluded.  Moreover, no lay witness may testify as an expert about the technology, merely to their experiences and rationally based perceptions; if a witness strays into that territory an objection should be made at trial.

## II.   GOPRO'S MOTIONS IN LIMINE

### 1.   Motion in Limine No. 1: Exclude GoPro's Total Accused Product Revenues or Profits

GoPro seeks to exclude evidence regarding GoPro's total gross revenues or profits.  For the reasons explained below, I grant the separate motion strike the portion of Contour's expert's supplemental report related to this.  That is the only source of this evidence that GoPro identifies in its motion in limine.  *See* GoPro's Motions in Limine ("GoPro Mot.") [Dkt. No. 474] 1.

### 2.   Motion in Limine No. 2: Exclude GoPro's Corporate Wealth and Executive Wealth and Compensation

GRANTED IN PART.  GoPro seeks to exclude two types of evidence: its total corporate wealth and evidence about its executives' wealth and compensation.  Contour responds that total corporate wealth is relevant to and admissible for damages calculations.  Because I have granted the motion to strike some of Ugone's opinions related to this (as referenced in my ruling above and explained further below) it is unclear whether any other such evidence remains available to introduce.  In any event, ruling on more than this example now would be inappropriate because whether total corporate wealth is admissible depends on its use.  Often, it may be used to prejudice the jury and may violate the entire market value rule ("EMVR").  In other circumstances, it may also be relevant and admissible, for instance in a hypothetical negotiation.  The parties should object at trial if such evidence is used for an improper purpose (if any evidence remains).

I agree—and Contour does not dispute—that revealing *executive* wealth and compensation in a way unconnected to a particular disputed issue would have little, if any, probative value and would serve only to inflame and unduly bias the jury.  FED. R. EVID. 403.  Contour opposes the

1    motion, however, to the extent that it applies to Nicholas Woodman, GoPro's CEO.  Contour

2    contends that it may seek to introduce evidence that Woodman carried out sales of GoPro stock

3    that are indicative of willfulness.  Contour's Opposition to GoPro Mot. ("GoPro Oppo.") [Dkt. No.

4    493] 3–4.  For the reasons explained with respect to GoPro's Motion in Limine No. 8, I exclude

5    the evidence of stock sales on other grounds.

### 3.   Motion in Limine No. 3: Exclude Testimony from Dr. Erich Speckin

7        GRANTED.  GoPro contends that Erich Speckin, an expert Contour has added to its

8    witness list, was not sufficiently disclosed.  I agree; there is no evidence on this record that

9    Speckin was disclosed in the same way as the experts that the parties both expected to testify and,

10   consequently, were able to depose or prepare to cross.

11       Contour replies that Speckin was adequately disclosed because he filed a declaration in this

12   case regarding the authenticity of GoPro's catalogue, which the Federal Circuit found to be prior

13   art on review of a PTAB decision involving these parties.  *GoPro, Inc. v. Contour IP Holding*

14   *LLC*, 908 F.3d 690, 696 (Fed. Cir. 2018).  Contour argues that Speckin's declaration sufficiently

15   qualifies as a report under FRCP 26 because it includes all facts and data he considered, his

16   opinions, and his qualifications.  *See* Dkt. No. 276 (the declaration).  It further argues that the

17   parties did not include experts in their initial disclosures, they only included fact witnesses.  And it

18   contends that GoPro was put on notice of this expert the same way the parties put each other on

19   notice with all experts--serving declarations.

20       This is an eleventh-hour attempt to rewrite the history of this witness.  Spreckin's short

21   declaration cannot be reasonably understood as a normal expert report under FRCP 26 that would

22   fulfill Contour's disclosure obligations.  It was made for the discrete purpose of responding to

23   GoPro's motion to stay, not for the general purpose of using Speckin as an expert throughout the

24   case.  While the parties were entirely aware of each other's experts and took discovery

25   accordingly, there is no evidence that GoPro was ever made aware Speckin would be used at trial

26   in this manner.  Contour's argument that this expert "report" was disclosed as all others were is

27   unavailing: this declaration was bundled as part of the response to a motion to stay.

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 4.   Motion in Limine No. 4: Exclude Technical Opinions of Dr. Keith Ugone

DENIED.  GoPro moves to exclude certain opinions of Ugone, Contour's damages expert, because they are technical and beyond his area of expertise.  GoPro Mot. 5–7.  Specifically, GoPro is concerned about opinions on invalidity and the prior art.  It points to the example of Ugone's statement that "prior to the patent filing date, 'display and playback' could not be performed with a low resolution video file as a feature of an action camera, and that prior to the patent filing 'display and playback' was never combined with the ability to wirelessly stream preview video." *Id.* 6.  And it objects to his discussion of prior art reference Boland and the PTAB's findings related to it.  *Id.* 7

Contour responds that, in Ugone's report, these opinions appear in an introductory passage and he follows them up by elaborating on his understanding of the art and patents prior to rendering a damages opinion.  GoPro Oppo. 5–6.  It points out, for instance, that many of his opinions are predicated on the PTAB decision or on Hu's opinions.

If these alleged technical opinions are used as the basis of Ugone's own expert opinions— as they appear to be—they are admissible on that basis.  *Williams v. Illinois*, 567 U.S. 50, 57 (2012); FED. R. EVID. 703, 705.  There are two caveats.  First, this information is only admissible to the extent any basis of an expert opinion is admissible.  FED. R. EVID. 703.  Second, Ugone cannot testify to any technical opinion to prove its substantive truth.  *Williams*, 567 U.S. at 57. Additionally, as explained in my ruling on the motion to strike, this evidence may not support Ugone's opinions in any case.

### 5.   Motion in Limine No. 5: Exclude Undisclosed Opinions of Dr. Jing Hu

DENIED except to the limited extent below.  GoPro argues that numerous opinions of Hu, Contour's technical expert, were not disclosed and that she should be precluded from testifying about them.  The motion also appears to object to Ugone's testimony if it is based on them.  GoPro Mot. 7–9.  Contour responds that each piece of testimony was adequately disclosed.  The testimony GoPro seeks to exclude falls into three buckets: (1) testimony about the number of features that are or were enabled by WiFi, (2) testimony regarding the (non-)conventionality and incremental benefit of the elements of claim 14, and (3) testimony "relating to the trim + share,

play back + view, copy+ save content, or browse + delete files allegedly being enabled by the alleged inventions of the Patents-in-Suit." GoPro Mot. 7.

With respect to the first category, Contour argues that it was disclosed by pointing to a discovery dispute filing in which (1) Contour stated that Hu opines that the features infringed claim 14 and (2) GoPro stated that Hu opines that "a system with the Accused Functionality *plus* playback infringes." GoPro Oppo. (quoting Dkt. No. 352 at 4, 6) (emphasis in original). Curiously, however, Contour does not simply cite a passage of an expert report that this appeared in. Nevertheless, the discovery dispute that Contour cites does provide citations to portions of the report that discuss the subject. Dkt. No. 352 at 5–6. GoPro may attempt to impeach Hu if it believes that any specific opinion would not be fairly encompassed by this general disclosure.

Second, Hu does disclose opinions regarding conventionality and incremental benefits in a second report. GoPro's argument appears therefore to be that these opinions are not in Hu's opening report. But a properly filed expert report is an adequate disclosure, and GoPro has indicated no reason it would not have been able to respond to or conduct discovery into this topic.

Third, GoPro argues that, while Hu has previously discussed the third category of testimony (relating to the files), it was only in a deposition and only in a redirect. It appears, however, that the opinions in this redirect were given in response to GoPro's experts' opinions about Hu. In other words, Contour represents that this is rebuttal evidence. Accordingly, Contour may only use it as such at trial. If Contour were permitted to present this evidence for other purposes, it would prejudice GoPro because the information was never disclosed in a manner that would have permitted GoPro to conduct full discovery into it. For clarity, Hu is not barred (as a result of this motion in limine) from testifying about the underlying opinions disclosed in her report to which, according to Contour, GoPro's expert was responding; she may simply not raise these specific opinions except in rebuttal.

### 6. Motion in Limine No. 6: Exclude Factual Misrepresentations

DENIED. GoPro moves to exclude certain statements by Contour's experts that it believes are "false." GoPro's substantive argument, however, goes to weight, not admissibility. GoPro first seeks to exclude Ugone's testimony that "Prior to March 2019, the user also could click the

download/upload button in the GoPro App to download the video from the camera to the GoPro App for display and playback, but the download was only of the low resolution video file." GoPro Mot. 10. As Contour points out, that statement is arguably corroborated by Hu, who states that "older versions" of the App "only download low resolution videos." GoPro Oppo. 11. Whether a factfinder believes it is adequately supported is a matter for the factfinder. GoPro also points to statements that Hu made that it argues contradict this testimony. Additionally, it points to other evidence (such as exhibits) that it alleges support its position that the mobile app has had the ability to download full resolution files since prior to the patents-in-suit issuing. GoPro Mot. 11. This all underscores the extent to which there is a factual dispute not appropriate to resolve in a motion in limine.

GoPro also objects to Ugone's testimony on this front because he is unqualified to render that opinion. I agree that if Contour seeks to use Ugone to prove the substantive truth of this statement, it would be improper. So long, however, as that statement is a basis (even an assumed one) for his damages opinions, it is proper so long as it otherwise complies with the FRE. *See Williams*, 567 U.S. at 57 ("Under settled evidence law, an expert may express an opinion that is based on facts that the expert assumes, but does not know, to be true.").

### 7.   Motion in Limine No. 7: Exclude Evidence "Oversimplying" the Inventions

DENIED. GoPro seeks to preclude Contour from "argu[ing] that it invented 'live preview' or 'remote control' or 'playback and display' because the claims are not nearly so broad, and such argument would unfairly prejudice GoPro and likely confuse or mislead the jury." GoPro Mot. 12. In response, Contour does not dispute that the terms are simply "shorthand." GoPro Oppo. 13–14. But it points out that both parties have sometimes used them to refer to specific functionalities and that GoPro's motion in limine sweeps broadly. I agree. If, at trial, Contour implies to the jury that it invented more than it did, that will be the subject of cross-examination, argument, or (in an appropriate, rarer circumstance) an evidentiary objection. At present, so long as actual functionalities are sufficiently defined, the use of this shorthand is appropriate. The value of referring to things in a convenient, non-convoluted way outweighs any theoretical prejudice to GoPro.

United States District Court
Northern District of California

### 8.  Motion in Limine No. 8: Exclude Undisclosed Evidence of Willfulness

GRANTED.  GoPro moves to exclude certain of Contour's evidence of alleged willfulness because it was insufficiently disclosed.  GoPro Mot. 13–15.  Specifically, GoPro homes in on (1) "allegations of copying or relating to any monitoring or investigation of Contour products by GoPro," (2) stock sales Woodman made, (3) "GoPro's continued release of new products or not designing around the Patents-in-Suit," and (4) communications between GoPro and the Contour entities.  *Id.* 14.  Notably, GoPro previously sought to pin down Contour's willfulness contentions with an interrogatory asking for the legal and factual bases supporting a willfulness theory.  Other willfulness contentions were disclosed in response to GoPro's interrogatory, but not these.  *Id.*

Contour's failure to include these bases of its willfulness theory in that interrogatory shows that they were inadequately disclosed; Contour points to no separate adequate disclosure of this information.  Nonetheless, Contour argues either that its disclosures were adequate or that the failure to disclose was substantially justified.  First, it first asserts that it filed an amended and supplemental response that referenced release of new infringing products.  But that report was filed after the deadline and without leave.  It also contends that GoPro waived this issue by not moving to strike the new response, but GoPro asked to disregard it at summary judgment and again today.

Second, Contour argues that GoPro was otherwise aware of the information (such as Contour's monitoring contention, which was raised in a deposition) or the information was in its possession (such as Woodman's stock sales), so nondisclosure was either justified or harmless.  Even if GoPro were aware of certain of these facts, that is far from awareness that they would be the basis of a willfulness contention.  The mere fact that, for instance, GoPro knew that Woodman made these stock sales would not reasonably put it on notice that Contour would then use them to show willfulness.  If Contour had disclosed that in response to the interrogatory, GoPro could have taken discovery on these issues.

Third, Contour argues that it has maintained an objection to that interrogatory as overbroad, unduly burdensome, and on the grounds that GoPro already possesses the information.  To start, a boilerplate objection does not relieve Contour of its fundamental burden to disclose its

10

willfulness contentions.  Additionally, Contour *did* respond with several bases of willfulness and then supplemented its response with others.  To now claim that it had no obligation on the basis of vague, rote objections that its own behavior undermined does not mean that Contour can simply avoid disclosure until trial.

Fourth, Contour argues that GoPro was not diligent because it never sought to clarify the willfulness contentions.  Dkt. No. 399-6 at 15.  This is not a situation in which a party was given general information that it should have clarified.  Here, Contour never put GoPro on notice of these violations at all (except with respect to the particular information in the untimely supplement).  For instance, it is impossible for GoPro to have "clarified" any information about Woodman's stock sales because Contour never disclosed it would use those sales to show willfulness.[2]

### 9.   Motion in Limine No. 9: Exclude "Undisclosed Secondary Considerations"

GRANTED IN PART, DENIED IN PART.  GoPro seeks to exclude evidence of secondary considerations of nonobviousness because, it argues, they were not adequately disclosed.  GoPro identifies copying, commercial success, long-felt but unresolved need, and failure by others as the secondary considerations that were not disclosed.  GoPro Mot. 15–17.

Contour either sufficiently disclosed this information or GoPro did not pursue clarification or elaboration in a timely way.  First, Contour's interrogatory response on this discussed unresolved needs and commercial success.  GoPro Oppo Ex. F at 26–27.  Second, Contour said that its experts would prove further information about secondary considerations and there is no evidence that GoPro asked for more specificity.  When Hu filed her rebuttal report that discussed secondary considerations, GoPro lodged various objections, but not this one—it cannot now do so in a motion in limine.  Unlike with respect to GoPro's Motion in Limine No. 8, GoPro was

---

[2] My order on summary judgment is not to the contrary.  Contour relies on the statement that "I disagree with GoPro that the timing of Woodman's sale of GoPro stock necessarily makes that evidence irrelevant to the question of willfulness.  The parties will be able to present the jury with evidence and argument regarding each of their versions of events and the inferences that can be drawn from the evidence."  Prior Order 12 (internal citation omitted).  There, I held only that sales would be relevant to willfulness as an evidentiary matter and that summary judgment could not be granted regarding them.  I did not address whether the theory was adequately disclosed.

United States District Court
Northern District of California

apprised of Contour's general theories and did not diligently request further specificity until filing this motion seeking total exclusion. This portion of the motion is DENIED.

In the alternative, GoPro moves to exclude the evidence during Contour's validity case-in-chief and asks that Contour only raise it during its rebuttal case. GoPro Mot. 16–17. It argues that raising secondary considerations prior to that will prejudice the jury in the *infringement* analysis, but the only concrete threat it identifies concerns copying. *Id.* Contour opposes this motion but only identifies one substantive ground for doing so: that copying is relevant to willfulness. GoPro Oppo. 18. The motion is GRANTED IN PART. I will not exclude secondary considerations other than copying because GoPro does not address them with any particularity. Evidence of copying is relevant to willfulness. *Digital Reg*, 2014 WL 4090550, at *8. But it cannot be used for any other purpose, except in rebuttal, because of the threat of muddying the validity and infringement analyses. *Finjan*, 2015 WL 4129193, at *6. This decision should not be understood to contradict my other determinations on willfulness in this order. Copying is only admissible to the extent allowed by rulings on other motions in limine.

### 10. Motion in Limine 10: Exclude Evidence and Argument Inconsistent with Summary Judgment Order

DENIED. GoPro seeks to exclude evidence it argues is consistent with my order on summary judgment or, at least, inconsistent with Contour's positions taken during summary judgment briefing. GoPro has identified one particular piece of expected testimony from Hu that it objects to as inconsistent with my summary judgment order or judicially estopped because of Contour's briefing. Although GoPro appears to treat this as only an example, it is the only testimony GoPro identifies with any specificity. Contour agrees that it cannot make arguments or introduce evidence that contravenes my order on summary judgment but argues the evidence is not inconsistent.

Summary judgment on claim 11 of the '954 patent revolved around the "generate" term, which I construed as "record in parallel from the video image data a first image data stream and a second image data stream, wherein the second image data stream is a higher quality than the first image data stream." Prior Order 6. At summary judgment, GoPro's expert opined that there was

no infringement because (1) the accused products did not generate data "from the video image data" because of the alterations made during processing and (2) the lower resolution stream was created from a high resolution video source, not the video image data. *Id.* 7–10. I rejected both arguments, finding that the construction did not include a "no-process" limitation that GoPro would impose. *Id*.

GoPro challenges Hu's opinion from her rebuttal report that prior art reference Boland does not meet the generate term. Hu opines that Boland does not disclose the generate term as construed (as GoPro's expert argues). She says that "Boland's preview functionality does not relate to generating two streams in parallel, but instead describes creating a preview stream from previously-recorded high quality video. The preview stream is also not generated from the video image data but is instead generated from the previously-recorded high quality video." Dkt. No. 398-6 ¶ 307.

This issue is not ideal for a motion in limine. The arguments are technical and of the type that would normally be thoroughly ventilated in robust adversarial briefing—not in the few short pages each party gets for a motion in limine. Both parties have reasonable arguments. Based on the slim record before me, however, I conclude that Hu is advancing a distinct argument than Contour made or I rejected. This argument about Boland is one Contour advanced at summary judgment—namely that Boland uses a *serial* generation process, not a parallel one. In this serial process, Contour contends, the lower quality video stream is generated from a previously *stored* high quality video. In a parallel process, in contrast, both video streams are generated—directly or indirectly—from video image data, even if the lower resolution video is processed from the high resolution video prior to being stored. *See* Prior Order 8 n.2. This distinction may or may not ultimately be convincing to a factfinder, but it is not so plainly inconsistent with Contour's previous arguments as to require judicial estoppel. *See Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782–83 (9th Cir. 2001) (discussing the conditions under which judicial estoppel prevents parties from taking inconsistent positions). And it does not, at least on this record, squarely contradict my rejection of GoPro's no-processing argument at summary judgment.

1

**11. Motion in Limine No. 11: Exclude References to the Plaintiff as "Contour"**

2   DENIED except to the limited extent explained below. GoPro seeks to preclude the

3   plaintiff (whose full corporate name is Contour IP Holdings, LLC) from suggesting it is the same

4   company as Contour, LLC or Contour, Inc. That alone would be reasonable and I do not expect

5   the plaintiff to do so. *See* GoPro Oppo. 20 ("Contour has no plans to confuse or mislead the jury

6   by conflating itself with Contour, LLC and Contour, Inc. Contour only plans to provide 'neutral,

7   factual statements' concerning its business."). To that limited extent, the motion is GRANTED.

8   But the main argument in GoPro's motion goes beyond that: it moves to prevent the plaintiff from

9   referring to itself as "Contour" at all. GoPro Mot. 20–21. Its argument is that the plaintiff is a

10   distinct legal entity from those other Contour entities but that the plaintiff is a non-practicing

11   entity while the others allegedly developed the patents-in-suit.

12   Although there might be some slight confusion arising from the similarity between the

13   entities' names, that theoretical confusion does not substantially outweigh Contour's right to refer

14   to itself by its name and "introduce [its] compan[y] to the jury." *Finjan, Inc. v. Blue Coat Sys.,*

15   *Inc.*, No. 13-CV-03999-BLF, 2015 WL 4129193, at *2 (N.D. Cal. July 8, 2015); FED. R. EVID.

16   403. The cases GoPro relies on excluded quite different evidence than a party's name. In one, the

17   court precluded a party from referring to itself as a "charity" so that the jury would not be biased.

18   *Wisconsin Alumni Research Found. v. Apple, Inc.*, 135 F. Supp. 3d 865, 879 (W.D. Wis. 2015). In

19   the other, the court permitted one party to explain that the other party was not the entity that

20   appeared on the patents, which is materially identical to what I allow here. *Personalized User*

21   *Model, L.L.P. v. Google Inc.*, No. CV 09-525-LPS, 2014 WL 807736, at *3 (D. Del. Feb. 27,

22   2014). GoPro may pursue appropriate and admissible argument and cross-examination about the

23   distinction between the entities.

24   GoPro also argues that the plaintiff is judicially estopped from using that name because it

25   previously contended that the entities were legally distinct. GoPro Mot. 20. The plaintiff,

26   however, does not seek to argue that the entities are the same, it simply seeks to refer to itself by

27   its name—an entirely different issue. I trust that the parties will be scrupulous in sharply

28   differentiating between the entities at trial.

United States District Court
Northern District of California

United States District Court
Northern District of California

**12. Motion in Limine No. 12: Exclude Reference to the IPR Proceedings**

GRANTED IN PART.  GoPro moves to exclude evidence or argument about the inter partes review ("IPR") proceedings regarding the patents in this case.  Although courts have taken differing approaches, I have previously excluded evidence of post-issuance proceedings because, "while these petitions may have some probative value, I believe that this will be far outweighed by likely confusion to the jury."  *Finjan, Inc. v. Sophos, Inc.*, No. 14-CV-01197-WHO, 2016 WL 4560071, at *14 (N.D. Cal. Aug. 22, 2016).  "I believe it would take a significant amount of time and effort to adequately explain the relevance and limitations of the PTO proceedings to the jury and . . . I believe there is a substantial risk that the jury will improperly substitute its own judgment for the PTO decisions."  *Id.*  That is the approach that will apply here.  If GoPro opens the door, however, by stating or implying that references were not previously considered when they were, Contour may introduce IPR evidence to rebut that statement or implication.

The one qualification is that the IPR proceedings might have particular relevance to willfulness because, according to Contour, "they undermine any possible contention that GoPro believed the patents invalid."  GoPro Oppo. 23.  To the extent that willfulness remains a viable theory in light of my resolution of other motions in limine, I agree that the IPR evidence is of much more probative value regarding willfulness than it is in other contexts.  That probative value is not outweighed by the risks highlighted above.  Accordingly, evidence from the IPR proceedings may be introduced for this limited purpose, so long as it conforms to my other rulings.

**13. Motion in Limine No. 13: Exclude Foreign Production**

GRANTED IN PART.  GoPro seeks to exclude evidence or argument "related to the geography of the manufacture, use, or importation of the accused GoPro products."  GoPro Mot. 23.  The parties previously stipulated that "no dispute, argument, commentary, testimony, or evidence shall be introduced regarding the geographic location of the manufacture, sale, offer to sell, use, or importation of" the accused products.  Dkt. No. 366.  Moreover, courts have cautioned against evidence "tending to create an atmosphere of hostility toward foreign corporations" which is to be "condemned as an appeal to sectional or local prejudice."  *Jinro Am. Inc. v. Secure*

*Investments, Inc.*, 266 F.3d 993, 1009 (9th Cir.), *opinion amended on denial of reh'g*, 272 F.3d 1289 (9th Cir. 2001).  Contour responds that it does not to state or imply anything to that effect.  In line with the stipulation, it also represents it will not "elicit from any witness the geographic location of GoPro's manufacture, sale, offer to sell, use, or importation."  GoPro Oppo. 14.  Contour's concern, however, is that numerous documents to be used (it says by both sides) "happen to mention" geographic locations of, for instance, manufacturing facilities.  *Id.* 24.

I agree with GoPro—as does Contour—that any argument or evidence tending to create a bias on this basis is inadmissible.  I agree with the parties, too, that they will be bound by their stipulation.  But I disagree with GoPro that stray geographic markers on otherwise admissible documents must be excluded.  That evidence is not the sort that the Ninth Circuit guarded against in *Jinro*.  I also do not think that it violates the parties' stipulation.  That stipulation is aimed at the introduction of evidence to purposefully show these geographic connections of the company, not evidence that happens to reveal any foreign connection whatsoever.  I trust that the parties will present that evidence in a neutral, uninflammatory way.

### 14. Motion to Exclude Unaccused Products

GRANTED.  GoPro seeks to exclude evidence of an *unaccused* products as irrelevant.  Contour does not dispute that they are irrelevant for trial; it argues the motion is therefore moot.  I will grant the motion to the extent it seeks to preclude this evidence at trial.

## III.   MOTION TO STRIKE AND EXCLUDE

I previously struck much of the report of Contour's damages expert, Dr. Keith Ugone.  Prior Order 22–29.  I granted Contour leave to supplement his report to correct the deficiencies I identified.  *Id.* 29.  I also permitted GoPro to depose Ugone about the supplemental report and to challenge it.  *Id.* GoPro now again moves to exclude much of Ugone's testimony.  *See* Motion to Strike and Exclude Opinions of Dr. Ugone ("Ugone Mot.") [Dkt. No. 473].  For the reasons that follow, the motion is GRANTED.

Federal Rule of Evidence 702 allows a qualified expert to testify "in the form of an opinion or otherwise" where: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is

based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. FED. R. EVID. 702.  Expert testimony is admissible under Rule 702 if it is both relevant and reliable.  *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993).  "[R]elevance means that the evidence will assist the trier of fact to understand or determine a fact in issue." *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007); *see also Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) ("The requirement that the opinion testimony assist the trier of fact goes primarily to relevance.") (internal quotation marks omitted).

Under the reliability requirement, the expert testimony must "ha[ve] a reliable basis in the knowledge and experience of the relevant discipline."  *Primiano*, 598 F.3d at 565.  To ensure reliability, the court must "assess the [expert's] reasoning or methodology, using as appropriate such criteria as testability, publication in peer reviewed literature, and general acceptance."  *Id.* These factors are "helpful, not definitive," and a court has discretion to decide how to test reliability "based on the particular circumstances of the particular case."  *Id.*  (internal quotation marks and footnotes omitted).  "When evaluating specialized or technical expert opinion testimony, the relevant reliability concerns may focus upon personal knowledge or experience." *United States v. Sandoval-Mendoza*, 472 F.3d 645, 655 (9th Cir. 2006).

The inquiry into the admissibility of expert testimony is "a flexible one" where "[s]haky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion."  *Primiano*, 598 F.3d at 564.  "When the methodology is sound, and the evidence relied upon sufficiently related to the case at hand, disputes about the degree of relevance or accuracy (above this minimum threshold) may go to the testimony's weight, but not its admissibility."  *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 852 (Fed. Cir. 2010).  The burden is on the proponent of the expert testimony to show, by a preponderance of the evidence, that the admissibility requirements are satisfied.  *Lust By & Through Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996); see also FED. R. EVID. 702 advisory committee's note.

United States District Court
Northern District of California

17

**A. 50% Apportionment**

In apportioning the value of the accused functionality, Ugone states that "a minimum apportionment factor of 33.3% is appropriate, and a maximum of 50%." Amended Expert Report of Keith R. Ugone, Ph.D. ("Ugone Supp.") [Dkt. No. 472-4] ¶ 11. GoPro challenges the 50% figure on two grounds: (1) there is no underlying economic analysis or quantitative support for it and (2) it is outside the scope of the supplementation I permitted. Ugone Mot. 9–10. Contour responds that 33.3% is the apportionment factor Ugone actually employs in his analysis, while the 50% figure is "support" for attributing 33.3%; the theory is that the 50% figure is included to "reflect[] that Dr. Ugone's 33% opinion was conservative." Contour's Opposition to Ugone Mot. ("Ugone Oppo.") [Dkt. No. 491] 10.

This is no answer to GoPro's objection: there is no underlying analysis or basis for this figure, as the law requires. Contour does not point to anything in Ugone's report that would form the basis for concluding that 50% is the maximum apportionment factor. Additionally, if the 50% factor is not actually used in the analysis, it is not "helpful to the trier of fact" and is borderline irrelevant. *See id.* ("There is no 'new 50% apportionment.'"). If its only role is to make the 33.3% figure appear more reasonable by comparison, it is similarly unhelpful and is likely misleading. The motion to strike it is GRANTED. But, for clarity, I strike only the opinion about that discrete figure, not any other analysis which, according to Contour, is the substantive portion anyway. *See id.*

**B. Apportioning the Value of "Display and Playback"**

"When the accused infringing products have both patented and unpatented features, measuring this value requires a determination of the value added by such features." *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014); *see Garretson v. Clark*, 111 U.S. 120, 121 (1884). "Under § 284, damages awarded for patent infringement must reflect the value attributable to the infringing features of the product, and no more." *Commonwealth Sci. & Indus. Research Organisation v. Cisco Sys., Inc.*, 809 F.3d 1295, 1301 (Fed. Cir. 2015) (internal quotation marks and citation omitted).

I previously found several problems with Ugone's apportionment of the display and

playback feature of claim 14. *See* Prior Order 24–25. First, I explained that "Contour's opposition fails to meaningfully address GoPro's argument that Ugone impermissibly relies on a dependent claim to double the value of an independent claim." *Id.* 25. Next, I found that "Ugone was required to apportion his damages theory to *only* those features *within* 'display and playback' that were unconventional." *Id.* 25 (emphasis in original). And I faulted his lack of analysis for why value should be split equally between the three features he identified as being enabled by WiFi connectivity: (1) the Accused Functionality, (2) streaming to the web, and (3) the ability to view video on a smartphone.

GoPro now challenges Ugone's apportionment of the value of the "display and playback" feature on four grounds. The heart of GoPro's challenge is that Ugone fails to show the *incremental* value of the *combination* of claimed elements—as opposed to any individual value added together, or the absolute value of the combination. Ugone Mot. 11. As the Federal Circuit has explained, "if the claimed invention only adds an incremental value to the conventional element(s), the damages awarded must also be so limited. But, if the claimed invention adds significant value to the conventional element(s), the damages award may reflect that value." *Univ. of Pittsburgh of Commonwealth Sys. of Higher Educ. v. Varian Med. Sys., Inc.*, 561 F. App'x 934, 947 (Fed. Cir. 2014).

I agree with GoPro that Ugone's attempt at assessing the incremental value does not hold up, even on its own terms. Contour admits that Ugone's analysis is aimed at assessing the incremental value. *See* Ugone Oppo. 12. And he concludes that incremental value is "allowing the user to access their videos much faster than they would in the absence of the alleged infringement." Ugone Supp. ¶ 16. Or as Contour puts it, the incremental value is "quick access." Ugone Oppo. 12. Yet Ugone does not factor in only this incremental value—indeed, he does not value it at all. Instead, he apportions all (*i.e.*, 100%) of the value. That valuation is untethered from what he says the incremental value is. In other words, Ugone implicitly admits that viewing video was previously available, it was just slower. But his actual apportionment in no way reflects this. As noted, Contour accepts that Ugone was required to use the value above and beyond the non-infringing alternative, but he makes no effort to show what the value of this faster video

access is relative to the alternative of slower video access.

GoPro also takes issues with Ugone's apportionment of conventional or unpatented features of "browse and delete" and "trim and share." Ugone Mot. 14–15. Those are two "subfeatures" of display and playback that Ugone now identifies, in line with the guidance in the Prior Order. *See* Ugone Supp. ¶¶ 14–22. GoPro argues that Ugone arbitrarily apportions in 50% of the value of each of them—a figure that it contends there is no basis for. Ugone Mot. 14–15. In these circumstances, "the patent owner must apportion or separate the damages between the patented improvement and the conventional components of the multicomponent product." *Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prod. Grp., LLC*, 879 F.3d 1332, 1348 (Fed. Cir. 2018).

To the extent GoPro's argument is that the *identification* of these subfeatures is inappropriate, it is wrong; Ugone uses this process to address the concerns my Prior Order identified. The 50% figure is more suspect. Ugone does not defend it in his report. The first justification given for it was in a deposition regarding the report. Even in its Opposition, Contour's defense of it is thin: it argues only that 50% is apportioned "to account for the fact that 'browse and delete' and 'trim and share' can exist independently of the low resolution video file, but the low resolution video file facilitates the ease of use important to customers." Oppo. 15. I note too that this argument is, to some extent, in tension with Ugone's approach discussed above: Either facilitation of ease of use or speed gives only an incremental value to what was previously available (as Ugone claims here) or it can constitute all of the value (as Ugone tried to claim above). At the hearing on this motion, Contour argued that 50% was reasonably tied to the facts because "most" of the value of these subfeatures comes from their relation to low resolution video file—so at a minimum, a 50% apportionment is appropriate. It has not, however, pointed to any basis for that technical opinion.

Ugone's apportionment approach remains out of step with what the Federal Circuit has required. He does not adequately apportion the incremental value and his apportionment of the two subfeatures he identifies is not tied to any technical basis. It will be struck.

1    **C.  Profit Split**

2         Ugone's profit split methodology relies on the "Nash Bargaining Solution" ("NBS").

3    GoPro objects that the Federal Circuit has disapproved of NBS to calculate profit splits between

4    parties.  Ugone Mot. 15–18.  Contour has two responses: (1) Ugone uses a modified version of

5    NBS that ameliorates the problems courts have identified in it and (2) Ugone cross-checked the

6    result against another bargaining model.

7         The Federal Circuit has warned against employing mere "rules of thumb" to determine the

8    reasonable royalty rate that would emerge from a hypothetical negotiation.  *Uniloc USA, Inc. v.*

9    *Microsoft Corp.*, 632 F.3d 1292, 1315 (Fed. Cir. 2011).  In *Virnetx, Inc. v. Cisco Sys., Inc.*, 767

10   F.3d 1308 (Fed. Cir. 2014), the court confronted the NBS.  That "theorem arrives at a result that

11   follows from a certain set of premises."  *Id.* at 1332.  One such premise is a 50/50 profit-split

12   between the parties.  *Id.* at 1331–32.  Accordingly, the Federal Circuit "rejected invocations of the

13   Nash theorem without sufficiently establishing that the premises of the theorem actually apply to

14   the facts of the case at hand."  *Id.* at 1332.  It would otherwise be a simple "rule of thumb."  *Id.*

15        To escape this, Ugone relies on a working paper from 2020 by, it appears, an economics

16   student and his father.  *See* Ugone Supp. ¶ 31; Kryskowski, David M. and Kryskowski, David.

17   "Applying the Nash Bargaining Solution for a Reasonable Royalty," 2020; Mot. at 17 n.11 & Exs.

18   E, F.  Ugone contends that "[t]he authors provide a technique for estimation of the parties' relative

19   bargaining weights to be applied per the facts of the case, allowing for the use of the NBS in a

20   profit-sharing scenario between licensor and licensee in situations where the relative bargaining

21   weights may be unequal."  Ugone Supp. ¶ 31.  In other words, the authors of this working paper

22   claim to have established a way to use NBS without the drawback the Federal Circuit identified.

23        There is no evidence on this record that this working paper puts forward a sufficiently

24   reliable methodology to overcome the Federal Circuit's clear instruction that NBS cannot be used

25   "without sufficiently establishing that the premises of the theorem actually apply to the facts of the

26   case at hand."  *Virnetx*, 767 F.3d at 1332.  In *Virnetx,* in fact, the expert attempted to deviate from

27   the baseline and the Federal Circuit rejected that attempt.  *Id.* at 1333.  Here, the working paper

28   changes the starting assumption of equal bargaining power.  *Id.*  But applying standard *Daubert*

United States District Court
Northern District of California

1   principles, this single unpublished paper is not sufficient to render the modification to the NBS

2   reliable.

3       This paper has not been published or peer-reviewed. The only ones on this record to vouch

4   for it are its authors and Ugone himself. Neither Contour nor Ugone present evidence that the

5   methodology has been systematically tested against established methodologies to show its

6   reliability. The closest they get is Ugone's assertion that the figure that his NBS analysis led to is

7   in the neighborhood of the figure that another analysis led to. This lone positive correlation—

8   created in the midst of litigation—is not sufficient to show reliability.

9       Further, there is no general acceptance of the method. General acceptance (or lack thereof)

10  is not automatically dispositive in the *Daubert* analysis. But given the Federal Circuit's emphatic

11  rejection of NBS when it cannot be proven that the reality of the situation matches the underlying

12  assumptions, either some level of acceptance or some level of proven reliability is necessary. The

13  motion to strike Ugone's opinions based on this modified NBS approach is GRANTED.[3]

14      **D. Contour-iON Agreement**

15      GoPro previously challenged Ugone's reliance on a 2016 settlement license between iON

16  and Contour. I found that the negotiation was not arms-length under Ugone's own definition of an

17  arms-length negotiation. Prior Order 26–28. In his original report, Ugone declined to reply on a

18  2015 merger license or amendment because they were not arms-length. *Id.* 27. I explained that

19  "If there is a principled basis on which to distinguish between the two licenses, Ugone does not

20  describe or apply one." *Id.* 28. Among other things, I pointed out that, "[a]ccording to Ugone's

21  definition of an arms-length negotiation in his deposition, the royalty rate was not the result of an

22  arms-length negotiation because iON had an ownership interest in Contour (and Contour

23  previously had an ownership interest in GoPro)." *Id.*

24      GoPro again challenges Ugone's reliance on the agreement in the supplemental report.

25

26  ────────────────

27  [3] At the hearing, Contour asked about the use of the other method referenced by Ugone, the Rubinstein bargaining model. It appears that Contour may use that model with the same data that went into the NBS model. Ugone's reliance on that method is not barred by this Order. If GoPro has any objection to the use of this model in light of my order, it must raise it at least one week prior to trial.

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Contour points to several portions of Ugone's report that purport to establish differences between

2    the 2015 and 2016 licenses.  First, it argues that "the 2016 agreement includes a provision

3    explicitly stating that the 'agreement has been negotiated at arms-length by parties of equal

4    bargaining power,' which was not present in the 2015 agreement.  Ugone Oppo. 21 (citing Ugone

5    Supp. ¶ 28).  Second, it asserts that "the parties had no further expectation of working together at

6    the time of the 2016 agreement."  *Id.*  Third, it states that "the 2016 agreement included a license

7    only to the Patents-in-Suit, as opposed to the 2015 license that included a license to Contour's

8    entire patent portfolio."  *Id.*  And fourth, it contends that "iON's Class B shares were subject to a

9    lien to secure payment under the 2016 license agreement."  *Id.*

10          None of this changes the central problem I highlighted: at the time of the negotiation iON

11   had an ownership interest in Contour.  The closest Contour comes to rebutting this is its statement

12   that "Contour redeemed all 49.9% of iON's Class B shares for $1 on October 4, 2017."  Ugone

13   Oppo. 20 (internal quotation marks omitted).  But what happened in October 2017 has no bearing

14   on whether the parties had a financial interest in each other when they carried out the negotiation

15   in mid-2016.  At the hearing, Contour argued that the parties were in a "messy divorce," rendering

16   the agreement at arms-length.  Whatever acrimony there may have been, however, does not

17   change the fact of the ownership interest.  Accordingly, the deal was not arms-length according to

18   Ugone's definition. This reality has not changed from the last order.

19          **E.  MPV License Opinions**

20          In his original report, Ugone opined on an agreement between company MPV and GoPro.

21   In this supplemental report, he adds additional opinions, despite the fact that such opinions were

22   not within the scope of the supplementation I permitted, which was limited to the "deficiencies" in

23   his report.  Prior Order 29.  Contour has two defenses to including these opinions.  Neither is that

24   the opinions actually address the "deficiencies" about which I granted leave to supplement.

25          First, Contour argues that Ugone's opinions are in response to the opinions of Dr.

26   Kennedy, GoPro's damages expert.  Ugone Oppo. 23.  It appears to argue that this is appropriate

27   given my intervening ruling that the license may be presented at trial.  Contour is incorrect.  I

28   exercised my discretion so that Ugone could correct "deficiencies" in his report.  That narrow

                                                         23

United States District Court
Northern District of California

1    leave to supplement did not allow Contour and Ugone to assert any other rebuttal opinions they

2    believed would be helpful to their case.  Especially in the context of a technical case such as this,

3    the limitation on endless expert rebuttals is more than an empty formality.

4              Contour's second defense is that there is no prejudice to GoPro from the insertion of the

5    opinions.  That is plainly false.  Contour itself says: "Dr. Ugone makes observations . . . which

6    show that Dr. Kennedy cannot support his adjustments to the 2.5% rate in the agreement."  Ugone

7    Oppo. 23.  The prejudice to GoPro is that there are now opinions on the record contradicting its

8    expert's.  Permitting these opinions would be especially inequitable here because it would

9    prejudice *GoPro* as a result of deficiencies in *Contour's* expert's report and my exercise of

10   discretion permitting Contour to correct those flaws.  I will strike any opinions regarding this

11   license that did not appear in Ugone's original report.

12             **F.  Alleged EMVR Opinions**

13             Ugone opines about the comparison between Contour's share of apportioned gross profits

14   and GoPro's total revenues and profits.  GoPro attacks this evidence for (1) violating EMVR (the

15   entire market value rule) and (2) being out of the scope of proper supplementation.  In response,

16   Contour does not argue that the new opinions address "deficiencies" that I identified in Ugone's

17   original report.  To the contrary, it represents that "[t]he section . . . that GoPro complains of cites

18   heavily to sections of Dr. Ugone's original report that GoPro never moved to strike."  Ugone

19   Oppo. 24 (internal citations omitted).  And it reveals the purpose of the inclusion of these

20   opinions: "This is important because Dr. Kennedy has repeatedly opined that Dr. Ugone's

21   apportioned royalty rates are too high or 'overstated.'"  *Id.*  Contour is, accordingly, once again

22   attempting to use the error-correction opportunity I gave to inject new damages opinions it

23   otherwise would not have been able to get on to the record.  For the reasons explained above, I

24   will strike these new opinions.  If Contour is correct that Ugone's original report contained related

25   opinions that GoPro never moved to strike, those opinions from the original report are not

26   addressed here.

27   **IV.    MOTIONS TO SEAL**

28             The parties move to seal information related to their dispute over Ugone's report.  Dkt.

24

United States District Court
Northern District of California

1  Nos. 472, 490, 495.

2       Courts "start with a strong presumption in favor of access to court records." *Foltz v. State*

3  *Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003).  The public possesses a right to

4  inspect public records, including judicial records.  *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809

5  F.3d 1092, 1096 (9th Cir. 2016).  Accordingly, when a party seeks to seal judicial records

6  connected to motions that are "more than tangentially related to the underlying cause of action," it

7  "must demonstrate that there are 'compelling reasons' to do so."  *Id.* at 1096–99.  "When ruling on

8  a motion to seal court records, the district court must balance the competing interests of the public

9  and the party seeking to seal judicial records."  *In re Midland Nat. Life Ins. Co. Annuity Sales*

10  *Practices Litig.*, 686 F.3d 1115, 1119 (9th Cir. 2012).  This district's local rules require that

11  requests to seal be "narrowly tailored to seek sealing only of sealable material."  Civ. L. R. 79-

12  5(b).  GoPro incorrectly applies the good-cause standard, Dkt. No. 472 at 2–3, but this motion is

13  "more than tangentially related to the merits" of this case, so the compelling-reasons standard

14  applies.

15       The parties seek to seal several types of information: (1) company financial information,

16  (2) product source code and similar confidential details, and (3) licensing agreements between the

17  parties here and third parties.  The parties seek to redact only narrow portions of their briefs.  I

18  have previously granted motions to seal this information or substantially similar information in

19  this case.  *See, e.g.*, Dkt. No. 444, 468.  Each of these categories constitute compelling reasons, as

20  described in my prior orders.  Having reviewed the documents, they contain the categories

21  specified by the parties.  Accordingly, the motions to seal are GRANTED.  That said, I will not

22  redact any portion of this order.  In particular, the discussion of the iON licensing agreement

23  above is necessary to understand this order, does not include many of the concrete details the

24  parties (or third parties) move to redact, and was discussed in my Prior Order.  As I have

25  previously, I remind the parties that any sealed information will likely need to be publicly revealed

26  if it is to be used at trial.

27

28

## CONCLUSION

The motions in limine and motion to strike and exclude are resolved as explained above.

**IT IS SO ORDERED.**

Dated: January 8, 2021



William H. Orrick
United States District Judge