UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONTOUR IP HOLDING, LLC,<br><br>   Plaintiff,<br><br>  v.<br><br>GOPRO, INC.,<br><br>   Defendant. | Case No. 3:17-cv-04738-WHO<br><br>**ORDER ON MOTION FOR AN ACCOUNTING OR ONGOING ROYALTY**<br><br>Re: Dkt. No. 514 |

**INTRODUCTION AND NOTIFICATION REGARDING TRIAL**

  The pending motion highlights the unforeseen—but not unforeseeable—consequences of the parties' litigation decisions. Plaintiff Contour IP Holdings, LLC ("Contour") has accused cameras produced by defendant GoPro, Inc. ("GoPro") of infringing various claims of several of its patents. But this motion concerns four GoPro products ("the New Cameras") that Contour has *not* accused of infringement in this suit; they were released after the accused products. Although Contour took some preliminary steps to amend its infringement contentions to add the New Cameras, it never sought leave to do so, electing instead to move more quickly to trial on the already accused products. At summary judgment, I found that the accused GoPro cameras infringed one claim of one Contour patent. A jury trial on remaining issues, including infringement and invalidity, has been repeatedly postponed because of the COVID-19 pandemic.

  Contour now moves for an accounting or an ongoing royalty on the New Cameras. It argues that the New Cameras are "essentially the same" as the products found to infringe and that, as a result, they infringe as well. Its motion is denied without prejudice. There is no authority that permits accountings to be extended to unaccused products that have not been found to infringe. And while later-released, previously unaccused products *can* be the subject of ongoing royalties,

Contour has not yet met its burden to show that the New Cameras meet the Federal Circuit's test for imposing one.

That said, of course, Contour may pursue damages on the New Cameras as any party would be able to with later-released products, through post-trial equitable remedies (including a renewed motion for an ongoing royalty). Contour may choose to bring a second suit, perhaps to avoid waiting for a possible post-trial remedy, although GoPro has said that it will argue that Contour is precluded from accusing the New Cameras. Its position is difficult (perhaps impossible) to reconcile with its argument here that the New Cameras are not subject to an ongoing royalty. But whether a second suit is precluded is not yet before me, and I will not hazard an advisory opinion.

Although there may be some amount of unfairness to GoPro in adding the New Cameras (at a future stage) because Contour made the tactical choice not to do so, it would be even more unfair to deprive Contour of a full opportunity to show that later-released products infringe. The law is clear that later-released, unaccused products can be the subject of post-trial remedies like ongoing royalties provided the test is met. If Contour brings a renewed post-trial motion, GoPro will have the opportunity to respond with actual evidence and arguments on noninfringement, rather than with its current attempt to square the circle by arguing that the New Cameras might in some nebulous, unspecified way be different enough to not be included in this suit but that they are nonetheless sufficiently similar to preclude a second suit.

I said at the hearing on March 10, 2021, that one of my colleagues has a criminal trial that has priority over this one in the period in which the case is set for trial. Now a second criminal trial had to be set in that period as well. If by some miracle both cases resolve prior to April 6, 2021, we will pick a jury on May 5, 2021 and start the trial on May 10, 2021. But if not, we will have to continue the trial yet again. I will hold a status conference at 1:30 p.m. on April 6, 2021, to apprise the parties of next steps.

## BACKGROUND

As relevant here, Contour accused several of GoPro's cameras of infringing claim 11 of U.S. Patent No. 8,890,954 ("the '954 Patent"). The suit was originally filed in November 2015

but was transferred to this district in August 2017. Dkt. No. 175. The case was stayed from December 2018, pending the Patent Trial and Appeal Board's ("PTAB") resolution of an inter partes review ("IPR") initiated by GoPro, to September 2019. Dkt. Nos. 286, 296. The discovery deadline was set for January 14, 2020, in anticipation of an August 2020 trial. Dkt. No. 303. I continued the trial to January 2021 and then to May because of the pandemic, and will likely need to do so again.

The present motion concerns several GoPro products that Contour has not previously accused of infringement in this suit (and were therefore not at issue in summary judgment). In particular, this case has not previously concerned the New Cameras, GoPro's HERO7, HERO8, MAX, and HERO9. The HERO7 was released in September 2018. *See* Dkt. No. 514-4. The HERO8 and MAX were released in October 2019. *See* Dkt. No. 514-5. The HERO9 was announced in September 2020. *See* Dkt. No. 514-6.

Contour represents that it sent GoPro infringement charts in October 2019 for the HERO7. *See* Motion for Post-Trial Accounting and Ongoing Royalty ("Mot.") [Dkt. No. 514] Ex. 5 at 5. It also anticipated evaluating the upcoming HERO8 for infringement. *Id.* It represents that it requested the products' technical specifications but that GoPro only produced a few technical documents for the HERO7, nothing for the HERO8, and no source code. Mot. 3. Although GoPro (according to Contour) had initially signaled it would not oppose adding the HERO7 to this case, it stated in November 2019 that it would oppose unless it were allowed to add new invalidity contentions. *Id.* 4. Using publicly available information, Contour nonetheless created infringement charts for the HERO8. According to Contour, GoPro again refused to stipulate to amending the infringement contentions and said it would, if Contour moved to amend, seek to elongate the discovery schedule. *Id.* Ex. 6.

In November 2019, GoPro moved to amend its invalidity contentions. Dkt. No. 313. Contour opposed that motion and did not move to amend its infringement contentions. In its opposition to GoPro's motion, Contour said that, "[w]hile Contour contends that the GoPro HERO7 line and the HERO8 Black products infringe the asserted claims, Contour has decided not to seek leave to amend to avoid further dispute in order to keep this case streamlined for trial."

3

Dkt. No. 318 at 6. It explained that it "intends to address these products in a separate proceeding." *Id.* at 6 n.4. GoPro's reply responded that "[w]hat [Contour] proposes is a waste of GoPro's and this Court's resources, and should be legally barred through the doctrines of claim splitting and issue preclusion." Dkt. No. 321 at 10.

I granted in part and denied in part GoPro's motion to amend. Dkt. No. 335. I permitted it to add one camera system that Contour did not oppose, *id.* 8–9, but otherwise denied the motion for GoPro's failure to show it had been diligent. Because of that lack of diligence, I explained that there was no need to analyze prejudice to Contour and,

> Nor do I need to address the parties' back-and-forth over Contour's decision not to amend its infringement contentions to add the HERO7 and HERO8 Black products, which it previously charted and served on GoPro. See Oppo. 6 n.4, 13 (noting that it "intends to address these products in a separate proceeding"); Reply 10 (asserting that claim splitting and issue preclusion should bar such an action). These questions are not before me.

*Id.* 8 n.5.

In August 2020, I granted partial summary judgment to Contour and determined that the accused products infringed claim 11 of the '954 Patent. *See* Order on Motions for Partial Summary Judgment, Motions to Exclude Expert Testimony, and Motions to Seal ("SJ Order") [Dkt. No. 444] 6–10. As I explained, "[t]he parties agree that infringement of claim 11 comes down to the 'generate' term" and GoPro's products met the claim as construed. *Id.* 6. In brief, infringement of that term requiring finding that the accused products had a certain dual-streaming capability, construed as "record[ing] in parallel from the video image data a first image data stream and a second image data stream, wherein the second image data stream is a higher quality than the first image data stream." *Id.*

On January 21, 2021, Contour filed the present motion for an accounting or ongoing royalty that includes the New Cameras. I held a hearing on March 10.

## DISCUSSION

### I. PRELIMINARY CHALLENGES

GoPro contends that Contour is judicially estopped from receiving this relief and that it has failed to comply with the Patent Local Rules in doing so. Neither argument is persuasive.

4

**A. Judicial Estoppel**

"Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position." *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001). "[I]ts purpose is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001) (internal quotation marks and citations omitted). Although it is ultimately "an equitable doctrine invoked by a court at its discretion," courts consider several factors to determine whether to apply it. *Id.* at 750–51 (internal quotation marks omitted); *see also Hamilton*, 270 F.3d at 782–83 (listing factors courts "may" consider). Those factors are: (1) whether a party's later position is "clearly inconsistent" with its earlier position; (2) "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled"; and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *New Hampshire*, 532 U.S. at 750–51.

GoPro argues that Contour is judicially estopped because it previously represented that products after the HERO6 would be addressed "in a separate proceeding" from this one. Dkt. No. 318 at 6. That previous representation was based on GoPro's refusal to agree to adding the New Cameras to this proceeding by amending infringement contentions. After Contour said it would address the post-HERO6 products in a separate suit, GoPro stated its position that such a suit would be precluded. Dkt. No. 321 at 10. Accordingly, Contour now seeks certainty that the New Cameras will either be recompensed in this suit because they contain technology that is essentially the same as the infringing technology or that they can be the subject of a follow-on suit because they are sufficiently different. Contour did not take "clearly inconsistent" positions, *New Hampshire*, 532 U.S. at 749–50; the facts underlying its position changed.

Moreover, Contour did not "persuade the Court" to accept its position, as GoPro argues. *See* Oppo. 10; *New Hampshire*, 532 U.S. at 750–51. The Order that GoPro relies on, among other

5

things, denied it leave to amend its invalidity contentions. That Order was clear:

> I need [not] address the parties' back-and-forth over Contour's decision not to amend its infringement contentions to add the HERO7 and HERO8 Black products, which it previously charted and served on GoPro. *See* Oppo. 6 n.4, 13 (noting that it "intends to address these products in a separate proceeding"); Reply 10 (asserting that claim splitting and issue preclusion should bar such an action). These questions are not before me.

Dkt. No. 335 at 8 n.5. Far from being "persuaded" by Contour's position—let alone relying on it to resolve any disputes—I was explicit that it was not a question properly before me. GoPro attempts to escape this reality by arguing that "[t]he Court specifically countenanced [Contour's] representation that it was not going to add new products to the case in evaluating the 'fundamental fairness' of GoPro's request to amend its invalidity contentions." Oppo. 10. Not so. I denied GoPro's motion to add several camera systems as prior art because *it* failed to show that it was diligent. Dkt. No. 335 at 7–8.

Because there has been no clearly inconsistent prior statement—and, in any event, not one I relied on—judicial estoppel does not foreclose Contour's current position.[1]

### B. Patent Local Rule 3-6

GoPro also argues that Contour failed to comply with Patent Local Rule's 3-6 requirement that "[a]mendment of the Infringement Contentions or the Invalidity Contentions may be made only by order of the Court upon a timely showing of good cause." Oppo. 8. But Contour is not seeking to amend its infringement contentions, so that Rule does not apply. Contour eventually gave up trying to get GoPro's assent to amend and decided to pursue the products in a separate action. GoPro then argued that it would not be able to do so.

I recognize that, in a sense, Contour's motion can be regarded as an attempt to do through damages what it did not seek to do through infringement contentions. I do not foreclose the possibility that, in an appropriate case, a motion like this might be denied on that basis. Courts in this district, for example, bar new infringement theories or alleged infringing products from expert reports when they are not disclosed in infringement contentions. *See, e.g.*, *Intel Corp. v. Tela*

---

[1] Even if GoPro's argument were accepted, it would likely not apply to the HERO9, which was not part of Contour's representation in that filing (because it was released later).

6

*Innovations, Inc.*, No. 3:18-CV-02848-WHO, 2020 WL 7868111, at *21 (N.D. Cal. Dec. 22, 2020), *as amended*, No. 3:18-CV-02848-WHO, 2021 WL 516529 (N.D. Cal. Feb. 11, 2021); *Fujitsu Ltd. v. Belkin Int'l, Inc.*, No. 10-CV-03972-LHK, 2012 WL 4497966, at *9–*10 (N.D. Cal. Sept. 28, 2012). The reason is generally that this is an end-run around the disclosure rules.

If Contour brought a motion to get a royalty on products that existed when the case was originally filed, the situation might be different. *Cf. Opticurrent, LLC v. Power Integrations, Inc.*, No. 17-CV-03597-EMC, 2019 WL 2389150, at *16 (N.D. Cal. June 5, 2019), *aff'd*, 815 F. App'x 547 (Fed. Cir. 2020) ("Opticurrent, however, cannot point to a single instance where the 'not colorably different' test was used to determine whether *past* royalty should be awarded on products that *already existed* when the plaintiff brought suit but were not included in the infringement contentions…"). Additionally, if Contour had been *denied* leave to add these products to its infringement contentions, I am skeptical that it could then use the avenue of an accounting or royalty to do so. *Cf. id.* ("…much less on products that the court had expressly excluded from the plaintiff's infringement claims.").

Accountings and ongoing royalties, however, are doctrines separate from the Patent Local Rules that have their own doctrinal requirements. Ongoing royalties can be imposed on previously unaccused products, as I explain below. Finding infringement on that basis would not be unfair to GoPro because, as I explain, it depends largely on the infringement already litigated and GoPro would have a full opportunity to respond. Under GoPro's theory, this established remedy would apparently never be appropriate.

The present uncertainty to Contour—and the novel posture of this motion—is largely a result of Contour's own tactical decisions. When GoPro decided not to stipulate to amendment, there was nothing stopping Contour from moving for leave to amend its infringement contentions. Instead, Contour made the choice to pursue the New Cameras in a different proceeding. That choice came with what Contour saw as the overriding benefit: a speedier trial. But it also had a tradeoff—uncertainty for Contour about its accusations of the New Cameras. After Contour signaled the course it was taking, GoPro responded that would it argue that a second suit was precluded. Even in the face of that, Contour still chose not to seek leave to amend. Instead, it

7

1  waited a year until after fact discovery was closed and while the pandemic resulted in repeated
2  postponements of the trial.

## II.   ACCOUNTING

Contour first seeks an accounting.  35 U.S.C. § 284 provides that "[u]pon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement."  It is explicit that "[w]hen the damages are not found by a jury, the court shall assess them."  35 U.S.C. § 284.  District courts have "broad discretion" to determine the method for infringement compensation.  *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1213 (Fed. Cir. 2010).

An accounting is a method for assessing damages that the jury does not assess.  *See id.*  Accountings, however, generally address the problem that there is a *time period* that the jury's determination of infringement has left out.  *See Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1380–81 (Fed. Cir. 2013).  Often, the accounting will assess "post-verdict infringement."  *Id.* at 1380.  In such a case, the jury has found that a product infringes and assesses past damages.  Because of Section 284, the court must then assess the damages that result from the infringement the jury has found but that occurs after the jury verdict.  *See id.*  Accountings may also occur "where the jury did not consider certain periods of infringing activity."  *Apple, Inc. v. Samsung Elecs. Co.*, 67 F. Supp. 3d 1100, 1118 (N.D. Cal. 2014) (internal quotation marks and citation omitted).

Contour seeks to do something different.  It seeks to assess infringement of products that were *not accused* in the suit but that it alleges infringe to the same extent already found and to calculate the damages owed on *that* infringement.  This use of an accounting appears to be novel.  I am unaware of a case in which it has been used this way, and Contour points to none.

Accountings are essentially a mechanism for assessing the amount of damages, not a substantive determination of whether an unaccused product infringes (as can be involved in an injunction or ongoing royalty).  *See, e.g.*, *Warsaw Orthopedic, Inc. v. NuVasive, Inc.*, 515 F. App'x 882 (Fed. Cir. 2012) (contrasting accountings and ongoing royalties).  Their nature is underscored by the fact that jurisdiction can lie in the Federal Circuit when a case is "final except

8

for an accounting." 28 U.S.C § 1292(c)(2). Under Contour's novel approach, a case could be appealed to the Federal Circuit and the district court could, under the guise of an accounting, find infringement for newly accused products.

Rather than acknowledge the transformation of the accounting doctrine that it proposes—from one that remedies a problem of timing to one that extends to unadjudicated products—Contour attempts to show that the doctrine already permits this maneuver. It primarily relies on a statement from *Power Integrations* that "the district court on remand shall limit the scope of its accounting to those post-verdict infringing sales, if any, *which are substantially related to the direct infringement*." *Power Integrations*, 711 F.3d at 1381 (emphasis added). To Contour, this sentence means that *unadjudicated* products can be the subject of an accounting so long as they are "substantially related" to the infringement already found. *See* Mot. 7; Reply in Support of the Mot. ("Reply") [Dkt. No. 516] 4–5. That reading takes the Federal Circuit's statement out of context. The court was instructing the district court to limit the accounting to sales "substantially related" *to the infringement already "supported by the existing record." Power Integrations*, 711 F.3d at 1381 (internal quotation marks omitted, emphasis added). Its concern was that a wider-ranging inquiry would give the prevailing party a "second bite at the apple" and turn the accounting into an "after-hours hunting license." *Id*. *Power Integrations* did not state or imply that unaccused (or, with the phrasing sometimes used for post-trial remedies, "newly accused") products could factor into the accounting. To the contrary, the opinion exclusively discusses the accounting in terms of the products found by the jury to infringe.

Contour also relies on *Finjan*. *See* Mot. 9. Like *Power Integrations*, *Finjan* dealt only with products that were accused and found to infringe, not with other products that had not been adjudicated. *Finjan*, 626 F.3d at 1212–13. And Contour cites several district court cases that performed accountings, but they all did so for the products that were actually found to infringe too. *PCT Int'l Inc. v. Holland Elecs. LLC*, No. CV-12-01797-PHX-JAT, 2015 WL 5210628, at *18 (D. Ariz. Sept. 8, 2015), *aff'd*, 668 F. App'x 367 (Fed. Cir. 2016); *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, No. 2:10CV248, 2011 WL 4899922, at *3 (E.D. Va. Oct. 14, 2011), aff'd, 694 F.3d 1312 (Fed. Cir. 2012); *Hynix Semiconductor Inc. v. Rambus Inc.*, 609 F. Supp. 2d

9

1   951, 960–61 (N.D. Cal. 2009) (awarding supplemental damages pre-*Finjan*). Despite Contour's
2   claims that limiting an accounting to accused and adjudged infringing products "is nowhere
3   supported in the case law," Reply 5, it cites no case in which one has been used in this way.
4       Contour's motion for an accounting for the New Cameras is DENIED. This order does not
5   foreclose Contour bringing a later motion for an accounting should it prevail at trial and show that
6   it is entitled to one on the products found to infringe.

**III.   ONGOING ROYALTY**

8       An ongoing royalty is one of "several types of relief for ongoing infringement that a court
9   can consider." *Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 35 (Fed. Cir. 2012).
10  Other options include injunctions, ordering parties to negotiate, and granting no relief. *Id.* Unlike
11  in accountings, the Federal Circuit has recognized that products that were not accused and found
12  to infringe can be the subject of an injunction if "the party seeking to enforce the injunction
13  . . . prove[s] both that the newly accused product [(1)] is not more than colorably different from
14  the product found to infringe and [(2)] that the newly accused product actually infringes." *TiVo
15  Inc. v. EchoStar Corp.*, 646 F.3d 869, 882 (Fed. Cir. 2011) (en banc).
16      Although "[t]he Federal Circuit has not squarely addressed the standard for evaluating
17  claims for ongoing royalties on newly accused products," several courts have concluded that this
18  colorably different test applies to ongoing royalties too. *Apple Inc. v. Samsung Elecs. Co.*, No. 12-
19  CV-00630-LHK, 2018 WL 905943, at *4–*5 (N.D. Cal. Feb. 15, 2018) (collecting cases). An
20  injunction and an ongoing royalty serve the same purpose: remedying ongoing infringement after
21  an infringement finding. *Whitserve*, 694 F.3d at 35. Because adjudged infringers cannot skirt
22  injunctions with "new products" that are, in reality, just the same infringing products in all
23  meaningful ways, they should not be able to skirt ongoing royalties under the same theory. As a
24  Federal Circuit judge sitting by designation has explained, "[a]n order basing ongoing royalty
25  payments on future sales . . . implicitly extends to any products that are not colorably different
26  from those products." *Bianco v. Globus Med., Inc.*, 53 F. Supp. 3d 929, 942 (E.D. Tex. 2014).
27  Accordingly, I join these courts in concluding that an ongoing royalty can include previously
28  unaccused, unadjudicated products to the same extent as an injunction—that is, when they meet

1  *TiVo*'s two-step test (and GoPro applies the same standard).

2  As a preliminary matter, Contour does not request a full determination about an ongoing
3  royalty. Among other things, as Contour effectively admits, there would be no way to determine
4  the royalty rate now. *See* Reply 6. Consequently, Contour moves to make certain "the scope of
5  products [that will be] covered by the ongoing royalty." *Id.* This piecemeal approach to an
6  ongoing royalty is not how it works. An ongoing royalty is an equitable remedy that is determined
7  post-verdict.

8  Contour's motion is denied for two independent reasons. First, the motion is premature.
9  While my summary judgment order found that the accused products infringed claim 11 of the '954
10 Patent, that does not mean that Contour is entitled to judgment in its favor. GoPro will seek to
11 show at trial that the '954 Patent is invalid. *See, e.g.*, Dkt. No. 476 at 2 (Joint Pretrial Conference
12 Statement laying out GoPro's invalidity position). If GoPro is successful, Contour will not be
13 entitled to equitable relief.

14 Second, despite its strong argument that GoPro's own positions foreclose the issue,
15 Contour has not met its burden to show that the New Cameras should be subject to an ongoing
16 royalty based on infringement of claim 11 on the record as it stands (though it seems possible that
17 it will be able to do so later).

18 The *TiVo* inquiry is intensely factual. The court must first look to "those aspects of the
19 accused product that were previously alleged to be, and were a basis for, the prior finding of
20 infringement, and the modified features of the newly accused product." *TiVo*, 646 F.3d at 882.
21 Then, "[w]here one or more of those elements previously found to infringe has been modified, or
22 removed, the court must make an inquiry into whether that modification is significant." *Id.* The
23 court next determines whether the differences are "significant." *Id.* This, in turn, "is much
24 dependent on the nature of the products at issue." *Id.* But a court cannot stop at the products
25 themselves, it "must also look to the relevant prior art, if any is available, to determine if the
26 modification merely employs or combines elements already known in the prior art in a manner
27 that would have been obvious to a person of ordinary skill in the art at the time the modification
28 was made." *Id.* A court may require "expert testimony in making the determination" whether a

1   modification is obvious. *Id.* at 882–83. And the analysis goes further still, "tak[ing] account of
2   the policy that legitimate design-around efforts should always be encouraged as a path to spur
3   further innovation." *Id.* at 883.

4       At the end of this analysis, the court has completed step one. If the court finds that the
5   products are not more than colorably different, it moves to step two. In that analysis, it must
6   determine whether the new product "continues to infringe the relevant claims." *Id.* "[T]he court is
7   required to evaluate the modified elements of the newly accused product against the asserted
8   claim, on a limitation by limitation basis, to ensure that each limitation continues to be met." *Id.*
9   This infringement analysis is just like any infringement analysis, with all the complexity and fact-
10  intensive analysis it can entail.

11      This level of analysis is necessary because "the modifying party generally deserves the
12  opportunity to litigate the infringement question at a new trial." *Arbek Mfg., Inc. v. Moazzam*, 55
13  F.3d 1567, 1570 (Fed. Cir. 1995). Watering down the ongoing royalty doctrine, then, would risk
14  holding parties accountable for behavior that was not adjudged infringement and deprive them of
15  the right to a trial.

16      Contour fails to provide most of the fundamental analysis required. Virtually no discovery
17  has taken place on the New Cameras and no meaningful discovery on them has been presented to
18  me. There are no analyses of the accused technology in the New Cameras. There are no expert
19  reports, let alone responses to those reports. There is no technical analysis comparing the
20  infringing products with the New Cameras. Contour does not attempt a limitation-by-limitation
21  analysis and, indeed, it is unclear whether it could perform one with only publicly available
22  information.[2]

23      Instead of the careful analysis that *TiVo* calls for, Contour argues that the New Cameras'
24  infringement is a foregone conclusion because GoPro has admitted that the New Cameras are
25  essentially the same as the infringing products. Mot. 8. It contends that GoPro has admitted that
26  the New Cameras are "essentially the same" as the infringing products when it argued that

---

[2] Because GoPro largely stonewalled discovery and Contour did not add the products to this suit or move to compel, it makes sense that none of this is on the record yet.

Contour is precluded from accusing them in a separate action. *Id.* Contour's argument is that a valid preclusion defense requires showing that "the accused device in the action before the court is 'essentially the same' as the accused device in a prior action between the parties that was resolved by a judgment on the merits." *Acumed LLC v. Stryker Corp.*, 525 F.3d 1319, 1324 (Fed. Cir. 2008). "Accused devices are 'essentially the same' where the differences between them are merely 'colorable' or 'unrelated to the limitations in the claim of the patent.'" *Id.* That is also the first step under *TiVo*. Indeed, in developing that preclusion test, the Federal Circuit explicitly drew from the colorably different injunction test discussed above. *See id.*

GoPro disputes that it has admitted that the New Cameras are essentially the same as the infringing products. It first argues that it has simply "reserved" its ability to raise the argument. Oppo 20–21. That is not what it has represented. It has been explicit that Contour cannot bring the second suit because of preclusion. Dkt. No. 321 at 10 ("What [Contour] proposes . . . should be legally barred through the doctrines of claim splitting and issue preclusion."). It also attempts to pass off its arguments on preclusion as being based only on *Contour's arguments* that the New Cameras are essentially the same as the infringing products, not its own admissions. Oppo. 21. This would place the parties in an endless loop, each basing its position on the other's purported admission.

GoPro's attempt to maintain some sort of agnosticism on this—that it can claim the products are possibly different in suit one but not suit two—is not particularly convincing.[3] It has argued that Contour will be precluded from suing over the New Cameras. While it is Contour's burden today to show the products meet the *TiVo* test, GoPro will bear the burden on preclusion in

---

[3] Although GoPro seeks to present Contour as doing the same sort of "riding the fence," Oppo. 22, it is not. Contour's position in both suits would be consistent. It argues that the products are essentially the same but that, if they are found not to be, they can be the subject of a second suit. Further, it contends that a second suit would be proper in any event because the claims on the New Cameras arose after the filing of the first suit, an argument that does not depend on similarity. GoPro, in contrast, attempts to have it both ways: that the New Cameras are in some way not the same (it never takes a firm position on how) but that they nonetheless will be precluded on the basis of being essentially the same. Indeed, its struggle to find a coherent position that can accomplish both goals is on display from its attempts to recast its position. As explained, it initially argued there would be preclusion, now it seeks to present that position as just a "reserv[ation]" of rights, and yet it still does not point to any concrete differences in the products despite opposing the present motion.

a second suit. *Acumed*, 525 F.3d at 1324. Because Contour has not met its burden on *TiVo* step two, however, I do not need to decide whether GoPro's past positions alone are sufficient to meet step one.

Contour appears to argue that an analysis of actual infringement (step two) is not required because the products are not more than colorably different (step one) Mot. 8; Reply 6–9. But the Federal Circuit has made plain that there is a difference between products being not more than colorably different and products infringing, otherwise the two *TiVo* steps would collapse into one. *See TiVo*, 646 F.3d at 882–883 ("[W]hen a court concludes that there are no more than colorable differences between the adjudged infringing product and modified product, a finding that the newly accused product continues to infringe the relevant claims is *additionally essential*.") (emphasis added). A finding for the patentee on step one does not guarantee a victory at step two. *See, e.g.*, *Apple*, 2018 WL 905943, at *9–*13 (finding that a product was not more than colorably different but also did not infringe). Contour makes no attempt to compare the New Cameras to claim 11 "on a limitation by limitation basis, to ensure that each limitation continues to be met," *TiVo*, 646 F.3d at 883; to analyze infringement in any usual way; or to address differences between the products. (GoPro similarly does not engage with this type of analysis as would a party in a usual ongoing royalty dispute. The burden, however, does not rest with it.)

Contour also contends that several statements by GoPro witnesses in depositions prove infringement. Mot. 8. GoPro's founder and CEO, Nick Woodman, was asked in his January 2020 deposition about the "functionality of generating higher- and lower-quality video streams, saving the high-quality stream to storage and streaming the lower-quality video to an external device." Dkt. No. 493-8 at 111:13–112:6. He responded "Yes. The those cameras [the HD HERO2 and HERO3] could do that" and "ultimately we realized that this functionality with the HD HERO2 and in the HD HERO3 after it and every subsequent GoPro since." *Id.* He then was asked to reiterate that every camera released since the HERO3 has this dual-stream capability. He stated, "Yes. Each of the GoPro's since -- each GoPro camera since the HD HERO2 has had that functionality." *Id.* at 112:20–113:23. A day later, GoPro's in-house counsel was deposed as a corporate representative and was asked, "So since learning of the patents in suit in January 2015,

1    has GoPro attempted to design or redesign its products to avoid infringement of the patents in
2    suit?" The in-house counsel responded, "So GoPro has not designed around the patents in suit
3    because the claim scope has been in a lot of flux and there has been a lot of movement in the
4    PTAB and claim construction." *Id.* at 216:14–25.

5    To Contour, these statements show that (1) the New Cameras practice the accused
6    functionality (because they came after the HERO3) and (2) GoPro has not designed around it. I
7    disagree that this compels a finding of infringement. These few statements are far from the robust
8    analysis the Federal Circuit has called for and that courts applying ongoing royalties or enforcing
9    injunctions have performed. To reiterate, this sort of analysis is a stand-in for the general rule that
10   a modified product must be found to infringe in a new trial. *Arbek*, 55 F.3d at 1570. Sometimes,
11   it will make sense to not hold a trial because the issue was effectively resolved already and the
12   infringer cannot escape the judgment with some immaterial modification. But to find that,
13   Contour is required to demonstrate actual infringement. These admissions from GoPro officers—
14   while plausibly indicative of infringement—do not alone meet Contour's burden to prove it. This
15   is especially true because GoPro's written responses expressly limit that testimony *to the accused*
16   *products*. Oppo. Ex 7 at 39. Accordingly, there is a dispute over the correct interpretation of this
17   testimony. It is at least plausible to think that GoPro's in-house counsel, in particular, was saying
18   that they had not designed around the patents-in-suit when it came to the accused products, not to
19   other unaccused products. And Woodman is not a designated technical expert or legal counsel. In
20   any event, I cannot find patent infringement based solely on two snippets of disputed non-expert
21   testimony. The testimony, moreover, presumably does not apply to the HERO9 because it was
22   released after the testimony was given, so it would not help Contour add that camera in any event.

23   This sparse, contested showing at this pre-trial stage is insufficient. Much of the trouble
24   with the present motion is that the parties simply do not present normal evidence on infringement.
25   But this decision should not be taken as an indication that Contour is foreclosed from moving for
26   post-trial remedies, including an ongoing royalty, on the New Cameras. Moreover, if GoPro were
27   to affirmatively argue in a second suit that Contour is precluded, it seems impossible for it to
28   avoid a no colorable-differences finding in Contour's favor.

15

1     If Contour brings a renewed motion for an ongoing royalty, it must demonstrate step one and actual infringement with sufficient evidence and a fulsome analysis. One added benefit of raising this issue at a more appropriate future stage with more comprehensive evidence—as is the norm—is that GoPro will not be able to shroud itself in positions like those it has taken, but instead will (if it opposes) present a theory of noninfringement based on evidence and/or seek to show why Contour's evidence-based infringement theory does not hold up.

GoPro argues that it would be fundamentally unfair to permit Contour to seek damages on these products because it chose not to pursue them earlier. I agree that Contour's actions have not been ideal. But the prejudice to GoPro is not so extreme as it says. It is established Federal Circuit law that Contour has the right to seek an injunction against later-released, unadjudicated products, and a court can grant it if the *TiVo* test is met. I hold that the same applies to an ongoing royalty. As a result, GoPro faces the situation that any accused infringer does: If it loses at trial, the patentee has the chance to prove that unaccused products released later than the infringing ones should be subject to equitable remedies.

## CONCLUSION

The motion for an accounting or ongoing royalty is DENIED WITHOUT PREJUDICE. Contour is not foreclosed from raising it again in an appropriate posture with appropriate support.

**IT IS SO ORDERED.**

Dated: March 17, 2021

William H. Orrick
United States District Judge