UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONTOUR IP HOLDING, LLC,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>GOPRO, INC.,<br><br>　　　　Defendant. | Case No. 3:17-cv-04738-WHO<br>Case No. 3:21-cv-02143-WHO<br><br>**ORDER GRANTING MOTION FOR LEAVE TO FILE AMENDED COMPLAINT**<br><br>Re: Dkt. Nos. 559, 576 |

Defendant GoPro, Inc. ("GoPro") asserted an affirmative defense of inequitable conduct against plaintiff Contour IP Holdings, LLC ("Contour") in the second of these consolidated patent infringement suits. I previously granted Contour's motion to strike the defense but allowed GoPro to seek leave to amend. GoPro's proposed amended complaint now adequately pleads the defense and its motion for leave to amend is granted.

## BACKGROUND

This Order recites the background facts only to the extent they bear on the single affirmative defense at issue.

In the midst of litigating a long-running patent infringement suit, Contour filed a second suit (which was consolidated with the first) asserting the same claims against new GoPro products. *See* 2143 Dkt. No. 1.[1] In that second suit, GoPro put forward (among others) an affirmative defense of inequitable conduct. 2143 Dkt. No. 19 ¶¶ 138–47. The allegations are described below as they become relevant to the analysis.

In September 2021, I granted Contour's motion to strike the affirmative defense,

---

[1] References to the docket are to case 3:17-cv-4738 unless otherwise noted; references to the other docket begin "2143."

explaining that GoPro had failed to allege the "who" of the inequitable conduct with particularity. Order on Motion to Strike, Motion for Judgment on the Pleadings, and Claim Construction ("Prior Order") [Dkt. No. 555] 8–11. I stated that, "[r]ather than going through a new filing followed by another potential motion to dismiss, if GoPro wishes to amend the Answer, it must file a motion seeking leave to amend within 21 days (and attach the amended Answer it would file as an exhibit) with the briefing to focus on whether the defense is adequately pleaded." *Id.* 8 (emphasis omitted). GoPro filed its motion for leave to amend on October 4, 2021, arguing that its proposed amended answer adequately states the affirmative defense. *See* Motion for Leave to File First Amended Answer ("Mot.") [Dkt. No. 559].

## LEGAL STANDARD

### I. LEAVE TO AMEND

Federal Rule of Civil Procedure ("FRCP") 15(a) provides that a "party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1). But "[i]n all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." *Id.* 15(a)(2).

A court considers five factors in determining whether to grant leave to amend: "(1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment; and (5) whether plaintiff has previously amended his complaint." *In re Western States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 738 (9th Cir. 2013) (quoting *Allen v. City of Beverly Hills,* 911 F.2d 367, 373 (9th Cir. 1990)). These factors do not "merit equal weight," and "it is the consideration of prejudice to the opposing party that carries the greatest weight." *Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1052 (9th Cir. 2003). "Absent prejudice, or a strong showing of any of the remaining [] factors, there exists a *presumption* under Rule 15(a) in favor of granting leave to amend." *Id.*

## II. FAILURE TO STATE AN AFFIRMATIVE DEFENSE

### A. Generally

A district court must dismiss an affirmative defense if it fails to state a claim upon which relief can be granted. *See Thorium Cyber Sec., LLC v. Nurmi*, No. 3:19-CV-07669-WHO, 2020 WL 7260507, at *8 (N.D. Cal. Dec. 10, 2020) (explaining that the same FRCP 12(b)(6) standard that applies to claims should be applied to affirmative defenses). To survive a Rule 12(b)(6) motion to dismiss, the party must allege "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A defense is facially plausible when the party pleads facts that "allow the court to draw the reasonable inference that the [other party] is liable for the misconduct alleged." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In deciding whether the party has stated an affirmative defense, the Court accepts the allegations as true and draws all reasonable inferences in favor of the party. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *See In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

### B. Inequitable Conduct Under Rule 9(b)

FRCP 9(b) imposes a heightened pleading standard when an affirmative defense alleges fraud or mistake. Federal Circuit law governs "whether inequitable conduct has been pleaded with particularity under Rule 9(b)." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326 (Fed. Cir. 2009). Under FRCP 9(b), to state a claim for fraud, a party must plead with "particularity the circumstances constituting the fraud." "[T]he 'circumstances' in Rule 9(b) must be . . . pleaded in detail—this means the who, what, when, where, and how of the alleged fraud." *Exergen*, 575 F.3d at 1327 (some internal quotation marks and alteration omitted). However, "[m]alice, intent, knowledge, and other conditions of mind of a person may be averred generally," Fed. R. Civ. P. 9(b), including knowledge of the withheld information and specific intent to deceive, *Exergen*, 575 F.3d at 1327.

**DISCUSSION**

**I.      MOTION FOR LEAVE TO AMEND**

As an initial matter, Contour offers no argument on most of the relevant factors. It shows no undue delay, undue prejudice, or bad faith. *See Western States*, 715 F.3d at 738. GoPro timely filed its motion to amend near the outset of the second suit based on specific pleading deficiencies identified in response to a motion challenging the adequacy of that pleading. And this is GoPro's first attempt at amendment. *See id.*

The issue is whether GoPro has cured its previous pleading deficiencies regarding the inequitable conduct defense or whether it has failed to do so and that amendment would be "futile." *See Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995) ("Futility of amendment can, by itself, justify the denial of a motion for leave to amend."). "If no amendment would allow the complaint to withstand dismissal as a matter of law, courts consider amendment futile." *Kroessler v. CVS Health Corp.*, 977 F.3d 803, 815 (9th Cir. 2020).

"Inequitable conduct is an equitable defense to patent infringement that, if proved, bars enforcement of a patent." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1285 (Fed. Cir. 2011) (en banc). The defendant must show that "(1) an individual associated with the filing and prosecution of a patent application made an affirmative misrepresentation of a material fact, failed to disclose material information, or submitted false material information; and (2) the individual did so with a specific intent to deceive the [Patent and Trademark Office ("PTO")]." *Exergen*, 575 F.3d at 1327 n.3. As noted, inequitable conduct must be pleaded with particularity under Rule 9(b). *Id.* at 1326–27.

GoPro charges three individuals with inequitable conduct: two inventors named on the patents, Laura O'Donnell and Richard Mander, and Contour's chief technology officer, Jason Green. First Amended Answer and Counterclaims ("FAAC") [Dkt. No. 559-2] ¶ 139. As a general matter, GoPro alleges that O'Donnell, Mander, and Green misled the PTO by failing to disclose that the components of a third-party company, Ambarella, were used in the patented technology and that Ambarella's employees had helped develop it. *See id.* More specifically, the Ambarella components are alleged to perform a "dual-streaming feature" that is also at the heart of

4

the patents. *Id.* ¶ 140. Ambarella allegedly provided the processor and information to accomplish that feature to the named inventors. *Id.* The inventor declaration submitted during the prosecution identifies O'Donnell and Mander as the only inventors. *Id.* ¶ 144. According to GoPro, that claim was false because "Ms. O'Donnell and Mr. Mander knew that their claimed invention was actually developed either exclusively by or in collaboration with Ambarella and its engineers and thus that they were either not the inventors or not the sole inventors of the claimed invention." *Id.*

GoPro asserts that Green displayed a "demo unit" to the PTO at a meeting during the application process. *Id.* ¶ 145. That "demo unit," GoPro claims, included an Ambarella chip. *Id.* Green never disclosed this to the PTO. *Id.* ¶¶ 145, 148. Additionally, the Ambarella chip's dual-streaming capability is, according to GoPro, the point of novelty on which Contour relies. *Id.* ¶ 146. GoPro alleges that the omissions by all three were done with intent to deceive the PTO. *Id.* ¶¶ 144, 148. And it alleges that, but for the omissions, the PTO would not have granted the patents due to improper inventorship or that the Ambarella chip was prior art, yet was used to overcome prior art rejections. *Id.* ¶ 149.

**A. Inventorship**

First, Contour asserts that there can be no claim based on incorrect inventorship because both parties agree that the Ambarella chips are prior art. Opposition to the Mot. ("Oppo.") [Dkt. No. 570] 5–6. Even if individuals associated with Ambarella contributed the chips to the patented technology, Contour contends, they cannot be co-inventors as a matter of law: A "contribution of information in the prior art cannot give rise to joint inventorship because it is not a contribution to conception." *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1362 (Fed. Cir. 2004).

Contour made this same argument before and I rejected it, explaining that "GoPro does not *only* allege that the inequitable conduct was an incorrect identification of inventorship." Prior Order 9 (emphasis added). Instead,

> the inequitable conduct defense here is materially different than a pure incorrect-inventorship claim. GoPro's allegation is that Contour was required to inform the PTO of the alleged use of and reliance on the Ambarella chips, not just that it was required to name other inventors. Contour did so, on GoPro's account, "to overcome prior art rejections.

*Id.* (citations omitted).

5

Though I reject Contour's argument, I note that GoPro's response suggests an attempt to have it both ways, that it simultaneously is and is not pursuing a pure inventorship claim. GoPro first argues, as I hold above, that I already addressed this issue. *See* Reply ISO Mot. ("Reply") [Dkt. No. 578] 2. But its next paragraph argues that it is permitted to pursue alternative theories. Its third and final argument on this point contends that it is irrelevant whether the Ambarella chips are prior art because the Ambarella inventors would nonetheless have made contributions to the inventions. *Id.* 2–3. This is doubly confounding because GoPro "certainly contends that Ambarella's camera processors . . . are prior art." *Id.* 2.

In any event, if GoPro is attempting to pursue a pure incorrect inventorship theory, then dismissal on the pleadings is still unwarranted. Whether something is "information in the prior art" is generally a contextual inquiry that requires an evidentiary record. *Cf. Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*, 876 F.3d 1350, 1358 (Fed. Cir. 2017) (discussing many fact-found factors needed to make obviousness determination based on prior art). So it is here. If *all* that the Ambarella employees contributed were chips known in the prior art, it seems impossible to call them co-inventors. *Eli Lilly*, 376 F.3d at 1362. But GoPro alleges that Contour "relied on Ambarella for the idea, demonstration, and understanding of the camera processors it relied on in prosecution to overcome prior art rejections and in later *inter partes* review proceedings," FAAC ¶ 146, and the named inventors received not only the processors but "image processing information" from them, *id.* ¶ 140. As a result, it appears plausible that Ambarella employees "contribute[d] in some significant manner to the conception or reduction to practice of the invention, (2) ma[de] a contribution to the claimed invention that is not insignificant in quality, . . . and (3) d[id] more than merely explain to the real inventors well-known concepts and/or the current state of the art." *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1351 (Fed. Cir. 1998). If so, they can be joint inventors. *Id.*; *see also Fina Oil & Chem. Co. v. Ewen*, 123 F.3d 1466, 1473 (Fed. Cir. 1997) ("This provision sets no explicit lower limit on the quantum or quality of inventive contribution required for a person to qualify as a joint inventor.").

### B. Non-Disclosure

Next, Contour takes aim at GoPro's argument that, aside from the inventorship issue,

O'Donnell, Mander, and Green were required to disclose the use and presence of Ambarella technology to the PTO—the argument I previously found GoPro to be making. *See* Prior Order 8. In the Prior Order, I found that GoPro had not adhered to Rule 9(b)'s requirements because it failed at the outset to sufficiently identify "who" was charged with inequitable conduct and on what basis. *Id.* 9–11.

### i. O'Donnell and Mander

Contour first argues that GoPro has not identified the "what" of the inequitable conduct by O'Donnell and Mander. Oppo. 7. I disagree. GoPro pleads that O'Donnell and Mander failed to disclose the use of Ambarella technology "in order to overcome prior art rejections." FAAC ¶ 139.

Next, Contour asserts that GoPro has not identified the "when" and "where" of non-disclosure. Oppo. 8. It is clear from the proposed FAAC, however, that GoPro's charge of inequitable conduct is about a failure to disclose information to the PTO as it considered the patent. It is unclear what more a party alleging inequitable conduct based on an *omission* during the examination process could plead.[2] And "inventors, patent owners, and attorneys associated with the filing or prosecution of a patent application have an affirmative and continuing duty to disclose material information to the PTO." *Evident Corp. v. Church & Dwight Co.*, 399 F.3d 1310, 1315–16 (Fed. Cir. 2005) (citations omitted). The "when" and "where" were, accordingly, during the prosecution before the PTO.

Contour also argues that GoPro does not allege the "how" and "why" of the inequitable conduct by O'Donnell and Mander. Oppo. 8. Its substantive argument, however, is about the materiality of the omission. *See id.* 8–9. "Information is material if a reasonable examiner would have considered it important to the patentability of a claim." *Regents of the Univ. of California v.*

---

[2] I and other judges have recognized this reality about omission-based pleading under Rule 9(b), albeit in the consumer protection context. *See Anderson v. Apple Inc.*, 500 F. Supp. 3d 993, 1006, 1018 (N.D. Cal. 2020) (citing authorities and explaining that, "[i]n the context of an omission-based fraud or misrepresentation claim, a plaintiff will not be able to specify the time, place, and specific content of an omission as would a plaintiff in a false representation claim . . . . Because such a plaintiff is alleging a failure to act instead of an affirmative act, the plaintiff sometimes cannot point out the specific moment when the defendant failed to act." (internal quotation marks, citations, and alteration omitted)).

7

*Eli Lilly & Co.*, 119 F.3d 1559, 1570 (Fed. Cir. 1997). Here, drawing all reasonable inferences in GoPro's favor, it is plausible that a reasonable examiner would consider the omission important to patentability. GoPro alleges that, had the information been revealed, "the USPTO would have rejected the applications at least under 35 U.S.C. § 102(f) on the basis of improper inventorship." FAAC ¶ 149. It alleges that the PTO would have rejected them under "§§ 102 or 103 on the basis that the Ambarella chip was known prior art that performed the claim elements that the applicant identified in prosecution and relied on expressly to overcome prior art rejections." *Id.* And it alleges that "had the USPTO known of Ambarella's (or its employees') status as a joint owner, it would have rejected applicants' terminal disclaimers on the basis that the terminal disclaimers did not accurate represent the ownership interest in the applications." *Id.* Two of these are derivative of the inventorship argument; because I find that argument to be plausibly pleaded, these explanations for materiality survive at this stage. The third purported reason—that the undisclosed use of Ambarella components overcame past prior art rejections—does not depend on the inventorship theory. It too is plausibly material: If GoPro is correct that the dual-streaming is the sole point of novelty or that Ambarella components were necessary for approval over the prior art, a reasonable patent examiner would have rejected the patent without them as non-novel or anticipated.

Contour also claims that GoPro has not "identif[ied] which claims, and which limitations in those claims, the withheld references are relevant to and where in those references the material information is found." *Exergen*, 575 F.3d at 1329. But the FAAC lists specific claim limitations that it contends actually stem from the Ambarella components. *See* FAAC ¶ 141. It is true that GoPro states that they are examples. <u>Under Rule 9(b) it is required to be particular; GoPro is limited to this list going forward unless it seeks leave to amend to add more</u>.

Finally, Contour argues that "[t]he complaint also must adequately allege that the withheld information was non-cumulative of the prior art before the examiner." *Certainteed Gypsum, Inc. v. Pac. Coast Bldg. Prod., Inc.*, No. 19-CV-00802-LHK, 2021 WL 1405477, at *7 (N.D. Cal. Apr. 14, 2021) (citing *Exergen*, 575 F.3d at 1329). But that requirement is about inequitable conduct based on omitting *prior art*. *See id.* GoPro's theory is instead that Contour withheld that the

novelty of its invention depended on undisclosed technology from third parties that (allegedly) was already known. Contour has not shown that the "non-cumulativity" rule has any application to these facts.

### ii. Green

Contour argues that the allegations about Green "fail for the same reasons." Oppo. 9. To that extent, I reject the arguments as well. In an arguably separate point, Contour contends that GoPro has failed to identify which claims and limitations the reference applies to, but (again) it is the same allegedly withheld technology as above and the same limitations are at issue. *See* FAAC ¶ 141 (listing limitations). And Contour asserts that "GoPro does not cite a single inequitable conduct case (or even invalidity case) based on a demonstration performed to the patent office," Oppo. 9, but I see no reason that should matter and Contour has pointed to none. Inequitable conduct exists when there is a failure to disclose material information and specific intent to deceive the PTO. *Exergen*, 575 F.3d at 1327 n.3. Contour has presented no authority limiting the failure to disclose to written filings as opposed to the in-person demonstration at issue here.

## II. MOTION TO SEAL

GoPro moves to seal several lines in its reply and three exhibits based on confidentiality designations made by Contour and Ambarella. *See* Dkt. No. 576. Ambarella, which has submitted a supporting declaration, seeks to seal testimony from the deposition of its cofounder describing various aspects of its technology. The redactions in the briefing are narrowly tailored; were not material to resolving the motion; and Ambarella has met the "compelling-reasons" standard by showing that the information is in the nature of valuable, confidential technological information. *See Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006); Dkt. No. 582 (sworn declaration). To this extent, the motion is granted.

Contour's designations cover deposition testimony by O'Donnell, but it failed to file a supporting declaration justifying the sealing. *See* Civ. L.R. 79-5(f). The motion is denied to the extent it covers those designations; GoPro shall file a version of its reply and exhibit F without these redactions within seven days.

**CONCLUSION**

The motion for leave to file a first amended answer is GRANTED.

**IT IS SO ORDERED.**

Dated: November 8, 2021



William H. Orrick
United States District Judge