UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONTOUR IP HOLDING, LLC, | Case No.  3:17-cv-04738-WHO |
| Plaintiff, | Case No.  3:21-cv-02143-WHO |
| v. | **ORDER ON MOTIONS FOR SUMMARY JUDGMENT AND TO EXCLUDE** |
| GOPRO, INC., | Re: Dkt. Nos. 606, 607, 608, 609, 610, 611, |
| Defendant. | 612, 613, 624, 627, 628, 639, 641, 643, 659 |

In these consolidated cases, plaintiff Contour IP Holding, LLC ("Contour"), accuses defendant GoPro, Inc. ("GoPro"), of patent infringement related to point-of-view video cameras. The parties intensively litigated the initial case for years.  Soon before trial, Contour filed the second suit that asserted the same claims of the same patents against several new GoPro products. As a result, the cases are now at their second round of summary judgment and *Daubert* motions.

Both parties seek summary judgment on several issues, but this Order addresses only one: GoPro's motion for summary judgment that the asserted claims are invalid because they cover patent-ineligible subject matter.  That motion is granted (and the other motions are denied as moot).  As I explain, the asserted claims are directed at unpatentable subject matter—an abstract idea executed in a generic environment.

It appears that this ruling settles all claims and counterclaims.  The Pre-trial Conference is VACATED.  If either party believes there is a claim or counterclaim that this Order does not resolve, they should file a notice on the docket within ten days of this Order's issuance. Otherwise, at that time, I will enter judgment in both cases for GoPro.

## BACKGROUND

I have discussed these cases extensively in many past orders.  Here, I only discuss facts

1    necessary to understand the resolution of this issue.

2        Contour originally filed this suit in 2017.  Dkt. No. 1.[1]  It filed a second case in 2021 that

3    asserted the same claims of the same patents against more recent GoPro products.[2]  *See* 2143 Dkt.

4    No. 1 ("Compl."). I consolidated the cases.  Dkt. No. 532.  The patents-in-suit concern point-of-

5    view digital video cameras.  Contour asserts Claim 11 of U.S. Patent No. 8,890,954 ("the '954

6    Patent") and Claim 3 of U.S. Patent No. 8,896,694 ("the '694 Patent").  *See* Compl. ¶¶ 78–123.

7        Claim 11 of the '954 patent, which the parties treat as representative, is as follows:

8    11. A portable, point of view digital video camera, comprising:

9        a lens;

10       an image sensor configured to capture light propagating through the lens and
         representing a scene, and produce real time video image data of the scene;

11
12       a wireless connection protocol device configured to send real time image content
         by wireless transmission directly to and receive control signals or data signals by
13       wireless transmission directly from a personal portable computing device executing
         an application; and

14       a camera processor configured to:

15           receive the video image data directly or indirectly from the image sensor,

16           generate from the video image data a first image data stream and a second
17           image data stream, wherein the second image data stream is a higher quality
             than the first image data stream,

18           cause the wireless connection protocol device to send the first image data
19           stream directly to the personal portable computing device for display on a
             display of the personal portable computing device, wherein the personal
20           portable computing device generates the control signals for the video
             camera, and wherein the control signals comprise at least one of a frame
21           alignment, multi-camera synchronization, remote file access, and a
             resolution setting, and at least one of a lighting setting, a color setting, and
22           an audio setting,

23           receive the control signals from the personal portable computing device,
24           and

25   _____

26   [1] References to the docket are to case 3:17-cv-4738 unless otherwise noted; references to the
     docket in case 3:21-cv-2143 are preceded by "2143."

27   [2] As explained in detail in a prior order, Contour could have attempted to secure remedies on those
     products (even though they were not originally accused) after trial, as parties often do, instead of
28   filing a new suit.  *See* Dkt. No. 524.

                                                    2

United States District Court
Northern District of California

1

2

adjust one or more settings of the video camera based at least in part on at least a portion of the control signals received from the personal portable computing device.

3

2143 Dkt. No. 1-1 ("'954 Patent"), cl. 11.  Claim 3 of the '694 patent recites a "point of view

4

digital camera *system*."  2143 Dkt. No. 1-2 cl. 3 (emphasis added).  But, as explained below,

5

Claim 11 is representative of both for present purposes.

6

In the initial case, I conducted claim construction in July 2018.  *See* Dkt. No. 251.  Based

7

on those constructions, I granted partial summary judgment to Contour that GoPro's products

8

infringed Claim 11.  *See* Dkt. No. 445.  The case was set to proceed to trial but was stalled

9

multiple times due to the COVID-19 pandemic.  In March 2021, I denied Contour's motion for an

10

accounting or ongoing royalty to add the new products to the suit, which led to it filing the second

11

suit.  Dkt. No. 524.  In the second suit, I conducted claim construction in September 2021.  Order

12

on Motion to Strike, Motion for Judgment on the Pleadings, and Claim Construction ("MJP

13

Order") [Dkt. No. 555].  Relevant here, I also denied GoPro's motion for judgment on the

14

pleadings that the patents-in-suit claimed unpatentable subject matter.  *See id.*  That decision was

15

based on the pleadings; I wrote that "GoPro is not foreclosed from raising this argument again at

16

summary judgment."  *Id.* 16.

17

**LEGAL STANDARD**

18

Summary judgment on a claim or defense is appropriate "if the movant shows that there is

19

no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

20

law."  Fed. R. Civ. P. 56(a).  In order to prevail, a party moving for summary judgment must show

21

the absence of a genuine issue of material fact with respect to an essential element of the non-

22

moving party's claim, or to a defense on which the non-moving party will bear the burden of

23

persuasion at trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has

24

made this showing, the burden then shifts to the party opposing summary judgment to identify

25

"specific facts showing there is a genuine issue for trial."  *Id.*  The party opposing summary

26

judgment must then present affirmative evidence from which a jury could return a verdict in that

27

party's favor.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 257 (1986).

28

On summary judgment, the Court draws all reasonable factual inferences in favor of the

United States District Court
Northern District of California

1   non-movant.  *Id.* at 255.  In deciding a motion for summary judgment, "[c]redibility

2   determinations, the weighing of the evidence, and the drawing of legitimate inferences from the

3   facts are jury functions, not those of a judge."  *Id.*  However, conclusory and speculative testimony

4   does not raise genuine issues of fact and is insufficient to defeat summary judgment.  *See*

5   *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

### DISCUSSION

6

7        The parties raise many issues in their motions for summary judgment and GoPro's motion

8   to exclude Contour's damages expert.  I conclude that GoPro has shown that the claims at issue

9   are invalid because they claim unpatentable subject matter.  Accordingly, its motion for summary

10  judgment is granted on that ground, resolving the cases.  The remaining motions are denied as

11  moot.

12  **I.    GOPRO'S MOTION FOR SUMMARY JUDGMENT**

13       35 U.S.C. § 101 provides that a person can patent "any new and useful process, machine,

14  manufacture, or composition of matter, or any new and useful improvement thereof."  But "laws

15  of nature, natural phenomena, and abstract ideas are not patent-eligible because they represent the

16  basic tools of scientific and technological work."  *Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d

17  1253, 1257 (Fed. Cir. 2017) (internal quotation marks and citation omitted).  In *Alice Corporation*

18  *Pty. v. CLS Bank International*, 573 U.S. 208 (2014), and *Mayo Collaborative Servs. v.*

19  *Prometheus Lab'ys*, Inc., 566 U.S. 66 (2012), the Supreme Court clarified the two-step framework

20  for determining whether patents claim this type of ineligible subject matter.  At the first step, the

21  court asks whether the asserted claim is "directed to" patent-ineligible subject matter; at the

22  second, the court asks whether the claim elements add enough to transform the nature of the claim

23  into something patent-eligible.  *See TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1292 (Fed. Cir.

24  2020) (summarizing test).  Because "[a]t some level, all inventions embody, use, reflect, rest upon,

25  or apply laws of nature, natural phenomena, or abstract ideas[,] . . . an invention is not rendered

26  ineligible for patent simply because it *involves* an abstract concept."  *Alice*, 573 U.S. at 217

27  (internal quotation marks, alteration, and citation omitted) (emphasis added).  Certain

28  "*applications*" of those concepts can be made "to a new and useful end" and be patentable.  *Id.*

United States District Court
Northern District of California

(internal quotation marks and citations omitted) (emphasis added).  Patent eligibility under Section 101 is a question of law that may involve subsidiary factual determinations and can be determined at summary judgment under usual summary-judgment principles.  *See Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018).

### A.  Step One

At the first step of the *Alice* framework, courts must "determine whether the claims at issue are directed to a patent-ineligible concept."  *Alice*, 573 U.S. at 218.  Accordingly, the court must "articulate with specificity what the claims are directed to and ask whether the claims are directed to an improvement to . . . functionality versus being directed to an abstract idea."  *Visual Memory*, 867 F.3d at 1258 (internal quotation marks and citations omitted).  The Federal Circuit has instructed that this inquiry homes in on "what the patent asserts to be the focus of the claimed advance over the prior art."  *TecSec*, 978 F.3d at 1292.  (internal quotation marks and citations omitted).  The court must "focus on the language of the Asserted Claims themselves, considered in light of the specification" and avoid "overgeneralizing" those claims or stating them at too "high [a] level of abstraction."  *Id.* (internal quotation marks and citations omitted).

As I have previously explained, "under well-settled law, that the claim recites a mechanical device is not determinative of whether it is in fact directed to an abstract idea."  MJP Order 14 (citing *Yu v. Apple Inc.*, 1 F.4th 1040, 1044 & n.2 (Fed. Cir. 2021)).  In *Yu*, for instance, the claim recited an "improved digital camera" that used two image sensors and used one image to enhance the other.  1 F.4th at 1042.  But the Federal Circuit found that the claim was really directed to the "idea . . . of using multiple pictures to enhance each other," which had "been known by photographers for over a century."  *Id.* at 1043.  And the remainder of the camera merely recited "[c]onventional camera components."  *Id.*  Other cases apply the same principle.  *See, e.g.*, *In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016) ("[N]ot every claim that recites concrete, tangible components escapes the reach of the abstract-idea inquiry."); *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 766 (Fed. Cir. 2019) (holding that a claim that recited an "apparatus" comprised of a control device, transceiver, and controller was directed toward an abstract concept).  Here, it is possible that even though Claim 11 recites a "portable, point of vide

1   digital video camera," it is nonetheless directed to an abstract concept, so I turn to that analysis.

2          The parties agree that Claim 11 is representative of both asserted claims for present

3   purposes.  *See* MJP Order 14 n.5; *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1351

4   (Fed. Cir. 2016) (treating claim as representative for Section 101 analysis).  Claim 11, again,

5   recites a "portable, point of view digital video camera."  '954 Patent, cl. 11.  That claimed camera

6   comprises four elements: a lens, an image sensor, a wireless connection protocol device, and a

7   camera processor.  The parties also focus on the same (purported) advance over the prior art: the

8   camera's video recording and streaming function and its settings controls.  *See* GoPro's Corrected

9   Motion for Summary Judgment ("Mot.") [Dkt. No. 612] 14; Opposition to the Mot. ("Oppo.")

10  [Dkt. No. 624-5] 16.  As Contour admits, if there is anything novel about the claimed camera—

11  that is, anything that is an advance over the prior art, *see TecSec*, 978 F.3d at 1292—it is that the

12  device creates two video streams and transmits the lower resolution stream to a personal portable

13  device while saving the higher resolution stream.  *See* Oppo. 16.  And it is that the camera is

14  configured to receive control signals from a personal portable computing device, which can adjust

15  its settings.  *Id.* 16–17.

16          I agree with GoPro that this proffered advance over the prior art is, in truth, "directed to a

17  result or effect that itself is the abstract idea and merely invoke[s] generic processes and

18  machinery."  *Smart Sys. Innovations, LLC v. Chicago Transit Auth.*, 873 F.3d 1364, 1371 (Fed.

19  Cir. 2017) (internal quotation marks and citation omitted).  The abstract idea is creating and

20  transmitting video (at two different resolutions) and adjusting the video's settings remotely.[3]  That

21  is what the relevant part of the plain language of the claim provides: a "camera processor [is]

22  configured to" receive the video from the image sensor, generate the two streams from it, cause a

23  wireless connection device to send one to a personal portable device, and receive control signals

24

25  ────────────────

    [3] This could also be framed as two abstract ideas: (1) creating and streaming videos at two

26  different resolutions and (2) adjusting the video's settings remotely.  The step-two analysis,
    however, focuses not only on individual claim elements but also placing those elements in an

27  "ordered combination" to determine whether there is a transformative concept.  No matter the
    framing of the abstract idea(s), therefore, I would have to evaluate them as a complete whole at

28  that stage in any event.

                                                      6

1   from a personal portable computing device and adjust the video settings accordingly.  *See* '095

2   Patent, cl. 11.  Contour admits that is the focus of the claims.  *See* Oppo. 16–17 (stating these

3   functions are the advance over the prior art).

4        The functions of receiving, generating, storing, and transmitting video are (without more)

5   abstract concepts.  *Cf., e.g.*, *TLI Commc'ns*, 823 F.3d at 613 (finding claims abstract because they

6   were directed to "classifying and storing digital images" in a device for "taking, transmitting, and

7   organizing digital images").  The important part of this functionality—that it generates *two*

8   streams, one of which is lower quality—does not make it any less abstract.  Adjusting video

9   settings remotely is (again, without more) also an abstract concept.

10       The claim describes the implementation of these "methods in purely functional terms."

11  *TLI Commc'ns*, 823 F.3d at 612.  Said another way, the claim uses only "essentially result-

12  focused, functional . . . claim language."  *Elec. Power Grp.*, 830 F.3d at 1356.  The claims do not

13  recite any technical requirements to execute the abstract idea.  The claims do not recite any

14  particular hardware required other than the generic "lens and image sensor" to take the video,

15  generic "wireless connection protocol device," and generic "camera processor."  *See* '954 Patent,

16  cl. 11.  On dual-streaming, for example, the claim just says that it occurs—albeit in the "typically

17  obtuse syntax of patents," *Smart Sys.*, 873 F.3d at 1371.  *See* '954 Patent, cl 11 ("generate, from

18  the video image data, first video image content at a first resolution and second video image

19  content at a second resolution, wherein the first resolution is lower than the second resolution").

20  The same is true of adjusting video settings.  *See id.* ("receive the control signals from the personal

21  portable computing device, and adjust one or more settings of the video camera based" on that).

22  The patent does not claim a new technical way of achieving any of this, it just claims the

23  functions.  In similar circumstances, the Federal Circuit has explained that the mechanical device

24  is "merely a conduit for the abstract idea."  *TLI Commc'ns*, 823 F.3d at 612.[4]

25

26  _____

    [4] At claim construction in the second case, Contour argued for a proposed construction that the
27  patent did not *claim* a personal portable computing device.  *See* MJP Order at 16–21.  I agreed,
    and essentially adopted its construction, explaining that "the reference to such a device is only to
28  define the control signals, but it itself is not claimed."  *Id.* 17.  The personal portable computing
    device, consequently, does not factor into the analysis except to that extent.

United States District Court
Northern District of California

1    Discussing a few Federal Circuit cases in more detail helps make clear why the advance

2   over the prior art is directed to an abstract concept.  The patent in *TLI Communications* concerned,

3   on its face, "an apparatus for recording of a digital image, communicating the digital image from

4   the recording device to a storage device, and to administering the digital image in the storage

5   device." 823 F.3d at 609 (internal quotation marks and citation omitted).  The claims at issue

6   recited a "method for recording and administering digital images" in which a "telephone unit"

7   recorded images, stored them, and transmitted the data to a server where it was sorted and stored.

8   *Id.* at 610.  The Federal Circuit held that the claim was "drawn to the concept of classifying an

9   image and storing the image based on its classification."  *Id.* at 611.  Though it required "concrete,

10  tangible components such as 'a telephone unit' and a 'server,'" they "merely provide[d] a generic

11  environment in which to carry out the abstract idea."  *Id.*  Just like the physical components here,

12  the patent did not "describe a new telephone, a new server, or a new physical combination of the

13  two" and it did not "provide any technical details for the tangible components, but instead

14  predominately describes the system and methods in purely functional terms."  *Id.* at 612.

15    *Yu* also teaches lessons pertinent to the facts here.  There, the claim recited an "improved

16  digital camera" that took two images, one that was "sensitive to a full region of visible color

17  spectrum."  *Yu*, 1 F.4th at 1042.  Then, the less sensitive image was "enhanced" with the more

18  sensitive one.  *Id.*  The Federal Circuit held that the claim was directed "to the abstract idea of

19  taking two pictures (which may be at different exposures) and using one picture to enhance the

20  other in some way."  *Id.* at 1043.  This idea, the court explained, was carried out only with generic

21  camera components: "two image sensors, two lenses, an analog-to-digital converting circuitry, an

22  image memory, and a digital image processor."  *Id.*  Each was well-known, conventional, and only

23  performing its "basic function."  *Id.*  Here, too, the claim recites only the vaguest version of each

24  component—*a* (generic, unelaborated-on) lens, *a* (generic, unelaborated-on) processor, etc.—and

25  only describes it as carrying out its basic functions without any technological innovation to them.

26  Importantly, even though the Federal Circuit did not question that the camera in *Yu* was a solution

27  to multiple specific problems, it held that immaterial because the "solution to those problems is

28

8

the abstract idea itself." *Id.* at 1044.[5]

*ChargePoint* is to the same effect.  There, the patent related to networked charging stations for electric vehicles.  The Federal Circuit reviewed a number of claims.  To take one example, one claim recited an "apparatus" comprised of a control device for electricity, a transceiver, and a controller.  *See ChargePoint*, 920 F.3d at 766.  But the court held it was directed to the idea of network-controlled charging stations.  *Id.* at 768.  The invention was "nothing more than the abstract idea of communication over a network for interacting with a device." *Id.*  As the court explained, "the inventors here had the good idea to add networking capabilities to existing charging stations to facilitate various business interactions.  But that is where they stopped, and that is all they patented." *Id.*  That is true here as well.  I assume for present purposes (as it has been the subject of dispute) that the patentee had the good idea of generating videos at two resolutions, streaming one to a smartphone, and adjusting the settings remotely.  But "that is where they stopped, and that is all they patented." *Id.*

Contour's response is that the claim is "directed to particular improvements and specific solutions for POV cameras."  Oppo. 16.[6]  According to it, at the time of invention, point-of-view video cameras "did not allow the user to preview the image and adjust image settings based on that preview, . . . generally lacked a preview screen, and . . . the key features of such cameras were that they could be mounted on equipment or the user's body which in turn made it difficult, if not impossible, to see or configure the images captured by the camera once mounted if a preview screen was integrated into the POV camera." *Id.* (internal quotation marks and citation omitted).  The claim helped solved this problem, Contour argues, with its "creation of two video streams," which allowed users to preview their recordings for the first time.  Contour also argues that the control-signals also helped solve this problem by allowing users to adjust settings when the

---

[5] At the hearing, Contour relied on the dissenting opinion in *Yu* to argue that it "enlarged the instability in all field on the 101 eligibility," was not "clear cut," and "certainly has some real questions." Dkt. No. 672 at 29:5–21.  But, as Contour recognized as well, I am bound by *Yu* all the same.

[6] I address Contour's argument about its Bluetooth driver, which it has sometimes asserted is a step-one issue, in the analysis of step two below.

United States District Court
Northern District of California

camera was out of reach.  *Id.* 16–17.  It relies on its expert, who briefly opines that this is so.  *See* Dkt. No. 487-7 ¶¶ 400–02.

It is true that technical solutions to concrete problems and specific improvements to extant technologies are often unlikely to be abstract.  *See, e.g.*, *Rsch. Corp. Techs. v. Microsoft Corp.*, 627 F.3d 859, 869 (Fed. Cir. 2010); *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1339 (Fed. Cir. 2016).  But, here, "claim [11]'s solution to those problems is the abstract idea itself."  *Yu*, 1 F.4th at 1044.  That is, the "solution" in the claim is generating videos (at two resolutions), streaming one to a personal computing device, and receiving video setting adjustments from the device.  The claim is "drafted in such a result-oriented way that [it] amounted to encompassing the 'principle in the abstract' no matter how implemented."  *Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1343 (Fed. Cir. 2018).

At the hearing, I asked Contour for its best case and it put forward *CardioNet, LLC v. InfoBionic, Inc*, 955 F.3d 1358 (Fed. Cir. 2020).  *See* Transcript of Feb. 2, 2022, Proceedings ("Tr.") [Dkt. No. 672] at 13:14–18.  There, the Federal Circuit found that the claim was "directed to an improved cardiac monitoring device and not to an abstract idea."  *CardioNet*, 955 F.3d at 1368.  The district court had held the claims invalid because they were "directed to automating known techniques" for diagnosing atrial problems.  *Id.* at 1370.  That is different than the situation here.  In reversing, the Federal Circuit held that "nothing in the record" or the specification supported the district court's determination and that, instead, the evidence indicated that the medical device utilized a new method for making the diagnoses.  *Id.* at 1370–71.  The Federal Circuit had little trouble concluding that, because the machine had a new method for diagnosis that had fewer false negatives, it was not directed to an abstract concept.  *See id.* at 1368–69.  There, unlike here, the new invention really was technical: a newly invented mechanical device that performed a physical operation to reach a medical diagnosis.  *See id.*

Contour also relied on *Ancora Techs., Inc. v. HTC Am., Inc.*, 908 F.3d 1343 (Fed. Cir. 2018), as amended (Nov. 20, 2018), as a leading case.  Tr. at 30:15–21.  There, the Federal Circuit examined a claim that covered a "method of restricting software operation within a license."  *Ancora*, 908 F.3d at 1345.  As it explained, "[i]mproving security—here, against a computer's

10

unauthorized use of a program—can be a non-abstract computer-functionality improvement if done by a specific technique that departs from earlier approaches to solve a specific computer problem." *Id.* at 1348.  That claim recited a specific functional improvement—a specific set of computer digital structures—and solved a particular problem. *See id.* at 1348–49.  Here, in contrast, the solution is just a recitation of the idea itself with generic components; there is nothing analogous to the non-generic structures there.

### B.  Step Two

At *Alice* step two, the court must "consider the elements of each claim both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible application." *Enfish*, 822 F.3d at 1334 (internal quotation marks and citations).  The court must "search for an inventive concept—i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Alice*, 134 S. Ct. at 2355 (internal quotation marks and citations omitted).  But this allegedly inventive concept "cannot simply be an instruction to implement or apply the abstract idea on a computer" and "must be significantly more than the abstract idea itself." *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1349 (Fed. Cir. 2016).  It must generally "involve more than performance of well-understood, routine, [and] conventional activities previously known to the industry." *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1347–48 (Fed. Cir. 2014).  "[T]he mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Id.* at 1348.

I conclude that the elements of claim 11—individually and as an ordered combination—do not transform the nature of the claim into something patent-eligible.[7]  As explained above, the claim only recites functional, ends-oriented language and there is no indication that the physical

---

[7] Previously, I denied GoPro's motion for judgment on the pleadings under *Alice* primarily on the basis of Contour's pleading about step two. *See* MJP Order 15–16.  As I explained, at that posture, I was bound by pleadings rules.  Much of GoPro's argument then depended on extra-pleadings material and I was required to credit Contour's pleaded allegations.  But now, both parties have had a full opportunity to develop the evidentiary record, and it is clear that there is no evidence that saves the claims from abstraction.

United States District Court
Northern District of California

components are behaving in any way other than their basic, generic tasks.  *See, e.g.*, *Yu*, 1 F.4th at 1045.  The claim does not include some "additional feature" showing that it is "more than a drafting effort designed to monopolize the" abstract idea.  *ChargePoint*, 920 F.3d at 773 (quoting *Alice*, 573 U.S. at 221).  There is nothing "significantly more" than the abstract idea cloaked in physical components.

Contour argues that "the claims here, when considered as a whole, perform the activity of allowing remote preview and remote control of settings for a POV camera, the concept is inventive and the claims are patentable."  Oppo. 22.  Its argument for why this is so tracks its argument above—there was a specific problem in point-of-view cameras that this solved in a new way.  For the reasons explained there, and incorporated here, I reject that argument.  This combination is also the only thing that Contour puts forward as non-conventional and not well-understood (which makes sense given the basic nature of the elements individually).  Yet because this combination does nothing new that is above and beyond the idea itself, it cannot qualify.

The Federal Circuit explained this idea in *ChargePoint*.  There, the patentee made almost precisely the same argument that Contour does at step two: it "solved [the] problems in an unconventional way" with a set of elements never before combined.  *ChargePoint*, 920 F.3d at 774.  And there, the case was at the pleadings—requiring all reasonable inferences drawn in the plaintiff's favor—and the patentee pleaded that this was "paradigm-shifting" and it was the "first" company to do it.  *See id.*  But the Federal Circuit explained that "[i]n essence, the alleged 'inventive concept' that solves problems identified in the field is that the charging stations are network-controlled.  But network control is the abstract idea itself, and a claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept that renders the invention 'significantly more' than that ineligible concept."  *Id.* (internal quotation marks omitted).

Just so here.  No matter how unconventional Contour's organization of these elements, in essence the inventive and problem-solving concept is the abstract idea, which is insufficient.  This aside, the dual-streaming capability, as Contour admits, comes from a chip in the patent that it did not make and was, in fact, prior art.  *See* Oppo. 19.  Contour's only factual dispute on this point is

1    that (as discussed below) it invented a specific driver to make that chip work; I reject that

2    argument in the next paragraph.

3         Contour has repeatedly relied on certain Bluetooth technology that is referenced in an

4    embodiment in the specification. *See, e.g.*, Tr. at 8; Oppo. 19.  It argues that the specification

5    shows that "Contour had to make changes to the firmware for the processor in order for it to be

6    configured to respond to the app . . . in order to receive the control signal. . . .  That was something

7    that had never been done before."  Tr. 10:14–16.  And, more specifically, it argued that it had to

8    develop a Bluetooth driver to make the chip used work for its intended function. *See* Tr. at 16:9–

9    16.  The problem, however, is that none of this is claimed.  To be sure, embodiments in the

10   specification include the Bluetooth technology, but the claim 11 says nothing about it.  As

11   explained in detail above, the claim includes much more generic components to perform the

12   recited functions.  And "we do not read limitations from the embodiments in the specification into

13   the claims." *MasterMine Software, Inc. v. Microsoft Corp.*, 874 F.3d 1307, 1310 (Fed. Cir. 2017).

14   Consequently, even assuming that Contour is correct that it invented a new driver to perform these

15   functions, that is not what is claimed.  Maybe that technology is patentable, maybe not.  But

16   Contour instead claimed the much broader universe of *any* technology that performs its abstract

17   idea so long as it meets the minimal criteria of its generic elements.

18        At the hearing, Contour also argued that the evidence shows that GoPro's internal

19   documents indicated that it did not understand how Contour's technology worked, it wanted to

20   "take apart" one of Contour's units to make use of the dual-streaming capability, and it tried and

21   failed several different technical approaches to wireless streaming. *See* Tr. at 19:22–21:19.  As a

22   result, says Contour, the technology could not have been conventional or well-understood at the

23   time.  But all that shows is that GoPro did not understand *how*, in technological terms, Contour

24   was *implementing* the claims.  The claims themselves do not require any particular technology to

25   carry them out other than, again, the generic components recited.[8]

26   _____

27   [8] At the hearing, Contour made two other arguments that are not persuasive.  First, it repeatedly
     relied on the testimony of GoPro's CEO (who claims to be the inventor of some of the technology
28   in dispute) that he "admitted that the combination is an invention."  Tr. 15:4–11.  That is, of

United States District Court
Northern District of California

At the hearing, Contour cited *Bascom* as its best step-two case.  *See* Tr. at 30:22–24.  The claims of that patent were "directed to filtering content on the Internet."  *Bascom*, 827 F.3d at 1348.  That alone, the court said, would be an abstract concept.  *Id.*  But the court held that there was a sufficient inventive concept when the claim elements were viewed in an ordered combination.  *See id.* at 1350.  The inventive concept was "the installation of a filtering tool at a specific location, remote from the end-users, with customizable filtering features specific to each end user" that gave "the benefits of a filter on a local computer and the benefits of a filter on the ISP server."  *Id.*  The result of putting all of the limitations together, the court said, turned it into a "specific, discrete implementation of the abstract idea of filtering content" that improved on prior art filters in tangible ways.  *See id.*  While Contour's comparison of this case to *Bascom* is not baseless, the claim here does not (when viewing its elements in an ordered combination) recite a specific and discrete implementation of the abstract concept at issue; instead, it recites the abstract concept itself implemented only through generic components.

Accordingly, I conclude that claim 11—and all claims for which it is representative—is invalid under *Alice*.  GoPro is, therefore, entitled to summary judgment.

## II.   MOTIONS TO SEAL

The parties have filed motions to seal.  The motions seek to redact (1) confidential technical details of the parties' and third parties' products; (2) discrete licensing terms; (3) proprietary business information of third-parties that, according to sworn declarations, could hurt them competitively.  I have previously ruled that essentially these same sorts of redactions—and in many cases, precisely the same redactions—meet the "compelling reasons" standard and are sufficiently narrowly tailored.  *See Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096 (9th Cir. 2016).  I have reviewed all of the proposed redactions and find that they meet this standard for the reasons discussed many times in prior orders, which I incorporate here.  *See* Dkt.

course, far from an admission that the technology satisfies the legal framework established in *Alice*.  Second, it documented several engineering and product design awards that Contour's technology has won.  *See* Tr. 22:1–23:4.  That a technology is in some sense inventive—even award-winning—does not indicate whether or not it covers an abstract concept.  Many of the claims that the Federal Circuit has invalidated may well be novel and nonobvious; but that does not mean they cover eligible subject matter.

United States District Court
Northern District of California

Nos. 468, 478, 489, 510, 596, 605.

## CONCLUSION

GoPro's motion for summary judgment of invalidity is GRANTED.  Contour's motion for summary judgment and GoPro's motion to exclude are DENIED AS MOOT.

**IT IS SO ORDERED.**

Dated: March 4, 2022



William H. Orrick
United States District Judge

United States District Court
Northern District of California