UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONTOUR IP HOLDING, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>GOPRO, INC.,<br><br>    Defendant. | Case No. 17-cv-04738-WHO<br><br>**ORDER ON THE MOTION FOR PARTIAL RECONSIDERATION, THE MOTION TO AMEND THE CASE SCHEDULE, AND MOTIONS TO SEAL**<br><br>Re: Dkt. Nos. 730, 731, 735, 738, 741 |

Following a decision from the Federal Circuit resolving conflicting district court rulings on an issue concerning IPR estoppel, GoPro moves for partial reconsideration of a previous Order in this case where I held that IPR estoppel barred it from presenting certain evidence at trial. In addition, GoPro moves to amend the case schedule so that it can adequately respond to Contour's latest expert reports pertaining to the third group of accused products in this case. In the alternative, GoPro seeks to strike portions of the new expert report because, in its view, Contour's expert report impermissibly presents a new theory not previously revealed in its infringement contentions. Because I conclude that the Federal Circuit's recent decision in *Ingenico v. Ioengine* presents a material change in law, I GRANT GoPro's Motion for Partial Reconsideration and allow GoPro the opportunity to amend its expert report in response to the Federal Circuit's decision. And, because I conclude that Contour's expert has likely presented a new infringement contention that would benefit from a response, I likewise GRANT GoPro's Motion to Amend the Case Schedule to allow its expert to address those contentions. Parties shall follow the new case schedule included in the minute order at Dkt. No. 747.

**BACKGROUND**

The parties are familiar with the background of the case, as laid out in my previous orders. I only briefly review recent developments in the case.

1   On March 24, 2025, I entered an Order on the Motions for Summary Judgment, addressing
2   issues related to infringement, IPR estoppel, inequitable conduct, and the admissibility of an
3   expert opinion as related to the second group of accused products in this case (the "*Contour II*"
4   products)[1]. *See* Order on the Motions for Summary Judgment ("Prior Order") [Dkt. No. 721]. As
5   is relevant to the motions before me now, Contour had moved for summary judgment on the issue
6   of whether GoPro was estopped from referencing physical prior art at trial because materially
7   similar printed publications concerning that prior art was available at the time of the IPR. *See*
8   Contour Motion for Summary Judgment [Dkt. No. 606-4] 14–16. After reviewing the differing
9   opinions of district courts on the issue, I granted Contour's motion—holding that GoPro was
10  barred from relying on physical evidence of certain prior art. Prior Order 23.

As a part of the Order, I granted Contour's request to join a new group of products to this case (the "*Contour III*" products) that GoPro released while the case was on review by the Federal Circuit. Prior Order at 7–8, n.4. I ordered the parties to conduct expedited discovery and inform the court of any issues promptly. *Id.* at 8, n.4. One week later, the parties served expert reports on each other related to the third group of accused products in this case, relying on the contents of the Prior Order.

On May 7, 2025, the Federal Circuit decided *Ingenico Inc. v. Ioengine, LLC* and squarely addressed the district courts' disagreements over the question of the scope of IPR estoppel. 136 F.4th 1354, 1364–67 (Fed. Cir. 2025). On May 14, 2025, GoPro filed a motion for leave to file a Motion for Reconsideration, pursuant to Civil Local Rule 7-9(a). *See* Dkt. No. 727. On June 3, 2025, I granted the motion for leave. Dkt. No. 733. GoPro filed its Motion for Reconsideration on June 6, 2025. ("MFR") [Dkt. No. 735]. Contour filed its response on June 20, 2025. ("Oppo. MFR") [Dkt. No. 740]. GoPro replied on June 27, 2025. ("Reply MFR") [Dkt. No. 744].

Meanwhile, on May 23, 2025, GoPro additionally filed a Motion to Amend the Case Schedule, or, in the alternative, to Strike Contour's New Infringement Theory. ("MTA") [Dkt. No. 731]. GoPro argues that in the expert report concerning the *Contour III* products, Contour's

---

[1] On August 31, 2020, I granted Contour summary judgment that the original group of products in this case (the "*Contour I*" products) infringed on the asserted patent. Dkt. Nos. 444–445.

2

technical expert, Dr. Hu, raises for the first time an infringement theory unrelated to previous infringement contentions. Contour opposed this motion on June 13, 2025. ("Oppo. MTA") [Dkt. No. 739]. GoPro replied on June 20, 2025. ("Reply MTA") [Dkt. No. 742].

I held a hearing on both motions on July 9, 2025.

## LEGAL STANDARD

### I. Reconsideration

Under the Northern District's local rules, before filing a motion for reconsideration a party must obtain leave of court. Civil L.R. 7-9(a). To obtain leave, the party must "specifically show reasonable diligence in bringing the motion" and one of the following:

> (1) That at the time of the motion for leave, a material difference in fact or law exists from that which was presented to the Court before entry of the interlocutory order for which reconsideration is sought. The party also must show that in the exercise of reasonable diligence the party applying for reconsideration did not know such fact or law at the time of the interlocutory order; or
>
> (2) The emergence of new material facts or a change of law occurring after the time of such order; or
>
> (3) A manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order.

Civil L. R. 7-9(b)(1)-(3).

Once a reconsideration motion is filed, reconsideration is appropriate "if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) there is an intervening change in controlling law." *Sch. Dist. No. 1J, Multnomah Cnty., Or. v. ACandS Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).

### II. Supplementing Expert Reports and Amending the Case Schedule

Federal Rule of Civil Procedure 26 governs expert disclosures. Rule 26(e) is titled "Supplementing Disclosures and Responses." It reads:

> (1) *In General.* A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response:
>     a. in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or

3

      b.   as ordered by the court.

(2) *Expert Witness.* For an expert whose report must be disclosed under Rule 26(a)(2)(B), the party's duty to supplement extends both in information included in the report and to information given during the expert's deposition. Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due.

Fed. R. Civ. P. 26(e).

Should submission of those supplemental disclosures conflicts with a discovery cut-off deadline set by the Court's scheduling order, reopening discovery and otherwise modifying the case management schedule may be done "only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4).

## III.    Patent Local Rules

"Patent Local Rule 3 requires patent disclosures early in a case and streamlines discovery by replacing the series of interrogatories that parties would likely have propounded without it." *ASUS Computer Int'l v. Round Rock Research, LLC*, No. 12–CV–02099–JST, 2014 WL 1463609, at *1 (N.D. Cal. Apr. 11, 2014) (internal quotation marks and modifications omitted). The disclosure requirements of Rule 3 are designed "to require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed." *Nova Measuring Instruments Ltd. v. Nanometrics, Inc.*, 417 F. Supp. 2d 1121, 1123 (N.D. Cal. 2006). "They are also designed to provide structure to discovery and to enable the parties to move efficiently toward claim construction and the eventual resolution of their dispute." *Golden Bridge Tech. Inc. v. Apple, Inc.,* No. 12–cv–04882–PSG, 2014 WL 1928977, at *3 (N.D. Cal. May 14, 2014) (internal quotation marks omitted); *see also O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1365–66 (Fed. Cir. 2006) ("The local patent rules in the Northern District of California [require] both the plaintiff and the defendant in patent cases to provide early notice of their infringement and invalidity contentions, and to proceed with diligence in amending those contentions when new information comes to light in the course of discovery. The rules thus seek to balance the right to develop new information in discovery with the need for certainty as to the

4

legal theories.").

Patent Local Rule 3–1 requires that a party claiming patent infringement serve a "Disclosure of Asserted Claims and Infringement Contentions" no more than fourteen days after the initial case management conference.  This disclosure must include "[e]ach claim of each patent in suit that is allegedly infringed by each opposing party, including for each claim the applicable statutory subsections of 35 U.S.C. § 271 asserted."  Patent L.R. 3–1(a).  The party must also identify "where each limitation of each asserted claim is found within each Accused Instrumentality," and "[w]hether each limitation of each asserted claim is alleged to be literally present or present under the doctrine of equivalents."  Patent L.R. 3–1(e).  "The Patent Local Rules require a limitation-by-limitation analysis, not a boilerplate reservation." *Rambus Inc. v. Hynix Semiconductor Inc.*, No. C-05-00334 RMW, 2008 WL 5411564, at *3 (N.D. Cal. Dec. 29, 2008).

Patent Local Rule 3–3 requires parties accused of infringement to serve invalidity contentions.  The invalidity contentions must identify "each item of prior art that allegedly anticipates each asserted claim or renders it obvious."  Patent L.R. 3–3(a).  If obviousness is alleged, the invalidity contentions must contain "an explanation of why the prior art renders the asserted claim obvious, including an identification of any combinations of prior art showing obviousness."  Patent L.R. 3–3(b).

"Given the purpose behind [these] disclosure requirements, a party may not use an expert report to introduce new infringement theories, new infringing instrumentalities, new invalidity theories, or new prior art references not disclosed in the parties' infringement contentions or invalidity contentions." *Verinata Health, Inc. v. Sequenom, Inc.*, No. 12–cv–00865–SI, 2014 WL 4100638, at *3 (N.D. Cal. Aug. 20, 2014) (internal quotation marks omitted); *see also Golden Bridge Tech. Inc. v. Apple, Inc.*, No. 12–cv–04882–PSG, 2014 WL 1928977, at *3 (N.D. Cal. May 14, 2014) ("Expert reports may not introduce theories not set forth in contentions.").  "Any invalidity theories not disclosed pursuant to Local Rule 3–3 are barred . . . from presentation at trial (whether through expert opinion testimony or otherwise)." *MediaTek Inc. v. Freescale Semiconductor, Inc.*, No. 11–cv–05341–YGR, 2014 WL 690161, at *1 (N.D. Cal. Feb. 21, 2014).

In determining whether to strike some or all of an expert report for failure to comply with the patent local rules, courts in this district have asked, "[W]ill striking the report result in not just a trial, but an overall litigation, that is more fair, or less?" *Apple Inc. v. Samsung Electronics Co.*, No. 11–cv–01846–PSG, 2012 WL 2499929, at *1 (N.D. Cal. June 27, 2012); *Verinata Health*, 2014 WL 4100638, at *3.

## DISCUSSION

### I. Motion for Partial Reconsideration

#### A. IPR Estoppel

GoPro has moved for partial reconsideration of the Prior Order, presenting an "intervening change in controlling law." *See Sch. Dist. No. 1J Multnomah Cnty., Or.*, 5 F.3d at 1263. GoPro asserts that the Federal Circuit's decision in *Ingenico Inc. et al. v. Ioengine, LLC* contravenes part of the Prior Order in which I held that GoPro's invalidity theories under 35 U.S.C. §§ 102 and 103 concerning Sony, Canon, and Nikon products were barred by IPR estoppel. *See* Prior Order at 16–23. Contour does not contest that there is an intervening change in law that impacts my previous decision. Because Contour does not contest GoPro's interpretation of *Ingenico*, and because I agree with GoPro's understanding of the Federal Circuit's decision, I only briefly review the Prior Order's conclusions regarding IPR estoppel and the impact of *Ingenico* on those conclusions.

In the Prior Order, I first held that GoPro's technical expert, Dr. Almeroth, relied on physical Sony, Canon, and Nikon devices available at the time of invention of the accused products to form his opinion that the accused products are invalid. Prior Opinion 17–19. I further held that his reliance on those physical products was cumulative of printed publications that were available at the time of the IPR. *Id.* I therefore concluded that because those physical devices were "materially identical to printed publications," reliance on those devices was barred by IPR estoppel pursuant to 35 U.S.C. § 315(e)(2). *Id.* at 20. That Section reads that a "petitioner in an inter partes review of a claim in a patent . . . that results in a final written decision . . . may not assert either in a civil action arising in whole or in part under section 1338 of title 28 . . . that the claim is invalid on any ground that the petitioner raised or reasonably could have raised during that inter partes review." 35 U.S.C. § 315(e)(2).

6

The Federal Circuit at that point had clarified that "estoppel applies not just to claims and grounds asserted in the petition and instituted for consideration by the Board, but to all grounds not stated in the petition but which reasonably could have been asserted against the claims included in the petition." *Cal. Inst. of Tech. v. Broadcom Ltd.*, 25 F.4th 976, 991 (Fed. Cir. 2022). But it had not yet defined how broadly courts are to interpret those "grounds" provided that physical products cannot themselves be raised during IPR proceedings. 35 U.S.C. § 311(b); *see also Clearlamp, LLC v. LKQ Corp.*, 2016 WL 4734389, at *9 (N.D. Ill. Mar. 18, 2016) ("[U]nlike in district court litigation, products cannot be offered as prior art during inter partes review."). I concluded (along with a number of other courts) that IPR estoppel applies to physical devices when those devices are materially identical to a patent or printed publication that could have been raised during the IPR. Prior Order at 22–23. I precluded GoPro from relying on the Sony, Canon, and Nikon physical devices at trial. *Id.* at 23.

The Federal Circuit decided *Ingenico* less than two months after the Prior Order. *Ingenico*, 136 F.4th at 1354. In that case, plaintiff Ingenico filed IPR petitions challenging defendant Ioengine's asserted patents. *Id.* at 1360. At a later trial concerning those patents, Ingenico introduced evidence of a physical USB device. *Id.* On appeal, Ioengine asserted that introduction of the physical device should have been barred by IPR estoppel because the physical device was "entirely cumulative and substantively identical to" printed publications that reasonably could have been offered during the IPR. *Id.* at 1364. The Federal Circuit, noting the district court split in interpretation of the term "ground" in 35 U.S.C. § 315(e)(2), held that "Congress intentionally limited an IPR's scope to invalidity challenges based on 'prior art consisting of patents or printed publications.'" *Id.* at 1365 (quoting 35 U.S.C. § 311(b)). The Court further concluded:

> Thus, IPR estoppel does not preclude a petitioner from asserting the same prior art raised in an IPR in district court, but rather precludes a petitioner from asserting grounds that were raised or reasonably could have been raised during an IPR. . . . But IPR estoppel does not preclude a petitioner from relying on the same patents and printed publications as evidence in asserting a ground that could not be raised during the IPR, such as that the claimed invention was known or used by others, on sale, or in public use. . . . [P]rior art is evidence of a ground, not coextensive with a ground.

*Id.* at 1366. Further clarifying, the court held that "IPR estoppel does not preclude a petitioner

7

from asserting that a claimed invention was known or used by others, on sale, or in public use in district court. These are separate grounds that could not be raised during an IPR." *Id.* at 1367.

The Federal Circuit's decision is at odds with my holding in the Prior Order. Accordingly, I GRANT GoPro's Motion for Reconsideration and DENY summary judgment for Contour on this issue. IPR estoppel does not bar GoPro from introducing prior art theories based on the Sony, Canon, and Nikon physical devices.

### B. Supplemental Expert Reports

The parties continue to contest whether I should grant GoPro's request to supplement its expert reports in light of *Ingenico*. *See* MFR 8–9; Oppo. MFR 4–7; Reply MFR 3–8.

GoPro contends that after the Prior Order, it submitted its supplemental expert reports on March 31, 2025. MFR 8. Because of my holding on IPR estoppel, it claims "its expert omitted supplemental opinions that he would have included were they not estopped." *Id.* In an excerpt of Dr. Almeroth's 2025 expert report submitted by Contour in opposition, Dr. Almeroth's invalidity contentions concerning prior inventions reads:

> I fully incorporate by reference my discussion of the invalidity of the asserted claims in light of the [Sony, Canon, or Nikon] prior art as set forth in my prior reports. I understand that due to the Court's summary judgment order, the only [Sony, Canon, or Nikon] grounds that remain are [Sony, Canon, or Nikon] grounds involving Ambarella.

Exh. A Oppo. MFR [Dkt. 740-1] at 3–4.[2]

Therefore, GoPro wishes to "supplement its expert reports to demonstrate how the Sony, Nikon, and Canon products render [the primary functionality at issue in this case] obvious." MFR at 9. GoPro contends that, even before the Prior Order, it believed it was estopped from raising certain arguments in support of its invalidity theories until the *Ingenico* decision issued. Reply MFR 4–5. It argues that my 2020 Order on the Scope of IPR Estoppel likewise limited its expert's discussion of certain "confidential documents" that it would have used "to support its prior use/sale-based invalidity theories." MFR at 9.

GoPro's arguments do not fully square with the fact that had I originally denied Contour

---

[2] Contour notes that to the extent that GoPro wishes to amend its expert report to minimally strike the final sentence, it does not oppose. Oppo. MFR 7.

1  summary judgment in the Prior Order, the holding in *Ingenico* would seem to only support that

2  denial and not, as GoPro asserts, open up a new avenue for invalidity arguments and defenses.

3  But it moves only for narrow amendments. Specifically, GoPro explains that it "is not seeking to

4  add entirely new prior art to the record, but simply to choose different grounds (or supplement

5  existing grounds) based on the current state of the law." MFR 9. And it proposes a schedule (in

6  conjunction with its motion to amend the case schedule) that delays trial by just over three months.

7  I find there to be good cause for amending the case schedule given even the mere possibility that

8  *Ingenico*'s holding may impact GoPro's ability to support its invalidity contentions that the

9  claimed inventions were "known or used by others, on sale, or in public use" at trial. *Ingenico*,

10  136 F.4th at 1367. I GRANT GoPro's Motion For Reconsideration, in part, and allow GoPro to

11  amend its expert report to narrowly but adequately discuss issues it previously believed to be

12  precluded prior to the *Ingenico* decision.[3]

13  Instead of GoPro's proposed schedule, however, the parties shall follow the revised case

14  schedule included in the minute order for these motion hearings.[4] Contour will have the

15  opportunity to oppose the contents of GoPro's supplemental expert report via its (1) expert

16  rebuttal reports or (2) in any final dispositive motion to be argued at the pretrial conference.

17  **II.     Motion to Amend the Case Schedule or Strike**

18  GoPro's second motion is to amend the case schedule so that it can appropriately address

19  what it claims to be Contour's "new infringement theory." MTA 1. In the alternative, it requests

20  that I strike a portion of the expert report related to *Contour III* products submitted by Contour's

21  technical expert, Dr. Hu. *Id.* at 2.

22  As relevant to this motion, GoPro highlights that Contour has consistently represented the

---

[3] In Reply, GoPro finally argues that Contour's new infringement theory also opens up the door for it to raise prior art that would have been precluded before the *Ingenico* decision. Reply MFR 7–8 (referring to the Boland and Loveman prior art references). As I explain below, and as the parties appeared to understand at the hearing on these motions, Dr. Almeroth is additionally permitted to revise his expert report to fully address Contour's infringement theories presented in Dr. Hu's 2025 expert report.

[4] As I explained at the hearing, the parties are welcome to meet and confer to devise and propose a new schedule that works better for them, keeping the trial date relatively firm.

patents at issue to "cover cameras that can record at a high quality (e.g., high resolution) *while* wirelessly streaming to a separate device a 'real time' preview image, at a lower quality, and receiving control signals from that device." MTA 2 (quoting Contour's 2018 Opening Claim Construction Brief) (emphasis added). In my Claim Construction order, in construing the "generate" and "generating" terms, I included the phrase "record in parallel" to each relevant term. *See* Claim Construction Order [Dkt. No. 251] at 9–13. For example, in construing the term "generate from a video image data a first image data stream and a second image data stream, wherein the second image data stream is a higher quality than the first image data stream," I construed the claim to mean: "record in parallel from the video image data a first image data stream and a second image data stream, wherein the second image data stream is a higher quality than the first image data stream." *Id.* at 9–10. These infringement contentions, explains GoPro, have been limited to the "live preview while recording" feature in most of the *Contour I* and *Contour II* products, and the "live streaming while recording" in the HERO9 *Contour II* product. MTA 4. In each of these products, GoPro emphasizes, Dr. Hu highlighted the ability of the product to "transmit video wirelessly *while* . . . also recording." MTA 5–6 (quoting 2020 Dr. Hu Rebuttal Report) (emphasis added).

      GoPro contends that in her March 2025 expert report, Dr. Hu now includes products whose functionality is limited "to sending a low-resolution preview stream before or after recording (not during recording)" as infringing upon the asserted claims. MTA 7. For example, when discussing the capability of "all accused products," Dr. Hu writes: "*After* the high-resolution MP4 video and the low-resolution LRV video files are recorded to the SD card, the user can view the LRV video file from the mobile device." Dr. Hu Expert Report, Exh. G [Dkt. No. 738-5] ¶ 232 (emphasis added). GoPro argues that the lack of contemporaneous requirement represents an infringement theory that Contour has never disclosed. MTA 8–9. This runs afoul of Patent Local Rule 3, which requires a "crystallize[d]" theory of the case early in litigation. *Nova Measuring Instruments Ltd.*, 417 Supp. 2s at 1123. And, to the extent that Contour seeks to introduce this new infringement theory by way of expert report—it is precluded from doing so. *See Verinata Health, Inc.*, 2014 WL 4100638 at *3.

10

Contour disagrees that Dr. Hu offers a new infringement theory and responds that the *Contour III* products, just like the *Contour II* products, are capable of either "live preview while recording" or "live streaming while recording." Oppo. MTA 3. It goes on to describe a difference in *Contour III* products not present in previously analyzed products, but again contends that Dr. Hu's 2025 analysis has only "minor differences" from previous reports. Oppo. MTA 10. In short, Contour explains that instead of the two parallel streams common to the *Contour I* and *II* accused products, the *Contour III* products utilize three parallel streams. Oppo. MTA 9–10. Contour's explanation for why the *Contour III* products meet the claim limitations present in *Contour I* and *Contour II* fails to rebut GoPro's contentions raised in its motion for two reasons.

First, nowhere in Dr. Hu's expert report does she provide an explanation of these three parallel streams. In fact, she specifically states that the *Contour III* accused products "generate two streams in parallel in substantially the same way as the" previously accused products do. Dr. Hu Expert Report ¶ 217. Her expert report provides no support for Contour's explanation in opposition for the three parallel streams—or even that her view is that those three streams exist.

Dr. Hu goes on to explain how the functionality for what GoPro calls the "Playback" feature contains infringing functionality:

> With all accused products . . . after the 'record' button is pressed, and the . . . chip creates both a high-resolution "Record" stream and a low-resolution "LRV" stream in parallel . . . that are saved to the SD Card memory. . . . This process is substantively the same . . . for Hero (4k/2024).
>
> After the high-resolution MP4 video and the low-resolution LRV video files are recorded to the SD card, the user can view the LRV video file from the mobile device.

Dr. Hu Expert Report ¶¶ 231–232. She finally concludes:

> Thus, in my opinion, the accused cameras literally satisfy the limitation 'a camera processor configured to . . . generate from the video image data a first image data stream and a second image data stream, wherein the second image data stream is a higher quality than the first image data stream."

*Id.* at ¶ 236. Her report therefore includes an opinion that a product infringes upon the asserted patents even when a user views a video file *after* the file has been recorded. This is in opposition to Contour's arguments in support of the claim limitation that requires "real time image content."

11

Second, even if Contour had adequately demonstrated that there are *other* modes of infringement akin to the "live preview while recording" and "live streaming while recording" functionalities as previously alleged in the *Contour I* and *II* products, courts in this district have repeatedly held that plaintiffs alleging infringement must put a defendant "on notice" of *each* infringement theory. *DSS Technology Mgmt., Inc. v. Apple, Inc.*, 2020 WL 210318, at *7 (N.D. Cal. Jan. 14, 2020) (J. Gilliam). That Contour alleges the *Contour III* products infringe in previously raised ways does not account for its newly raised contention that they also infringe through the Playback functionality. *See DCG Sys. v. Checkpoint Techs., LLC*, 2012 WL 1309161, at *2 (N.D. Cal. Apr. 16, 2012) ("a patentee must . . . disclose what in each accused instrumentality it contends practices each and every limitation of each asserted claim to the extent appropriate information is reasonably available to it."). There appears to be no dispute that information about the GoPro Playback functionality has been available to Contour since the start of this case.

The question that remains is whether to allow GoPro to amend its expert report and address these newly raised infringement contentions, or to strike Dr. Hu's 2025 report insofar as it mentions these contentions.

GoPro argues that it would suffer prejudice should I decide to strike the infringement contentions outright. Reply MTA 9. Principally, it asserts that it "has had no opportunity to take discovery on this new theory or to delve into how the pertinent prior art would apply to claims that purportedly cover any camera system capable of storing two video files of differing qualities." MTA 11. It is unclear how GoPro seeks to remedy this situation given only a short amount of time to respond to Contour's 2025 expert reports. But, especially because GoPro contends that several *Contour III* products do not have the "live preview while recording" or "live streaming while recording" functionality, I conclude that GoPro must be given some opportunity to address this broader understanding of infringement. MTA 7. I decline to strike Dr. Hu's reports at this

12

juncture and instead GRANT GoPro's Motion to Amend the Case Schedule in part, so that its expert may address any new infringement contentions raised in Dr. Hu's 2025 expert report.[5] Should GoPro later seek to strike Dr. Hu's expert reports as part of the final dispositive motion practice, it may try.

### III. Motions to Seal

Both parties have filed administrative motions to file portions of the record under seal. *See* GoPro Admin Motion at Dkt. No. 730; Contour Admin Motion at Dkt. No. 738, and GoPro Admin Motion at Dkt. No. 741. Each seeks to seal sections of Dr. Hu's 2025 expert report and to redact limited parts of the Opposition to the Motion to Amend and Reply in Support of the Motion to Amend that directly reference those portions of Dr. Hu's 2025 report they seek to seal.

Contour's motion, although not styled as such, is a Motion to Consider Whether Another Party's Material Should be Sealed pursuant to Civil Local Rule 79-5(f). Civil Local Rule 79-5(f)(3) requires the designating party, in this case GoPro, to file a statement or declaration in support of sealing the proposed information within 7 days. GoPro has not filed any statement in response to the motion. Nonetheless, GoPro has filed two administrative motions to seal the same content, so I read the declarations filed in support of those motions to likewise support Contour's motion.

The information sought to be sealed relates to confidential aspects of GoPro's new products that have not been released to the general public. Because the motions before me are non-dispositive, parties need only meet the lower, "good cause" standard of Federal Rule of Civil Procedure 26(c). *Kamakana v. City and Cnty. of Honolulu*, 447 F.3d 1172, 1180. They have done so. Moreover, I do not rely on any of the proposed redacted content in this Order. I therefore GRANT the motions to seal at Dkt. Nos. 730, 738, and 741.

---

[5] As I explained at the hearing, I do not understand the issues before me to change everything that has happened thus far in this case. GoPro shall direct its expert to narrowly address only issues raised by the parties in the instant motions in his supplemental expert report.

United States District Court
Northern District of California

**CONCLUSION**

For the reasons explained above, GoPro's Motion for Reconsideration and Motion to Amend the Case Schedule are GRANTED in part.  Parties shall follow the schedule included in the July 9, 2025, minute order.  Trial is now scheduled to start on October 6, 2025.

**IT IS SO ORDERED.**

Dated: July 11, 2025

William H. Orrick
United States District Judge