John R. Keville *(Pro Hac Vice)*
jkeville@sheppardmullin.com
Michelle C. Replogle (Pro Hac Vice)
mreplogle@sheppardmullin.com
Michael C. Krill *(Pro Hac Vice)*
mkrill@sheppardmullin.com
Sunny Akarapu *(Pro Hac Vice)*
SAkarapu@sheppardmullin.com
SHEPPARD, MULLIN, RICHTER &
HAMPTON, LLP
845 Texas Avenue, 25th Floor
Houston, Texas 77002-
Telephone: (713) 431-7100
Facsimile: (713) 431-7024

Lai L. Yip (SBN 258029)
*lyip@sheppardmullin.com*
SHEPPARD, MULLIN, RICHTER &
HAMPTON, LLP
Four Embarcadero Center Seventeenth Floor
San Francisco, CA 94111
Telephone: (415) 434-9100
Facsimile: (415) 875-6700

Attorneys for Plaintiff,
CONTOUR IP HOLDING, LLC

JOHN D. HAYNES (admitted *pro hac vice*)
**ALSTON & BIRD LLP**
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424
Telephone:    404-881-7000
Facsimile:    404-881-7777
john.haynes@alston.com

PHILIP DUCKER (State Bar No. 262644)
MICHELLE CLARK (State Bar No. 243777)
**ALSTON & BIRD LLP**
55 Second Street, Suite 2100
San Francisco, CA 94105
Telephone:    415-243-1000
Facsimile:    415-243-1001
phil.ducker@alston.com
michelle.clark@alston.com
dana.zottola@alston.com

Attorneys for Defendant GOPRO, INC.

Additional counsel on signature page

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CONTOUR IP HOLDING, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>GOPRO, INC.,<br><br>Defendant. | ) **CONSOLIDATED**<br>) Lead Case No. 17-cv-04738-WHO<br>) Consolidated Case No. 21-cv-02143-WHO<br>)<br>) **JOINT PRETRIAL CONFERENCE**<br>) **STATEMENT**<br>)<br>)<br>) Judge: William H. Orrick<br>) Date: September 19, 2025<br>) Time: 2:00 p.m.<br>) Location: Courtroom 2, 17th Floor<br>)<br>) |

1    A jury trial has been set in this matter for September 29, 2025.  A Pretrial Conference has been

2    set for September 19, 2025, at 2:00 p.m.

3    **I.    THE ACTION**

4        **A.    Substance of the Action**

5        This is a patent infringement lawsuit.  Plaintiff Contour Holding IP, LLC ("Contour" or

6    "CIPH") seeks money damages from Defendant GoPro, Inc. ("GoPro") because it contends that GoPro

7    infringes Claims 11 and 12 of the '954 patent and Claims 4 and 6 of U.S. Patent No. 8,896,694 ("the

8    '694 patent") by making, using, offering to sell, and selling certain camera products.  The GoPro

9    products accused of infringement are the "*Contour III* Accused Products," which include: HERO13

10   Black; HERO12 Black; HERO11 Black Mini; HERO11 Black; HERO10 Black Bones; HERO10

11   Black; and HERO (4k/2024); and the "*Contour II* Accused Products," which include: HERO9 Black;

12   HERO8 Black; MAX; HERO7 Black; HERO7 White; and HERO7 Silver; and the "*Contour I* Accused

13   Products," which include: Fusion; HERO6 Black; HERO5 Black; HERO5 Session; HERO4 Black;

14   HERO4 Silver; HERO4 Session; HERO3+ Silver; HERO3+ Black; HERO3 Black; HERO3 Silver;

15   HERO3 White; HERO+ LCD; HERO+; and HD HERO2 with Wi-Fi BacPac (collectively, the

16   "Accused Products").[1]

17       On summary judgment, the Court determined that MAX; HERO8 Black; HERO7 Black;

18   HERO7 White; HERO7 Silver; Fusion; HERO6 Black; HERO5 Black; HERO5 Session; HERO4

19   Black; HERO4 Silver; HERO4 Session; HERO3+ Silver; HERO3+ Black; HERO3 Black; HERO3

20   Silver; HERO3 White; HERO+ LCD; HERO+; and HD HERO2 with Wi-Fi BacPac infringe Claim

21

22

23

24

25

26

---

27   [1] All Accused Products are accused of infringement of each asserted claim, except that the HERO7 White, HERO7 Silver, HERO10 Black Bones, and HERO 4k are not accused of infringing claims 4

28   or 6 of the '694 patent.

11 of the '954 patent [**GoPro Position:** (to the extent the claim is not found invalid).[2] [3]   Dkt. 445. There is a pending motion for summary judgment regarding infringement of claim 11 of the '954 patent by HERO13 Black; HERO12 Black; HERO (4k/2024), HERO11 Black (units sold after March 14, 2024) and HERO11 Mini (units sold after May 9, 2024).  *See* Dkt. 606.

Contour seeks damages from GoPro for its alleged infringement.  Contour further alleges that GoPro's infringement has been and remains willful, and that this is an exceptional case, entitling Contour to recover its attorneys' fees.  Contour also seeks additional remedies, including an accounting and ongoing royalties, for any future acts of infringement.

GoPro denies that it has infringed any valid claim of the Asserted Patents.[4]  GoPro contends that the asserted claims of the Asserted Patents are invalid as obvious and anticipated by the prior art,

---

[2] **GoPro's Position:** GoPro's language is a correct statement of the law. "It is axiomatic that one cannot infringe an invalid patent." *Commil USA, LLC v. Cisco Sys., Inc.*, 720 F.3d 1361, 1368 (Fed. Cir. 2013), *vacated in part*, 575 U.S. 632 (2015), *and adhered to in part*, 813 F.3d 994 (Fed. Cir. 2015); *Richdel, Inc. v. Sunspool Corp.*, 714 F.2d 1573, 1580 (Fed. Cir. 1983) ("The claim being invalid there is nothing to be infringed").

[3] **Contour's Position**: GoPro's argument is based on a misunderstanding of the law.  As the Supreme Court explained: "To be sure, if *at the end of the day*, an act that would have been an infringement or an inducement to infringe pertains to a patent that is shown to be invalid, there is no patent to be infringed. But the allocation of the burden to persuade on these questions, and the timing for the presentations of the relevant arguments, are concerns of central relevance to the orderly administration of the patent system. 'Invalidity is an affirmative defense that 'can preclude enforcement of a patent against otherwise infringing conduct.' An accused infringer can, of course, attempt to prove that the patent in suit is invalid; if the patent is indeed invalid, and shown to be so under proper procedures, there is no liability. **That is because invalidity is not a defense to infringement, it is a defense to liability**." *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 644 (2015).  Therefore, GoPro may avoid *liability* for infringement if it succeeds on its invalidity defense, but GoPro still infringes claim 11 of the '954 Patent, as this Court held.  Dkt. 445; Dkt. 708.

[4] **GoPro's Position:** The Court entered two orders granting summary judgment of infringement of Claim 11 of the '954 Patent as to certain of the Accused Products. Dkt. 445; Dkt. 708. GoPro intends to appeal these decisions. As stated in GoPro's Disputed Points of Law, the basis for the Court's summary judgment holdings with respect to Claim 11, while disputed by GoPro, appears on its face to apply to all asserted claims with respect to the products at issue in those motions because all of the claims include or depend from claims that include one or more of the "generate" terms at issue in the motion for summary judgment. As such, the Court's holding forecloses GoPro from raising noninfringement arguments based on those terms and GoPro is not required to reurge them at trial before this Court to preserve them for appeal. *See SanDisk Corp. v. Kingston Tech. Co.*, 695 F.3d 1348, 1355 (Fed. Cir. 2012) (party not "required to repeat its unsuccessful construction arguments to the district court during summary judgment to preserve the issue for appeal" where "parties assumed

including the prior inventions of GoPro, Ambarella, and Looxcie/Vidcie, and for improper inventorship. GoPro contends the asserted patents are unenforceable due to CIPH's inequitable conduct during prosecution of the Asserted Patents. GoPro disputes CIPH's reasonable royalty damages calculation in the event infringement of any valid asserted claim is found. GoPro further disputes CIPH's entitlement to any equitable relief, including but not limited to ongoing royalties even if infringement is found (which GoPro disputes). GoPro further contends that any infringement found was not willful. In addition to GoPro's also contends that CIPH is not entitled to injunctive relief because any alleged injury to CIPH is not irreparable, and, if CIPH is entitled to relief (which GoPro denies), it has an adequate remedy at law.  CIPH is not entitled to enhanced damages or attorneys' fees as it has not adequately pleaded a basis for such an award, and any infringement by GoPro (which GoPro denies) was not and is not willful.  Finally, GoPro requests attorneys' fees in defending this action because CIPH's actions in filing and prosecuting this suit make this an exceptional case under 35 U.S.C. 285 and the standard set forth in *Octane Fitness, LLC v. ICON Health & Fitness, Inc*., 134 S. Ct. 1749 (2014).

**B.    Relief Prayed**

**Contour's Prayer for Relief**:  Contour claims that it is entitled to damages against GoPro for its acts of infringement as to the Accused Products.  Contour further alleges that GoPro's infringement

---

that the court's constructions . . . would also apply to the related terms"); *Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*, 955 F.3d 1317, 1322 (Fed. Cir. 2020) (argument preserved for appeal where "exact same conclusion" the trial reached in deciding a summary judgment "would have sufficed to grant" a summary judgment motion against appellant as to the issue in appeal). CIPH has not presented any dispute to GoPro's understanding. If it does, GoPro reserves the right to present its non-infringement positions to the "generate" terms before the jury and CIPH should be precluded from relying upon the summary judgment order in any way to support infringement of claims other than claim 11 of the '954 Patent.

**Contour's Position**: The Court held that "there is no material dispute of fact preventing a finding that, under the plain meaning of the unconstrued terms, the Accused Products infringe claim 11 of the '954 Patent" (Dkt. 445 at 10) and that "[t]here is no genuine dispute of material fact whether the [Group One and] Group Two products infringe upon Claim 11 of the '954 Patent" (Dkt. 728 at 12–14).  Because it is established that the Accused Products included all limitations of claim 11, Contour is entitled to rely upon those established facts when proving infringement of other claims.

has been and remains willful, and that this is an exceptional case, entitling Contour to recover its attorneys' fees.

As to damages for the Accused Products, Contour seeks reasonable royalty damages between approximately $64,249,059 and $173,293,991, which are calculated by applying a royalty rate of $3.60 to $9.71 per camera for camera sales units (agreed-to by the parties) from January 5, 2015 through December 31, 2024. Contour will seek an accounting and/or ongoing royalty, for products sold after the period covered by the experts' damages reports. In addition to Dr. Jing Hu's, Dr. Ugone's and Dr. Seggev's opinions and testimony, Contour anticipates that it will rely on GoPro, Contour, and Element documents, licenses, marketing materials, and studies; publicly-available documents; testimony of Marc Barros, Jason Green, James Harrison, Richard Mander, Rob Mooney, and Ross Helfer; GoPro corporate witness testimony, including the testimony of Nick Woodman, Spencer Beidelman, Jules Malin, Pablo Lema, Thomas Jolly, and Tyler Gee; and the opinions and testimony of other witnesses, among other evidence.

Contour further seeks an accounting and/or ongoing royalty, for products sold after the trial.

**GoPro's Prayer for Relief:** GoPro disputes the admissibility and veracity of CIPH's damages opinions and its articulation of its claim for reasonable royalty damages and equitable relief herein. As set forth in GoPro's Motion to Exclude Certain Opinions of Dr. Jing Hu and Dr. Keith Ugone, Dr. Ugone's damages theories and calculations violate the Federal Rules of Civil Procedure, this Court's Orders, the Federal Rules of Evidence, including under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), and Federal Circuit Law. Even if liability were found in this case, which GoPro disputes, for the reasons set out in the expert reports of Dr. Patrick F. Kennedy and additional reasons as adduced at trial, the maximum appropriate reasonable royalty is $4,671,477. GoPro denies that CIPH is entitled to any relief, and prays that the court (i) dismiss with prejudice any and all claims by CIPH and order that CIPH take nothing as a result, and that all of CIPH's prayers for relief are denied; (ii) find and declare, and enter judgment, in favor of GoPro and against CIPH, that GoPro has not infringed any claim of any Asserted Patent under 35 U.S.C. § 271; (iii) find and declare, and enter judgment, in favor of GoPro and against CIPH, that GoPro has not willfully infringed either of the asserted patents; (iv) find and declare, and enter judgment, in favor of GoPro and against CIPH, that

1   the asserted patents are invalid under 35 U.S.C. §§ 102 and 103; (v) find and declare, and enter

2   judgment, in favor of GoPro and against CIPH, that the asserted patents are unenforceable for

3   inequitable conduct; (vi) find and declare, and enter judgment, in favor of GoPro and against CIPH,

4   that CIPH is not entitled to any injunctive relief whatsoever; and (vii) find and declare, and enter

5   judgment, in favor of GoPro and against CIPH, that this is an exceptional case under 35 U.S.C. § 285

6   and award GoPro its attorneys' fees. GoPro further requests that, to the extent it is found to infringe

7   any valid asserted claim of the Asserted Patents, CIPH's recovery is limited to a reasonable royalty

8   for past infringement commensurate with 35 U.S.C. § 284 as advocated by GoPro's expert and

9   supported by the evidentiary record.  GoPro may rely on documents, products, papers, licenses,

10  marketing materials, studies, publicly-available documents, and testimony from at least the following

11  witnesses to refute CIPH's claim for damages: Dr. Patrick Kennedy, Dr. Kevin Almeroth, Dr. Itamar

12  Simonson; Didier LeGall, Max Chien, Jerome Pereira, Jason Fournier, Pablo Lema; Nicholas

13  Woodman, Paul Donovan, Rick Loughery, Laura O'Donnell-Dunn, Ojas Ghandi; Dicky Liu; Tyler

14  Gee; Vlad Kazhdan; CIPH's corporate and individual witnesses, and the opinions and testimony of

15  other witnesses, among other evidence.

16  ## II.      THE FACTUAL BASIS OF THE ACTION

17  ### A.      Undisputed Facts

18  #### 1.      Parties and Related Entities

19  1.      Contour IP Holding, LLC is a limited liability company organized and existing under

20  the laws of the State of Utah, having a principal place of business at 26 Patriot Place, Suite 301,

21  Foxboro, MA 02035.  Contour IP Holding, LLC was formed on June 2, 2015.

22  2.      GoPro, Inc. is a corporation organized and existing under the laws of the State of

23  Delaware having a principal place of business at 3000 Clearview Way, San Mateo, California 94402.

24  #### 2.      Patents-in-Suit

25  3.      Provisional application No. 61/382,404 was filed on Sept. 13, 2010.  Both the the'954

26  and '694 patents claim priority benefit to the '404 application.

27

28

4.      U.S. Patent Application Number 13/822,255 was filed on Sept. 13, 2011. The '255 Application resulted in U.S. Patent No. 8,890,954.

5.      U.S. Patent Application Number 14/268,724 was filed on May 2, 2014. The '724 Application resulted in U.S. Patent No. 8,896,694.

6.      U.S. Patent Application Number 14/268,724 is a continuation of U.S. Patent Application Number 13/822,255.

7.      The '954 patent issued on November 18, 2014. The '954 patent is entitled, "Portable Digital Video Camera Configured for Remote Image Acquisition Control and Viewing."

8.      The '694 patent issued on November 25, 2014. The '694 patent is entitled, "Portable Digital Video Camera Configured for Remote Image Acquisition Control and Viewing."

9.      Contour, LLC was the original assignee on the face of the '954 and '694 patents.

10.     On June 4, 2015, Contour, LLC assigned the '954 and '694 patents to Contour IP Holding, LLC.

### 3.      Prior Art

11.     U.S. Publication No. 2010/0118158 ("Boland") qualifies as prior art under pre-AIA 35 U.S.C. 102(e).

12.     U.S. Patent Application Publication No. 2006/070111 to Kurosawa qualifies as prior art under pre-AIA 35 U.S.C. 102(a), (b), and (e).

13.     European Patent No. EP0895623 to Loveman qualifies as prior art under under pre-AIA 35 U.S.C. 102(a) and (b).

14.     Japanese Patent Publication No. 2004328700 to Eguchi qualifies as prior art under under pre-AIA 35 U.S.C. 102(a).

15.     U.S. Patent Application No. 2010/0111489 to Presler qualifies as prior art under under pre-AIA 35 U.S.C. 102(a) and (e).

**B.    Disputed Factual Issues**

16.    Whether Contour has proven by a preponderance of the evidence that GoPro directly infringes Claims 11 and 12 of the '954 patent and Claims 4 and 6 of the '694 patent.[5]

17.    Whether Contour has proven by preponderance of the evidence that GoPro has willfully infringed the asserted claims of the '954 and '694 patents.

18.    Whether GoPro has proven by clear and convincing evidence that any of the following items qualify as prior at under § 102 (to the extent they are not stricken), as GoPro alleges below:

- The Ambarella A5 chipset qualifies as prior art under pre-AIA 35 U.S.C. 102(a), (b), and (g).[6] [7]

- Ambarella's prior invention as reduced to practice in the A5/A5S/A6, the Ambarella Reference Platform, ad/or GoPro HERO3 Silver qualifies as prior art under pre-AIA 35 U.S.C. § 102(g).

---

[5] The Court has already determined MAX; HERO8 Black; HERO7 Black; HERO7 White; HERO7 Silver; Fusion; HERO6 Black; HERO5 Black; HERO5 Session; HERO4 Black; HERO4 Silver; HERO4 Session; HERO3+ Silver; HERO3+ Black; HERO3 Black; HERO3 Silver; HERO3 White; HERO+ LCD; HERO+; and HD HERO2 with Wi-Fi BacPac directly infringe claim 11 of the '954 Patent.  All Accused Products are accused of infringement of each asserted claim, except that the HERO7 White, HERO7 Silver, the HERO10 Black Bones, and HERO 4k are not accused of infringing claims 4 or 6 of the '694 patent.

[6] **GoPro's Position**: CIPH previously agreed that it "does not dispute that Ambarella A5 chip qualifies as prior art under pre-AIA 35 U.S.C. 102(a)." 8/11/2025 Email from M. Krill; *see also* Dkt. 624-4 at 9 (collecting citations). GoPro relied on CIPH's representation in, among other things, its pending Motion for Summary Judgment of Invalidity.  CIPH should be estopped from now reversing position and contesting this point. GoPro has consistently articulated that the "Ambarella A5 chipset" consists of the physical device as on sale and its functionality as demonstrated by the evidence cited in Dr. Almeroth's reports dating back to 2020.  This was the same evidence before CIPH when it agreed that the Ambarella A5 chipset constitutes prior art on August 11, 2025 and in January 2022. Dkt. 624-4 at 9. Now, in order to manufacture a dispute of fact, Dkt. 787 at 16-17, CIPH suddenly claims ignorance as to what constitutes the Ambarella A5 chipset. In view of the record, CIPH's position lacks credibility.

[7] **Contour's Position**: As made clear in Contour's opposition to GoPro's motion for summary judgment (Dkt. 787), GoPro has advanced a new invalidity theory based on "the Ambarella A5 chipset" where "the Ambarella A5 chipset" is not limited to "the Ambarella A5 chipset" but also encompasses Ambarella's confidential presentations such as AMBR2019-227A (see GoPro's MSJ at 17–18 (citing AMBR2019-227A)) as well as all of the documents cited in Dr. Almeroth's Supplemental Report at ¶¶ 215-218, 242-255, 274-276, 350-351, 419.  Thus, Contour asked GoPro to "please identify what GoPro contends the Ambarella A5 chipset' to be" (9/5/2025 Email from M. Krill), but GoPro refused.

- The GoPro HD Motorsports HERO qualifies as prior art under pre-AIA 35 U.S.C. 102(a) and (e).
- U.S. Publication No. 2010/0118158 ("Boland") qualifies as prior art under pre-AIA 35 U.S.C. 102(a).
- The Sony System qualifies as prior art under pre-AIA 35 U.S.C. 102(a) and (b).
- Mr. Woodman's invention qualifies as prior art under at least 35 U.S.C. 102(g).
- The Looxcie System qualifies as prior art under pre-AIA 35 U.S.C. 102(a), (b), and (g).
- The Canon System qualifies as prior art under pre-AIA 35 U.S.C. 102(a) and (b).
- The Nikon System qualifies as prior art under pre-AIA 35 U.S.C. 102(a) and (b).
- U.S. Patent No. 8,199,251 to Woodman qualifies as prior art under pre-AIA 35 U.S.C. 102(a), (e), and (g).

19.     Whether GoPro has proven by clear and convincing evidence that Mr. Woodman conceived of the claimed invention and that it was reduced to practice by him or at his direction in the GoPro Hero HD prototype by no later than September 17, 2009, as GoPro alleges.

20.     Whether Contour has created a genuine dispute of material fact as to whether Mr. Woodman has suppressed or concealed the alleged invention, such that GoPro must rebut the suppression and concealment with clear and convincing evidence.

21.     To the extent it is not stricken, whether GoPro has proven by clear and convincing evidence that Ambarella conceived of the claimed invention and that it was reduced to practice by/at its direction in the A5/A5S/A6, A5S Reference Platform and/or GoPro HERO3 Silver prior to Contour, as GoPro alleges.

22.     To the extent it is not stricken, whether Contour has created a genuine dispute of material fact as to whether Ambarella has suppressed or concealed the alleged invention, such that GoPro must rebut the suppression and concealment with clear and convincing evidence.

23.     To the extent it is not stricken, whether GoPro has proven by clear and convincing evidence that Vidcie conceived of the claimed invention and that it was reduced to practice by/at its direction in the Looxcie System prior to Contour, as GoPro alleges.

24. To the extent it is not stricken, whether Contour has created a genuine dispute of material fact as to whether Vidcie has suppressed or concealed the alleged invention, such that GoPro must rebut the suppression and concealment with clear and convincing evidence.

25. Whether GoPro has proven by clear and convincing evidence that any of the asserted claims of the '954 and '694 patents are invalid as anticipated pursuant to 35 U.S.C. § 102 or rendered obvious pursuant to 35 U.S.C. § 103 by (1) the Sony System alone or in combination with other references; (2) the Canon System in combination with other references; (3) the Nikon System in combination with other references; (4) Mr. Woodman's alleged prior invention alone or in combination with other references; (5) to the extent not stricken, Boland in combination with other references; (6) to the extent not stricken, Looxcie alone or in combination with other references; (7) to the extent not stricken, Ambarella's alleged prior invention alone or in combination with other references. These grounds are fully laid out in Appendix A.

26. Whether GoPro has proven by clear and convincing evidence that any of the asserted claims of the '954 and '694 patents are invalid due to improper inventorship.

27. Whether GoPro has proven by clear and convincing evidence that any of the asserted claims of the '954 and '694 patents are unenforceable due to inequitable conduct.

28. In the event the jury finds that GoPro infringes at least one valid and enforceable asserted claim of the '954 or '694 patents, the amount of damages that Contour is entitled to recover for GoPro's infringement.

**C.    Agreed Statement**

29. There is no agreed statement at the time of the filing of the Pretrial Statement.

**D.    Stipulations**

30. The parties entered six stipulations regarding discovery issues:  Dkt. 366, 471, 574, 581, 592, and 593.

31. The parties agree that demonstrative exhibits and exhibits used solely for impeachment need not be included on their respective exhibit lists.

32.    Any document, including electronic documents, produced from the files of a Party (but not third parties) during the course of this case that indicates on its face that it was authored by an employee, an officer or an agent of the producing Party, or of a subsidiary, predecessor, or affiliate of the producing Party, or of a company acquired by the producing party or its subsidiary are authentic and admissible as records of regularly conducted activity pursuant to Rules 803(6) and 902(11) of the Federal Rules of Evidence, except that Contour does not stipulate to the authenticity of the GoPro Catalog at issue in the IPR proceedings (Ex. 1011 in IPRs). [**GoPro's Position**: Up until the parties exchange a final list of witnesses intended to be called live or via designation as described in the Trial Disclosure Schedule below,][8] each Party maintains its right to withdraw this stipulation as to any document if the party determines that such document is not authentic or genuine, a business record, is incomplete, or includes pages that are not part of the document.

33.    The Parties agree that neither Party shall reference the religious or political beliefs of any expert, employee, or witness.

34.    The parties agree to the following stipulations regarding deposition designations:

    a.   Witnesses presented by video will be divided by the actual time for designations, counter-designations, and final designations for completeness by each party. The parties will provide the Court with a stipulated record of the total time allocated to each party's designations.

    b.   If a party designates deposition testimony, and the other party counter-designates or provides rebuttal designations, both sides' designations will be read or played together in the order in which they originally occurred.

---

[8] **Contour's Position**: GoPro's proposed revision would render this provision a nullity, and thus Contour objects to GoPro's proposed language here.
**GoPro's Position**: CIPH's position would render the stipulation a nullity, as it would be free to withdraw its stipulation in the middle of trial when evidence is being offered. The parties have exchanged exhibit lists and copies of all exhibits, and have had an opportunity to review and make objections to authenticity and foundation. If CIPH believed any of GoPro's exhibits were inauthentic or lacked foundation, it had an opportunity to make those specific objections already. Thus, placing a limit on when such stipulation may be withdrawn at two days prior to a witness testifying is more than reasonable.

c.  The party who seeks to introduce the deposition testimony will be responsible for preparing the video clips to be played, including the counter-designations made by the other side.

d.  The party who seeks to introduce the deposition testimony will be responsible for providing the non-calling party with the final script to be played that includes the timing for each side's portion of the deposition play. This timing shall be exchanged prior to the designations being played at trial.

e.  No objections, preambles, or exchanges between counsel in depositions will be played or read.

f.  Copies of exhibits referred to during the introduction of deposition testimony will be offered into the trial evidence record to the extent admissible and to the extent they are part of the exhibit lists. The parties will provide the Court with the trial exhibit numbers for each exhibit referred to during the deposition testimony.

35.    For each examination,  (whether on direct examination, cross examination, or with an adverse witness) the party examining the witness will provide a binder of all exhibits to be used with the witness to the witness, the Court, and the other party. The parties agree that voluminous exhibits greater than 100 pages need not be provided in the binder.

**E.    Trial Disclosure Schedule**

36.    The parties agree to exchange proposed demonstratives to be used during opening statements no later than 5:00 p.m. Pacific, on Sunday, September 28, 2025.  The parties agree to provide any objections to opening demonstratives[9] no later than 8:00 p.m. Pacific on Sunday, September 28, 2025 and to confer regarding any such objections no later than 9:00 p.m. Pacific on Sunday, September 28, 2025, the day before arguments are presented.

37.    The parties agree that they shall exchange a final list of witnesses intended to be called

---

[9]  As used herein, the term "demonstrative" includes power-points, graphics and animation demonstratives, but does not include scans of exhibits or deposition transcripts or underlining, highlighting, or similar emphasis on such exhibits or deposition transcripts.

live or via designation and in the order in which the parties reasonably anticipate witnesses shall testify (or designations played) by no later than 5:00 p.m. Pacific two calendar days before the trial day on which the witnesses are expected to testify.  For witnesses that both sides intend to use in their case-in-chief, the parties agree that they need only be called once. The parties agree that the non-calling side will be allowed to exceed the scope of direct examination.

38.    The party offering a witness, including examination by a party of its own witness called adverse by the opposing party (but not for cross-examination or adverse witnesses) shall identify any exhibits that it may introduce with that witness and provide any demonstrative exhibits upon which the witness may rely during direct examination by no later than 5:00 p.m. Pacific one day before the witness is expected to testify at trial.   The party seeking to use a demonstrative will provide, via email, a color representation of the demonstrative to the other side in PDF form. For video or animations, the party seeking to use the demonstrative will provide to the other side the general content of what that animation shows in PDF form and/or in video form. For irregularly sized physical exhibits, the party seeking to use the demonstrative will provide, via email, a color representation as a PDF or 8.5 x 11 copies of the exhibits. Demonstratives previously displayed in the course of the trial need not be disclosed again.

39.    Objections to proposed exhibits and demonstratives shall be provided by 7:00 p.m. one day before the witness is expected to testify at trial.  The parties shall confer regarding any objections by no later than 8:30 p.m. Pacific one day before the witness is expected to testify at trial.  To the extent practicable, any unresolved objections (including as to final deposition designations) shall be raised with the Court the morning before the witness is expected to testify at trial.  By agreeing to raise issues the morning before the witness testifies, neither party is waiving its right to contemporaneously object to any testimony or exhibit during the course of trial.

40.    Exhibits (demonstrative or otherwise) to be used for cross-examination or for adverse witnesses need not be exchanged in advance.

41.    Final proposed deposition designations shall be provided by the offering party to the opposing party no later than 5:00 p.m. Pacific two calendar days before the designations are intended to be presented at trial. Deposition designations shall be identified by page:line number and shall be

1  accompanied by a highlighted transcript. The opposing party shall provide its objections and proposed

2  counter-designations no later than 8:00 p.m. Pacific two days before the designations are intended to

3  be presented at trial. Objections to counter-designations or final designations for completeness shall

4  be provided by 5:00 p.m. Pacific the day before the designations are to be presented at trial. The parties

5  shall confer regarding any objections to the designations or counter-designations by no later than 8:30

6  p.m. Pacific the day before the designations are to be presented at trial.

7          42.    The parties agree that demonstrative exhibits to be used for closing arguments shall be

8  exchanged by no later than 7:00 p.m. Pacific the night before closing arguments are reasonably

9  anticipated to be presented to the jury.  For clarity, the parties need not exchange anything the jury has

10  already seen, including exhibits, demonstratives, or trial testimony if limited to the trial testimony with

11  the corresponding name of the witness, position/title, and picture of the witness, without any title or

12  other notations.  The parties agree to exchange any objections to closing demonstratives no later than

13  9:00 p.m. Pacific the night before closing arguments are reasonably anticipated to be presented to the

14  jury and to confer regarding any such objections no later than 10:00 p.m. Pacific the same day.  To

15  avoid any unnecessary confusion, the parties agree to discuss, in advance, the date on which they

16  anticipate closing arguments will occur.  The parties further agree that, depending on the timing of the

17  closing arguments, they may mutually agree not to exchange closing demonstratives but to reserve

18  their right to object contemporaneously to any such demonstratives at the time of presentation.  By

19  way of example but not limitation, if the parties anticipate that closing arguments will take place in

20  the afternoon after substantial testimony that is potentially germane to the closing arguments is

21  provided, which may impact closing demonstratives, the parties agree to confer in good faith and to

22  forgo advance exchange of closing demonstratives if finalizing demonstratives on the proposed

23  disclosure schedule is impracticable.

24          43.    The parties agree that a party need not designate the deposition testimony of any

25  witness that any party has designated as "will call" for trial.  In the event a party's "will call" witness

26  is not available to testify for the party at trial, the parties will confer on a schedule for deposition

27  designations, counter designations, and objections to be exchanged. Notwithstanding the foregoing, if

28  a party intends to offer deposition testimony of an adverse 30(b)(6) witness into evidence (other than

solely for impeachment or rebuttal), despite their availability at trial, those designations must have been previously disclosed on the schedule agreed to by the parties.

## III. DISPUTED LEGAL ISSUES

Contour's disputed legal issues are addressed in Exhibit 6-A.

GoPro's disputed legal issues are addressed in Exhibit 6-B.

## IV. TRIAL PREPARATION

### A. Witnesses to be Called

#### 1. Contour's Witness List[10,11]

- James Harrison [Will call]: The ownership and licensing of the patents-in-suit; agreements regarding the patents-in-suit; consumer demand and value of patents-in-suit; Contour, Inc. and Contour, LLC products; competition, market, and marketing; business plans and financial information.

- Richard Mander [Will call]: The conception, reduction to practice, diligence, public use and demand, validity, prior art, prosecution, and ownership of the Asserted Patents; design, development, operation of, and market for Contour, Inc. and Contour, LLC products, including products practicing the patents-in-suit; competing and alternative technologies; history and operation of Contour, Inc. and Contour, LLC.

- Robert Mooney [Will call]: Organization, ownership, and relationship of Contour, LLC, Contour IP Holding, LLC, Clarke Capital, and iON; licensing and agreements regarding the patents-in-suit; ownership of the patents-in-suit; communications with GoPro; GoPro's Accused Products; financials.

---

[10] GoPro reserves all of its objections to CIPH calling the witnesses in this witness list live or by designation. GoPro objects to CIPH calling a non-adverse witness by deposition who CIPH has not shown to be unavailable and/or outside the Court's subpoena power.

[11] Contour reserves the right to call by deposition any witness for which it has provided designations in accordance with the parties' agreed exchange schedule and the Court's Civil Pretrial Order. Contour reserves the right to call any witness listed on GoPro's witness list

- Ross Helfer [Will call]: The ownership and licensing of the patents-in-suit; agreements regarding the patents-in-suit; consumer demand and value of patents-in-suit; competition, market, and marketing; business plans and financial information.
- Eli Seggev [Will call]: Survey methods, including the constant-sum survey method that he performed.
- Jing Hu [Will call]:  Technology of the patents-in-suit; features provided by GoPro's products concerning Wi-Fi connectivity and their relation to the asserted claims of the patents-in-suit; infringement of the asserted claims of the patents-in suit; validity of the patents-in-suit; secondary considerations of non-obviousness; technical comparability of certain patent licenses; Contour's and iON's products practice the patents-in-suit; technical and usability drawbacks of GoPro's proposed non-infringing alternatives/design outs.
- Keith Ugone [Will call]:  Reasonable royalty damages owed to Contour for infringement of the asserted claims of the patents-in-suit; hypothetical negotiation between Contour and GoPro for a license to the patents-in-suit; comparability of certain patent licenses; lack of commercial acceptability of GoPro's proposed non-infringing alternatives/design outs.
- Nick Woodman [Will call]:  The Accused Products, including their development, value, features and functionality, GoPro's development process, GoPro's knowledge of Contour and the patents-in-suit; Mr. Woodman's alleged prior invention.
- Fabrice Barbier [May call by depo or live]: Development of the Accused Products and GoPro's alleged prior invention theory.
- Marc Barros [May call by depo or live]: The validity of the Asserted Patents and factual bases for Contour's claims against GoPro; history and operation of Contour, Inc. and Contour, LLC; design, development, operation of, and market for Contour, Inc. and Contour, LLC products, including products practicing the patents-in-suit; business plans and financial information; competition with GoPro and others in the market.
- Max Chien [May call by depo or live]: Operation of the Ambarella processors within certain of the Accused Products

- Paul Donovan [May call by depo or live]:  Development of the Accused Products and GoPro's alleged prior invention theory.

- Ron Garriques [May call by depo]: The ownership and licensing of the patents-in-suit; agreements regarding the patents-in-suit; consumer demand and value of patents-in-suit; competition, market, and marketing; business plans and financial information.

- Jason Green [May call by depo or live]:  The validity of the Asserted Patents and factual bases for Contour's claims against GoPro; history and operation of Contour, Inc. and Contour, LLC; design, development, operation of, and market for Contour, Inc. and Contour, LLC products, including products practicing the patents-in-suit; business plans and financial information; competition with GoPro and others in the market.

- Damon Jones [May call by depo or live]: The alleged July 2009 GoPro Catalog, GoPro's alleged prior invention theory, and the alleged marketing/publication of the alleged prior invention, including allegedly at the Tucker Rocky Dealer Show

- Vlad Kazhdan [May call by depo or live]:  Element Electronics Holdings, LLC ("Element") and Element products, licensing of the patents-in-suit; agreements regarding the patents-in-suit; consumer demand and value of patents-in-suit.

- Didier LeGall [May call by depo or live]: Operation of the Ambarella processors within certain of the Accused Products and Contour's and GoPro's interactions with Ambarella over time.

- Laura Dunn O'Donnell [May call by depo or live]:  The conception, reduction to practice, diligence, public use and demand, validity, prior art, prosecution, and ownership of the Asserted Patents; design, development, and operation of Contour products; competing and alternative technologies.

- Rudy Samuels [May call by depo or live]: Development, design, and/or operation of the Accused Products; design, development, and operation of the GoPro YHDC5170 HD Hero Camera System; reverse engineering, tear-down, and copying of Contour's products and patented technology.

- Giovanni Tomaselli [May call by depo or live]: Organization, ownership, and relationship of Contour, LLC, Contour IP Holding, LLC, Clarke Capital, and iON; operation of iON; agreements between iON and Contour, LLC, and Contour IP Holding, LLC; iON's products practicing the patents-in-suit; competition and market for products.

- Spencer Beidelman [May call by depo] Operation of the GoPro Accused Products and mobile apps, firmware updates, addition and removal of features and settings; customer feedback and commercial acceptability.

- Jason Fournier [May call by depo] Banking transactions and stock transfers at JP Morgan, including Nick Woodman's stock transfers in 2014.

- Tyler Gee [May call by depo] GoPro's licensing practices and license agreements; knowledge of the patents-in-suit; competition and the market; indemnification requests.

- Thomas Jolly [May call by depo] Operation of the GoPro Accused Products and mobile apps, firmware updates, addition and removal of features and settings; customer feedback and commercial acceptability.

- Pablo Lema [May call by depo] Operation of the GoPro Accused Products and mobile apps, firmware updates, addition and removal of features and settings; customer feedback and commercial acceptability

- Jules Malin [May call by depo] Data related to the Accused Products including data on customer mobile app usage; features of the Accused Products; customer feedback and commercial acceptability.

- James Palmer [May call by depo]  The circumstances leading up to the licensing of the Patents-in-Suit by Element Electronics Holdings, LLC ("Element") and Element potential products.

- Kiichiro Iga [May call by declaration]: Operation of the Socionext processors within certain of the Accused Products.

## 2.    GoPro's Witness List[12],[13]

- Dr. Kevin Almeroth [Will call]: Technology of the patents-in-suit and state of the art; features provided by GoPro's products; non-infringement of the asserted claims of the patents-in suit; invalidity of the patents-in-suit; lack of secondary considerations of non-obviousness; inequitable conduct; technical comparability or non-comparability of certain patent licenses; technical value of the patents-in-suit; whether CIPH showed that Contour, LLC and Contour, Inc.'s and iON's products practice the patents-in-suit; non-infringing alternatives/design arounds.

- Dr. Patrick Kennedy [Will call]: If valid and infringed, the damages owed to CIPH for infringement of those claims of the patents-in-suit; hypothetical negotiation between CIPH and GoPro for a license to the patents-in-suit; comparability of certain patent licenses; commercial acceptability of GoPro's proposed non-infringing alternatives/design outs.

- Didier LeGall [Will call]: Operation of the Ambarella processors; history of the Ambarella inventions, processors; communications and interactions between Ambarella and Contour, Inc., Contour, LLC, and GoPro; Contour, Inc. and Contour, LLC products and design; usage of video and preview; incorporation of Ambarella processors in reference platforms and other downstream products; state of the art.

- Pablo Lema [Will call]: GoPro and its history, the Accused Products; product design, development, and sales/marketing of the Accused Products; features of the Accused Products; value of features of the GoPro products; consumer preferences and feedback;  use cases for the GoPro products, non-infringing alternatives.

- Dicky Liu [Will call]: the Accused Products; product design, development, and features of the Accused Products and their constituent components;  GoPro App (Quik); history of

---

[12] GoPro reserves the right to call by deposition any witness for which it has provided designations in accordance with the parties' agreed exchange schedule and the Court's Civil Pretrial Order. GoPro reserves the right to call any witness listed on CIPH's witness list.

[13] Contour reserves all of its objections to GoPro calling the witnesses in this witness list live or by designation. Contour objects to GoPro calling a witness by deposition who GoPro has not shown to be unavailable and/or outside the Court's subpoena power.

GoPro; value of features of the GoPro products; consumer preferences; state of the art; technical functionality of the Accused Products and GoPro Mobile App.

- Nicholas D. Woodman [Will call]: GoPro and its history; GoPro's prior art products and prototypes and the development thereof; the state of the art; the conception and reduction to practice of GoPro's prior art products; the diligence of GoPro's conception and reduction to practice of GoPro's prior art products; the lack of abandonment of GoPro's prior art products; sales/ marketing of the GoPro products; expenditures on marketing for the GoPro products; features of the GoPro products; value of features of the GoPro products; consumer preferences; capabilities of Ambarella's chipsets; capabilities of Nordic RF and Wi-Fi chipsets; GoPro licensing practices; knowledge of the Asserted Patents (or lack thereof)

- Max Chien [May call]: Operation of the Ambarella processors; history of the Ambarella processors and inventions; communications and interactions between Ambarella and Contour, Inc., Contour, LLC, and GoPro; Contour, Inc. and Contour, LLC products and design; usage of video and preview; incorporation of Ambarella processors in reference platforms and other downstream products; state of the art.

- Paul "Nipper" Donovan [May call]: GoPro's prior art products and prototypes and the development thereof; the state of the art; the conception and reduction to practice of GoPro's prior art products; the diligence of GoPro's conception and reduction to practice of GoPro's prior art products; the lack of abandonment of GoPro's prior art products; capabilities of Ambarella's chipsets; capabilities of Nordic RF and Wi-Fi chipsets.

- Tyler Gee [May call]: GoPro's licensing practices and license agreements; GoPro's knowledge of the Asserted Patents; GoPro's finances and financial transactions relating to GoPro stock.

- Ojas Ghandi [May call]: The technical operation of the Accused Products; GoPro's design and development of the Accused Products; features and incorporation of camera processors in GoPro products; non-infringing alternatives.

- Rick Loughery [May call]: GoPro and its history; the Accused Products; sales/marketing of the Accused Products; features of the Accused Products; value of features of the GoPro products and their use cases; consumer preferences.

- Jerome Pereira [May call]: The structure, features, functionality, and availability of Vidcie/Looxcie products, including their development, sales, and the state of the art at the time of filing the patents-in-suit.
- Dr. Itamar Simonson [May call]: The design, implementation, and use of consumer surveys, including the survey performed by Dr. Seggev and surveys performed by GoPro.
- Jason Fournier [May call]: The planning, approval, and execution of various stock sales and transfers by Nicholas D. Woodman; GoPro's November 2014 follow-on offering.

### B. Exhibits, Schedules and Summaries

The parties' list of exhibits, schedules and summaries, and objections thereto is attached hereto as Exhibit 1-A (Contour's Trial Exhibit List) and Exhibit 1-B (GoPro's Trial Exhibit List). At trial, the parties will refer to the corresponding exhibit numbers.

### C. Estimate of Trial Time

The parties request the Court allocate each side [**Contour's Position:** 15] [**GoPro's Position:** 17][14] hours for trial, including opening and closing but not including jury selection.

---

[14] **GoPro's Position:** Since the pre-trial conference in *Contour I* where the Court allocated 15 hours to each side, the scope of the case has significantly expanded. For example, CIPH has accused 13 new products, some of which CIPH admits are configured in a materially different manner than those at issue in *Contour I*. Since the pre-trial conference in *Contour I*, CIPH has also added two new infringement theories accusing new functionalities, live streaming via a mobile hotspot and "Phone Preview" using three different video streams. The parties have also taken an additional 22 fact depositions to address the additional issues brought about by CIPH's decision to file a second lawsuit, including additional third-party depositions and potential trial witnesses related to CIPH's willfulness theory and Dr. Ugone's use of the Element license. CIPH also introduced a new expert witness and evidence in the form of Dr. Seggev and his survey, to which GoPro responded with Dr. Simonson. CIPH's narrowing does not address any of the unique issues added since the *Contour I* pre-trial conference. Accordingly, GoPro seeks a modest increase in trial time to account for the expanded scope. The Court has acknowledged CIPH's new infringement theories. *See, e.g.*, Dkt 748.

**Contour's Position**: GoPro's arguments ignore that many issues have been streamlined in this case. Indeed, the Court has already found many of the Accused Products infringe claim 11 of the '954 Patent (Dkt. 445, Dkt. 728). In addition, Contour has reduced its asserted claim to 4 total claims and is only pursuing direct infringement claims (not indirect infringement) at trial. Further, GoPro's claims of "new infringement theories" has been disproven, repeatedly now. Contour has only alleged that "live streaming via a mobile hotspot" infringes, not the "Wi-Fi mode." *See* Dkt 606-4 at 3 ("[T]he HERO9 Black does not have a live preview functionality, but does include live streaming functionality. In live streaming, the user can use their phone **as a mobile hotspot**."); Dkt. 639-4 at 1-

1

**D.    Use of Discovery Responses**

2

The parties' list of designated excerpts from depositions, from interrogatory answers, or

3

responses to requests for admission is attached hereto as Exhibit 2-A (Contour's List of Discovery

4

Responses), Exhibit 2-B (Contour's List of Deposition Designations), Exhibit 2-C (GoPro's List of

5

Deposition Designations); and Exhibit 2-D (GoPro's List of Discovery Designations), other than that

6

to be used solely for impeachment or rebuttal.

7

**E.    Further Discovery or Motions**

8

Concurrent with filing of this Joint Pretrial Statement and Order, the parties are filing their

9

respective Motions *in limine*, and oppositions to the Motions *in limine* will be filed on September 12,

10

2025, as part of their Motions *in limine*, the parties will also address any disputes regarding which of

11

the Court's rulings on Motions *in limine* in *Contour I* (Dkt. 510) are still applicable.  Below, the parties

12

have provided a table listing the Court's rulings on Motions *in limine* in *Contour I* (Dkt. 510) that the

13

parties are in agreement as to applicability.   In addition, the following discovery and/or pretrial

14

motions are pending before the court: Contour's Motion to Exclude Opinions of Dr. Almeroth (Dkt.

15

769); Contour's Motion for Summary Judgment of Infringement (Dkt. 767); GoPro's Motion to

16

Exclude Opinions of Dr. Ugone and Dr. Hu (Dkt. 772); and GoPro's Motion for Summary Judgment

17

of Invalidity (Dkt. 774).

18

19
20
21

| Motion in *Limine* | *Contour I* Ruling (Dkt. 510) | Agreed Position on Applicability in *Contour* III |
|---|---|---|
|  |  |  |

22

23

24

25

26

27

28

2 ("Thus, GoPro has admitted that in the **hotspot use case**, the video is transmitted directly from the camera to the personal portable computing device (and after that, out to a live streaming service), which is sufficient for infringement. . . . GoPro's argument about its products '[g]enerally' using a **Wi-Fi router** … is thus immaterial because GoPro has admitted there is an infringing configuration. **The existence of other allegedly non-infringing functionality does not avoid infringement**.").  And Contour's ***infringement theory***, even with the new products, has not changed and is nothing new. GoPro's claim otherwise has now been repeatedly debunked. *See* Dkt. 769-3 at 9-13; *see also* Dkt. 767-3 at 7-8, 8 n.2; Dkt. 787 at 5-7.  The Court has rejected GoPro's claims of some new infringement theory alleged by Contour numerous times.  *See e.g*., Dkt. 444, Dkt. 510 at 1-2; Dkt. 555 at 22.

| | | |
|---|---|---|
| **Contour's Motion in *Limine* No. 2**: Preclude References to Damages Causing GoPro's Business to Be Negatively Impacted | GRANTED | Still applies |
| **Contour's Motion in *Limine* No. 3**: Preclude "Generalized" Criticism of the Patent Office ("PTO") or Patent Trial and Appeal Board ("PTAB") | GRANTED IN PART | Still applies |
| **Contour's Motion in *Limine* No. 4**: Preclude Reference to the Contour Entities as "Non-Practicing Entities" or Similar Terms | GRANTED IN PART | Still applies |
| **GoPro's Motion in *Limine* No. 2**: Exclude GoPro's Corporate Wealth and Executive Wealth and Compensation | GRANTED IN PART | No longer applies to Mr. Woodman's stock sales, subject to GoPro's pending motion *in limine*.<br><br>Still applies to GoPro's corporate wealth, subject to the limitations and exceptions identified in Dkt. 510, and subject to the parties' disagreement as to the applicability of GoPro's *Contour I* MIL No. 1. |

| | | |
|---|---|---|
| **GoPro's Motion in *Limine* No. 3**: Exclude Testimony from Dr. Erich Speckin | GRANTED | YES |
| **GoPro's Motion in *Limine* No. 8**: Exclude Undisclosed Evidence of Willfulness | GRANTED | NO |
| **GoPro's Motion in *Limine* No. 11**: Exclude References to the Plaintiff as "Contour" | GRANTED IN PART; DENIED IN PART | YES |
| **GoPro's Motion in *Limine* No. 12**: Exclude Reference to the IPR Proceedings | GRANTED IN PART | YES, subject to the limitations and exceptions in Dkt. 510, including that Contour may present IPR evidence as it relates to willfulness. Further, if GoPro references or otherwise opens the door to IPR proceedings, Contour may introduce IPR evidence in rebuttal. *See* Dkt. 510 at 15. |
| **GoPro's Motion in *Limine* No. 13**: Exclude Foreign Production | GRANTED IN PART | YES, subject to the limitations and exceptions in Dkt. 510, including that Contour is not precluded from introducing evidence that otherwise mentions geographic locations of, for instance, |

| | | manufacturing facilities, or reveals a foreign connection. *See* Dkt. 510 at 16. |
|---|---|---|
| **GoPro's Motion in *Limine* No. 14**: Exclude Evidence or Argument Regarding Infringement of Unaccused Products | GRANTED | YES |

## V.    TRIAL ALTERNATIVES AND OPTIONS

### A.    Settlement Discussion

The parties have participated in prior settlement conferences with Magistrate Judge James, Magistrate Judge Corley, and Magistrate Peter Kang.  To date, settlement discussions have been unsuccessful.  The Parties' settlement communications are ongoing, but the Parties have been unable to resolve this matter.  The Parties were ordered to submit a further status report regarding settlement negotiations, including whether a further Settlement Conference would be helpful, by September 5, 2025. Dkt. 776.

### B.    Consent to Trial Before a Magistrate Judge

The Parties do not consent to trial before a magistrate judge.

### C.    Amendments, Dismissals

The parties do not request or propose amendments to the pleadings or dismissals of any parties' claims of defenses.

### D.    Bifurcation, Separate Trial of Issues

The parties have agreed to let the jury give an verdict on the ultimate question of obviousness. The parties have agreed that Contour's request for an accounting/ongoing royalty will not be presented to the jury.  [**Contour's position:** GoPro's defense of inequitable conduct should be tried to the Court

to the extent necessary following the jury trial.][15]  [**GoPro's position**: GoPro's defense of inequitable conduct should pre presented to the jury and the jury should be permitted to give an advisory verdict on the factual findings related to GoPro's inequitable conduct defense.][16] Both parties seek a finding that this case is extraordinary such that fees and costs, or other penalty, should be awarded by the Court.

## VI.    EXHIBITS TO PRETRIAL STATEMENT

The parties' list of exhibits, schedules and summaries are attached as follows:

- 1-A – Contour exhibit list

---

[15] **Contour's position:** "Inequitable conduct is equitable in nature, with no right to a jury, and the trial court has the obligation to resolve the underlying facts of materiality and intent." *Am. Calcar, Inc. v. Am. Honda Motor Co., Inc.*, 651 F.3d 1318, 1333 (Fed. Cir. 2011). Moreover, courts routinely refuse advisory verdicts on inequitable conduct because it "risks contaminating the jury's consideration of infringement and validity and would likely result in more time during the jury phase of the trial spent discussing limiting instructions," and, more importantly, "may influence a jury's decision on that issue by suggesting that the inventor is untrustworthy." *In re Biogen '755 Pat. Litig.*, 2018 WL 3613162, at \*4 (D.N.J. July 26, 2018). Thus, the jury should not be asked to give an advisory verdict.

[16] **GoPro's position**: Inequitable conduct should be tried to the jury to preserve the resources of the Court and parties. *Whitewater West Indus. v. Pac. Surf Designs, Inc.*, Case No.: 3:17-cv-01118-BEN-BLM, 2019 U.S. Dist. LEXIS 86340, at \*8 (S.D. Cal. May 22, 2019), the Court recognized the following reasoning in deciding to present inequitable conduct to the jury and seek an advisory verdict: "Moreover, we have a considerable concern that a bifurcation of the inequitable conduct issue will artificially balkanize the evidence in such a way as to impede a coherent presentation of the facts to the Jury, and result in a considerable amount of duplicate testimony. The Jury will be introduced, by one or both parties, to the patent application process, and we think it to be an inadvisable use of judicial resources to segregate certain factual issues, which may require the recalling of witnesses, for a separate evidentiary Hearing to the Court" (citing *Transclean Corp. v. Bridgewood Services, Inc.*, 101 F. Supp. 2d 788, 792 (D. Minn. 2000)). The same analysis applies here and counsels against bifurcation. Indeed, inequitable conduct is based on Contour's use and failure to disclose the prior art Ambarella chip. The same Ambarella chip forms the basis for GoPro's invalidity theories based on that same chip and its capabilities as demonstrated by Contour's reliance on it during the prosecution of the asserted patent. To the extent the Court agrees, then the Court should submit the issue to the jury as an advisory verdict and present the law consistent with the FBCA Jury Instructions. Specifically, the 2016 Federal Circuit Bar Association Model Patent Jury Instructions indicate "[a]lthough these equitable defenses are ultimately decided by the Court, these instructions are provided for the case in which the Court decides to submit these issues to the jury for advisory findings." Courts in this district and others have allowed the jury to give an advisory verdict on the factual issues underlying a defense on inequitable conduct and, in light of the defenses in the case, should do so here. *See, e.g.*, Jury Verdict, Dkt. 274, *TVIIM, LLC v. McAfee, Inc.*, 4:13-cv-04545-HSG (N.D. Cal.); Jury Verdict, Dkt. 356, *Whitewater West Industries, LTD. v. Pacific Surf Designs, Inc. et al.*, 3:17-cv-01118-BEN-BLM (S.D. Cal.); Final Jury Instructions, Dkt. 540, *Graco Inc. et al v. Carlisle Construction Materials, LLC*, 1:21-cv-00245-JFM (D. Del.).

1     • 1-B – GoPro exhibit list

2     • 2-A – Contour discovery designations

3     • 2-B – Contour deposition designations

4     • 2-C – GoPro discovery designations

5     • 2-D – GoPro deposition designations

6     • 3 – Joint jury instructions

7     • 4-A – Contour verdict form

8     • 4-B – GoPro verdict form

9     • 5-A – Contour voir dire

10    • 5-B – GoPro voir dire

11    • 6-A – Contour's Disputed Points of Law

12    • 6-B – GoPro's Disputed Points of Law

13         At trial, the parties will refer to the corresponding exhibit numbers. Pursuant to the Court's

14    Civil Pretrial Order, the parties have each concurrently filed a statement briefly identifying each item

15    objected to, the grounds for the objection, and the position of the offering party.

16

17

18

19

20

21

22

23

24

25

26

27

28

1

Dated:  September 5, 2025

2

/s/ John R. Keville

Lai L. Yip (SBN 258029)
*lyip@sheppardmullin.com*
SHEPPARD, MULLIN, RICHTER & HAMPTON, LLP
Four Embarcadero Center Seventeenth Floor
San Francisco, CA 94111
Telephone: (415) 434-9100
Facsimile: (415) 875-6700

John R. Keville *(Pro Hac Vice)*
*jkeville@sheppardmullin.com*
Michelle C. Replogle (Pro Hac Vice)
*mreplogle@sheppardmullin.com*
Michael C. Krill *(Pro Hac Vice)*
*mkrill@sheppardmullin.com*
Sunny Akarapu *(Pro Hac Vice)*
*SAkarapu@sheppardmullin.com*
SHEPPARD, MULLIN, RICHTER & HAMPTON, LLP
700 Louisiana Street, Suite 2750
Houston, Texas 77002-2791
Telephone: (713) 431-7100
Facsimile: (713) 431-7024

Counsel for Plaintiff
CONTOUR IP HOLDING LLC

Dated:  September 5, 2025

/s/ Michelle Ann Clark

Michelle Ann Clark (SBN 243777)
Philip C. Ducker (SBN 262644)
Dana Zottola (SBN 346715)
**ALSTON & BIRD LLP**
55 Second Street, Suite 2100
San Francisco, California 94105-0912
Telephone: (415) 243-1000
Facsimile: (415) 243-1001
michelle.clark@alston.com
phil.ducker@alston.com
dana.zottola@alston.com

JOHN D. HAYNES (admitted *pro hac vice*)
**ALSTON & BIRD LLP**
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424
Telephone:    404-881-7000
Facsimile:    404-881-7777
john.haynes@alston.com

1    Karlee N. Wroblewski (admitted *pro hac vice*)
     **ALSTON & BIRD LLP**
2    Bank of America Plaza
     Suite 4000
3    101 South Tryon Street
     Charlotte, NC 28280-4000
4    Telephone:    (704) 444-1000
     Facsimile:    (704) 444-1111
5    karlee.wroblewski@alston.com

6    Elliott C. Riches (admitted *pro hac vice*)
     **ALSTON & BIRD LLP**
7    2200 Ross Avenue
     Suite 2300
8    Dallas, TX 75201
     Telephone:    (214) 922-3492
9    elliott.riches@alston.com

10   Attorneys for Defendant GOPRO, INC.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**CONCURRENCE IN FILING**

2          I, John R. Keville, hereby attest that the concurrence to the filing of this document has been

3   obtained from each signatory hereto.

4

5      Dated:  September 5, 2025              /s/ John R. Keville

6                                                         John R. Keville