# EXHIBIT 3

John R. Keville *(Pro Hac Vice)*
jkeville@sheppardmullin.com
Michelle C. Replogle (Pro Hac Vice)
mreplogle@sheppardmullin.com
Michael C. Krill *(Pro Hac Vice)*
mkrill@sheppardmullin.com
Sunny Akarapu *(Pro Hac Vice)*
SAkarapu@sheppardmullin.com
SHEPPARD, MULLIN, RICHTER &
HAMPTON, LLP
845 Texas Avenue, 25th Floor
Houston, Texas 77002-
Telephone: (713) 431-7100
Facsimile: (713) 431-7024

Lai L. Yip (SBN 258029)
*lyip@sheppardmullin.com*
SHEPPARD, MULLIN, RICHTER &
HAMPTON, LLP
Four Embarcadero Center Seventeenth Floor
San Francisco, CA 94111
Telephone: (415) 434-9100
Facsimile: (415) 875-6700

Attorneys for Plaintiff
CONTOUR IP HOLDING, LLC

JOHN D. HAYNES (admitted *pro hac vice*)
**ALSTON & BIRD LLP**
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424
Telephone:   404-881-7000
Facsimile:    404-881-7777
john.haynes@alston.com

PHILIP DUCKER (State Bar No. 262644)
MICHELLE CLARK (State Bar No. 243777)
**ALSTON & BIRD LLP**
55 Second Street, Suite 2100
San Francisco, CA 94105
Telephone:    415-243-1000
Facsimile:    415-243-1001
phil.ducker@alston.com
michelle.clark@alston.com
dana.zottola@alston.com

Attorneys for Defendant GOPRO, INC.

Additional counsel on signature page

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CONTOUR IP HOLDING, LLC,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>GOPRO, INC.,<br><br>　　　　Defendant. | ) **CONSOLIDATED**<br>) Lead Case No. 17-cv-04738-WHO<br>) Consolidated Case No. 21-cv-02143-WHO<br>)<br>) **JOINT PROPOSED JURY**<br>) **INSTRUCTIONS**[1]<br>)<br>)<br>) Judge: William H. Orrick |

---

[1] GoPro provides these proposed instructions without prejudice to or waiver of any argument regarding appropriate issues to be presented to the jury in this case, any defenses to CIPH's claims for relief, or any acquiescence to the merits of any issue or allegation raised by CIPH. The submission of these instructions is not a concession that any issue belongs to the jury. GoPro reserves the right to modify, amend, and/or supplement its proposed jury instructions as negotiations between the parties progress and/or in response to further guidance from the Court.

)   Date: September 19, 2025
)   Time: 2:00 p.m.
)   Location: Courtroom 2, 17th Floor
)
)

1

## **TABLE OF CONTENTS**

I.     [AGREED]  OPENING JURY INSTRUCTION NO. ____: DUTY OF JURY ............2

II.    [AGREED] OPENING JURY INSTRUCTION NO. ____: WHAT A PATENT IS AND HOW ONE IS OBTAINED ...............................................................................3

III.   [DISPUTED] OPENING JURY INSTRUCTION NO. ____: POSITIONS OF THE PARTIES........................................................................................................4

IV.   [DISPUTED] OPENING JURY INSTRUCTION NO. ____: BURDENS OF PROOF..............................................................................................................6

V.     [AGREED]  OPENING JURY INSTRUCTION NO. ____: WHAT IS EVIDENCE........................................................................................................8

VI.   [AGREED]  OPENING JURY INSTRUCTION NO. ____: WHAT IS NOT EVIDENCE........................................................................................................9

VII.   [AGREED]  OPENING JURY INSTRUCTION NO. ____: EVIDENCE FOR A LIMITED PURPOSE....................................................................................10

VIII.   [AGREED] OPENING JURY INSTRUCTION NO. ____: DIRECT AND CIRCUMSTANTIAL EVIDENCE .......................................................................11

IX.   [AGREED]  OPENING JURY INSTRUCTION NO. ____: RULING ON OBJECTIONS....................................................................................................12

X.     [AGREED]  OPENING JURY INSTRUCTION NO. ____: BENCH CONFERENCES AND RECESSES .......................................................................13

XI.   [AGREED]  OPENING JURY INSTRUCTION NO. ____: CREDIBILITY OF WITNESSES...................................................................................................14

XII.   [NOT DISPUTED]  OPENING JURY INSTRUCTION NO. ____: EXPERT OPINION ..........................................................................................................15

XIII.   [AGREED]  OPENING JURY INSTRUCTION NO. ____: CONDUCT OF JURY.............................................................................................................16

XIV.   [AGREED]  OPENING JURY INSTRUCTION NO. ____: NO TRANSCRIPT AND TAKING NOTES........................................................................................18

XV.   [AGREED]  OPENING JURY INSTRUCTION NO. ____: OUTLINE OF TRIAL..............................................................................................................19

XVI.   [AGREED]  FINAL JURY INSTRUCTION NO. ____: DUTY OF JURY ...............22

XVII.   [AGREED]  FINAL JURY INSTRUCTION NO. ____: WHAT IS EVIDENCE.......23

XVIII.   [AGREED]  FINAL JURY INSTRUCTION NO. ____: WHAT IS NOT EVIDENCE........................................................................................................24

XIX.   [AGREED]  FINAL JURY INSTRUCTION NO. ____: EVIDENCE FOR A LIMITED PURPOSE....................................................................................25

i

XX.      [AGREED] FINAL JURY INSTRUCTION NO. ____: CHARTS AND SUMMARIES IN EVIDENCE ........................................................................... 26

XXI.     [DISPUTED] FINAL JURY INSTRUCTION NO. ____: DEMONSTRATIVES NOT RECEIVED IN EVIDENCE ............................................................. 27

XXII.    [AGREED] FINAL JURY INSTRUCTION NO. ____: DIRECT AND CIRCUMSTANTIAL EVIDENCE ............................................................... 28

XXIII.   [AGREED] FINAL JURY INSTRUCTION NO. ____: RULING ON OBJECTIONS ........................................................................................ 29

XXIV.    [AGREED] FINAL JURY INSTRUCTION NO. ____: CREDIBILITY OF WITNESSES ......................................................................................... 30

XXV.     [DISPUTED] FINAL JURY INSTRUCTION NO. ____: STIPULATIONS OF FACT ................................................................................................ 31

XXVI.    [AGREED] FINAL JURY INSTRUCTION NO. ____: DEPOSITION IN LIEU OF LIVE TESTIMONY ................................................................. 32

XXVII.   [AGREED] FINAL JURY INSTRUCTION NO. ____: STIPULATIONS ABOUT TESTIMONY ...................................................................... 33

XXVIII.  [AGREED] FINAL JURY INSTRUCTION NO. ____: USE OF INTERROGATORIES OF A PARTY ........................................................ 34

XXIX.    [AGREED] FINAL JURY INSTRUCTION NO. ____: EXPERT OPINION ............ 35

XXX.     [DISPUTED] FINAL JURY INSTRUCTION NO. ____: BURDENS OF PROOF.... 36

XXXI.    [AGREED] FINAL JURY INSTRUCTION NO. ____: INTERPRETATION OF CLAIMS .................................................................................................. 38

XXXII.   [AGREED] FINAL JURY INSTRUCTION NO. ____: INDEPENDENT AND DEPENDENT CLAIMS ........................................................................... 41

XXXIII.  [AGREED] FINAL JURY INSTRUCTION NO. ____: INFRINGEMENT – BURDEN OF PROOF ............................................................................... 42

XXXIV.   [DISPUTED] FINAL JURY INSTRUCTION NO. ____: CLAIM 11 OF THE '954 PATENT ..................................................................................... 43

XXXV.    [DISPUTED] FINAL JURY INSTRUCTION NO. ____: DIRECT INFRINGEMENT ...................................................................................... 45

XXXVI.   [AGREED] FINAL JURY INSTRUCTION NO. ____: LITERAL INFRINGEMENT ...................................................................................... 47

XXXVII.  [DISPUTED] FINAL JURY INSTRUCTION NO. ____: WILLFUL INFRINGEMENT ...................................................................................... 48

XXXVIII. [DISPUTED] FINAL JURY INSTRUCTION NO. ____: INVALIDITY – BURDEN OF PROOF ............................................................................... 50

XXXIX.   [AGREED] FINAL JURY INSTRUCTION NO. ____: INVALIDITY— PERSPECTIVE OF ONE OF ORDINARY SKILL IN THE ART ............................ 53

ii

XL.        [DISPUTED] FINAL JURY INSTRUCTION NO. ____: ANTICIPATION ..............54

XLI.       [DISPUTED] FINAL JURY INSTRUCTION NO. ____: INVALIDITY – PRIOR
           INVENTION.........................................................................................................56

XLII.      [DISPUTED] FINAL JURY INSTRUCTION NO. ____: OBVIOUSNESS...............59

XLIII.     [DISPUTED] FINAL JURY INSTRUCTION NO. ____: INVALIDITY – DATE
           OF THE INVENTION..........................................................................................64

XLIV.      [DISPUTED] FINAL JURY INSTRUCTION NO. ____: INEQUITABLE
           CONDUCT ...........................................................................................................66

XLV.       [AGREED] FINAL JURY INSTRUCTION NO. ____: INVENTORSHIP ...............69

XLVI.      [AGREED]  FINAL JURY INSTRUCTION NO. ____: DAMAGES – BURDEN
           OF PROOF.............................................................................................................70

XLVII.     [DISPUTED] FINAL JURY INSTRUCTION NO. ____: REASONABLE
           ROYALTY—DEFINITION.....................................................................................71

XLVIII.    [DISPUTED] FINAL JURY INSTRUCTION NO. ____: REASONABLE
           ROYALTY—FACTORS .........................................................................................73

XLIX.      [AGREED] FINAL JURY INSTRUCTION NO. ____: DATE OF
           COMMENCEMENT OF DAMAGES ..........................................................................75

L.         [DISPUTED] FINAL JURY INSTRUCTION NO. ____: DAMAGES -
           APPORTIONMENT................................................................................................76

LI.        [AGREED] FINAL JURY INSTRUCTION NO. ____: COMPARABLE
           AGREEMENTS......................................................................................................77

LII.       [AGREED]  FINAL JURY INSTRUCTION: DUTY TO DELIBERATE .................78

LIII.      [AGREED]  FINAL JURY INSTRUCTION NO. ____: TAKING NOTES ..............79

LIV.       [AGREED]  FINAL JURY INSTRUCTION NO. ____: CONSIDERATION OF
           EVIDENCE – CONDUCT OF JURY .........................................................................80

LV.        [AGREED]  FINAL JURY INSTRUCTION NO. ____: COMMUNICATION
           WITH THE COURT.................................................................................................82

LVI.       [AGREED]  FINAL JURY INSTRUCTION: RETURN OF VERDICT....................83

1    Pursuant to Judge Orrick's Civil Pretrial Order (Dkt. 756) and the local rules of this Court,

2   Contour IP Holding, LLC ("Plaintiff" or "Contour") and GoPro, Inc. ("Defendant" or "GoPro")

3   respectfully submit the following proposed preliminary jury instructions. In accordance with Section

4   3(a) of the Court's Civil Pretrial Order, agreed-upon instructions are so noted, as are contested

5   instructions. Where the parties have not come to an agreement, the instruction is designated as

6   "Disputed." In these instances and where the parties two proposals are not markedly different,

7   Contour's proposal is highlighted in blue, and GoPro's proposal is highlighted in yellow. Where the

8   parties' two proposals are markedly different, the parties have submitted alternative proposals. For

9   each contested instruction, the parties have annotated the instruction with the proponent's authority

10   for seeking the instruction and the opponent's reason for opposition.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**I.**      **[AGREED]  Opening Jury Instruction No. _____: Duty of Jury[2]**

Members of the jury: You are now the jury in this case.  It is my duty to instruct you on the law.

It is your duty to find the facts from all the evidence in the case.  To those facts you will apply the law as I give it to you.  You must follow the law as I give it to you whether you agree with it or not.  And you must not be influenced by any personal likes or dislikes, opinions, prejudices or sympathy.  That means that you must decide the case solely on the evidence before you.  You will recall that you took an oath to do so.

At the end of the trial I will give you final instructions.  It is the final instructions that will govern your duties.

Please do not read into these instructions, or anything I may say or do, that I have an opinion regarding the evidence or what your verdict should be.

---

[2] Adopted from Manual of Model Civil Jury Instructions, For the District Courts of the Ninth Circuit (2017 Ed., Updated Dec. 2021) (hereinafter "Ninth Circuit Model Civil Jury Instructions"), Instruction 1.3.

**II.    [AGREED] Opening Jury Instruction No. ____: What a Patent Is and How One is Obtained**[3]

All of the claims in this case involve disputes relating to United States patents.  Before summarizing the positions of the parties and the legal issues involved in patent disputes, I am going to show a video for you called *The Patent Process: An Overview for Jurors* that's been prepared by the Federal Judicial Center for the purpose of providing jurors like you some more background on the patent system.

[Play video: Federal Judicial Center, The Patent Process: An Overview for Jurors, narrated by United States District Judge Jeremy Fogel.]

---

[3]    Adapted from N.D. Cal. Model Patent Jury Instructions, Instruction A.1.

**III.     [DISPUTED] Opening Jury Instruction No. ____: Positions of the Parties[45]**

To help you follow the evidence, I'm now going to give you a summary of the positions of the parties.

The parties in this case are Contour IP Holding, LLC, which I will refer to as [Contour] [CIPH] [6] and GoPro, Inc., which I will refer to as GoPro.

This case involves two United States patents owned by Contour. The patents involved in this case are U.S. Patent No. 8,890,954, which the parties and I will often refer to as the '954 Patent, and U.S. Patent No. 8,896,694, which will be referred to as the '694 Patent. The patents were transferred from the named inventors to Contour, LLC and subsequently to Contour IP Holding, LLC. The parties and I will often refer to these patents as the Asserted Patents, or the patents-in-suit.

---

[4] Adapted from Ninth Circuit Model Civil Jury Instructions, Instruction 1.5; N.D. Cal. Model Patent Jury Instructions, Instruction B.1.; *Fujifilm Corp. v. Motorola Mobility*, No. C 12-03587 WHO, Dkt. 329.

[5] **Contour Position:**  The instruction should also inform the jury that claim 11 has been found infringed by the Court. This is the only place the jury will be told about claim 11 in the preliminary instructions, and it is important for the jury to know before the case begins that claim 11 has been decided, so that they will understand why the parties are not required to address claim 11 for direct infringement, even though claim 11 remains at issue for other claims and defenses.

**GoPro Position:**  CIPH's addition that the Court has found claim 11 infringed unfairly prejudices GoPro because doing so in the preliminary instructions before GoPro has the opportunity to present evidence or argument will inherently taint the jury against GoPro before it has a chance to be heard. To the extent an instruction regarding the infringement of claim 11 is given by the court during the Preliminary Instructions, the Court should use the balanced (and agreed) instruction proposed below (Instruction_XXXIV ) that provides that a finding of infringement is not a finding of liability and that GoPro may still prevail on invalidity.

[6] **GoPro position**: There are multiple "Contour" entities. CIPH should be referred to by either its full name "Contour IP Holding, LLC, or an abbreviation "CIPH" which adequately distinguishes it from Contour, Inc. and Contour, LLC to avoid confusing the jury. Now, more than ever, as CIPH seeks to rely on a license between itself (not Contour) and Element, the distinction between the entities is particularly salient.  GoPro is amenable to the instruction as drafted as long as it is clarified that there are multiple, different and unrelated Contour entities.  The addition of a sentence such as: "You are likely to hear about multiple different entities with the term Contour in their name, but only Contour IP Holding, LLC is the plaintiff in this case."

**Contour Position**:  GoPro is simply re-packaging arguments that the Court has already rejected when denying GoPro's Motion in Limine No. 11 to "Exclude References to the Plaintiff as 'Contour.'" *See* Dkt. 510 at 14. As the Court explained, "GoPro seeks to preclude the plaintiff (whose full corporate name is Contour IP Holdings, LLC) from suggesting it is the same company as Contour, LLC or Contour, Inc. That alone would be reasonable and I do not expect the plaintiff to do so. … To that limited extent, the motion is GRANTED. But the main argument in GoPro's motion goes beyond that: it moves to prevent the plaintiff from referring to itself as 'Contour' at all. … Although there might be some slight confusion arising from the similarity between the entities' names, that theoretical confusion does not substantially outweigh Contour's right to refer to itself by its name and 'introduce [its] compan[y] to the jury.'" *Id.* at 14. GoPro's argument here should be rejected for the same reasons. Moreover, this instruction makes clear that "[t]he patents were transferred from the named inventors to Contour, LLC and subsequently to Contour IP Holding, LLC," negating GoPro's complaints.

---

4

[Contour] [CIPH] seeks money damages from GoPro for allegedly infringing the patents-in-suit by making, using, selling or offering for sale products that [Contour] [CIPH] argues are covered by one or more claims of each patent.  The Asserted Claims are claims 11 and 12 of the '954 Patent and claims 4 and 6 of the '694 Patent.  The Accused Products are HERO13 Black; HERO12 Black; HERO11 Black Mini; HERO11 Black; HERO10 Black bones; HERO10 Black; HERO (4k/2024); HERO9 Black; HERO8 Black; MAX; HERO7 Black; HERO7 White; HERO7 Silver; Fusion; HERO6 Black; HERO5 Black; HERO5 Session; HERO4 Black; HERO4 Silver; HERO4 Session; HERO3+ Silver; HERO3+ Black; HERO3 Black; HERO3 Silver; HERO3 White; HERO+ LCD; HERO+; and HD HERO2 with Wi-Fi BacPac.  The Court has already determined that MAX; HERO8 Black; HERO7 Black; HERO7 White; HERO7 Silver; Fusion; HERO6 Black; HERO5 Black; HERO5 Session; HERO4 Black; HERO4 Silver; HERO4 Session; HERO3+ Silver; HERO3+ Black; HERO3 Black; HERO3 Silver; HERO3 White; HERO+ LCD; HERO+; and HD HERO2 with Wi-Fi BacPac directly infringe claim 11 of the '954 Patent.

GoPro denies that it has infringed the asserted claims of the patents-in-suit.  GoPro also argues that the asserted claims are invalid.  Invalidity is a defense to infringement.

Your job is to decide whether the Asserted Claims have been infringed by GoPro, and whether the Asserted Claims are invalid.  If you decide that any claim of the asserted patents has been infringed and is not invalid, you will then need to decide any money damages to be awarded to [Contour] [CIPH] to compensate it for the infringement.  You will also need to make a finding as to whether the infringement was willful.  If you decide that any infringement was willful, that decision should not affect any damage award you make.  I will take willfulness into account later.

IV.    **[DISPUTED] Opening Jury Instruction No. _____: Burdens of Proof**[78]

In this case, the facts must be proven by a required amount of evidence known as the burden of proof.  There are two burdens of proof that you will apply in this case: preponderance of the evidence and clear and convincing evidence.

Contour has the burden of proving patent infringement, damages, and willful infringement by a preponderance of the evidence.  When a party has the burden of proving any claim by a

---

[7] Adapted from Ninth Circuit Model Civil Jury Instructions, Instructions 1.6 and 1.7.

[8] **Contour Position:** Contour's additions to specify which burdens apply to which claims and defenses are neutral and fair, and simply identify which burdens of proof apply to which issues in the case.  This is important to provide context for the jury, so that they know when standards to keep in mind when considering evidence on each of the different claims and defenses.

As to the presumption of validity, the law is clear that "[a] patent shall be presumed valid." 35 U.S.C. § 282.  Contour's instruction regarding the presumption of validity is adapted from the 2019 AIPLA Model Patent Jury Instructions, Instruction 1.2.  Referencing the presumption is important to explaining to the jury why GoPro's burden on invalidity is higher than Contour's burden on infringement.  In light of that context, it is important that the jury understand the presumption and why GoPro's burden of proof is clear and convincing evidence.  Courts, including in this District, have approved of such instructions on the presumption of validity before.  *See, e.g., Int'l Bus. Machines Corp. v. Groupon, Inc.*, C.A. No. 16-122-LPS, 2018 WL 3007662, at *2 (D. Del. June 15, 2018) ("it is reasonable and appropriate to provide the jury with some brief explanation for why the burden of proving invalidity is different and greater than the burden of proving infringement and damages.  Limited references, particularly in the Court's jury instructions, to the presumption of validity, do not pose a substantial risk of jury confusion or unfair (much less 'irreparabl[e]') prejudice to Groupon") (citation omitted); *Voltera Semiconductor Corp. v. Primarion, Inc.*, No. C-08-05129 JCS , 2011 WL 4079223, at *10 (N.D. Cal. Sept. 12, 2011) ("approving of instruction that explained that the clear and convincing standard 'is used because a patent is entitled to a statutory presumption of validity until it is proven invalid by clear and convincing evidence'").

**GoPro Position:**  CIPH seeks to modify the Ninth Circuit model instruction in a manner that is argumentative, unnecessary and prejudicial to GoPro.  Neither the Ninth Circuit model nor the N.D. Cal. Model include this language and CIPH offers no compelling justification for modifying the model to include entirely one-sided, self-serving language.  First, the burden of proof for each claim is discussed in context and in a balance manner in the instructions below, making CIPH's addition redundant and confusing.  Second, Courts routinely reject telling the jury that the patent is "presumed" valid because the jury will likely overweigh that instruction. *See Chiron Corp. v. Genentech, Inc.*, 363 F.3d 1247, 1258-59 (Fed. Cir. 2004) ("the district court did not err in declining to include a jury instruction on the presumption of validity because the jury applied the correct 'clear and convincing evidence' standard.").  Other courts have excluded such language as confusing and requiring additional instructions to clarify. *Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*, No. 2:15-CV-1202-WCB, 2017 WL 959592, at *6 (E.D. Tex. Mar. 13, 2017) (Bryson, C.J. by designation) (excluding use of the phrase "presumption of validity," holding that "the use of the term 'presumption' would require a further definitional instruction by the Court, without leading to any greater insight on the jury's part as to the nature of the burden of proof on the validity issues").  This instruction will also be hugely confusing to the jury, who has not been instructed on the meaning, legal standard for, or elements of infringement, damages, willfulness, invalidity, etc.  There is no reason to deviate from the existing model instruction.  By picking and choosing phrases it likes from various models, CIPH seeks to compile a favorable, argumentative instruction skewed to its benefit (and to GoPro's prejudice).  CIPH's instruction regarding a "presumption" of validity is improper as discussed in the prior footnote.

preponderance of the evidence, it means you must be persuaded by the evidence that the claim is more probably true than not true. You should base your decision on all of the evidence, regardless of which party presented it.

A patent is presumed to be valid. In other words, it is presumed to have been properly granted by the Patent Office.[9][10] Because of this presumption, GoPro has the burden of proving invalidity by clear and convincing evidence. When a party has the burden of proving any defense by clear and convincing evidence, it means that the party must present evidence that leaves you with a firm belief or conviction that it is highly probable that the factual contentions of the defense are true. This is a higher standard of proof than proof by a preponderance of the evidence, but it does not require proof beyond a reasonable doubt.

---

[9] **Contour Position:** Adopted from 2019 AIPLA Model Patent Jury Instructions, Instruction 1.2. Contour's position is provided in the previous footnote.
[10] **GoPro Position:** There is no reason to deviate from the existing model instruction. By picking and choosing phrases it likes from various models, CIPH seeks to compile a favorable, argumentative instruction skewed to its benefit (and to GoPro's prejudice). CIPH's instruction regarding a "presumption" of validity is improper as discussed in the prior footnote.

**V.    [AGREED]  Opening Jury Instruction No. ____: What is Evidence[11]**

The evidence you are to consider in deciding what the facts are consists of:

1.    the sworn testimony of any witness;

2.    the exhibits that are admitted into evidence;

3.    any facts to which the lawyers have agreed; and

4.    any facts that I may instruct you to accept as proved.

---

[11] Ninth Circuit Model Civil Jury Instructions, Instruction 1.9.

**VI.    [AGREED]  Opening Jury Instruction No. _____: What is Not Evidence**[12]

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are.  I will list them for you:

    (1)    Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they may say in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

    (2)    Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

    (3)    Testimony that is excluded or stricken, or that you are instructed to disregard, is not evidence and must not be considered. In addition, some evidence may be received only for a limited purpose; when I instruct you to consider certain evidence only for a limited purpose, you must do so and you may not consider that evidence for any other purpose.

    (4)    Anything you see or hear when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

---

[12] Ninth Circuit Model Civil Jury Instructions, Instruction 1.10.

**VII.    [AGREED]  Opening Jury Instruction No. _____: Evidence for a Limited Purpose**[13]

Some evidence may be admitted only for a limited purpose.

When I instruct you that an item of evidence has been admitted only for a limited purpose, you must consider it only for that limited purpose and not for any other purpose.

---

[13] Ninth Circuit Model Civil Jury Instructions, Instruction 1.11.

**VIII.    [AGREED] Opening Jury Instruction No. ____: Direct and Circumstantial Evidence[14]**

Evidence may be direct or circumstantial.

Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did.

Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence.  By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night. However, other evidence, such as a turned on garden hose, may provide a different explanation for the presence of water on the sidewalk. Therefore, before you decide that a fact has been proved by circumstantial evidence, you must consider all the evidence in the light of reason, experience and common sense.

The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence

---

[14] Ninth Circuit Model Civil Jury Instructions, Instruction 1.12.

**IX.    [AGREED]  Opening Jury Instruction No. _____: Ruling on Objections[15]**

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. If I overrule the objection, the question may be answered or the exhibit received. If I sustain the objection, the question cannot be answered, and the exhibit cannot be received. Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore that evidence. That means when you are deciding the case, you must not consider the stricken evidence for any purpose.

---

[15] Ninth Circuit Model Civil Jury Instructions, Instruction 1.13.

**X.      [AGREED]  Opening Jury Instruction No. _____: Bench Conferences and Recesses[16]**

From time to time during the trial, it may become necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury is present in the courtroom, or by calling a recess. Please understand that while you are waiting, we are working. The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

Of course, we will do what we can to keep the number and length of these conferences to a minimum. I may not always grant an attorney's request for a conference. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

---

[16] Ninth Circuit Model Civil Jury Instructions, Instruction 1.20.

**XI.     [AGREED]  Opening Jury Instruction No. _____: Credibility of Witnesses[17]**

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

(1)     the opportunity and ability of the witness to see or hear or know the things testified to;

(2)     the witness's memory;

(3)     the witness's manner while testifying;

(4)     the witness's interest in the outcome of the case, if any;

(5)     the witness's bias or prejudice, if any;

(6)     whether other evidence contradicted the witness's testimony;

(7)     the reasonableness of the witness's testimony in light of all the evidence; and

(8)     any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said.  Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

---

[17] Ninth Circuit Model Civil Jury Instructions, Instruction 1.14.

1    **XII.    [NOT DISPUTED]  Opening Jury Instruction No. ____: Expert Opinion[1819]**

2        Some witnesses, because of education or experience, will be permitted to state opinions and

3    the reasons for those opinions.

4        Such opinion testimony should be judged like any other testimony. You may accept it or reject

5    it, and give it as much weight as you think it deserves, considering the witness's education and

6    experience, the reasons given for the opinion, and all the other evidence in the case.

---

[18] Adapted from Ninth Circuit Model Civil Jury Instructions, Instructions 2.13.

[19]    **GoPro Position:**  GoPro objects to this instruction as unnecessary as a preliminary instruction. The jury will likely be instructed on expert testimony in the final jury instructions.  *E.g.*, *Motorola Mobility, LLC v. Fujifilm, Inc.*, 12-cv-03587-WHO, Dkt. 329 (N.D Cal. 2015).

**Contour Position:**  Courts, including this Court, regularly give a limited set of instructions in both preliminary and final jury instructions, which may be separated by more than a week.  It is unreasonable to expect the jury to remember such instructions precisely, and thus helpful to include these types of basic instructions in both instances.  Under GoPro's proposal the Court would only tell the jury what is and is not evidence after the evidence is closed, leaving the jury confused and trying to go back and sort out memories from the prior days of testimony.  For example, here, the jury should be instructed on expert testimony in preliminary instructions (i.e., before hearing the expert testimony), rather than only in the final instructions (i.e., after already hearing expert testimony).

**XIII.    [AGREED]  Opening Jury Instruction No. ____: Conduct of Jury[20]**

I will now say a few words about your conduct as jurors.

First, keep an open mind throughout the trial, and do not decide what the verdict should be until you and your fellow jurors have completed your deliberations at the end of the case.

Second, because you must decide this case based only on the evidence received in the case and on my instructions as to the law that applies, you must not be exposed to any other information about the case or to the issues it involves during the course of your jury duty.  Thus, until the end of the case or unless I tell you otherwise:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it.  This includes discussing the case in person, in writing, by phone, tablet, or computer, or any other electronic means, via email, text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, Tiktok, or any other forms of social media.  This applies to communicating with your fellow jurors until I give you the case for deliberation, and it applies to communicating with everyone else including your family members, your employer, the media or press, and the people involved in the trial, although you may notify your family and your employer that you have been seated as a juror in the case, and how long you expect the trial to last.  But, if you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and report the contact to the court.

Because you will receive all the evidence and legal instruction you properly may consider to return a verdict:  do not read, watch or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own.  Do not visit or view any place discussed in this case, and do not use the Internet or any other resource to search for or view any place discussed during the trial.  Also, do not do any research about this case, the law, or the people involved—including the parties, the

---

[20] Ninth Circuit Model Civil Jury Instructions, Instruction 1.15.

witnesses or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings. If any juror is exposed to any outside information, please notify the court immediately.

**XIV.    [AGREED]  Opening Jury Instruction No. ____: No Transcript and Taking Notes[21]**

I urge you to pay close attention to the trial testimony as it is given. During deliberations at the end of trial, you will not have a transcript of the trial testimony.

If you wish, you may take notes to help you remember the evidence. If you do take notes, please keep them to yourself until you go to the jury room to decide the case. Do not let notetaking distract you. When you leave, your notes should be left in an envelope in the jury room. No one will read your notes.

Whether or not you take notes, you should rely on your own memory of the evidence.  Notes are only to assist your memory. You should not be overly influenced by your notes or those of other jurors.

---

[21] Ninth Circuit Model Civil Jury Instructions, Instructions 1.17 and 1.18.

1  **XV.    [AGREED]  Opening Jury Instruction No. ____: Outline of Trial[22]**

2           The trial will now begin. First, each side may make an opening statement. An opening

3  statement is not evidence. It is simply an outline to help you understand what that party expects the

4  evidence will show.

5           The presentation of evidence will then begin. Witnesses will take the witness stand and the

6  documents will be offered and admitted into evidence. There are two standards of proof that you will

7  apply to the evidence, depending on the issue you are deciding. On some issues, you must decide

8  whether something is more likely true than not. On other issues you must use a higher standard and

9  decide whether it is highly probable that something is true.

10          [Contour] [CIPH] will present its evidence on its contention that Claims 11 and 12 of the '954

11 patent and Claims 4 and 6 of the '694 patent have been and continue to be infringed by GoPro and that

12 the infringement has been and continues to be willful and on the amount of a reasonable royalty. These

13 witnesses will be questioned by Contour's counsel in what is called direct examination. After the direct

14 examination of a witness is completed, the opposing side has an opportunity to cross-examine the

15 witness. Finally, Contour's counsel has the opportunity to question the witness one more time in what

16 is called redirect examination. To prove infringement of any claim, [Contour] [CIPH] must persuade

17 you that it is more likely than not that alleged infringer has infringed that claim. To persuade you that

18 any infringement was willful, [Contour] [CIPH] must prove that it is more likely true than not true that

19 that the infringement was willful.

20          After [Contour] [CIPH] has presented its witnesses, GoPro will call its witnesses, who will

21 also be examined and subject to cross-examination and redirect. GoPro will present its evidence that

22 the asserted claims of the '954 and '694 patents are invalid. To prove invalidity of any claim, GoPro

23 must persuade you that it is highly probable that the claim is invalid. In addition to presenting its

24 evidence of invalidity, GoPro will put on evidence responding to Contour's infringement, willfulness,

25 and reasonable royalty contentions.

26          [Contour] [CIPH] will then return and will put on evidence responding to GoPro's contention

27 that the claims of the '954 and '694 patents are invalid. Plaintiff will also have the option to put on

28 _____

[22] Adapted from N.D. Cal. Model Patent Jury Instructions, Instruction A.5.

1    what is referred to as "rebuttal" evidence to any evidence offered by GoPro of non-infringement or

2    lack of willfulness.

3         Finally, GoPro will have the option to put on "rebuttal" evidence to any evidence offered by

4    [Contour] [CIPH] on the validity of the asserted claims of the '954 and '694 patents.

5         Because the evidence is introduced piecemeal, you need to keep an open mind as the evidence

6    comes in and wait for all the evidence before you make any decisions. In other words, you should keep

7    an open mind throughout the entire trial.

8         The parties may present the testimony of a witness by reading from his or her deposition

9    transcript or playing a videotape of the witness's deposition testimony. A deposition is the sworn

10    testimony of a witness taken before trial and is entitled to the same consideration as if the witness had

11    testified at trial.

12         After the evidence has been presented, the attorneys will make closing arguments and I will

13    give you final instructions on the law that applies to the case. Closing arguments are not evidence.

14    After the closing arguments and instructions, you will then decide the case.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**<u>INSTRUCTIONS AT THE CLOSE OF EVIDENCE</u>**

**XVI.    [AGREED]   Final Jury Instruction No. _____: Duty of Jury[23]**

Members of the Jury: Now that you have heard all of the evidence, it is my duty to instruct you on the law that applies to this case.

A copy of these instructions will be sent to the jury room for you to consult during your deliberations.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

Please do not read into these instructions or anything that I may say or do or have said or done that I have an opinion regarding the evidence or what your verdict should be.

---

[23] Adopted from Ninth Circuit Model Civil Jury Instructions, Instruction 1.4.

**XVII.  [AGREED]  Final Jury Instruction No. _____: What is Evidence**[24]

The evidence you are to consider in deciding what the facts are consists of:

1.      the sworn testimony of any witness;

2.      the exhibits that are admitted into evidence;

3.      any facts to which the lawyers have agreed; and

4.      any facts that I may instruct you to accept as proved.

---

[24] Adopted from Ninth Circuit Model Civil Jury Instructions, Instruction 1.9.

23

**XVIII. [AGREED]  Final Jury Instruction No. _____: What is Not Evidence[25]**

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are.

I will list them for you:

(1)    Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they said in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2)    Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3)    Testimony that is excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered. In addition, some evidence was received only for a limited purpose; when I instructed you to consider certain evidence only for a limited purpose, you must do so and you may not consider that evidence for any other purpose.

(4)    Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

---

[25] Adopted from Ninth Circuit Model Civil Jury Instructions, Instruction 1.10.

1    **XIX.   [AGREED]  Final Jury Instruction No. _____: Evidence for a Limited Purpose**[26]

2          Some evidence may have been admitted only for a limited purpose.  You must consider it only

3    for that limited purpose and not for any other purpose.

---

28    [26] Adapted from Ninth Circuit Model Civil Jury Instructions, Instruction 1.11.

XX.     **[AGREED] Final Jury Instruction No. _____: Charts and Summaries in Evidence**[27]

Certain charts and summaries have been received into evidence to illustrate information brought out in the trial. Charts and summaries are only as good as the underlying evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

---

[27] Adapted from Ninth Circuit Model Civil Jury Instructions, Instruction 2.15.

**Contour Position:**  Contour's agreement is subject to charts or summaries actually being received into evidence.  If that does not happen, there is no reason to provide this instruction to the jury.

**XXI.  [DISPUTED] Final Jury Instruction No. \_\_\_\_: Demonstratives Not Received in Evidence**[28][29]

Certain demonstrative slides or illustrative aids, charts, and summaries not received in evidence have been shown to you in order to help explain the contents of books, records, documents, or other evidence in the case. Slides, charts, and summaries are only as good as the underlying evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

---

[28] Adapted from Ninth Circuit Model Civil Jury Instructions, Instruction 2.14; *Fujifilm Corp. v. Motorola Mobility LLC*, No. 12-cv-03587, Dkt. 329, Final Jury Instruction No. 6.

[29] **Contour Position:**  Contrary to GoPro's argument, nothing in this instruction suggests demonstratives are evidence.  To the contrary, the instruction clearly states the jury should focus on the underlying evidence.  And GoPro's contention that this instruction is limited to FRE 1006 is misplaced: Ninth Circuit Model Civil Jury Instruction 2.14 applies to any demonstrative materials not admitted in evidence. *See* Comment to Instruction 2.14 ("This instruction applies only when the charts and summaries are not admitted into evidence and are used for demonstrative purposes.").  Contour's proposal tracks the Ninth Circuit model except, it adds the words "demonstrative" and "slides" which are words the jury is more likely to hear used by the witnesses and lawyers in this case.  This Court has also given an instruction using the word "demonstrative" in *Fujifilm*.  Nevertheless, Contour has proposed "demonstrative slides *or illustrative aids*" to alleviate GoPro's concerns.

**GoPro Position:**  CIPH's instruction modifies the Ninth Circuit model to incorrectly imply that demonstratives or "illustrative aids" are admissible evidence.  They are not. *See* Fed. R. Evid. 107 ("An illustrative aid is not evidence and must not be provided to the jury during deliberations unless …"); *Stoker v. Stemco*, No. 2:11-cv-00214-JRG-RSP, 2013 WL 3786346 *4–5 (E.D. Tex. Jul. 16, 2013) ("[D]emonstratives are jury aids only; they are not exhibits and not evidence. By definition, demonstratives are never part of the record.") (internal quotation marks omitted); *Baugh v. Cuprum S.A. De C. V.*, 730 F.3d 701, 707 (7th Cir. 2013) ("[D]emonstrative exhibits are not evidence at all.").  The model instruction does not use the word "demonstratives" or "illustrative aids" at all.  CIPH's proposed revision compounds the problem because it suggests that demonstrative slides are something different than "illustrative aids."  They are not. *See* Fed. R. Evid. 107, Advisory Committee Note.

**XXII.  [AGREED]  Final Jury Instruction No. _____: Direct and Circumstantial Evidence**[30]

Evidence may be direct or circumstantial.

Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did.

Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence.  By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night. However, other evidence, such as a turned on garden hose, may provide a different explanation for the presence of water on the sidewalk. Therefore, before you decide that a fact has been proved by circumstantial evidence, you must consider all the evidence in the light of reason, experience and common sense.

The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

---

[30] Adopted from Ninth Circuit Model Civil Jury Instructions, Instruction 1.12.

**XXIII. [AGREED]  Final Jury Instruction No. _____: Ruling on Objections**[31]

There are rules of evidence that control what can be received into evidence. When a lawyer asked a question or offered an exhibit into evidence and a lawyer on the other side thought that it is not permitted by the rules of evidence, that lawyer may have objected. If I overruled the objection, the question was answered or the exhibit received. If I sustained the objection, the question was not answered, and the exhibit was not received. Whenever I sustained an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may have ordered that evidence be stricken from the record and that you disregard or ignore that evidence. That means when you are deciding the case, you must not consider the stricken evidence for any purpose.

---

[31] Adopted from Ninth Circuit Model Civil Jury Instructions, Instruction 1.13.

## XXIV. [AGREED]  Final Jury Instruction No. _____: Credibility of Witnesses[32]

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

(1)     the opportunity and ability of the witness to see or hear or know the things testified to;

(2)     the witness's memory;

(3)     the witness's manner while testifying;

(4)     the witness's interest in the outcome of the case, if any;

(5)     the witness's bias or prejudice, if any;

(6)     whether other evidence contradicted the witness's testimony;

(7)     the reasonableness of the witness's testimony in light of all the evidence; and

(8)     any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said.  Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

---

[32] Adopted from Ninth Circuit Model Civil Jury Instructions, Instruction 1.14.

**XXV.  [DISPUTED] Final Jury Instruction No. _____: Stipulations of Fact[3334]**

        The parties have agreed to certain facts to be placed in evidence as Joint Exhibit __ that will be read to you.[35]  GoPro has provided unit sales through December 31, 2024, and the parties agree, solely for purposes of this litigation, that the number of unit sales set forth in the Joint Exhibit shall be treated as units that are properly included in the reasonable royalty base should damages be awarded in this case.  You must therefore treat these facts as having been proved.

---

[33] Adapted from Ninth Circuit Model Civil Jury Instructions, Instruction 2.2; *see also* Joint Stipulation at Dkt. No. 593 (with updated Exhibit A to be filed April 10, 2022).

[34] **Contour Position:**  Contour's language is the agreed language in the parties' stipulation and is therefore appropriate.  The Court should read that stipulation to the jury so that it understands the context and importance of the data in the joint exhibit.  For the convenience of the Court, parties, and the jury it is easier to include the stipulation directly into the jury instruction rather than requiring reference to another document.

[35]  **GoPro Position:**  GoPro has added the stipulated position from this instruction in the stipulations of the pre-trial conference statement, which is appropriate to provide to the jury.  It makes little sense to read one stipulated fact into this instruction while listing out stipulated facts in a separate document. Stipulated facts should be consolidated and presented to the jury in one place. It would be redundant to include the same stipulation in both the joint exhibit and the jury instructions.

31

**XXVI. [AGREED]  Final Jury Instruction No. _____: Deposition in Lieu of Live Testimony[36]**

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded.

You heard some witnesses testify by deposition.  Insofar as possible, you should consider deposition testimony, presented to you in court in lieu of live testimony, in the same way as if the witness had been present to testify.

---

[36] Adapted from Ninth Circuit Model Civil Jury Instructions, Instruction 2.4.

1    **XXVII.        [AGREED][37]  Final Jury Instruction No. _____: Stipulations about Testimony[38]**

2         The parties have agreed that you should consider the declaration of Kiichiro Iga, portions of

3    which were read to you, as testimony in the same way as if it had been given here in court.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27    _____
[37] This instruction is agreed subject to a party actually reading a portion of Mr. Iga's declaration at
trial.
28    [38] Adapted from Ninth Circuit Model Civil Jury Instructions, Instructions 2.1 and 2.4.

**XXVIII.**        **[AGREED]**[39]  **Final Jury Instruction No. ____: Use of Interrogatories of a Party**[40]

Evidence was presented to you in the form of answers of one of the parties to written interrogatories submitted by the other side. These answers were given in writing and under oath before the trial in response to questions that were submitted under established court procedures. You should consider the answers, insofar as possible, in the same way as if they were made from the witness stand.

---

[39] This instruction is agreed subject to a party actually introducing interrogatories at trial.
[40] Adopted from Ninth Circuit Model Civil Jury Instructions, Instructions 2.11.

**XXIX. [AGREED]  Final Jury Instruction No. _____: Expert Opinion**[41]

You have heard testimony, on behalf of Contour, from certain expert witnesses who testified to opinions and the reasons for their opinions. You have also heard testimony, on behalf of GoPro, from certain expert witnesses who testified to opinions and the reasons for their opinions. This opinion testimony is allowed, because of the education or experience of these witnesses.

Such opinion testimony should be judged like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

---

[41] Adapted from Ninth Circuit Model Civil Jury Instructions, Instructions 2.13.

**XXX.  [DISPUTED] Final Jury Instruction No. ____: Burdens of Proof[42][43]**

To remind you, the facts must have been proven by a required amount of evidence known as the burden of proof.  There are two burdens of proof that you must apply in this case: preponderance of the evidence and clear and convincing evidence.

Contour had the burden of proving patent infringement, damages, and willful infringement by a preponderance of the evidence.  When a party has the burden of proving any claim by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim is more probably true than not true.  You should base your decision on all of the evidence, regardless of which party presented it.

GoPro had the burden of proving invalidity by clear and convincing evidence.  When a party has the burden of proving any defense by clear and convincing evidence, it means that the party must present evidence that leaves you with a firm belief or conviction that it is highly probable that the

---

[42] Adapted from Ninth Circuit Model Civil Jury Instructions, Instructions 1.6 and 1.7.

[43] **Contour Position:**  Contour incorporates its argument in the footnote regarding IV. [DISPUTED] Opening Jury Instruction No. ____: Burdens of Proof.  This instruction is largely identical, except the presumption of validity has been moved to an invalidity specific instruction (of which there are none in the preliminary instructions).  Moreover, GoPro misconstrues *Commil*, where the Supreme Court explained regarding direct infringement **and** indirect infringement: "To be sure, if **at the end of the day**, an act that would have been **an infringement** or an inducement to infringe pertains to a patent that is shown to be invalid, there is no patent to be infringed. But the allocation of the burden to persuade on these questions, and the timing for the presentations of the relevant arguments, are concerns of central relevance to the orderly administration of the patent system. 'Invalidity is an affirmative defense that 'can preclude enforcement of a patent against otherwise infringing conduct.' An accused infringer can, of course, attempt to prove that the patent in suit is invalid; if the patent is indeed invalid, and shown to be so under proper procedures, there is no liability. **That is because invalidity is not a defense to infringement, it is a defense to liability**." *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 644 (2015).  The Supreme Court then addressed the "scienter" requirement, stating: "And **because of that fact**, a belief as to invalidity cannot negate the scienter required for induced infringement." *Id.*  Hence, GoPro may avoid **liability** for infringement if it succeeds on its invalidity defense, which is exactly what Contour proposes here.

**GoPro Position:**  GoPro incorporates its argument at footnote 8 regarding IV. [DISPUTED] Opening Jury Instruction No. ____: Burdens of Proof.  GoPro's proposal is the Ninth Circuit model instruction and should be adopted.  CIPH's instruction is misleading because it describes proving damages and infringement while neglecting the fact that "an invalid patent cannot be infringed." *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S.Ct. 1920, 1929 (2015).  CIPH claims GoPro is misconstruing *Commil*, it is not.  The statement CIPH quotes from the Supreme Court *Commil* opinion was in the context of whether a belief of invalidity could negate the scienter requirement for inducement.  But it is still true, as it has been for decades, that if a claim is invalid, "there is nothing to be infringed." *Richdel, Inc. v. Sunspool Corp.*, 714 F.2d 1573, 1580 (Fed. Cir. 1983).  A fulsome and balanced description of the burden of proving infringement and the entitlement to damages are set forth in balanced proposals and jury instructions below.  CIPH's proposed modification of the model instruction is therefore redundant and confusing.

1    factual contentions of the defense are true.  This is a higher standard of proof than proof by a

2    preponderance of the evidence, but it does not require proof beyond a reasonable doubt.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  **XXXI. [AGREED]  Final Jury Instruction No. ____: Interpretation of Claims[44] [45][46]**

2      Before you decide whether GoPro has infringed the asserted claims of the patents-in-suit or

3  whether the claims are invalid, you will need to understand the patent claims. As I mentioned at the

4  beginning of the case, the patent claims are numbered sentences at the end of the patent that describes

5  the boundaries of the patent's protection. It is my job as judge to explain to you the meaning of any

6  language in the claim[s] that needs interpretation.

7      I have interpreted the meaning of some of the language in the patent claims involved in this

8  case. You must accept those interpretations as correct. My interpretation of the language should not

9  be taken as an indication that I have a view regarding the issues of infringement and invalidity. The

10  decisions regarding infringement and invalidity are yours to make.

11      I instruct you that the following claim terms have the following definitions:

12      The preamble requiring a "portable, point of view digital video camera," is limiting.[47]

13      The term "real time" means "without perceived delay."

14      The term "generate from the video image data a first image data stream and a second image

15  data stream, wherein the second image data stream is a higher quality than the first image data stream"

16  means "record in parallel from the video image data a first image data stream and a second image data

17  [44] N.D. Cal. Model Patent Jury Instructions, Instruction 2.1.

18  [45] **Contour Position:**  GoPro improperly seeks to include the Court's reasoning when construing the "control signals" term (Dkt. 555) and when granting summary judgment of infringement (Dkt. 445, Dkt. 708).  Only the Court's express constructions should be read to the jury, not any reasoning or

19  other statements from the Court's orders.  *See, e.g.*, *Vaporstream, Inc. v. Snap Inc.*, No. 17-cv-00220, 2020 WL 978731, at *10 (C.D. Cal. Feb. 28, 2020); *Integra LifeSciences Corp. v. HyperBranch Med.*

20  *Tech., Inc.*, No. CV 15-819-LPS-CJB, 2018 WL 2186677, at *1 (only providing jury with "the Court's claim constructions, but not the Court's claim construction opinion or reasoning").

21  [46] **GoPro Position:**: GoPro's inclusion of the Court's claim construction is proper. The caselaw cited

22  by CIPH is inapplicable because *Vaporstream, Inc. v. Snap Inc.*, stands only for the proposition that the Court's prior rulings other than the Court's claim construction order, such as the Court's § 101 and

23  Daubert Order, should be excluded as evidence or argument in front of the jury. No. 17-cv-00220, 2020 WL 978731 (C.D. Cal. Feb. 28, 2020) at *10-11. Similarly, *Integra LifeSciences* holds that

24  evidence and arguments relating to the Court's pre-trial rulings generally should be excluded because they pose concerns of the jury giving undue weight to prior findings made by the judge. No. CV 15-

25  819-LPS-CJB, 2018 WL 2186677, at *1 (D. Del. 2018). While *Integra LifeSciences* states that it is proper to provide the jury the "Court's claim constructions, but not the Court's claim construction

26  opinion or reasoning," GoPro is not seeking to present the jury with the Court's claim construction orders and the reasoning set forth therein that would present the risk of undue weight assigned to the

27  Court's prior findings with respect to each party's positions. Rather, GoPro's proposed instruction properly sets forth the Court's interpretation of the claims based on the Court's statements in its claim construction orders and summary judgment orders regarding the scope of the construed terms.

28  [47] Dkt. 555.

stream, wherein the second image data stream is a higher quality than the first image stream." In addition "'from the video image data' indicates nothing about processing or alteration.".[48] In addition, the "fact that the video image data is altered during processing does not mean that any claim limitation is not met."[49] [50]

The term "generate first video image content and second video image content corresponding to the video image data representing the scene, wherein the second video image content is a higher quality than the first video image content" means "record in parallel first video image content and second video image content corresponding to the video image data representing the scene, wherein the second video image content is a higher quality than the first video image content." There are "no processing-related requirements . . . included in the construction of the 'generate' term."[51] [52]

The term "prior to a recording of the scene" means "before storing video image data representing the scene."

The term "mount" means "a component configured to be mounted to at least one of the body, a garment, or a vehicle."

The term "mounting interface" means "a place for attaching a mount."

The term "cause the wireless connection protocol device to send the first image data stream directly to the personal portable computing device for display on a display of a personal portable

---

[48] Dkt. 445.
GoPro Position: GoPro's proposed instruction properly sets forth the Court's interpretation of the claims based on the Court's statements in its claim construction orders and summary judgment orders regarding the scope of the construed terms.
[49] Dkt. 445.
GoPro Position: GoPro's proposed instruction properly sets forth the Court's interpretation of the claims based on the Court's statements in its claim construction orders and summary judgment orders regarding the scope of the construed terms.
[50] **Contour Position:** GoPro seeks to quote from the Court's summary judgment ruling stating that "Claim 11 says nothing about processing or alteration, and the plain language of 'from the video image data' indicates nothing about processing or alteration." Dkt. 445 at 8. This is not a claim construction and should not be read to the jury as a claim construction.
[51] Dkt. 445.
GoPro Position: GoPro's proposed instruction properly sets forth the Court's interpretation of the claims based on the Court's statements in its claim construction orders and summary judgment orders regarding the scope of the construed terms.
[52] **Contour Position:** GoPro seeks to quote from the Court's summary judgment ruling stating that "GoPro did not request that any processing-related requirements be included in the construction of the generate term." Dkt. 445 at 10. This is not a claim construction and should not be read to the jury as a claim construction.

1  computing device" "requires that the camera processor be configured such that any video data must
2  be sent 'directly to the personal portable device.'"[53] [54]

3       [**Contour Proposes**: The asserted patent claims are limited to a point of video digital video
4  camera (or camera system), not toward a video camera plus a personal portable computing device,
5  such that the claim phrase "wherein the personal portable computing device generates the control
6  signals for the video camera," helps define the control signals that the processor is configured to
7  receive.[55]][56] [**GoPro Proposes**: The claims are limited to a point of view digital video camera (or
8  camera system) comprising, "among other things, 'a camera processor.'"[57] The camera processor is
9  configured to, among other things cause the wireless connection protocol device to send the first image
10  data stream directly to the personal portable computing device for display on a display of the personal
11  portable computing device, wherein the personal portable computing device generates the control
12  signals for the video camera. The "wherein" clause "helps define the control signals that the processor
13  is configured to receive."[58] "The plain and ordinary meaning, in context, is that the camera processor
14  sends the stream to the personal portable computing device and receives control signals from it."[59]]

15       If I have not provided a specific definition for a given term, you are to use the plain and
16  ordinary meaning of that term.

17
18
19

---

[53] Dkt. 708.
**GoPro Position**: GoPro's proposed instruction properly sets forth the Court's interpretation of the claims based on the Court's statements in its claim construction orders and summary judgment orders regarding the scope of the construed terms.
[54] **Contour Position**: GoPro seeks to quote from the Court's summary judgment ruling stating that "the plain language of the claim requires that the camera processor be configured such that any video data must be sent 'directly' to the personal portable device." Dkt. 708 at 15–16. This is not a claim construction and should not be read to the jury as a claim construction.
[55] **Contour Position**: Contour's propose closely tracks the Court's construction for the "control signals" terms. *See* Dkt. 555 at 17 (Court's Construction: "The claim is limited to a point of video digital video camera (or camera system). The clause at issue helps define the control signals that the processor is configured to receive.").
[56] **GoPro Position**: CIPH cannot have it both ways in seeking to exclude the Court's reasoning where it does not like it and including it where it does. In addition, CIPH's reasoning is not consistent with the Court's reasoning in Dkt. 555.
[57] Dkt. 555.
[58] Dkt. 555.
[59] Dkt. 555.

XXXII.       **[AGREED]  Final Jury Instruction No. _____: Independent and Dependent**

**Claims**[60]

This case involves two types of patent claims: independent claims and dependent claims.

An "independent claim" sets forth all of the requirements that must be met in order to be covered by that claim. Thus, it is not necessary to look at any other claim to determine what an independent claim covers.

In this case, claim 11 of the '954 Patent is an independent claim, while claim 12 is a dependent claim.  In the '694 Patent, claim 3 is an independent claim, while claims 4 and 6 are dependent claims.

A dependent claim does not itself recite all of the requirements of the claim but refers to another claim for some of its requirements. In this way, the claim "depends" on another claim. A dependent claim incorporates all of the requirements of the claim(s) to which it refers. The dependent claim then adds its own additional requirements. To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claim(s) to which it refers. A product that meets all of the requirements of both the dependent claim and the claim(s) to which it refers is covered by that dependent claim.

---

[60]  FCBA Model Patent Jury Instruction, 2.1a (modified to identify dependent claims).

**XXXIII.     [AGREED]  Final Jury Instruction No. ____: Infringement – Burden of Proof**[61]

I will now instruct you on the rules you must follow in deciding whether [Contour] [CIPH] has proven that GoPro has infringed one or more asserted claims of the patents-in-suit. To prove infringement of any claim, [Contour] [CIPH] must persuade you that it is more likely than not that GoPro has infringed that claim.

---

[61]    Model Patent Jury Instructions for the Northern District of California (Oct. 2019) – Instruction B.3.1

**XXXIV.** **[DISPUTED] Final Jury Instruction No. ____: Claim 11 of the '954 Patent**[62][63]

**GoPro's Proposal:**

Previously, I determined that certain of the accused GoPro products include each element of Claim 11 of the '954 Patent. You must accept my ruling and you will not be asked to make any further determination on that issue for the Group 1 Live Preview Products with respect to Claim 11 of the '954 Patent. You should not award damages for Claim 11 of the '954 Patent unless you find that claim is valid.

My determination that certain of the accused GoPro products include each element of Claim 11 of the '954 Patent does not mean that I have determined that Claim 11 of the '954 Patent is valid or that damages are appropriate. Nor does it mean that other GoPro products include each element of

---

[62] *Bombardier Recreational Products, Inc. et al. v. Arctic Cat Inc. et al.,* 12-cv-2706, Dkt. 1064 (D. Minn.); *Liqwd, Inc. et al v. L'Oreal USA, Inc. et al,* 17-cv-14, Dkt. 1049 (D. Del.); *Apple Inc. v. Samsung Electronics Co., Ltd., et. al.,* 12-cv-00630, Dkt. 1489 (N.D. Cal.); *Briese Lichttechnik Verttriebs GmbH v. Langton, et. al.,* 09-cv-09790, Dkt. 433 (S.D.N.Y.).

[63] **Contour Position:** Contour's instruction is a neutral statement of the Court's summary judgment ruling and its effect on other issues in this case. GoPro's instruction is not fair or balanced. It mentions damages and validity twice in a way that is designed to reinforce GoPro's arguments. It improperly states that the jury "should not be influenced" by the Court's ruling when deciding infringement of other claims. This misstates the law on direct infringement of a dependent claim: the jury must accept the Court's ruling and apply it in determining whether dependent claim 12 (which include all limitations of claim 11) is infringed. 35 U.S.C. § 112 ("A claim in dependent form shall be construed to incorporate by reference all the limitations of the claim to which it refers."). Finally, GoPro misstates the law by saying that "invalidity is a complete defense to infringement." Instead, "'Invalidity is an affirmative defense that 'can preclude enforcement of a patent against otherwise infringing conduct.' An accused infringer can, of course, attempt to prove that the patent in suit is invalid; if the patent is indeed invalid, and shown to be so under proper procedures, there is no liability. **That is because invalidity is not a defense to infringement, it is a defense to liability.**" *Commil USA, LLC v. Cisco Sys., Inc.,* 575 U.S. 632, 644 (2015).

**GoPro Position:** GoPro's proposal properly states that the Court's order regarding claim 11 is not dispositive of liability. As set forth in GoPro's Motions *in limine*, invalidity is a complete defense to infringement, and telling the jury that GoPro's products have been found to infringe would be prejudicial. Moreover, GoPro's proposal accurately recites that there are live issues of infringement of claim 11 with respect to several accused products and that GoPro may prove that certain newer accused products do not infringe. CIPH's proposal does not clarify that the jury will still need to make findings with respect to direct infringement of claim 11 as to certain products. GoPro's proposal also makes clear that the Court's ruling on claim 11 does not dispose of infringement for any other claims, which CIPH's proposal fails to do. Further, CIPH's articulation overstates the Court's findings in its Summary Judgment Orders, is argumentative, and mistates the law. There is already an instruction that provides further clarity on the meaning of infringement. Notably, the primary aspect in dispute appears to be whether the CIPH should be able to leverage the Court's finding to argue or imply that *other* claims, about which CIPH chose not to move for summary judgment, are infringed. Such an implication is improper and decidedly non-neutral.

Claim 11 or that GoPro has infringed any of the other claims asserted by CIPH in this case. Those are issues for you, the jury, to decide and you should not be influenced one way or another in your decision on those issues by my ruling that certain of the accused GoPro products include each element of Claim 11 of the '954 Patent .

**Contour's Proposal:**

Previously, I determined that the accused GoPro products MAX; HERO8 Black; HERO7 Black; HERO7 White; HERO7 Silver; Fusion; HERO6 Black; HERO5 Black; HERO5 Session; HERO4 Black; HERO4 Silver; HERO4 Session; HERO3+ Silver; HERO3+ Black; HERO3 Black; HERO3 Silver; HERO3 White; HERO+ LCD; HERO+; and HD HERO2 with Wi-Fi BacPac directly infringe Claim 11 of the '954 Patent, meaning that the Accused Products literally meet every element of Claim 11 of the '954 Patent. You must accept my ruling and you will not be asked to make any further determination on the issue of direct infringement of Claim 11 of the '954 Patent for these cameras. My ruling is not a determination on invalidity or damages. Those issues are for you to decide according to the instructions I give you.

**XXXV.**  **[DISPUTED] Final Jury Instruction No. \_\_\_\_: Direct Infringement**[64]

A patent's claims define what is covered by the patent. A product directly infringes a patent if it is covered by at least one claim of the patent.

Deciding whether a claim has been directly infringed is a two-step process. The first step is to decide the meaning of the patent claim. I have already made this decision, and I have already instructed you as to the meaning of the asserted patent claims. The second step is to decide whether GoPro has made, used, sold, or offered for sale within the United States a product covered by claims 11 and 12 of the '954 Patent, or claims 4 and 6 of the '694 Patent.  If it has, it infringes. You, the jury, make this decision.

With one exception, you must consider claims 11 and 12 of the '954 Patent, and claims 4 and 6 of the '694 Patent individually, and decide whether GoPro's products infringe that claim. The one exception to considering claims individually concerns dependent claims. A dependent claim includes all of the requirements of a particular independent claim, plus additional requirements of its own. As a result, if you find that an independent claim is not infringed, you must also find that its dependent claims are not infringed. On the other hand, if you find that an independent claim has been infringed, you must still separately decide whether the additional requirements of its dependent claims have also been infringed.

CIPH does not make or sell any commercial products.  However,[65] You have heard evidence that the previous owner of the Patents-in-Suit, known as Contour LLC [had] [and Contour Inc. made and sold] commercial camera [systems.] [products.]  However, in deciding the issue of infringement you may not compare GoPro's accused products to Contour LLC's or Contour's Inc.'s commercial

---

[64]  Adapted from N.D. Cal. Model Patent Jury Instructions, Instruction 3.2.

[65]  **GoPro's Position:**  GoPro's proposal makes clear that even though CIPH does not make or sell any commercial products, jurors are not to consider predecessor companies' commercial products in the infringement analysis.  GoPro's proposal is particularly appropriate because CIPH has refused to agree that it will not seek to conflate its corporate identity with Contour's.

**Contour's Position:**  GoPro's proposal deviates from the model instruction to insert that Plaintiff does not make or sell any commercial products, a contention which is not relevant to infringement (the subject of this instruction).  Indeed, this proposal appears to be an attempt to have the Court bless GoPro's apparent intended argument: that Contour's case is somehow without merit (or of less merit) because it does not make products.  Contour incorporates its briefing in its Motion *in Limine* No. 4 from *Contour* I, which contains further argument regarding GoPro's attempts to disparage Contour and its business practices and for which the Court granted in part.  This information is irrelevant, and the Court should not include it in jury instructions.

1   products.  Rather, you must compare GoPro's accused products to the claims of the '954 and '694

2   Patents when making your decision regarding infringement.

3        Whether or not GoPro knew its product infringed or even knew of the patent does not matter

4   in determining direct infringement.

5        In order to directly infringe a claim, GoPro must "literally" infringe the claim, and I will

6   explain what that means now.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  **XXXVI.      [AGREED]  Final Jury Instruction No. _____: Literal Infringement**[66]

2          To decide whether GoPro's accused product literally infringes a claim of the patents-in-suit,

3  you must compare that product with the patent claim and determine whether every requirement of the

4  claim is included in that product. If so, GoPro's accused product literally infringes that claim. If,

5  however, GoPro's accused product does not have every requirement in the patent claim, GoPro's

6  product does not literally infringe that claim. You must decide literal infringement for each asserted

7  claim separately.

8          If the patent claim uses the term "comprising," that patent claim is to be understood as an open

9  claim. An open claim is infringed as long as every requirement in the claim is present in GoPro's

10  accused product. The fact that GoPro's product also includes other parts will not avoid infringement,

11  as long as it has every requirement in the patent claim.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[66]   Adapted from N.D. Cal. Model Patent Jury Instructions, Instruction 3.3.

**XXXVII.      [DISPUTED] Final Jury Instruction No. ____: Willful Infringement[67]**

In this case, [Contour] [CIPH] argues that GoPro willfully infringed Contour's patents-in-suit.

To prove willful infringement, [Contour] [CIPH] must persuade you that GoPro infringed a valid and enforceable claim of the patents-in-suit. The requirements for proving such infringement were discussed in my prior instructions.

In addition, to prove willful infringement of a claim, [Contour] [CIPH] must persuade you that it is more likely true than not true that GoPro intentionally ignored or recklessly disregarded that claim. You must base your decision on GoPro's knowledge and actions at the time of infringement. Evidence that GoPro had knowledge of the patent at the time of infringement by itself is not sufficient to show

---

[67] Adapted from N.D. Cal. Model Patent Jury Instructions, Instruction 3.8.

**Contour's Position:**  Contour's proposal adds an additional factor to the ND Cal model instructions because that factor is relevant to this case, given that GoPro has made no effort to design around the patent in the over 6 years between obtaining knowledge of that patent and trial in this case.  This is not "cherry-picking" but simply a recognition that the test for willfulness is fact-specific and dependent on the circumstances of this case.  The additional factor is taken from the Federal Circuit Bar Association model instructions and is well supported in case law.  *E.g.*, *Polara Eng'g, Inc. v. Campbell Co.*, 237 F. Supp. 3d 956, 981–82 (C.D. Cal. 2017) ("[Defendant's] failure to take remedial measures supported the jury's conclusion that the totality of the circumstances demonstrated egregious conduct.").

As to GoPro's apparent contention that the jury should not hear willfulness at all, that argument is misplaced.  The Court has already determined "[t]he jury must decide the factual components of the willfulness question." Dkt. 444 at 12.  Further, it would be inefficient to separate out the issue of willfulness because issues of fact with respect to liability and damages overlap with willfulness. *Lam Research Corp. v. Schunk Semiconductor*, 65 F. Supp. 3d 863, 865–66 (N.D. Cal. 2014); *Quantum Corp v. Tandon Corp.*, 1991 WL 213819, *1 (N.D. Cal. Apr. 19, 1991); *Richardson v. Suzuki Motor Co.*, 868 F.2d 1226, 1250 (Fed.Cir.1989).  GoPro's case law relates to conflicts with attorney-client privilege, but GoPro fails to identify any such conflict here.  GoPro is not relying on an advice of counsel defense and has never disclosed such a defense under Patent L.R. 3-7.  As such, GoPro's cases are inapposite.

**GoPro's Position:**  GoPro disputes that willfulness should be presented to the jury.  Fed. R. Civ. P. 42(b); *Quantum Corp. v. Tandon Corp.*, 940 F.2d 642 (Fed. Cir. 1991) (requiring jury determination would waive privilege); *Aptargroup, Inc. v. Owens–Illinois, Inc.*, 2003 WL 21557632, *1 (N.D. Ill. 2003); *Sage Products, Inc. v. Devon Industries, Inc.*, 1994 WL 791601, *2–3 (C.D. Cal. 1994).  GoPro disputes that CIPH has the right to allege willfulness.

Otherwise, GoPro has adopted the model instruction, whereas CIPH cherry-picks a single line from a competing Federal Circuit Bar Association model instruction, but none of the other instructions from that model, which balance the instruction.  Other instructions from the FCBA model are relevant and could be added to the N.D. Cal. Model, such as the following:  "Whether or not [alleged infringer] acted consistently with the standards of behavior for its industry"; "Whether or not [alleged infringer] tried to cover up its infringement".  FCBA Model Instruction at 3.10.  Other model instructions go further and state that the jury "may consider whether [the Defendant]'s behavior was malicious, wanton, deliberate, consciously wrongful, flagrant, or in bad faith."  AIPLA Model Patent Jury Instructions at 11.0.  GoPro does not suggest adding these counterbalancing instructions and merely cites them to show that cherry-picking a single instruction from a competing model is not a balanced or fair approach.

willfulness. Rather, to show willfulness, you must find that GoPro engaged in additional conduct evidencing deliberate or reckless disregard of [Contour] [CIPH]'s patent rights.

In deciding whether GoPro willfully infringed, you should consider all of the facts surrounding the infringement including, but not limited, to:

(1)    whether GoPro intentionally copied [Contour] [CIPH]'s patented technology in developing the accused product;

(2)    whether GoPro knew, or should have known, that its conduct involved an unreasonable risk of infringement; and

(3)    whether GoPro had a reasonable belief that at the time of infringement that its products did not infringe the asserted patent or that the patent was invalid; and

(4)    whether or not GoPro made a good-faith effort to avoid infringing the patent, for example, whether GoPro attempted to design around the patent.[68]

---

[68] Adopted from the Federal Circuit Bar Association Model Patent Jury Instructions (May 2020), Instruction 3.10.

**XXXVIII.    [DISPUTED] Final Jury Instruction No. ____: Invalidity – Burden of Proof[69]**

I will now instruct you on the rules you must follow in deciding whether GoPro has proven that claims 11 and 12 of the '954 Patent and Claims 4 and 6 of the '694 Patent are invalid.  Before discussing the specific rules, I want to remind you about the standard of proof that applies to this defense. A patent is presumed to be valid. In other words, it is presumed to have been properly granted by the PTO. But that presumption of validity can be overcome if clear and convincing evidence is presented in court that proves the patent is invalid.[70]  To prove invalidity of any patent claim, GoPro must persuade you that it is highly probable that the claim is invalid.

---

[69] Adapted from N.D. Cal. Model Patent Jury Instructions, Instructions 1.7 and 4.1a.

[70] **Contour's Position:**  Adopted from 2019 AIPLA Model Patent Jury Instructions, Instruction 1.2. The law is clear that "[a] patent shall be presumed valid."  35 U.S.C. § 282.  Referencing the presumption is important to explaining to the jury why GoPro's burden on invalidity is higher than Contour's burden on infringement.  It is also particularly relevant here where the patent not only passed original examination, but also passed a full IPR proceeding (covering some of the very same art GoPro intends to rely on at trial).   In light of that context, it is important that the jury understand the presumption and why GoPro's burden of proof is clear and convincing evidence.  Courts, including in this District, have approved of such instructions on the presumption of validity before.  *See, e.g.*, *Int'l Bus. Machines Corp. v. Groupon, Inc.*, C.A. No. 16-122-LPS, 2018 WL 3007662, at *2 (D. Del. June 15, 2018) ("it is reasonable and appropriate to provide the jury with some brief explanation for why the burden of proving invalidity is different and greater than the burden of proving infringement and damages. Limited references, particularly in the Court's jury instructions, to the presumption of validity, do not pose a substantial risk of jury confusion or unfair (much less 'irreparabl[e]') prejudice to Groupon") (citation omitted); *Volterra Semiconductor Corp. v. Primarion, Inc.*, No. C-08-05129 JCS , 2011 WL 4079223, at *10 (N.D. Cal. Sept. 12, 2011) ("approving of instruction that explained that the clear and convincing standard 'is used because a patent is entitled to a statutory presumption of validity until it is proven invalid by clear and convincing evidence'").

**GoPro's Position:**  GoPro has fully adopted (without modification) the Northern District of California model instruction.  The model instructions do not state that the patent is presumed valid, as this would unduly influence the jury, as would CIPH's addition that the jury should defer to the PTO.  Neither the Ninth Circuit model nor the N.D. Cal. Model include this language and CIPH offers no compelling justification for modifying the model to include entirely one-sided, self-serving language.  *See Chiron Corp. v. Genentech, Inc.*, 363 F.3d 1247, 1258-59 (Fed. Cir. 2004) ("the district court did not err in declining to include a jury instruction on the presumption of validity because the jury applied the correct 'clear and convincing evidence' standard.").  Other courts have excluded such language as confusing and requiring additional instructions to clarify.  *Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*, No. 2:15-CV-1202-WCB, 2017 WL 959592, at *6 (E.D. Tex. Mar. 13, 2017) (Bryson, C.J. by designation) (excluding use of the phrase "presumption of validity," holding that "the use of the term 'presumption' would require a further definitional instruction by the Court, without leading to any greater insight on the jury's part as to the nature of the burden of proof on the validity issues").

**Contour's Position:**[71]

During this case, GoPro has submitted prior art that it contends was not considered by the United States Patent and Trademark Office (PTO). GoPro contends that such prior art invalidates the asserted claims of the patents-in-suit. In deciding the issue of invalidity, you may take into account whether any of the prior art was not considered by the PTO when it issued the patents-in-suit. In doing so, you must decide whether the prior art was materially new, or whether it was merely cumulative or less relevant than the prior art already considered by the PTO. Prior art that is materially new may carry more weight than the prior art that was considered and may make GoPro's burden of showing that it is highly probable that a patent claim is invalid easier to sustain.

**GoPro's Position:**

---

[71] **Contour's Position:** Contour's instruction regarding prior art considered by the Patent Office is based on the Supreme Court's decision in *Microsoft Corp. v. i4i Partnership*, 564 U.S. 91, 111 (2011). There, the Supreme Court held "[w]hen it is disputed whether the evidence presented to the jury differs from that evaluated by the PTO, the jury may be instructed to consider that question. In either case, the jury may be instructed to evaluate whether the evidence before it is ***materially new***, and if so, to consider that fact when determining whether an invalidity defense has been proved by clear and convincing evidence." *Id.* Here, it is disputed whether the evidence GoPro now relies on differs from the Patent Office. For example, GoPro is relying on the GoPro HD Motorsports HERO, which Contour contends is not materially different from the GoPro catalog (describing the HD Motorsports HERO) considered by the Patent Office during the IPR. As such, under the Supreme Court's rule, the jury should be instructed on whether to consider whether the information is "materially new." This is also well-supported in case law, which confirms that in any context, prior art that is cumulative or less relevant is not material to patentability. 37 C.F.R. § 1.56(b) (1998) ("[I]information is material to patentability when it is not cumulative to information already of record or being made of record in the application"); *Larson Mfg. Co. v. Aluminart Products Ltd.*, 559 F.3d 1317, 1327 (Fed. Cir. 2009) (in inequitable conduct context, "a withheld otherwise material reference is not material if it is merely cumulative to, or less relevant than, information already considered by the examiner"). GoPro's proposed instruction fails to instruct the jury to consider whether the art is "materially new" and thus is inconsistent with the Supreme Court's ruling in *Microsoft*. The final sentence of GoPro's instruction suggests that prior art that merely "differs" from the prior art considered by the Patent Office may carry more weight, which misstates the law, as immaterial differences should not serve to reduce GoPro's burden.

**GoPro's Position:** GoPro's instruction follows the model instruction from the Northern District of California, whereas CIPH's departs from it entirely. CIPH's argument that prior art must be "materially new," not "merely cumulative," and not "less relevant" are not supported and not relevant. CIPH has not introduced expert opinions regarding whether the art considered by the PTO renders GoPro's HD Motorsports HERO "cumulative," "less relevant," or not "materially new" and therefore this instruction is unhelpful. Further, if adopted, CIPH's instruction is likely to force the parties into a mini-trial on the closeness of the present prior art references to those before the PTO as opposed to the merits of that prior art. CIPH's argument that GoPro's instruction misstates the law is without merit. As the Federal Circuit has held, "it could be reasonable to give more weight to new arguments or references *that were not explicitly considered by the PTO* when determining whether a defendant met its burden of providing clear and convincing evidence of invalidity." *Sciele Pharma Inc. v. Lupin Ltd.*, 684 F.3d 1253, 1260 (Fed. Cir. 2012).

51

1    During this case, GoPro has submitted prior art that was not considered by the United States

2  Patent and Trademark Office (PTO) during the prosecution of the asserted patents.  GoPro contends

3  that such prior art invalidates the asserted claims of the patents-in-suit.  In deciding the issue of

4  invalidity, you may take into account the fact that the prior art was not considered by the PTO when

5  it issued the asserted patents.  Prior art that differs from the prior art considered by the PTO may carry

6  more weight than the prior art that was considered and may make GoPro's burden of showing that it

7  is highly probable that a patent claim is invalid easier to sustain.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**XXXIX.        [AGREED]  Final Jury Instruction No. ____: Invalidity—Perspective of one of Ordinary Skill in the Art**

The question of invalidity of a patent claim is determined from the perspective of a person of ordinary skill in the art in the field of the asserted invention as of September 13, 2010.  In deciding the level of ordinary skill, you should consider all the evidence introduced at trial, including:

(1)     the levels of education and experience of persons working in the field;

(2)     the types of problems encountered in the field; and

(3)     the sophistication of the technology.

[Contour] [CIPH] contends that the level of ordinary skill in the field was a person having at least a bachelor's degree in computer science, electrical engineering, or a similar discipline, and some experience creating, programming, or working with digital video cameras, such as POV action sports video cameras. GoPro contends that the level of ordinary skill is a person having education in computer science or electrical engineering and experience in the field of digital video cameras, image processing, and transmission of multimedia content between devices, and knowledge of the scientific literature concerning the same. GoPro contends that the education and experience levels may vary between persons of ordinary skill, with some persons holding a basic Bachelor's degree with three years of relevant work experience, and others holding a Masters or Ph.D. but having one to two years of experience.

XL.    **[DISPUTED] Final Jury Instruction No. ____: Anticipation**[72]

A patent claim is invalid if the claimed invention is not new. For the claim to be invalid because it is not new, all of its requirements must have existed in a single device that predates the claimed invention. In patent law, these previous devices are called "prior art references." If a patent claim is not new, we say it is "anticipated" by a prior art reference.

The description in the written reference does not have to be in the same words as the claim, but all of the requirements of the claim must be there, stated so that someone of ordinary skill in the field of wireless technology and digital video cameras, such as POV action cameras,[73] looking at that one reference would be able to make and use the claimed invention.

**GoPro's Position:**[74]

In determining whether a single item of prior art anticipates a patent claim, you may consider not only what is expressly disclosed in that item of prior art but also what is inherently present or disclosed in it or inherently results from its use. Prior art inherently anticipates a patent claim if the

---

[72] Adapted from N.D. Cal. Model Patent Jury Instructions, Instructions 4.3a1 and 4.3a1a.

[73] **Contour's Position:** GoPro's proposed instruction wrongly says that the relevant field includes "wireless technology" and wrongly omits any reference to "action" or "POV" cameras, which is contrary to this Court's ruling that "point of view digital video camera" in the claims is limiting. Moreover, GoPro's expert adopted the PTAB's definition of a person of skill in the art as having "some experience creating, programming, or working with digital video cameras, such as ***POV action*** sports video cameras."

**GoPro's Position:** Contour's proposed instruction inappropriately reads "action" into the claims that are not so limited. The preamble "point of view digital video camera" says nothing about, and does not require, "action." Indeed, the Court's claim construction order does not read in "action" and any argument to the contrary is incorrect. Dkt. 555.

[74] **GoPro's Position:** CIPH argues that this instruction is unnecessary because GoPro's expert has not opined on inherency, but it is not necessary for GoPro's expert to have opined on inherency for it to be relevant to the jury. CIPH cites to no case holding that inherency may only be proved through expert testimony, and even if that were true, inherency evidence could be entered through CIPH's expert. *See Centricut, LLC v. Esab Group, Inc.*, 390 F.3d 1361, 1369 (Fed. Cir. 2004) (expert testimony not required when the technology is easily understood). GoPro's instruction adheres to the model and provides a clear identification of the issues that the jury is charged with deciding.

A prior invention may be identified pursuant to 35 USC 102(g) without identifying an individual inventor. *Fox Group, Inc. v. Cree, Inc.*, 700 F.3d 1300, 1305 (Fed. Cir. 2012) (finding that the defendant, a corporation, was a "another inventor" under 35 U.S.C. § 102(g)). GoPro's proposal is consistent with Federal Circuit and District Court case law finding 102(g) based on the existence of a prior invention (not an individual inventor). To the extent CIPH prevails on its argument that 102(g) requires specific identification of an individual prior inventor - and not just a prior invention as stated in the plain language of the statute - GoPro would identify Mr. Legall and/or Mr. Chien as prior inventors of Ambarella's invention and Messrs. Periera, Narayan, and/or Boland as prior inventors of the Looxcie/Vidcie invention. For the reasons set forth in Dkt. 788-3, no invalidity theory (including Looxcie and Ambarella) should be stricken.

---

54

missing requirement or feature would necessarily be present in the prior art.

In this case, GoPro can show that a patent claim is not new if it shows:

The claim was disclosed in the prior invention by one or more of:

    1.  Woodman Labs/ GoPro

    2.  Ambarella

    3.  Looxcie/Vidcie

To be disclosed in a prior invention, the prior invention must have been conceived and reduced to practice he United States before the priority date of the claimed invention *or* and diligently reduced to practice thereafter without abandonment, concealment, or suppression.

The subject matter claimed in the '954 and '694 Patents was publicly available before September 13, 2010 as disclosed by one or more of the following systems:

    1.    Sony System

    2.    Looxcie System

**Contour's Position:**[75]

No further instruction is necessary.

---

[75] **Contour's Position:**  GoPro's proposed instructions are unwarranted.  The first paragraph relates to inherency, which GoPro's expert has not opined on.  As such, there is no basis to send an inherency instruction to the jury.

The remainder of GoPro's instruction paraphrases the law of prior invention, which is addressed separately in the next instruction and is thus redundant.  GoPro's proposal paraphrases the next instruction in ways that would be confusing and risk misleading the jury.

Additionally, GoPro's instruction states that Mr. Woodman and "Looxcie" and "Ambarella" and "conceived" the invention and that it was "reduced to practice," but that is disputed between the parties and the jury must decide that.  Further, GoPro's theories as to Looxcie and Ambarella should be stricken.

Moreover, GoPro's instruction introduces the concept of "at his direction" in an unbalanced way—including for Mr. Woodman and companies Looxcie and Ambarella (who are not individuals)—without providing any instruction on how to decide that or whether the invention may actually belong to the person allegedly being direct.  *See, e.g.*, *Union Paper Collar Co. v. Van Dusen*, 90 U.S. 530, 564 (1874) ("persons employed, as much as employers, are entitled to their own independent inventions, and if the suggestions communicated constitute the whole substance of the improvement the rule is otherwise, and the patent, if granted to the employer, is invalid, because the real invention or discovery belongs to the person who made the suggestions").  This is already covered in the next jury instruction and is therefore redundant here.

**XLI.   [DISPUTED] Final Jury Instruction No. ____: Invalidity – Prior Invention**

**Contour's Proposal:**[76]

In this case, Contour and GoPro dispute who is the first inventor.  Since it is in dispute, you must determine a date of conception for the claimed invention and the alleged prior invention.

The person who first conceived of the claimed invention and first reduced it to practice is the first inventor.  Conception is the mental part of an inventive act and is proven when the invention is shown in its complete form by drawings, disclosure to another or other forms of evidence presented at trial.  A claimed invention is "reduced to practice" when it has been tested sufficiently to show that it will work for its intended purpose or when it is fully described in a patent application filed with the PTO.  If one person conceived of the claimed invention first, but reduced to practice second, that person is the first inventor only if that person (a) began to reduce the claimed invention to practice before the other party conceived of it, (b) continued to work diligently to reduce it to practice, and (c) did not abandon, suppress, or conceal the invention.  GoPro must show each of these elements by clear and convincing evidence.

If the prior invention was abandoned, suppressed, or concealed, it is not prior art and cannot

---

[76] **Contour's Position:**  The first two paragraphs of Contour's proposal (through letter (c) on line 13) are taken from N.D. Cal. model instruction 4.3a1a.  The N.D. Cal. model instructions do not contain any instruction on abandonment, suppression, or concealment (an issue which is disputed between the experts here), so the remainder of Contour's proposal is based on AIPLA model instruction 6.6.  Contour's proposal also clarifies that GoPro bears the burden of proof on every aspect of prior invention, as it is part of GoPro's invalidity defense.  GoPro's proposal, by contrast, misstates the burden of proof suggesting that Contour has the burden to show abandonment, suppression, or concealment by clear and convincing evidence.  This is not the law.  *Apotex USA, Inc. v. Merck & Co.*, 254 F.3d 1031, 1037-38 (Fed. Cir. 2001) ("***the party alleging invalidity*** under § 102(g) ***must rebut*** any alleged suppression or concealment ***with clear and convincing evidence*** to the contrary.").  GoPro's argument about the burden of production is irrelevant.  GoPro's instruction states "if you find" concealment, which is burden of proof language (suggesting the jury must affirmatively find there was concealment).  Additionally, GoPro has not disputed that Contour has met its burden of production, at least through Contour's expert's report.  Nor has GoPro moved to challenge that portion of Contour's expert's report or argued that the issue of abandonment, suppression, or concealment should not go to the jury.  As such, the only relevant burden is GoPro's burden of proof.  Further, GoPro's theories as to Looxcie and Ambarella should be stricken.

In addition, GoPro's proposed construction that "To meet its burden of proof, GoPro must present corroborating evidence of a contemporaneous disclosure that would enable one skilled in the field to make the claimed invention"—is legally flawed and seeks to subvert the statutory requirement for GoPro to prove invalidity by clear and convincing evidence.  Thus, it should be rejected.

Adapted from N.D. Cal. Model Patent Jury Instructions, Instruction 4.3a1a; 2019 AIPLA Model Patent Jury Instructions, Instruction 6.6; *Apotex USA, Inc. v. Merck & Co.*, 254 F.3d 1031, 1037-38 (Fed. Cir. 2001).

anticipate or render obvious any claim of the asserted patents. In deciding this, you may consider whether (1) the prior inventor actively concealed the invention from the public, or (2) the prior inventor unreasonably delayed in making the invention publicly known. Generally, a prior invention was not abandoned, suppressed, or concealed if the invention was made public, sold, or offered for sale, or otherwise used for a commercial purpose. A period of delay does not constitute abandonment, suppression, or concealment, provided the prior inventor was engaged in reasonable efforts to bring the prior invention to market during this period.

**GoPro's Proposal:[77]**

GoPro contends that claims 11 and 12 of the '954 Patent, and claims 4 and 6 of the '694 Patent are invalid because the invention defined in that claim was conceived by and reduced to practice by or at the direction of:

- Woodman Labs / GoPro (Mr. Nicholas D. Woodman)
- Ambarella, and/or
- Vidcie

in the United States before the priority date of the CIPH patents.

GoPro can demonstrate that the prior inventors' work constitutes prior art if it can show by

---

[77] **GoPro's Position:** GoPro's proposal adheres most closely to the AIPLA model instruction and therefore should be adopted. The AIPLA instruction does include abandonment, suppression, and concealment, and therefore it is appropriate to use this model rather than cherry-pick elements from various models and combine them together.

CIPH's instruction is incorrect because it implies that conception may only be shown through drawings and disclosure to another, but there is no such limitation under the law. All forms of evidence may be used to show conception. CIPH's instruction also requires GoPro to show a lack of abandonment, suppression, or concealment by clear and convincing evidence, which is contrary to the model instruction and misstates the law. *See Apotex USA, Inc. v. Merck & Co.*, 254 F.3d 1031, 1037-38 (Fed. Cir. 2001). GoPro disputes that CIPH has carried its burden to demonstrate that there are any issues of abandonment or concealment properly at issue in this case. Once GoPro has proven by clear and convincing evidence that it made the invention in this country prior to the named inventors, it is CIPH that bears the burden of production to show that GoPro suppressed or concealed the invention. *Id.* If CIPH meets its burden of production, only then must GoPro rebut that evidence with clear and convincing evidence to the contrary. *Id.* Because CIPH's proposal omits its own burden, it is incorrect. CIPH's proposed instruction is also misleading in that it buries the fundamental principle that 35 U.S.C. § 102(g) is one of GoPro's defenses to liability, which is the issue that the jury is being asked to decide. GoPro further objects that CIPH's model is confusing and misleading because it does not identify the prior invention as a defense that GoPro has to liability and puts undue emphasis on "abandonment." For the reasons set forth in Dkt. 788-3, no invalidity theory (including Looxcie and Ambarella) should be stricken.

GoPro's addition regarding corroborating evidence is also proper under the November 2011 Model Patent Jury Instructions for the Northern District of California at fn.14.

1    clear and convincing evidence that the prior inventors' conceived of the claimed invention before the

2    Contour inventors and either that: (1) before the named inventors of the '954 and '694 Patents invented

3    their invention, the prior inventors' directed the reduction to practice of a product that included all of

4    the features conceived, or (2) the prior inventors' first to conceived of the invention and exercised

5    reasonable diligence in later reducing the invention to practice or having the invention reduced to

6    practice.  In addition, GoPro must show that the prior inventors' product was sufficiently developed

7    that one skilled in the art would have recognized that it would work for its intended purpose.  To meet

8    its burden of proof, GoPro must present corroborating evidence of a contemporaneous disclosure that

9    would enable one skilled in the field to make the claimed invention.  The ideas that GoPro can show

10   were successfully reduced to practice before the priority date of the Patents-in-Suit can be used to

11   show that the claims of the Patents-in-Suit are anticipated (are not new) and/or can be used to show

12   that the claimed invention(s) would have been obvious to a person of ordinary skill in the art.  This

13   determination is made on a claim-by-claim basis.

14          To support a finding of invalidity, the prior inventors' prior invention must not have been

15   abandoned, suppressed, or concealed. You may find that a prior invention was abandoned, suppressed,

16   or concealed if you find that (1) the prior inventor actively concealed the invention from the public, or

17   (2) the prior inventor unreasonably delayed in making the invention publicly known.  Generally, a

18   prior invention was not abandoned, suppressed, or concealed if the invention was made public, sold,

19   or offered for sale, or otherwise used for a commercial purpose.  A period of delay does not constitute

20   abandonment, suppression, or concealment, provided the prior inventor was engaged in reasonable

21   efforts to bring the prior invention to market during this period.

22

23

24

25

26

27

28

1    **XLII.  [DISPUTED] Final Jury Instruction No. ____: Obviousness[78]**

2         A patent claim is invalid if the claimed invention would have been obvious to a person of

3    ordinary skill in the field at the time the claimed invention was made. This means that even if all of

4    the requirements of the claim cannot be found in a single prior art reference that would anticipate the

5    claim, a person of ordinary skill in the field of digital action cameras, who knew about all this prior

6    art would have come up with the claimed invention. "[T]he use of the prior invention of another who

7    had not abandoned, suppressed, or concealed it, under the circumstances of this case which include

8    the disclosure of such invention in an issued patent, is available as 'prior art' within the meaning of

9    that term in § 103 by virtue of § 102(g)."[79]

10         GoPro contends that the following prior art and combinations of prior art when considered in

11    view of the state of the art render the inventions claimed in the Patents-in-Suit obvious:

12        •  Hero HD prototype conceived by Nicholas D. Woodman and reduced to practice by

13           him and at his direction.

14        •  Looxcie device conceived by Vidcie and reduced to practice them/at their direction.

15        •  Ambarella A5s Reference Device conceived by Ambarella and reduced to practice by

16           them/at their direction.

17        •  GoPro Hero3 Silver conceived by Ambarella and reduced to practice by them/at their

18           direction.

19        •  The combination of the GoPro HD Motorsports HERO and U.S. Publication No.

20           2010/0118158, which is referred to as the "Boland" patent application.

21        •  The combination of Boland and Ambarella A5/A5s under 102(a), (b), and/or (g)

---

22    [78] Adapted from N.D. Cal. Model Patent Jury Instructions, Instruction 4.3b (Alternative 2); Federal Circuit Bar Association Model Patent Jury Instructions, Instruction 4.3c.

23    [79] **GoPro's Position:** GoPro's proposes an instruction that is necessary to consider the invalidity

24    positions in this case and is consistent with well-established Federal Circuit and CCPA law, which describes that 102(g) prior art my constitute prior art under 103. *Tyco Healthcare Group LP v Ethicon Endo-Surgery, Inc.*, 774 F.3d 968, 976-977 (Fed. Cir. 2014);  In re Bass, 59 C.C.P.A. 1342, 1355

25    (CCPA               Mar.               15,               1973)

26    **Contour's Position**:  Contrary to GoPro's argument, the issue is not whether § 102(g) prior art may be used as § 103 reference.  Rather, the issue is GoPro's attempt to instruct the jury on the standards

27    for § 102(g) by extracting a statement in isolation from a 1973 CCPA case that GoPro presumably likes, which is improper as the Patent Act addresses prior invention under § 102(g) and as the parties

28    have proposed an instruction on prior invention further below.  GoPro has not shown that this statement is controlling law.

- The combination of Boland, Ambarella, and the State of the Art (Sony Handycam Handbook)

- Sony itself, and the combination of Sony and one or more of the following:  Ambarella, U.S. Patent No. 8,199,251 to Woodman, U.S. Patent Application Publication No. 2006/070111 to Kurosawa, European Patent No. EP0895623 to Loveman, Japanese Patent Publication No. 2004328700 to Eguchi.

- Looxcie itself and/or the combination of Looxcie and one or more of the following: U.S. Patent Application Publication No. 2006/070111 to Kurosawa, European Patent No. EP0895623 to Loveman, Sony, Japanese Patent Publication No. 2004328700 to Eguchi, and U.S. Patent Application No. 2010/0111489 to Presler.

- The combination of Canon and one or more of the following: Ambarella, U.S. Patent Application No. 2010/0111489 to Presler, Sony, U.S. Patent Application Publication No. 2006/070111 to Kurosawa, Japanese Patent Publication No. 2004328700 to Eguchi.

- The combination of Nikon and one or more of the following:  Ambarella, U.S. Patent Application No. 2010/0111489 to Presler.[80]

The ultimate conclusion of whether a claim is obvious should be based upon your determination of several factual decisions.

---

[80] **Contour's Position:**  GoPro's proposed paragraph is unnecessary, unsupported by the facts of this case, and overbroad.  First, GoPro asserts multiple companies (e.g., Ambarella and Looxcie) as prior inventors, but the law is clear that "only natural persons can be 'inventors.'"  *Beech Aircraft Corp. v. EDO Corp.*, 990 F.2d 1237, 1248 (Fed. Cir. 1993).  Moreover, the majority of these alleged theories should be stricken (Dkt. 769), and should be limited in any event as set forth in Contour's MILs.

**GoPro's Position:**  GoPro's proposed instruction clearly identifies the prior art references for the jury. Moreover, it clearly specifies the manner in which the GoPro prior product development is salient to a §103 analysis.  *See  Kimberly-Clark Corp. v. Johnson & Johnson*, 745 F.2d 1437, 1444 (Fed. Cir. 1984).  A prior invention may be identified pursuant to 35 USC 102(g) without identifying an individual inventor.  *Fox Group, Inc. v. Cree, Inc.*, 700 F.3d 1300, 1305 (Fed. Cir. 2012) (finding that the defendant, a corporation, was a "another inventor" under 35 U.S.C. § 102(g)).  GoPro's proposal is consistent with Federal Circuit and District Court case law finding 102(g) based on the existence of a prior invention (not an individual inventor).  To the extent CIPH prevails on its argument that 102(g) requires specific identification of an individual prior inventor - and not just a prior invention as stated in the plain language of the statute - GoPro would identify Mr. Legall and/or Mr. Chien as prior inventors of Ambarella's invention and Messrs. Periera, Narayan, and/o Boland as prior inventors of the Looxcie/Vidcie invention. Moreover, for the reasons set forth in Dkt. 788-3, no invalidity theory should be stricken.

First, you must decide the level of ordinary skill in the field that someone would have had at the time the claimed invention was made. In deciding the level of ordinary skill, you should consider all the evidence introduced at trial, including:

(1)    the levels of education and experience of persons working in the field;

(2)    the types of problems encountered in the field; and

(3)    the sophistication of the technology.

Second, you must decide the scope and content of the prior art. In order to be considered as prior art to claims 11 and 12 of the '954 Patent, and claims 4 and 6 of the '694 Patent, these references must be reasonably related to the claimed invention of that patent. A reference is reasonably related if it is in the same field as the claimed invention or is from another field to which a person of ordinary skill in the field would look to solve a known problem.

Third, you must decide what difference, if any, existed between the claimed invention and the prior art.

Finally, you should consider any of the following factors that you find have been shown by the evidence:

(1)    commercial success of a product due to the merits of the claimed invention;

(2)    a long felt need for the solution provided by the claimed invention;

(3)    unsuccessful attempts by others to find the solution provided by the claimed invention;

(4)    copying of the claimed invention by GoPro or others;

(5)    unexpected and superior results from the claimed invention;

(6)    acceptance by others of the claimed invention as shown by praise from others in the field or from the licensing of the claimed invention;

(7)    skepticism that the claimed invention would work as intended; and

(8)    other evidence tending to show nonobviousness.

The presence of any of factors 1-8 may be considered by you as an indication that the claimed invention would not have been obvious at the time the claimed invention was made.  Although you should consider any evidence of these factors, the relevance and importance of any of them to your decision on whether the claimed invention would have been obvious or not is up to you.

However, there must be a sufficient nexus—that is, a connection—between any factor you consider and the claimed invention.

A patent claim composed of several elements is not proved obvious merely by demonstrating that each of its elements was independently known in the prior art. In evaluating whether such a claim would have been obvious, you may consider whether GoPro has identified a reason that would have prompted a person of ordinary skill in the field to combine the elements or concepts from the prior art in the same way as in the claimed invention. There is no single way to define the line between true inventiveness on the one hand (which is patentable) and the application of common sense and ordinary skill to solve a problem on the other hand (which is not patentable). For example, market forces or other design incentives may be what produced a change, rather than true inventiveness. You may consider whether an inventor would look to the prior art to help solve the particular problem at hand. You may consider whether the change was merely the predictable result of using prior art elements according to their known functions, or whether it was the result of true inventiveness. You may also consider whether there is some teaching or suggestion in the prior art to make the modification or combination of elements claimed in the patent. Also, you may consider whether the innovation applies a known technique that had been used to improve a similar device or method in a similar way. You may also consider whether the claimed invention would have been obvious to try, meaning that the claimed innovation was one of a relatively small number of possible approaches to the problem with a reasonable expectation of success by those skilled in the art. For example, where an inventor would be left with two design choices, each of those design choices is an obvious combination for which one would have a reasonable expectation of success.[81]  However, you must be careful not to determine

---

[81] **GoPro's Position:**  GoPro's proposes an instruction that is necessary to consider the invalidity positions in this case and is consistent with well-established Federal Circuit law.  *Uber Techs., Inc. v. X One, Inc.*, 957 F.3d 1334, 1340 (Fed. Cir. 2020); *see also ACCO Brands Corp. v. Fellowes, Inc.*, 813 F.3d 1361, 1367 (Fed. Cir. 2016) (explaining that where an "ordinary artisan would . . . be left with two design choices . . . [e]ach of these two design choices is an obvious combination"); *Wyers v. Master Lock Co.*, 616 F.3d 1231, 1238 (Fed. Cir. 2010) (holding that a motivation to combine and a reasonable expectation of success exist when "it is simply a matter of common sense" to combine known elements of the prior art to solve a known problem).

**Contour's Position**:  GoPro again improperly extracts a statement in isolation from caselaw case that GoPro presumably likes and attempts to instruct the jury with this language.  Moreover, this language is contrary to the facts of this case, as there is no evidence—much less undisputed evidence—that an "an

---

1    obviousness using the benefit of hindsight; many true inventions might seem obvious after the fact.

2    You should put yourself in the position of a person of ordinary skill in the field at the time the claimed

3    invention was made and you should not consider what is known today or what is learned from the

4    teaching of the patent.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27    _____
      inventor would be left with **two design choices**" or that any "design choice" here "would have a
28    reasonable expectation of success."  Moreover, GoPro's proposed instruction again seeks to subvert
      the statutory requirement for GoPro to prove invalidity by clear and convincing evidence.

63

**XLIII. [DISPUTED] Final Jury Instruction No. \_\_\_\_: Invalidity – Date of the Invention[82]**

**GoPro's Proposal:**

The date of invention is either when the invention was reduced to practice or when conceived, provided the inventors were diligent in reducing the invention to practice. Diligence means working continuously, though not necessarily every day. Conception is the mental part of an inventive act, i.e., the formation in the mind of the inventor of a definite and permanent idea of the complete and operative invention as it is thereafter to be applied in practice, even if the inventor did not know at the time that the invention would work. Conception of an invention is complete when the idea is so clearly defined in the inventor's mind that, if the idea were communicated to a person having ordinary skill in the field of the technology, he or she would be able to reduce the invention to practice without undue research or experimentation. This requirement does not mean that the inventor has to have a prototype built, or actually explained her or his invention to another person. But, there must be some evidence beyond the inventor's own testimony that confirms the date on which the inventor had the complete idea. Conception may be proven when the invention is shown in its complete form by drawings, disclosure to another person, or other forms of evidence presented at trial. Such evidence is known as corroborating evidence. Specifically, an inventor must present corroborating evidence of a contemporaneous disclosure that would enable one skilled in the field to make the claimed invention. A claimed invention is "reduced to practice" when it has been constructed, used, or tested sufficiently to show that it will work for its intended purpose or when the inventor files a patent application that fully describes the invention.

**Contour's Proposal:[83]**

---

[82]    Federal Circuit Bar Association Model Patent Jury Instructions (May 2020), Section B.4.3a-2.
**GoPro's Position:** GoPro proposes this instruction which provides the recitation of conception and reduction to practice law. CIPH's suggestion that it is "already included in Contour's proposed instruction" is misleading. In reality, GoPro and CIPH offer competing instructions on priority (**compare XLV**) and CIPH seeks to deprive GoPro and the jury of a meaningful instruction on 35 U.S.C. § 102(g). But in order to obscure this fact, CIPH has created a combined instruction set that intentionally does not show the parties comparative instructions regarding priority together. GoPro's addition regarding corroborating evidence is also proper under the November 2011 Model Patent Jury Instructions for the Northern District of California at fn.14.
[83]    **Contour's Position:** The ND Cal model instruction on priority date (4.3a1a) is already included in Contour's proposed instruction for XLI. [DISPUTED] Final Jury Instruction No. \_\_\_\_: Invalidity –

The Court should not give this instruction.

---

Prior Invention.  GoPro's proposal for that instruction also includes discussion of priority, conception, and reduction to practice.  As such, an additional instruction here is redundant.  GoPro also offers no reason for deviating from the N.D. Cal model instruction here, which the parties have used as the basis of most proposed jury instructions in this case.

**XLIV. [DISPUTED] Final Jury Instruction No. ____: Inequitable Conduct[84]**

**GoPro's Proposal:**

Every applicant for a patent has a duty of candor and good faith in its dealing with the United States Patent and Trademark Office. When a person involved in the prosecution of an application knowingly fails to supply material information or supplies false information or statements and the only reasonable explanation for their actions is that they intended to deceive the PTO, he or she may commit what is called "inequitable conduct." When inequitable conduct occurs during the examination of an application, any patent that issues from that application is unenforceable as a matter of fairness. This means that despite the existence and validity of the patent, the patent holder may not prevent others from using the invention covered by the patent and may not collect damages from those who use the invention that is covered by the patent.

To prove inequitable conduct, GoPro must prove by clear and convincing evidence both that (1) a patent prosecutor of record, a named inventor, or any person who was substantively involved in the prosecution of the patent at issue withheld material information or submitted materially false information or statements to the PTO during the examination of the asserted patents with specific intent to deceive the PTO and (2) that the single most reasonable explanation is that he or she intended to deceive the PTO into issuing the asserted patent. Any inadvertent errors, honest mistakes, or even gross negligence by individuals who obtained the patents-in-suit do not constitute inequitable conduct. I will now explain to you what "material" and "specific intent to deceive" mean.

Information or statements are material if the Patent Examiner would not have granted at least

---

[84] **GoPro's Position:** This instruction is proper and is consistent with the FCBA Model Patent Jury Instructions (2016) at Instruction B.5 ("Although these equitable defenses are ultimately decided by the Court, these instructions are provided for the case in which the Court decides to submit these issues to the jury for advisory findings."). Courts in this district and others have allowed the jury to give an advisory verdict on the factual issues underlying a defense on inequitable conduct. *See, e.g.*, Jury Verdict, Dkt. 274, *TVIIM, LLC v. McAfee, Inc.*, 4:13-cv-04545-HSG (N.D. Cal.); Jury Verdict, Dkt. 356, *Whitewater West Industries, LTD. v. Pacific Surf Designs, Inc. et al.*, 3:17-cv-01118-BEN-BLM (S.D. Cal.); Dkt. 540, *Graco Inc. et al v. Carlisle Construction Materials, LLC*, 1:21-cv-00245-JFM (D. Del.); Final Jury Instructions, Dkt. 540, *Graco Inc. et al v. Carlisle Construction Materials, LLC*, 1:21-cv-00245-JFM (D. Del.). GoPro's theories of inequitable conduct overlaps significantly with GoPro's invalidity theories based on Ambarella. In the event the Court permits the jury to give an advisory verdict following the presentation of inequitable conduct, the jury must be instructed on the relevant law, which CIPH does not contest is accurately reflected in GoPro's proposal. Thus, if the Court allows the issues to be presented to the jury, it should use GoPro's proposed instruction.

one claim of a patent if he had been aware of the information alleged to be material. This is known as "but-for" materiality. To prove that omitted information or an incorrect statement is but for material, GoPro must prove by a preponderance of the evidence that the Patent Examiner would have refused to issue a claim of the patent if he had been aware of the withheld information or the accurate statement. Your assessment of but-for materiality may involve considering disputes between CIPH and GoPro about what facts were before the patent examiner. GoPro must prove the disputed facts by clear and convincing evidence. An omitted reference is not but-for material if it is cumulative. A reference is cumulative when it teaches no more than what a reasonable examiner would consider to be taught by the prior art already before the patent office. GoPro may also establish materiality by proving, by clear and convincing evidence, that an individual provided the Patent Office with an unmistakably false affidavit.

In order for inequitable conduct to have occurred, GoPro must establish by clear and convincing evidence that the most reasonable explanation for any failure to disclose but-for material information or for making false or misleading statements that were but-for material is that the actions were done with a specific intent to deceive the Examiner. Specifically, for information GoPro contends a patent prosecutor, named inventor, or other individual who was substantively involved in the prosecution of the patent or patent at issue failed to disclose, GoPro must demonstrate that the individual knew of the information, knew it was but-for material, and nevertheless made a deliberate decision to withhold it with the specific intent to deceive the Patent Office.

Intent may be shown through direct evidence, such as documents or testimony about one's intent to deceive. Intent also may be shown through indirect evidence or, in other words, it may be inferred from conduct. However, for specific intent to deceive to be inferred, the single most reasonable inference from the evidence must be that the individual intended to deceive the Examiner into issuing the asserted patent. The submission of an unmistakably false affidavit raises a strong inference of intent to deceive. If you believe it is reasonably possible there was deceptive intent, but also believe it is equally reasonably possible there was not deceptive intent, then you should conclude that there was no specific intent to deceive. You may only find specific intent to deceive if GoPro proves by clear and convincing evidence that the single most reasonable explanation is deceptive

1    intent.

2            **Contour's Proposal:**[85]

3            The Court should not give this instruction.

---

[85] **Contour's Position:**  The jury should not be instructed on inequitable conduct because the jury does not decide inequitable conduct.  "Inequitable conduct is equitable in nature, with no right to a jury, and the trial court has the obligation to resolve the underlying facts of materiality and intent."  *Am. Calcar, Inc. v. Am. Honda Motor Co., Inc.*, 651 F.3d 1318, 1333 (Fed. Cir. 2011); *GS Cleantech Corp. v. Adkins Energy LLC*, 951 F.3d 1310, 1331, 1325 n.15 (Fed. Cir. 2020) (rejecting the patentee's argument that it was entitled to a jury trial on the issue of materiality).  Moreover, courts routinely refuse to allow advisory verdicts on inequitable conduct because it "risks contaminating the jury's consideration of infringement and validity and would likely result in more time during the jury phase of the trial spent discussing limiting instructions," and—more importantly—"may influence a jury's decision on that issue by suggesting that the inventor is untrustworthy."  *In re Biogen '755 Pat. Litig.*, 2018 WL 3613162, at *4 (D.N.J. July 26, 2018).  Thus, this instruction is entirely improper.

**XLV.  [AGREED] Final Jury Instruction No. _____: Inventorship[86]**

In this case, GoPro contends that the Asserted Patents are invalid because of improper inventorship. Specifically, GoPro contends that one or more individuals working on behalf of Ambarella, including at least Mr. LeGall, should have been a named inventor on the Asserted Patents. A patent is invalid if it fails to meet the requirement that all of the actual inventors, and only the actual inventors, be named as inventors in the patent. This is known as the "inventorship" requirement.

To be an inventor, one must make a significant contribution to the conception of at least one of the claims of the patent. Whether the contribution is significant in quality is measured against the scope of the full invention.

If someone only explains to the actual inventors well-known concepts or the current state of the art, he or she is not an inventor. Merely helping with experimentation, by carrying out the inventor's instructions, also does not make someone an inventor. What is required is some significant contribution to the idea claimed.

Persons may be inventors even if they do not make the same type or amount of contribution, and even if they do not contribute to the subject matter of each claim of the patent. Persons may be joint or co-inventors even though they do not physically work together, but they must have some open line of communication during or at approximately the time of their inventive effort.

---

[86] FCBA Model Patent Jury Instructions (2020) at Instruction 4.3d.

**XLVI. [AGREED]  Final Jury Instruction No. _____: Damages – Burden of Proof[87]**

I will instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win on any issue. If you find that GoPro infringed any valid claim of the patents-in-suit, you must then determine the amount of money damages to be awarded to [Contour] [CIPH] to compensate it for the infringement.

The amount of those damages must be adequate to compensate [Contour] [CIPH] for the infringement. A damages award should put the patent holder in approximately the financial position it would have been in had the infringement not occurred, but in no event may the damages award be less than a reasonable royalty. You should keep in mind that the damages you award are meant to compensate the patent holder and not to punish an infringer.

[Contour] [CIPH] has the burden to persuade you of the amount of its damages. You should award only those damages that [Contour] [CIPH] more likely than not suffered. While [Contour] [CIPH] is not required to prove its damages with mathematical precision, it must prove them with reasonable certainty. [Contour] [CIPH] is not entitled to damages that are remote or speculative.

---

[87] Adopted from N.D. Cal. Model Patent Jury Instructions, Instruction 5.1.

**XLVII.      [DISPUTED] Final Jury Instruction No. ____: Reasonable Royalty—Definition**

Contour is seeking damages in the amount of a reasonable royalty.[88] A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention. A reasonable royalty is the amount of royalty payment that a patent holder and the alleged infringer would have agreed to in a hypothetical negotiation taking place at a time prior to when the infringement first began. In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the alleged infringer would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations. In determining this, you must assume that both parties believed the patent was valid and infringed and that both parties were willing to enter into an agreement. The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred. Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation just prior to the first infringement.

A royalty can be calculated in several different ways and it is for you to determine which way is the most appropriate based on the evidence you have heard.  One way to calculate a royalty is to determine what is called an "ongoing royalty." To calculate an ongoing royalty, you must first determine the "base," that is, the product on which the alleged infringer is to pay. Here the parties have stipulated to the royalty base.  You then need to multiply the revenue the defendant obtained from that base by the "rate" or percentage that you find would have resulted from the hypothetical negotiation. For example, if the patent covers a nail, and the nail sells for $1, and the licensee sold 200 nails, the base revenue would be $200. If the rate you find would have resulted from the hypothetical negotiation is 1%, then the royalty would be $2, or the rate of 0.01 times the base revenue of $200. By contrast, if you find the rate to be 5%, the royalty would be $10, or the rate of 0.05 times the base revenue of

---

[88] The parties have agreed to GoPro's proposed introductory paragraph with the exception of two sentences – an introductory sentence and reference to the agreed hypothetical negotiation date. **Contour's Position:** Contour's proposed introductory sentence was adapted in *Finjan, Inc. v. Sophos, Inc.*, Case No. 14-cv-01197-WHO, Dkt. 396 at 32 (Reasonable Royalty) and *Fujifilm Corp. v. Motorola Mobility LLC*, Case No. 12-03587-WHO, Dkt. 329 at 38 (Final Jury Instruction No. 31 Reasonable Royalty - Definition).

71

$200. These numbers are only examples, and are not intended to suggest the appropriate royalty rate.

Instead of a percentage royalty, you may decide that the appropriate royalty that would have resulted from a hypothetical negotiation is a fixed number of dollars per unit sold. If you do, the royalty would be that fixed number of dollars times the number of units sold.

In this case, evidence of licenses may have been introduced. The royalty rate in one or more of those licenses may be considered if it helps to establish the value that is attributable to the patented invention as distinct from the value of other features of GoPro's accused products.

The ultimate combination of royalty base and royalty rate must reflect the value attributable to the infringing features of the product, and no more. When the accused infringing products have both patented and unpatented features, measuring this value requires you to identify and award only the value of the patented features. The process of separating the value of patented features from the value of all other features is called apportionment.[89]

---

[89] **Contour's Position:**  Contour's proposal adheres to the N.D. Cal. Model Patent Jury Instructions, Instruction 5.7.  This language was adopted recently by this Court in *Finjan, Inc. v. Sophos, Inc.*, Case No. 14-cv-01197-WHO, Dkt. 396 at 32-33 (Reasonable Royalty).  It is appropriate to include the example of the "ongoing royalty" in the N.D. Cal. Model Instruction 5.7, as this concept is likely foreign to most jurors and both experts utilize this methodology in forming their ultimate opinions. While the parties have stipulated to the units for each Accused Product to be included in the reasonable royalty based should damages be awarded (Dkt. Nos. 366, 471), it is up to the jury to determine infringement of the Products that are presented to the jury, and in turn, which units ultimately go into the royalty base.  Finally, GoPro ignores that "'[t]he degree of comparability of the … license agreements … are factual issues best addressed by cross examination and not by exclusion." *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1333 (Fed. Cir. 2012).

**GoPro's Position:**  CIPH's instruction is flawed.  It is incorrect to say that the jury will decide the royalty base because the parties have stipulated to the royalty base in this case.  CIPH's instruction not only injects inaccurate instructions as well as concepts not at issue in this case, it is also excessively (and here, unnecessarily) long, which is only likely to inject confusion, not clarity. CIPH's instruction also ignores that licenses are only relevant if they are technologically and economically comparable, which is an issue the parties dispute as to any licenses the jury may be presented with. Moreover, there is already a separate agreed instruction regarding licenses, so CIPH's proposal to include language relating to licenses in this instruction is redundant and unnecessary. GoPro's instruction, on the other hand, is narrowly tailored to fit the issues in the case and is taken directly from the FCBA model instructions.
*FCBA Model Patent Jury Instruction, B5.6.*  It also tracks the portion of the N.D. Cal. Model Patent Jury Instruction that is relevant to the issues in this case.

**XLVIII.        [DISPUTED] Final Jury Instruction No. ____: Reasonable Royalty—Factors[90]**

In determining a reasonable royalty, you may consider the following factors:

1. The royalties received by Contour, LLC [the patent owner][91] for the licensing of the patents-in-suit.

2. The rates paid by GoPro for the use of other patents comparable to the patents-in-suit. The nature and scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold.

4. Contour, LLC [The licensor]'s established policy and marketing program to maintain its patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

5. The commercial relationship between Contour, LLC [the licensor] and GoPro, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventor and promotor.

6. The effect of selling the patented specialty in promoting sales of other products of GoPro; the existing value of the invention to Contour, LLC [the licensor] as a generator of sales of its non-patented items; and the extent of such derivative or convoyed sales.

7. The duration of the patents-in-suit and the term of the license.

8. The established profitability of any products made under the patents-in-suit; their commercial success; and their popularity.

9. The utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results.

---

[90] **GoPro's Position**: The parties agree on including the *Georgia-Pacific* reasonable royalty factors, as both sides' experts rely upon those factors. This should therefore be removed as a dispute and provided to the jury. CIPH's position further highlights why the Court should refer to it as CIPH instead of Contour. There is no dispute that the hypothetical licensor is Contour, LLC not CIPH. GoPro's proposal accurately refers to the hypothetical licensor as Contour, LLC as opposed to the current owner, CIPH.

[91] **Contour's Position:** GoPro's language is not appropriate as the parties have agreed Plaintiff is not a party to the hypothetical negotiation. The precise language of the *Georgia-Pacific* factors should be used instead. Indeed, GoPro argues that Contour's position "further highlights why the Court should refer to it as CIPH," but GoPro's proposal attempts to introduce confusion into the issues whereas Contour's proposal is simple and straightforward.

10. The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by Contour, LLC [the licensor]; and the benefits to those who have used the invention.

11. The extent to which GoPro has made use of the invention; and any evidence probative of the value of that use.

12. The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

13. The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

14. The opinion testimony of qualified experts.

15. The amount that a licensor (such as Contour, LLC [the patent owner]) and a licensee (such as GoPro) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors which in your mind would have increased or decreased the royalty GoPro would have been willing to pay and that Contour would have been willing to accept, acting as normally prudent business people.[92]

---

[92] *Finjan, Inc. v. Sophos, Inc.*, Case No. 14-cv-01197-WHO, Dkt. 396 at 34–35 (Reasonable Royalty-Relevant Factors); *Fujifilm Corp. v. Motorola Mobility LLC*, Case No. 12-03587-WHO, Dkt. 329 at 38–39 (Final Jury Instruction No. 31 Reasonable Royalty - Definition); Federal Circuit Bar Association Model Patent Jury Instructions, Instruction 5.8.
**Contour's Position:**  This additional language should be included, as it was by this Court in *Finjan* and *Fujifilm* to more accurately reflect the law.

**XLIX. [AGREED] Final Jury Instruction No. _____: Date of Commencement of Damages[93]**

    Damages that [Contour] [CIPH] may be awarded by you commence on January 5, 2015.

---

[93] Adapted from N.D. Cal. Model Patent Jury Instructions, Instruction 5.9; Dkt. 444 at 14 (granting GoPro's summary judgment motion regarding pre-suit damages).

**L.    [DISPUTED] Final Jury Instruction No. ____: Damages - Apportionment[94]**

The amount you find as damages must be based on the value attributable to the patented invention, as distinct from unpatented or conventional[95] features of the accused product or other factors such as GoPro's marketing, [or] advertising, or GoPro's size or market position.[96]    A royalty compensating the patent holder for damages must reflect the value attributable to the infringing features of the product, and no more.  The process of separating the value of the allegedly infringing features from the value of all other features is called apportionment. When the accused infringing products have both patented and unpatented features, your award must be apportioned so that it is based only on the value of the patented features, and no more.

---

[94]    FCBA Model Patent Jury Instructions at B.5.5.12; AIPLA Model Jury Instructions (2025) at Instruction 10.2.5.4.

[95]    **GoPro's Position**: The Court has previously held that conventional features must be apportioned and this instruction on apportionment should reflect that. Dkt. 445 ("Ugone was required to apportion his damages theory to *only* those features ... that were unconventional"); *Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prod. Grp., LLC*, 879 F.3d 1332, 1348 (Fed. Cir. 2018) ("the patent owner must apportion or separate the damages between the patented improvement and the conventional components of the multicomponent product."). Additionally the AIPLA Model Jury Instruction includes GoPro's proposed language of "or other factors such as marketing or advertising and [the Defendant]'s size or market position." AIPLA Model Jury Instructions (2025) at Instruction 10.2.5.4.

[96]    **Contour's Position:**  GoPro improperly revises the model instruction to include "conventional" features and to refer to "GoPro's marketing" and "GoPro's size or market position" when it says: "The amount you find as damages must be based on the value attributable to the patented invention, as distinct from unpatented features of the accused product or other factors such as marketing or advertising, or [the patent holder's] size or market position."  FCBA Model Patent Jury Instructions at B.5.5.12.

**LI.    [AGREED] Final Jury Instruction No. _____: Comparable Agreements[97]**

Comparable license agreements are one factor that may inform your decision as to the proper amount and form of the reasonable royalty award, similar to the way in which the value of a house is determined relative to comparable houses sold in the same neighborhood. Whether a license agreement is comparable to the license under the hypothetical license scenario depends on many factors, such as whether they involve comparable technologies, comparable economic circumstances, comparable structure, and comparable scope. If there are differences between a license agreement and the hypothetical license, you must take those into account when you make your reasonable royalty determination.

---

[97] FCBA Model Patent Jury Instructions at B.5.9.

1
2
3

**LII.    [AGREED]  Final Jury Instruction: Duty to Deliberate[98]**

4

Before you begin your deliberations, elect one member of the jury as your presiding juror.  The

5

presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

6

You shall diligently strive to reach agreement with all of the other jurors if you can do so. Your

7

verdict must be unanimous.

8

Each of you must decide the case for yourself, but you should do so only after you have

9

considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

10

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you

11

can do so after having made your own conscientious decision. Do not be unwilling to change your

12

opinion if the discussion persuades you that you should. But do not come to a decision simply because

13

other jurors think it is right, or change an honest belief about the weight and effect of the evidence

14

simply to reach a verdict.

15
16
17
18
19
20
21
22
23
24
25
26
27
28

---

[98] Adapted from Ninth Circuit Model Civil Jury Instructions, Instruction 3.1.

1    **LIII.    [AGREED]  Final Jury Instruction No. ____: Taking Notes[99]**

2         You may have taken notes during the trial. Whether or not you took notes, you should

3    rely on your own memory of the evidence. Notes are only to assist your memory. You should

4    not be overly influenced by your notes or those of other jurors.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[99] Adapted from Ninth Circuit Model Civil Jury Instructions, Instruction 1.18.

**LIV.    [AGREED]  Final Jury Instruction No. ____: Consideration of Evidence – Conduct of Jury[100]**

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves. Except for discussing the case with your fellow jurors during your deliberations:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone, tablet, computer, or any other means, via email, via text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, TikTok, or any other forms of social media. This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial. If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial

---

[100] Adapted from Ninth Circuit Model Civil Jury Instructions, Instruction 3.2.

process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings. If any juror is exposed to any outside information, please notify the court immediately.

**LV.    [AGREED]  Final Jury Instruction No. _____: Communication with the Court[101]**

If it becomes necessary during your deliberations to communicate with me, you may send a note through the clerk, signed by any one or more of you. No member of the jury should ever attempt to communicate with me except by a signed writing. I will not communicate with any member of the jury on anything concerning the case except in writing or here in open court. If you send out a question, I will consult with the lawyers before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including the court—how the jury stands, whether in terms of vote count or otherwise, until after you have reached a unanimous verdict or have been discharged.

---

[101] Adapted from Ninth Circuit Model Civil Jury Instructions, Instruction 3.3.

**LVI.    [AGREED]  Final Jury Instruction: Return of Verdict**[102]

A verdict form has been prepared for you.  After you have reached unanimous agreement on a verdict, your presiding juror should complete the verdict form according to your deliberations, sign and date it, and advise the clerk that you are ready to return to the courtroom.

---

[102] Adopted from Ninth Circuit Model Civil Jury Instructions, Instruction 3.5.