1

2

3

4                      UNITED STATES DISTRICT COURT

5                     NORTHERN DISTRICT OF CALIFORNIA

6

7    CONTOUR IP HOLDING, LLC,              Case No.  17-cv-04738-WHO

8                  Plaintiff,

9         v.                              **TENTATIVE FINAL JURY
                                          INSTRUCTIONS**
10   GOPRO, INC.,                         **ROUND 1**

11                Defendant.

12   This is the first round draft of final jury instructions for the parties to review prior to the October
     3, 2025, final jury instructions conference.
13

14

15   Dated: October 2, 2025                        William H. Orrick
                                                    United States District Judge
16

17

18

19

20

21

22

23

24

25

26

27

28

**NO. 1**

**Duty of the Jury**

Members of the Jury: Now that you have heard all of the evidence, it is my duty to instruct you on the law that applies to this case.

A copy of these instructions will be sent to the jury room for you to consult during your deliberations.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

Please do not read into these instructions or anything that I may say or do or have said or done that I have an opinion regarding the evidence or what your verdict should be.

**NO. 2**

**What is Evidence**

The evidence you are to consider in deciding what the facts are consists of:

1.      the sworn testimony of any witness;

2.      the exhibits that are admitted into evidence;

3.      any facts to which the lawyers have agreed; and

4.      any facts that I may instruct you to accept as proved.

## NO. 3

### What is Not Evidence

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are.

I will list them for you:

(1)     Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they said in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2)     Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3)     Testimony that is excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered. In addition, some evidence was received only for a limited purpose; when I instructed you to consider certain evidence only for a limited purpose, you must do so and you may not consider that evidence for any other purpose.

(4)     Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

**NO. 4**

**Evidence for a Limited Purpose**

Some evidence may have been admitted only for a limited purpose. You must consider it only for that limited purpose and not for any other purpose.

**NO. 5**

**Charts and Summaries in Evidence**

Certain charts and summaries have been received into evidence to illustrate information brought out in the trial.  Charts and summaries are only as good as the underlying evidence that supports them.  You should, therefore, give them only such weight as you think the underlying evidence deserves.

**NO. 6**

**Demonstratives Not Received in Evidence**

Certain demonstrative slides or illustrative aids, charts, and summaries not received in evidence have been shown to you in order to help explain the contents of books, records, documents, or other evidence in the case. Slides, charts, and summaries are only as good as the underlying evidence that supports them. In other words, these demonstratives are not, in and of themselves, evidence. You should, therefore, give them only such weight as you think the underlying evidence deserves.

United States District Court
Northern District of California

## NO. 7

### Direct and Circumstantial Evidence

Evidence may be direct or circumstantial.

Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did.

Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night. However, other evidence, such as a turned on garden hose, may provide a different explanation for the presence of water on the sidewalk. Therefore, before you decide that a fact has been proved by circumstantial evidence, you must consider all the evidence in the light of reason, experience and common sense.

The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

1

2

### NO. 8

### Ruling on Objections

There are rules of evidence that control what can be received into evidence.  When a lawyer asked a question or offered an exhibit into evidence and a lawyer on the other side thought that it is not permitted by the rules of evidence, that lawyer may have objected.  If I overruled the objection, the question was answered or the exhibit received.  If I sustained the objection, the question was not answered, and the exhibit was not received.  Whenever I sustained an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may have ordered that evidence be stricken from the record and that you disregard or ignore that evidence.  That means when you are deciding the case, you must not consider the stricken evidence for any purpose.

**NO. 9**

**Credibility of Witnesses**

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

(1)    the opportunity and ability of the witness to see or hear or know the things testified to;

(2)    the witness's memory;

(3)    the witness's manner while testifying;

(4)    the witness's interest in the outcome of the case, if any;

(5)    the witness's bias or prejudice, if any;

(6)    whether other evidence contradicted the witness's testimony;

(7)    the reasonableness of the witness's testimony in light of all the evidence; and

(8)    any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

**NO. 10**

**Implicit Bias**

We all have feelings, assumptions, perceptions, fears, and stereotypes about others. Some biases we are aware of, and others we might not be fully aware of, which is why they are called implicit or unconscious biases.  No matter how unbiased we think we are, our brains are hardwired to make unconscious decisions.  We look at others and filter what they say through our own personal experience and background.  Because we all do this, we often see life and evaluate evidence in a way that tends to favor people who are like ourselves, or who have had life experiences like our own.  We can also have biases about people like ourselves.  One common example is the automatic association of male with career and female with family.  Bias can affect our thoughts, how we remember what we see and hear, whom we believe or disbelieve, and how we make important decisions.

As jurors, you are being asked to make an important decision in this case.  You must one, take the time you need to reflect carefully and thoughtfully about the evidence.

Two, think about why you are making the decision you are making and examine it for bias. Reconsider your first impressions of the people and the evidence in this case.  If the people involved in this case were from different backgrounds, for example, richer or poorer, more or less educated, older or younger, or of a different gender, gender identity, race, religion or sexual orientation, would you still view them, and the evidence, the same way?

Three, listen to one another.  You must carefully evaluate the evidence and resist, and help each other resist, any urge to reach a verdict influenced by bias for or against any party or witness. Each of you have different backgrounds and will be viewing this case in light of your own insights, assumptions and biases.  Listening to different perspectives may help you to better identify the possible effects these hidden biases may have on decision making.

And four, resist jumping to conclusions based on personal likes or dislikes, generalizations, gut feelings, prejudices, sympathies, stereotypes, or unconscious biases.  The law demands that you make a fair decision based solely on the evidence, your individual evaluations of that evidence, your reason and common sense, and these instructions.

11

**NO. 11**

**Stipulations of Fact**

The parties have agreed to certain facts to be placed in evidence as Joint Exhibit __ that will be read to you.  You must therefore treat these facts as having been proved.

United States District Court
Northern District of California

**NO. 12**

**Deposition in Lieu of Live Testimony**

A deposition is the sworn testimony of a witness taken before trial.  The witness is placed under oath to tell the truth and lawyers for each party may ask questions.  The questions and answers are recorded.

You heard some witnesses testify by deposition.  Insofar as possible, you should consider deposition testimony, presented to you in court in lieu of live testimony, in the same way as if the witness had been present to testify.

**NO. 13**

**Stipulations About Testimony**

The parties have agreed that you should consider the declaration of Kiichiro Iga, portions of which were read to you, as testimony in the same way as if it had been given here in court.

**NO. 14**

**Use of Interrogatories of a Party**

Evidence was presented to you in the form of answers of one of the parties to written interrogatories submitted by the other side. These answers were given in writing and under oath before the trial in response to questions that were submitted under established court procedures. You should consider the answers, insofar as possible, in the same way as if they were made from the witness stand.

United States District Court
Northern District of California

**NO. 15**

**Expert Opinion**

You have heard testimony, on behalf of Contour, from certain expert witnesses who testified to opinions and the reasons for their opinions.  You have also heard testimony, on behalf of GoPro, from certain expert witnesses who testified to opinions and the reasons for their opinions.  This opinion testimony is allowed, because of the education or experience of these witnesses.

Such opinion testimony should be judged like any other testimony.  You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

**NO. 16**

**Burdens of Proof**

To remind you, the facts must have been proven by a required amount of evidence known as the burden of proof.  There are two burdens of proof that you must apply in this case: (1) preponderance of the evidence and (2) clear and convincing evidence.

Contour had the burden of proving patent infringement, damages, and willful infringement by a preponderance of the evidence.  When a party has the burden of proving any claim by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim is more probably true than not true.  You should base your decision on all of the evidence, regardless of which party presented it.

GoPro had the burden of proving invalidity by clear and convincing evidence.  When a party has the burden of proving any defense by clear and convincing evidence, it means that the party must present evidence that leaves you with a firm belief or conviction that it is highly probable that the factual contentions of the defense are true.  This is a higher standard of proof than proof by a preponderance of the evidence, but it does not require proof beyond a reasonable doubt.

**NO. 17**

**Interpretation of Claims**

Before you decide whether GoPro has infringed the asserted claims of the patents-in-suit or whether the claims are invalid, you will need to understand the patent claims. As I mentioned at the beginning of the case, the patent claims are numbered sentences at the end of the patent that describes the boundaries of the patent's protection. It is my job as judge to explain to you the meaning of any language in the claim[s] that needs interpretation.

I have interpreted the meaning of some of the language in the patent claims involved in this case. You must accept those interpretations as correct. My interpretation of the language should not be taken as an indication that I have a view regarding the issues of infringement and invalidity. The decisions regarding infringement and invalidity are yours to make.

I instruct you that the following claim terms have the following definitions:

The preamble requiring a "portable, point of view digital video camera," is limiting.

The term "real time" means "without perceived delay."

The term "generate from the video image data a first image data stream and a second image data stream, wherein the second image data stream is a higher quality than the first image data stream" means "record in parallel from the video image data a first image data stream and a second image data stream, wherein the second image data stream is a higher quality than the first image stream."

The term "generate first video image content and second video image content corresponding to the video image data representing the scene, wherein the second video image content is a higher quality than the first video image content" means "record in parallel first video image content and second video image content corresponding to the video image data representing the scene, wherein the second video image content is a higher quality than the first video image content."

The term "prior to a recording of the scene" means "before storing video image data representing the scene."

The term "mount" means "a component configured to be mounted to at least one of the

1    body, a garment, or a vehicle."

2           The term "mounting interface" means "a place for attaching a mount."

3           The claims are limited to a point of view digital video camera (or camera system)

4    comprising, "among other things, 'a camera processor.'"  The camera processor is configured to,

5    among other things, cause the wireless connection protocol device to send the first image data

6    stream directly to the personal portable computing device for display on a display of the personal

7    portable computing device, wherein the personal portable computing device generates the control

8    signals for the video camera.  The "wherein" clause "helps define the control signals that the

9    processor is configured to receive."

10          If I have not provided a specific definition for a given term, you are to use the plain and

11   ordinary meaning of that term.

**NO. 18**

**Independent and Dependent Claims**

This case involves two types of patent claims: independent claims and dependent claims.

An "independent claim" sets forth all of the requirements that must be met in order to be covered by that claim. Thus, it is not necessary to look at any other claim to determine what an independent claim covers.

In this case, claim 11 of the '954 Patent is an independent claim, while claim 12 is a dependent claim. In the '694 Patent, claim 3 is an independent claim, while claim 6 is a dependent claim.

A dependent claim does not itself recite all of the requirements of the claim but refers to another claim for some of its requirements. In this way, the claim "depends" on another claim. A dependent claim incorporates all of the requirements of the claim(s) to which it refers. The dependent claim then adds its own additional requirements. To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claim(s) to which it refers. A product that meets all of the requirements of both the dependent claim and the claim(s) to which it refers is covered by that dependent claim.

**NO. 19**

**Infringement—Burden of Proof**

I will now instruct you on the rules you must follow in deciding whether Contour has proven that GoPro has infringed one or more asserted claims of the patents-in-suit. To prove infringement of any claim, Contour must persuade you that it is more likely than not that GoPro has infringed that claim.

**NO. 20**

**Claim 11 of the '954 Patent**

Previously, I determined that the Live Preview Group 1 Products include each element of Claim 11 of the '954 Patent. You must accept my ruling and you will not be asked to make any further determination on that issue for the Live Preview Group 1 Products with respect to Claim 11 of the '954 Patent. My determination applies only to the Live Preview Group 1 Products. You, the jury, must decide on your own whether the other Accused GoPro Products include each element of Claim 11, and you should not be influenced one way or another in your decision by my determination with respect to the Live Preview Group 1 Products.

My determination that the Live Preview Group 1 Products include each element of Claim 11 of the '954 Patent does not mean that I have determined that Claim 11 of the '954 Patent is valid, that damages are appropriate, or that GoPro willfully infringed Claim 11.

**NO. 21**

**Direct Infringement**

A patent's claims define what is covered by the patent. A product directly infringes a patent if it is covered by at least one claim of the patent.

Deciding whether a claim has been directly infringed is a two-step process. The first step is to decide the meaning of the patent claim. I have already made this decision, and I have already instructed you as to the meaning of the asserted patent claims. The second step is to decide whether GoPro has made, used, sold, or offered for sale within the United States a product covered by claims 11 and 12 of the '954 Patent, or claim 6 of the '694 Patent. If it has, it infringes. You, the jury, make this decision.

With one exception, you must consider claims 11 and 12 of the '954 Patent, and claim 6 of the '694 Patent individually, and decide whether GoPro's products infringe that claim. The one exception to considering claims individually concerns dependent claims. A dependent claim includes all of the requirements of a particular independent claim, plus additional requirements of its own. As a result, if you find that an independent claim is not infringed, you must also find that its depended claims are not infringed. On the other hand, if you find that an independent claim has been infringed, you must still separately decide whether the additional requirements of its dependent claims have also been infringed.

You have heard evidence that the previous owners of the Patents-in-Suit, known as Contour LLC and Contour Inc. made and sold commercial camera products. However, in deciding the issue of infringement you may not compare GoPro's accused products to Contour LLC's or Contour Inc.'s commercial products. Rather, you must compare GoPro's accused products to the claims of the '954 and the '694 Patents when making your decision regarding infringement.

Whether or not GoPro knew its product infringed or even know of the patent does not matter in determining direct infringement.

In order to directly infringe a claim, GoPro must "literally" infringe the claim, and I will explain what that means now.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**NO. 22**

**Literal Infringement**

To decide whether GoPro's accused product literally infringes a claim of the patents-in-suit, you must compare that product with the patent claim and determine whether every requirement of the claim is included in that product.  If so, GoPro's accused product literally infringes that claim.  If, however, GoPro's accused product does not have every requirement in the patent claim, GoPro's product does not literally infringe that claim.  You must decide literal infringement for each asserted claim separately.

If the patent claim uses the term "comprising," that patent claim is to be understood as an open claim.  An open claim is infringed as long as every requirement in the claim is present in GoPro's accused product.  The fact that GoPro's product also includes other parts will not avoid infringement, as long as it has every requirement in the patent claim.

1

**NO. 23**

**Willful Infringement**

In this case, Contour argues that GoPro willfully infringed Contour's patents-in-suit.

To prove willful infringement, Contour must persuade you that GoPro infringed a valid and enforceable claim of the patents-in-suit. The requirements for proving such infringement were discussed in my prior instructions.

In addition to proving willful infringement of a claim, Contour must persuade you that it is more likely true than not that GoPro intentionally ignored or recklessly disregarded that claim. You must base your decision on GoPro's knowledge and actions at the time of infringement. Evidence that GoPro had knowledge of the patent at the time of infringement by itself is not sufficient to show willfulness. Rather, to show willfulness, you must find that GoPro engaged in additional conduct evidencing deliberate or reckless disregard of Contour's patent rights.

In deciding whether GoPro willfully infringed, you should consider all of the facts surrounding the infringement including, but not limited, to:

(1) whether GoPro intentionally copied Contour's patented technology in developing the accused product;

(2) whether GoPro knew, or should have known, that its conduct involved an unreasonable risk of infringement;

(3) whether GoPro had a reasonable belief that at the time of infringement that its products did not infringe the asserted patent or that the patent was invalid; and

(4) whether or not GoPro made a good-faith effort to avoid infringing the patent, for example, whether GoPro attempted to design around the patent.

**NO. 24**

**Invalidity—Burden of Proof**

I will now instruct you on the rules you must follow in deciding whether GoPro has proven that claims 11 and 12 of the '954 Patent and claim 6 of the '694 Patent are invalid. Before discussing the specific rules, I want to remind you about the standard of proof that applies to this defense. A patent is presumed to be valid. In other words, it is presumed to have been properly granted by the PTO. But that presumption of validity can be overcome if clear and convincing evidence is presented in court that proves the patent is invalid. To prove invalidity of any patent claim, GoPro must persuade you that it is highly probable that the claim is invalid.

During this case, GoPro has submitted prior art that it contends was not considered by the United States Patent and Trademark Office (PTO). GoPro contends that such prior art invalidates the asserted claims of the patents-in-suit. In deciding the issue of invalidity, you may take into account whether any of the prior art was not considered by the PTO when it issued the patents-in-suit. In doing so, you must decide whether the prior art was materially new, or whether it was merely cumulative or less relevant than the prior art already considered by the PTO. Prior art that is materially new may carry more weight than the prior art that was considered and may make GoPro's burden of showing that it is highly probable that a patent claim is invalid easier to sustain.

1

**NO. 25**

**Invalidity—Perspective of One of Ordinary Skill in the Art**

The question of invalidity of a patent claim is determined from the perspective of a person of ordinary skill in the art in the field of the asserted invention as of September 13, 2010.  In deciding the level of ordinary skill, you should consider all the evidence introduced at trial, including:

      (1)     the levels of education and experience of persons working in the field;

      (2)     the types of problems encountered in the field; and

      (3)     the sophistication of the technology.

Contour contends that the level of ordinary skill in the field was a person having at least a bachelor's degree in computer science, electrical engineering, or a similar discipline, and some experience creating, programming, or working with digital video cameras, such as POV action sports video cameras.

GoPro contends that the level of ordinary skill is a person having education in computer science or electrical engineering and experience in the field of digital video cameras, image processing, and transmission of multimedia content between devices, and knowledge of the scientific literature concerning the same.  GoPro contends that the education and experience levels may vary between persons of ordinary skill, with some persons holding a basic Bachelor's degree with three years of relevant work experience, and others holding a Masters or Ph.D but having one to two years of experience.

United States District Court
Northern District of California

27

**NO. 26**

**Anticipation**

A patent claim is invalid if the claimed invention is not new. For the claim to be invalid because it is not new, all of its requirements must have existed in a single device that predates the claimed invention. In patent law, these previous devices are called "prior art references." If a patent claim is not new, we say it is "anticipated" by a prior art reference.

The description in the written reference does not have to be in the same words as the claim, but all of the requirements of the claim must be there, stated so that someone of ordinary skill in the field of wireless technology and digital video cameras, such as POV cameras, looking at that one reference would be able to make and use the claimed invention.

In determining whether a single item of prior art anticipates a patent claim, you may consider not only what is expressly disclosed in that item of prior art but also what is inherently present or disclosed in it or inherently results from its use. Prior art inherently anticipates a patent claim if the missing requirement or feature would necessarily be present in the prior art.

In this case, GoPro can show that a patent claim is not new if it shows:

(1)     The claim was disclosed in the prior invention by one or more of:

      1.  Woodman Labs/GoPro

      2.  Ambarella

      3.  Looxcie/Vidcie

To be disclosed in a prior invention, the prior invention must have been conceived and reduced to practice in the United States before the priority date of the claimed invention *or* diligently reduced to practice thereafter without abandonment, concealment, or suppression. Diligence means working continuously, though not necessarily every day.

(2)     The subject matter claimed in the '954 and '694 Patents was publicly available before September 13, 2010 as disclosed by one or more of the following systems:

      1.  Sony System

      2.  Looxcie System

**No. 27**

**Invalidity—Prior Invention**

In this case, Contour and GoPro dispute who is the first inventor. Since it is in dispute, you must determine a date of conception for the claimed invention and the alleged prior invention.

The person who first conceived of the claimed invention and first reduced it to practice is the first inventor. Conception is the mental part of an inventive act and may be proven when the invention is shown in its complete form by drawings, disclosure to another or other forms of evidence presented at trial. A claimed invention is "reduced to practice" when it has been tested sufficiently to show that it will work for its intended purpose or when it is fully described in a patent application filed with the PTO. If one person conceived of the claimed invention first, but reduced to practice second, that person is the first inventor only if that person (a) began to reduce the claimed invention to practice before the other party conceived of it, (b) continued to work diligently to reduce it to practice, and (c) did not abandon, suppress, or conceal the invention. GoPro must show each of these elements by clear and convincing evidence.

GoPro contends that claims 11 and 12 of the '954 Patent, and claim 6 of the '694 Patent are invalid because the invention defined in those claims was conceived by and reduced to practice by or at the direction of:

- Woodman Labs / GoPro (Mr. Nicholas D. Woodman)
- Ambarella, and/or
- Vidcie

in the United States before the priority date of the Contour patents.

If the prior invention was abandoned, suppressed, or concealed, it is not prior art and cannot anticipate or render obvious any claim of the asserted patents. In other words, the prior invention cannot be found to invalidate the asserted patents if it was abandoned, suppressed, or concealed. In deciding this, you may consider whether (1) the prior inventor actively concealed the invention from the public, or (2) the prior inventor unreasonably delayed in making the invention publicly known. Generally, a prior invention was not abandoned, suppressed, or concealed if the invention was made public, sold, or offered for sale, or otherwise used for a commercial purpose. A period of delay does not constitute abandonment, suppression, or concealment, provided the prior inventor was engaged in reasonable efforts to bring the prior invention to market during this period.

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**NO. 28**

**Obviousness**

A patent claim is invalid if the claimed invention would have been obvious to a person of ordinary skill in the field at the time the claimed invention was made.  This means that even if all of the requirements of the claim cannot be found in a single prior art reference that would anticipate the claim, a person of ordinary skill in the field of digital action cameras, who knew about all this prior art would have come up with the claimed invention.

GoPro contends that the following prior art and combinations of prior art when considered in view of the state of the art render the inventions claimed in the Patents-in-Suit obvious:

- Hero HD prototype conceived by Nicholas D. Woodman and reduced to practice by him and at his direction.

- Looxcie device conceived by Vidcie and reduced to practice them/at their direction.

- Ambarella A5s Reference Device conceived by Ambarella and reduced to practice by them/at their direction.

- GoPro Hero3 Silver conceived by Ambarella and reduced to practice by them/at their direction.

- The combination of the GoPro HD Motorsports HERO and U.S. Publication No. 2010/0118158, which is referred to as the "Boland" patent application.

- The combination of Boland and Ambarella A5/A5s under 102(a), (b), and/or (g)

- The combination of Boland, Ambarella, and the State of the Art (Sony Handycam Handbook)

- Sony itself, and the combination of Sony and one or more of the following: Ambarella, U.S. Patent No. 8,199,251 to Woodman, U.S. Patent Application Publication No. 2006/070111 to Kurosawa, European Patent No. EP0895623 to Loveman, Japanese Patent Publication No. 2004328700 to Eguchi.

- Looxcie itself and/or the combination of Looxcie and one or more of the following: U.S. Patent Application Publication No. 2006/070111 to Kurosawa, European

Patent No. EP0895623 to Loveman, Sony, Japanese Patent Publication No. 2004328700 to Eguchi, and U.S. Patent Application No. 2010/0111489 to Presler.

- The combination of Canon and one or more of the following: Ambarella, U.S. Patent Application No. 2010/0111489 to Presler, Sony, U.S. Patent Application Publication No. 2006/070111 to Kurosawa, Japanese Patent Publication No. 2004328700 to Eguchi.

- The combination of Nikon and one or more of the following:  Ambarella, U.S. Patent Application No. 2010/0111489 to Presler.

**[Note from the Court: I am willing to include the above-list of prior art references in the final jury instructions once it has been limited pursuant to my Order granting Contour's first Motion in Limine limiting the number of GoPro's prior art references to 6.** *See* **Dkt. No. 843 at 19.]**

The ultimate conclusion of whether a claim is obvious should be based upon your determination of several factual decisions.

First, you must decide the level of ordinary skill in the field that someone would have had at the time the claimed invention was made.  In deciding the level of ordinary skill, you should consider all the evidence introduced at trial, including:

(1)    the levels of education and experience of persons working in the field;

(2)    the types of problems encountered in the field; and

(3)    the sophistication of the technology.

Second, you must decide the scope and content of the prior art. In order to be considered as prior art to claims 11 and 12 of the '954 Patent, and claim 6 of the '694 Patent, these references must be reasonably related to the claimed invention of that patent.  A reference is reasonably related if it is in the same field as the claimed invention or is from another field to which a person of ordinary skill in the field would look to solve a known problem.

Third, you must decide what difference, if any, existed between the claimed invention and

the prior art.

Finally, you should consider any of the following factors that you find have been shown by the evidence:

(1)    commercial success of a product due to the merits of the claimed invention;

(2)    a long felt need for the solution provided by the claimed invention;

(3)    unsuccessful attempts by others to find the solution provided by the claimed invention;

(4)    copying of the claimed invention by GoPro or others;

(5)    unexpected and superior results from the claimed invention;

(6)    acceptance by others of the claimed invention as shown by praise from others in the field or from the licensing of the claimed invention;

(7)    skepticism that the claimed invention would work as intended; and

(8)    other evidence tending to show nonobviousness.

The presence of any of factors 1-8 may be considered by you as an indication that the claimed invention would not have been obvious at the time the claimed invention was made. Although you should consider any evidence of these factors, the relevance and importance of any of them to your decision on whether the claimed invention would have been obvious or not is up to you.

However, there must be a sufficient nexus—that is, a connection—between any factor you consider and the claimed invention.

A patent claim composed of several elements is not proved obvious merely by demonstrating that each of its elements was independently known in the prior art. In evaluating whether such a claim would have been obvious, you may consider whether GoPro has identified a reason that would have prompted a person of ordinary skill in the field to combine the elements or concepts from the prior art in the same way as in the claimed invention. There is no single way to define the line between true inventiveness on the one hand (which is patentable) and the application of common sense and ordinary skill to solve a problem on the other hand (which is not patentable).

1    For example, market forces or other design incentives may be what produced a change,

2    rather than true inventiveness. You may consider whether an inventor would look to the prior art

3    to help solve the particular problem at hand. You may consider whether the change was merely

4    the predictable result of using prior art elements according to their known functions, or whether it

5    was the result of true inventiveness. You may also consider whether there is some teaching or

6    suggestion in the prior art to make the modification or combination of elements claimed in the

7    patent. Also, you may consider whether the innovation applies a known technique that had been

8    used to improve a similar device or method in a similar way. You may also consider whether the

9    claimed invention would have been obvious to try, meaning that the claimed innovation was one

10   of a relatively small number of possible approaches to the problem with a reasonable expectation

11   of success by those skilled in the art. However, you must be careful not to determine obviousness

12   using the benefit of hindsight; many true inventions might seem obvious after the fact. You

13   should put yourself in the position of a person of ordinary skill in the field at the time the claimed

14   invention was made and you should not consider what is known today or what is learned from the

15   teaching of the patent.

**NO. 29**

**Invalidity—Date of Invention**

No instruction will be given.

**NO. 30**

**Inequitable Conduct**

No instruction will be given.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

**NO. 31**

**Inventorship**

In this case, GoPro contends that the Asserted Patents are invalid because of improper inventorship. Specifically, GoPro contends that one or more individuals working on behalf of Ambarella, including at least Mr. LeGall, should have been a named inventor on the Asserted Patents. A patent is invalid if it fails to meet the requirement that all of the actual inventors, and only the actual inventors, be named as inventors in the patent. This is known as the "inventorship" requirement.

To be an inventor, one must make a significant contribution to the conception of at least one of the claims of the patent. Whether the contribution is significant in quality is measured against the scope of the full invention.

If someone only explains to the actual inventors well-known concepts or the current state of the art, he or she is not an inventor. Merely helping with experimentation, by carrying out the inventor's instructions, also does not make someone an inventor. What is required is some significant contribution to the idea claimed.

Persons may be inventors even if they do not make the same type or amount of contribution, and even if they do not contribute to the subject matter of each claim of the patent. Persons may be joint or co-inventors even though they do not physically work together, but they must have some open line of communication during or at approximately the time of their inventive effort.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

**NO. 32**

**Damages—Burden of Proof**

I will instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win on any issue. If you find that GoPro infringed any valid claim of the patents-in-suit, you must then determine the amount of money damages to be awarded to Contour to compensate it for the infringement.

The amount of those damages must be adequate to compensate Contour for the infringement. A damages award should put the patent holder in approximately the financial position it would have been in had the infringement not occurred, but in no event may the damages award be less than a reasonable royalty. You should keep in mind that the damages you award are meant to compensate the patent holder and not to punish an infringer.

Contour has the burden to persuade you of the amount of its damages. You should award only those damages that Contour more likely than not suffered. While Contour is not required to prove its damages with mathematical precision, it must prove them with reasonable certainty. Contour is not entitled to damages that are remote or speculative.

**NO. 33**

**Reasonable Royalty—Definition**

Contour is seeking damages in the amount of a reasonable royalty. A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention. A reasonable royalty is the amount of royalty payment that a patent holder and the alleged infringer would have agreed to in a hypothetical negotiation taking place at a time prior to when the infringement first began. In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the alleged infringer would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations. In determining this, you must assume that both parties believed the patent was valid and infringed and that both parties were willing to enter into an agreement. The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred. Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation just prior to the first infringement.

A royalty can be calculated in several different ways and it is for you to determine which way is the most appropriate based on the evidence you have heard. One way to calculate a royalty is to determine what is called an "ongoing royalty." To calculate an ongoing royalty, you must first determine the "base," that is, the product on which the alleged infringer is to pay. Here the parties have stipulated to the royalty base. You then need to multiply the revenue the defendant obtained from that base by the "rate" or percentage that you find would have resulted from the hypothetical negotiation. For example, if the patent covers a nail, and the nail sells for $1, and the licensee sold 200 nails, the base revenue would be $200. If the rate you find would have resulted from the hypothetical negotiation is 1%, then the royalty would be $2, or the rate of 0.01 times the base revenue of $200. By contrast, if you find the rate to be 5%, the royalty would be $10, or the rate of 0.05 times the base revenue of $200. These numbers are only examples, and are not intended to suggest the appropriate royalty rate.

Instead of a percentage royalty, you may decide that the appropriate royalty that would have resulted from a hypothetical negotiation is a fixed number of dollars per unit sold. If you do, the royalty would be that fixed number of dollars times the number of units sold.

In this case, evidence of licenses has been introduced. The royalty rate in one or more of those licenses may be considered if it helps to establish the value that is attributable to the patented

1

invention as distinct from the value of other features of GoPro's accused products.

2

The ultimate combination of royalty base and royalty rate must reflect the value

3

attributable to the infringing features of the product, and no more. When the accused infringing

4

products have both patented and unpatented features, measuring this value requires you to identify

5

and award only the value of the patented features. The process of separating the value of patented

features from the value of all other features is called apportionment.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

## NO. 34

### Reasonable Royalty—Factors

In determining a reasonable royalty, you may consider the following factors:

1. The royalties received by the patent owner for the licensing of the patents-in-suit.

2. The rates paid by GoPro for the use of other patents comparable to the patents-in-suit. The nature and scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold.

3. The licensor's established policy and marketing program to maintain its patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

4. The commercial relationship between the licensor and GoPro, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventor and promotor.

5. The effect of selling the patented specialty in promoting sales of other products of GoPro; the existing value of the invention to the licensor as a generator of sales of its non-patented items; and the extent of such derivative or convoyed sales.

6. The duration of the patents-in-suit and the term of the license.

7. The established profitability of any products made under the patents-in-suit; their commercial success; and their popularity.

8. The utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results.

9. The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention.

10. The extent to which GoPro has made use of the invention; and any evidence probative of the value of that use.

11. The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

12. The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

14. The opinion testimony of qualified experts.

15. The amount that a licensor (such as the patent owner) and a licensee (such as GoPro) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors which in your mind would have increased or decreased the royalty GoPro would have been willing to pay and that Contour would have been willing to accept, acting as normally prudent business people.

**NO. 35**

**Date of Commencement of Damages**

Damages that Contour may be awarded by you commence on January 5, 2015.

1

**NO. 36**

**Damages—Apportionment**

The amount you find as damages must be based on the value attributable to the patented invention, as distinct from unpatented features of the accused product or other factors such as marketing or advertising or either party's size or market position.  A royalty compensating the patent holder for damages must reflect the value attributable to the infringing features of the product, and no more.  The process of separating the value of the allegedly infringing features from the value of all other features is called apportionment.  When the accused infringing products have both patented and unpatented features, your award must be apportioned so that it is based only on the value of the patented features, and no more.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

**NO. 37**

**Comparable Agreements**

      Comparable license agreements are one factor that may inform your decision as to the proper amount and form of the reasonable royalty award, similar to the way in which the value of a house is determined relative to comparable houses sold in the same neighborhood.  Whether a license agreement is comparable to the license under the hypothetical license scenario depends on many factors, such as whether they involve comparable technologies, comparable economic circumstances, comparable structure, and comparable scope.  If there are differences between a license agreement and the hypothetical license, you must take those into account when you make your reasonable royalty determination.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

**NO. 38**

**Duty to Deliberate**

Before you begin your deliberations, elect one member of the jury as your presiding juror. The presiding juror will preside over deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right, or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

**NO. 39**

**Taking Notes**

You may have taken notes during the trial. Whether or not you took notes, you should rely on your own memory of the evidence. Notes are only to assist your memory. You should not be overly influenced by your notes or those of other jurors.

## NO. 40

## Consideration of Evidence—Conduct of Jury

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves. Except for discussing the case with your fellow jurors during your deliberations.

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone, tablet, computer, or any other means, via email, via text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, TikTok, or any other forms of social media. This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial. If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searing the internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings.  If any juror is exposed to any outside information, please notify the court immediately.

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

**NO. 41**

**Communication with the Court**

If it becomes necessary during your deliberations to communicate with me, you may send a note through the clerk, signed by any one or more of you.  No member of the jury should ever attempt to communicate with me except by a signed writing.  I will not communicate with any member of the jury on anything concerning the case except in writing or here in open court.  If you send out a question, I will consult with the lawyers before answering it, which may take some time.  You may continue your deliberations while waiting for the answer to any question.  Remember that you are not to tell anyone—including the court—how the jury stands, whether in terms of vote count or otherwise, until after you have reached a unanimous verdict or have been discharged.

**NO. 42**

**Return of Verdict**

A verdict form has been prepared for you.  After you have reached unanimous agreement on a verdict, your presiding juror should complete the verdict forma according to your deliberations, sign and date it, and advise the clerk that you are ready to return to the courtroom.