JOHN D. HAYNES (admitted *pro hac vice*)
**ALSTON & BIRD LLP**
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424
Telephone: 404-881-7000
Facsimile: 404-881-7777
john.haynes@alston.com

PHILIP DUCKER (State Bar No. 262644)
MICHELLE CLARK (State Bar No. 243777)
**ALSTON & BIRD LLP**
55 Second Street, Suite 2100
San Francisco, CA 94105
Telephone: 415-243-1000
Facsimile: 415-243-1001
phil.ducker@alston.com
michelle.clark@alston.com
dana.zottola@alston.com

*Attorneys for Defendant GOPRO, INC.*

*Additional counsel on signature page*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| CONTOUR IP HOLDING, LLC,<br><br>Plaintiff,<br><br>v.<br><br>GOPRO, INC.,<br><br>Defendant. | LEAD CASE NO. 3:17-cv-04738-WHO<br>CONSOL. CASE NO. 3:21-cv-02143-WHO<br><br>**GoPro's Offer of Proof Regarding Noninfringement of Claims 11 and 12 of the '954 Patent and Claim 6 of the '694 Patent**<br><br>Judge: William H. Orrick<br>Location: Courtroom 2, 17th Floor |

**TABLE OF CONTENTS**

I. INTRODUCTION ........ 1

II. GOPRO'S OFFER OF PROOF OF NONINFRINGEMENT OF CLAIMS 11 AND 12 OF THE '954 PATENT AND CLAIM 6 OF THE '694 PATENT ........ 2

A. The Evidence Would Show That The "First Image Data Stream/First Video Image Content" and "Second Image Data Stream/Second Video Image Content" in the Contour I, II, and III Products Are Not Generated from the Video Image Data ........ 3

B. The Camera Processor in the Contour I, II, and III Products Does Not "Record In Parallel . . . a First Image Data Stream and a Second Image Data Stream" and the Camera Processor in the Contour I, II, and III Products do not "Record In Parallel . . . First Video Image Content and Second Video Image Content" ........ 5

## I. INTRODUCTION

On August 31, 2020, this Court granted Contour IP Holding, LLC's ("CIPH") motion for summary judgment of infringement of Claim 11 of U.S. Patent No. 8,890,954 ("the '954 Patent") by certain GoPro Cameras.[1] Dkt. 445. As referenced in the order, the Court had earlier construed the "generate" term in Claim 11[2] as "record in parallel from the video image data a first image data stream and a second image data stream, wherein the second image data stream is a higher quality than the first image data stream." *Id*. at 3 (quoting Dkt. 251 at 9–10). The Court construed the "generate" term in Claim 6[3] of U.S. Patent No. 8,896,694 (the '694 Patent) the same way. *See* Dkt. 251 at 9-13. Applying that construction as well as "the plain meaning of the unconstrued terms," the Court found that "there is no material dispute of fact preventing a finding that . . . the [Contour I] Products infringe claim 11 of the '954 Patent." *Id*. at 10.

Following that order, the Court further ruled that "[n]either party may seek to relitigate what was settled at summary judgment." Dkt. 510 at 2. As a result, the Court has precluded GoPro from offering any evidence or expert opinions as to the "generate" limitation related to infringement of Claims 11 and 12 of the '954 Patent or as to the "generate" limitation related to infringement of Claim 6 of the '694 Patent.

In order to preserve GoPro's noninfringement arguments for purposes of appeal, including arguments based on the "generate" limitation, GoPro makes an offer of proof pursuant to Rule 103 of the Federal Rules of Evidence of the testimony and other evidence GoPro would have offered regarding (i) noninfringement of Claims 11 and 12 of the '954 Patent by the HERO9 Black, HERO10 Black, HERO11 Black, HERO12 Black, HERO13 Black, and Hero4K (collectively the "Contour II

---

[1] The Court awarded summary judgment against the HERO MAX; HERO8 Black; HERO7 Black; HERO7 White; HERO7 Silver; Fusion; HERO6 Black; HERO5 Black; HERO5 Session; HERO4 Black; HERO4 Silver; HERO4 Session; HERO3+ Silver; HERO3+ Black; HERO3 Black; HERO3 Silver; HERO3 White; HERO+ LCD; HERO+; and HD HERO2 with Wi-Fi BacPac (collectively, the "Contour I Products").

[2] Claim 11 of the '954 Patent recites the "generate" limitation: "generate from the video image data a first image data stream and a second image data stream, wherein the second image data stream is a higher quality than the first image data stream."

[3] Claim 6 of the '694 Patent recites the "generate" limitation: "generate first video image content and second video image content corresponding to the video image data representing the scene, wherein the second video image content is a higher quality than the first video image content."

& III Products") with respect to the "generate" limitation; and (ii) noninfringement of Claim 6 of the '694 Patent by the Contour I, II, and III Products with respect to the "generate" limitation.

## II. GOPRO'S OFFER OF PROOF OF NONINFRINGEMENT OF CLAIMS 11 AND 12 OF THE '954 PATENT AND CLAIM 6 OF THE '694 PATENT

If permitted, GoPro would present evidence supporting at least two arguments as to why its cameras do not infringe the "generate" limitation of Claims 11 and 12 of the '954 Patent and Claim 6 of the '694 Patent. First, for Claims 11 and 12 of the '954 Patent, GoPro would present evidence that the "first image data stream" and "second image data stream" are not generated "from the video image data" for the reasons set forth in GoPro's briefing and argument in Opposition to Contour IP Holding's Motion for Summary Judgment (Dkt. 398-2). In particular, GoPro contends that the "video image data" is substantially altered and modified, including down-sampling of the high resolution video to create the accused lower resolution preview stream such that it no longer meets the requirements of the "generate" limitation as construed by the Court.[4] Similarly, for Claim 6 of the '694 Patent, GoPro would present evidence that "first video image content" and "second video image content" are not generated from "the video image data representing the scene." Second, for Claims 11 and 12 of the '954 Patent, GoPro would present evidence that the Contour II and III Products[5] do not "generate . . . a first image data stream and a second image data stream" as that term has been construed by the Court, i.e. "record in parallel." Similarly, for Claim 6 of the '694 Patent, GoPro

[4] The Court construed the "generate" limitation as requiring the first and second image data streams be recorded "in parallel" based on the application of prosecution history disclaimer to statements made by the patentee in the *inter partes* review process. Dkt. 251 at 12 (citing Resp. Br., Ex. J at 78.) For the reasons submitted in GoPro's Motion *In Limine* No. 10 (Dkt. 474 at 17-24, Dkt. 510 at 12-13), GoPro contends that the Court's order on summary judgment is irreconcilable with its prosecution history disclaimer-based construction of the "generate" limitation and its Order on GoPro's Motion *In Limine* No. 10. CIPH's attempt to distinguish the prior art on the basis that it discloses a process whereby the first image data stream / first image data content is created "serially" from previously encoded data is antithetical to the position that the "generate" limitations include no temporal or processing limitations (as encoding is nothing more than one type of processing). GoPro also reserves the right to appeal the second basis for the Court's Summary Judgment Order regarding *Contour II* products that GoPro contends do not meet the "control signals" limitations, which rests on the Court's construction as <u>not</u> claiming any functionality of the GoPro App (or the interface between the GoPro App and the camera processor)

[5] GoPro would present the same evidence for the Contour I Products, but the Court granted summary judgment of infringement of Claim 11 of the '954 Patent prior to trial as to the Contour I Products.

would present evidence that do not "generate . . . first video image content and second video image content" as that term has been construed by the Court, i.e. "record in parallel."

**A. The Evidence Would Show That The "First Image Data Stream/First Video Image Content" and "Second Image Data Stream/Second Video Image Content" in the Contour I, II, and III Products Are Not Generated from the Video Image Data**

If allowed to testify, GoPro's expert, Dr. Kevin Almeroth, would have testified that the requirement of Claims 11 and 12 of the '954 patent that the first and second data streams be "generated from the video image data," and the requirement of Claim 6 of the '694 Patent that the first and second video image content be generated from "the video image data," is not met because the data produced by the image sensor is so materially altered before the first and second image data streams (per Claims 11 and 12) or the first and second video image content (per Claim 6) are generated that a person of ordinary skill in the art would no longer consider it to be from the "video image data" (or corresponding to the video image data).[6] The source code, technical documentation, and test data for GoPro devices that were produced by GoPro and third parties in this case demonstrate the multitude of processing steps that have a substantive impact on the video image data. In addition, as Dr. Almeroth would explain, the data is changed not just in appearance but in encoding—going from RGB to YUV format—which encodes and compresses the data to use less memory space. According to Dr. Almeroth, Claims 11 and 12 of the '954 Patent and Claim 6 of the '694 Patent are not infringed because in the Contour I, II, and III Products the image data captured by the image sensor is not and does not correspond to the data that is encoded to create the first/second video image streams (as recited in claim 11 of the '954 Patent) or the first/second "video image content" (as recited in claim 6 for the '694 Patent). Rather, the data at the image sensor has not been processed, cropped, split, filtered, modified, down-sampled, stored, and deleted like the content that is later encoded. Because of the significant changes to the data captured by the image sensor prior to the creation of the "first image data stream" and "second image data stream" and the "first image content" and

[6] Throughout the litigation, Plaintiff has treated the "generate" limitations of the '954 Patent and the '694 Patent as coextensive.

"second image content," the Contour I, II, and III Products do not satisfy the requirement that the first/second image data streams and first/second image content be generated "from the video image data." Accordingly, the Contour I, II and III Products do not infringe Claims 11 or 12 of the '954 Patent or Claim 6 of the '694 Patent.

GoPro's position is supported by the testimony of GoPro's fact witnesses at trial, Mr. Pablo Lema and Mr. Dicky Liu, and GoPro would have offered additional expert testimony from Dr. Almeroth based on and supported by testimony, documents, and source code, including GoPro documentation and the testimony of GoPro's employees, the testimony of Ambarella employees, and documents produced by Socionext Inc., all of which GoPro would have introduced into evidence. In particular, GoPro would have introduced into evidence and supplied testimony regarding, and Dr. Almeroth would have cited, the following evidence in support of GoPro's position and Dr. Almeroth's opinions:

1. Trial Testimony From Pablo Lema & Dicky Liu
2. 2020.01.23 M. Chien Dep. Tr. and exhibits.
3. 2020.01.23 D. Legall Dep. Tr. and exhibits.
4. 2020.05.29 Declaration of K. Iga of Socionext Inc.
5. GoPro source code offered for inspection and produced.
6. Socionext source code offered for inspection and produced.
7. Production Documents: AMBR2019-000000198A, AMBR2019-000001, AMBR2019-000002, AMBR2019-000006, AMBR2019-000009, AMBR2019-000133, AMBR2019-000154, AMBR2019-000176, CONTOUR_IP001452, CONTOUR_IP008707, CONTOUR_IP012894, CONTOUR_IP012922, CONTOUR_IP012946, CONTOUR_IP012957, CONTOUR_IP013159, CONTOUR00058851, GOPRO_000558, GOPRO_000561, GOPRO_000563, GOPRO_101340, GOPRO_101341, GOPRO_101342, GOPRO_101343, GOPRO_101344, GOPRO_101345, GOPRO_101346, GOPRO_101347, GOPRO_101348, GOPRO_101349, GOPRO_101350, GOPRO_101351, GOPRO_101352, GOPRO_101353, GOPRO_101354, GOPRO_101355, GOPRO_101356, GOPRO_101373, GOPRO_101391, GOPRO_103799, GOPRO_103807, GOPRO_105037-098, GOPRO_105408-475, GOPRO_105479, GOPRO_105480-537, GOPRO_105560, GOPRO_105582-649, GOPRO_11337, GOPRO_121198, GOPRO_17253, GOPRO_17432, GOPRO_192166, GOPRO_200250, GOPRO_201024, GOPRO_208513, GOPRO_209894-916, GOPRO_21451, GOPRO_21455, GOPRO_21469, GOPRO_21480, GOPRO_21492,

GOPRO_21505, GOPRO_21519, GOPRO_21535, GOPRO_21560, GOPRO_21562, GOPRO_21564, GOPRO_21566, GOPRO_2643, GOPRO_49702, GOPRO_49703, GOPRO_49704, GOPRO_49705, GOPRO_49720, GOPRO_5267-297, GOPRO_5298-391, GOPRO_5392-471, GOPRO_5495-592, GOPRO_68932, GOPRO_68959, GOPRO_69046, GOPRO_69048, GOPRO_69052, GOPRO_69073, GOPRO_69093, GOPRO_69110, GOPRO_69114, GOPRO_69124, SOCIONEXT-00000051-52, SOCIONEXT-00000441, SOCIONEXT-00000570, SOCIONEXT-00001970, SOCIONEXT-00002275, SOCIONEXT-00004164, SOCIONEXT-00004169, SOCIONEXT-00004191, SOCIONEXT-00006328, SOCIONEXT-00007134.

**B. The Camera Processor in the Contour I, II, and III Products Does Not "Record In Parallel . . . a First Image Data Stream and a Second Image Data Stream" and the Camera Processor in the Contour I, II, and III Products do not "Record In Parallel . . . First Video Image Content and Second Video Image Content"**

If allowed, GoPro's expert, Dr. Almeroth, would have explained that the camera processors in the Contour I, II, and III Products do not infringe Claims 11 and 12 of the '954 Patent or Claim 6 of the '694 Patent based on the plain meaning of "in parallel." First, Dr. Almeroth would have testified that the low-resolution image that CIPH contends is the "first image data stream" or the "first video image content" is created by down-sampling from the higher resolution image data captured by the image sensor such that the alleged first image data stream and second image data stream are generated serially and not in parallel. The parties agree that "a serial architecture" wherein the lower resolution video is created from the high-resolution video does not meet the "in parallel" limitation. Dr. Almeroth would further explain that according to GoPro's third-party chip suppliers, Ambarella and SNI, the alleged low-resolution stream is created from a high-resolution video source that is not the "video image data." Specifically, an Ambarella witness would have testified that each relevant chipset "down-sampled to create the previews," and an SNI witness would have testified its chip worked the same. Second, Dr. Almeroth would explain that there is no evidence showing that either the processing pipeline of the camera processor as a whole nor the encoding step are "in parallel." To the extent the claim construction is correct and adhered to, the accused products do not infringe.

Dr. Almeroth's opinions are based on and supported by testimony, documents, and source code, including GoPro documentation and the testimony of GoPro's employees, the testimony of

Ambarella employees, and documents produced by Socionext Inc., all of which GoPro would have been introduced into evidence. In particular, GoPro would have introduced into evidence and supplied testimony regarding, and Dr. Almeroth would have cited, the following evidence in support of GoPro's position and Dr. Almeroth's opinions:

1. 2020.01.23 M. Chien Dep. Tr. and exhibits.
2. 2020.01.23 D. Legall Dep. Tr. and exhibits.
3. 2020.05.29 Declaration of K. Iga of Socionext Inc.
4. GoPro source code offered for inspection and produced.
5. Socionext source code offered for inspection and produced.
6. Production Documents: AMBR2019-000000198A, AMBR2019-000001, AMBR2019-000002, AMBR2019-000006, AMBR2019-000009, AMBR2019-000133, AMBR2019-000154, AMBR2019-000176, CONTOUR_IP001452, CONTOUR_IP008707, CONTOUR_IP012894, CONTOUR_IP012922, CONTOUR_IP012946, CONTOUR_IP012957, CONTOUR_IP013159, CONTOUR00058851, GOPRO_000558, GOPRO_000561, GOPRO_000563, GOPRO_101340, GOPRO_101341, GOPRO_101342, GOPRO_101343, GOPRO_101344, GOPRO_101345, GOPRO_101346, GOPRO_101347, GOPRO_101348, GOPRO_101349, GOPRO_101350, GOPRO_101351, GOPRO_101352, GOPRO_101353, GOPRO_101354, GOPRO_101355, GOPRO_101356, GOPRO_101373, GOPRO_101391, GOPRO_103799, GOPRO_103807, GOPRO_105037-098, GOPRO_105408-475, GOPRO_105479, GOPRO_105480-537, GOPRO_105560, GOPRO_105582-649, GOPRO_11337, GOPRO_121198, GOPRO_17253, GOPRO_17432, GOPRO_192166, GOPRO_200250, GOPRO_201024, GOPRO_208513, GOPRO_209894-916, GOPRO_21451, GOPRO_21455, GOPRO_21469, GOPRO_21480, GOPRO_21492, GOPRO_21505, GOPRO_21519, GOPRO_21535, GOPRO_21560, GOPRO_21562, GOPRO_21564, GOPRO_21566, GOPRO_2643, GOPRO_49702, GOPRO_49703, GOPRO_49704, GOPRO_49705, GOPRO_49720, GOPRO_5267-297, GOPRO_5298-391, GOPRO_5392-471, GOPRO_5495-592, GOPRO_68932, GOPRO_68959, GOPRO_69046, GOPRO_69048, GOPRO_69052, GOPRO_69073, GOPRO_69093, GOPRO_69110, GOPRO_69114, GOPRO_69124, SOCIONEXT-00000051-52, SOCIONEXT-00000441, SOCIONEXT-00000570, SOCIONEXT-00001970, SOCIONEXT-00002275, SOCIONEXT-00004164, SOCIONEXT-00004169, SOCIONEXT-00004191, SOCIONEXT-00006328, SOCIONEXT-00007134.

**ALSTON & BIRD LLP**

Dated: October 3, 2025 BY: */s/ Michelle Ann Clark*

Michelle Ann Clark (SBN 243777)
Philip C. Ducker (SBN 262644)
Dana Zottola (SBN 346715)
**ALSTON & BIRD LLP**
55 Second Street, Suite 2100
San Francisco, California 94105-0912
Telephone: (415) 243-1000
Facsimile: (415) 243-1001
michelle.clark@alston.com
phil.ducker@alston.com
dana.zottola@alston.com

John D. Haynes (admitted *pro hac vice*)
Sloane Kyrazis (admitted *pro hac vice*)
**ALSTON & BIRD LLP**
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424
Telephone: 404-881-7000
Facsimile: 404-881-7777
john.haynes@alston.com
sloane.kyrazis@alston.com

Karlee N. Wroblewski (admitted *pro hac vice*)
**ALSTON & BIRD LLP**
Bank of America Plaza
Suite 4000
101 South Tryon Street
Charlotte, NC 28280-4000
Telephone: (704) 444-1000
Facsimile: (704) 444-1111
karlee.wroblewski@alston.com

Elliott C. Riches (admitted *pro hac vice*)
**ALSTON & BIRD LLP**
2200 Ross Avenue
Suite 2300
Dallas, TX 75201
Telephone: (214) 922-3492
elliott.riches@alston.com

**CERTIFICATE OF SERVICE**

Pursuant to the Federal Rules of Civil Procedure and Civil L.R. 5, I hereby certify that, on October 3, 2025, all counsel of record who have appeared in this case were served with a copy of the foregoing via ECF.

*/s/ Michelle Ann Clark*
Michelle Ann Clark