JOHN D. HAYNES (admitted *pro hac vice*)
**ALSTON & BIRD LLP**
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424
Telephone:    404-881-7000
Facsimile:    404-881-7777
john.haynes@alston.com

PHILIP DUCKER (State Bar No. 262644)
MICHELLE CLARK (State Bar No. 243777)
**ALSTON & BIRD LLP**
55 Second Street, Suite 2100
San Francisco, CA 94105
Telephone:    415-243-1000
Facsimile:    415-243-1001
phil.ducker@alston.com
michelle.clark@alston.com
dana.zottola@alston.com

*Attorneys for Defendant GOPRO, INC.*

*Additional counsel on signature page*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CONTOUR IP HOLDING, LLC,<br><br>Plaintiff,<br><br>v.<br><br>GOPRO, INC.,<br><br>Defendant. | LEAD CASE NO. 3:17-cv-04738-WHO<br>CONSOL. CASE NO. 3:21-cv-02143-WHO<br><br>**GOPRO'S MOTION FOR JURY INSTRUCTION REGARDING NON-INFRINGING ALTERNATIVES**<br><br>Judge: William H. Orrick<br>Date: October 8, 2025<br>Time: 8:00am<br>Location: Courtroom 2, 17th Floor |

# GOPRO'S MOTION FOR JURY INSTRUCTION REGARDING NON-INFRINGING ALTERNATIVES

GoPro requests the Court issue a curative instruction, or include an additional final jury instruction, regarding how non-infringing alternatives are to be considered by the jury. During the examinations of Mr. Lema, Mr. Liu, Dr. Almeroth, and Dr. Kennedy, counsel for CIPH repeatedly questioned the witnesses regarding whether GoPro has implemented its proposed non-infringing alternative related to removing the camera firmware's ability to receive control signals from a personal portable computing device:

**Lema** (910:8-15)

Q. So earlier you testified that live preview while recording was not an important feature; is that right?

A. I think my testimony was it's important for certain users and certain use cases, yes.

Q. GoPro has been in this litigation for ten years. If it was not important -- or if it was only important to certain users and overall not important, why haven't you completely removed it?

A. We have not removed the feature because I think, as we stated, our position is that we are -- the patents are not valid and we can't infringe on a non-valid patent. So why would we remove the feature?

**Liu** (945:2-11)

Q. And then you also talked about some changes that GoPro could have made related to control settings; correct?

A. Perhaps you, like -- yeah. Like, you have to remind me.

Q. In your -- not at your deposition. Here today, you talked about changes that could be made to the camera and phone to remove the ability to change certain settings; correct?

A. Today I believe I was referring to the camera side.

Q. Okay. The camera side. GoPro hasn't made any of those changes; correct?

A. No.

**Almeroth** (1154:22-1155:18)

Q. And you said that it would be very easy to change to this non-infringing alternative; correct?

A. Yes. I think that's what Mr. Liu testified to.

Q. And you said it was not very important to have these features?

A. Yes, I believe I said that, at least on the remote.

Q. This litigation has been going on ten years; correct?

A. Yes, sir.

Q. GoPro has spent millions of dollars; correct?

A. They have.

Q. They're paying you $800 an hour to come here and testify; correct?

A. Yes, sir.

Q. And yet you say they could have made this very simple change at any time and avoided this whole litigation, and we're supposed to believe that; correct?

A. No. That's not what I said.

Q. Okay. They never did make this change; correct?

A. That's correct because this is a hypothetical NIA.

Q. Right. Instead, they've spent millions of dollars litigating against Contour; correct?

A. They did.

**Kennedy (Rough 132:20-131:9, 135:8-17)**

Q. So, Dr. Kennedy, let me ask you, if it's such a small percentage in how you are characterizing and how you're understanding it, then why is it the case that GoPro has never made that change in over ten years of litigation?

A. This is a little bit what I talked about earlier. We know now a lot more than we knew or GoPro would have known in 2014. We now have both experts that have put tons of work into this case, and they say: All you need to do is remove that red line that I removed there.

> We now know that if you do, in fact, remove the customer's ability to access ProTune settings via the app, it's a small transitory blip in sales. There are expectations of that, but we now know how much, with the data we have and you can incorporate in the hypothetical negotiation. That's why we're so much better informed. Here.

> ***

> Q. You said, right before our break, that "We know a lot more than in 2014, and if GoPro removed the ability to access ProTune settings, it would be a blip." But we are in 2025 in the seventh day of trial, and GoPro has not made that change to date; correct?

> A. So consumers' ability to change ProTunes via the app was removed for a period of time, but not the actual -- as I understand it, technical issue, but the actually infringing aspect of it.

The impression left on the jury by CIPH's questions is that a non-infringing alternative should not be considered unless that alternative has actually been implemented and sold. That is not the law. As the Federal Circuit held in *Grain Processing* "only by comparing the patented invention to its next-best available alternative(*s*) – ***regardless of whether the alternative(s) were actually produced and sold during the infringement*** – can the court discern the market value of the patent owner's exclusive right…" *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1351 (Fed. Cir. 1999) (emphasis added); *Salazar v. HTC Corp.*, No. 2:16-CV-01096-JRG-RSP, 2018 WL 2033709, at *3 (E.D. Tex. Mar. 28, 2018) (holding that in reasonable royalty determinations, the Court looks to the "next-best" alternative without regard to whether it was acceptable or implemented). Thus, the actual implementation of a non-infringing alternative is not a requirement for it to be considered by the jury in a reasonable royalty analysis, and CIPH should not be able to suggest otherwise. Accordingly, the Court should clarify this issue with an appropriate instruction to avoid confusion given the scope and breadth of CIPH's questioning on the subject. GoPro specifically requests the Court issue the below instruction:[1]

---

[1] GoPro suggests this instruction is likely best given as part of the final jury instructions as a standalone instruction in the damages section after the current instruction on Comparable Agreements.

> GoPro has presented evidence regarding non-infringing alternatives. To be relevant to a reasonable royalty analysis, GoPro does not need to show that its proposed alternative was actually implemented or sold during the damages period.

Additionally, during the charge conference, counsel for CIPH suggested that instructions regarding the standard for commercial acceptability akin to what is required for a lost-profits analysis must also be included as part of this instruction. This is incorrect. "'[A]cceptable non-infringing alternatives' don't play the same role in a reasonable-royalty determination. Rather, courts consider the *next-best* available alternative, which is not necessarily an 'acceptable' alternative that precludes recovery of lost profits under *Panduit*.'" *Salazar v. HTC Corp.*, No. 2:16-CV-01096-JRG-RSP, 2018 WL 2033709, at *3 (E.D. Tex. Mar. 28, 2018); *see also Droplets, Inc. v. Yahoo! Inc.*, No. 12-CV-03733-JST, 2021 WL 9038509, at *10 (N.D. Cal. Apr. 27, 2021) ("Noninfringing alternatives play a fundamentally different role in lost profit and reasonable royalty analysis"); *Lighting Def. Grp. LLC v. Shanghai Sansi Elec. Eng'g Co. Ltd.*, No. CV-22-01476-PHX-SMB, 2024 WL 4905222, at *27 (D. Ariz. Nov. 27, 2024), *reconsideration denied*, No. CV-22-01476-PHX-SMB, 2024 WL 5187693 (D. Ariz. Dec. 20, 2024) (noting that "acceptable substitutes" standard for non-infringing alternatives is "a requirement relevant to the lost profits inquiry, not reasonable royalties). Thus, a strict showing of commercial acceptability is not required and the jury should not be instructed otherwise.

The Court should adopt and issue GoPro's proposed instruction and not include additional language related to commercial acceptability.

**ALSTON & BIRD LLP**

Dated: October 7, 2025     BY:  */s/ Michelle Ann Clark*
Michelle Ann Clark (SBN 243777)
Philip C. Ducker (SBN 262644)
Dana Zottola (SBN 346715)
**ALSTON & BIRD LLP**
55 Second Street, Suite 2100
San Francisco, California 94105-0912
Telephone: (415) 243-1000
Facsimile: (415) 243-1001
michelle.clark@alston.com
phil.ducker@alston.com
dana.zottola@alston.com

JOHN D. HAYNES (admitted *pro hac vice*)
Sloane Kyrazis (admitted *pro hac vice*)
**ALSTON & BIRD LLP**
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424
Telephone:    404-881-7000
Facsimile:    404-881-7777
john.haynes@alston.com
sloane.kyrazis@alston.com

Karlee N. Wroblewski (admitted *pro hac vice*)
**ALSTON & BIRD LLP**
Bank of America Plaza
Suite 4000
101 South Tryon Street
Charlotte, NC 28280-4000
Telephone:     (704) 444-1000
Facsimile:      (704) 444-1111
karlee.wroblewski@alston.com

Elliott C. Riches (admitted *pro hac vice*)
**ALSTON & BIRD LLP**
2200 Ross Avenue
Suite 2300
Dallas, TX 75201
Telephone:     (214) 922-3492
elliott.riches@alston.com

**CERTIFICATE OF SERVICE**

Pursuant to the Federal Rules of Civil Procedure and Civil L.R. 5, I hereby certify that, on October 7, 2025, all counsel of record who have appeared in this case were served with a copy of the foregoing via ECF.

*/s/ Michelle Ann Clark*
Michelle Ann Clark