JOHN D. HAYNES (admitted *pro hac vice*)
**ALSTON & BIRD LLP**
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424
Telephone:     404-881-7000
Facsimile:     404-881-7777
john.haynes@alston.com

PHILIP DUCKER (State Bar No. 262644)
MICHELLE CLARK (State Bar No. 243777)
**ALSTON & BIRD LLP**
55 Second Street, Suite 2100
San Francisco, CA 94105
Telephone:     415-243-1000
Facsimile:     415-243-1001
phil.ducker@alston.com
michelle.clark@alston.com
dana.zottola@alston.com

*Attorneys for Defendant GOPRO, INC.*

*Additional counsel on signature page*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| CONTOUR IP HOLDING, LLC,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>GOPRO, INC.,<br><br>　　　　　Defendant. | LEAD CASE NO. 3:17-cv-04738-WHO<br>CONSOL. CASE NO. 3:21-cv-02143-WHO<br><br>**GOPRO'S RESPONSE TO MOTION FOR A CURATIVE INSTRUCTION**<br><br>Judge: William H. Orrick<br>Date: October 7, 2025<br>Time: 3:00pm<br>Location: Courtroom 2, 17th Floor |

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Bicon, Inc. v. Straumann Co.*,
   441 F. 3d 945 (Fed. Cir. 2006)................................................................................................ 6

**TABLE OF EXHIBITS**

| Exhibit | Description |
|---------|-------------|
| 1 | *Contour IP Holding LLC v. GoPro, Inc.*, No. 2022-1654, -1691, Dkt. 15 (Fed. Cir. Aug. 16, 2022) ("CIPH Appellate Brief") |
| 2 | Excerpted and Redacted Copy of Dr. Hu's Jun 31, 2025 Expert Report |
| 3 | Excerpted Copy of the Transcript of Deposition of Dr. Jing Hu |

**GOPRO'S RESPONSE TO MOTION FOR CURATIVE INSTRUCTION**

Contour IP Holding, LLC ("CIPH")'s motion for a curative instruction rests on the demonstrably false position that the PTAB held the "the functionality of live preview while recording" is not disclosed in Boland. A search of the Final Written Decisions issued in both Case IPR2015-1080 (U.S. Patent No. 8,890,954) and IPR2015-01078 (U.S. Patent No. 8,896,694) demonstrates that the phrase "**live preview while recording" does not appear in the PTAB's decisions at all.**  Ex. A. The PTAB's Decision on Remand is limited to finding that Boland does not disclose the "generate" limitations – a finding that is irrelevant to the trial proceedings because Dr. Almeroth does not rely on Boland to meet those limitations for the purpose of obviousness.

Nothing in Dr. Almeroth's testimony or GoPro's positions at trial are inconsistent with PTAB's IPR decisions. No curative instruction is necessary or appropriate.

    **A.**    **The Only Limitation The PTAB Found <u>Not</u> Disclosed In Boland Is The "Generate" Limitation**

As set forth in CIPH's Motion, the PTAB's finding with respect to Claim 11 of the '954 Patent was limited finding that "Petitioner has not shown, by a preponderance of the evidence, that the cited references teach the generation of **two different** image data streams "from the video image data" as recited in claims 11 and 27." Dkt. 850 at 1 (citing Ex. A at 42-43).[1] Thus, the PTAB concluded that GoPro had not shown that the cited references disclose Claim 11's "camera processor configured to . . . generate from the video image data a first image data stream and a second image data stream, wherein the second image data stream is a higher quality than the first image data stream." *Id*.

The PTAB's conclusion was premised on its finding that Boland discloses two distinct embodiments. In one embodiment, "Boland's 'preview' video is not generated from input image signal 209, but rather generated from encoded data 225 stored in storage medium 228 (e.g., by down-converting frames of that data). Ex. A at 30. In the other, Boland discloses "the encoded video data at full resolution (from video data buffer 229 or from the encoded stream 225) may be streamed directly to the handset for real time viewing." *Id*. at 33 (citing TX-2350 (Boland) at [0073] stating

---

[1] CIPH does not rely on the Final Written Decision in the '694 Patent in its Motion. However, that Decision also does not discuss "live preview while recording."

"For embodiments where the wireless connection between the headset 100 and the handset 201 is of sufficient bandwidth (e.g., WiFi) the video data 216A may include video frames streamed from the headset 100 . . . which may be **viewed <u>and</u>/or recorded to the handset in substantially real time**.").

**B.    Dr. Almeroth Does Not Rely On Boland To Disclose the Generate Limitations**

Dr. Almeroth provided **no** trial testimony opining that Boland discloses the "generate" limitations but instead relies on Ambarella for '954 Patent limitations 11.f and 12 as well as '694 Patent Claim 3.h.  *See, e.g.*, DDX-05.72; *see also* 10/6/2025 Trial Tr. at 1117:20-1118:8.



As Dr. Almeroth testified (and Dr. Hu did not dispute):

> So based on all of that material, **the idea of what's described in limitations 11.f and 12 of the '954 patent and 3.h of the '694 patent**, generating video image data as a first image data stream and a second image data stream wherein the second image data stream is a higher quality than the first image data stream, that's 11.f. And then the additional requirements of 12 and of 3.h **are identified in those Ambarella materials** . . . about its dual record with preview capability and the idea that Ambarella was envisioned to be used in a setting where video would be delivered wirelessly over a network.

*Id*.  On cross-examination, CIPH confirmed with Dr. Almeroth that he is relying exclusively on Ambarella to disclose the "generate" limitations:

> Q. Okay. And it is your contention that the Ambarella A5 and A5s both disclosed dual-resolution recording; correct?
> A. Yes.

> Q. Okay. And that's part of what you said added the "generate" term; correct? The part you said adds to Boland.
> A. That -- **yes, that you would rely on that portion of Ambarella for the portion of the claims** combined with Ambarella.

10/6/2025 Trial Tr. at 1168:10-17. At no point did Dr. Almeroth suggest on direct or cross-examination that Boland discloses the "generate" limitations.

### C. Plaintiff Misquotes The Testimony Given By Dr. Almeroth at Trial

In its Motion, Plaintiff does not identify any testimony from Dr. Almeroth that contradicts the PTAB's conclusion. Instead, CIPH cherry-picks quotes from Dr. Almeroth's testimony from October 6, 2025 that are **114 pages apart**. In the first quoted section, Dr. Almeroth describes a demonstrative exhibit presented by Dr. Hu entitled "Contour's Invention." Dkt. 850 at 1 (quoting 10/7/2025 Trial Tr. at 1000:2-10.) CIPH does not take issue with Dr. Almeroth's characterization in this testimony. CIPH, however, omits from the context the very next set of questions in which Dr. Almeroth clarifies that it is "the patent claims that define the scope of the claimed invention." 10/7/2025 Trial Tr. at 1080:15-17 (Q. "You understand that the patent claims define the scope of the claimed invention, though; right? A. "That's right. . . . it's the claim language and the asserted claims that's most important for assessing infringement and validity.").

Thereafter, Dr. Almeroth proceeds to identify disclosures from Boland that meet every element of the claim limitations **except** the generate limitations. Again, Dr. Almeroth properly prefaced his testimony by explaining that "to determine whether Boland and Ambarella render obvious the asserted claims," he had to "look at every word of every limitation for all three claims and go through and do an assessment of what Boland says and what Ambarella says." 10/6/2025 Trial Tr. at 1106:3-15. Dr. Almeroth's testimony regarding the Boland disclosures spans 113 pages. After all his limitation-by-limitation testimony, Dr. Almeroth also confirmed that "Boland discloses the **functionality** of live preview while recording." 10/6/2025 at 1114:5-10. Dr. Almeroth goes on to opine that Boland expressly discloses the motivation to combine its camera system with other camera processors (like Ambarella). *Id.* at 1114:5-1115:25.

Dr. Almeroth's redirect testimony is consistent with his opinion that Boland discloses all of the limitations except the "generate" limitations for which he relies on Ambarella. For example, as

CIPH acknowledges, Dr. Almeroth testified that the claimed invention was "completely disclosed within Boland **except for the use of the Ambarella processor**." 10/7/2025 Trial Tr. ROUGH at 40:5-9.[2] Dr. Almeroth also testified that Boland discloses recording and viewing **one** video stream and that for generating two video streams, he relies on Ambarella:

> Q. Now, you would agree, right, that Boland discloses
> recording and viewing at the same video stream; right? One?
> A. Yes.
> Q. But you relied on a different reference in order to
> disclose two streams; right?
> A. I did. Ambarella.
> Q. Okay. And does Ambarella, through two streams, supply a
> lower-quality and a higher-quality video generated in parallel?
> A. Yes, it does.

*Id*. at 42:17-25.

Dr. Almeroth never testified or suggested that Boland discloses "generating two streams in parallel." CIPH provides no quotation or citation to Dr. Almeroth's testimony that shows Dr. Almeroth equating "live preview while recording" to "generating two streams in parallel." Dkt. 850 at 3. Nor could it. Dr. Almeroth testified that "live preview while recording" was a "concept" that existed in the state of the art and cited to multiple different examples thereof including the Sony Ipela camera system, Looxcie, Presler, and Boland. 10/7/2025 Trial Tr. ROUGH at 40:18-25.[3] Dr. Almeroth's testimony demonstrates that the words "live preview while recording" do not appear in the claim language and **cannot be CIPH's claimed invention** because that functionality was well-established in the prior art. *Id*. at 40:13-25.

### D.  CIPH's Proposed Instruction Is Wrong As A Matter of Law

#### 1.  CIPH's Proposed Instruction Defies The Law Of The Case

CIPH's argument that it invented "live preview while recording" is unsupported by the evidence, but to ask the Court to **instruct** the jury that it did so violates the law. CIPH cannot contest that "live preview while recording" is not its invention. The shared specification of the '954 and '694

---

[2] At the time of preparing this submission, GoPro had not been provided with the final transcript for the trial proceedings of 10/7/2025.

[3] At the time of preparing this submission, GoPro had not been provided with the final transcript for the trial proceedings of 10/7/2025.

Patents disclose multiple implementations of a "remote viewer" that can "access data streaming from digital video camera 10" including "reduced frame rate, file sectioning, frame sampling, and Wi-Fi to media server." *See* '954 Patent at 20:7-26. As this Court found in its initial claim construction order, the specification only describes **one** of these implementations as "recording video in two formats." Dkt. 251 at 12. On this basis, the Court construed "generate" as "record" to distinguish the unclaimed embodiments of remote viewing. *Id*.

Thereafter, CIPH relied on distinguishing other forms of live preview while recording in order to challenge the Court's Summary Judgment Order of unpatentability on appeal. Ex. 1 (CIPH Appellate Brief) at 4. CIPH argued to the Federal Circuit that the claim is directed to a specific "configuration for the camera processor that constituted the technological advance over the prior art." *Id*. at 7, 14. In its Appellate Brief, CIPH listed **7 different ways** that live preview could have been implemented including "Boland's patented 'serial' technique," "streaming the first stream in a 'fast photo mode," "file sectioning the first stream," "creating the first stream using frame sampling," "streaming the first video stream in a reduced frame rate rather than a reduced resolution," or having two camera processors. *Id*. at 18-19. CIPH specifically argued that it "**did not claim an idea no matter how implemented Contour claimed a specific technique resulting from configuring the processor in a particular way**" (*i.e.*, the way that Ambarella did with its A5 and A5S platforms). *Id*.

Indeed, CIPH specifically acknowledged in its Federal Circuit briefing that Boland disclosed a "low resolution preview" but argued that it was distinct from the claimed invention because "it was generated from video previously recorded and stored at the headset." *Id*. at 22. CIPH admitted that other prior art, including Boland, offered "other technical approaches **to the same problem**," and therefore "any concerns over possible preemption of future discoveries were entirely misplaced." *Id*. at 29; *see also id*. at 31 ("[T]he claims do not cover all digital video cameras which generate and stream video, but only those using the specific combination of features claimed in the "generate" limitation."), 43-44. Yet in its Motion for a curative instruction, the CIPH asks the Court to instruct the jury that, in fact, CIPH did invent the abstract idea of live preview while recording, in direct derogation of its argument and the Federal Circuit's finding that "improving POV camera technology through specific means of generating high- and low-quality video streams in parallel and transferring

a low-quality video stream to a remote device." Dkt. 682 at 12; *see also* Ex. 1 (CIPH Appellate Brief) at 38-39 (arguing the Court's characterization of the claims is "facially incorrect because claim 11 requires a processor configured to generate two video streams at different resolutions **in parallel** and **from the same video image data** but also to transmit **only one** of them (not two) and then adjust the **camera's** settings (not the video's) remotely from the phone") (emphasis original).

Further, after remand, CIPH's expert expressly opined that the "generating" limitation addressed by the PTAB is **not** what discloses "live preview while recording," because according to Dr. Hu, the "camera processor" elements **do not have to be in real time**," but can instead be met by sending a file after recording. Ex. 2 (Hu 3/31/2025 Rpt.) at ¶¶ 231-33; Ex. 3 (Hu 6/20/2025 Dep. Tr.) at 202:8-203:14. Sending a file after recording has ended is not a "live preview" at all, much less a live preview that is transmitted while recording. CIPH's proposed curative instruction thus, not only violates the law of the case, but it contradicts its own experts' opinions.

### 2.  CIPH's Proposed "Instruction" Violates The Law

CIPH cannot now, after ten years of litigation ask this Court to equate "a camera processor that would generate a high-quality video for storage and then a low-quality video for transmission over a wireless device ultimately to a device that would then . . . provide remote control functions" to "the functionality of live preview while recording." This argument would be tantamount to an untimely claim construction that violates multiple foundational principles of claim interpretation. It reads out essentially every requirement of the claims including the specific configuration of the camera processor that CIPH touted as the point of novelty on appeal and any mention of the **three** remote control / control signals requirements. *Bicon, Inc. v. Straumann Co.*, 441 F. 3d 945, 951 (Fed. Cir. 2006) (holding a patent claim construction that reads limitations out of a claim is "contrary to the principle that claim language should not [be] treated as meaningless"). Attempting to distill the "generate" limitation, the wireless transmission limitation, and the remote control limitations into a single functionality of "live preview while recording" invites error, unfairly prejudices GoPro, and essentially adopts the very abstract idea as its "invention" that CIPH distinguished on appeal. The instruction should be rejected.

|  |  |  |
|---|---|---|
|  |  | **ALSTON & BIRD LLP** |
| Dated: October 8, 2025 | BY: | */s/ Michelle Ann Clark* |

Michelle Ann Clark (SBN 243777)
Philip C. Ducker (SBN 262644)
Dana Zottola (SBN 346715)
**ALSTON & BIRD LLP**
55 Second Street, Suite 2100
San Francisco, California 94105-0912
Telephone: (415) 243-1000
Facsimile: (415) 243-1001
michelle.clark@alston.com
phil.ducker@alston.com
dana.zottola@alston.com

John D. Haynes (admitted *pro hac vice*)
Sloane Kyrazis (admitted *pro hac vice*)
**ALSTON & BIRD LLP**
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424
Telephone:    404-881-7000
Facsimile:    404-881-7777
john.haynes@alston.com
sloane.kyrazis@alston.com

Karlee N. Wroblewski (admitted *pro hac vice*)
**ALSTON & BIRD LLP**
Bank of America Plaza
Suite 4000
101 South Tryon Street
Charlotte, NC 28280-4000
Telephone:    (704) 444-1000
Facsimile:    (704) 444-1111
karlee.wroblewski@alston.com

Elliott C. Riches (admitted *pro hac vice*)
**ALSTON & BIRD LLP**
2200 Ross Avenue
Suite 2300
Dallas, TX 75201
Telephone:    (214) 922-3492
elliott.riches@alston.com

**CERTIFICATE OF SERVICE**

Pursuant to the Federal Rules of Civil Procedure and Civil L.R. 5, I hereby certify that, on October 8, 2025, all counsel of record who have appeared in this case were served with a copy of the foregoing via ECF.

*/s/ Michelle Ann Clark*
Michelle Ann Clark