UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONTOUR IP HOLDING, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>GOPRO, INC.,<br><br>    Defendant. | Case No. 17-cv-04738-WHO<br><br>**ORDER SANCTIONING ALSTON & BIRD, LLP FOR VIOLATION OF THE COURT'S STANDING ORDER REGARDING JUROR QUESTIONNAIRES AND SOCIAL MEDIA RESEARCH** |

I utilize a Jury Questionnaire administered by the Northern District of California's Jury Office in most jury trial matters. The responses to the questionnaire are provided to counsel in advance of trial. I have found that this provides a real benefit to the parties and me in terms of the quantity and quality of information available in jury selection. The responses disclose issues that can be addressed in voir dire and streamline the questioning. They also identify hardship or cause issues that can be addressed before bringing the jurors to court. And because they provide the names of prospective jurors in advance of the day for jury selection, they allow the parties to do some publicly available research on the people who may decide the case.

That latter point raises, for me, the question of whether there should be limits on individual research. I believe strongly in the right to privacy. Judges instruct jurors that they may not investigate the lawyers, parties, witnesses or issues in the case before them, and I think a concomitant right should preclude lawyers from rummaging around in the lives of prospective jurors. In the days before the internet, lawyers used various services to seek public information about jury pools, such as property records, voting rolls, civil and criminal litigation history, and so forth. With the advent of social media, of course, there is now a lot more information readily available online about individuals, including information individuals post about themselves. And

1   there are a variety of ways someone seeking information about another can do so, including in
2   ways that the general public might have thought was protected from view because of the
3   implementation of some screening mechanism.
4       To my mind, information that a person discloses in a publicly available manner is fair
5   game for lawyers preparing for voir dire.  Lawyers have an ethical duty not to contact prospective
6   jurors, however, so they must be careful not to inadvertently use an investigative technique that
7   notifies a juror that their information is being reviewed.  Because this is an evolving area and
8   different judges have varying perspectives on it, I issued a Standing Order Regarding Juror
9   Questionnaires and Social Media Research, effective August 23, 2023.  *See*
10  https://cand.uscourts.gov/sites/default/files/standing-orders/JUROR-QUESTIONNAIRES-AND-
11  SOCIAL-MEDIA-RESEARCH-Aug-2023.pdf.  I refer to that Standing Order in my Pretrial Order
12  as well to ensure that the parties understand my concerns and rules regarding it.  *See, e.g.*,
13  https://cand.uscourts.gov/sites/default/files/standing-orders/Civil-PreTrial-Aug-23-2023.pdf at 7.
14      In this case, Alston & Bird, LLP violated the Standing Order.  When it hired its jury
15  consultant, it did not advise it of its obligation to comply with the Standing Order, and when the
16  consultant hired an investigator to conduct background research, the investigator was unaware of
17  the Standing Order.  The investigator has indicated that it follows strict standards to only access
18  publicly available information, but it used LinkedIn for its research, which I prohibit even for
19  "anonymous" searches because of the automatic notification setting employed by LinkedIn.  The
20  prospective juror is still notified as a result of the investigator's search, even if the juror can't tell
21  who was viewing her information.  The investigator in this case provided the fruits of her research
22  to Alston & Bird.
23      When counsel at Alston & Bird realized that the firm had violated the Standing Order, she
24  did the responsible thing.  She provided the information she had received to opposing counsel, so
25  that his firm would not be disadvantaged by not having access to the information her firm
26  possessed.  She did not share it with the lawyer at her firm who was conducting voir dire.  And she
27  notified me of the violation at her first opportunity before jury selection.  It did not seem to me
28  that a mistrial would be appropriate, so I proceeded with voir dire.  I later reviewed the jurors'

1  information in question, and sought and received in camera declarations from counsel, the jury
2  consultant, and the investigator, explaining what had occurred.

3  In consideration of all the circumstances, I SANCTION Alston & Bird, LLP $10,000 for
4  its direct violation of the Standing Order, which shall be paid to the Clerk of Court for this District
5  within 15 days.  This penalty is far more modest than I originally contemplated.  It appears that the
6  violation of the Standing Order was the use of LinkedIn in a way that might not be traced back to
7  this litigation, and I recognize that I may be one of only a few judges who consider automatic
8  notifications on LinkedIn to be juror contact.  I am satisfied by the representation of the
9  investigator that it is the policy of her company to only access publicly available information; they
10 and many others consider the information on LinkedIn to be publicly available, which I would as
11 well but for the separate issue of the automatic notification of the juror.  I appreciate that counsel
12 did her best to rectify the violation by prompt disclosure.

13 That said, I am imposing a sanction for two reasons.  First, it was Alston & Bird's
14 obligation to comply with my Standing Order, whether it agreed with it or not, and its failure to
15 adequately inform and supervise its consultants, intentional or not, warrants a sanction.  Second, I
16 want to emphasize that I remain convinced that the Standing Order is appropriate.  Individual
17 privacy has been eroded over the last thirty years with the advent of various surveillance tools, the
18 internet, smart phones, and social media.  I do not think that jurors should lose any remaining
19 privacy interests simply because they are called to do their civic duty, any more than I think that
20 jurors should be able to investigate the lawyers in a case before agreeing to serve.  And I think the
21 ethical rule that lawyers not contact jurors should be strictly enforced.

22 Counsel in every case before me are forewarned against future violations of the Standing
23 Order.  No one should take as precedent the modest nature of the sanction in this particular case.

24 **IT IS SO ORDERED.**

25 Dated: October 28, 2025

William H. Orrick
United States District Judge

3