John R. Keville *(Pro Hac Vice)*
*jkeville@sheppardmullin.com*
Michelle C. Replogle (*Pro Hac Vice*)
*mreplogle@sheppardmullin.com*
Michael C. Krill *(Pro Hac Vice)*
*mkrill@sheppardmullin.com*
Sunny Akarapu (*Pro Hac Vice*)
*sakarapu@sheppardmullin.com*
SHEPPARD, MULLIN, RICHTER & HAMPTON, LLP
845 Texas Avenue, 25th Floor
Houston, Texas 77002-2791
Telephone: (713) 431-7100
Facsimile: (713) 431-7024

Lai L. Yip (SBN 258029)
*lyip@sheppardmullin.com*
SHEPPARD, MULLIN, RICHTER & HAMPTON, LLP
Four Embarcadero Center Seventeenth Floor
San Francisco, CA 94111
Telephone: (415) 434-9100
Facsimile: (415) 875-6700

Attorneys for Plaintiff,
CONTOUR IP HOLDING, LLC

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CONTOUR IP HOLDING, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>GOPRO, INC.,<br><br>Defendant. | ) **CONSOLIDATED**<br>) Lead Case No. 17-cv-04738-WHO<br>) Consolidated Case No. 21-cv-02143-WHO<br>)<br>) **PLAINTIFF CONTOUR IP HOLDING,<br>) LLC'S MOTION FOR NEW TRIAL AND<br>) MOTION FOR JUDGMENT AS A<br>) MATTER OF LAW**<br>)<br>)<br>)<br>) Judge: William H. Orrick<br>) Date: March 11, 2026<br>) Time: 2:00 p.m.<br>) Location: Videoconference<br>) |

1

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that, on March 11, 2026, at 2:00 p.m. or as soon thereafter as the matter may be heard, via videoconference, Plaintiff Contour IP Holding, LLC ("Contour") shall and hereby does respectfully seek an order (1) granting a new trial pursuant to Federal Rule of Civil Procedure 59 and (2) granting judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b). This motion is based on this notice of motion and supporting memorandum, the trial record, and such other written or oral argument as was presented and may be presented at or before the time this motion is taken under submission by the Court.

## RELIEF REQUESTED

Contour hereby moves for a full retrial on all verdict questions because the entire verdict is inconsistent and irreconcilable, including the damages verdict that is unsupported by the evidence presented at trial. Contour further renews its motions for judgment as a matter of law for infringement of claim 12 of U.S. Patent No. 8,890,954 ("the '954 patent") and claim 6 of U.S. Patent No. 8,896,694 ("the '694 patent) for the Live Preview Group 1 Products ("Group 1 Products"), for infringement of claims 11 and 12 of the '954 patent and claim 6 of the '694 patent for the Live Preview Group 2 Products ("Group 2 Products"), and for a judgment that the alleged "Woodman Prior Invention" cannot be prior art as a matter of law due to lack of diligence.

# <u>TABLE OF CONTENTS</u>

<span style="float:right">Page</span>

I.      INTRODUCTION ...................................................................................................1

II.     RELEVANT BACKGROUND ..............................................................................3

    A.     The Accused Products and Pretrial Findings .............................................3

    B.     The Trial ......................................................................................................3

        1.     In Opening, GoPro Focuses on its Purportedly Earlier Prototype and the Change to its Group 2 Products ...............................................3

        2.     GoPro Abandons The Prototype Theory To Now Claim The HERO2 With Wi-Fi BacPac As The Necessary Reduction To Practice ...................4

        3.     GoPro Argues That Group 2 Products Do Not Infringe ...............................5

        4.     GoPro Emphasizes that Noninfringing Alternatives, like the Group 2 Products, Impact Damages ..................................................6

    C.     Jury Instructions, Verdict Form, and Closing ............................................7

    D.     The Jury's Confusion and Irreconcilable Verdict .......................................9

        1.     The Jury Verdicts As To Liability Are Irreconcilably Conflicted ................9

        2.     Jury Verdict As To Damages Is Inconsistent with the Evidence ................11

III.    LEGAL STANDARDS ........................................................................................11

    A.     Motions For New Trial ..............................................................................11

    B.     Judgment as a Matter of Law ....................................................................13

IV.     ARGUMENT ......................................................................................................13

    A.     New Trial Is Necessary on All Verdict Issues ..........................................13

        1.     The Jury Findings on Validity of Claims 11 and 12 Cannot Be Reconciled and Require a New Trial .................................................13

        2.     The Scope of the New Trial Should Be All Verdict Issues Because the Remainder of the Verdict Form Is Similarly Inconsistent ....................14

    B.     A New Trial Is Necessary on Damages for Additional, Independent Reasons ........17

        1.     A New Trial On Damages Is Necessary Not Only On Group 2 Products But Group 1 Products As Well ........................................17

        2.     Whatever Is Retried, A New Damages Trial Is Necessary ..........................18

C.      Whatever The Scope Of A New Trial, JMOL Should Be Granted On Discrete Issues Which Will Narrow The New Trial ................................................19

    1.      Contour Is Entitled To JMOL of Infringement for the Group 1 Products – '954 claim 12 and '694 claim 6....................................19

    2.      Contour Is Entitled To JMOL or Alternatively a New Trial, On Infringement for Group 2 Products - '954 claims 11–12, '694 claim 6....................................20

    3.      Contour Is Entitled To JMOL That The Alleged "Woodman Prior Invention" Is Not Prior Art..........................................22

D.      The Only Other Possibility Would Be To Enter Judgment For $8.2 Million And Award Post-Trial Relief ..........................................24

V.      CONCLUSION ..........................................25

# TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*ABS Glob., Inc. v. Inguran, LLC*
  914 F.3d 1054 (7th Cir. 2019) ............................................................................. 12

*Apple Inc. v. Samsung Elecs. Co.*
  839 F.3d 1034 (Fed. Cir. 2016) ........................................................................... 20

*Bridge Aina Le'a, LLC v. Land Use Comm'n*
  950 F.3d 610 (9th Cir. 2020) ............................................................................... 13

*Bristol-Myers Squibb Co. v. Ben Venue Lab'ys, Inc.*
  246 F.3d 1368 (Fed. Cir. 2001) ........................................................................... 15

*Callaway Golf Co. v. Acushnet Co.*
  576 F.3d 1331 (Fed. Cir. 2009) ...................................................................... 12, 14

*Callicrate v. Wadsworth Mfg.*
  427 F.3d 1361 (Fed. Cir. 2005) ........................................................................... 13

*Church & Dwight Co. v. Abbott Lab'ys*
  2009 WL 2230941 (D.N.J. July 23, 2009) ........................................................... 25

*Comaper Corp. v. Antec, Inc.*
  596 F.3d 1343 (Fed. Cir. 2010) ...................................................................... 12, 14

*Creative Compounds, LLC v. Starmark Labs.*
  651 F.3d 1303 (Fed. Cir. 2011) ........................................................................... 24

*Del Monte Dunes at Monterey, Ltd. v. City of Monterey*
  95 F.3d 1422 (9th Cir. 1996) ............................................................................... 12

*Duhn Oil Tool, Inc. v. Cooper Cameron Corp.*
  2012 WL 13040409 (E.D. Cal. May 7, 2012) .............................................. 12, 13, 14

*Emblaze Ltd. v. Apple Inc.*
  No. 5:11-cv-01079-PSG, 2015 WL 396010 (N.D. Cal. Jan. 29, 2015) ................... 13

*In re First All. Mortg. Co.*
  471 F.3d 977 (9th Cir. 2006) ......................................................... 7, 10, 15, 16, 18

*Fitzgerald v. Arbib*
  268 F.2d 763 (C.C.P.A. 1959) ............................................................................. 24

*Fujifilm Corporation v. Motorola Mobility Holdings, Inc.*
  No. 3-12-cv-03587, Dkt. No. 383 ........................................................................ 25

*Gasoline Prods. Co. v. Champlin Ref. Co.*
283 U.S. 494 (1931) ................................................................................................ 16

*Gen. Motors Corp. v. Devex Corp.*
461 U.S. 648 (1983) ................................................................................................ 25

*Gould v. Schawlow*
363 F.2d 908 (C.C.P.A. 1966) ................................................................................ 24

*Griffith v. Kanamaru*
816 F.2d 624 (Fed. Cir. 1987) ................................................................................ 24

*Helena v. City of San Francisco*
No. C04-0260 CW, 2006 WL 1140953 (N.D. Cal. May 1, 2006) ........................... 12

*Impinj, Inc. v. NXP USA, Inc.*
2023 WL 10352284 (N.D. Cal. Sept. 28, 2023) ..................................................... 12

*InTouch Techs., Inc. v. VGO Commc'ns, Inc.*
751 F.3d 1327 (Fed. Cir. 2014) .............................................................................. 13

*Landes Const. Co. v. Royal Bank of Canada*
833 F.2d 1365 (9th Cir. 1987) ................................................................................ 12

*LG Elecs. U.S.A., Inc. v. Whirlpool Corp.*
798 F. Supp. 2d 541 (D. Del. 2011) ....................................................................... 22

*Medichem, S.A. v. Rolabo, S.L.*
437 F.3d 1157 (Fed. Cir. 2006) .............................................................................. 23

*In re Meyer Mfg. Corp.*
411 F. App'x 316 (Fed. Cir. 2010) ......................................................................... 24

*Molski v. M.J. Cable, Inc.*
481 F.3d 724 (9th Cir. 2007) .................................................................................. 12

*Mondis Tech., Ltd. v. LG Elecs., Inc.*
No. 2:07-CV-565, 2011 WL 3847603 (E.D. Tex. Aug. 29, 2011) ......................... 20

*Monroe v. City of Phoenix*
248 F.3d 851 (9th Cir. 2001) .................................................................................. 20

*Morway v. Bondi*
203 F.2d 742 (C.C.P.A. 1953) ................................................................................ 24

*Mycogen Plant Sci. v. Monsanto Co.*
243 F.3d 1316 (Fed. Cir. 2001) .............................................................................. 14

*In re: NFL "Sunday Ticket" Antitrust Litig.*
2024 WL 3628118 (C.D. Cal. Aug. 1, 2024) ......................................................... 18

iv

*Ortho-McNeil Pharm., Inc. v. Mylan Lab'ys, Inc.*
    520 F.3d 1358 (Fed. Cir. 2008) ................................................................. 13

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l Inc.*
    935 F. Supp. 2d 747 (D. Del. 2013), *aff'd in part, vacated in part, rev'd in part*, 843
    F.3d 1315 (Fed. Cir. 2016) ........................................................................ 20

*SunTiger, Inc. v. Sci. Rsch. Funding Grp.*
    194 F.3d 1335, 1999 WL 379140 (Fed. Cir. 1999) ................................... 21

*Union Carbide Chemicals & Plastics Tech. Corp. v. Shell Oil Co.*
    308 F.3d 1167 (Fed. Cir. 2002) ................................................................. 23

*United States v. 4.0 Acres of Land*
    175 F.3d 1133 (9th Cir. 1999) ................................................................... 12

*Warsaw Orthopedic, Inc. v. NuVasive, Inc.*
    778 F.3d 1365 (Fed. Cir. 2015), *vacated on other grounds*, 136 S. Ct. 893 (2016),
    *reinstated in relevant part*, 824 F.3d 1344 (Fed. Cir. 2016) ..................... 19

*WCM Indus., Inc. v. IPS Corp.*
    809 F. App'x 957 (Fed. Cir. 2020) ............................................................ 25

*White v. Ford Motor Co.*
    312 F.3d 998 (9th Cir. 2002) ..................................................................... 13

*Wordtech Sys., Inc. v. Integrated Networks Solutions, Inc.*
    609 F.3d 1308 (Fed. Cir. 2010) ..................................................... 12, 18, 22

<u>Statutes</u>

28 U.S.C. § 1961(a) ............................................................................................ 25

28 U.S.C. § 1961(b) ............................................................................................ 25

35 U.S.C. § 102(g) ....................................................................................... 23, 24

35 U.S.C. § 112(d) .............................................................................................. 13

<u>Other Authorities</u>

Fed. R. Civ. P. 49(b)(4) ...................................................................................... 14

Fed. R. Civ. P. 50(a) ........................................................................................... 22

Fed. R. Civ. P. 50(b) ........................................................................................... 12

Fed. R. Civ. P. 54(d)(1) ...................................................................................... 25

Fed. R. Civ. P. 59 .......................................................................................... 11, 15

Fed. R. Civ. P. 59(a) ............................................................................................................... 18

Fed. R. Civ. P. 59(a)(1) ........................................................................................................... 15

LR 54-1 ....................................................................................................................... 25Fe

**Note: All emphasis has been added within this brief unless noted otherwise**

1

## TABLE OF ABBREVIATIONS

2

| Abbreviation | Description |
|---|---|
| GoPro | GoPro, Inc. |
| Contour | Contour IP Holding, LLC |
| Contour LLC | Contour, LLC |
| '954 Patent | U.S. Patent No. 8,890,954 |
| '694 patent | U.S. Patent No. 8,896,694 |
| Group 1 Products | Live Preview Group 1 Products |
| Group 2 Products | Live Preview Group 2 Products |
| Woodman Prior Invention | GoPro's allegation that the "the invention defined in [the asserted] claims was conceived by and reduced to practice by or at the direction of Nicholas Woodman at GoPro in the form of the HD Hero2 and WiFi BacPac in June 2012" |

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.    INTRODUCTION

Upon reading the jury verdict, the Court called a side bar. This Court believed the jury returned an inconsistent verdict by finding the claims not infringed but nevertheless awarding damages. But there was a simple explanation and no inconsistency. Over Contour's objection, the Court had adopted GoPro's verdict form that omitted the Court's prior infringement finding for independent claim 11 of the '954 patent as to the "Group 1 Products." Following the Court's instruction on that point, and finding claim 11 valid, the jury had properly awarded damages. However, during that same side bar, an actual inconsistency emerged. While the jury found independent claim 11 of the '954 patent valid, it had found dependent claim 12—which has all the elements of claim 11—invalid. That is of course impossible. Under Ninth Circuit precedent, a new trial must be granted on that issue.

But, unlike any other case found to date, that one inconsistency was inextricably tied to numerous inconsistencies with this verdict. For one, the jury specifically invalidated claim 12 of the '954 patent by finding it anticipated by the HERO2 with Wi-Fi BacPac—the sole anticipatory reference. That meant the jury found that the HERO2 with Wi-Fi BacPac **did** have all claim elements of claim 12. Despite that, the jury found claim 12 not infringed by the Group 1 Products, which included the HERO2 with Wi-Fi BacPac, meaning the jury also found that the HERO2 with Wi-Fi BacPac **did not** have all claim elements of claim 12. Both cannot be true. Perhaps this inconsistency arose from GoPro's legally incorrect mantra that an invalid patent cannot be infringed, or from GoPro's mid-trial change of its prior invention defense's "reduction to practice" from an alleged 2009 prototype—after that was revealed to be a fake—to the HERO2 with Wi-Fi BacPac in 2012. But irrespective of the reason, the verdict cannot stand.

As yet another example, in finding claim 11 of the '954 patent valid, the jury found that HERO2 with WiFi BacPac was not an anticipatory prior invention. Given that the jury was instructed that HERO2 with WiFi BacPac met all the elements of claim 11 (due to this Court's ruling that the Group 1 Products infringed that claim), the jury could only have found claim 11 valid by finding that GoPro had not proven prior invention, i.e., GoPro had not proven diligence. But the jury, at the same time, found claim 6 of the '694 patent invalid as anticipated by HERO2 with WiFi

BacPac—despite it being a reference that could not be a prior invention and despite the '694 patent sharing the same priority date with the '954 patent. Worse yet, like claim 12 of the '954 patent, the jury found HERO2 with WiFi BacPac did not infringe claim 6 of the '694 patent, despite invalidating the same claim as anticipated by HERO2 with WiFi BacPac. Broken down, these irreconcilable and inconsistent findings were:

| Jury Finding | Inconsistent Jury Finding |
|---|---|
| HERO2 with WiFi BacPac is **NOT a prior invention** to the '954 patent (Question 4, Claim 11) | HERO2 with WiFi BacPac **IS a prior invention** to the '954 patent (Question 4, Claim 12) |
| HERO2 with WiFi BacPac is **NOT a prior invention** to the '954 patent (Question 4, Claim 11) | HERO2 with WiFi BacPac **IS a prior invention** to the '694 patent that has the same priority date (Question 4, Claim 6) |
| HERO2 with WiFi BacPac **does NOT have all elements of claim 12** of the '954 patent (Question 1, Claim 12) | HERO2 with WiFi BacPac **HAS all elements of claim 12** of the '954 patent (Question 4, Claim 12) |
| HERO2 with WiFi BacPac **does NOT have all elements of claim 6** of the '694 patent (Question 1, Claim 6) | HERO2 with Wi-Fi BacPac **HAS all elements of claim 6** of the '694 patent (Question 4, Claim 6) |

The jury's verdict is inconsistent throughout and unfixable. A full new trial is necessary.

While damages should be retried as a part of all issues, they must also be retried because the jury's finding that Group 2 Products do not infringe cannot stand. GoPro's only noninfringement argument for these products was mooted by the Court's mid-trial claim construction. If liability for the Group 2 Products is found, or at least retried, damages would need to be determined. Further, given that GoPro cast the "new" Group 2 Products as a non-infringing alternative to the "older" Group 1 Products, the jury's damages award for Group 1 Products was tainted by the incorrect belief that Group 2 was a non-infringing alternative. Separately, the jury's damages award is also unsupported by any evidence presented at trial. The jury awarded a lump sum payment, but was asked to determine a royalty. Given that neither party presented evidence that the parties would have agreed to a lump sum, it appears the jury simply guessed a number. In addition, GoPro's repeated conflation of the "state of the art" with a damages "value," not through its expert but through attorney argument in closing, warrants a new damages trial.

Finally, the scope of any new trial can (and should) be narrowed, as JMOL is appropriate on several issues, including infringement of the Group 2 Products.

## II.    RELEVANT BACKGROUND

### A.    The Accused Products and Pretrial Findings

On summary judgment, the Court found that the HERO2 with WiFi BacPac, HERO+, HERO3, HERO3+, HERO4, HERO5, HERO6, Fusion models, HERO7, HERO8, and MAX models infringed claim 11 of the '954 Patent. Dkt. 445 at 10; Dkt. 721 at 10–16. These products were referred to as the "Live Preview Group 1 Products." *See* Dkt. 865 at 3. Other products at issue included additional Live Preview products (i.e., some HERO11 models, and the HERO12, HERO13, and HERO4k models), referred to as "Live Preview Group 2 Products," and certain cameras configured for Live Streaming only, referred to as the "Live Streaming Products" (i.e., the HERO9 and HERO10 models, as well as some HERO11 models). *See* Dkt. 865 at 4-5 (Verdict Form, Questions 2 and 3).

### B.    The Trial

#### 1.    In Opening, GoPro Focuses on its Purportedly Earlier Prototype and the Change to its Group 2 Products

One of GoPro's key themes at trial was that Nick Woodman was the first inventor, and had reduced that invention to practice in a prototype of the HERO HD camera model. Trial Tr. 192:7-23 (claiming GoPro had prototyped the invention and "[Contour] didn't come up with that idea first"). In opening, GoPro told a story about how Ambarella brought the chip to GoPro and Mr. Woodman, and how "they actually built a prototype of the original HD HERO camera." Trial Tr. 200:15-21. GoPro even showed a photograph of the prototypes to the jury, presenting it as evidence that would show this "prototype was built and tested in 2009." Trial Tr. 201:2-4; Dkt. 885-1 at slide 12. This was GoPro's prior invention theory, as reflected by its initial jury instructions. Dkt. 796-7 at 59 (identifying the "***Hero HD prototype*** conceived by Nicholas D. Woodman and reduced to practice" as a prior art reference, not identifying HERO2 with Wi-Fi BacPac).

GoPro's opening also made a clear demarcation between its infringing "old" Group 1 Products and the "new" allegedly noninfringing Group 2 Products. Stuck with the Court's

infringement finding, GoPro's counsel argued that, while "the Court has already found, the elements for GoPro's *older* cameras meet the basic features of one of the Contour patent claims . . . you are going to hear [] that GoPro's products haven't been stagnant since 2009. They changed over time. And there are new features in those products now that are different from what the patents require." Trial Tr. at 193:7-15; *see also id*. 210:24-211:3 ("You're going to hear evidence, both from Mr. Lema and Mr. Liu, who are GoPro employees, about how GoPro's products changed over time. And they did. . . . And there are a lost [sic] differences. And when you hear about that evidence of the differences, you have to look at the patent claims and say: Okay. Well, maybe the old products did it that way, but is every single element of the claim met for these new products?"); *see also id.* at 195:25-196:4. According to GoPro, it had changed the protocol used from WiFi to using both WiFi and Bluetooth, and this alternative approach no longer infringed because the claims required a single "connection protocol device that both sends and receives" and "the word 'protocol' means something. … WiFi is a protocol, Bluetooth is a protocol. But the patent says you've got to send and receive using the same thing." *Id.* at 211:6–212:19.

### 2. GoPro Abandons The Prototype Theory To Now Claim The HERO2 With Wi-Fi BacPac As The Necessary Reduction To Practice

GoPro's prior invention theory hit a snag during trial when the purported inventor, Mr. Woodman, admitted he was not a prior inventor of the invention claimed in Contour's patents. Trial Tr. at 594:7–17; *id*. at 551:19–552:6 (similar). The story fell apart further when it came out that the HERO HD prototype was not "built and tested in 2009" as GoPro's counsel had claimed the evidence would show. Mr. Woodman originally testified that TX-3475 was "an accurate image of what the prototypes that you [Mr. Woodman] built back in -- not you built -- that you observed back in [August] 2009." *Id*. at 674:5–675:12, 677:6–10. However, on cross, Mr. Woodman was shown a higher-quality photograph of the same alleged "prototypes" depicted in TX-3475, which confirmed that the circuit board was dated November 16, 2010. *Id*. at 707:21–709:9; TX-1294; TX-1295. Mr. Woodman had "no explanation for that" discrepancy in the dates. Trial Tr. at 709:10–19. Recognizing the prototype theory was hopeless, GoPro pivoted. On Mr. Woodman's redirect, he was told to "pretend that [alleged prototype] never existed" and asked whether the HERO2 with

1  WiFi BacPac in 2012 was instead the reduction to practice. Trial Tr. at 710:13–19. With the change

2  to GoPro's HERO2 with WiFi BacPac in June of 2012, GoPro's lack of diligence became more

3  apparent. Dr. Hu identified documents showing that "GoPro abandoned the work on the wireless

4  remote or the wireless BacPac" by at least October 2009 (TX-3116) through at least November 2010

5  (TX-405), and explained that the next document referencing the wireless feature is when "Mr.

6  Woodman instructed employees at GoPro to covertly acquir[e] Contour GPS units" in January 2011

7  (TX-2833). Trial Tr. at 1330:7–1331:16.

8      GoPro called Dr. Almeroth to address this, but on cross he could not identify any documents

9  showing work from September 2009 (first mention of WiFi BacPac) to January 2011:

> Q. Okay. And you agree that the jury has seen not one single document
> showing that GoPro was working on WiFi BacPac between September
> 2009, when Nick Woodman stated GoPro would shift its focus to the
> WiFi BacPac, and this document in 2011; correct?
>
> A. I disagree. **I think there were documents** in that time frame, **and I
> think** they -- **some of them were actually shown** to the jury by Mr.
> Woodman in his testimony.
>
> Q. I'm sure when your counsel comes back up, she'll point those out. I
> haven't seen any. Can you identify them for us?
>
> A. **I don't have the exhibit numbers off the top of my head**.

17  *Id*. at 1432:12–21. On redirect, GoPro failed to identify a single document showing work on the

18  WiFi BacPac in this period. *See id*. at 1433:6–1435:4.

19              **3.    GoPro Argues That Group 2 Products Do Not Infringe**

20      Consistent with its opening statement themes, GoPro's witnesses repeatedly told the jury

21  that the Group 2 Products are newer than Group 1 Products and, thus, do not infringe. Trial Tr.

22  878:4-12 (Lema) ("They've -- since I joined the company, we've done a tremendous amount of

23  innovation in our products."); *Id*. at 924:4-12 (Liu) ("Oh, we've definitely had, like, improvements

24  in connectivity. We've had, like, hardware changes, improvements in SoCs, our chips that are used

25  there, improvements in battery life."). Despite framing Group 2 Products as different than Group 1,

26  GoPro raised only one noninfringement defense for Group 2 Products. Indeed, while GoPro's expert

27  Dr. Almeroth claimed to have identified "several" reasons that Group 2 Products did not infringe

28  (Trial Tr. at 1139:6-14), he only discussed the WiFi/Bluetooth protocol argument from GoPro's

opening statement. *Id.* at 1139:22-1143:21. Dr. Almeroth first acknowledged that the same wireless protocol device—the Qualcomm QCA9377 WiFi/Bluetooth System on Chip ("WiFi/Bluetooth Device")—was used in Group 1 Products and thus already found to meet this limitation. *Id.* at 1140:7-15. However, he opined that the chip was "used and configured differently" in the Group 2 Products. *Id.* at 1140:16-17. According to Dr. Almeroth, the Group 2 Products did not infringe because they used WiFi to send real-time image content but Bluetooth to receive control signals. Trial Tr. at 1141:21-1143:15. GoPro's position was that the same protocol needed to be used for both. *See id.* at 1143:11-15; *see also id.* at 211:6–212:19.

In contrast, Contour's expert Dr. Hu explained that a single device—the WiFi/Bluetooth Device—simply needed to do both, and there was no requirement that a single protocol be used. *Id.* at 1317:15- 1318:6 ("Q. Can the same wireless connection protocol device support both Bluetooth and WiFi protocols under the asserted claims? A. Yes."); *see also*, Trial Tr. at 474:17-24 (identifying QCA9377 as "the wireless chip in those cameras acting as the wireless connection protocol device"). As Dr. Almeroth acknowledged, Dr. Hu explained how the QCA9377 was "the same chip and configured the same in some of the Group 1, though, among those 20 cameras that the Court has already found to include the wireless connection protocol device element in Claim 11" (Trial Tr. at 476:2-9), that it "supports both WiFi and Bluetooth in an intertwined way" (*id.* at 479:6-10), and that "[y]ou cannot just break them into two parts, as shown by the same block diagram that GoPro has relied upon their opening statement" (*id.* at 479:6-10).

### 4.    GoPro Emphasizes that Noninfringing Alternatives, like the Group 2 Products, Impact Damages

GoPro made explicit efforts to tie noninfringing alternatives, which according to GoPro included Group 2 Products, with damages. For example, GoPro's damages expert, Dr. Kennedy, told the jury the "difference in value [between a "non-infringing product … to an infringing product"] is how you drill down to find out what these patents are worth." *Id.* at 1239:3-6. Counsel for GoPro on examination with their technical expert also suggested to the jury that "the old products" impacts the damage analysis. For example, counsel specifically asked Dr. Almeroth "[a]re you offering any non-infringement opinions today regarding … the old products?" *Id.* at 1131:5-6.

1   Dr. Almeroth testified he was not. *Id.* at 1131:7-8. Counsel then immediately asked whether Dr.

2   Almeroth was "here for Dr. Ugone's testimony" and whether "[Dr. Ugone's] damages opinions are

3   based on one claim," to which Dr. Almeroth responded affirmatively for both. *Id.* at 1131:15-18.

4   Counsel's next question was "[h]as GoPro launched any additional cameras since September 2019,

5   **though**?" *Id.* at 1131:19-20. Dr. Almeroth responded affirmatively, testifying that the more recent

6   Live Preview Group 2 products "do not infringe for at least a couple of reasons," but he only

7   identified the use of both Wi-Fi and Bluetooth protocols. *Id.* at 1131:21-1132:3, 1142:10-1143:21.

8         **C.**     **Jury Instructions, Verdict Form, and Closing**

9        At the close of evidence, Contour moved for JMOL that the Group 2 Products infringe all

10   asserted claims because GoPro had disputed one element—the wireless protocol device—and that

11   defense was not a fact issue, but rather "an improper claim construction-type argument to argue a

12   non-infringement basis." *See id.* at 1384:13–24. Consistent with that, GoPro only disputed the

13   "wireless connection protocol … device" limitation in opposing JMOL. *Id.* at 1386:8–17. The Court

14   denied JMOL, but at Contour's request construed "wireless connection protocol device" to mean

15   "at least one wireless connection protocol device that can both (1) send real time image content by

16   wireless transmission directly to and (2) receive control signals or data signals by wireless

17   transmission directly from a personal portable computing device executing an application." Dkt.

18   853; Dkt. 859 at 15 (Instruction No. 14). Nothing in this construction required the wireless protocol

19   device to use the same protocol for sending real time image content and receiving control signals or

20   data signals, as GoPro had argued was required.

21        GoPro requested two changes to the tentative jury instructions (Dkt. 844). *First*, hours before

22   the charging conference, GoPro revised the parties' joint proposed jury instructions to allege that

23   the "HD Hero2 and WiFi BacPac" in June 2012 was GoPro's first reduction to practice, rather than

24   the alleged 2009 prototype as GoPro had told the jury at the start of the case. Trial Tr. at 1367:10–

25   17; Dkt. 851-1 at 26. That change ended up in the final instructions. Dkt. 859 at 26. Further, in

26   opposition to Contour's pre-verdict JMOL, GoPro only argued that there was evidence of

27   "conception and diligent reduction to practice of the WiFi BacPac and … the HD HERO2 by June

28   of 2012" (Trial Tr. at 1386:3–7), diverting from the HERO HD prototypes GoPro had claimed were

built in 2009. *Second*, GoPro specifically moved this Court to instruct the jury on the weight of non-infringing alternatives. *See* Dkt. 855. Contour opposed (Dkt. 857), but ultimately, the jury was instructed that the "availability of non-infringing alternatives" is a factor to consider in the reasonable royalty analysis, "regardless of whether the alternative was actually produced and sold during the infringement." Dkt. 859 at 35.

Additionally, at GoPro's request and over Contour's objection, the verdict form did not reflect the Court's finding that the Group 1 Products infringed claim 11 of the '954 Patent. *See* Hearing Tr. (Sept. 19, 2025) at 66:11-13 (Court discussing parties' competing positions); Dkt. 832-1 at 4 of 11 (Contour's filed proposed verdict form); Dkt. 832-2 at 4 of 12 (GoPro's filed proposed verdict form); Hearing Tr. (Sept. 24, 2025) at 6:20-23 (Court's decision); Dkt. 860 at 3 of 10 (issued verdict form); Dkt. 708 at 7-8 of 43 (summary judgment order). The jury was instead instructed that the Court previously "determined that the … Group 1 Products include each element of Claim 11 of the '954 Patent," and that "you will not be asked to make any further determination on that issue." Dkt. 859 at 19. Hence, there was no dispute that the Group 1 Products—including HERO2 with WiFi BacPac—included all elements of claim 11. The only disputes for the jury on infringement were (1) whether the Group 1 Products infringed claim 12 of the '954 patent and claim 6 of the '694 patent; (2) whether the Group 2 Products infringed claims 11–12 of the '954 patent and claim 6 of the '694 patent; and (3) whether the Live Streaming Products infringed claim 6 of the '694 patent. *See* Dkt. 865 at 3–5. Relatedly, since the jury was instructed that HERO2 with WiFi BacPac met all elements of claim 11 of the '954 Patent, the only question for anticipation of that claim was whether HERO2 with WiFi BacPac qualified as a prior invention.

Consistent with its requested instructions, in closing statements GoPro focused on the WiFi BacPac as invalidating prior art, arguing: "I'm not going to walk you through all the documents because I don't need to show you a document of what somebody was doing every day. You know from your own common sense that product development takes time; and to launch a product in 2012 and to have product specs in 2011 and to launch the HERO HD that would marry to that WiFi BacPac, that takes continuous work" (Trial Tr. 1549:20-1550:2), and that "[t]he WiFi BacPac launched later in 2012. Those things don't just magically appear. It takes a ton of engineering effort

…" *Id.* at 1552:12-14. Counsel also provided the jury earlier with an explicit instruction that merely launching a product somehow satisfies the reasonable efforts requirement. *Id.* at 1539:6-9 ("Were Mr. Woodman's efforts reasonable to get this product to market? We know it was reasonable because he actually brought it to market. That's all that's required."). All told, GoPro spent a significant amount of its closing argument discussing the HERO2 with WiFi BacPac, despite it not being the reference identified by GoPro for its prior invention theory at the start of trial.

In closing, GoPro also further intertwined its invalidity defenses to the amount of damages, arguing that the damages should be smaller than what Contour wants because of the state of the art. *Id.* at 1563:16-20. Included in GoPro's "state of the art" was the Wi-Fi BacPac—the alleged "prior art" that would later be the cause for the inconsistent verdicts. *See* Dkt. 859 at 25 (Final jury instruction for anticipation identifying the HERO2 with Wi-Fi BacPac as GoPro's requested prior art basis); *see also* DDX-12.93 (closing demonstratives); DDX-5.137 (Almeroth demonstratives).

### D.    The Jury's Confusion and Irreconcilable Verdict

#### 1.    The Jury Verdicts As To Liability Are Irreconcilably Conflicted

The jury received the case on Wednesday, October 8, 2025 at 1:23 pm and returned a verdict on Friday, October 10, 2025 at 1:19pm. Trial Tr. at 1581:6, 1605:23. Prior to returning its verdict, the jury had several questions expressing its confusion. For example, the jury's first question asked "[w]hich exhibit(s) shows Contour citing the Boland Patent as prior art?" Dkt 862 at 1 of 6. The jury had also asked "Does this mean the Woodman '251 patent is not to be considered as prior art?" *Id.* at 2 of 6. Additionally, the jury had asked to see specific copies of GoPro's additional prior art references under the "state of the art" guise. Dkt. 864 at 1 of 2 ("Can you provide printed copies of the [Kurosawa] (4208) and the Presler (4214) Patents, 2x Each.").

As soon as the Court read the verdict, the Court called a side bar. Trial Tr. at 1606:12–13. The exclusion of claim 11 from the verdict form had caused confusion:

> THE COURT: **There's an inconsistency in the verdict form**, and so I think I'm going to need to just clarify it. I think I know what they mean, **but they have determined that there is no infringement on any of the products** that invalidity has been shown with respect to Claim 12 and 6 and obviousness has been shown with respect to 12 and 6, that there's no willfulness, **but then they completed the damages portion**.

1    So I'm going to explain to them --

2    MR. KEVILLE: Wait. **But what about Claim 11?**

3    THE COURT: **So maybe that's the answer**.

4    Trial Tr. at 1606:12–25. It was the answer. Since the jury found independent claim 11 of the '954

5    patent valid (Dkt. 865 at 6 (Question 4)), and was instructed that the Court previously "determined

6    that the Live Preview Group 1 Products include each element of claim 11 of the '954 Patent" (Dkt.

7    859 at 19 (Instruction No. 17)), it proceeded to answer Question 6 (willful infringement) and

8    Question 7 (damages), both to be answered "only if you found at least one claim infringed and not

9    invalid." Dkt. 865 at 8–9. However, GoPro flagged another inconsistent issue as to claim 12:

10    MR. HAYNES: **Did they find Claim 12 invalid?**

11    THE COURT: Yes.

12    **Well, so I think we can have a post-trial motion if it's -- but I think this will be the verdict that I will read into the record**.

13
14    Trial Tr. at 1607:13–17; *see also* Trial Tr. at 1612:16–23. While those were quickly noticed in the

15    moment, more inconsistencies mounted upon further review.

16    **First**, as noticed on the day of the verdict, the jury found independent claim 11 of the '954

17    patent valid, but then also found its dependent claim 12 invalid. Dkt. 865 at 6 (Question 4).

18    Specifically, the jury found that "the prior invention of Nicholas Woodman at GoPro in the form of

19    the HD HERO2 and WiFi BacPac in June 2012" did not anticipate independent claim 11 of the '954

20    patent, but did anticipate dependent claim 12 of the '954 patent. Dkt. 859 at 25 (Instruction No. 23).

21    A dependent claim cannot be held invalid when the underlying independent is held valid. *Infra* III.A.

22    **Second**, the jury found independent claim 11 of the '954 patent valid as not obvious, yet, the

23    jury found dependent claim 12 of the '954 patent obvious.[1] Dkt. 865 at 7 (Question 5). As explained,

24    a dependent claim cannot be held invalid when the underlying independent is valid. As such, the

25    verdict form is inconsistent for this reason as well.

26

27    [1] GoPro contended two prior art combinations rendered the claims obvious: (1) Conception and
reduction to practice by or at the direction of Nicholas Woodman at GoPro in the form of the HD
HERO2 and WiFi BacPac; or (2) The combination of Boland and the Ambarella A5 or A5s Camera
28    Processors." Dkt. 859 (Instruction No. 25).

**Third**, in finding that the HERO2 with Wi-Fi BacPac anticipates claim 12 of the '954 patent, the jury necessarily found that the HERO2 with Wi-Fi BacPac **did meet** every limitation of claim 12 of the '954 patent. Dkt. 865 at 6 (Question 4); Dkt. 859 at 25 of 44 (Instruction No. 23). Yet, at the same time the jury found that the HERO2 with Wi-Fi BacPac did not infringe claim 12 of the '954 patent, meaning the jury necessarily found that HERO2 with Wi-Fi BacPac **did *not* meet** every limitation of claim 12 of the '954 patent. Dkt. 865 at 3 (Question 1). Both cannot be true.

**And fourth**, the jury also found that the HERO2 with Wi-Fi BacPac anticipates claim 6 of the '694 patent. Dkt. 865 at 6 (Question 4). Therefore, the jury necessarily found that the HERO2 with Wi-Fi BacPac **did meet** every limitation of claim 6 of the '694 patent. Yet (once again), the jury found that the HERO2 with Wi-Fi BacPac did not infringe claim 6 of the '694 patent, meaning the jury found that HERO2 with Wi-Fi BacPac **did *not* meet** every limitation of claim 6 of the '694 patent. Dkt. 865 at 3 (Question 1). Both cannot be true.

### 2.    Jury Verdict As To Damages Is Inconsistent with the Evidence

The damages verdict is also inconsistent and unsupported as to both parties' damages theories and both parties' damages evidence. The jury answered damages for GoPro's infringement of claim 11 for the Live Preview Group 1 Products, which the jury found to be valid. Yet, the award did not comport with either party's damages number. Neither party presented evidence that the parties at the hypothetical negotiation would agree to a lump sum payment of $8.2 million. Contour raised two separate reasonable royalty rates for this group, a rate of $3.60 per camera, which would result in $46,789,283 in damages, and a rate of $9.71 per camera which would result in $126,201,093 in damages. Trial Tr. at 796:3-17, 798:1-3 (Contour's damages expert); Trial Tr. at 1515:4-7 (Closing Statement); Dkt. 893-9 (Contour Closing Demonstrative). GoPro raised a single royalty rate of 26 cents per camera, which would result in $3,379,226 in damages. Trial Tr. at 1261:18-1262:5; 1270:20-23. GoPro introduced no evidence extrapolating how to arrive at a lump sum amount, and certainly not a lump sum amount that would arrive at $8,200,000.

## III.    LEGAL STANDARDS

### A.    Motions For New Trial

Federal Rule of Civil Procedure 59 requires a new trial if "the verdict is contrary to the clear

weight of the evidence, or is based upon evidence which is false, or to prevent, in the sound discretion of the trial court, a miscarriage of justice." *Wordtech Sys., Inc. v. Integrated Networks Solutions, Inc.*, 609 F.3d 1308, 1313 (Fed. Cir. 2010) (quoting *United States v. 4.0 Acres of Land*, 175 F.3d 1133, 1139 (9th Cir. 1999)). "The judge can weigh the evidence and assess the credibility of witnesses, and need not view the evidence from the perspective most favorable to the prevailing party." *Landes Const. Co. v. Royal Bank of Canada*, 833 F.2d 1365, 1371 (9th Cir. 1987). The Court has "the duty … to weigh the evidence as [the court] saw it, and to set aside the verdict of the jury, even though supported by substantial evidence, where, in [the court's] conscientious opinion, the verdict is contrary to the clear weight of the evidence." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (internal quotations omitted).

On a motion for new trial, the standard for evaluating sufficiency of the evidence "is less stringent" than a Rule 50(b) Motion. *Helena v. City of San Francisco*, No. C04-0260 CW, 2006 WL 1140953, at *4 (N.D. Cal. May 1, 2006). Thus, even when the verdict is supported by substantial evidence, the Court should grant a new trial if the jury's damages award is "clearly not supported by the evidence, or based only on speculation or guesswork." *Del Monte Dunes at Monterey, Ltd. v. City of Monterey*, 95 F.3d 1422, 1435 (9th Cir. 1996).

For inconsistent verdicts, the Ninth Circuit accepts inconsistencies in verdicts "unless one legal conclusion is the prerequisite for another." *Impinj, Inc. v. NXP USA, Inc.*, 2023 WL 10352284, at *4 (N.D. Cal. Sept. 28, 2023). There, where the invalidity and validity findings between dependent and independent claims "[b]oth cannot be true," and the district court ordered a new trial. *Id.* at *5. A verdict holding a dependent claim invalid with the independent claim valid is not consistent with itself. *Impinj*, 2023 WL 10352284, at *4-5, 7 (vacating jury verdict that found independent claim valid and dependent claims invalid, and granting new trial on obviousness); *Duhn Oil Tool, Inc. v. Cooper Cameron Corp.*, 2012 WL 13040409, at *13 (E.D. Cal. May 7, 2012) (noting a "jury's findings on obviousness are inconsistent" where an independent claim is found as nonobvious but its dependent claim is found as obvious); *see also Comaper Corp. v. Antec, Inc.*, 596 F.3d 1343, 1354–55 (Fed. Cir. 2010); *Callaway Golf Co. v. Acushnet Co.,* 576 F.3d 1331, 1344 (Fed. Cir. 2009); *ABS Glob., Inc. v. Inguran, LLC*, 914 F.3d 1054, 1076 (7th Cir. 2019).

**B.    Judgment as a Matter of Law**

The Court should enter judgment as a matter of law following a jury trial where "the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." *Bridge Aina Le'a, LLC v. Land Use Comm'n*, 950 F.3d 610, 624 (9th Cir. 2020); *InTouch Techs., Inc. v. VGO Commc'ns, Inc*., 751 F.3d 1327, 1338 (Fed. Cir. 2014) (quoting *White v. Ford Motor Co*., 312 F.3d 998, 1010 (9th Cir. 2002). "In other words, to set aside the verdict, there must be an absence of substantial evidence— meaning relevant evidence that a reasonable mind would accept as adequate to support a conclusion—to support the jury's verdict." *Emblaze Ltd. v. Apple Inc*., No. 5:11-cv-01079-PSG, 2015 WL 396010, at *3 (N.D. Cal. Jan. 29, 2015) (citing *Callicrate v. Wadsworth Mfg*., 427 F.3d 1361, 1366 (Fed. Cir. 2005) (internal quotation marks omitted)).

**IV.    ARGUMENT**

**A.    New Trial Is Necessary on All Verdict Issues**

**1.    The Jury Findings on Validity of Claims 11 and 12 Cannot Be Reconciled and Require a New Trial**

As the parties and the Court discussed after the verdict was returned, the jury's finding that claim 12 of the '954 patent is invalid, cannot be reconciled with the jury's validity finding for claim 11 and the jury's decision to award damages. Trial Tr. at 1606:15-1607:17; *see also id*. at 1612:16-23. The Court expressed that this discrete issue could be addressed in post-trial briefing (*id.*), but Ninth Circuit law is clear that a new trial is the only remedy now.

"A claim in dependent form shall be construed to incorporate by reference all the limitations of the claim to which it refers." 35 U.S.C. § 112(d). Hence, "dependent claims are nonobvious if the independent claims from which they depend are nonobvious." *Ortho-McNeil Pharm., Inc. v. Mylan Lab'ys, Inc*., 520 F.3d 1358, 1365 (Fed. Cir. 2008). As a result, there can be no dispute that the jury's verdict finding independent claim 11 of the '954 patent **valid**, while also finding dependent claim 12 **invalid**, is an inconsistent verdict. *See, e.g.*, *Duhn Oil Tool*, 818 F. Supp. 2d at 1203, 1220 (where jury found independent claim valid, but dependent claims invalid, explaining: "The jury's inconsistent findings on obviousness present precisely the type of situation contemplated in [9th

1   Circuit precedent] in which one legal conclusion is the prerequisite for another."); *see also Comaper*,

2   596 F.3d at 1354–55; *Callaway Golf*, 576 F.3d at 1344.

3       Pursuant to Rule 49, there are only two remedies when special verdict questions like those

4   here are inconsistent: "[1] the court must direct the jury to further consider its answers and verdict,

5   or [2] must order a new trial." Fed. R. Civ. P. 49(b)(4). Here, the inconsistent verdict was not sent

6   back to the jury, so the only option under Ninth Circuit law[2] is a new trial to resolve the

7   inconsistencies. *See Duhn Oil Tool*, 818 F. Supp. 2d at 1221, *on reconsideration in part*, 2012 WL

8   13040409 (E.D. Cal. May 7, 2012). at

9       ## 2.    The Scope of the New Trial Should Be All Verdict Issues Because the
        Remainder of the Verdict Form Is Similarly Inconsistent

10      As discussed, there must be a new trial due to the fatal inconsistency in the jury's validity

11  findings, so the only question is the scope of the new trial. While the plain inconsistency between

12  the validity finding for claim 11 and invalidity finding for claim 12 was quickly recognized, it was

13  only the tip of the iceberg. The jury's findings, in particular around GoPro's late-stage-pivot Wi-Fi

14  BacPac defense, go beyond that one issue, mandating a new trial on not only the validity of all

15  asserted claims but also on infringement of those claims as well, and as a result, damages.

16      ***Inconsistent findings on whether HERO2 with Wi-Fi BacPac is Anticipatory Prior Art.***

17  The jury was instructed that the Group 1 Products already met all elements of claim 11 of the '954

18  patent. Dkt. 859 at 19 (Instruction No. 17). The only question for the jury to resolve on validity of

19  claim 11 was whether the HERO2 with Wi-Fi BacPac was anticipatory prior art under 102(g).[3] Dkt.

20  859 at 25 (Instruction No. 23). The undifferentiated Group 1 Products included the HERO2 with

21  Wi-Fi BacPac. Dkt. 865 at 3 n.1. By finding claim 11 of the '954 patent valid despite the Court's

22  instruction that HERO2 with Wi-Fi BacPac met all elements of that same claim, the jury necessarily

23  found the HERO2 with Wi-Fi BacPac was ***not*** a prior invention. Yet, despite necessarily finding

24  that the HERO2 with Wi-Fi BacPac was not a prior invention and thus could not anticipate claim

25  11 of the '954 patent, the jury then found that claim 12 of the '954 patent (which depends on claim

26

27  [2] The Federal Circuit applies regional circuit law to the issue of an inconsistent verdict. *Mycogen Plant Sci. v. Monsanto Co.*, 243 F.3d 1316, 1325 (Fed. Cir. 2001).

28  [3] As discussed later, this defense fails as a matter of law and can be resolved before the new trial.

11) and claim 6 of the '694 patent (with the same priority date as claim 11 of the '954 patent) were anticipated by the HERO2 with Wi-Fi BacPac. That result cannot stand.

*Inconsistent findings on obviousness.* The jury's verdict was also inconsistent with its obviousness finding as to claim 12 of the '954 patent. Regardless of whether the jury rendered its obviousness decision based upon HERO2 with Wi-Fi BacPac (erroneous for the above reasons) or Boland plus Ambarella, a dependent claim cannot be invalid when the underlying independent claim has been held valid. *Supra* IV.A.1. The jury's verdict was inconsistent as to Question 5.

*Inconsistent findings on whether HERO2 with Wi-Fi BacPac meets all limitations of Claim 12 of the '954 Patent.* The jury's verdict was also inconsistent as to what elements are present in HERO2 with Wi-Fi BacPac for another reason. By finding that HERO2 with Wi-Fi BacPac anticipated claim 12 in Question 4, the jury necessarily found all elements of the claim were present. Yet not only did the jury find that claim 11 was not anticipated by the HERO2 with Wi-Fi BacPac, the jury also returned a verdict of noninfringement as to claim 12 in Question 1 for Group 1 Products that included in the undifferentiated set of accused products the HERO2 with Wi-Fi BacPac, necessarily finding all elements were ***not*** present—a quintessential inconsistency because "it is axiomatic that that which would literally infringe if later anticipates if earlier." *Bristol-Myers Squibb Co. v. Ben Venue Lab'ys, Inc.*, 246 F.3d 1368, 1378 (Fed. Cir. 2001) (citations omitted); *see also* 7 Annotated Patent Digest (Matthews) § 43:33 ("[I]f the jury found that an accused product did not literally infringe the claims, but also found that the product anticipated the claims, those verdicts would be inconsistent.").

*Inconsistent findings on whether HERO 2 with Wi-Fi BacPac meets all limitations of Claim 6 of the '694 Patent.* The jury's verdict was similarly inconsistent for claim 6 of the '694 patent. On that claim, the jury again found all elements met by HERO2 with Wi-Fi BacPac in Question 4. Yet it also found that Group 1 Products, including HERO2 with Wi-Fi BacPac, did not infringe Claim 6 in Question 1. This is yet another result that cannot be reconciled.

*A New Trial on All Verdict Questions Is Necessary.* While Rule 59 allows a court to "grant a new trial on ***all*** or ***some*** of the issues" (Fed. R. Civ. P. 59(a)(1)), a new trial is required on all issues here because of the fatal inconsistencies in the verdict discussed above.

*First*, there is no question that liability issues (i.e., infringement and validity) must be retried. For example, a new trial on only the validity of claims 11 and 12 of the '954 patent would not cure the inconsistencies for claim 6 of the '694 patent. If a new jury found claim 11 and 12 valid, then the anticipation verdict for claim 6 could not stand, given the substantial overlap between the claims and shared priority date. The same is true of the obviousness verdict that was likely based on Hero 2 with Wi-Fi BacPac given the anticipation finding. The only remedy to ensure a consistent result is to retry all infringement and validity issues on the verdict form.

*Second*, issues of willfulness and damages must also be retried. Indeed, as the Supreme Court explained long ago, "[w]here the practice permits a partial new trial, it may not properly be resorted to unless it clearly appears that the issue to be retried is so distinct and separable from the others that a trial of it alone may be had without injustice." *Gasoline Prods. Co. v. Champlin Ref. Co.*, 283 U.S. 494, 500–01 (1931) (collecting cases). For example, in *Gasoline Products*, the jury found for Champlin on its counterclaim for breach of contract and awarded damages, but the district court granted a new trial on damages. *Id.* On appeal, the Supreme Court agreed that a new trial on all issues related to that counterclaim was necessary, explaining: "[T]he question of damages on the counterclaim is so interwoven with that of liability that the former cannot be submitted to the jury independently of the latter without confusion and uncertainty, which would amount to a denial of a fair trial … There should be a new trial of all the issues raised by the counterclaim." *Id.* at 500–01.

Likewise, here, the questions of infringement and validity are so interwoven with questions of willfulness and damages, that both must be retried together. For example, on willfulness, the jury was instructed to consider "whether GoPro had a reasonable belief that at the time of infringement that its products ***did not infringe*** the asserted patent or that the patent was ***invalid***." Dkt. 859 at 22 (Instruction No. 20). In closing, GoPro's counsel relied on GoPro's alleged prior invention when arguing: "One of the factors you have to look at is: Did GoPro have a reasonable belief that the patents were invalid? … Of course, they did. You're probably wondering why Contour is suing [GoPro] ***for something that [GoPro] invented*** and claiming credit for Ambarella's camera processor. That's reasonable." Trial Tr. at 1562:3–19.

As to damages, the jury was instructed that one factor to consider is "[t]he extent to which

GoPro has made use of the invention; and any evidence probative of the value of that use." Dkt. 859 at 34 (Instruction 28). In closing, GoPro's counsel (again) relied on GoPro's alleged prior invention when arguing: "The patents are invalid. No damages. No liability. Zero payment. And that makes sense because GoPro should not pay Contour **for something they did not invent** any amount of money." Trial Tr. at 1562:20–25. Further, GoPro's counsel argued: "What you have to value in this case is: What did they add to the prior art **over what was already there**? **What's new and what's the value of that**?" *Id*. at 1536:9–15. Hence, as these examples from the jury instructions and GoPro's arguments demonstrate, the questions of infringement and liability are so interwoven with damages and willfulness that all issues must be retried together in a new trial.

**B.**    **A New Trial Is Necessary on Damages for Additional, Independent Reasons**

**1.**    **A New Trial On Damages Is Necessary Not Only On Group 2 Products But Group 1 Products As Well**

The jury's verdict that Group 2 Products do not infringe claim 11 of the '954 patent cannot stand. GoPro only had one noninfringement defense for those products, and the Court's claim construction during trial nullified it. There is no dispute that the WiFi/Bluetooth Device in the Group 2 Products is a wireless protocol device, nor that it sends image data and receives control signals. Thus, as discussed below, JMOL, or at least a new trial, is required. Doing either requires a new damages trial on the uncompensated Group 2 Products. However, the impact does not end there. Throughout the trial, GoPro cast the "new" Group 2 Products as a non-infringing alternative to the "older" Group 1 Products. *Supra* II.B.1, 4. GoPro repeatedly emphasized that only its "old" Group 1 Products were found to meet every limitation of claim 11 of the '954 patent in contrast to its "new" Group 2 Products. *Id*. Based on these arguments and the jury's unsupported non-infringement finding, the jury may have determined a perceived "value" of that patented technology implicitly argued by GoPro to be "old." Indeed, GoPro's characterizations of "old" versus "new" products likely impacted the jury's analysis of multiple *Georgia-Pacific* factors that the jury was instructed on, such as "[t]he **value** that the claimed invention contributes to the Accused Products," and "[t]he **value** that factors other than the claimed invention contribute to the Accused Products." Dkt. 859 at 32 (Instruction No. 27); *id*. at 34–35 (Instruction No. 28 listing *Georgia-Pacific* factors). Likewise,

the jury's analysis of apportionment was likely affected by GoPro's "new" versus "old" arguments, as the jury was instructed:

> The ultimate combination of royalty base and royalty rate must reflect **the value attributable to the infringing features of the product**, and no more. When the accused infringing products have both patented and unpatented features, measuring this value requires you to identify and award only **the value of the patented features**. The process of separating **the value of patented features** from **the value of all other features** is called apportionment.

*Id*. at 33. Because a grant of JMOL or new trial on infringement for Group 2 Products eviscerates the distinction GoPro made between the "old" v. "new" GoPro products, a new damages trial on Group 1 Products is also required.

### 2.   Whatever Is Retried, A New Damages Trial Is Necessary

Damages must be retried for additional independent reasons. *First*, the jury's verdict is unsupported by the evidence presented at trial, and can only be based on speculation or guess work. This is impermissible and as such requires vacating the damages award. *See Wordtech Sys.*, 609 F.3d at 1322 ("Because the [damages] verdict was 'clearly not supported by the evidence' and 'based only on speculation or guesswork' … , we reverse the denial of [the] Rule 59(a) motion and remand for a new trial on damages."); *In re First All. Mortg. Co.*, 471 F.3d 977, 1003 (9th Cir. 2006) (vacating damages that were based on improper averaging of the two damages numbers presented); *In re: NFL "Sunday Ticket" Antitrust Litig.*, 2024 WL 3628118, at *11 (C.D. Cal. Aug. 1, 2024) (vacating damages because they were akin to "guesswork or speculation").

Both parties relied upon royalty rates and a stipulated number of sales. *See, e.g.*, Trial Tr. at 796:3–19 (Ugone opining that a rate should be $3.60 to $9.71 per camera); *id*. at 1270:20–23 (Kennedy opining that a rate should be $0.26 per camera); JTX-0014 (stipulated sales). At each rate, the result amounted to a specific number in the millions to the dollar. *See supra* II.D.2. Yet, the jury inexplicably awarded a lump sum of "$8,200,000.00." Neither party presented testimony or evidence that at the hypothetical negotiation the parties would have ever agreed to a lump sum amount in negotiation a reasonable royalty. GoPro also did not present any basis for extrapolating from Dr. Kennedy's calculated royalty rate of $0.26 per camera from the MPV agreement to arrive

1   at any form of a lump sum payment, much less to the $8,200,000 determined by the jury. Indeed,

2   the jury was only instructed on determining a "ongoing royalty" using a royalty base and royalty

3   rate, where the rate is the form of "a percentage royalty" *or* "a fixed number of dollars per unit sold."

4   Dkt. 859 at 32 (Instruction No. 27). The jury was never instructed on a lump sum royalty. *See id*. at

5   32–38. Given that the jury awarded a lump sum payment that neither party advocated for, the basis

6   for that award remains unknown. Without any supporting evidence, the jury must have

7   impermissibly guessed a number, and as such, a new trial on damages should be granted.

8        *Second*, a grant of JMOL or a new trial for infringement and validity for claim 6 of the '694

9   patent would require a new damages trial. The jury was instructed that one factor to consider is

10  "[t]he extent to which GoPro has made use of the invention; and any evidence probative of the value

11  of that use." Dkt. 859 at 34 (Instruction No. 28). Hence, the jury's consideration of damages was

12  likely impacted by not only the "old" vs. "new" distinction, but also the number of claims/patents

13  the jury found infringed and invalid. That is especially true because GoPro repeatedly conflated its

14  "state of the art," "prior art," and alleged noninfringing alternative with damages. *See Warsaw*

15  *Orthopedic, Inc. v. NuVasive, Inc.*, 778 F.3d 1365, 1377 (Fed. Cir. 2015) (remanding for new trial

16  on damages, "Although the jury verdict did state a reasonable royalty rate, it is not entirely clear …

17  whether the jury impermissibly relied on evidence not probative of the value of the patented

18  technology."), *vacated on other grounds*, 136 S. Ct. 893 (2016), *reinstated in relevant part*, 824

19  F.3d 1344, 1346 (Fed. Cir. 2016).

20      **C.    Whatever The Scope Of A New Trial, JMOL Should Be Granted On Discrete
              Issues Which Will Narrow The New Trial**

21

22      **1.    Contour Is Entitled To JMOL of Infringement for the Group 1
              Products – '954 claim 12 and '694 claim 6**

23      Prior to trial, the Court granted summary judgment that the Group 1 Products infringe claim

24  11 of the '954 patent. *Supra* § II.A. At trial, Contour showed that the Group 1 Products additionally

25  infringe claim 12 of the '954 patent (which depends on claim 11) and claim 6 of the '694 patent.

26  *See, e.g.*, Trial Tr. at 454:4–464:7 (Hu). In rebuttal, GoPro did not dispute that the Group 1 Products

27  infringed these claims. *See, e.g.*, Trial Tr. at 1079:3–20, 1130:13–1131:14 (Almeroth). In fact,

28  GoPro's technical expert, Dr. Almeroth, admitted he was "not offering any non-infringement

opinions for the Live Preview Group 1 products." *Id.* at 1131:5–14. Contour therefore moved for JMOL that the Group 1 Products infringe claim 12 of the '954 patent and claim 6 of the '694 patent. *Id.* at 1381:24–1382:5. In response, GoPro asserted the jury "could find for non-infringement of the remaining claims of the Group 1 products based on failure of proof" but did not identify any contrary evidence or [4] *Id.* at 1385:19–24.

On this record—where GoPro failed to rebut Contour's evidence of infringement and GoPro's own expert ***did not dispute*** that the Group 1 Products infringed claim 12 of the '954 patent and claim 6 of the '694 patent—Contour is entitled to JMOL of infringement. Indeed, "[i]n the Ninth Circuit, JMOL 'is proper when the evidence permits only one reasonable conclusion and the conclusion is contrary to that of the jury.'" *Apple Inc. v. Samsung Elecs. Co.*, 839 F.3d 1034, 1040 (Fed. Cir. 2016) (quoting *Monroe v. City of Phoenix*, 248 F.3d 851, 861 (9th Cir. 2001)). Hence, courts commonly grant JMOLs of infringement where, as here, the patentee proved infringement by a preponderance of the evidence and the accused infringer submitted no rebuttal evidence. *See, e.g.*, *Mondis Tech., Ltd. v. LG Elecs., Inc.*, No. 2:07-CV-565, 2011 WL 3847603, at *6 (E.D. Tex. Aug. 29, 2011) (granting JMOL of infringement where patentee "proved by a preponderance of the evidence that all the asserted claims were infringed" and accused infringer "provided no evidence to rebut [patentee's] evidence"); *Power Integrations, Inc. v. Fairchild Semiconductor Int'l Inc.*, 935 F. Supp. 2d 747, 756 (D. Del. 2013), *aff'd in part, vacated in part, rev'd in part*, 843 F.3d 1315 (Fed. Cir. 2016) (granting JMOL of infringement where accused infringer "admitted that it did 'not present evidence of a defense with regard to direct infringement'" such that "no reasonable jury could have returned a verdict on this issue in [its] favor"). Accordingly, the Court should grant JMOL that the Group 1 Products infringe claim 12 of the '954 patent and claim 6 of the '694 patent.

### 2.    Contour Is Entitled To JMOL or Alternatively a New Trial, On Infringement for Group 2 Products - '954 claims 11–12, '694 claim 6

The Court should grant judgment as a matter of law that the Group 2 Products infringe claims

---

[4] Even when GoPro filed its offer of proof on non-infringement, it did so to preserve its claim construction arguments, not to provide evidentiary support other than to broadly cite to "Trial Testimony From Pablo Lema & Dicky Liu" to counter Contour's evidence that the Group 1 Products infringe claim 12 of the '954 patent and claim 6 of the '694 patent under this Court's claim construction. Dkt. 846 at 4.

11 and 12 of the '954 Patent [and claim 6 of the '694 Patent] because there was no dispute that all elements were met. Contour proved that the Group 2 Products met all elements of claims 11–12 of the '954 patent and claim 6 of the '694 patent. *See, e.g.*, Trial Tr. at 464:9–499:5 (Hu). GoPro's only challenge was that the "wireless connection protocol device" limitation was not met because GoPro used two different protocols. *See, e.g.*, *id.* at 1139:6–1146:11 (Almeroth). That limitation requires "a wireless connection protocol device configured to [1] send … image content by wireless transmission directly to and [2] receive control signals or data signals by wireless transmission directly from a personal portable computing device." According to GoPro's expert Dr. Almeroth, the Group 2 Products "have ***one protocol for Bluetooth*** for the commands and ***one protocol device for WiFi***," meaning that a single protocol was not used for both functionalities. *Id.* at 1143:11–15. GoPro's noninfringement defense fails as a matter of law.

Recognizing a dispute over the scope of the claim, the Court construed "wireless connection protocol device" to mean "at least one wireless connection protocol device that can both (1) send real time image content by wireless transmission directly to and (2) receive control signals or data signals by wireless transmission directly from a personal portable computing device executing an application." Dkt. 853; Dkt. 859 at 15 (Instruction No. 14). Nothing in this construction required the wireless protocol device to use the *same protocol* for both functionalities, only that at least one "device" do both. Because that was GoPro's only defense, judgment should be granted as a matter of law. *See, e.g.*, *SunTiger, Inc. v. Sci. Rsch. Funding Grp.*, 194 F.3d 1335, 1999 WL 379140, at *2 (Fed. Cir. 1999) (affirming JMOL of infringement where accused infringer "d[id] not argue that the court erred in construing the claims" and where patentee "provided considerable evidence that the claims read on the accused sunglasses, including the unrebutted testimony and report of its expert.").

Moreover, no reasonable jury could have found that the Group 2 Products did not include the "wireless connection protocol device" in the claims based on the evidence presented. There is no dispute that the Wi-Fi/Bluetooth Device is a wireless protocol device. Indeed, the Court found as much when granting summary judgment of infringement for the Group 1 Products that used the same Wi-Fi/Bluetooth Device. *See* Dkt. 721 at 8-12 (HERO7 Black, HERO9 Black, and MAX), 12-14 (HERO7 Silver and HERO7 White); *supra* II.B.3 (QCA9377 used in Group 1 and 2 Products).

Likewise, the Court found that the Wi-Fi/Bluetooth Device was configured to both send image data and receive control signals when it granted summary judgment, and the jury was instructed the same (Dkt. 859, Instruction 17). GoPro's only argument was that the *firmware* for which *protocol* (Wi-Fi/Bluetooth) was used when sending data and receiving signals had changed (Trial Tr. 1142:4-9), but it never argued that the Wi-Fi/Bluetooth Device itself was physically changed, such as into one Wi-Fi *Device* and a separate Bluetooth *Device*. Nor could it as the Wi-Fi/Bluetooth Device was the same chip found in the infringing Group 1 Products. GoPro claimed that this firmware change affected how the chip was "configured" (*id.* at 1140:16-17), but that argument was immaterial to infringement. Specifically, there was no dispute that the Wi-Fi/Bluetooth Device was configured to *wirelessly* send image data and *wirelessly* receive control signals. Rather, GoPro's argument focused on what protocol was used for each of those functions. But the Wi-Fi/Bluetooth Device was still indisputably configured to do both functions.[5] GoPro's "single protocol" argument is therefore irrelevant. Accordingly, the Court should grant JMOL that the Group 2 Products infringe. *See LG Elecs. U.S.A., Inc. v. Whirlpool Corp.*, 798 F. Supp. 2d 541, 555 (D. Del. 2011) (granting JMOL of infringement where accused infringer's only non-infringement argument was "irrelevant" to the claim limitations as construed).

Given the above, JMOL is proper. In the alternative, however, there should at least be a new trial on infringement of the Group 2 Products because the noninfringement finding was contrary to the clear weight of the *evidence* presented. *Wordtech*, 609 F.3d at 1313.

### 3. Contour Is Entitled To JMOL That The Alleged "Woodman Prior Invention" Is Not Prior Art.

Contour moved for Rule 50(a) JMOL "on GoPro's 102(g) defense that Nick Woodman is the prior inventor." Trial Tr. at 1382:21–1384:12. he Court should grant JMOL for three reasons.

*First*, Mr. Woodman agreed that he was "***not*** claiming to be the inventor of what's in Contour's patents" and that "the Woodman invention … is ***not*** the same as the Contour invention."

---

[5] If, for example, GoPro's firmware update had *removed* one of those functionalities from the Wi-Fi/Bluetooth Device, then the configuration may have been materially impacted. But GoPro left both functions on the Wi-Fi/Bluetooth Device.

1  *Supra* II.B.2; Trial Tr. at 594:7–17; *id*. at 551:19–552:6 (similar). As such, even if it qualified as

2  prior art under § 102(g), no reasonable jury could have found that Mr. Woodman's alleged "prior

3  invention" anticipated the asserted claims. "[T]o succeed on its anticipation defense, [GoPro] was

4  required to prove by clear and convincing evidence that every limitation of [Contour's] asserted

5  claims was contained, either expressly or inherently, in a single prior art reference." *Union Carbide*

6  *Chemicals & Plastics Tech. Corp. v. Shell Oil Co.*, 308 F.3d 1167, 1188 (Fed. Cir. 2002). For

7  example, in *Union Carbide*, the Federal Circuit affirmed JMOL that the asserted patents were not

8  anticipated under § 102(g) where the alleged prior inventor testified that "she did not know whether

9  her catalysts contained cesium salts" as recited in the claims, and thus the accused infringer "failed

10  to prove that [alleged prior inventor] 'actually prepared the composition' claimed in [patentee's]

11  patents …. as a matter of law." *Id*. at 1189–90. So here too given Mr. Woodman's testimony above.

12      *Second*, no reasonable jury could find that Mr. Woodman's alleged prior invention was

13  "reduced to practice" before Contour's conception date, i.e., by December 2009, or at the latest by

14  September 13, 2010 when Contour's provisional application was filed. *See, e.g.*, Trial Tr. at 445:24–

15  446:11 (Hu). "[T]o establish an actual reduction to practice, [GoPro] must establish three things:

16  '(1) construction of an embodiment or performance of a process that met all the limitations of the

17  [claims]; (2) determination that the invention would work for its intended purpose; and (3) **the**

18  **existence of sufficient evidence to corroborate inventor testimony regarding these events**.'"

19  *Medichem, S.A. v. Rolabo, S.L.*, 437 F.3d 1157, 1169 (Fed. Cir. 2006). GoPro did not meet this

20  standard. Indeed, GoPro's original argument that Mr. Woodman's "prior invention" was first

21  reduced to practice by around September 2009 in the form of the "HERO HD prototype" fell apart

22  mid-trial. *Supra* II.B.2. While GoPro pivoted to arguing that Mr. Woodman's "prior invention" was

23  first reduced to practice in the form of the HERO2 with WiFi BacPac by June 2012 (*supra* II.B.2),

24  it presented no corroborating evidence. Thus, no reasonable jury could have found that Mr.

25  Woodman reduced a prototype to practice that met the elements of the claims by August or

26  September 2009, or at any time before Contour's patent filing in September 2010.

27      *Third*, GoPro's belated attempt to rely on the HERO2 with WiFi BacPac cannot defeat

28  JMOL because no reasonable jury could have found that Mr. Woodman was diligent in reducing it

to practice by June 2012. Indeed, GoPro's evidence revealed an ***over one year period*** of inactivity from September 2009 (when the WiFi BacPac was first mentioned) to January 5, 2011 (when GoPro sought to "covertly" obtain Contour's cameras after learning of Contour's first patented camera, and four months after Contour's provisional patent filing). *Supra* II.B.2; Trial Tr. at 1432:12–21. As the Federal Circuit explained, "[m]erely asserting diligence is not enough; a party must 'account for the entire period during which diligence is required.'" *Creative Compounds, LLC v. Starmark Labs.*, 651 F.3d 1303, 1312–13 (Fed. Cir. 2011); 35 U.S.C. § 102(g). Here, Contour proved that it conceived of the claimed invention by December 2009, or by September 13, 2010 when Contour's provisional application was filed. *See, e.g.*, Trial Tr. at 445:24–446:11 (Hu). However, using either conception date, GoPro cannot show that it exercised reasonable diligence in reducing the HERO2 with WiFi BacPac to practice by June 2012.

Indeed, "[i]t has been held that a party has not exercised reasonable diligence in reducing the invention to practice where there is unexplained inactivity prior to the opponent's entry into the field, **for periods as abbreviated as *one to two months* in duration**." *Fitzgerald v. Arbib*, 268 F.2d 763, 766 (C.C.P.A. 1959) (inactivity for "nearly a month" showed a "lack of diligence"); *see also Griffith v. Kanamaru*, 816 F.2d 624, 627 (Fed. Cir. 1987) (three-month period of inactivity precluded "reasonable diligence"); *In re Meyer Mfg. Corp.*, 411 F. App'x 316, 319–20 (Fed. Cir. 2010) ("an unexplained gap of just over two months" showed no diligence); *Gould v. Schawlow*, 363 F.2d 908, 919 (C.C.P.A. 1966) ("a lapse of nearly two months" defeated diligence); *Application of Nelson*, 420 F.2d 1079, 1081 (C.C.P.A. 1970) (an unexplained gap "during the two-month period" supported no diligence); *Morway v. Bondi*, 203 F.2d 742, 749 (C.C.P.A. 1953) (two separate "hiatus[es] of one and one-half months" did not constitute "reasonable diligence"). Because GoPro identified no evidence of activity during this prolonged period, GoPro could not have established a prior invention under § 102(g) as a matter of law.

For the reasons above, Contour is entitled to JMOL on GoPro's § 102(g) defense.

**D.    The Only Other Possibility Would Be To Enter Judgment For $8.2 Million And Award Post-Trial Relief**

There can be no dispute that the jury intended to find that claim 11 was not anticipated

---

1   (Question 4) and not obvious (Question 5), and to award $8.2 million in damages for GoPro's

2   infringing Group 1 Products, both given the verdict form itself (Dkt. 865 at 6–7, 9) and given that

3   the jury answered Question 6 (willfulness) and Question 7 (damages), both of which instructed:

4   "Answer … only if you find at least one claim infringed and not invalid." *See* Dkt. 865 at 8–9.

5   Hence, to the extent the Court disregards the myriad of inconsistencies in this verdict and does not

6   grant a new trial, the only possible outcome is to enter judgment that claim 11 of the '954 patent is

7   infringed by the Group 1 Products, that claim 11 of the '954 patent is not invalid, and that Contour

8   recovers $8.2 million for the infringement. Any other result would be to completely disregard the

9   jury's intentional decision to find that claim 11 of the '954 patent is valid and to award Contour

10  damages for GoPro's infringement of claim 11.

11          If the Court enters judgment on the $8.2 million verdict, the Court should also award Contour

12  prejudgment interest, post-judgment interest, and costs, as follows:

13  - "[P]rejudgment interest should be awarded … absent some justification for withholding [it]." *Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 657 (1983). While the rate and whether it should be compounded are left to the court's discretion, this Court has awarded interest at the prime rate, compounded quarterly, as it best compensates a patentee. *See, e.g., Fujifilm Corporation v. Motorola Mobility Holdings, Inc.*, No. 3-12-cv-03587, Dkt. No. 383 at 37-38. Here, pre-judgment interest will be **$6,431,270** as of March 11, 2026 (the hearing on post-trial motions), plus **$2,694.82/day** until final judgment is entered. Exhibit A, Ugone Decl. at Ex. 1B.

18  - Post-judgment interest "shall be allowed on any money judgment" as specified in 28 U.S.C. §§ 1961(a)-(b), and accrues on the total prejudgment damages, including interest. *WCM Indus., Inc. v. IPS Corp.*, 809 F. App'x 957, 960–61 (Fed. Cir. 2020); *Church & Dwight Co. v. Abbott Lab'ys*, 2009 WL 2230941, at *13 (D.N.J. July 23, 2009). If final *judgment* is entered March 11, 2026, post-judgment interest will be **$1,411.02** /day. Exhibit A, Ugone Decl. at Ex. 2B.

22  - Finally, Rule 54(d)(1) provides "costs—other than attorney's fees—should be allowed." Contour will submit a bill of costs within 14 days after final judgment, as required by LR 54-1.

## V.    CONCLUSION

25          For the reasons explained above, the Court should grant Contour's motion for a new trial on

26  all issues that are not otherwise disposed of via JMOLs.

1

2

Dated: December 17, 2025    /s/ John R. Keville

3          Lai L. Yip (SBN 258029)
           *lyip@sheppardmullin.com*
4          SHEPPARD, MULLIN, RICHTER & HAMPTON, LLP
           Four Embarcadero Center Seventeenth Floor
5          San Francisco, CA 94111
           Telephone: (415) 434-9100
6          Facsimile: (415) 875-6700

7

8          John R. Keville *(Pro Hac Vice)*
           *jkeville@sheppardmullin.com*
9          Michelle C. Replogle (*Pro Hac Vice*)
           *mreplogle@sheppardmullin.com*
10         Michael C. Krill *(Pro Hac Vice)*
           *mkrill@sheppardmullin.com*
11         Sunny Akarapu (*Pro Hac Vice*)
           *sakarapu@sheppardmullin.com*
12         SHEPPARD, MULLIN, RICHTER & HAMPTON, LLP
           845 Texas Avenue, 25th Floor
13         Houston, Texas 77002
           Telephone: (713) 431-7100
14         Facsimile: (713) 431-7024

15         Counsel for Plaintiff
           CONTOUR IP HOLDING LLC

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been served via email on December 17, 2025 to all counsel of record via email and via the Court's CM/ECF system.

I certify under penalty of perjury that the above is true and correct.

Executed on December 17, 2025, at Houston, Texas.

*/s/ John R. Keville*
John R. Keville