JOHN D. HAYNES (admitted *pro hac vice*)
**ALSTON & BIRD LLP**
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424
Telephone:    404-881-7000
Facsimile:    404-881-7777
john.haynes@alston.com

PHILIP DUCKER (State Bar No. 262644)
MICHELLE CLARK (State Bar No. 243777)
**ALSTON & BIRD LLP**
55 Second Street, Suite 2100
San Francisco, CA 94105
Telephone:    415-243-1000
Facsimile:    415-243-1001
phil.ducker@alston.com
michelle.clark@alston.com

*Attorneys for Defendant GOPRO, INC.*

*Additional counsel on signature page*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| CONTOUR IP HOLDING, LLC,<br><br>                Plaintiff,<br><br>        v.<br><br>GOPRO, INC.,<br><br>                Defendant. | LEAD CASE NO. 3:17-cv-04738-WHO<br>CONSOL. CASE NO. 3:21-cv-02143-WHO<br><br>**GOPRO'S OPPOSITION TO CONTOUR IP HOLDING, LLC'S MOTION FOR NEW TRIAL AND MOTION FOR JUDGMENT AS A MATTER OF LAW**<br><br>Judge: William H. Orrick<br>Hearing Date: March 11, 2026<br>Time: 2:00 PM |

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................1

I.   INTRODUCTION ............................................................................................................1

II.  FACTUAL BACKGROUND ...........................................................................................2

    A.   The Court Found That Material Issues Of Fact To Be Presented To A Jury At Trial Precluded A Finding Of Infringement ...........................................................2

    B.   The Asserted Claims At Trial .................................................................................2

    C.   CIPH Failed To Prove Infringement Of The Accused Products................................3

    D.   GoPro Proved The Asserted Claims Are Invalid ...................................................6

    E.   The Jury Awarded Damages For The Products The Court Told It Were Already Found to Infringe .................................................................................................8

II.  LEGAL STANDARD .......................................................................................................9

    A.   Motion For a New Trial .........................................................................................9

    B.   Judgment As a Matter of Law ...............................................................................9

III. ARGUMENT ...................................................................................................................10

    A.   The Inconsistency in the Jury Verdict Does Not Require a New Trial .....................10

        1.   A New Trial is Not Required Because the Claims are Invalid as a Matter of Law .................................................................................................10

        2.   The Jury's General Verdict Cannot Be Discarded Based On Hypothetical Factual Inconsistencies.........................................................10

        3.   The Jury Verdicts on Non-Infringement Must Stand .....................................12

        4.   No Retrial of Damages And Willfulness Is Appropriate .................................14

    B.   CIPH IS NOT ENTITLED TO JMOL OF INFRINGEMENT .................................15

        1.   CIPH Does Not Challenge The Non-Infringement Verdict As To The Group 3 Products .................................................................................15

        2.   There Is Substantial Evidence to Support the Finding of Non-Infringement As To The Group 2 Products ....................................................16

        3.   CIPH Failed To Prove Infringement By The Group 1 Products.....................17

C.    CIPH'S DEMAND FOR A NEW TRIAL ON DAMAGES IS SPECIOUS...............18

D.    CIPH IS NOT ENTITLED TO JMOL RE THE WOODMAN PRIOR INVENTION.................................................................................................20

E.    CIPH's Demand for Pre-Trial Interest Is Premature And Violates The Law.............23

IV.    CONCLUSION.....................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexsam, Inc. v. Gap, Inc.*,
   621 F. App'x 983 (June 16, 2015) ...................................................................21

*Amazon.com, Inc. v. PersonalWeb Techs., LLC*,
   No. 18-md-02834-BLF, 2019 U.S. Dist. LEXIS 190361 (N.D. Cal. Oct. 31, 2019) .............16

*AMS-OSRAM USA Inc. v. Renesas Elecs. Am., Inc.*,
   133 F.4th 1337 (Fed. Cir. 2025) ...................................................................24

*Apple, Inc. v. Samsung Elecs. Co.*,
   67 F. Supp. 3d 1100 (N.D. Cal. 2014) ...........................................................25

*Apple, Inc. v. Samsung Elecs. Co.*,
   920 F. Supp. 2d 1079 (N.D. Cal. 2013) ..........................................................11

*Asyst Techs., Inc. v. Empak, Inc.*,
   No. C 98-20451, 2007 U.S. Dist. LEXIS 59100 (N.D. Cal. Aug. 3, 2007)...........................10

*Callaway Golf Co. v. Acushnet Co.*,
   576 F.3d 1331 (Fed. Cir. 2009)...................................................................10

*Callicrate v. Wadsworth Mfg., Inc.*,
   427 F.3d 1361 (Fed. Cir. 2005)...................................................................10

*Carl Zeiss A.G. v. Nikon Corp.*,
   2018 U.S. Dist. LEXIS 230811 (C.D. Cal. Sept. 4, 2018).....................................14

*Commil USA, LLC v. Cisco Sys.*,
   575 U.S. 632 ....................................................................................12

*Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*,
   246 F.3d 1336 (Fed. Cir. 2001)...................................................................24

*Dawkins v. City & Cnty. of Honolulu*,
   2012 U.S. Dist. LEXIS 75481 (D. Haw. May 31, 2012)........................................12

*Diaz v. Tesla, Inc.*,
   3:17-CV-06748-WHO, 2022 WL 17584235 (N.D. Cal. Dec. 12, 2022) (Orrick, J.) ........14, 15

*Dow Chem. Co. v. Astro-Valcour, Inc.*,
   267 F.3d 1334 (Fed. Cir. 2001)...................................................................22

*Enzo Biochem, Inc. v. Applera Corp.*,
No. 3:04CV929 JBA, 2014 WL 29126 (D. Conn. Jan. 3, 2014) ...........................24

*Finesse Wireless LLC v. AT&T Mobility LLC*,
156 F.4th 1221 (Fed. Cir. 2025) ................................................................................18

*In re First All. Mortg. Co.*,
471 F.3d 977 (9th Cir. 2006) .............................................................................13, 19

*Fitness Anywhere LLC v. WOSS Enters. LLC*,
No. 14-CV-01725-BLF, 2018 WL 6069511 (N.D. Cal. Nov. 20, 2018)................25

*Floyd v. Laws*,
929 F.2d 1390 (9th Cir. 1991) ...................................................................................11

*Fuji Photo Film Co. v. Jazz Photo Corp.*,
394 F.3d 1368 (Fed. Cir. 2005)..................................................................................19

*Fujifilm Corp. v. Motorola Mobility LLC*,
182 F. Supp. 3d 1014 (N.D. Cal. 2016) (Orrick, J.) .................................................19

*Gould v. Townes*,
1416, 363 F.2d 908 (C.C.P.A. 1966) .........................................................................23

*HOYA Corp. v. Alcon Inc.*,
713 F. Supp. 3d 291 (N.D. Tex. 2024) ......................................................................15

*Hynix Semiconductor Inc. v. Rambus Inc.*,
No. CV-00-20905 RMW, 2006 WL 2522506 (N.D. Cal. Aug. 30, 2006) ...............25

*Illumina, Inc. v. BGI Genomics Co.*,
No. 19-CV-03770-WHO, 2022 WL 899421 (N.D. Cal. Mar. 27, 2022)..................25

*Impinj, Inc. v. NXP USA, Inc.*,
No. 19-cv-03161-YGR, 2023 U.S. Dist. LEXIS 236150 (N.D. Cal. Sept. 28,
2023) ....................................................................................................................9, 10

*Int'l Longshoremen's Union v. Hawaiian Pineapple Co.*,
226 F.2d 875 (9th Cir. 1955) ....................................................................................12

*Intellectual Ventures I LLC v. Symantec Corp.*,
234 F. Supp. 3d 601 (D. Del. 2017)...........................................................................15

*Laitram Corp. v. NEC Corp.*,
115 F.3d 947 (Fed. Cir. 1997).....................................................................................25

*Lucent Techs., Inc. v. Gateway, Inc.*,
580 F.3d 1301 (Fed. Cir. 2009)...................................................................................20

*Monsanto Co. v. Mycogen Plant Sci., Inc.*,
261 F.3d 1356 (Fed. Cir. 2001).............................................................................22, 23

*Mycogen Plant Sci., Inc. v. Monsanto Co.*,
   243 F.3d 1316 (Fed. Cir. 2001).................................................................21, 22, 23

*In re Nelson*,
   57 C.C.P.A. 893, 420 F.2d 1079 (C.C.P.A. 1970)...................................................23

*In re: NFL "Sunday Ticket" Antitrust Litig.*,
   2024 WL 3628118 (C.D. Cal. Aug. 1, 2024)..........................................................19

*Northpoint Tech., Ltd. v. MDS Am., Inc.*,
   413 F.3d 1301 (Fed. Cir. 2005)..........................................................................13, 14

*Opticurrent, LLC v. Power Integrations, Inc.*,
   No. 17-CV-03597-EMC, 2019 WL 2389150 (N.D. Cal. June 5, 2019)................24

*Peck v. Cnty. of Orange*,
   No. 2:19-cv-04654-DSF-AFMx, 2025 U.S. Dist. LEXIS 230085 (C.D. Cal. Nov.
   21, 2025)...................................................................................................................9

*Perfect Web Techs., Inc. v. InfoUSA, Inc.*,
   587 F.3d 1324 (Fed. Cir. 2009)..............................................................................13

*Pulse Elecs., Inc. v. U.D. Elec. Corp.*,
   No. 3:18-cv-00373-BEN-MSB, 2021 U.S. Dist. LEXIS 49101 (S.D. Cal. Mar. 15,
   2021) .......................................................................................................................18

*Radware, Ltd. v. F5 Networks, Inc.*,
   No. 5:13-CV-02024-RMW, 2016 WL 4427490 (N.D. Cal. Aug. 22, 2016)..........15

*REG Synthetic Fuels, LLC v. Neste Oil Oyj*,
   841 F.3d 954, 958 (Fed. Cir. 2016).......................................................................21

*Retractable Techs. Inc. v. Becton, Dickinson & Co.*,
   No. 2:07-CV-250, 2010 WL 9034910 (E.D. Tex. May 19, 2010) ..........................24

*Salar Fahimian v. BMW of N. Am., LLC*,
   No. CV 19-3587-KS, 2022 U.S. Dist. LEXIS 93876 (C.D. Cal. Jan. 26, 2022) ....11

*Schwendimann v. Arkwright Advanced Coating, Inc.*,
   959 F.3d 1065 (Fed. Cir. 2020)..............................................................................24

*Spectralytics, Inc. v. Cordis Corp.*,
   649 F.3d 1336 (Fed. Cir. 2011)..............................................................................19

*State Indus., Inc. v. A.O. Smith Corp.*,
   751 F.2d 1226 (Fed. Cir. 1985)..............................................................................15

*Trs. of Bos. Univ. v. Everlight Elecs. Co.*,
   187 F. Supp. 3d 306 (D. Mass. 2016) ....................................................................25

*TVIIM, LLC v. McAfee, Inc.*,
   851 F.3d 1356 (Fed. Cir. 2017)..................................................................................16

*Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co.*,
   308 F.3d 1167 (Fed. Cir. 2002)..................................................................................21

*United States v. 4.0 Acres of Land*,
   175 F.3d 1133 (9th Cir. 1999) ...................................................................................20

*Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*,
   No. 12-CV-05501-SI, 2018 WL 4849681 (N.D. Cal. Oct. 4, 2018), *aff'd* 809 F.
   App'x 965 (Fed. Cir. 2020)........................................................................................25

*White v. Ford Motor Co.*,
   312 F.3d 998 (9th Cir. 2002) .....................................................................................10

*Wordtech Sys., Inc v. Integrated Networks Sols., Inc.*,
   609 F.3d 1308 (Fed. Cir. 2010)..................................................................................19

*Zaldivar v. City of San Diego*,
   No. 15CV67-GPC(RBB), 2016 U.S. Dist. LEXIS 129172 (S.D. Cal. Sept. 21,
   2016) ...........................................................................................................................16

*Zhang v. Am. Gem. Seafoods, Inc.*,
   339 F.3d 1020 (9th Cir. 2003) ...........................................................................9, 11, 12

**Statutes**

35 U.S.C. § 102(g) ...............................................................................................8, 13, 21

**TABLE OF EXHIBITS**

| Exhibit | Description |
|---------|-------------|
| **Ex. A** | Declaration of Patrick F. Kennedy, Ph.D. Regarding Pre- and Post- Judgment Interest, January 28, 2026 ("Kennedy Decl.") |

# I.     **INTRODUCTION**

The only inconsistency in the jury's verdict that requires judicial resolution is the jury's finding that Claim 12 of the '954 Patent is invalid but Claim 11 is valid.  Because Claim 12 depends from Claim 11, it cannot be invalid if Claim 11 is valid.  The Court can either find both claims invalid or it can order a retrial on the narrow issue of invalidity of Claims 11 and 12.  There are no other issues to retry.  CIPH's Motion conjures hypothetical inconsistencies of fact predicated on nothing more than mind-reading of the jury.  But the law says these alleged inconsistencies are irrelevant – and neither logic nor the law supports the costly, sweeping retrial CIPH seeks.

**There is no legal basis to retry the jury's findings of non-infringement.**  CIPH does not identify any deficiency or alleged internal inconsistency in the jury's non-infringement finding for Group 2 and Group 3 Products.  The Motion does not mention Group 3 Products at all.  And as to Group 2 Products, CIPH quibbles with one argument that GoPro raised at trial – but presents no evidence that the argument it believes to be flawed was the basis for the jury's non-infringement determination.  Moreover, the non-infringement arguments GoPro presented at trial are the same as those it presented at the summary judgment stage, which the Court already found raise disputes of fact and not law.  That CIPH disagrees with the jury's conclusion is not a basis for over-turning it.

**There is also no legal basis to retry the jury's findings on damages or willfulness.**  Obviously, if there is no basis to retry infringement then there is no reason to retry damages.  The jury awarded a reasonable royalty for the Group 1 Products as directed by the Court.  That the jury did not adopt CIPH's damages theory is not a legally sufficient reason to require a retrial.  Similarly, there is no inconsistency or other deficiency in the jury's finding that there was no willful infringement.

**Finally, there is no legal basis for retrying invalidity of Claim 6 of the '694 Patent.**  Claim 6 recites elements different from those at issue in the '954 Patent and the jury's finding of invalidity was fully supported.  Both parties' experts pointed out that Claim 6 has unique claim elements (*e.g.*, the preview requirement, mounting elements, and start/stop record features) and also that it lacks certain claim elements present in the '954 Patent claims (*e.g.*, wireless transmission of real time content).  While the jury's conclusion that Claim 6 is invalid may support the overall determination that the Asserted Claims are invalid because they share some overlapping elements, there is no legal

reason why the jury could not have found Claim 6 invalid and Claim 11 valid.  Absent a legal inconsistency, the law forecloses CIPH's request for a retrial.

CIPH's scattershot motion is an attempt to do only one thing – drive up costs for GoPro.  Dissatisfied with a verdict that belies the legitimacy of CIPH's demand for over $100 million to license the Asserted Patents, CIPH asks for a costly and improper redo of the jury trial on all issues.   The jury's verdict, however, was fully supported by the evidentiary record, which established that CIPH's alleged inventions were known in the prior art and do not support a recovery even close to what CIPH demands.  CIPH's motion should be denied.

## II.   FACTUAL BACKGROUND

### A.   The Court Found That Material Issues Of Fact To Be Presented To A Jury At Trial Precluded A Finding Of Infringement

On August 31, 2020, this Court granted summary judgment of infringement of Claim 11 of U.S. Patent No. 8,890,954 (the "'954 Patent') by 20 legacy models of GoPro cameras (collectively "Group 1 Products").  Dkt. 445 at 10.  In its Order, the Court addressed only the "generate" limitation of Claim 11.  Dkt. 445 at 6.  No findings of fact were made as to any other asserted claims, including any claims of asserted U.S. Patent No.  8,896,694 (the "'694 Patent").

On March 24, 2025, the Court also granted summary judgment of infringement of Claim 11 by GoPro's HERO7, HERO8, and MAX products.  Dkt. 708.  The Court, however, denied summary judgment as to HERO9.  *Id*. at 16.  On October 2, 2025, the Court also denied summary judgment of infringement as to GoPro's current products (HERO11, HERO12, HERO13, and HERO (4k/2024) models).  Among the reasons for the Court's denial was its finding that there was a material dispute of fact as to whether the products include "a wireless connection protocol device" that meets the limitations of Claim 11.  Dkt. 843 at 9, 11-12.

### B.   The Asserted Claims At Trial

Prior to trial, CIPH narrowed the asserted claims to Claims 11 and 12 of the '954 Patent and Claim 6 of the '694 Patent (collectively the "Asserted Claims").  Dkt. 865.  The jury was advised that Claim 12 depends from Claim 11 of the '954 Patent and Claim 6 depends from Claim 3 of the '694 Patent.  Dkt. 859 at No. 15.  In presenting the Asserted Claims to the jury, both parties discussed the dependency of the claims and identified unique limitations in each of the Asserted Claims.  Dkt. 872

at 455:25-456:6; Dkt. 875 at 1082:21-1083:12.

**C.    CIPH Failed To Prove Infringement Of The Accused Products**

On October 1, 2025, Dr. Jing Hu testified on behalf of CIPH regarding her opinions of infringement.  During her testimony, Dr. Hu introduced no evidence regarding the manner in which the Group 1 Cameras allegedly meet the unique elements of Claim 12 of the '954 Patent.  Dkt. 872 at 455:25-456:10.  Her testimony regarding the claim is limited to a single statement that all Group 1 cameras "infringe[] Claim 12 of the '954 Patent" based on her "review [of] the source code and relevant documentation." *Id*.  Dr. Hu did not identify the specific source code or documentation she allegedly relied upon or offer it into evidence. *Id*; PDX-006 at 18.  Dr. Hu also presented no evidence that the Group 1 Products all function in the same manner or otherwise should be grouped together for the purpose of evaluating infringement of the Asserted Claims.  Dkt. 872 at 454:23-456:10.

With respect to Claim 6 of the '694 Patent, Dr. Hu identified 20 product manuals as evidence but only pointed to one page of the HERO6 product manual – showing a camera mount – in her testimony regarding infringement by the Group 1 Products.  Dkt. 872 at 456:11-464:7. Once again, Dr. Hu asserted that her analysis of infringement of Claim 6 applied to all Group 1 Products, but she offered no evidence to support her conclusion. *Id*.

Dr. Hu also testified regarding the "remaining seven camera models" accused of infringement without offering or identifying any fact evidence for most of the claim elements.  Dkt. 872 at 464:11-471:21, 472:16-511:6.[1]  For example, Dr. Hu offered no factual evidence to demonstrate that the cameras are "all portable point-of-view video cameras" with hardware configured to meet the image processor, lens, or control signals elements of the Asserted Claims. *Id*. at 472:16-474:8. She simply testified that they were met – without providing a supporting evidentiary basis. *Id*.  Dr. Hu testified that the accused cameras include "wireless chips" made by Qualcomm or Broadcom and she identified evidence that QCA9377 is an SOC that "supports both WiFi and Bluetooth" (but offered no evidence regarding the Broadcom SOC). *Id*. at 474:17-479:10.  Dr. Hu acknowledged that Group 2 and 3

---

[1] With respect to HERO11 Black, HERO11 Black Mini, HERO12, HERO13 and HERO 4K, Dr. Hu testified that she was able to use the "live preview while recording feature." *See, e.g.*, Dkt. 872 at 465:11-23.  However, she did not tie the feature to the claim elements and that term is not used in any of the asserted claims. *Id*.

cameras send wireless video data via Wi-Fi but receive control signals via Bluetooth.  *Id*.  Dr. Hu also testified that the Group 3 products do not include "live preview while recording" but they "are accused" based on "live streaming," which Dr. Hu opined met the elements of Claim 1 of the '694 Patent, but not Claim 11 or 12 of the '954 Patent.  *Id*. at 499:6-504:1.  Dr. Hu further testified that the live-streaming video has at least a one second delay, but opined that delay did not impact her finding that the camera processor claim elements are met.  *Id*.

In rebuttal, GoPro presented multiple non-infringement positions with respect to the Accused Products.  As an initial matter, GoPro pointed out that CIPH had failed to meet its burden of proving infringement because it had not offered factual evidence such as documents or source code for each accused product on an element-by-element basis.  Dkt. 877 at 1555:12-1558:20; Dkt. 875 at 1132:6-1133:12. Mr. Lema, GoPro's corporate representative, also testified that the Group 2 and Group 3 products are not "point-of-view digital cameras" because their field of view is substantially wider and taller than a traditional point of view camera and, thus, they are not limited to shooting point of view footage.  Dkt. 874 at 890:23-891:17.

For the Group 2 and Group 3 products, GoPro demonstrated that there is no "wireless connection protocol device" that meets the limitations of Claim 11 of the '954 Patent (from which Claim 12 depends) or Claim 3 of the '694 Patent (from which Claim 4 depends).  Dkt. 877 at 1555:9-1557:21; Dkt. 875 at 1139:6-1143:21. Rather, starting with HERO9, GoPro designed its cameras to transmit video data via Wi-Fi, but to receive data regarding camera control features exclusively via Bluetooth.  Dkt. 874 at 931:6-932:5. As a result, there is no wireless transmitter (i.e., wireless connection protocol device) in the Group 2 and Group 3 Products configured to both wirelessly send video content and wirelessly receive control signal information from a remote personal portable device.  Dkt. 875 at 1139:6-1143:21; Dkt. 874 at 897:4-897:24. GoPro's expert testified that a person of ordinary skill in the art would recognize that different wireless protocols would require different wireless protocol devices, even if they are mounted to a single piece of silicon.  *Id.* at 1142:10-1143:21.

For the Group 2 Products, GoPro further demonstrated that CIPH failed to show that the accused Phone Preview stream was "recorded."  Dkt. 877 at 1555:12-18, 1557:22-1559:13 ("GoPro's products have changed now, and they don't record that low-resolution stream anymore.").  GoPro's

1    engineer, Mr. Dicky Liu, testified that the Phone Preview video in the Group 2 and Group 3 products

2    is never recorded on the GoPro camera.  Dkt. 874 at 930:10-931:1. Once the video image data is

3    encoded, it sent to the remote device without storing to minimize latency.  *Id.*  Mr. Liu testified that

4    the "buffer" Dr. Hu identified in the processing pipeline is a 3 mbps buffer that stores some information

5    about the codec necessary to allow the processor to coalesce the video and audio data, but it is not

6    recording video.  *Id.* at 930:3-17.  Less than a frame of data is ever present in the buffer and it remains

7    there for less than quarter of a second.  *Id*. at 930:18-931:1.

8        With respect to Group 3 Products, GoPro also demonstrated that there is never "a situation

9    where the video used for the live stream . . . is sent from the GoPro camera directly to the mobile

10   phone for display" as required by the Asserted Claims.  *Id.* at 933:3-935:20; *see also id.* at 892:22-

11   896:24, 938:2-17.  Instead, the live stream video is sent to a remote server (*e.g.*, a Facebook or AWS

12   server depending on the host), it is processed and then made accessible to the public via a link.  *Id.*

13   The linked video is both substantially delayed and also not viewable in the GoPro Quik App. *Id.*; *see*

14   *also* 936:3-937:12.  The live stream output from the GoPro is not sent directly to the mobile phone for

15   display, and there is no preview available of the live stream.  *Id.*

16       In rebuttal, Dr. Hu acknowledged that, starting with HERO9, the configuration of the wireless

17   transmitters was modified in the Accused Products.  In particular, for the Group 2 and Group 3

18   products "Bluetooth is used to carry the control signals.  But for video, it has always been WiFi and

19   that hasn't changed in the configuration." Dkt. 876 at 1315:25-1317:5.  Dr. Hu posited that "the same

20   wireless connection protocol device" can "support both Bluetooth and Wi-Fi protocols under the

21   asserted claims" but offered no evidence that the same protocol device is used for both sending and

22   receiving wireless data in the Group 2 and Group 3 Accused Products.  *Id.* at 1317:19-1318:5.  Dr. Hu

23   also offered her opinion that a user may want to view a live stream while it is being recorded.  *Id*. at

24   1318:16-1320:21. But, again, offered no rebuttal evidence to refute the GoPro testimony and

25   documentary evidence demonstrating that the Group 3 products did not send a live stream directly to

26   a remote device for display.  Dr. Hu did not present any evidence to address the non-infringement

27   testimony from GoPro's fact witnesses nor to fill in the evidentiary gaps that GoPro's expert, Dr.

28   Almeroth, identified.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**D.    GoPro Proved The Asserted Claims Are Invalid**

At trial, GoPro also presented substantial evidence to support a finding that the Asserted Claims are invalid.  Dr. Almeroth presented evidence on an element-by-element basis demonstrating that the claimed invention is disclosed in the combination of U.S. Appl. No. 12/612,972 (Boland) and Ambarella camera processing platforms that were commercially available before the date of the claimed invention ("Ambarella").[2]    Dkt. 875 at 1105:4-1119:13.  CIPH did not present evidence or testimony from its expert that addressed the combination of Boland and Ambarella, nor did it rebut the evidence and testimony presented by Dr. Almeroth regarding the disclosure of those references or the clear motivation to combine them. Dkt. 876 at 1324:2-16.  A review of Dr. Hu's testimony shows she did not address a single disclosure in Boland and readily acknowledged that Ambarella was selling the dual encoding functionality in its camera platforms by 2009.  *Id*.; *see also id*. at 1322:2-10 ("We've heard that the A5 chip with dual encoding capability on the hardware itself was available in 2009."). She also testified that wireless protocols were known and available at the time of the invention for sending and receiving video.  *Id*. at 1323:6-13, 1342:2-12.[3]

GoPro also presented evidence that the Asserted Claims are invalid as anticipated or obvious based on GoPro's prior invention.  For conception, Dr. Almeroth mapped each of the claim elements to Mr. Woodman's testimony and three corroborating documents, all dated before February 2009, ten months before CIPH's alleged conception date.  Dkt. 875 at 1121:6-1129:6; DDX-05.76.  CIPH never rebutted the disclosure of all the claim limitations by these documents.  Instead, CIPH and its expert focused on evidence developed months ***after*** conception, including documents for different, non-camera products.  *See, e.g.*, Dkt. 876 at 1325:18-1326:17.[4]  But, as Dr. Almeroth testified, an inventor

---

[2] Ambarella witnesses confirmed that at least two camera processing platforms – the A5 and A5S – were sold with the dual encoding / dual recording functionality by no later than November 2009.  Dkt. 875 at 1016:6-1018:9.  By November 5, 2009, Bosch had not only sold the camera platforms with dual encoding, but had also provided its customers with "eval kits" that included additional components such as the lends, sensor, software SDK including a Linux driver that allows the camera processor to communicate with a wireless transmitter such as a Wi-Fi transmitter.  *Id*. at 1024:17-1026:21.

[3] Dr. Hu testified that there were challenges in reducing the claimed invention to practice presented by limitations on the availability of Wi-Fi Direct as well as the Apple platform, but nothing in the claims is directed to these types of implementation details.   Dkt. 876 at 1322:18-1323:13. Fundamentally, Dr. Hu acknowledged that the claimed idea was well known and the only impediments to commercialization are not addressed in the Asserted Claims. Dkt. 872 at 476:13-22.

[4] CIPH's expert, Dr. Hu, expressly contradicted the inventor testimony from Mr. Mander.  While Dr Hu opined that JPEG images that are stitched together to be viewed as video cannot be a "video," Dr. Mander contradicted her and testified that, in fact, Contour's video was comprised of a series of images

1  cannot "un-conceive" something and thus later-dated documents cannot undermine Mr. Woodman's

2  conception of the claimed invention by no later than February 2009.  Dkt. 877 at 1425:1-22.

3       CIPH also did not raise any meritorious disputes regarding reduction to practice of GoPro's

4  invention.  To the contrary, CIPH's expert testified that she believes "100 percent, without any doubt"

5  that "the combination of the Wi-Fi BacPac [and the HERO2 camera] . . . meets every single limitation

6  disclosed in every asserted claim."  Dkt. 876 at 1333:21-1334:3. And both Mr. Woodman and Mr.

7  Donovan testified regarding the continuous, ongoing work required to bring GoPro's first wireless

8  camera to market.  Dkt. 873 at 688:22-690:9; *see also* Dkt. 868-6 at 73:03-73:22.

9       While it took GoPro three years to commercialize a camera with wireless video transmission

10  and remote-control capabilities, GoPro also successfully reduced the invention to practice several

11  times in the interim.  By 2009, GoPro's early development work resulted in a working prototype in or

12  around 2009 with the ability to wirelessly transmit recorded video.  Dkt. 872 at 565:16-22; Dkt. 873

13  at 674:23-676:10, 707:17-709:19, 709:23-710:25; Dkt. 877 at 1550:4-1551:11 ("Mr. Donovan and Mr.

14  Woodman both testified they had a prototype that was working in the lab"); Dkt. 868-6 at 57:6-57:22.

15  Like Contour's own prototype (Orca), GoPro's initial test set up did not look like a final commercial

16  product, but it had the constituent capabilities required by the Asserted Claims. Dkt. 875 at 1099:15-

17  1101:17; Dkt. 893-2.  Thereafter, GoPro continued to refine its design and produced over 400 PPT

18  units (*i.e.*, prototypes in near-final form factor), including those shown at trial.  Dkt. 873 at 676:18-

19  678:6, 709:23-710:25; Dkt. 881-103; Dkt. 881-32.[5]  The evidence shows that, while functional, the

20  prototypes had reliability issues that caused Mr. Woodman to decide to remove the feature from HERO

21  HD shortly before mass production and commercial launch.  *Id*. at 684:9-687:6.  Nonetheless, GoPro

22  continued working on the idea of a wireless camera with preview and remote control, including

23  modifying its design to rely on Wi-Fi (rather than Zigbee) to transmit video.  *Id*. at 684:9-687:6; Dkt.

24

25  that were played in succession.  *Compare* Dkt. 876 at 1326:9-23 *with* Dkt. 872 at 429:13-21.

26  [5] Dr. Almeroth and Dr. Hu testified that they both inspected ***multiple*** prototypes that pre-dated release of the HERO2 + Wi-Fi Bac Pac, including prototype units dated in 2009 and 2010.  *See, e.g.*, Dkt. 876

27  at 1327:8-1328:22; Dkt. 875 at 1100:18-1101:17. Dr. Almeroth also explained that the type of PPT units shown in DDX 1-11 by their nature, show a fairly advanced stage of development with the board

28  layout and form factor in near-final form.  Dkt. 875 at 1099:15-1101:17; *see also* Dkt. 876 at 1327:16-1328:22 (testifying that the prototypes DTX-1294 and -1295 are "EVT" and "PVT" units, related to engineering and product validation testing respectively).

877 at 1406:12-20, 1407:6-11, 1408:5-13.  Ultimately, GoPro was able to launch HERO2 with the Wi-Fi BacPac, which supported a wireless video preview via Wi-Fi that was of substantially higher quality than Contour's Bluetooth-based preview. [6]

CIPH offered very little, if any, rebuttal evidence but instead focused its presentation on legally irrelevant theatrics.  For example, CIPH attempted to discredit Mr. Woodman because he testified that he was not the "first inventor" of the claimed invention – even though nothing in 35 U.S.C 102(g) requires that the prior art invention be "first" and only requires that the invention be conceived before the priority date.  In another example, CIPH alleged that because one of the PVT prototype units had a 2010 date on the circuit board, it necessarily meant that GoPro had not worked diligently to reduce Mr. Woodman's invention to practice.  Dkt. 901 at 4.  But there is no discrepancy in Mr. Woodman's testimony that he saw a test set up wherein Mr. Donovan demonstrated the claimed invention in 2009 and his testimony that he saw **additional** prototypes over the years, as the product evolved.  *See, e.g.*, Dkt. 873 at 709:23-710:25.[7]  More importantly, CIPH's theory that the prototype unit shown in DDX-11.7 was dated November 16, 2010 contradicts its concomitant narrative that GoPro had abandoned work on wireless video preview by 2010.  DDX-11 at 11.7; Dkt. 877 at 1500:2-1502:6.  Instead, the existence of the PVT units only underscores GoPro's ongoing, diligent work to create a commercially-viable camera with wireless capability, that resulted in HERO2 + Wi-Fi Bac Pac.[8]

### E.    The Jury Awarded Damages For The Products The Court Told It Were Already Found to Infringe

After the presentation of evidence, the jury spent three days deliberating.  The jury ultimately

---

[6] CIPH's characterization of GoPro's argument that HERO2 + Wi-Fi Bac Pac evidences its diligent reduction to practice of the Woodman invention as a mid-trial "pivot" is false.  From opening statements, GoPro argued (and presented evidence) that the Woodman invention was reduced to practice in prototypes and the HERO2 + Wi-Fi Bac Pac.  Dkt. 870 at 201:2-202:5, 203:18-22.
[7] CIPH's efforts to discredit Mr. Woodman were eventually shut down by the Court once it became clear that there are, in fact, prototypes in the record dated in 2009.  But even before that, Mr. Woodman offered a reasonable explanation for why some of the prototypes have boards with 2010 dates on them – i.e., GoPro commissioned hundreds of prototypes before going to market.  Dkt. 873 at 709:23-710:4.
[8] CIPH faults GoPro for failing to introduce additional documents from 2010 during Dr. Almeroth's re-direct – after it took the position (which the Court agreed with) that Dr. Almeroth could not introduce documents not already in evidence.  *See* Dkt. 875 at 975:7-980:21.  Therefore, though Dr. Almeroth's report is replete with evidence from 2010 and 2011 showing ongoing diligence, CIPH's "gotcha" question was intended to confuse the jury into believing the false statement that no such evidence exist.  GoPro maintains its objection to the Court's refusal to allow it to show the jury evidence that its expert witnesses relied on as violating Fed. R. Civ. P. 703 and the common practice of relying on demonstrative exhibits.

returned a verdict finding that CIPH failed to meet its burden of proving infringement for all unadjudicated products and, further, finding that the Asserted Claims except Claim 11 are invalid. Notably, Claim 11 is the claim the Court instructed the jury it had already reviewed and found infringed by the Group 1 products. For those products, the jury rendered a verdict of approximately $0.63 cents per unit, for a total of $8.2 million. The jury verdict states the amount as a total royalty for past damages because that is how both parties' counsel told the jury to fill in the verdict form during closing arguments. Dkt. 877 at 1516:18-19; *id.* at 1569:24-1570:5. There are no ongoing damages because GoPro no longer sells any of the products the Court held to infringe.[9]

## II.    LEGAL STANDARD

### A.    Motion For a New Trial

A new trial is appropriate only if "the verdict is contrary to the clear weight of the evidence," "is based on false or perjurious evidence," "the damages are excessive," or for other reasons the trial was not fair to the moving party and a retrial is necessary "to prevent a miscarriage of justice." *Peck v. Cnty. of Orange*, No. 2:19-cv-04654-DSF-AFMx, 2025 U.S. Dist. LEXIS 230085, at *4 (C.D. Cal. Nov. 21, 2025). When a jury renders a "general verdict," inconsistency is not grounds for a new trial "[u]nless one legal conclusion is the prerequisite for another." *Impinj, Inc. v. NXP USA, Inc.*, No. 19-cv-03161-YGR, 2023 U.S. Dist. LEXIS 236150, at *13 (N.D. Cal. Sept. 28, 2023) (quoting *Zhang v. Am. Gem. Seafoods, Inc.*, 339 F.3d 1020, 1034 (9th Cir. 2003)). The Court does not reconcile "implied factual disputes underlying the legal questions" presented to the jury. *Id.* But, instead, must allow the jury's verdict to stand in deference to Seventh Amendment considerations. *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1038 (9th Cir. 2003).

### B.    Judgment As a Matter of Law

Judgment as a matter of law is appropriate where "the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is

---

[9] CIPH's statement that GoPro relied on Group 2 Products as non-infringing alternatives for damages purposes is false. Mr. Kennedy, GoPro's damages expert, expressly testified that he assumed the accused products infringe as a predicate for his damages analysis. Dkt. 876 at 1236:5-10. Mr. Kennedy showed that simply removing the ability to remotely change the lighting, color, and audio settings from a remote device with a screen would have been commercially and technologically feasible at the time of the hypothetical negotiation and would impose a cost of no more than $0.26 per unit on GoPro. Dkt. 874 at 939:12-940:12; Dkt. 876 at 1247:21-1253:24.

contrary to that of the jury." *White v. Ford Motor Co.*, 312 F.3d 998, 1010 (9th Cir. 2002); *see also Asyst Techs., Inc. v. Empak, Inc.*, No. C 98-20451, 2007 U.S. Dist. LEXIS 59100, at *11 (N.D. Cal. Aug. 3, 2007) ("A Rule 50(b) JMOL is proper when the evidence allows only one reasonable conclusion as to the verdict."). This standard requires a court to uphold a jury verdict "supported by substantial evidence," *i.e.*, "evidence that a reasonable mind would accept as adequate to support a conclusion." *Callicrate v. Wadsworth Mfg., Inc.*, 427 F.3d 1361, 1366 (Fed. Cir. 2005).

## III.    ARGUMENT

### A.    The Inconsistency in the Jury Verdict Does Not Require a New Trial

#### 1.    A New Trial is Not Required Because the Claims are Invalid as a Matter of Law

As set forth in GoPro's co-pending Motion for Judgment as a Matter of Law, no re-trial is necessary because the Asserted Claims are obvious as a matter of law.  Dkt. 900 at § IV.B.  The Parties do not dispute that there is a legal inconsistency in the jury's verdict regarding validity of Claim 12 and Claim 11 (from which Claim 12 depends).  However, CIPH's argument that the law mandates a new trial as "the only remedy" is wrong.  Dkt. 901 at 14.  Even when there is an irreconcilable legal inconsistency in a jury's verdict, the Court must first review the record for substantial evidence before ordering a new trial.  *Callaway Golf Co. v. Acushnet Co.*, 576 F.3d 1331, 1344 (Fed. Cir. 2009); *Impinj*, 2023 U.S. Dist. LEXIS 236150, at *14.  If there is only one outcome supported by the weight of the evidence, JMOL and not a new trial is the appropriate remedy.  Because the evidence supports finding the Asserted Patents obvious as a matter of law, no new trial is needed.

#### 2.    The Jury's General Verdict Cannot Be Discarded Based On Hypothetical Factual Inconsistencies

Even if the Court decides that a new trial on the validity of the Asserted Claims of the '954 Patent is appropriate, the scope of such a trial would be limited to that one issue.  The alleged "inconsistencies" that CIPH conjures in the remainder of its brief are neither supported by the record nor relevant under the law.  Dkt. 901 at 14-17.  The Ninth Circuit, in deference to the Constitutional nature of the jury's role, limits review of general verdicts to legal sufficiency – and does not permit the Court to replace the jury's conclusions with its own even in the face of potential logical or factual

1    inconsistencies.  *Zhang*, 339 F.3d at 1034 ("'Unless one legal conclusion is the prerequisite for

2    another, inconsistencies between them must stand.'").

3         The fallacy in CIPH's argument is founded on its mischaracterization of the verdict as a

4    "special" verdict rather than a "general" one.  Dkt. 901 at 14.  A verdict form that elicits one or more

5    legal conclusions from the jury is a general verdict form, whereas a special verdict form is comprised

6    of factual interrogatories that reserve the ultimate legal conclusion for the Court.  *Floyd v. Laws,* 929

7    F.2d 1390, 1395 (9th Cir. 1991).  For example, a general verdict form in a patent infringement case

8    seeks the jury's ultimate conclusions on infringement, anticipation, obviousness, and damages –

9    whereas a special verdict seeks the constituent factual elements of a legal claim or defense (*e.g.*,

10   whether a claimed invention is "not new"), but leaves the ultimate legal conclusions to the court.  *See*

11   *Duhn Oil Tool*, 818 F. Supp. 2d at 1221 (citing *Zhang,* 339 F.3d at 1020).   The verdict in this case is

12   general because it asked the jury to make the ultimate legal conclusions of infringement and invalidity.

13        Because the verdict here is a general verdict, the Court must allow perceived inconsistencies

14   to stand unless they are legally irreconcilable.  *Salar Fahimian v. BMW of N. Am., LLC*, No. CV 19-

15   3587-KS, 2022 U.S. Dist. LEXIS 93876, at *14-20 (C.D. Cal. Jan. 26, 2022).  "Factual inconsistencies

16   do not merit a new trial." *Apple, Inc. v. Samsung Elecs. Co*., 920 F. Supp. 2d 1079, 1101 (N.D. Cal.

17   2013).  "Only verdicts that entail two legal conclusions that cannot logically coexist, such as an award

18   of damages and a finding of no liability, rather than a mere inconsistent view of facts, warrant the

19   Court's intervention." *Id*.  *Apple v. Samsung* is illustrative.  *Id*.  There, this Court recognized the

20   factual inconsistency in the jury's verdict of non-infringement by certain accused products that ran the

21   same software as products that had been adjudged infringing.  *Id*. ("Apple implicitly agrees that all the

22   devices running a particular Android version either infringe or do not infringe together, and that the

23   jury's findings are factually inconsistent.").  The Court nonetheless refused to order a retrial because

24   "an infringement finding for one product is not the legal prerequisite for an infringement finding of

25   another product, even if the products are identical in all relevant respects." *Id*.  The Court found that

26   Ninth Circuit law established by *Zhang* forecloses reconsideration of a jury verdict based on perceived

27   "logical" inconsistencies.  *Id*.  Because the verdict questions are "legally independent of one another"

28   they "must stand." *Id*.  (denying Samsung's motion for a new trial, citing *Zhang*, 339 F.3d at 1034).

1    None of the alleged "inconsistencies" in the jury's verdicts on infringement or invalidity of

2  Claim 6 identified in CIPH's brief arise to the level of a legal inconsistency.  There is no legal

3  inconsistency in the jury's finding that Asserted Claims are not infringed and invalid (or valid for that

4  matter) because there is no legal dependency between these issues.  *Commil USA, LLC v. Cisco Sys.*,

5  575 U.S. 632, 643 (explaining the "long-accepted truth—perhaps the axiom—that infringement and

6  invalidity are separate matters under patent law.") (citing *Pandrol USA, LP v. Airboss R. Prods., Inc.*,

7  320 F.3d 1354, 1365 (Fed. Cir. 2003)).  Similarly, there is no legal inconsistency between the jury's

8  conclusion that Claim 6 is invalid but Claim 11 is valid because these claims are from different patents,

9  do not depend from each other, and have materially different claim elements. *Dawkins v. City & Cnty.*

10  *of Honolulu*, 2012 U.S. Dist. LEXIS 75481, at \*24-25 (D. Haw. May 31, 2012) (citing *Zhang*, 339

11  F.3d at 1035).  To countenance the alleged inconsistencies set forth in CIPH's brief is to replace the

12  jury's role as fact finder with the Court's judgment.  *Int'l Longshoremen's Union v. Hawaiian*

13  *Pineapple Co.,* 226 F.2d 875, 881 (9th Cir. 1955) (finding that, although it was difficult to understand

14  the jury's general verdicts holding the defendant unions liable while not holding the union leaders

15  responsible, the verdict must be upheld because "[t]hat is the jury's prerogative.").  Neither the parties

16  nor the Court have the ability or authority to delve into the minds of the jury to hypothesize about the

17  credibility and factual determinations it made to reach the verdict rendered in this case.  *Id*. The law

18  flatly forbids the exercise that CIPH asks this Court to engage in as a derogation of the Seventh

19  Amendment of the Constitution. *Id*.

20          **3.    The Jury Verdicts on Non-Infringement Must Stand**

21    Even if the Court were to delve into the factual bases for the jury's findings of infringement

22  and damages, it would not find any fundamental inconsistencies.  CIPH does not dispute that the

23  judgment of invalidity based on obviousness in view of Boland and Ambarella is supported by the

24  trial record nor does it raise any alleged inconsistency between the jury's non-infringement findings

25  and this ground.  Thus, there is a reasonable theory consistent with the evidence that upholds the

26  integrity of the verdict.  Having conceded a facially plausible, legally sufficient way to reconcile the

27  verdicts, CIPH's Motion fails on its face.[10]

28

---

[10] Even if the Court were to find the jury's verdict of ***anticipation*** to be irreconcilable with its finding

The hypothetical inconsistencies that CIPH raises are not only irrelevant but mischaracterize the jury's verdict and the trial record. For example, the jury's finding that Claim 12 of the '954 Patent is invalid and its concomitant conclusion that CIPH failed to show that the Group 1 Products infringe are not factually inconsistent. It is plausible that the jury simply concluded that Claim 12 was anticipated,[11] but CIPH failed to carry its burden of proving by a preponderance of the evidence that **all** of the Group 1 Products infringe Claim 12 (or Claim 6 of the '694 Patent) – since CIPH did not introduce any evidence much less prove infringement on an element-by-element basis for any of the Group 1 Products or to elucidate why they are properly grouped together.[12] Dkt. 872 at 454:24-3. Even if the parties agree (as they appear to) that HERO2 + Wi-Fi Bac Pac is a reduction to practice of the Woodman Invention that could anticipate or render obvious the Asserted Claims, there is nothing in that determination that mandates a finding that **all** Group 1 Products infringe. There are twenty different products in Group 1 with substantially varying functionalities, feature sets, components, and relevant configurations – and there is no stipulation or instruction that pre-determines that all the Group 1 Products are the same in all material respects. The jury could easily (and correctly) have

---

of non-infringement, that would not justify a re-trial because the claims were also found to be invalid as obvious. There is no basis to retry anticipation of invalid claims. *Northpoint Tech., Ltd. v. MDS Am., Inc.*, 413 F.3d 1301, 1312 (Fed. Cir. 2005) (affirming a district court's denial of motion for new trial on the issue of invalidity where the evidence with respect to at least one of the prior art references was sufficient to prove anticipation of the asserted claims, and therefore the failure of any other particular reference to contain all the limitations of the asserted claims would not undermine the verdict as a matter of law). Additionally, HERO2 + Wi-Fi Bac Pac could be found to render obvious the Asserted Claims in view of the state of the art even if it did not expressly disclose each of the claim limitations – but the same cannot be said for direct, literal infringement, which requires a showing that every element is present in the accused device.[10] *Perfect Web Techs., Inc. v. InfoUSA, Inc.*, 587 F.3d 1324, 1330 (Fed. Cir. 2009) (prior art need not explicitly refer to or disclose a claim element to render the claimed invention obvious).

[11] Contrary to CIPH's contention, the jury was never asked to find that HERO2 with the Wi-Fi Bac Pac anticipates Claim 12. Dkt. 901 at 15. The jury was asked whether Claim 12 was invalid as anticipated, but the jury did not specify the grounds on which it made its anticipation finding. It is plausible that the jury determined the Woodman Invention rendered Claim 12 invalid pursuant to 35 U.S.C. § 102(g) without specifically finding that HERO2 with the Wi-Fi Bac Pac practices all of the claim elements (*e.g.*, if the jury believed there was an earlier reduction to practice in one of the 400+ prototypes developed by GoPro).

[12] CIPH's reliance on *Bristol Meyers Squibb Co. v. Ben Venue Labs., Inc.*, is misplaced not only because it is a discovery order (and does not address the legal standard for a new trial) but because it is predicated on an assumption not presented under these facts – i.e., that the jury found that an accused product infringes but does not anticipate the Asserted Claims. 246 F.3d 168, 1378 (cited at Dkt. 901 at 15). The jury was never asked to find that HERO2 with the Wi-Fi Bac Pac by itself infringes the Asserted Claims nor was the jury ever asked whether HERO2 with the Wi-Fi Bac Pac by itself antipicates the Asserted Claims.

determined that CIPH failed to meet its burden of proving that each of the constituent products in Group 1 practice all the limitations of Claim 12 and Claim 6 even if the jury believed that one of the products (HERO2 + the WiFi Bac Pac) practiced the claims. The jury was more than entitled to find that Dr. Hu's self-serving assertions made without supporting evidence were not credible and, therefore, to find that CIPH failed to carry its burden of proving infringement.

The same defect condemns CIPH's argument that "if a new jury found Claim 11 and 12 valid, then the anticipation verdict for claim 6 could not stand." Dkt. 901 at 16. That premise is false. Claim 6 has different claim elements and it is undisputed that the jury had an adequate basis to determine that it was invalid. Dkt. 872 at 456:11-458:14, 460:5-462:10, 463:6-8. Indeed, CIPH simply ignores the reasonable basis in the record for finding Claim 6 invalid as obvious in view of Boland and Ambarella – but that failure dooms its request for a new trial because the law permits a new trial only in instances where the evidentiary record cannot, under any reasonable interpretation, sustain the jury's verdict. *See Carl Zeiss A.G. v. Nikon Corp.*, 2018 U.S. Dist. LEXIS 230811, at *3 (C.D. Cal. Sept. 4, 2018) (finding a verdict should be upheld with evidence sufficient to support any alternative invalidity theory). Here, nothing in CIPH's Motion undercuts the basis for finding Claim 6 invalid at least as obvious and therefore there is no legal reason to retry invalidity. *Northpoint Tech*, 413 F.3d at 1312.

### 4.    No Retrial of Damages And Willfulness Is Appropriate

There is also no "interwovenness" of the issues of damages and willfulness that makes a retrial of these issues appropriate. This Court has recognized that *Gasoline Products*, the only case CIPH cites for its argument, was "highly fact-specific" and does not stand "for the strict proposition that certain issues must always be retried together." *Diaz v. Tesla, Inc.*, 3:17-CV-06748-WHO, 2022 WL 17584235, at *5 (N.D. Cal. Dec. 12, 2022) (Orrick, J.). Instead, the Court assesses whether the issues were presented in a manner that interwove damages and liability to such an extent that there was either jury confusion or unreasonable prejudice. *Id.* at *6. Those circumstances are not present here.

In its Motion, CIPH only points out one alleged point of tension – that GoPro's counsel relied on GoPro's prior invention to argue both invalidity and that GoPro had a reasonable belief that it was not liable. *Id.* But the jury had ample reason to reject CIPH's specious stock sale and copying based

willfulness theories, regardless of whether GoPro had a reasonable belief of invalidity.[13] Dkt. 873 at 693:21-700:19 (rebutting allegations of copying); *id.* at 700:20-702:3 (explaining stock sales). And, even assuming *arguendo* that (1) the jury relied on GoPro's belief of invalidity based on the Woodman invention in rejecting willfulness and (2) that the Woodman invention is not invalidating, the question of willfulness is not whether the patents were actually invalid, but whether GoPro had a reasonable belief of invalidity. *Radware, Ltd. v. F5 Networks, Inc.*, No. 5:13-CV-02024-RMW, 2016 WL 4427490, at *7 (N.D. Cal. Aug. 22, 2016); *see also* Dkt. 877 at 1451:1-12 (instructing jury to consider *inter alia* "whether GoPro had a **reasonable belief** that at the time of infringement … that the patent was invalid"). There is substantial record evidence supporting GoPro's belief of invalidity that the jury could credit and rely upon. *See, e.g.*, Dkt. 874 at 881:6-20.

There is also no basis to conclude that the jury improperly considered validity or non-infringement in rendering its damages verdict. CIPH argues that the Court's legal instructions, and GoPro's use of those instructions in its closing argument, show that damages and liability are so interwoven to require a new trial. Dkt. 901 at 17. But each of the cited examples are correct statements of the law that appear in nearly every patent case. Finding that such statements require damages and liability to be re-tried together would create a *per se* rule that damages and liability must always be tried together in patent case, and this Court has rejected that *Gasoline Products* stands for such a rule. *Diaz*, 2022 WL 17584235 at *5.

## B. CIPH IS NOT ENTITLED TO JMOL OF INFRINGEMENT

CIPH's alternative request for JMOL of infringement is inappropriate because there is no evidentiary deficiency in the jury's non-infringement findings.

### 1. CIPH Does Not Challenge The Non-Infringement Verdict As To The Group 3 Products

The jury concluded that the Group 3 Products do not infringe and, in its Motion, CIPH does not challenge this finding (or allege that it is inconsistent with any other finding in the verdict). Dkt.

---

[13] The jury could also have rejected CIPH's willfulness theory for failure to present sufficient evidence that GoPro actually knew of CIPH's patents prior to the suit being filed. *State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985). And as to its post-suit willfulness theory, this was based solely on GoPro's failure to modify its products, which is insufficient as a matter of law. *HOYA Corp. v. Alcon Inc.*, 713 F. Supp. 3d 291, 318 (N.D. Tex. 2024); *Intellectual Ventures I LLC v. Symantec Corp.*, 234 F. Supp. 3d 601, 612 (D. Del. 2017).

865 at Question 3. Therefore, there is no basis for a new trial or JMOL as to these products.

### 2. There Is Substantial Evidence to Support the Finding of Non-Infringement As To The Group 2 Products

The jury's conclusion that Contour failed to prove that the Group 2 products infringe is also well-supported by the evidentiary record. GoPro presented evidence and argument at trial that the Group 2 Products do not infringe for several reasons including that the Group 2 Products are not point of view digital video cameras, the accused "Phone Preview" stream is never recorded (as required by the "generating" limitation), and there is no wireless connection protocol device configured to both "send" image content by wireless transmission directly to and "receive control signals or data signals by wireless transmission directly from" a personal portable computing device. *See, e.g.*, Factual Background at § II.C; Dkt. 874 at 898:12-891:17; *id*. at 927:3-928:6, 929:14-931:5, 931:6-932:5; Dkt. 875 at 1139:22-1143:21; Dkt. 877 at 1556:1-1559:13. CIPH's Motion ignores at least two bases established in the evidentiary record upon which the jury could reasonably have found that the Group 2 Products do not infringe. Having failed to challenge GoPro's evidence that the Group 2 products are not "point of view" digital video cameras and do not "generate from the video image data a first image data stream" as required by the Asserted Claims, CIPH cannot demonstrate that the "record lacks any evidence supporting the verdict" and its motion fails as a matter of law. *TVIIM, LLC v. McAfee, Inc*., 851 F.3d 1356, 1362 (Fed. Cir. 2017). And it is too late for CIPH to challenge the non-infringement arguments that it failed to address in its opening brief. *Zaldivar v. City of San Diego*, No. 15CV67-GPC(RBB), 2016 U.S. Dist. LEXIS 129172, at *37 (S.D. Cal. Sept. 21, 2016); *see also Amazon.com, Inc. v. PersonalWeb Techs*., *LLC*, No. 18-md-02834-BLF, 2019 U.S. Dist. LEXIS 190361, at *5 (N.D. Cal. Oct. 31, 2019).

Moreover, the only argument CIPH does raise was already rejected by the Court at the summary judgment stage. Dkt. 843 at 9, 11-12. GoPro presented substantial evidence and argument that the "wireless connection protocol device" limitation is not met in Claim 11 and 2 of the '954 Patent or Claim 6 of the '694 Patent because GoPro modified the firmware of its newer products to rely on two different wireless transceivers for sending and receiving wireless data.[14] *See, e.g.*, Factual

---

[14] CIPH mischaracterizes GoPro's non-infringement argument in its Motion. Dkt. 901 at 21. GoPro does not argue that the claims foreclose use of "two different protocols." If there were a wireless

Background at § II.C.  The Court, both at the summary judgment stage and in its mid-trial construction confirmed that the Asserted Claims require "at least one wireless connection protocol device that can both (1) send real time image content by wireless transmission directly and (2) receive control signals or data signals by wireless transmission directly from a personal portable computing device executing an application."  Dkt. 859 at 15.  The Court also held, at the summary judgment stage, that there was a disputed issue of fact as to whether the Group 2 products include such a "wireless connection protocol device."  Dkt. 843 at 9, 11-12.  The jury could reasonably have concluded, consistent with GoPro's expert testimony and evidence, that the wireless transceivers that happen to be packaged in the same system on chip (SOC) are two separate protocol devices (each employing a different protocol) and not one "wireless connection protocol device."  Dkt. 875 at 1139:22-1143:21, 1209:7-1212:24, 1214:15-1215:23.

There is no inconsistency between the jury's verdict with respect to the Group 2 products and the Court's prior summary judgment order because it is undisputed that GoPro modified the Group 2 and Group 3 products pursuant to the New Camera Connection (NCC) project so that the wireless SOC is configured differently – and while the Wi-Fi transmitter is configured to send video data it is no longer configured to receive data signals or control signals relating to the cameras' settings.  Dkt. 875 at 1209:7-1212:24; Dkt. 874 at 931:6-932:5.  Instead, the Group 2 and Group 3 cameras always require *two* different wireless connection protocol devices for bilateral communication with the personal portable computing device – (i) the Bluetooth transmitter that initiates communications from the personal portable communication device to the camera and (ii) the separate Wi-Fi protocol device that transmits video data.  Dkt. 872 at 522:11-24.

### 3.    CIPH Failed To Prove Infringement By The Group 1 Products

Additionally, CIPH did not present evidence sufficient to establish infringement of Claims 12 and 6 by the Group 1 Products. Federal Circuit law requires that the plaintiff provide actual evidence, and not just expert conclusions, to show how each accused product meets each and every limitation of

---

connection protocol **device** that both sent image content and received control signals or data signals, CIPH may (depending on the evidence) have a plausible argument.  But the Group 2 and Group 3 products do not.  Instead, two different wireless connection protocol devices are required –one to send and one to receive the wireless data.

the asserted claims for direct infringement. *Finesse Wireless LLC v. AT&T Mobility LLC*, 156 F.4th 1221, 1225 (Fed. Cir. 2025). Moreover, where a plaintiff relies on product grouping, the plaintiff bears the burden of establishing that the appropriateness of the group and the representativeness of the products. *Carl Zeiss AG*, 2018 U.S. Dist. LEXIS 199081, at *2-3 ("Plaintiffs may litigate their case however they wish, but it is up to the factfinder to decide 'whether plaintiffs' groups are appropriate and supported by the evidence.'") (additional citation omitted); *Pulse Elecs., Inc. v. U.D. Elec. Corp.*, No. 3:18-cv-00373-BEN-MSB, 2021 U.S. Dist. LEXIS 49101, at *113-17 (S.D. Cal. Mar. 15, 2021) (finding evidence that one supplier's ICM components infringe is insufficient to support a conclusion that all ICM components infringe when it is undisputed that Apple had multiple sources for ICMs). Here, Dr. Hu presented ***no*** factual evidence regarding infringement of Claim 12 by the Group 1 Products, nor did she identify any evidence showing that the Group 1 Products meet the unique elements of Claim 6 of the '694 Patent. Dkt. 872 at 456:11-464:7. Aside from her bare assertion, Dr. Hu also provided no substantiation for the product grouping from which the jury could have reasonably concluded that infringement by one of the accused products necessarily meant that all products in Group 1 infringed. *Id*. As such, the jury's conclusion that CIPH had not "proven by a preponderance of evidence that GoPro literally infringed . . . with respect to the Live Preview Group 1 Products" is reasonable.

Moreover, even if the Court were to find that the jury's finding of non-infringement of Group 1 Products was incorrect (or inconsistent with the verdict of invalidity) that would not merit a new trial on damages because both parties presented a single damages rate, regardless of the number of patents or claims that were found valid and infringed. Dkt. 874 at 824:24-25 ("Q: It's one rate for those two patents; right? A: Correct"); *see also id*. at 873:2-874:6; Dkt. 876 at 1277:12-18. As a result, even if the Court (or the jury on retrial) were to find that Group 1 Products infringe additional claims, CIPH would not be entitled to any more damages than it already received from the jury.

## C. CIPH'S DEMAND FOR A NEW TRIAL ON DAMAGES IS SPECIOUS

CIPH's challenge to the jury's damages verdict is also unavailing. First, CIPH argues that the jury's award is "impermissible" because the jury put a dollar value in its response to Question 7 – and, therefore, CIPH surmises the jury must have "inexplicably awarded a lump sum." Dkt. 901 at 18-19.

But the damages question on the verdict form (to which CIPH did not object) specifically directs the jury to identify a "sum of money," *i.e.*, a dollar value. Dkt. 865 at 9. Moreover, in closing arguments, both parties presented total dollar figures that it asked the jury to award based on the royalty rates advocated by their respective experts. Dkt. 877 at 1516:10-19; *id.* at 1569:24-1570:1. As CIPH itself points out – the jury was never instructed on a lump sum royalty nor was there any misleading testimony or argument that CIPH contends would have caused the jury to be confused into granting a lump sum. It is significantly more plausible that the jury decided on an award of approximately $0.63 per unit and, applying the stipulated royalty base, calculated a dollar value that is about $8.2 million.[15]

Such a process would be consistent with the Court's instructions, the Parties' arguments, and the law. Nothing compels the jury to award damages with mathematical precision. Instead, CIPH's "argument largely boils down to the position that because the jury did not specifically apply either of the parties' experts' damages figures, their damages award must be overturned." *Fujifilm Corp. v. Motorola Mobility LLC*, 182 F. Supp. 3d 1014, 1042 (N.D. Cal. 2016) (Orrick, J.). This Court and others have repeatedly rejected that argument. *Id.*; *see also Spectralytics, Inc. v. Cordis Corp.*, 649 F.3d 1336, 1347 (Fed. Cir. 2011) ("The jury was entitled to choose a damages award within the amounts advocated by the opposing parties"); *Fuji Photo Film Co. v. Jazz Photo Corp.*, 394 F.3d 1368, 1378 (Fed. Cir. 2005) ("[T]he jury is not bound to accept a rate proffered by one party's expert but rather may choose an intermediate royalty rate."). Here, the jury's verdict falls squarely within the amounts urged by the Parties and is facially reasonable. There is no basis to overturn it.[16]

CIPH's second argument, that it should be entitled to a new trial on damages because it believes the "jury's consideration of damages was likely impacted by . . . the old vs new [product] distinction"

---

[15] The jury's verdict is slightly higher than 63 cents a unit, a difference easily explained by rounding ($0.63 x 12,997,023 units = $8,188,124.49).

[16] None of CIPH's cited authority compels a contrary conclusion. In each case CIPH cites, the verdict was overturned not for failure to adopt one party's damages number, but because the award violated the law. *See Wordtech Sys., Inc v. Integrated Networks Sols., Inc.*, 609 F.3d 1308, 1319-20 (Fed. Cir. 2010) (requiring new damages trial where verdict was more than double the plaintiff's request); *In re First All. Mortg. Co.*, 471 F.3d 977, 1002 (9th Cir. 2006) (vacating award that was pure average of parties' proposed numbers because "one of the figures used in the averaging was based on" a legally impermissible theory); *In re: NFL "Sunday Ticket" Antitrust Litig.*, 2024 WL 3628118, at *10 (C.D. Cal. Aug. 1, 2024) (vacating damages award because jury's methodology was clear and thus it was "the rare case in which it is sufficiently certain that the jury award was not based on proper consideration of the evidence").

1    and "by the number of claims/patents the jury found infringed and invalid" is frivolous.  Dkt. 901 at

2    19.  CIPH suggests, essentially, that it should be permitted a retrial so that it can mislead the jury into

3    believing that more infringed claims should result in higher damages – even though that theory would

4    contravene both parties' expert assessments of damages in this case.  *Supra* § III.B.3. CIPH is also

5    simply wrong that "GoPro conflated state of the art, prior art, and non-infringing alternatives."

6    Dkt. 901 at 19.  CIPH cites no evidence for this false statement, and the record belies CIPH's

7    contention. GoPro presented several non-infringing alternatives and focused on one in its damages

8    presentation: the removal of the ability of the camera to wirelessly receive changes to lighting, color,

9    and audio settings. Dkt. 874 at 897:25-898:10, 919:1-8; *id.* at 939:19-940:21; Dkt. 875 at 1150:6-20;

10   Dkt. 876 at 1248:6-11; 1251:4-1252:18. To be sure, GoPro argued that the Group 2 products were

11   different from the Group 1 products and thus non-infringing, but that is a far cry from saying they

12   were non-infringing ***alternatives*** or that the distinction should impact the royalty rate.[17] Moreover,

13   even if CIPH was correct about GoPro's use of the Group 2 products in its damages theory—and it is

14   not—it fails to explain how that would have impacted the verdict to such an extent that the damages

15   award for the Group 1 products is "contrary to the clear weight of the evidence," "based upon evidence

16   which is false," or would result in "a miscarriage of justice," as required to warrant a new trial. *United*

17   *States v. 4.0 Acres of Land*, 175 F.3d 1133, 1139 (9th Cir. 1999). Because the factual predicate of

18   CIPH's argument is false, and because it fails to meaningfully contend with the Rule 59 standard, its

19   motion for new trial on damages should be rejected.

20       **D.    CIPH IS NOT ENTITLED TO JMOL RE THE WOODMAN PRIOR**
            **INVENTION**

21

22       CIPH is not entitled to JMOL "on GoPro's 102(g) defense."  Dkt. 901 at 22. As set forth in

23   GoPro's co-pending Motion, there is sufficient evidence in the record to support the jury's

24   determination that Mr. Woodman's prior invention renders the Asserted Claims invalid.  Dkt. 900 at

25   § IV.C. CIPH's scattershot attacks on the evidence are spurious.

26

27   [17] Indeed, such an argument would have been legally improper as "[t]he hypothetical negotiation …
     assumes that the asserted patent claims are valid and infringed," *Lucent Techs., Inc. v. Gateway, Inc.*,

28   580 F.3d 1301, 1325 (Fed. Cir. 2009), and Dr. Kennedy followed that premise in his analysis. 10/7/25
     Tr. (Kennedy) at 1236:5-10 ("I assume liability. So in this case, I assume valid and infringed patents.").

CIPH's argument that the Woodman Prior Invention cannot be invalidating because Mr. Woodman does not claim to be the first inventor (or to have invented the same exact thing as the Contour inventors) does not support judgment as a matter of law. Nothing in 35 U.S.C § 102(g) requires that the prior art invention be "first to invent," it only requires that the invention be conceived before the priority date. *Mycogen Plant Sci., Inc. v. Monsanto Co.*, 243 F.3d 1316, 1332 (Fed. Cir. 2001); *Alexsam, Inc. v. Gap, Inc.*, 621 F. App'x 983, 988 (June 16, 2015) (citations omitted). The case CIPH cites, *Union Carbide*, is not to the contrary – instead, there, the evidence showed that conception was not complete because the inventor did not understand the concept she created. *Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co.*, 308 F.3d 1167, 1189 (Fed. Cir. 2002). That analysis is inapplicable here and nothing in *Union Carbide* stands for the proposition that Mr. Woodman had to believe he was the first person to come up with the claimed invention – just that he conceived of the claimed combination of elements before Contour. The fact that Mr. Woodman did not believe that he was the first merely reflects the fact that Contour's alleged inventions was well known in the prior art. Dkt. 875 at 1128:3-12.

CIPH's attacks on reduction to practice are similarly unavailing. Contrary to CIPH's contention, there is sufficient evidence to support a finding that the Woodman invention was reduced to practice before the priority date afforded to the claimed invention. For example, both Mr. Woodman and Mr. Donovan testified that the invention was reduced to practice by Mr. Donovan to prove out the concept before GoPro went on to order *400* near-complete prototypes. Dkt. 868-6 at 49:05-57:22, 84:20-85:13, 100:19-138:16; Dkt. 873 at 677:6-17; Dkt. 876 at 1351:3-13; Dkt. 875 at 1100:18-1101:12. Moreover, the law does not require reduction to practice before the priority date – it only requires conception before the priority date and diligent reduction to practice thereafter. *REG Synthetic Fuels, LLC v. Neste Oil Oyj*, 841 F.3d 954, 958 (Fed. Cir. 2016).

In its Motion, CIPH does not dispute that the jury could have found that HERO2 with the Wi-Fi Bac Pac was a reduction to practice of the claimed invention nor that Mr. Woodman testified extensively to the ongoing work GoPro did to develop its wireless camera. *See, e.g.*, Dkt. 873 at 676:11-681:20. Its attacks focus exclusively on corroboration. Dkt. 901 at 23. But the trial record includes ample corroborating evidence, including engineering specifications and emails, physical

1    prototype devices, Mr. Donovan's testimony regarding GoPro's efforts to develop a product with a

2    robust wireless connection, and the unassailable fact that GoPro actually released a product that the

3    court found to practice Claim 11. *See, e.g.*, Dkt. 881-107, Dkt. 881-32, Dkt. 881-98, Dkt. 881-97, Dkt.

4    868-6 at 41:17-43:13, 57:06-73:22, 84:20-138:20.    Far from an undisputed "one year period of

5    inactivity" (Dkt. 901 at 24), every witness with personal knowledge testified consistently that work

6    was ongoing and there are both prototypes and documents that support their testimony.    Dkt. 873 at

7    686:14-691:18;  Dkt. 868-6 at 41:17-43:13, 57:06-73:22, 84:20-138:20.[18]    Diligence is also

8    corroborated by CIPH's own witness testimony that developing and commercializing a product takes

9    **years** of continuous work.  Dkt. 868-3 at 43:02-43:09, 51:19-52:15, 53:12-16; Dkt. 872 at 516:3-10.

10   The jury had ample evidence to conclude that the HERO2 with WiFi BacPac did not materialize out

11   of thin air. The fact that GoPro launched that product commercially supports a finding of ongoing

12   diligence and contradicts CIPH's argument – predicated on its diversionary identification of

13   contemporaneous work on other products – that GoPro abandoned the invention. *Dow Chem. Co. v.*

14   *Astro-Valcour, Inc.*, 267 F.3d 1334, 1343 (Fed. Cir. 2001) (additional citations omitted) ("[I]n cases

15   in which an invention is disclosed to the public by commercialization, courts have excused delay upon

16   proof that the first inventor engaged in reasonable efforts to bring the invention to market.").

17       The question of reasonable diligence is a case specific inquiry that turns on the factual record

18   to which a rule of reason, rather than rigid temporal requirements, applies.  *Monsanto Co. v. Mycogen*

19   *Plant Sci., Inc.*, 261 F.3d 1356, 1369 (Fed. Cir. 2001).  Similar to CIPH's challenge here, in *Monsanto*,

20   the Federal Circuit evaluated a challenge to the jury's verdict predicated on pointing to gaps between

21   various dates that were corroborated by lab notebooks, testimony, and discovery responses. *Id*.

22   Considering all the evidence before it, the Circuit found a pattern of ongoing activity suggesting that

23   work reducing the prior invention to practice was ongoing despite, for example, a lack of daily lab

24   notebook entries during the critical period, thereby finding sufficient evidence to uphold the jury's

25   verdict of invalidity based on prior invention. *Id.* at 1370. The surrounding circumstances of GoPro's

26   commercial product development and corroborated, consistent testimony that GoPro continually

27   _____

28   [18] For example, the WiFi BacPac Product Requirements Document includes a revision history that
     starts with version 1.7 (suggesting there are earlier versions) in 2011.  Dkt. 873 at 688:22-690:9; Dkt.
     881-94; Dkt. 868-6 at 73:03-73:22; Dkt. 881-94.

1   worked to reduce Mr. Woodman's invention to practice compels the same result as in *Monsanto*.

2          The cases cited by CIPH do not hold differently.  As an initial matter, every case CIPH cites

3   relates to a different type of proceeding (interference proceedings before the Patent Board) and a

4   different legal standard (reviewing findings of priority for reasonableness).  Dkt. 901 at 24.  None of

5   the cases suggest that the Court should substitute its judgment for that of the jury's when the factual

6   record could reasonably support a finding of diligence.  Indeed, *Griffith v. Kanamaru* (cited Dkt. 901

7   at 24) illustrates the opposite.  There, the Federal Circuit affirmed the determination of the Board of

8   Patent Appeals that an admitted cessation of work for three months supported the Board's conclusion

9   that the inventor was not entitled to an award of priority.  816 F.2d 624, 627 (Fed. Cir. 1987).  But the

10  Circuit also pointed out that similar periods of activity were found in other cases to be reasonable.  *Id.*;

11  *see also Gould v. Townes*, 1416, 363 F.2d 908, 919 (C.C.P.A. 1966); *In re Nelson*, 57 C.C.P.A. 893,

12  895, 420 F.2d 1079, 1081 (C.C.P.A. 1970) (holding that "constant effort is not required," just a

13  reasonable effort to "explain the delay").  So too in *In re Meyer Manufacturing*, where the Federal

14  Circuit found that a "gap of just over two months" could support a finding "that appellant was probably

15  diligent" but could also support a factual conclusion to the contrary.  411 F. App'x 316, 319-20 (Fed.

16  Cir. 2010).  Taken together CIPH's case law supports GoPro, not CIPH, because it underscores the

17  intensely factual nature – largely turning on the credibility of the witnesses and their explanations – in

18  determining reasonable diligence.  Moreover, none of the cases holds, as CIPH argues, that a party

19  must offer documentary evidence of day-to-day activities in order to corroborate diligence.  "The

20  threshold to overturn a jury decision is high," and in order vacate the jury's determination that Mr.

21  Woodman's prior invention renders the Asserted Claims invalid, the Court would "need to conclude

22  that no reasonable juror could have made the presumed findings." *Monsanto*, 261 F.3d at 1370. Here,

23  Mr. Woodman's testimony was sufficiently corroborated by the numerous development documents,

24  witness testimony, and resulting commercial product to allow a jury to countenance his attested

25  statement that work on the wireless camera project including the claimed invention was ongoing until

26  HERO2 with the Wi-Fi Bac Pac was released.  Applying the correct legal standard, it is clear that

27  JMOL is inappropriate.

28        **E.     CIPH's Demand for Pre-Trial Interest Is Premature And Violates The Law**

CIPH's request for prejudgment interest is inflated and results in a punitive award against GoPro, not fair compensation to CIPH. "Prejudgment interest is not a penalty, but instead serves to make the patent owner whole." *Schwendimann v. Arkwright Advanced Coating, Inc.*, 959 F.3d 1065, 1076 (Fed. Cir. 2020). A patentee's undue delay in prosecution [of the case may] justify denial of prejudgment interest." *Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1361 (Fed. Cir. 2001). Here, the Court would be within its discretion to deny pre-judgment interest entirely given: (1) CIPH's initial filing and subsequent dismissal in the District of Utah; (2) CIPH's decision to then refile in a clearly inconvenient court with which it had no active connection; and (3) CIPH's subsequent decisions to twice introduce new products on the eve of trial instead of waiting for post-trial briefing, which necessitated additional discovery and motion practice. All told, CIPH's conduct added years to this lawsuit, years that it seeks to turn into a multi-million-dollar-windfall at its conclusion. At a minimum, the Court must consider the delays introduced by CIPH (and which are of no fault of GoPro's) in calculating pre-judgment interest to ensure that the ultimate award does not punish GoPro for CIPH's delays. *Enzo Biochem, Inc. v. Applera Corp.,* No. 3:04CV929 JBA, 2014 WL 29126, at *5 (D. Conn. Jan. 3, 2014) ("[C]onsider[ing] [patentee]'s litigation tactics that collectively contributed to the delay in reaching judgment in this case" and "limit[ing] the recovery that [patentee] will receive as a result of such self-inflicted delay" by awarding prejudgment interest at the Treasury Bill rate.)

The Court should also adjust CIPH's demand for prejudgment interest because it is predicated on the unsubstantiated supposition that the judgment is a lump sum figure. When properly viewed as a running royalty, CIPH's proposal defies the "common-sense view that interest cannot accrue for monetary relief for an event until the event triggering the monetary relief has occurred." *AMS-OSRAM USA Inc. v. Renesas Elecs. Am., Inc.*, 133 F.4th 1337, 1358 (Fed. Cir. 2025); *see also Opticurrent, LLC v. Power Integrations, Inc.*, No. 17-CV-03597-EMC, 2019 WL 2389150, at *20 (N.D. Cal. June 5, 2019); *Retractable Techs. Inc. v. Becton, Dickinson & Co.*, No. 2:07-CV-250, 2010 WL 9034910, at *3 (E.D. Tex. May 19, 2010) (running royalties "[do] not begin to accrue until [defendant] [begins] manufacturing and selling the infringing products"). As Dr. Kennedy does in his calculations, the

1   Court should award pre-judgment interest based on when the infringing sales occurred.[19] Ex. A,

2   Kennedy Decl. at ¶¶ 3-4 & Schedules 2.1, 2.2, 3.1 & 3.2.

3       The Court should also reject CIPH's request for interest at the prime rate in favor of the more

4   reasonable Treasury Bill rate.  The "Treasury Bill rate has been accepted and employed by many courts

5   in patent cases as a reasonable method of placing a patent owner in a position equivalent to where it

6   would have been had there been no infringement *Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*,

7   No. 12-CV-05501-SI, 2018 WL 4849681, at *2 (N.D. Cal. Oct. 4, 2018)*, aff'd* 809 F. App'x 965 (Fed.

8   Cir. 2020); *Laitram Corp. v. NEC Corp.*, 115 F.3d 947, 955 (Fed. Cir. 1997); *Fitness Anywhere LLC*

9   *v. WOSS Enters. LLC*, No. 14-CV-01725-BLF, 2018 WL 6069511, at *8 (N.D. Cal. Nov. 20, 2018);

10  *Apple, Inc. v. Samsung Elecs. Co.*, 67 F. Supp. 3d 1100, 1122 (N.D. Cal. 2014); *Hynix Semiconductor*

11  *Inc. v. Rambus Inc.*, No. CV-00-20905 RMW, 2006 WL 2522506, at *2 (N.D. Cal. Aug. 30, 2006).

12  Further, courts generally refuse to award the Prime Rate where, like here, the plaintiff presents no

13  evidence "suggesting it needed to borrow money because it was deprived of the damages award."

14  *Verinata Health*, 2018 WL 4849681, at *2. The Court should award prejudgment interest, if at all, at

15  the risk-free Treasury Bill rate.  Similarly, CIPH's request for quarterly compound interest has been

16  previously rejected by this Court.  *Illumina, Inc. v. BGI Genomics Co.*, No. 19-CV-03770-WHO, 2022

17  WL 899421, at *32 (N.D. Cal. Mar. 27, 2022) ("I am 'unconvinced that quarterly compounding is

18  necessary[.]'") (quoting *Verinata Health, Inc.*, 2018 WL 4849681, at *2). If the Court awards any

19  compounding at all, it should award annual compounding.

20  **IV.    CONCLUSION**

21      For the foregoing reasons, CIPH's Motion should be denied.

---

[19] Even if calculated based upon a lump sum, the proper start date is January 5, 2015, because, as this Court determined, CIPH is not entitled to pre-notice damages for failure to mark. Dkt. 444 at 16. *Trs. of Bos. Univ. v. Everlight Elecs. Co.*, 187 F. Supp. 3d 306, 322 (D. Mass. 2016).

1  Dated: January 28, 2026         BY:  **ALSTON & BIRD LLP**
                                        */s/ Michelle Ann Clark*
2                                       Michelle Ann Clark (SBN 243777)
                                        Philip C. Ducker (SBN 262644)
3                                       Dana Zottola (SBN 346715)
                                        **ALSTON & BIRD LLP**
4                                       55 Second Street, Suite 2100
                                        San Francisco, California 94105-0912
5                                       Telephone: (415) 243-1000
                                        Facsimile: (415) 243-1001
6                                       michelle.clark@alston.com
                                        phil.ducker@alston.com
7                                       dana.zottola@alston.com

8                                       John D. Haynes (admitted *pro hac vice*)
                                        Sloane S. Kyrazis (admitted *pro hac vice*)
9                                       **ALSTON & BIRD LLP**
                                        One Atlantic Center
10                                      1201 West Peachtree Street
                                        Atlanta, GA 30309-3424
11                                      Telephone:    404-881-7000
                                        Facsimile:    404-881-7777
12                                      john.haynes@alston.com
                                        sloane.kyrazis@alston.com

13                                      Karlee N. Wroblewski (admitted *pro hac vice*)
                                        **ALSTON & BIRD LLP**
14                                      Bank of America Plaza
                                        Suite 4000
15                                      101 South Tryon Street
                                        Charlotte, NC 28280-4000
16                                      Telephone:    (704) 444-1000
                                        Facsimile:    (704) 444-1111
17                                      karlee.wroblewski@alston.com

18                                      Elliott C. Riches (admitted *pro hac vice*)
                                        **ALSTON & BIRD LLP**
19                                      2200 Ross Avenue
                                        Suite 2300
20                                      Dallas, TX 75201
                                        Telephone:    (214) 922-3492
21                                      elliott.riches@alston.com

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICES

Pursuant to the Federal Rules of Civil Procedure and Civil L.R. 5, I hereby certify that, on January 28, 2026, all counsel of record who have appeared in this case were served with a copy of the foregoing via ECF.

*/s/ Michelle Ann Clark*
Michelle Ann Clark