1  John R. Keville *(Pro Hac Vice)*
   jkeville@sheppardmullin.com
2  Michelle C. Replogle *(Pro Hac Vice)*
   mreplogle@sheppardmullin.com
3  Michael C. Krill *(Pro Hac Vice)*
   mkrill@sheppardmullin.com
4  Sunny Akarapu *(Pro Hac Vice)*
   sakarapu@sheppardmullin.com
5  SHEPPARD, MULLIN, RICHTER &
   HAMPTON, LLP
6  845 Texas Avenue, 25th Floor
7  Houston, Texas 77002-2791
   Telephone: (713) 431-7100
8  Facsimile: (713) 431-7024

9  Lai L. Yip (SBN 258029)
   lyip@sheppardmullin.com
10 SHEPPARD, MULLIN, RICHTER &
   HAMPTON, LLP
11 Four Embarcadero Center Seventeenth Floor
   San Francisco, CA 94111
12 Telephone: (415) 434-9100
   Facsimile: (415) 875-6700
13
   Attorneys for Plaintiff,
14 CONTOUR IP HOLDING, LLC

15               IN THE UNITED STATES DISTRICT COURT
16            FOR THE NORTHERN DISTRICT OF CALIFORNIA
17                     SAN FRANCISCO DIVISION

| | |
|---|---|
| CONTOUR IP HOLDING, LLC, | **CONSOLIDATED** |
| | Lead Case No. 17-cv-04738-WHO |
| Plaintiff, | Consolidated Case No. 21-cv-02143-WHO |
| vs. | **PLAINTIFF CONTOUR IP HOLDING, LLC'S REPLY IN SUPPORT OF ITS MOTION FOR NEW TRIAL AND JUDGMENT AS A MATTER OF LAW** |
| GOPRO, INC., | |
| Defendant. | Judge: William H. Orrick |
| | Date: March 11, 2026 |
| | Time: 2:00 p.m. |
| | Location: Courtroom 2, 17th Floor |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ...........................................................................................................1

II. ARGUMENT .................................................................................................................2

    A. A New Trial Is Necessary On All Verdict Issues ..............................................2

        1. GoPro's Opposition establishes that the only options are (1) a new trial on all verdict issues, or (2) judgment on the verdict ..........................2

        2. GoPro's Opposition confirms that the verdict cannot be reconciled ................3

    B. Whatever The Scope Of A New Trial, JMOL Should Be Granted On Discrete Issues Which Will Narrow The New Trial .......................................................7

        1. Contour is Entitled to JMOL of Infringement for the Group 1 Products ..........7

        2. Contour Is Entitled To JMOL of, or Alternatively a New Trial On, Infringement for the Group 2 Products ..............................................................8

        3. Contour Is Entitled To JMOL That The Alleged "Woodman Prior Invention" Is Not Prior Art ........................................................................9

    C. Contour Is Entitled To Post-Trial Relief If Judgment On The Verdict Is Entered ..............................................................................................................12

III. CONCLUSION ...........................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

Cases

*A&L Tech. v. Resound Corp.*
  1995 WL 415146 (N.D. Cal. June 29, 1995) ................................................................. 13

*Apple, Inc. v. Samsung Elecs. Co.*
  67 F. Supp. 3d 1100 (N.D. Cal. 2014) ......................................................................... 13

*Apple, Inc. v. Samsung Elecs. Co.*
  920 F. Supp. 2d 1079 (N.D. Cal. 2013) ......................................................................... 2

*Application of Nelson*
  420 F.2d 1079 (C.C.P.A. 1970) ................................................................................... 11

*Carl Zeiss AG v. Nikon Corp.*
  2018 WL 1858160 (C.D. Cal. Mar. 27, 2018) ............................................................... 7

*Creative Compounds, LLC v. Starmark Lab'ys*
  651 F.3d 1303 (Fed. Cir. 2011) .................................................................................... 11

*Diaz v. Tesla, Inc.*
  3:17-CV-06748-WHO, 2022 WL 17584235 (N.D. Cal. Dec. 12, 2022) (Orrick, J.) ...... 5

*E.E.O.C. v. Hill Bros. Const. & Eng'g Co.*
  2007 WL 2702663 (N.D. Miss. Sept. 12, 2007) ............................................................. 6

*Ford v. Peery*
  999 F.3d 1214 (9th Cir. 2021) ........................................................................................ 6

*Fujifilm Corp. v. Motorola Mobility LLC*
  182 F. Supp. 3d 1014 (N.D. Cal. 2016) (Orrick, J.) ..................................................... 13

*Gasoline Prods. Co. v. Champlin Ref. Co.*
  283 U.S. 494 (1931) ........................................................................................................ 5

*Gonzales v. Battelle Energy All., LLC*
  2025 WL 371086 (D. Idaho Feb. 3, 2025) ..................................................................... 6

*Great W. Capital, LLC v. Payne*
  No. 3:22-CV-00768, 2025 WL 2463216 (D. Or. Aug. 27, 2025) .................................. 3

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*
  No. 2023-1772, 2025 WL 649737 (Fed. Cir. Feb. 28, 2025) ....................................... 12

*Holloway v. Orange Cnty.*
  2024 WL 1816943 (C.D. Cal. Mar. 18, 2024) ............................................................... 6

*Home Indem. Co. v. Lane Powell Moss & Miller*
   43 F.3d 1322 (9th Cir. 1995) ...................................................................................................3

*Kane v. PaCap Aviation Fin., LLC*
   No. CV 19-00574 JAO-RT, 2023 WL 9197986 (D. Haw. Nov. 29, 2023) ..........................2, 3

*Knapp v. Morss*
   150 U.S. 221 (1893) ..................................................................................................................2

*Kode v. Carlson*
   596 F.3d 608 (9th Cir. 2010) ....................................................................................................2

*Lummus Indus., Inc. v. D.M. & E. Corp.*
   862 F.2d 267 (Fed. Cir. 1988) ................................................................................................12

*Milwaukee Elec. Tool Corp. v. Snap-On Inc.*
   288 F. Supp. 3d 872 (E.D. Wis. 2017) ...................................................................................13

*Monsanto Co. v. Mycogen Plant Sci., Inc.*
   261 F.3d 1356 (Fed. Cir. 2001) ..............................................................................................11

*Opticurrent, LLC v. Power Integrations, Inc.*
   No. 17-CV-03597-EMC, 2019 WL 2389150 (N.D. Cal. June 5, 2019) .................................12

*Pulse Elecs., Inc. v. U.D. Elec. Corp.*
   2021 WL 981123 (S.D. Cal. Mar. 16, 2021) ............................................................................7

*SEB S.A. v. Montgomery Ward & Co.*
   594 F.3d 1360 (Fed. Cir. 2010), *aff'd sub nom. Glob.-Tech Appliances, Inc. v. SEB S.A.*,
   563 U.S. 754 (2011) ..................................................................................................................4

*Texas Advanced Optoelectronic Sols., Inc. v. Renesas Elecs. Am., Inc.*
   895 F.3d 1304 (Fed. Cir. 2018) ................................................................................................4

*Union Carbide Chemicals & Plastics Tech. Corp. v. Shell Oil Co.*
   308 F.3d 1167 (Fed. Cir. 2002) ..............................................................................................10

*Venezia v. Bentley Motors, Inc.*
   No. CV-07-1511, 2009 WL 10673383 (D. Ariz. Apr. 2, 2009), *aff'd*, 374 Fed. Appx. 765
   (9th Cir. 2010) ..........................................................................................................................3

Statutes

U.S.C. 35
   § 102(g) ...................................................................................................................................10

## I. INTRODUCTION

In an effort to avoid the full new trial it realizes is required under the law, GoPro makes multiple arguments that directly contradict its own arguments for JMOL or a limited new trial. As a start, GoPro argues that the numerous inconsistencies in the verdict should simply be ignored because it is a "general" verdict, which does not need to be reconciled. This statement dooms GoPro's own new trial motion though, because inconsistencies in general verdicts must be objected to *before* the jury is discharged. Having failed to do so—likely because GoPro recognized the jury had awarded damages and thus would fix the inconsistency in Contour's favor—GoPro cannot now ask for a limited new trial on invalidity. The only other option is a full new trial to resolve all inconsistencies as explained in Contour's opening brief. Thus, GoPro's about-face ultimately simplifies the question before the Court, as the only options that fit GoPro's new positions are: 1) entering judgment on the $8.2 million verdict, punting all the issues to the Federal Circuit Court of Appeals, or 2) ordering a new trial on all verdict issues so a consistent verdict can be rendered.

The Court should do the latter because the verdict is irreconcilable. On that point, GoPro again contradicts its prior statements. Just eight weeks ago, when it sought to avoid liability entirely through JMOL, GoPro stated that "the jury's conclusion that Claim 6 of the '694 Patent is invalid as anticipated and obvious is ***inconsistent*** with its verdict regarding Claim 11 because both parties' experts treated the claims as overlapping except as to the additional elements [in Claim 6] of the '694 Patent." Dkt. 900 at 12–13. Shamelessly, GoPro now argues that "Claim 6 … lacks certain claim elements present in the '954 Patent claims" (Opp. at 1) and "there is ***no legal inconsistency*** between the jury's conclusion that Claim 6 is invalid but Claim 11 is valid" (*id*. at 12). GoPro's about-face speaks volumes. What changed was not the inconsistency—what changed was that GoPro realized it could not benefit from the inconsistency. GoPro's JMOL of invalidity cannot be granted in view of the substantial evidence supporting the jury's finding that claim 11 is valid, and GoPro's JMOL would not resolve the inconsistencies in the jury's verdict. Dkt. 902 at 7–9.

Accordingly, the only option is a new trial on all verdict issues other than those disposed of on JMOL, i.e., the Group 1 Products infringe '954 claim 12 and '694 claim 6, the Group 2 Products infringe '954 claims 11–12 and '694 claim 6, and Woodman's alleged prior invention is not prior art.

## II. ARGUMENT

### A. A New Trial Is Necessary On All Verdict Issues

#### 1. GoPro's Opposition establishes that the only options are (1) a new trial on all verdict issues, or (2) judgment on the verdict

Recognizing its JMOL cannot be granted, GoPro's proposed new alternative is a limited new trial on the validity of claims 11 and 12. Opp. at 10–11. GoPro does not meaningfully dispute that there are other inconsistencies, so instead it argues that they can be ignored because "the verdict here is a general verdict" which "asked the jury to make the ultimate legal conclusions of infringement and invalidity," rather than a "special verdict." *Id.* But if the inconsistencies between infringement and invalidity can be ignored because they are "general" verdicts, then so too can the inconsistent validity findings for claims 11 and 12. For example, just as claim 12 cannot be invalid if claim 11 is valid, the HERO2 with WiFi BacPac cannot anticipate any claim without also infringing that claim (and vice-versa). *See Knapp v. Morss*, 150 U.S. 221, 228 (1893) ("that which infringes, if later, would anticipate, if earlier"). Thus, the jury's verdict on infringement cannot legally coexist with the jury's verdict on anticipation.[1]

If the Court accepts GoPro's contention that these were general verdict questions that can be inconsistent, however, then the Court must enter the judgment for $8.2 million because objections to inconsistencies in general verdicts are waived if not raised before the jury is discharged. *See Kode v. Carlson*, 596 F.3d 608, 611 (9th Cir. 2010) (stating there is waiver when a "moving party argues that the jury has rendered a verdict that contains two legal conclusions that are inconsistent with one another, and the moving party does not object before jury discharge"); *Kane v. PaCap Aviation Fin., LLC*, No. CV 19-00574 JAO-RT, 2023 WL 9197986, at *3 (D. Haw. Nov. 29, 2023) ("[T]he Ninth Circuit employs a 'strict waiver rule' when it comes to raising an inconsistency in a general verdict form—the party objecting to the inconsistency must raise the objection before the jury is discharged."). GoPro flagged the inconsistency between claim 11 and 12, but made no objection to the Court entering

---

[1] GoPro's reliance on *Apple, Inc. v. Samsung Elecs. Co.*, 920 F. Supp. 2d 1079, 1101 (N.D. Cal. 2013) is inapposite because that involved a factual inconsistency in the jury's verdict that certain products infringed while other "identical" products did not infringe. Here, the jury's verdict that one specific product anticipates is legally inconsistent with its verdict that the same product does not infringe.

the verdict. Trial Tr. 1607:13–17. Per GoPro, that was an inconsistency on a general verdict, and it is therefore waived. *Home Indem. Co. v. Lane Powell Moss & Miller*, 43 F.3d 1322, 1331 (9th Cir. 1995) ("When counsel is invited to consider whether or not to discharge the jury, counsel risks waiver of objections to any inconsistencies in the jury's findings if counsel does not raise the issue before the jury is excused."); *Kane*, 2023 WL 9197986 at *3 ("Au waived his objection by not raising it before the Jury was discharged, despite having had the opportunity to do so."); *Venezia v. Bentley Motors, Inc.*, No. CV-07-1511, 2009 WL 10673383, at *3 (D. Ariz. Apr. 2, 2009), *aff'd*, 374 Fed. Appx. 765 (9th Cir. 2010) (finding waiver when defendant "did not object to the jury's verdict or ask that the verdict form be resubmitted to the jury with other instructions"); *Great W. Capital, LLC v. Payne*, No. 3:22-CV-00768, 2025 WL 2463216, at *8 (D. Or. Aug. 27, 2025) ("Parties must raise any objections to the verdict form itself before the jury is dismissed … and must raise any objections to an inconsistent jury verdict at the same time.") (internal citations omitted).

By seeking only a limited trial, GoPro asks the Court to apply the rules only in GoPro's favor, rather than to all inconsistencies. While misguided, GoPro's assertion that all questions were general verdicts ultimately simplifies the issue for the Court to only two options: 1) a new trial on everything, as Contour argued in its motion, or 2) entering judgment on the $8.2 million verdict because the parties waived objections to inconsistencies in the general verdict.

### 2.  GoPro's Opposition confirms that the verdict cannot be reconciled

To escape a full new trial that would be necessary for special verdicts, GoPro attempts to reconcile the irreconcilable. It first argues that "there is no legal inconsistency between the jury's conclusion that Claim 6 is invalid but Claim 11 is valid because these claims are from different patents, do not depend from each other, and have materially different claim elements." Opp. at 12. This directly contradicts GoPro's JMOL argument that "the jury's conclusion that Claim 6 of the '694 Patent is invalid as anticipated and obvious is inconsistent with its verdict regarding Claim 11 because both parties' experts treated the claims as overlapping except as to the additional elements of the '694 Patent," such that "the trial record is devoid of any evidence that would give the jury an evidentiary basis to support a unique finding as to Claim 11." Dkt. 900 at 12–13.

GoPro next baselessly asserts there is "a facially plausible, legally sufficient way to reconcile the verdicts" because Contour "does not dispute that the judgment of invalidity based on obviousness in view of Boland and Ambarella is supported." Opp. at 12. That is wrong. As Contour showed, the jury's verdict that claim 11 is not obvious is inconsistent with the jury's verdict that claim 12 (which depends on claim 11) is obvious (Mot. at 15), *and* inconsistent with the jury's verdict that claim 6 of the '694 patent is obvious (*id*. at 16). GoPro's JMOL agreed. *See* Dkt. 900 at 12–13 (quoted above). Because GoPro's JMOL that claim 11 is obvious must be denied, the obviousness verdict is irreconcilable.

Furthermore, GoPro's argument depends on the assumption that the jury rendered its obviousness verdict based on Boland and Ambarella despite the evidence to the contrary. *See SEB S.A. v. Montgomery Ward & Co.*, 594 F.3d 1360, 1374 (Fed. Cir. 2010), *aff'd sub nom. Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754 (2011) ("Under the general verdict rule, where one or more of multiple claims is found legally invalid, a reviewing court must reverse and order a new trial *if unable to determine* whether the invalid theory tainted the verdict."); *See Texas Advanced Optoelectronic Sols., Inc. v. Renesas Elecs. Am., Inc.*, 895 F.3d 1304, 1316 (Fed. Cir. 2018) ("*If it is impossible to tell* whether a correct theory has been used, we reverse for a new trial."). If one is to guess at the jury's reasoning like GoPro, it is much more likely the obviousness verdict is based on HERO2 + Wi-Fi BacPac, since the jury already found anticipation of some claims based on that reference. Dkt. 865 at 6. Indeed, that result was exactly what GoPro asked the jury to answer versus only answering obviousness if they agreed about Boland and Ambarella. *See* Trial Tr. at 1523:15–24 ("[I]f you think . . . that it would have been obvious based on the combined teaching of [Boland and Ambarella] . . . that's enough. You can check the invalid box for obviousness. If you think separately that Mr. Woodman, his prior conception and reduction to practice is enough, you can check *both* anticipation and obvious . . ."). The jury was also instructed that "materially new" art might lessen GoPro's burden (*id*. at 1452:2–12), whereas it was agreed that the USPTO considered both Boland and Ambarella (*id*. 1185:7–15, 1596:16–18). In totality, it is very likely that all invalidity verdicts were based on the HERO2 + Wi-Fi Bac.

1    GoPro then shifts to arguing that the jury's anticipation and infringement verdicts "are not
2    factually inconsistent" because the jury could have "simply concluded that Claim 12 was anticipated,
3    but [Contour] failed to carry its burden of proving by a preponderance of the evidence that all of the
4    Group 1 Products infringe Claim 12 (or Claim 6 …)." Opp. at 13. As shown below, no reasonable
5    jury could have found non-infringement for the Group 1 Products, considered individually or as a
6    group. *Infra* § II.B.1. Moreover, while GoPro now complains that "[t]here is no stipulation or
7    instruction that pre-determines that all the Group 1 Products are the same" (Opp. at 13), that point is
8    undisputed for infringement purposes. GoPro never objected to including the 20 cameras in "Group
9    1" for infringement nor did it identify any "material" differences among the 20 cameras at trial.
10   Instead, GoPro adopted these same product groupings in pretrial (including its proposed verdict form)
11   and at trial. *See, e.g.*, Dkt. 796-9 (GoPro's proposed verdict form listing the same 20 cameras as
12   "Group 1 Live Preview Products"); Trial Tr. at 1130:13–1131:25 (Almeroth testifying about "Group
13   1" products). Hence, the Court instructed the jury that on the verdict form, "the Live Preview Group
14   1 products" were "listed down in the first footnote," with no objection from GoPro. Trial Tr. at
15   1468:25–1469:6. Through its actions, GoPro *did* stipulate that all Group 1 Products are the same for
16   infringement purposes and there is no evidence in the record for a reasonable jury to have concluded
17   otherwise (*infra* § II.B.1). Thus, the anticipation and infringement verdicts are irreconcilably
18   inconsistent.
19   Finally, as Contour showed, the questions of infringement and validity are so interwoven with
20   questions of willfulness and damages that these issues must be retried together. *See* Mot. at 16–19.
21   This is a straightforward application of the Supreme Court's ruling in *Gasoline Products* to this case.
22   *See id*. at 16. In response, GoPro argues that "this Court has rejected that *Gasoline Products* stands
23   for such a rule," citing *Diaz v. Tesla, Inc.*, 3:17-CV-06748-WHO, 2022 WL 17584235, at *5 (N.D.
24   Cal. Dec. 12, 2022) (Orrick, J.). Opp. at 14–15. Not so. This Court in *Diaz* addressed whether "to
25   allow retrial of ***punitive damages*** without retrying liability," and observed that "new damages-only
26   trials are appropriate where the questions of liability and damages are not 'so interwoven' that trying
27   them separately may result in juror 'confusion and uncertainty.'" 2022 WL 17584235, at *5, *7. This
28   is consistent with the holding of *Gasoline Products*. *See Gasoline Prods. Co. v. Champlin Ref. Co.*,

1    283 U.S. 494, 500 (1931) ("[A] partial new trial … may not properly be resorted to unless it clearly
2    appears that the issue to be retried is so distinct and separable from the others that a trial of it alone
3    may be had without injustice."). Here, if infringement and/or validity are retried, damages and
4    willfulness must also be retried. *See* Mot. at 16–19.

5    Ultimately, while GoPro's explanations are belied by the record, there is a much more plausible
6    explanation for the inconsistent verdict: the jury simply reached a compromise. "A compromise
7    verdict is one reached when the jury, unable to agree on liability, compromises that disagreement and
8    enters a low award of damages." *Holloway v. Orange Cnty.*, 2024 WL 1816943, at *9 (C.D. Cal. Mar.
9    18, 2024). "These types of verdicts warrant a new trial on all issues because both the jury's liability
10   and damages conclusions reflect pragmatic considerations, instead of its true view of the facts." *Id.*
11   To determine if a verdict is a compromise verdict, courts look to: "(1) an inadequate award of damages,
12   (2) whether the issues of liability were strongly contested, (3) whether the jury was confused, (4)
13   whether the parties are satisfied with the verdict, (5) how long the jury deliberated, (6) whether the
14   jury requested additional instructions, and (7) whether the jury had attempted to qualify its award in
15   any way." *E.E.O.C. v. Hill Bros. Const. & Eng'g Co.*, 2007 WL 2702663, at *4 (N.D. Miss. Sept. 12,
16   2007). At the outset, everyone (including the Court) agrees the final verdict is inconsistent, which is
17   "a ***particularly strong indication*** of a compromise verdict." *Gonzales v. Battelle Energy All., LLC*,
18   2025 WL 371086, at *3 (D. Idaho Feb. 3, 2025) (citing *Ford v. Peery*, 999 F.3d 1214, 1226 (9th Cir.
19   2021)). The jury took three days to deliberate, which GoPro implies was a substantial amount of time.
20   Opp. at 8–9. The jury also asked multiple questions during deliberations, demonstrating its confusion
21   over key issues. *See, e.g.*, Dkt. 862; Dkt. 864. And GoPro itself maintains that liability was strongly
22   contested (Opp. at 8–9). Further, GoPro's brief is a clear indication that it is *not* satisfied with the
23   verdict, as it is resorting to internally inconsistent arguments in an effort to avoid paying the $8.2
24   million plus interest. At bottom, GoPro's brief shows there is good reason to find this was a
25   compromise verdict, which independently supports what was already necessary—a new trial on all
26   verdict issues.

27
28

### B. Whatever The Scope Of A New Trial, JMOL Should Be Granted On Discrete Issues Which Will Narrow The New Trial

#### 1. Contour is Entitled to JMOL of Infringement for the Group 1 Products

Rather than address the evidence or GoPro's failure to dispute infringement, GoPro repeats its false assertion that Contour offered "no evidence." Opp. at 18. To the contrary, Dr. Hu discussed the operation of the Group 1 cameras in detail. *See* Trial Tr. at 449:21–454:22. Dr. Hu brought a physical HERO6 camera as "representative of all the 20 cameras in Group 1," and discussed the product manuals for all 20 cameras. *Id*. at 449:21–450:8, 454:23–455:7, 459:3–460:4. Dr. Hu explained how "all elements [in claim 11] have been found by the Court to be included in all 20 Group 1 cameras" (*id*. at 455:19–24) and explained in detail how the cameras met the additional elements in other claims.

For claim 12 of the '954 patent, Dr. Hu testified that "all 20 cameras in Group 1 have at least different resolutions" as required, which she determined by "review[ing] the source code, relevant documentation," and "[her] own testing of these cameras." *Id*. at 455:25–456:10. For claim 6 of the '694 patent, Dr. Hu explained that certain elements fully overlapped with claim 11 and were met for the same reasons. *Id*. at 456:11–458:23. Dr. Hu showed how the Group 1 cameras met the additional elements using (1) the representative HERO6 Black camera; (2) the product manual for HERO6 Black and for "the other 19 product manuals" that were admitted into evidence; (3) GoPro's own marketing video; and (4) Dr. Hu's testing. *Id*. at 458:24–463:5. Next, Dr. Hu opined that 18 of 20 cameras had the ability to adjust the lighting settings as required by claim 6, which she found from her "analysis of the source code, the relevant documentation, and [her] own testing." *Id*. at 463:6–464:7. From this evidence, no reasonable jury could find non-infringement—which, again, GoPro did not dispute.

Finally, while GoPro cannot now complain about "product grouping" (*supra* § II.A.2), GoPro's complaint fails because Dr. Hu addressed the cameras individually and as a group.[2]

---

[2] The cases cited by GoPro are inapposite. *Carl Zeiss AG v. Nikon Corp.*, 2018 WL 1858160, at *1 (C.D. Cal. Mar. 27, 2018) (denying "Motion to Group Products" prior to claim construction as premature); *Pulse Elecs., Inc. v. U.D. Elec. Corp.*, 2021 WL 981123, at *37 (S.D. Cal. Mar. 16, 2021) (summary judgment of no indirect infringement where there was no evidence of direct infringement).

|   |   |
|---|---|
| 1 | **2.    Contour Is Entitled To JMOL of, or Alternatively a New Trial On, Infringement for the Group 2 Products** |

No reasonable jury could have found that the accused products do not include a "wireless connection protocol device." GoPro first argues that the Court "already rejected" this argument at summary judgment (Opp. at 16–17), but the Court instead held that "whether GoPro's NCC modification brings the Accused Products outside the scope of *the plain language of the claim*" would be "a dispute for the jury." Dkt. 831 at 11–12. Although GoPro's argument "informally raise[d] an untimely issue for claim construction," the Court declined to construe this term at summary judgment. *Id*. However, the Court did construe this term at trial prior to the close of evidence. Dkt. 853; Dkt. 859 at 15. Hence, the jury's verdict must be tested against the Court's construction at trial.

In view of the Court's construction, GoPro now admits that "GoPro does not argue that the claims foreclose use of 'two different protocols'" (Opp. at 16 n.14), but shifts to arguing that "[t]he jury could reasonably have concluded … that the wireless transceivers that happen to be packaged in the same system on chip (SOC) are two separate protocol devices (each employing a different protocol)" (*id*. at 17). No reasonable jury could have found this. Indeed, GoPro identifies no evidence that the WiFi transceiver can itself "send real time image content by wireless transmission," or that the Bluetooth transceiver can itself "receive control signals or data signals by wireless transmission," as required by the claims. By contrast, Dr. Hu explained in detail how "this QCA9377 is a single wireless connection protocol device that supports both WiFi and Bluetooth in an intertwined way" and that "[y]ou cannot just break them into two parts" because "the remaining components" on the chip "are related to WiFi and Bluetooth." Trial Tr. at 477:14–479:10. Dr. Hu's testimony was unrebutted.

In Opposition, GoPro now argues that there are "at least two [other] bases … upon which the jury could reasonably have found" non-infringement, including (1) "the Group 2 Products are not point of view digital video cameras," and (2) "the accused 'Phone Preview' stream is never recorded (as required by the 'generating' limitation)." Opp. at 16. Contrary to GoPro, GoPro never disputed these limitations at trial and never introduced any contrary evidence to support these arguments. *See* Trial Tr. at 1139:6–1146:11 (Almeroth); *id*. at 1318:1–6 (Hu testifying that "wireless connection protocol device" was "the only one" disputed by Almeroth). Indeed, in response to Contour's pre-verdict

JMOL, GoPro only identified "a wireless connection protocol device." *See id*. at 1386:8–17. GoPro identifies no caselaw that Contour's renewed JMOL had to address elements GoPro never disputed.

In any event, no reasonable jury could have found non-infringement for either of these "bases." As to the first, GoPro identifies Mr. Lema's fact testimony (Opp. at 16) that the Group 2 cameras "shoot point-of-view footage" but "are way *more than* point-of-view cameras" and "are used for *a lot more than*" point-of-view footage. Trial Tr. at 890:12–891:17. Hence, Mr. Lema *admitted* that the Group 2 cameras are "point of view" cameras, even if they are also capable of doing "more." In addition, Mr. Lema did not (and could not) opine that the Group 2 cameras were not "point of view" cameras as construed by the Court, and Dr. Almeroth never addressed this. On the other hand, Dr. Hu testified that the Group 2 cameras were all "point of view" cameras, as shown by the product manuals which explain how "some of the aspect ratios" are "especially good for taking POV video footages." Trial Tr. at 472:23–474:2; TX-1214.57–59 (HERO12 Manual). This evidence was unrebutted.

As to the second, GoPro's counsel argued *in closing* that Contour failed to prove the "generate" limitation because the buffer for "the phone preview stream" can "only *store*, at most, one frame at a time," with GoPro's counsel asserting "that's not what the claims require." Trial Tr. at 1557:22–1559:13. However, no evidence supported GoPro's attorney argument. Instead, the only evidence as to how a person of ordinary skill in the art would understand "*record* in parallel" came from Dr. Hu, who testified that the Court's construction was *not* limited to "stor[ing] at least two video frames." *Id*. at 527:18–528:4. Moreover, GoPro's argument is contrary to the Court's construction, which made clear that "[t]he term 'generate' should be defined as 'record' to make the claims consistent with the specification" and that "the use of 'recording' to reference the two video formats before streaming or play back *clarifies* **the claims according to the specification**, <u>it does not limit them</u>." Dkt. 251 at 12. Accordingly, GoPro's unsupported attorney argument cannot defeat JMOL.

### 3. Contour Is Entitled To JMOL That The Alleged "Woodman Prior Invention" Is Not Prior Art

GoPro's Opposition confirms that JMOL is appropriate on all grounds provided in Contour's JMOL. Mot. at 22–24. First, GoPro confirms that Mr. Woodman "did not believe that he was the first" to come up with the claimed invention. Opp. at 21. While GoPro says this "merely reflects the

1   fact that Contour's alleged inventions was well known" (*id*.), this "fact" instead confirms that no
2   reasonable jury could find that Mr. Woodman was a prior inventor under § 102(g). *See Union Carbide*
3   *Chemicals & Plastics Tech. Corp. v. Shell Oil Co.*, 308 F.3d 1167, 1189-90 (Fed. Cir. 2002) (ruling
4   priority of invention defense fails as a matter of law where accused infringer "failed to prove that
5   [alleged prior inventor] 'actually prepared the composition' claimed in [asserted] patents"). Thus, Mr.
6   Woodman's testimony that "the Woodman invention … is *not* the same as the Contour invention"
7   (Trial Tr. at 594:7–17) compels JMOL.

8   Second, as Contour showed, no reasonable jury could have found that Mr. Woodman reduced
9   a prototype of the claimed invention to practice in 2009 as GoPro argued throughout this case, or at
10  any time before Contour's conception date. *See* Mot. at 23. Indeed, after the 2009 prototype theory
11  was debunked on Mr. Woodman's cross with a higher-quality photograph that confirmed the
12  "prototype" had a circuit board dated November 16, 2010 (Mot. at 4–5), GoPro told Mr. Woodman on
13  redirect to "pretend that [alleged 2009 prototype] never existed" and asked him whether the HERO2
14  with WiFi BacPac from June 2012 was instead the reduction to practice. Trial Tr. at 710:13–19. And
15  in closing, GoPro told the jury that "we're not saying that prototype [shown in the picture] was
16  reduction to practice." Trial Tr. at 1550:8–13. Hence, no reasonable jury could have found the 2009
17  prototype was "a reduction to practice" as GoPro now argues in post-trial (Opp. at 21)—which, in any
18  event, was uncorroborated and thus, legally insufficient. *See* Mot. at 23.

19  Third, no reasonable jury could have found that Mr. Woodman was diligent in reducing the
20  HERO2 with WiFi BacPac to practice by June 2012, given that GoPro's evidence revealed an over
21  *one-year period* of inactivity from September 2009 to at least January 2011. *See* Mot. at 23–24.
22  Indeed, the evidence *affirmatively* showed that GoPro's work on wireless was "idled" at least as of
23  September and November 2010. Trial Tr. at 1329:22–1330:10, 1432:12–21, 1433:6–1435:4; *see also*
24  TX-405. In addition, GoPro also failed to introduce any evidence to *corroborate* Mr. Woodman's
25  testimony that he was working on reducing a wireless camera to practice in this timeframe, and
26  GoPro's JMOL identifies no such evidence. For example, GoPro cites Mr. Donovan's testimony
27  (Opp. at 22), but he expressly disavowed any knowledge about "the wireless BacPac project." Dkt.
28  686-6 at 73:3–73:23. In fact, GoPro tried to distance itself from Mr. Donovan at trial. *See* Trial Tr.

1  at 1426:6–1427:13 (Almeroth asserting "the wireless aspect was handled by others like Mr. Woodman," not Donovan).  GoPro also points to "the WiFi BacPac Product Requirements Document" (Opp. at 22), which is dated between April and May 2011 (TX-2378.28, Dkt. 881-94), after Mr. Woodman's January 2011 email about tearing down ContourGPS cameras.  Hence, there is no evidence showing that GoPro was diligent between September 2009 and January 2011.  *See* Opp. at 8 n.8 (GoPro admitting that it could not introduce "documents from 2010 during Dr. Almeroth's re-direct" and arguing "Dr. Almeroth's *report* is replete with evidence from 2010 and 2011").  Accordingly, GoPro failed to "account for the entire period" as required, so JMOL is appropriate.  *See Creative Compounds, LLC v. Starmark Lab'ys*, 651 F.3d 1303, 1312–13 (Fed. Cir. 2011).

Finally, GoPro's reliance on *Monsanto Co. v. Mycogen Plant Sci., Inc.*, 261 F.3d 1356, 1369 (Fed. Cir. 2001) is inapposite.  There, the Federal Circuit found that "substantial evidence supported a presumed finding by the jury that [prior inventor] was diligent," where there was "record evidence showing activity in every month." *Id.* at 1368-69.  While the patentee "point[ed] to the gaps" between some dates, the Federal Circuit explained that "there need not necessarily be evidence of activity on every single day if a satisfactory explanation is evidenced." *Id.* at 1369.  Because "[a]ny gaps … [were] reasonably explained by the evidence itself that suggests that the work involved in the experiments was continuous in nature," the Federal Circuit affirmed the jury's presumed diligence finding. *Id*. at 1369–70.  This case is easily distinguished from *Monsanto*.  Here, the jury found that claim 11 was not anticipated, so the only presumed finding is that GoPro was not diligent.  Further, unlike *Monsanto*, GoPro offers no "satisfactory explanation" for the over one-year period of inactivity from September 2009 and January 2011, but instead simply ignores this gap in activity and pretends it does not exist.  Hence, GoPro offers no evidence of any activity between September 2009 and January 2011.  Thus, on this record, no reasonable jury could have found diligence. *See also Application of Nelson*, 420 F.2d 1079, 1081 (C.C.P.A. 1970) ("While constant effort is not required, the record before us does not give any reason whatever to explain the delay, and we will not speculate on possible explanations.").

### C. Contour Is Entitled To Post-Trial Relief If Judgment On The Verdict Is Entered

If the Court enters judgment on the $8.2 million verdict, the Court should also award Contour prejudgment interest, post-judgment interest, and costs, as set forth in Contour's brief. Mot. at 25. GoPro's Opposition raises several disputes with this request, all of which lack merit.

GoPro first argues that Contour "added years to this lawsuit" (Opp. at 24), but this ignores GoPro's own conduct and other events, including (1) GoPro moving to stay the case pending the IPRs in February 2016, which was granted in July 2016 and lasted three years until October 2019; (2) the COVID-19 pandemic in 2020–2021; and (3) the appeal before the Federal Circuit that lasted from March 2022 until September 2024. Even further, in May 2025, GoPro moved this Court to continue the September 2025 trial date until January 2026. *See* Dkt. 731. Hence, GoPro's complaint is baseless. Beyond that, "the withholding of prejudgment interest based on delay is the exception," and "absent prejudice to the defendants, any delay … does not support the denial of" it. *Lummus Indus., Inc. v. D.M. & E. Corp.*, 862 F.2d 267, 275 (Fed. Cir. 1988). GoPro's only alleged prejudice is additional prejudgment interest (Opp. at 24), which is insufficient. *See, e.g.*, *Opticurrent, LLC v. Power Integrations, Inc.*, No. 17-CV-03597-EMC, 2019 WL 2389150, at *19 (N.D. Cal. June 5, 2019) ("the generic accumulation of damages" is insufficient to deny interest). Hence, GoPro's argument that the Court must deny or adjust prejudgment interest based on Contour's alleged delays is baseless.

GoPro also argues that Contour's calculation is improperly based on "a lump sum figure." Opp. at 24. However, the jury's damages award of $8,200,000 is not based on any royalty rate proposed by the parties, and GoPro identifies no evidence in the record supporting such a damages award. *See id*. at 24–25. Hence, the only reasonable interpretation of the jury's award is that it is a lump-sum royalty. And, because it is a lump-sum royalty, "the prejudgment interest is properly applied to the entire amount beginning on the first date of the infringement." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, No. 2023-1772, 2025 WL 649737, at *10 (Fed. Cir. Feb. 28, 2025). Because GoPro's first date of infringement was November 18, 2014 (when the '954 patent issued), that is the proper start date for the interest calculation, regardless of when pre-suit damages became available.

Finally, GoPro wrongly urges the Court to use the Treasury Bill rate (rather than the prime rate), compounded annually (rather than quarterly). Opp. at 25. GoPro's arguments are baseless. In

1  one case, this Court found that "the appropriate interest rate here is the prime rate, compounded
2  quarterly," because "the prime rate more nearly approximates the position [patentee] would have been
3  in had [defendant] entered into a reasonable royalty agreement." *Fujifilm Corp. v. Motorola Mobility*
4  *LLC*, 182 F. Supp. 3d 1014, 1043–44 (N.D. Cal. 2016) (Orrick, J.) (awarding prejudgment interest at
5  the prime rate despite assertion that patentee provided no evidence that it had borrowed money at any
6  rate); *see also A&L Tech. v. Resound Corp.*, 1995 WL 415146, at *5 (N.D. Cal. June 29, 1995)
7  (explaining that "the prime rate encompasses fluctuations in the market over the infringement period,"
8  and "[u]nlike the Treasury bill rate, the prime rate does not assume that the hypothetical loan to
9  [defendant] was risk-free, but rather only that [defendant] was credit-worthy"). Moreover, "[c]ourts
10 'have recognized that compounding is necessary to fully compensate the patentee.'" *Apple, Inc. v.*
11 *Samsung Elecs. Co.*, 67 F. Supp. 3d 1100, 1122 (N.D. Cal. 2014). Further, compounding interest
12 quarterly is "the ordinary approach to interest calculation" and represents a "middle ground between
13 continuous and annual compounding." *Milwaukee Elec. Tool Corp. v. Snap-On Inc.*, 288 F. Supp. 3d
14 872, 909 (E.D. Wis. 2017). The Court should do the same here, as it has done before. *Fujifilm*, 182
15 F. Supp. 3d at 1044.

## III. CONCLUSION

For the reasons explained above, the Court should grant Contour's motion for a new trial on all issues that are not otherwise disposed of via JMOLs.

Dated: February 11, 2026  /s/ *John R. Keville*
Lai L. Yip (SBN 258029)
*lyip@sheppardmullin.com*
SHEPPARD, MULLIN, RICHTER & HAMPTON, LLP
Four Embarcadero Center Seventeenth Floor
San Francisco, CA 94111
Telephone: (415) 434-9100
Facsimile: (415) 875-6700

John R. Keville *(Pro Hac Vice)*
*jkeville@sheppardmullin.com*
Michelle C. Replogle *(Pro Hac Vice)*
*mreplogle@sheppardmullin.com*
Michael C. Krill *(Pro Hac Vice)*
*mkrill@sheppardmullin.com*
Sunny Akarapu *(Pro Hac Vice)*
*sakarapu@sheppardmullin.com*
SHEPPARD, MULLIN, RICHTER & HAMPTON, LLP
845 Texas Avenue, 25th Floor
Houston, Texas 77002-2791
Telephone: (713) 431-7100
Facsimile: (713) 431-7024

Counsel for Plaintiff
CONTOUR IP HOLDING LLC

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the above and foregoing document has been served via email on February 11, 2026 to all counsel of record via email and via the Court's CM/ECF system.

I certify under penalty of perjury that the above is true and correct.

Executed on February 11, 2026, at Houston, Texas.

                                               */s/ John R. Keville*
                                               John R. Keville