JOHN D. HAYNES (admitted *pro hac vice*)
**ALSTON & BIRD LLP**
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424
Telephone:   404-881-7000
Facsimile:    404-881-7777
john.haynes@alston.com

PHILIP DUCKER (State Bar No. 262644)
MICHELLE CLARK (State Bar No. 243777)
**ALSTON & BIRD LLP**
55 Second Street, Suite 2100
San Francisco, CA 94105
Telephone:    415-243-1000
Facsimile:    415-243-1001
phil.ducker@alston.com
michelle.clark@alston.com

*Attorneys for Defendant GOPRO, INC.*

*Additional counsel on signature page*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| CONTOUR IP HOLDING, LLC,<br><br>                     Plaintiff,<br><br>        v.<br><br>GOPRO, INC.,<br><br>                     Defendant. | LEAD CASE NO. 3:17-cv-04738-WHO<br>CONSOL. CASE NO. 3:21-cv-02143-WHO<br><br>**GOPRO'S REPLY IN SUPPORT OF ITS MOTION FOR NEW TRIAL AND MOTION FOR JUDGMENT AS A MATTER OF LAW**<br><br>Judge: William H. Orrick<br>Hearing Date: March 11, 2026<br>Time: 2:00 PM |

# **TABLE OF CONTENTS**

I.  INTRODUCTION ...................................................................................................1

II. FACTUAL BACKGROUND ..................................................................................1

    A.  Ambarella Discloses The "Generate" Limitations of the Asserted Claims ...................1

    B.  All Other Claim Limitations Are Disclosed In Boland ..................................2

III. ARGUMENT ..........................................................................................................3

    A.  There Is No Inconsistency In Finding The Claims Invalid And Not Infringed ............3

    B.  The Trial Record Supports Only One Outcome – A Finding That The Asserted
        Claims are Invalid. .............................................................................4

        1.  Boland Discloses The Wireless Connection Protocol Device of Claim
            11............................................................................................5

        2.  CIPH Never Rebutted Motivation To Combine At Trial.................................8

    C.  There Is No Evidence Of Secondary Considerations That Supports Validity.............11

    D.  CIPH's Arguments Regarding 102(g) Are Unsupported By The Law.......................14

1

# TABLE OF AUTHORITIES

2

3  **Cases**                                                                                    **Page(s)**

4  *Apple, Inc. v. Samsung Elecs. Co.*,
5      920 F. Supp. 2d 1079 (N.D. Cal. 2013) ..................................................................13

6  *Bayer Healthcare Pharm., Inc. v. Watson Pharm., Inc.*,
      713 F.3d 1369 (Fed. Cir. 2013)............................................................................12
7
8  *Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP*,
      616 F.3d 1249 (Fed. Cir. 2010)...................................................................3, 5, 6, 7

9  *In re Cree, Inc.*,
      818 F.3d 694 (Fed. Cir. 2016)...............................................................................12
10

11  *Cubist Pharms., Inc. v. Hospira, Inc.*,
      805 F.3d 1112 (Fed. Cir. 2015).............................................................................13
12

13  *In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Pat. Litig.*,
      676 F.3d 1063 (Fed. Cir. 2012).............................................................................13

14  *Dow Chem. Co. v. Halliburton Oil Well Cementing Co.*,
      324 U.S. 320 (1945)..............................................................................................11
15

16  *DyStar Textilfarben GmbH & Co. Deutschland KG v. C.H. Patrick Co.*,
      464 F.3d 1356 (Fed. Cir. 2006)...............................................................................3

17  *Ecolochem, Inc. v. S. Cal. Edison Co.*,
18      227 F.3d 1361 (Fed. Cir. 2000)..............................................................................14

19  *Ethicon LLC v. Intuitive Surgical, Inc.*,
      Nos. 2021-1995, 2021-1997, 2022 U.S. App. LEXIS 13798 (Fed. Cir. May 23,
20      2022) .......................................................................................................................9

21  *Finesse Wireless LLC v. AT&T Mobility LLC*,
      156 F.4th 1221 (Fed. Cir. 2025) ..............................................................................3
22

23  *Gemtron Corp. v. Saint-Gobain Corp.*,
      572 F.3d 1371 (Fed. Cir. 2009)...............................................................................6

24  *Innovaport LLC v. Target Corp.*,
25      No. 2024-1545, 2026 U.S. App. LEXIS 3740 (Fed. Cir. Feb. 6, 2026) ...................9

26  *Johnson v. Paradise Valley Unified School District*,
      251 F.3d 1222 (9th Cir. 2001) ...............................................................................15
27

28  *Commil USA, LLC v. Cisco Sys., Inc.*,
      575 U.S. 632 (2015)................................................................................................3

*Merck & Cie v. Gnosis S.P.A.*,
   808 F.3d 829 (Fed. Cir. 2015)..................................................................................12

*Motorola Mobility LLC v. Largan Precision Co.*,
   No. 2024-1414, 2025 U.S. App. LEXIS 23724 (Fed. Cir. Sep. 15, 2025) .............11

*Nalpropion Pharms., Inc. v. Actavis Lab'ys FL, Inc.*,
   934 F.3d 1344 (Fed. Cir. 2019)...............................................................................14

*Northpoint Tech., Ltd. v. MDS Am., Inc.*,
   413 F.3d 1301 (Fed. Cir. 2005).............................................................................4, 14

*Novartis AG v. Torrent Pharms. Ltd.*,
   853 F.3d 1316 (Fed. Cir. 2017)...............................................................................12

*Ohio Willow Wood Co. v. Alps S., LLC*,
   735 F.3d 1333 (Fed. Cir. 2013)...............................................................................11

*Ormco Corp. v. Align Tech., Inc.*,
   463 F.3d 1299 (Fed. Cir. 2006)...........................................................................13, 14

*Perfect Surgical Techniques, Inc. v. Olympus Am., Inc.*,
   841 F.3d 1004 (Fed. Cir. 2016)...............................................................................15

*Perfect Web Techs., Inc. v. InfoUSA, Inc.*,
   587 F.3d 1324 (Fed. Cir. 2009)..................................................................................6

*Price v. Symsek*,
   988 F.2d 1187 (Fed. Cir. 1993)...............................................................................15

*Recor Med., Inc. v. Medtronic Ireland Mfg. Unlimited Co.*,
   No. 2023-2251, 2025 U.S. App. LEXIS 7074 (Fed. Cir. Mar. 27, 2025) .............10

*Sealy Tech., LLC v. SSB Mfg. Co.*,
   825 F. App'x 801 (Fed. Cir. 2020) ..........................................................................14

*Special Devices, Inc. v. OEA, Inc.*,
   270 F.3d 1353 (Fed. Cir. 2001).............................................................................2, 10

*Tokai Corp. v. Easton Enters., Inc.*,
   632 F.3d 1358 (Fed. Cir. 2011)...............................................................................13

*Western Union Co. v. MoneyGram Payment Sys.*,
   626 F.3d 1361 (Fed. Cir. 2010)..........................................................................6, 9, 10

*Woodland Tr. v. Flowertree Nursery, Inc.*,
   148 F.3d 1368 (Fed. Cir. 1998)...............................................................................10

## I.     <u>INTRODUCTION</u>

There is neither any inconsistency nor any evidence in the trial record that undermines the facial obviousness of the Asserted Claims.  Recognizing that nothing it argued or offered into evidence at trial would defeat GoPro's Motion for JMOL (Dkt. 900), CIPH's Opposition resorts to inadmissible, new attorney arguments against the unrefuted combination of Boland and Ambarella.   In its Opposition, CIPH never challenges – or even mentions – the *prima facie* evidence of obviousness provided by GoPro's expert, Dr. Kevin Almeroth.  Instead, CIPH argues for the first time that Boland does not disclose the "wireless protocol device" limitation of Claim 11 of the '954 Patent.  CIPH cites no factual evidence for this position – nor could it since its expert never challenged Boland's disclosure of this element at trial.  But it is well-established that unsupported attorney argument is an inadequate substitute for record evidence.  CIPH's argument must be rejected as it is factually unsupported and contrary to Federal Circuit precedent.

CIPH's arguments regarding motivation to combine and secondary indicia are similarly devoid of legal acuity. CIPH seeks to eliminate "obviousness" entirely from the legal lexicon in pursuit of its argument that a combination must actually have been created or disclosed in order to render a claimed invention obvious. This may be the law for anticipation, but such a showing is not required to find a claim obvious. Furthermore, CIPH's "claimed invention" reflects none of the design or implementation details it now purports to rely on to undermine the indelible conclusion that Claim 11 is invalid.  The trial record offers not even a "mere scintilla" of evidence to support CIPH's position.

## II.     <u>FACTUAL BACKGROUND</u>

### A.     Ambarella Discloses The "Generate" Limitations of the Asserted Claims

While GoPro disputes much of CIPH's Background assertions, they are immaterial to the disposition of the present Motion because GoPro did not rely on Boland for the "generate" limitations – but instead relied on the **undisputed** disclosure of those limitations by Ambarella prior art.  Dkt. 708 at 24, 26; *see also* Dkt. 841 at 10; Dkt. 42 at 13.

At trial, Ambarella's fact witness offered into evidence contemporary business records establishing the first sale date of the A5 platform, with the relevant dual-recording functionality, by July 2008.  Dkt. 881-115 (TX-3899); Dkt. 875 at 1006:15-1007:3, 1016:6-1019:7. He also provided

1    evidence that Ambarella's A5S platform was being sold with the same dual-recording functionality

2    by no later than November 2009. *Id*.; *see also id*. at 1117:9-1119:8.[1]  While GoPro does not need to

3    rely on the A5S platform to establish disclosure of the "generate" limitations in the prior art, there is

4    no reasonable dispute that the A5S was also sold in the United States before the priority date of

5    Asserted Claims. There is similarly unrefuted evidence that the A5 and A5S were sold with

6    development kits that provided software for communicating between the camera processor and a

7    wireless connection protocol device. *Id*. at 1008:18-1010:13, 1015:6-1016:5 (referencing Dkt. 881-

8    84), 1018:24-1020:8, 1024:10-1027:15; Dkt. 881-100, 881-114. Dr. Almeroth also introduced

9    evidence that a person of ordinary skill in the art ("POSITA") would have known how to configure

10   the Ambarella camera processor to transmit its video data wirelessly based on the disclosures in

11   Boland and the substantial state of the art. Dkt. 875 at 1092:22-1095:14, 1097:19-1098:13, 1109:11-

12   1110:17, 1114:11-1115:25, 1167:17-1168:1-6. At no point during trial did CIPH offer argument, much

13   less testimony, that Dr. Almeroth's evidence of the state of the art was inaccurate. Indeed, CIPH's

14   expert did not rebut the state-of-the-art evidence at all.

15          **B.      All Other Claim Limitations Are Disclosed In Boland**

16          Dr. Almeroth identified, on an element-by-element basis, that Boland discloses all limitations

17   of the Asserted Claims except the one limitation for which he relied on Ambarella. Dkt. 875 at 1105:5-

18   1115:25, 1116:16-1119:13; Dkt. 900 at 8, 14-16 (collecting citations). CIPH admits Dr. Hu never

19   addressed any specific claim limitations in her testimony at trial. Instead, CIPH cites only to Dr. Hu's

20   cursory conclusion, devoid of factual detail, that the Asserted Claims are "not obvious" despite her

21   consideration of Boland and Ambarella. Dkt. 902 at 7.  CIPH also admits that Dr. Hu's opinions are

22   predicated on the premise that Looxcie and Boland are coextensive – a premise for which it cites no

23   record evidence (nor for which any record evidence exists). Dkt. 902 at 7.  To the contrary, Dr.

24   Almeroth testified that Boland and Looxcie are **not** coextensive.  Dkt. 876 at 1191:5-1192:22,

25   1222:24-1223:6.  Moreover, Dr. Hu presented no evidence that Looxcie (or Boland) fails to disclose

26   the limitations of the Asserted Claims.  *Id*. at 1324:5-16.

27

28   [1] Dr. Hu agreed that A5 and A5S were both sold before December 2009.  Dkt. 876 at 1345:1-24.  Dr. Hu opined that A5S was not sold "to the public," but a "public" sale required to render the A5S prior art.  *Special Devices, Inc. v. OEA, Inc*., 270 F.3d 1353, 1357 (Fed. Cir. 2001).

1    III.    **ARGUMENT**

2        A.    **There Is No Inconsistency In Finding The Claims Invalid And Not Infringed**

3        If the Court finds Claim 11 invalid as a matter of law, there is no need for a re-trial.  There is

4    no need to revisit the jury's findings on infringement, damages, or willfulness – because the claims

5    are invalid and GoPro cannot be liable for infringing any invalid claims as a matter of law.  *Commil*

6    *USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 644 (2015) ("[I]f . . . an act that would have been an

7    infringement . . . pertains to a patent that is shown to be invalid, there is no patent to be infringed.");

8    Dkt. 903 at 11-13 (collecting cases).

9        There is no evidence in the trial record that would support any other conclusion.  One need

10   only look at CIPH's Opposition to ascertain as much.  CIPH cites its expert's conclusion, offered

11   without supporting evidence, that the claims are not obvious.  Dkt. 902 at 12.  But countenancing

12   conclusory expert testimony without factual support would violate Federal Circuit law.  *Finesse*

13   *Wireless LLC v. AT&T Mobility LLC*, 156 F.4th 1221, 1225 (Fed. Cir. 2025).  Then, CIPH cites Dr.

14   LeGall's testimony that "Ambarella 'shelved' the idea for wirelessly transmitting video until 2011."

15   But Dr. LeGall said the opposite.  When asked whether "you guys shelved the idea of streaming that

16   lower stream wirelessly," Dr. LeGall said "**It wasn't shelved.**"  Dkt. 875 at 1056:4-1057:5. CIPH

17   cannot defeat GoPro's Motion with conclusory expert opinions and misrepresentations of the factual

18   record.  *Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP*, 616 F.3d 1249, 1259 (Fed. Cir. 2010).[2]

19       CIPH also regurgitates the legally erroneous arguments set forth in its Motion for a New Trial

20   (Dkt. 901) that urge the Court to violate established Ninth Circuit law against conjuring **factual**

21   inconsistencies to undermine a general verdict.  Dkt. 902 at 8.  As GoPro explained, it would be legal

22   error to delve into the jury's deliberations to challenge the sanctity of the verdict.  Dkt. 903 at 10-11

23   (citing *Zhang v. Am. Gem. Seafoods, Inc.*, 339 F.3d 1020, 1034 (9th Cir. 2003); *Apple, Inc. v. Samsung*

24   *Elecs. Co.*, 920 F. Supp. 2d 1079, 1101 (N.D. Cal. 2013)).  And, even if the Court were to do so, there

25   is no inconsistency that forecloses the Court from finding that Claim 11 is obvious as a matter of law.

26   Dkt. 903 at 12-14.  Indeed, CIPH identifies no legal or logical inconsistency between finding the

27

28   _____

[2] Thereafter, CIPH cites only its own Motion and "the evidence discussed in Contour's post-trial brief" but does not say what evidence it refers to or why it would undermine the indelible conclusion that Claim 11 is invalid as a matter of law.  Dkt. 902 at 12.

Asserted Claims invalid as obvious and also not infringed.  Instead, CIPH asks the Court to extinguish the jury's findings that Claim 12 of the '954 Patent and Claim 6 of the '694 Patent are obvious because CIPH (wrongly) believes there is a factual inconsistency between the jury's finding of anticipation (by the Woodman Invention) and infringement. Dkt. 902 at 8.  Neither logic nor the law support such an outcome.  *Northpoint Tech. ltd v. MDS Am. Inc.*, 413 F.3d 1301, 1311-12 (Fed. Cir. 2005).

CIPH also misconstrues GoPro's Motion – which never suggests that a new trial on the validity of Claim 6 of the '694 Patent is appropriate. Dkt 902 at 8.  While the jury's conclusion that Claim 6 is invalid supports a finding that Claim 11 is invalid, the reverse is not true.  Both parties' experts testified that while the Asserted Claims share a number of overlapping elements, they also have materially distinct elements relating to the transmission of "real time" data, the creation of "preview" and start/stopping recording.  Dkt. 872 at 456:11-458:14; Dkt. 875 at 1080:15-1083:12.  Indeed, CIPH did not assert Claim 11 of the '954 Patent against Group 3 Products, but did assert Claim 6 of the '694 Patent, because the claims are distinct (and there was no factually supportable argument that the accused "live streaming" feature is in real time).  Dkt. 872 at 501:22-502:1, 503:21-504:1, 506:1-19.

Here, the jury was instructed that the Court had already found the Group 1 Products practice Claim 11 and CIPH argued on multiple occasions that the Court's finding meant it was due damages for that infringement.  *See, e.g.*, Dkt. 870 at 180:16-17, 181:19-20; Dkt. 871 at 228:19-21; Dkt. 872 at 454:4-455:24, 458:16-23, 475:21-476:9, 505:8-14, 510:20-24; Dkt. 873 at 639:14-24, 640:6-8; Dkt. 874 at 873:25-874:10 (Dr. Ugone: "All you need is one claim to infringe [to award damages]"); Dkt. 876 at 1331:13-16; Dkt. 877 at 1447:16-1448:1, 1486:3-6.  At the motion *in limine* stage, the Court recognized the risk that characterizing GoPro as an adjudged infringer would confuse the jury into misunderstanding its role with respect to Claim 11.  Dkt. 831 at 20.  The Court's prescience was borne out in the resulting verdict, which can only be reconciled with the record by finding Claim 11 invalid as a matter of law.

### B.     The Trial Record Supports Only One Outcome – A Finding That The Asserted Claims are Invalid.

CIPH presented no evidence or argument at trial to refute the obviousness of the Asserted Claims in view of the combination of Boland and Ambarella.  Instead, its Opposition rests on a new

argument never presented to the jury and for which it has not (and cannot) offer any supporting factual evidence. But to defeat JMOL and justify a new trial, CIPH has to show that a reasonable jury could have found Claim 12 valid based on the evidence available to it. *Becton, Dickinson & Co. v. Tyco Healthcare Grp.*, LP, 616 F.3d 1249,1260 (Fed. Cir. 2010). CIPH cannot, as a matter of law, do so based on an argument that was never presented to the jury in the first place. *Id.*

### 1.     Boland Discloses The Wireless Connection Protocol Device of Claim 11

In its Motion, CIPH does not challenge Boland's disclosure of any claim element except the "wireless connection protocol device." Dkt. 902 at 10. CIPH's claim that "Dr. Almeroth never explained where Boland discloses sending 'real time image content by wireless transmission directly to . . . a personal portable computing device" is belied by the trial record. *See, e.g.*, Dkt. 875 at 1082:2-7; 1107:4-16 ("[T]here are lines that show video control and video data going to a radio and then out to the wireless communication handset") (citing Fig. 2A); 1108:12-1109:10 (citing Boland ¶¶ 73-74, 79, 46); Dkt. 876 at 1213:21-1214:14; *see also* Dkt. 875 at 1093:24-1094:3, 1094:18-25 (Boland discloses "live preview" in Figure 3A), 1110:8-20 ("You see that in Figure 3.b, between the headset and the handset, there's a line 216A for video . . . and that functionality is described in paragraph 74."). The cited portions of Boland show a direct wireless connection between Boland's headset camera and the "wireless communication handset 201." *See, e.g.*:



**FIG. 2A**



**FIG. 3B**

The direct path of the wireless video data from the handset to the headset is illustrated by the direct communication channel 202 (which does not show the data being routed to any cloud server or other intermediary device). *See, e.g.*, Dkt. 875 at 1107:4-16, 1108:12-1109:10, 1110:8-20.

CIPH's new argument that "Boland discloses an **indirect** connection to send video data in substantially real time" (Dkt. 902 at 10) was never raised at trial and is contrary to the evidence.[3]  The law is clear that attorney arguments raised after trial are insufficient to defeat judgment as a matter of law.  *Becton,* 616 F.3d at 1260 ("Unsupported attorney argument, presented for the first time on appeal, is an inadequate substitute for record evidence."); *Gemtron Corp. v. Saint-Gobain Corp*., 572 F.3d 1371, 1380 (Fed. Cir. 2009) ("Saint-Gobain's unsworn attorney argument . . . is not evidence and cannot rebut the video and other admitted evidence concerning Saint-Gobain's manufacturing process."); *see also Western Union Co. v. MoneyGram Payment Sys*., 626 F.3d 1361, 1373 (Fed. Cir. 2010) ("Mere attorney argument . . . is not evidence that can support a finding of nonobviousness."); *Perfect Web Techs., Inc. v. InfoUSA, Inc.*, 587 F.3d 1324, 1332 (Fed. Cir. 2009) (same).  In *Becton Dickinson*, the Federal Circuit rejected the same attorney-argument driven challenge to JMOL as CIPH pursues here.  616 F.3d at 1253.  There, in an effort defeat JMOL, Becton's attorneys argued that the jury could reasonably have found that "Tyco's needle contained stored energy and that when the hinged arm is unlatched, the hinges act as 'springs' that cause the guard to move down the need to the cannula."  *Id*. at 1257.  But none of the "evidence" Becton cited on appeal to support its argument that the "needle contained stored energy" was connected at trial to its theory that the stored energy "moved the guard forward."  *Id*. at 1258-60.  Rather, Becton's argument was presented for the first time on appeal and, as such, was "an inadequate substitute for record evidence."  *Id*.[4]  The Federal Circuit found that countenancing a new theory of liability would be tantamount to assuming the jury was "free

---

[3] CIPH never argued in the IPR, in Opposition to the motion for summary judgment, or in its expert reports that Boland fails to disclose the wireless protocol device limitation.  *See, e.g.*, Dkt. 774-3 at 4 (citing Ex. E at ¶¶ 62, 307, 309, 319), 5 (citing Ex. F at 28:1-29:17, 109:3-5); Dkt. 787 at 15-16.  To the contrary, Dr. Hu admitted at her deposition that the idea of wirelessly communicating video was known in the art at the time of the invention.  *See,* Dkt. 774-5 at 29:9-17, 96:13-24 ("If we're talking about wireless connection protocol device configured to send real time image content within the field of portable point of view digital video cameras, it was known in the field.").  Thus, CIPH's argument is predicated exclusively on *post hoc* lawyer conjecture.

[4] The Federal Circuit reached the same conclusion in *Gemtron*, when it concluded that attorney argument that the accused shelves were "assembled using a 'heat-shrink process'" different from the asserted claims could not be offered for the first time after trial.  572 F.3d at 1380.  The Federal Circuit noted that video evidence of the manufacturing process had been admitted at trial but, at the time, Saint-Gobain made no mention of the "heat-shrink" process it claimed occurred.  *Id*.  "Saint-Gobain's unsworn attorney argument to the contrary" presented for the first time after trial "is not evidence" and should not be considered in post-trial motions.  *Id*.  (citing *Laitram Corp. v. Cambridge Wire Cloth Co.*, 919 F.2d 1579, 1583 (Fed. Cir. 1990)).

1    to disregard" the record evidence in favor of its own unsubstantiated "inferences." *Id*. at 1259.

2    The same result is required here. Dr. Almeroth's testimony that Boland discloses the "wireless

3    protocol device" limitation was unrebutted at trial. Dkt. 875 at 1108:13-1109:10 (Boland "discloses

4    streaming the video frames in real time as they are recorded") (citing TX-2350 at ¶¶ 46, 73, 74, 79).

5    CIPH never argued – much less presented evidence – that the real time data was wirelessly transmitted

6    "indirectly" in Boland. Indeed, the word "indirect" appears only twice in the entire trial transcript,

7    neither of which is connected to any discussion of Boland. Dkt. 875 at 1145:6-14; Dkt. 877 at 1405:22-

8    1406:7. For the jury to have concluded that Boland fails to disclose this claim limitation because it

9    believed that Boland's real time embodiment was limited to Wi-Fi **and** that Wi-Fi is necessarily an

10   indirect connection would have been the same type of "inconceivable," "inference wholly unsupported

11   by the record," that the Federal Circuit held "cannot stand" in *Becton*, 616 F.3d at 1260.

12   Additionally, CIPH's attorney argument is directly contradicted by Boland itself. Boland

13   shows that "communication channel 202" identified by Dr. Almeroth in Figures 2A and 3B is for the

14   direct "wireless transmission of the image traffic . . . to the wireless communication handset" as shown

15   in the Figures – and is distinct from (uncited) communication channel 203 that goes "to a wireless

16   base station." TX-2350 at ¶ 45. Boland states that "video data 216A may include video frames

17   streamed from the headset 100 . . . directly from the encoded stream generated by the processor 210,

18   without first creating a clip file 231), which may be viewed and/or recorded to the handset 201 in

19   substantially real time." TX-2350 at ¶ 73. As CIPH acknowledges, Boland distinguishes the video

20   data 216A transmitted directly to the handset (which GoPro relies on) from video data 216C that is

21   transferred to a wireless-enabled network portal device 326 (which GoPro does not rely on). Dkt. 902

22   at 10 (citing TX-2350 at ¶ 79); *id*. at ¶ 78. Boland discloses the ability of the processor to "provide

23   the video data to the radio for wireless transmission" **or** "over a communication channel to a wireless

24   base station" in the alternative. Dkt. 875 at 1109:11-23 (citing TX-2350 at ¶ 45). CIPH cannot identify

25   **any** evidence to support its supposition that when Boland draws a straight, uninterrupted data path

26   from the headset to the handset, it really means that the data goes elsewhere first.

27   The only evidence CIPH cites from its expert expresses her opinion that Wi-Fi Direct was not

28   available at the time of the invention, but that has nothing to do with its argument on JMOL. Dkt. 902

at 11-12.  Boland never mentions, much less relies on, Wi-Fi Direct.  In fact, Boland is clear that its disclosed system is agnostic as to the specific wireless communication protocol used for communication of video data to the remote device.  TX-2350 at ¶ 76; *see also* Dkt. 902 at 12 (citing TX-2350 at ¶ 47.).  Boland discloses wireless protocols such as Bluetooth and Zigbee that CIPH admits are "direct" communication lines.[5]  *Id*.  And Boland also contemplates that Wi-Fi can provide another form of direct communication.[6]  TX-2350 at ¶¶ 73-74; Fig. 2A, Fig. 3B.  CIPH's argument is a red herring, directly contradicted by the universe of record evidence at trial.  CIPH's attorneys cannot defeat the clear disclosure of Boland – and the unbroken line showing the direct communication of wireless data in real time from its headset to a remote handset.

## 2.    CIPH Never Rebutted Motivation To Combine At Trial

CIPH's challenge to the motivation to combine Boland is also unsubstantiated by the trial record.  Once again, CIPH cites no testimony from its expert that refutes Dr. Almeroth's presentation of evidence on a POSITA's motivation and ability to combine Boland and Ambarella.[7]  Dkt. 875 at 1114:5-1115:25, 1118:24-1119:3; Dkt. 876 at 1216:5-1221:6 (a POSITA would be motivated to combine Boland and Ambarella and would be able to do so without undue experimentation); *see also* Dkt. 875 at 1092:22-1095:10 (state of the art shows that a POSITA would understand how to implement known wireless protocols to transmit video).  A patentee cannot overcome prima facie evidence of obviousness based on speculative challenges to motivation to combine alone.  *Ethicon*

---

[5] Nothing in the cited Paragraph 76 suggests that Bluetooth is limited to the transfer of pre-recorded data.  It states that "Video data 216A may be primarily for saving off a video clip file 231," not exclusively for that purpose.  Dkt. 902 at 11 (citing TX-2350 at ¶ 76).  Boland also states that "Electronic video compression techniques enable low-frame rate video transfer via Bluetooth protocols." TX-2350, ¶ 44.  And Boland expressly contemplates that video data 216B may be "transferred over a wireless communication line such as a Bluetooth connection" either from a video clip file or "in real time as they are provided to the recorded video data buffer" or "may shunt the video buffer altogether."  *Id*. at ¶ 76.  Thus, Boland discloses the exact opposite of what CIPH's lawyers posit.

[6] CIPH offers no evidence to the contrary (nor could such evidence exist since Wi-Fi has supported ad-hoc modes in addition to infrastructure modes since the mid-1990's.  *See, e.g.*, https://pdos.csail.mit.edu/archive/decouto/papers/802.11.pdf (last visited February 11, 2026) ("The independent BSS (IBSS) is the most basic type of IEEE 802.11 LAN. . . . This mode of operation is possible when IEEE 802.11 stations are able to **communicate directly**.").

[7] CIPH's assertion that "Dr Hu's June 2020 rebuttal report addressed Boland, Ambarella, and Boland in combination Ambarella" is both false and irrelevant. Dkt. 902 at 6.  CIPH's expert addressed the separate combinations of Boland with GoPro HD Motorsports and Looxcie with Ambarella.  *Id*.  The opinions she expresses are facially inapplicable to Boland and Ambarella.

*LLC v. Intuitive Surgical, Inc.*, Nos. 2021-1995, 2021-1997, 2022 U.S. App. LEXIS 13798, at *10 (Fed. Cir. May 23, 2022).  Having failed to refute motivation to combine at trial, CIPH's attorney argument is insufficient to challenge a finding of obviousness now.  *Western Union Co.,* 626 F.3d at 1362; *see also Innovaport LLC v. Target Corp.*, No. 2024-1545, 2026 U.S. App. LEXIS 3740, at *15-16 (Fed. Cir. Feb. 6, 2026) (holding that "wireless communication" is a "routine process implemented by a general purpose device . . . in a conventional way.") (additional citations omitted).

In *Western Union Co. v. MoneyGram Payment Systems*, the Federal Circuit rejected many of the same arguments CIPH raises here and held the claims invalid.  626 F.3d at 1369.  The Circuit started with the general proposition that "motivation to combine" is "not the result of a rigid formula," but can be demonstrated by "the common sense of those skilled in the art" even if there is no express teaching in the references themselves.  *Id*. at 1369-70.  For example, it held, the existence of devices of a similar level of "sophistication" and functionality in the marketplace, supports a finding of obviousness even if the implementation details are different.  *Id*. at 1369.  Additionally, the Circuit noted that, since *KSR*, courts have routinely found that integrating known computer technology such as networking protocols into an electronic device is a "commonplace" activity that would be "reasonably obvious to one of ordinary skill in the art."  *Id*. at 1370-71 (citing *Leapfrog Enters., Inc. v. Fisher-Price, Inc.*, 485 F.3d 1157, 1161 (Fed. Cir. 2007)).  Finally, the Federal Circuit rejected Western Union's argument that the parties' investment of "significant resources" to implement the claimed invention in a commercial product undermined the motivation to combine because that investment was directed to unclaimed implementation details and, as such, was irrelevant.  *Id*.

The same result is required here.  In the face of the uncontested evidence of the prolific availability of wireless cameras, wireless protocols, and live preview, CIPH has proffered no evidence to substantiate its argument that a POSITA would have been unable or unmotivated to use Ambarella's dual-recording functionality to implement Boland's disclosure of streaming video in real time while recording.  Dkt. 875 at 1092:22-1095:10; Dkt. 876 at 1217:24-1223:6.  Similarly, CIPH's argument that a POSITA would have had to "configure" the resulting combination in a specific manner to achieve the claimed functionality ignores this Court's prior finding that the claims include no specific implementation details.  Dkt. 673 at 13; Dkt. 708 at 11.  While CIPH's fact witnesses may have

believed that "the magic" of their ideas was in the "software" or the use of Bluetooth, that is not what is claimed in the Asserted Patents. Dkt. 872 at 514:9-18. Finally, the evidence of **other** cameras in the marketplace that achieved the same functionality through a different implementation supports rather than undermines obviousness. *Western Union*, 626 F.3d at 1370. To countenance CIPH's argument that Looxcie's (or Sony's or Canon's or GoPro's) ultimate decision to use a different means of achieving the same result forecloses a finding of obviousness is tantamount to eradicating the idea of obviousness entirely – for it would require that all of the claimed elements exist in a single embodiment (i.e., anticipation). *Id.*; *see also Recor Med., Inc. v. Medtronic Ireland Mfg. Unlimited Co.,* No. 2023-2251, 2025 U.S. App. LEXIS 7074, at *8 (Fed. Cir. Mar. 27, 2025) (Any "requirement that the prior art actually operate to perform the claimed invention" is not "correct under our obviousness standard.") (citing *KSR*, 550 U.S. at 420-421).[8]

In every single case that CIPH cites, there was expert testimony that directly refuted motivation to combine; evidence that is lacking in this record. In *Addidas v. Nike*, for example, the Board found that while the references at issue were theoretically combinable, there were "fundamental differences between the references" that "excluded seams of the type taught in Reed" to the primary reference, Nishida. Dkt. 902 at 13 (citing 963 F.3d at 1358-59). But CIPH has identified no such differences in the references at trial that would make Boland and Ambarella incompatible. To the contrary, Boland expressly directs a person of ordinary skill in the art to consider other processors to implement its claimed functionality. Dkt. 875 at 1095:19-1096:21, 1114:5-1115:25; Dkt. 876 at 1219:3-1221:6, 1229:13-1230:2. In *Samsung v. Apple*, the patentee introduced evidence that the combination references were from completely different fields and "a skilled artisan designing a mobile phone would not have been motivated to turn to a wall-mounted air conditioning controller to solve the pocket dialing problem." Dkt. 902 at 13-14 (citing 839 F.3d 1034, 1051 (Fed. Cir. 2016)); *see also* 839 F.3d at 1051 (noting that Apple's expert identified "specific portions of the specification" that "teach away from use of a sliding [toggle] . . . as in Plaisant"). But CIPH's cited testimony from Mr. Harrison and Dr. Mander shows exactly the opposite – i.e., that Ambarella's camera processing platforms were well

---

[8] CIPH's last argument, that the A5S chip and development kit were being sold to companies under an NDA is irrelevant to their status as prior art. *Woodland Tr. v. Flowertree Nursery, Inc.*, 148 F.3d 1368, 1370 (Fed. Cir. 1998); *Special Devices, Inc. v. OEA, Inc.*, 270 F.3d 1353, 1357 (Fed. Cir. 2001).

1    known and readily available to a POSITA at the time of the claimed invention, not from far disparate

2    fields.  *Id.*  Finally, in *Motorola Mobility LLC v. Largan Precision Co.*, the Federal Circuit found that

3    there was no motivation to combine the references at issue because there were "differences in the

4    systems" that would dissuade a skilled artisan to apply "Sekine's teachings" of an "inferior lens

5    system" to Chung.  Dkt. 902 at 15 (citing *Motorola Mobility LLC v. Largan Precision Co*., No. 2024-

6    1414, 2025 U.S. App. LEXIS 23724, at *3-4 (Fed. Cir. Sep. 15, 2025)).  But that has no applicability

7    in this case because Dr. Almeroth testified (and Dr. Hu did not refute) that a POSITA would have

8    considered the dual-encoding feature of the Ambarella platform to be a beneficial solution to the

9    bandwidth limitations identified in Boland.[9]  Dkt. 876 at 1217:24-1219:21.  Dr. Almeroth also testified

10   that there would be no undue experimentation necessary for a POSITA to integrate Ambarella into

11   Boland's real time streaming while recording embodiment.  *Id*. at 1219:22-1221:6; *see also* Dkt. 875

12   at 1109:11-20.  Nothing in CIPH's Opposition identifies any of the types of barriers to combining

13   Ambarella and Boland that overcame the motivation "to try" the combinations in the cases it cites.

14   *Compare*, *KSR*, 550 U.S. at 420-421.  Instead, its case law only illustrates how far afield CIPH's

15   arguments are from the applicable legal standard.

16       **C.    There Is No Evidence Of Secondary Considerations That Supports Validity**

17           As the Supreme Court explained decades ago, secondary "considerations are relevant **only** in

18   a close case where all other proof leaves the question of invention in doubt."  *Dow Chem. Co. v.*

19   *Halliburton Oil Well Cementing Co.*, 324 U.S. 320, 330 (1945); *Ohio Willow Wood Co. v. Alps S.,*

20   *LLC*, 735 F.3d 1333, 1344 (Fed. Cir. 2013).  Here, GoPro's *prima facie* case of obviousness is not

21   only strong, but largely unrebutted, and cannot be overcome by CIPH's purported evidence of

22   secondary considerations.  Moreover, CIPH fails to prove "the requisite nexus exists" between "the

23   identified objective indicia … [and] what was not known in the prior art."  *Novartis AG v. Torrent*

24   *Pharms. Ltd.*, 853 F.3d 1316, 1331 (Fed. Cir. 2017).  Because CIPH does not fulfill its burden of proof

25

---

26   [9] CIPH's argument also directly contradicts the record evidence because GoPro did not rely on the
     serial embodiment of Boland in its obviousness presentation.  Dkt. 902 at 14-15.  Even if the Court

27   finds (despite the lack of evidence in the trial record) that Boland discloses two separate embodiments
     – one that provides a real time stream and one that creates a "preview" by down-sampling content

28   stored in a buffer or on memory – that finding would have nothing to do with the motivation to combine
     the streaming embodiment of Boland with Ambarella.

on nexus, its secondary indicia evidence is irrelevant and should be disregarded by the Court.

**Industry Praise**. CIPH's failure to establish nexus is illustrated in its argument regarding industry praise. CIPH cites to its Red Dot Award, which Dr. Mander testified was focused on "industrial design . . . it's about the look of something, sort of the artistic aspect of it," not the claimed invention. Dkt. 871 at 368:14-369:2-370:4. And its 2011 CES Innovation Award, which was for the ContourGPS, is directed to "an HD camera that can be mounted just about anywhere" and offers "1080p video" as well as a "GPS module, microSD, Bluetooth, and a Lithium-ion battery." TX 442. CIPH identified no evidence from which a reasonable jury could determine that these awards are related to the claimed invention rather than some other aspect of the allegedly practicing product. *Merck & Cie v. Gnosis S.P.A.*, 808 F.3d 829, 837 (Fed. Cir. 2015) ("Where objective indicia result from something other than what is both claimed and novel in the claim, there is no nexus to the merits of the claimed invention."). The cited exhibits are no better. Two of the three exhibits are Contour's own press releases and therefore not reliable evidence of praise by "others." TX-443; TX-444; *In re Cree, Inc.*, 818 F.3d 694, 702 (Fed. Cir. 2016); *see also Bayer Healthcare Pharm., Inc. v. Watson Pharm., Inc.*, 713 F.3d 1369, 1377 (Fed. Cir. 2013) (holding self-referential commendation "fall[s] well short of demonstrating true industry praise."). The third exhibit simply lists features – it does not praise them. TX-442. Moreover, the listed features – *e.g.*, "allowing users to adjust the composition and settings **before** attempting to capture moments," "see what your camera sees **while configuring your settings**" – do not relate to the patented invention, which is limited to preview while recording (and, according to CIPH, does not disclose changing settings while streaming the preview). *Merck*, 808 F.3d at 837. Indeed, CIPH cites nothing in support of its claim the evidence was "specifically tied to the claimed features" because none exists. Dkt. 902 at 18. CIPH's alleged awards and articles are insufficient to overcome GoPro's strong obviousness case.

CIPH's citation to Dr. Almeroth's testimony does not support its argument that the industry praised the claimed invention. Dr. Almeroth testified that the cited evidence does **not** "rise to the level of praise by others" and "is not particularly tied to the claims." Dkt. 902 at 18; Dkt. 876 at 1206:18-1207:1. CIPH's argument attempts to shift the burden to GoPro to disprove nexus, rather than offering any evidence that nexus exists, much less that the evidence is sufficient to overcome GoPro's strong

showing of obviousness. *Tokai Corp. v. Easton Enters., Inc.*, 632 F.3d 1358, 1371 (Fed. Cir. 2011). CIPH's reliance on *Apple* is also misplaced because unlike Apple, CIPH failed to present the jury with "evidence of praise in the industry that specifically related to features of the claimed invention." *Apple*, 839 F.3d at 1053. Because the evidence of industry praise cited by CIPH is not specifically linked to the claimed features, Claim 11 should be found obvious.

**Failure by Others.** CIPH's alleged evidence of failure of others is likewise deficient. To be relevant, "alleged failure must be directed to the problem that a patent purports to solve." *In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Pat. Litig.*, 676 F.3d 1063, 1082 (Fed. Cir. 2012). In other words, the evidence must "suggest that these prior attempts failed because the devices lacked the claimed features." *Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1313 (Fed. Cir. 2006). CIPH offers no such evidence. In its Opposition, CIPH says the "problem" that the '954 Patent purports to solve is "how to provide a wireless viewfinder for a POV camera such that the user could see what the camera was seeing and adjust the settings remotely" (Dkt. 902 at 24), but the evidentiary record is replete with evidence of references that disclose this functionality in the prior art **and** an Ambarella chip (that CIPH did not invent) that, at most, made implementation of this function easier.[10] Dkt. 875 at 1094:4-14. The cameras that CIPH identifies (like Looxcie and Sony) did not "fail" at all – but simply chose a different means of providing live preview. Dkt. 876 at 1187:5-1188:7, 1217:9-1220:14. CIPH also identifies cameras that had access to Ambarella A5/A5S and simply elected not to include a live preview feature. Dkt. 902 at 24. Again, that does not demonstrate "failure" but a commercial choice; and one which the record demonstrates did not foreclose commercial viability or success of the cameras. Dkt. 876 at 1242:18-1243:5; *Cubist Pharms., Inc. v. Hospira, Inc.*, 805 F.3d 1112, 1126 (Fed. Cir. 2015) (rejecting failure of others where "economic considerations, and not merely difficulties in the lab, weighed on … decision to 'shelve' … development."); *DyStar Textilfarben GmbH & Co. Deutschland KG v. C.H. Patrick Co.*, 464 F.3d 1356, 1371–72 (Fed. Cir. 2006) (rejecting failure of others because "decision was … not a failed attempt, but a calculated

---

[10] Even if, as CIPH contends (and GoPro disputes), GoPro was unable to make a commercially viable camera with live preview before Contour, CIPH offers no evidence that establishes nexus to the claimed invention. It is undisputed that once GoPro had the A5 (which CIPH did not invent), it was able to develop a commercial product that embodies the claimed invention.

1    business judgment."). Nothing in CIPH's "failure of others" evidence can "overcome the clear record

2    in this case" that the combination of Boland and Ambarella would have been an obvious choice for

3    implementing the claimed invention. *Nalpropion Pharms., Inc. v. Actavis Lab'ys FL, Inc.*, 934 F.3d

4    1344, 1356 (Fed. Cir. 2019).

5        **Copying**. CIPH's final argument for "secondary consideration," rehashes its specious copying

6    theory that the jury rejected when it found GoPro did not act willfully. *Compare* Dkt. 877 at 1488:1-

7    3 *with* Dkt. 865 at 8. CIPH's copying allegation also fail on the merits. Secondary considerations that

8    are tied to "unclaimed features of the device" are "irrelevant." *Ormco Corp. v. Align Tech., Inc.*, 463

9    F.3d 1299, 1312 (Fed. Cir. 2006); *Sealy Tech., LLC v. SSB Mfg. Co.*, 825 F. App'x 801, 807 (Fed. Cir.

10   2020). As this Court previously determined, the fact that GoPro may have taken apart one of Contour's

11   cameras shows, at most, that "GoPro did not understand how, in technological terms, Contour was

12   implementing the claims," not that it was copying the claimed invention (which is devoid of

13   implementation details). Dkt. 673 at 13. Here, the evidence shows that GoPro did **not** copy CIPH at

14   all – instead choosing a different wireless protocol and implementation of live preview, after

15   determining that Contour's product produced a sub-standard result. Dkt. 873 at 698:2-699:23.

16   Moreover, "a showing of copying is only equivocal evidence of non-obviousness in the absence of

17   more compelling objective indicia of other secondary considerations." *Ecolochem, Inc. v. S. Cal.*

18   *Edison Co.*, 227 F.3d 1361, 1380 (Fed. Cir. 2000). Since CIPH's other secondary indicia evidence

19   fails, any copying evidence—of which there is none—is insufficient to overcome the strong evidence

20   of obviousness of the Asserted Claims.

21       **D.    CIPH's Arguments Regarding 102(g) Are Unsupported By The Law**

22       CIPH's final argument in Opposition to GoPro's motion is largely irrelevant. CIPH argues

23   that the record supports a finding that Mr. Woodman's invention does not anticipate the Asserted

24   Claims. But, even if that is true, that would not overcome the substantial evidence of obviousness that

25   invalidates the patents as a matter of law. *Northpoint Tech., Ltd. v. MDS Am., Inc.*, 413 F.3d 1301,

26   1312 (Fed. Cir. 2005) (there is no basis to retry claims that are invalid). Additionally, CIPH's

27   Opposition is simply a rehash of the same, legally deficient arguments it makes in its own Motion for

28   a New Trial that are fully addressed in GoPro's rebuttal. Dkt. 903. Just as GoPro explained in its

Opposition, Mr. Woodman's testimony that he did not believe himself to be the first inventor does not doom the jury's finding of invalidity because the law does not require that he be the first, it just requires that Mr. Woodman conceived of the claimed invention before Contour.  Dkt. 903 at 20-21.  CIPH offers no rebuttal to Dr. Almeroth's opinions regarding conception (or the three supporting documents that pre-date any of the evidence cited by CIPH's expert).  Dkt. 900 at 9, 21 (collecting evidence).  Therefore, there is no cognizable basis to challenge prior conception.

CIPH's attacks on reduction to practice are unavailing because they ignore the facts and the law.  As set forth in the prior briefing, Mr. Woodman testified unequivocally that work on a wireless camera with live preview started in 2009 and continued until GoPro successfully launched HERO2 + Wi-Fi Bac Pac.  Dkt. 900 at 22; Dkt. 873 at 686:14-688:21.  His testimony is corroborated by Mr. Donovan, extensive documentary evidence, and prototypes.  Dkt. 900 at 22; Dkt. 903 at 21 (collecting evidence).[11]  CIPH's challenge to reduction to practice is predicated on its erroneous assumption that diligence requires not only evidence of continuous work, but admission of documents created on a near-daily basis.  But the law CIPH cites imposes no such rigid standard for corroboration.  *See* Dkt. 903 at 31 (addressing cases).  Instead, the law requires sufficient evidence when evaluated "as a whole" to support a finding that the inventor's diligence testimony is credible and work was of a "substantially continuing" nature.  *Monsanto* 261 F.3d at 1369; *Price v. Symsek*, 988 F.2d 1187, 1195 (Fed. Cir. 1993).  Courts have specifically rejected the approach CIPH advocates for of "scour[ing] [GoPro's] corroborating evidence in search of intervals of time where [GoPro] failed to substantiate some sort of activity."  *Perfect Surgical Techniques, Inc. v. Olympus Am., Inc.*, 841 F.3d 1004, 1009 (Fed. Cir. 2016).  Such an approach disregards the point of the diligence analysis, which is to "assure that, in light of the evidence as a whole, 'the invention was not abandoned or unreasonably delayed.'"  *Id.* (quoting *Monsanto*, 261 F.3d at 1379).  CIPH's argument is inconsistent with the legal standard and insufficient to overcome JMOL.

---

[11] CIPH argues that "GoPro cannot now rely on 'prototypes' that it never claimed were from 2010 and even told the jury to pretend never existed to try to back-fill the over one-year of inactivity."  Dkt. 902 at 24.  GoPro never told the jury to ignore evidence.  Moreover, JMOL is evaluated based on the evidence the jury actually heard (*see Johnson v. Paradise Valley Unified School District*, 251 F.3d 1222, 1227-28 (9th Cir. 2001)), and the jury heard and was free to rely on evidence of prototypes dated in 2009 and 2010.  Dkt. 876, 1348:10-1351:2; Dkt. 885-10 at DDX-11.7; TX-2426.

Dated: February 11, 2026        BY:    **ALSTON & BIRD LLP**
                                       */s/ Michelle Ann Clark*
                                       Michelle Ann Clark (SBN 243777)
                                       Philip C. Ducker (SBN 262644)
                                       Dana Zottola (SBN 346715)
                                       **ALSTON & BIRD LLP**
                                       55 Second Street, Suite 2100
                                       San Francisco, California 94105-0912
                                       Telephone: (415) 243-1000
                                       Facsimile: (415) 243-1001
                                       michelle.clark@alston.com
                                       phil.ducker@alston.com
                                       dana.zottola@alston.com

                                       John D. Haynes (admitted *pro hac vice*)
                                       Sloane S. Kyrazis (admitted *pro hac vice*)
                                       **ALSTON & BIRD LLP**
                                       One Atlantic Center
                                       1201 West Peachtree Street
                                       Atlanta, GA 30309-3424
                                       Telephone:    404-881-7000
                                       Facsimile:    404-881-7777
                                       john.haynes@alston.com
                                       sloane.kyrazis@alston.com

                                       Karlee N. Wroblewski (admitted *pro hac vice*)
                                       **ALSTON & BIRD LLP**
                                       Bank of America Plaza
                                       Suite 4000
                                       101 South Tryon Street
                                       Charlotte, NC 28280-4000
                                       Telephone:    (704) 444-1000
                                       Facsimile:    (704) 444-1111
                                       karlee.wroblewski@alston.com

                                       Elliott C. Riches (admitted *pro hac vice*)
                                       **ALSTON & BIRD LLP**
                                       2200 Ross Avenue
                                       Suite 2300
                                       Dallas, TX 75201
                                       Telephone:    (214) 922-3492
                                       elliott.riches@alston.com

1

## <u>CERTIFICATE OF SERVICES</u>

2

    Pursuant to the Federal Rules of Civil Procedure and Civil L.R. 5, I hereby certify that, on

3

February 11, 2026, all counsel of record who have appeared in this case were served with a copy of

4

the foregoing via ECF.

5

                                */s/ Michelle Ann Clark*
6                                Michelle Ann Clark

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28