UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONTOUR IP HOLDING, LLC,<br><br>Plaintiff,<br><br>v.<br><br>GOPRO, INC.,<br><br>Defendant. | Case No. 17-cv-04738-WHO<br><br>**ORDER ON THE POST TRIAL MOTIONS**<br><br>Re: Dkt. Nos. 900, 901, 911 |

Plaintiff Contour IP Holding, LLC ("Contour") and defendant GoPro Inc. ("GoPro") each move for judgment as a matter of law ("JMOL") and/or for a new trial pursuant to Federal Rules of Civil Procedure 50 and 59 following a ten-day jury trial. They agree that the jury verdict was inconsistent but disagree on the extent of that inconsistency and what I should do about it.

The jury found that Contour's dependent claim 12 of U.S. Patent No. 8,890,954 ("the '954 Patent) and dependent claim 6 of U.S. Patent No. 8,896,694 ("the '694 Patent") were invalid as anticipated and obvious. It determined that independent claim 11 of the '954 Patent was valid. It concluded that GoPro was not liable for direct infringement on any of the claims or patents at issue during the trial and that GoPro had not engaged in any willful infringement. It determined that Contour was entitled to $8,200,000 in damages for claims I had previously determined that GoPro infringed at summary judgment.

Contour urges that the inconsistency of the jury's invalidity verdict reaches all aspects of the jury's findings. It moves for JMOL on several discrete issues and a new trial on all remaining verdict issues. GoPro, on the other hand, moves for JMOL on the sole issue of whether claim 11 of the '954 Patent is invalid, and, in the alternative, moves for a new trial on the sole issue of invalidity. Consistent with GoPro's position, this Order upholds the jury verdict except that I conclude that GoPro is entitled to judgment as a matter of law on the issue of the validity of claim

11 of the '954 Patent, meaning that Contour is not entitled to damages resulting from my prior summary judgment ruling concerning claim 11. For the reasons discussed below, Contour's motion for JMOL or for a new trial is DENIED and GoPro's motion for JMOL is GRANTED.

**BACKGROUND**

This case has a lengthy procedural history. Contour filed its original and operative complaint in this case on January 30, 2015, in the United States District Court for the District of Delaware.[1] Dkt. No. 1. The case was transferred to the Northern District of California on August 16, 2017. Dkt. No. 175. On the first round of summary judgment motions in the case (i.e. "*Contour I*"), I held that Contour was entitled to partial summary judgment that the *Contour I* Accused Products infringed claim 11 of the '954 Patent. Dkt. No. 445 at 10.

On March 26, 2021, Contour filed a second action against GoPro in this court concerning a different group of products that had been released by GoPro since the onset of *Contour I*. I consolidated it ("*Contour II*") with *Contour I*. On March 24, 2025, following a separate summary judgment order in favor of GoPro that was ultimately reversed by the Federal Circuit, I issued yet another summary judgment Order pertaining only to the *Contour II* products. Dkt. No. 721. In that Order, I held that two of the three groups of the *Contour II* products infringed upon claim 11 of the '954 Patent, just as the original *Contour I* products had infringed. *Id.* at 12, 14.

During the pendency of the Federal Circuit appeal, GoPro released additional products that Contour wished to add to the case. I permitted Contour to do so. *Id.* at 7, n.4. The parties again moved for summary judgment on this third set of products ("*Contour III*") for infringement (Contour) and invalidity (GoPro). I denied summary judgment for each side. *See* Dkt. No. 843.

The case proceeded to trial from September 29, 2025–October 10, 2025. All products from *Contour III* and one product from *Contour II* were presented to the jury for determination of infringement, all relevant claims were presented to the jury for determination of invalidity, and the jury was also asked to resolve the question of damages. For the trial, the parties renamed the product groups: "Live Preview Group 1 Products," "Live Preview Group 2 Products," and "Live

---

[1] Contour previously filed suit in Utah and dismissed the case after approximately one year and refiled the case in Delaware. *See* Dkt. No. 84.

Streaming Products." *See* Final Jury Verdict ("Jury Verdict") [Dkt. No. 865]. Contour asserted that the Live Preview Group 1 Products infringed claim 12 of the '954 Patent and claim 6 of the '694 Patent, that the Live Preview Group 2 Products infringed claims 11 and 12 of the '954 Patent and claim 6 of the '694 Patent, and that the Live Streaming Products infringed claim 6 of the '694 Patent. GoPro raised anticipation and obviousness defenses, arguing that all of the claims at issue were invalid under both theories.

Before the case was submitted to the jury, GoPro moved for judgment as a matter of law that the asserted claims were invalid as obvious under 35 U.S.C. § 103 and invalid as anticipated under 35 U.S.C. § 102(g); GoPro likewise moved for judgment as a matter of law that Contour was not entitled to damages and that there was no support for a finding of willfulness. Trial Tr. 1387:15–1388:14. Contour moved for judgment as a matter of law on all claims of infringement and on the validity of each of the asserted claims. Trial Tr. 1381:23–1385:17. I allowed all issues to go to the jury. Trial Tr. 1390:13-14.

The jury returned its verdict on October 10, 2025. *See* Jury Verdict. It found that GoPro's products did not infringe on any of the claims Contour raised at trial. Verdict at 3–5. It also found that claim 12 (but not claim 11) of the '954 Patent and claim 6 of the '694 Patent were invalid as anticipated and obvious. Verdict at 6–7. It concluded that no infringement was willful but that the infringement of the valid claim 11 (as determined by my prior summary judgment orders) committed by GoPro amounted to $8,200,000 in damages owed to Contour. Verdict at 8–9.

The parties filed their respective post-trial motions on December 17, 2025. *See* Contour Motion for New Trial and JMOL ("Contour Mot.") [Dkt. No. 901], GoPro Opposition to Contour's Motion for New Trial and JMOL ("GoPro Oppo.") [Dkt. No. 903], Contour Reply ISO Motion for New Trial and JMOL ("Contour Reply") [Dkt. No. 904], GoPro Motion for JMOL ("GoPro Mot.") [Dkt. No. 900], Contour Opposition to GoPro's Motion for JMOL ("Contour Oppo.") [Dkt. No. 902], GoPro Reply ISO Motion for JMOL ("GoPro Reply") [Dkt. No. 905]. I heard argument on March 11, 2026. Dkt. No. 909.

## LEGAL STANDARD

The Federal Circuit "reviews decisions on motions for [judgment as a matter of law],

3

motions for a new trial, and evidentiary rulings under the law of the regional circuit." *InTouch Techs., Inc. v. VGO Commc'ns, Inc.*, 751 F.3d 1327, 1338 (Fed. Cir. 2014). In the Ninth Circuit, judgment as a matter of law is appropriate where "the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to that of the jury." *White v. Ford Motor Co.*, 312 F.3d 998, 1010 (9th Cir. 2002). This standard requires a court to uphold "any jury verdict supported by substantial evidence," substantial evidence being "evidence that a reasonable mind would accept as adequate to support a conclusion." *Callicrate v. Wadsworth Mfg., Inc.*, 427 F.3d 1361, 1366 (Fed. Cir. 2005). On the other hand, neither a "mere scintilla" of evidence, nor pure speculation, is enough to sustain a verdict against a motion for JMOL. *Lakeside-Scott v. Multnomah Cnty.*, 556 F.3d 797, 802–03 (9th Cir. 2009).

Under Federal Rule of Civil Procedure 59(a), a trial court "may grant a new trial, even though the verdict is supported by substantial evidence, if the verdict is contrary to the clear weight of the evidence, or is based upon evidence which is false, or to prevent, in the sound discretion of the trial court, a miscarriage of justice." *United States v. 4.0 Acres of Land*, 175 F.3d 1133, 1139 (9th Cir. 1999) (internal quotation marks omitted); *accord Wordtech Sys., Inc v. Integrated Networks Sols., Inc.*, 609 F.3d 1308, 1313 (Fed. Cir. 2010). In considering a motion for a new trial, a court "has the duty to weigh the evidence as the court saw it, and to set aside the verdict of the jury, even though supported by substantial evidence, where, in the court's conscientious opinion, the verdict is contrary to the clear weight of the evidence." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (internal quotation marks and alterations omitted). The Ninth Circuit "review[s] [a] district court's ruling on a motion for a new trial under Rule 59(a) for an abuse of discretion." *E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951, 962 (9th Cir. 2009). The denial of a motion for a new trial is reversible "only if the record contains no evidence in support of the verdict or if the district court made a mistake of law." *Id.* (internal quotation marks omitted).

## DISCUSSION

The parties agree that there is an inconsistency in the jury verdict. They disagree about the

4

extent of those inconsistencies.  In GoPro's view, the only inconsistency concerns the '954 Patent: The jury concluded that claim 11 of the '954 Patent is valid, but that claim 12 of the '954 Patent and claim 6 of the '694 Patent are invalid for anticipation or obviousness.  GoPro contends that this cannot be, because claim 12 depends from claim 11, so it cannot be invalid if claim 11 is valid.  It seeks a JMOL that claim 11 is invalid or, in the alternative, a new trial on the sole issue on the question of validity.  Contour agrees that the jury verdict is inconsistent on the question of validity but asserts that the rest of the jury's verdict is equally inconsistent.

## I.      The Asserted Patents

The three claims at issue arise from two, related, asserted patents.  Claim 11 of the '954 Patent discloses:

A portable, point of view digital video camera, comprising:

a lens;

an image sensor configured to capture light propagating through the lens and representing a scene, and produce real time video image data of the scene;

a wireless connection protocol device configured to send real time image content by wireless transmission directly to and receive control signals or data signals by wireless transmission directly from a personal portable computing device executing an application; and

a camera processor configured to:

receive the video image data directly or indirectly from the image sensor,

generate from the video image data a first image data stream and a second image data stream, wherein the second image data stream is a higher quality than the first image data stream,

cause the wireless connection protocol device to send the first image data stream directly to the personal portable computing device for display on a display of the personal portable computing device, wherein the personal portable computing device generates the control signals for the video camera, and wherein the control signals comprise at least one of a frame alignment, multi-camera synchronization, remote file access, and a resolution setting, and at least one of a lighting setting, a color setting, and an audio setting,

receive the control signals from the personal portable computing device, and

adjust one or more settings of the video camera based at least in part on at least a portion of the control signals received from the personal portable computing device.

'954 Patent at 30:57–31:24 (Trial Exh. JTX-1) [Dkt. No. 881-128].

Claim 12 of the '954 Patent is dependent on claim 11 and discloses:

The point of view digital video camera of claim 11, wherein the first image data stream comprises first video image content and the second image data stream comprises second video image content, wherein the first video image content and the second video image content comprise substantially the same video image content at different resolutions or different frame rates.

'954 Patent at 31:25-31.

Finally, claim 6 of the '694 Patent discloses a substantially similar invention. It is dependent on claim 3 of the '694 Patent. Throughout the case, the parties and I have noted that the relevant portions of the '694 Patent overlap with the relevant claims from the '954 Patent. Claim 3 of the '694 Patent (which was not a contested claim before the jury) discloses:

A point of view digital video camera system, comprising:

a hands-free compact portable video camera, comprising:

a lens,

an image sensor configured to capture light propagating through the lens and representing a scene, and produce real time video image data of the scene,

a camera processor for receiving the video image data directly or indirectly from the image sensor, and

a wireless connection protocol device operatively coupled to the processor and configured to send video image content by wireless transmission directly to and receive control signals or data signals by wireless transmission directly from a personal portable computing device executing an application;

a mounting interface coupled to the video camera for mounting the video camera to a user of the video camera; and

a camera mount configured to be mounted to at least one of the body, a garment, and a vehicle of the user of the video camera, the camera mount configured to couple to the mounting interface to mount the video camera on at least one of the body, the garment, and the vehicle of the user of the video camera, wherein the camera mount is further configured for manual adjustment of the video camera with respect to the user of the video camera,

United States District Court
Northern District of California

wherein the camera processor is configured to:

generate first video image content and second video image content corresponding to the video image data representing the scene, wherein the second video image content is a higher quality than the first video image content,

cause the wireless connection protocol device to send the first video image content directly to the personal portable computing device for display on a display of the personal portable computing device,

wherein the first video image content comprises a preview image of the scene, the preview image allowing the user of the video camera to manually adjust an angle of the video camera with respect to the user of the video camera, and

wherein the personal portable computing device generates the control signals for the video camera based at least in part on input received from a user of the personal portable computing device, wherein the control signals comprise at least one of a frame alignment, multi-camera synchronization, remote file access, data acquisition, and a resolution setting, and at least one of a lighting setting, a color setting, and an audio setting,

receive, prior to a recording of the scene, the control signals from the personal portable computing device for adjusting one or more image acquisition settings of the video camera in accordance with input received at the personal portable computing device, and

based at least in part on a record command, cause the second video image content to be stored in a storage device at the video camera.

'694 Patent at 30:6-64 (Trial Exh. JTX-2) [Dkt. No. 881-129].

Claim 6, in turn, discloses:

The point of view digital video camera system of claim 3, wherein the control signals comprise the lighting setting.

'694 Patent at 31:7-8.

At trial, both parties discussed the dependency of claim 12 from claim 11 of the '954 Patent and the dependency of claim 6 from claim 3 of the '694 Patent. Trial Tr. 455:25-456:6 [Dkt. No. 872] at 58–59 (Hu Direct Examination); Trial Tr. 1082:21-1083:12 [Dkt. No. 875] at 113–114 (Almeroth Direct Examination). Accordingly, I instructed the jury as follows: "A dependent claim incorporates all of the requirements of the claim(s) to which it refers. The dependent claim then adds its own additional requirements." Final Jury Instruction [Dkt. No. 859]

No. 15.  With respect to direct infringement, I instructed, in relevant part, that:

> The one exception to considering claims individually concerns dependent claims.  A dependent claim includes all of the requirements of a particular independent claim, plus additional requirements of its own.  As a result, if you find that an independent claim is not infringed, you must also find that its depended claims are not infringed.  On the other hand, if you find that an independent claim has been infringed, you must still separately decide whether the additional requirements of its dependent claims have also been infringed.

Final Jury Inst. No. 18.

## II.    Scope of the Jury Verdict Inconsistency

The jury found that GoPro's products did not infringe on any of the asserted claims presented at trial.  Verdict Form 3–5.  On GoPro's invalidity defenses, the jury found that claim 11 of the '954 Patent was not invalid as anticipated or invalid as obvious.  Verdict Form 6–7.  Despite the dependency of claim 12 on claim 11 and the overlap between claim 6 and the asserted claims from the '954 Patent, the jury found claims 12 and 6 to be both invalid as anticipated and obvious.  *Id.*  The jury concluded that GoPro was not willful in any infringement.  It awarded Contour damages of $8,200,000.  *Id.* at 8–9.

After reviewing the verdict, but before reading the verdict into the record, I called a bench conference because there seemed to be a discrepancy in the verdict.  I found it odd that the jury had awarded damages after finding no infringement.  The parties reviewed it and agreed that the award of damages must have resulted from my previous finding that GoPro products infringed upon claim 11 of the '954 Patent.  Trial Tr. 1606:12-25; *see also* Orders on the Motions for Summary Judgment at Dkt. Nos. 445, 721.  Because the jury concluded that claim 11 was valid, GoPro was therefore liable for the infringement I had already concluded existed.  After clarifying that issue, counsel for GoPro queried: "Did they find claim 12 invalid?" to which I responded affirmatively and let the parties know that any further issues could be raised in post-trial motions.  Trial Tr. 1607:13–17.  Without further opposition, I read the jury verdict into the record.

### A.  Validity

The parties agree that the jury verdict is at least inconsistent insofar as the validity verdict is concerned.  Contour Mot. 13; GoPro Oppo. 10.  They disagree on the reach of that inconsistency and whether a new trial or a JMOL is a more appropriate remedy to resolve that

inconsistency.

Pursuant to 35 U.S.C. § 112(d), and as explained to the jury in Jury Instruction No. 15, "[a] claim in dependent form shall be construed to incorporate by reference all the limitations of the claim to which it refers." Practically speaking, that dependence requires an understanding that "[d]ependent claims are nonobvious if the independent claims from which they depend are nonobvious." *Ortho-McNeil Pharm., Inc. v. Mylan Lab'ys, Inc.*, 520 F.3d 1358, 1365 (Fed. Cir. 2008) (quoting *In re Fritch*, 972 F.2d 1260, 1266 (Fed. Cir. 1992). Here, the jury concluded that independent claim 11 was nonobvious and nonanticipated, but then concluded that dependent claim 12 *was* obvious and anticipated. Those findings are legally and irreconcilably inconsistent.

Contour argues that because the verdict form is in the form of a "special verdict," the only available remedies to resolve this inconsistency pursuant to Federal Rule of Civil Procedure Rule 49(b)(4) are that: "the court must [1] direct the jury to further consider its answers and verdict or [2] must order a new trial." Contour Mot. 14. Because the verdict did not return to the jury prior to its discharge, the only option now is to order a new trial. *Id.* GoPro disagrees that the verdict form presented in this case was a special verdict. Instead, it views the verdict to be in the form of a general verdict. GoPro Oppo. 10–12. While general verdicts "do not involve factual findings but rather ultimate legal conclusions," special verdicts are "in the form of a special written finding upon each issue of fact." *Zhang v. American Gem Seafoods, Inc.*, 339 F.3d 1020, 1031 (9th Cir. 2003); Fed. R. Civ. P. 49(a). The distinction requires that a general verdict must typically stand, even in the face of factual or logical inconsistencies. *See Apple, Inc. v. Samsung Elecs. Co.*, 920 F. Supp. 2d 1079, 1101 (N.D. Cal. 2013) (Koh, J.) ("Only verdicts that entail two legal conclusions that cannot logically coexist, such as an award of damages and a finding of no liability, rather than a mere inconsistent view of facts, warrant the Court's intervention.").

I agree with GoPro that the verdict form here more closely resembles a general verdict form, although I recognize, as did the panel in *Zhang*, that the terms "special verdict" and "general verdict" "are not adequate to capture every answer that a jury might give." *Zhang*, 339 F.3d at 1031. *See, e.g.*, *Duhn Oil Tool, Inc. v. Cooper Cameron Corp.*, 818 F.Supp.2d 1193, 1221 (E.D. Cal. 2011) (holding that a jury verdict that similarly returned conflicting results on patent validity

was on a verdict form "located in the twilight zone of this spectrum."). In reply, Contour raises the issue that—assuming the verdict is a general one—GoPro waived the opportunity to object to any inconsistency at all because it did not object to the inconsistency prior to the discharge of the jury. Contour Reply 2–3 (collecting cases). As the Ninth Circuit has held: "When counsel is invited to consider whether or not to discharge the jury, counsel risks waiver of objections to any inconsistencies in the jury's findings if counsel does not raise the issue before the jury is excused." *Home Indem. Co. v. Lane Powell Moss and Miller*, 48 F.3d 1322, 1331 (9th Cir. 1995).

Many of the cases cited by Contour involve a party's failure to object to *jury instructions* that may have led to the inconsistent verdict. *See, e.g.*, *Kode v. Carlson*, 596 F.3d 608, 611 (9th Cir. 2010); *Kane v. PaCap Aviation Fin., LLC*, No. CV-19-00574-JAO-RT, 2023 WL 9197986, at *3 (D. Haw. Nov. 29, 2023); *Venezia v. Bentley Motors, Inc.*, No. CV-07-1511-PHX-SMM, 2009 WL 10673383, at *3 (D. Ariz. Apr. 2, 2009), *aff'd*, 374 Fed. App'x. 765 (9th Cir. 2010).[2] The parties did not contest the adequacy of the jury instructions prior to the entry of the jury's verdict, nor do they contest them now. And I explicitly informed counsel that any remaining issues in the verdict would be resolved through post-trial motions. Trial Tr. 1607:13–17.

I do not find that GoPro forfeited its objections to the verdict by failing to raise them, given that I did not invite it to object in the first instance. I do not disagree with Contour that a new trial could be an appropriate remedy to resolve the jury's inconsistency on its validity verdict, but I see no conflict with acknowledging the possible suitability of a new trial while still considering the parties' requests for JMOL. *See Duhn Oil Tool*, 818 F. Supp. 2d at 1221 ("Pursuant to the guidance provided by *Zhang* and Rule 49(b)(4), a new trial on the issue[s] of obviousness [and anticipation] is warranted to the extent [either party] is not entitled to judgment as a matter of law on the issue[s].").

### B. Infringement and Damages

In Contour's view, the jury's inconsistent finding on validity bleeds into all aspects of the

---

[2] And, of course, Contour itself seeks JMOL on issues it argues are inconsistent in addition to its request for a new trial. Allowing Contour to prevail on any JMOL after it failed to object to an inconsistent verdict before the dismissal of the jury while precluding GoPro from seeking the same recourse would be unfair.

jury verdict. It seeks a new trial on all jury issues in addition to JMOL that (1) the Live Preview Group 1 and Live Preview Group 2 products infringe on the asserted claims and (2) GoPro CEO Nick Woodman's prior invention(s) (either the 2009 HERO HD prototype or the 2012 HERO2 with WiFi BacPac) could not be considered "prior art." Contour Mot. 19–24.

In addition to the validity inconsistency, Contour argues that the jury's anticipation and infringement findings are legally inconsistent. In its view, the jury's conclusion that the HD Hero2 with WiFi BacPac anticipated claim 12 of the '954 Patent and claim 6 of the '694 Patent required a similar conclusion that the Live Preview Group 1 products infringed on claim 12 of the '954 Patent and claim 6 of the '694 Patent. Contour Mot. 15. Citing *Bristol-Myers Squibb Company v. Ben Venue Laboratories, Inc.*, Contour explains "it is axiomatic that that which would literally infringe if later anticipates if earlier." 246 F.3d 1368, 1378 (Fed. Cir. 2001). Contour further argues that "the questions of infringement and validity are so interwoven with questions of willfulness and damages, that both must be retried together."[3] Contour Mot. 16–17.

In reviewing Contour's argument that the jury's finding that (1) the Hero2 with WiFi BacPac anticipated claim 12 but that (2) Contour had not proven that GoPro literally infringed claim 12 with respect to the Live Preview Group 1 Products (which includes the Hero2 with WiFi BacPac), I return to my conclusion that the verdict is more closely understood as a general verdict. When a jury returns a general verdict, it is only appropriate for a court to reconsider legal inconsistencies, not logical or factual inconsistencies. As the Ninth Circuit held in *Zhang*, "[u]nless one legal conclusion is the prerequisite for another, inconsistencies between them must stand." 339 F.3d at 1034. The *Zhang* panel reviewed a prior Ninth Circuit case, *International Longshoremen's Union v. Hawaiian Pineapple Company*, in which the court "explained that

---

[3] Contour also contends that a new trial specifically for damages is warranted both because any grant of JMOL on the Live Preview Group 2 products would so require and because the jury's damages finding was different than any position argued by the parties. Contour Mot. 17–19. As I grant GoPro's JMOL and deny Contour's limited request for JMOL, I need not address Contour's damages arguments in full. Suffice it to say, the "factual determination of a reasonable royalty . . . need not be supported, and indeed, frequently is not supported, by the specific figures advanced by either party. . . . A jury is entitled to choose a damages award within the amounts advocated by the opposing parties." *Fujifilm Corp. v. Motorola Mobility, LLC*, 182 F. Supp. 3d 1014, 1042 (N.D. Cal. 2016) (Orrick, J.). There is nothing unusual in the jury's award.

legally inconsistent verdicts 'may nonetheless stand on appeal even though inconsistent.'" *Id.* at 1035 (citing 226 F.2d 875 (9th Cir. 1955)).

As the parties agree, in finding that claim 11 was valid and by awarding $8,200,000 in damages, the jury concluded that GoPro was liable for infringement for the Live Preview Group 1 products. However, given that the HD Hero2 with WiFi BacPac, the sole product GoPro relied upon for its anticipation arguments, was a product included within the Live Preview Group 1 products, Contour urges that these two realities are in no way legally reconcilable. I agree that there is tension between the two. But "[w]hen faced with a claim that verdicts are inconsistent, the court must search for a reasonable way to read the verdicts as expressing a coherent view of the case, and must exhaust this effort before it is free to disregard the jury's verdict and remand the case for a new trial." *Toner for Toner v. Lederle Lab's*, 828 F.2d 510, 512 (9th Cir. 1987).

One reasonable way to understand the jury's decision is that the HD Hero2 with WiFi BacPac anticipated claim 12 of the '954 Patent, but that Contour did not prove by a preponderance of the evidence that all of the Live Preview Group 1 Products (including the HD Hero2 with WiFi BacPac) practice each element of claim 12. After all, Contour did not present evidence specific to the HD Hero2 with WiFi BacPac's alleged infringement at trial.

As the Honorable Lucy Koh held in *Samsung*, "[o]nly verdicts that entail two legal conclusions that cannot logically coexist . . . rather than a mere inconsistent view of facts, warrant the Court's intervention." 920 F. Supp. at 1101 (citing *Zhang*, 339 F.3d at 1034); *see also Commil USA, LLC v. Cisco Sys.*, 575 U.S. 632, 643 (reviewing "the long-accepted truth—perhaps the axiom—that infringement and invalidity are separate matters under patent law."). There is no illogical coexistence here, especially given the separate analyses required for anticipation and infringement. I DENY Contour's motion for a new trial and JMOLs. And, in light of my conclusions below, I DENY its motion for post-trial relief.

### III.    JMOL: Invalidity

Because I conclude that the only legally insufficient jury finding requiring review is that of invalidity, I next review GoPro's motion for JMOL. *See generally*, GoPro Mot. As I have explained, the jury found claim 11 of the '954 Patent valid as not anticipated and nonobvious.

12

Jury Verdict at 6–7. GoPro contends that these findings were unreasonable in light of the evidence presented at trial and moves for judgment as a matter of law that claim 11 is invalid as anticipated and obvious. GoPro Mot. 11–25. In the alternative, it moves for a new trial on the question of validity only.[4] Mot. 25.

For the reasons explained below, although I conclude that there is substantial evidence to support a jury verdict of nonanticipation, I agree with GoPro that a reasonable jury could only conclude, based on the evidence presented at trial, that claim 11 is invalid for obviousness.

### A. Anticipation

"Anticipation requires clear and convincing proof that a single prior art reference not only discloses all elements of the claim within the four corners of the document, but also discloses those elements arranged as in the claim." *Cheese Sys., Inc. v. Tetra Pak Cheese & Powder Sys. Inc.*, 725 F.3d 1341, 1351 (Fed. Cir. 2013) (internal quotation marks and alterations omitted). The reference may disclose the elements of the claim either "expressly or inherently," the latter of which "requires that the missing descriptive material is 'necessarily present,' not merely probably or possibly present, in the [reference]." *Trintec Indus., Inc. v. Top—U.S.A. Corp.*, 295 F.3d 1292, 1295 (Fed. Cir. 2002). "The dispositive question regarding anticipation is whether one skilled in the art would reasonably understand or infer from the prior art reference's teaching that every claim limitation was disclosed in that single reference." *Akamai Techs., Inc. v. Cable & Wireless Internet Servs., Inc.*, 344 F.3d 1186, 1192 (Fed. Cir. 2023) (internal quotation marks omitted).

GoPro's anticipation case at trial focused only on the disclosure of the "prior invention of Nicholas Woodman at GoPro in the form of the HD Hero2 and WiFi BacPac in June 2012." Jury Instr. No. 23. GoPro asserts that Contour "never challenged Woodman's disclosure of the claim limitations . . . only . . . whether Woodman conceived of the invention before the Contour inventors and thereafter diligently reduced it to practice." GoPro Mot. 19–20. As the jury was instructed, without conception and diligence, any asserted prior invention could not qualify as a prior art reference as is required to anticipate an asserted claim. Jury Instr. No. 24. In support of

---

[4] In the event that I grant its motion for JMOL, it also requests a conditional grant of its motion for a new trial pursuant to Fed. R. Civ. P. 50(c), and 59. GoPro Mot. 25, n. 19.

United States District Court
Northern District of California

its view that it adequately demonstrated Woodman's conception and diligence, GoPro cites testimony from GoPro witnesses Woodman and Paul Donovan that "after conception in or around January 2009, GoPro continued to work on developing the idea of a wireless preview and remote control until GoPro was able to introduce HERO2 with the Wi-Fi Bac Pac in June 2012." GoPro Mot. 22. It also relies on the Hero2 with Wi-Fi Bac Pac's "Product Requirements Document" as evidence of the fruit of Woodman's continued diligence. *Id.*

Contour presented sufficient evidence at trial about Woodman's lack of diligence to defeat this argument. It showed Woodman images of his 2009 prototypes during cross-examination. *See* Trial Tr. 674:5–675:12, 677:6-10. Although Woodman confirmed that the prototypes were from 2009, Contour showed a follow-up photo displaying the circuit board on the prototypes. The circuit board included a date of November 16, 2010. When asked to explain the discrepancy, Mr. Woodman stated that he had "no explanation." Contour's expert, Dr. Hu, opined that GoPro "abandoned the work on the wireless remote or the wireless Bac Pac" at least between October 2009 and November 2010 (reviewing Tr. Exhs. 3116 (internal Woodman email dated October 26, 2009), 405 (GoPro internal document dated November 2010 marking work on the "wireless" as an "idle" project)). In January 2011, the wireless concept again resurfaced when Woodman asked an employee to "assist in covertly getting [GoPro] a couple of gps contour units" and that GoPro "should have been smarter and tapped into the fact that [Contour would] be thinking dual stream with this unit." Tr. Exh. 2833. GoPro's expert, Dr. Almeroth, failed to identify any documents demonstrating diligence from September 2009 to January 2011. Trial Tr. At 1432:12–21; 1433:6–1435:4.[5]

GoPro is correct that diligence "does not require the inventors to work on their invention every day" and that "periods of inactivity within the critical period do not automatically vanquish" a claim of reasonable diligence. GoPro Mot. 21–22 (citing *Tyco Healthcare Grp. LP v. Ethicon*

---

[5] And, as to conception, Contour presented substantial evidence that allowed a jury to conclude that the proposed prior art did not anticipate the claims at issue. During cross examination, Woodman expressly agreed that he was "not claiming to be the inventor of what's in Contour's patents," and that his "invention . . . is not the same as the Contour invention." Trial Tr. at 594:7-17.

*Endo-Surgery, Inc.*, 774 F.3d 968, 975 (Fed. Cir. 2014)). Given Contour's evidence at trial, however, I conclude that there was substantial evidence to allow the jury to determine that claim 11 was not anticipated by the Woodman prior invention offered by GoPro. Although the witnesses may have disagreed about Woodman's continuous efforts, timelines, and the eventual date of his reduction to practice, the jury was not required to credit GoPro's preferred testimony over Contour's.

GoPro's motion for JMOL of anticipation of claim 11 of the '954 Patent, or for a new trial on the issue, is DENIED.

### B. Obviousness

To evaluate obviousness, a court "must determine if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." *Dystar Textilfarben GmbH & Co. Deutschland KG v. C.H. Patrick Co.*, 464 F.3d 1356, 1360 (Fed. Cir. 2006) (citing 35 U.S.C. § 103(a)). Obviousness itself is a question of law based on underlying factual inquiries that include: (1) the scope and content of the prior art; (2) the differences between the claimed invention and the prior art; (3) the level of ordinary skill in the art; and (4) any relevant secondary considerations, including commercial success, long felt but unresolved needs, and failure of others. *Graham v. John Deere Co.*, 383 U.S. 1, 17 (1966). In reviewing a jury's obviousness determination, a court determines whether a jury's "implicit findings necessary to support the verdict are supported by substantial evidence." *See Osseo Imaging, LLC v. Planmeca USA Inc.*, 116 F.4th 1335, 1344 (Fed. Cir. 2024).

In addition to GoPro's obviousness arguments regarding the "[c]onception and reduction to practice by or at the direction of Nicholas Woodman at GoPro in the form of the HD Hero2 and WiFi BacPac," GoPro additionally contended that the asserted patents were obvious because of the "combination of Boland and Ambarella A5 or A5s Camera Processors." Jury Instr. No. 25. Given my determination that there is no required finding of anticipation regarding GoPro's first reference, GoPro cannot definitively show that the same reference acted as prior art in the obviousness context. I deny its request for JMOL for obviousness as to that reference. But the

United States District Court
Northern District of California

second basis for obviousness, the combination of Boland and the Ambarella processors, does establish that claim 11 is invalid as obvious.

### 1.   Scope of the Prior Art

GoPro's expert, Dr. Almeroth, testified at trial that the Boland prior art disclosed every limitation of claim 11 except for the "generate" limitation as required by the configured camera processor.  Trial Tr. 1107:25–1112:1-9.  Dr. Almeroth testified that Ambarella's A5/A5s "dual recording/encoding" feature discloses the "generate" limitation.  In rebuttal testimony, Dr. Hu opined that "Contour's invention is not obvious."  Trial Tr. 1320:23.  She offered a narrative review of what made Contour's inventions unique and how challenging it was to reduce those inventions to practice.  Trial Tr. 1321:1–1322:25.  But she made only brief reference to Boland. Trial Tr. 1324:5–18 ("A: My ultimate conclusion is that the claims were not obvious.  They are a novel invention.  Q: And in forming that opinion, did you consider Boland?  A: Yes, I have.  Q: Did you consider the Looxie device?  A:  Yes, I have.  Q: Did you consider the Looxie device in combination with Ambarella chip?  A:  Yes, I have.  Q: Did you consider Looxcie with Boland in combination with Ambarella?  A:  Yes, I have.  Q: And your obviousness opinions stated the same; correct?  A: That's correct.").  At no point in her testimony, or in any testimony offered by Contour in opposition to GoPro's instant motion, did Dr. Hu substantially address GoPro's asserted obviousness of claim 11 in light of the combination of Boland + Ambarella.

### 2.   Motivation to Combine

Because GoPro argues that the combination of Boland + Ambarella is what gives rise to an obviousness determination for claim 11, I must also review the parties' submitted evidence concerning the "motivation to combine" prior art.  *See Regents of Univ. of California v. Broad Inst., Inc.*, 903 F.3d 1286, 1291 (Fed. Cir. 2018) ("An obviousness determination requires finding that a person of ordinary skill in the art [1] would have been motivated to combine or modify the teachings in the prior art and [2] would have had a reasonable expectation of success in doing so.").  Dr. Almeroth testified that "a person of skill in the art would have looked across the state of the art to see what other kinds of camera processors existed . . . one that I want to particularly focus on is the Ambarella A5 and A5s."  Trial Tr. 1115:14-25; *see also* Trial Tr. 1117:8–1119:15

16

(explaining why, in his opinion "the combination of Boland and Ambarella disclose[s] every limitation of the asserted claims."), Trial Tr. 1217:1-22 ("[T]hat concept, that feature, was something that would have been in the mind of a person of skill in the art based on the state of the art as well as specific prior art references."), 1219:25–1220:3 ("Boland provides you the guidance right here in [refers to an exhibit] on what function you need to accomplish, and that turns out to be the exact function that would be provided by a chip like Ambarella.").

In opposition, Contour failed to raise a single instance where its expert rebutted Dr. Almeroth's testimony that a person of ordinary skill in the art would have been motivated to combine the Boland prior art reference with the Ambarella prior art reference. Contour Oppo. 12–17. Instead, it principally argues that Dr. Almeroth's testimony (in combination with testimony of other witnesses of GoPro's) does not amount to substantial evidence that there was a motivation to combine that would have resulted in a reasonable expectation of success. *Id.* That misstates GoPro's burden at this stage. I am required to uphold "any jury verdict supported by substantial evidence." *Callicrate*, 427 F.3d at 1366. I am also to review the evidence presented in the record "construed in the light most favorable to the nonmoving party" to determine whether that evidence "permits only one reasonable conclusion." *Ford Motor Co.*, 312 F.3d at 1010. If "that conclusion is contrary to that of the jury," I must grant judgment as a matter of law to the moving party. *Id.* The only evidence in the record concerning the motivation of a person having ordinary skill in the art to combine the Boland and Ambarella prior art references was offered by GoPro. It is substantial. *See* Almeroth Testimony, Trial Tr.1115–1119, 1217–1220. It is unrebutted. The only permissible conclusion is that there was a motivation to combine the Boland + Ambarella prior art.

### 3. Evidence of Secondary Considerations

"[Secondary] considerations are relevant only in a close case where all other proof leaves the question of invention in doubt." *Dow Chem. Co. v. Halliburton Oil Well Cementing Co.*, 324 U.S. 320, 330 (1945). As I have held, GoPro's evidence at trial leaves little doubt whether the jury's finding that claim 11 of the '954 Patent nonobvious was incorrect. Moreover, I reject each of Contour's three arguments concerning secondary considerations.

Contour first offers its receipt of the Best Mobile Lifestyle Accessory of CES 2011 and the

17

2011 Red Dot Product Design Award as evidence of industry praise. These awards praised the "artistic aspect" of the ContourGPS as well as its general use and functionality. Trial Exhs. 442, 443, 444. To establish "industry praise" for the jury to consider, Contour is required to show "praise in the industry that specifically relate[s] to features of the claimed invention, thereby linking that industry praise with the patented invention." *Samsung*, 839 F.3d at 1054. "Where objective indicia result from something other than what is both claimed and novel in the claim, there is no nexus to the merits of the claimed invention." *Merck & Cie v. Gnosis S.P.A.*, 808 F.3d 829, 837 (Fed. Cir. 2015). It is at best unclear that Contour's awards arose from claim 11 of the '954 Patent. "To the extent that the patentee demonstrates the required nexus, his objective evidence of nonobviousness will be accorded more or less weight." *Id.* (quotation marks and citation omitted). I give Contour's evidence of industry praise little weight.

Next, Contour contends that "failure by others" supports its arguments of nonobviousness. "The purpose of evidence of failure of others is to show 'indirectly the presence of a significant defect in the prior art while serving as a simulated laboratory test of the obviousness of the solution to a skill artisan.'" *Eurand, Inc. v. Mylan Pharms., Inc.*, 676 F.3d 1063, 1082 (Fed. Cir. 2012). Contour explains that other companies sought to solve the same problem, namely, "how to provide a wireless viewfinder for a POV camera such that the user could see what the camera was seeing and adjust the settings remotely." Contour Oppo. 20. Contour's expert Dr. Hu reviewed GoPro's internal documents to conclude that GoPro, for one, faced repeated roadblocks in reducing its version of the solution to the problem to practice. *See* Trial Tr. at 1324:19–1331:22, 1430:12–1431:6. However, Contour does not contest that once GoPro acquired Ambarella's A5 chip, GoPro was able to develop a product that embodied the claimed invention. This rebuts Contour's "failure of others" argument because it tends to support an understanding that a combination of one prior art reference (i.e. Boland) with an Ambarella A5 or A5s chip no longer resulted in the "failure of others."

Finally, Contour argues that its evidence of GoPro copying (or seeking to copy) Contour's models provides sufficient secondary indicia of nonobviousness. Contour again points to testimony and exhibits related to GoPro's decision to covertly purchase Contour products and take

18

them apart. Contour Oppo. 21. The jury, with that evidence in front of it, declined to find GoPro liable of willful infringement (i.e. "that GoPro engaged in . . . conduct evidencing deliberate or reckless disregard of Contour's patent rights. . . consider[ing] . . . facts [related to] whether GoPro intentionally copied Contour's patented technology in developing the accused product . . ."). Jury Instr. No. 20. Contour's allegations of GoPro's efforts to copy Contour's products demonstrate at least some nexus to claim 11 of the '954 Patent. *See* Contour Oppo. 21 (referring to GoPro's work on its "wireless camera" in reference to copying). But Contour falls short of demonstrating that GoPro *actually* copied its cameras as a result of GoPro's acquisition and analysis of the Contour cameras. As the Federal Circuit has held, a "showing of copying is only equivocal evidence of non-obviousness in the absence of more compelling objective indicia of other secondary considerations." *Ecolochem, Inc. v. S. California Edison Co.*, 227 F.3d 1361, 1380 (Fed. Cir. 2000). There is none here.

***

In summary, Contour failed to produce substantial evidence that claim 11 of the '954 Patent is nonobvious at trial. The jury's implicit findings regarding the secondary considerations of nonobviousness point to a finding of obviousness. The only reasonable conclusion a jury could draw, given the clear weight of the evidence at trial, is that claim 11 of the '954 Patent is invalid for obviousness. Because the '954 Patent is invalid, there can be no finding that the Live Preview Group 1 Products infringed on the '954 Patent and the jury's damages finding must be struck.

### IV.    Administrative Motion to Seal

Finally, the parties have filed a joint administrative motion to seal a number of docket numbers in this case either in full or in part. *See* Joint Motion to Seal [Dkt. No. 911]. In response to my prior Order on the administrative motions to seal, *see* March 31, 2026 Order [Dkt. No. 910], the parties have filed a joint motion seeking only limited redactions related to GoPro's proprietary source code, image processor configuration, financial data, and Contour's financial information and ownership not discussed in open court. *See* Joint Motion to Seal at 2–4. The newly proposed redactions are appropriately limited and the parties have presented "compelling reasons" to seal the requested information. *See* Exhs. A and B at Dkt. No. 911.

To that end, it is **ORDERED that**:

The entirety of the following Docket Nos. shall remain sealed: Dkt. Nos. 767-8, 767-9, 767-10, 790-5, 790-8, 790-11, 790-13, 884-37 (PTX-100), and Dkt. 884-52 (PTX-1259). The Parties' request to seal the proposed redactions of: Dkt. Nos. 767-3, 767-4, 767-5, 767-6, 767-7, 769-4, 769-9, 770-3, 770-4, 774-4, 774-13, 774-19, 788-8, 790-3, 790-6, 790-9, 790-10, 792-4, 803-7, 886-6, 886-8, and 894- 4 is GRANTED. The Parties shall file public, redacted versions of those docket entries within 8 days of this Order. The remaining dockets and exhibits addressed in the March 31, 2026, Order, *see* Dkt. No. 910, shall be unsealed.

## CONCLUSION

For the foregoing reasons, GoPro's motion for JMOL or for a new trial is GRANTED IN PART and DENIED IN PART, Contour's motion is DENIED, and GoPro's motion for a conditional grant of a new trial on the issue of obviousness in the event that this Order granting JMOL is vacated or reversed on appeal is GRANTED. A Final Judgment in accordance with this Order will issue.

**IT IS SO ORDERED.**

Dated: May 14, 2026

William H. Orrick
United States District Judge

United States District Court
Northern District of California

20